UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

(Jury Trial Demanded)

LUIS MANUEL RODRIGUEZ,
MARIA TERESA RODRIGUEZ, a/k/a MARIA TERESA LANDA,
ALFREDO RAMON FORNS,
RAMON ALBERTO RODRIGUEZ,
RAUL LORENZO RODRIGUEZ,
CHRISTINA CONROY, and
FRANCISCO RAMON RODRIGUEZ,

        Plaintiffs,

v.

IMPERIAL BRANDS PLC,
CORPORACIÓN HABANOS, S.A.,
WPP PLC, YOUNG & RUBICAM LLC,
and BCW LLC, a/k/a BURSON COHN & WOLFE LLC

        Defendants.

_____/

## Complaint

Plaintiffs, LUIS MANUEL RODRIGUEZ, MARIA TERESA RODRIGUEZ, a/k/a

MARIA TERESA LANDA, ALFREDO RAMON FORNS, RAMON ALBERTO RODRIGUEZ,

RAUL LORENZO RODRIGUEZ, CHRISTINA CONROY, and FRANCISCO RAMON

RODRIGUEZ, sue Defendants, IMPERIAL BRANDS PLC, CORPORACIÓN HABANOS, S.A.,

WPP PLC, YOUNG & RUBICAM LLC, and BCW LLC, a/k/a BURSON COHN & WOLFE

LLC, and allege as follows:

## Introduction

1.    Plaintiffs (collectively, the "Rodriguez Family") are the heirs and successors of

Ramón Rodriguez Gutiérrez ("RRG") and the owners of a 90% interest[1] in Ramón Rodriguez e

_____

[1]  The remaining 10% interest is owned by two individuals who obtained their interest, by

Hijos Sociedad en Comandita[2] ("RRHSC"). Before 1961, RRHSC owned and operated the former Partagás cigarette factory building (the "RRHSC Property") in Havana.[3]

2.      In 1955, RRHSC erected a modern mixed-use building adjacent and connected to the main building of the Partagás factory at the corner of Calle 23 y 16 (23rd Street and 16th). The new building's structure included a ground level garage for the factory's fleet of trucks, a storage facility, a mezzanine suite of executive offices and a six-story tower.[4] Today, the RRHSC Property, rebranded "Empresa de Tabaco Torcido 'José Martí,'" prominently displays the names Tabacuba (the Cuban state tobacco monopoly company) and H. Upmann on its façade.[5]

3.      After taking control of power in 1959, the Castro Regime and Cuba's communist government systematically "nationalized" the major privately-owned business enterprises in Cuba without compensation to the lawful owners of the property. In 1961, as part of its takeover of the entire tobacco industry, the Castro government confiscated ownership of RRHSC and the RRHSC Property. Before the RRHSC Property was confiscated, the Partagás Factory produced world-renowned cigarettes under the Partagás brand and had grown to become the third largest manufacturer of cigarettes in Cuba with a 16.3% share of the market.

───────────────

operation of law, through their deceased father, who was not a U.S. citizen as of 1996.

[2]      Ramon Rodriguez and Sons, a Limited Partnership.

[3]      A picture of Partagás cigarette boxes with a drawing of the Partagás (RRHSC) factory and a photograph of the factory believed to have been taken in the 1950s is shown at Composite Exhibit 1.

[4]      A picture of the modern mixed-use building that was erected as an annex to the main Partagás cigarette factory is shown at Composite Exhibit 2.

[5]      Pictures of the modern façade are shown at Composite Exhibit 3.

4.      The "Rodriguez Family are the owners of a "Claim" under the Cuban Liberty and

Democratic Solidarity Act also known as Helms-Burton (the "Liberty Act" or "Libertad Act") due

to the Cuban government's confiscation and trafficking in the RRHSC Property.[6] The Liberty Act

took effect in 1996:

> It is the purpose of statute to deter third party foreign investors from
> trafficking in the confiscated property (defined as '**purchas[ing] an
> equity interest in, manag[ing], or enter[ing] into joint ventures**
> using property and assets some of which were confiscated from
> United States nationals.')

*Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting

22 U.S.C. § 6081(5)); *see also* 22 U.S.C. § 6022(6) (Liberty Act is designed "to protect United

States nationals against confiscatory takings and the wrongful trafficking in property confiscated

by the Castro regime.").

5.      In 2007, Defendant Imperial Brands PLC ("Imperial"), well-aware of the Liberty

Act, purchased Altadis S.A. and its "50% ownership interest in [Habanos], a company which

distributes cigars manufactured in Cuba."[7] Corporacion Habanos S.A. ("Habanos") is a joint

venture company 50% owned by Cuba, or one or more Cuban-owned companies, and 50% owned

by Imperial.

---

[6]      As a recent decision in this District explained that: "'[t]he ***Helms-Burton Act refers to the
property interest that former owners of confiscated property now have as ownership of a 'claim
to such property***.'" *Glen II*, 450 F.3d at 1255 (quoting 22 U.S.C. § 6082(a)(1)(A)); *see also id.*
(noting that actions brought under Title III are "actions brought 'on a claim to the confiscated
property' against traffickers in the property" (quoting 22 U.S.C. § 6082(a)(4))). *See Havana Docks
Corp. v. Royal Caribbean Cruises, Ltd.*, 19-CV-23590, 2020 WL 1905219, at *7 (S.D. Fla. Apr.
17, 2020) (emphasis added).

[7]      *See* October 12, 2007 letter from Imperial to the SEC's Office of Global Security at 2. (Copy
attached as Exhibit 4).

6.      Imperial, both through Habanos and other joint-venture subsidiaries, as well as through the Cuban tobacco monopoly company, Tabacuba, Imperial's joint-venture partner in Habanos, has and continues to use the RRHSC Property without compensation to, or authorization from, the Rodriguez Family. The unauthorized use of the RRHSC Property has included the production and shipping of millions of hand-rolled cigars (sold under various premium brand names) manufactured at the RRHSC Property, or manufactured at other nearby factories, and processed, stored, and shipped from the RRHSC Property. The unauthorized use of the RRHSC Property also extends to Tabacuba's management of the day to day business of all Cuban tobacco products from offices it maintains in the RRHSC Property. Imperial's trafficking also includes use of the RRHSC Property for marketing of Habanos' products.

7.      All Defendants are liable to Plaintiffs under the Liberty Act for "trafficking"[8] because they participate in, or profit from, trafficking of the RRHSC Property by the Cuban government, through Tabacuba and its joint venture partner, Defendant Imperial. Tabacuba and Imperial traffic in the RRHSC Property through their jointly owned and controlled joint venture company Habanos and through the distribution network that Tabacuba and Imperial own.

8.      Imperial and its partner Tabacuba, together with the subsidiaries they own and control, have expanded their use of and benefit from the RRHSC Property by retaining agents to

---

[8]  For purposes of the Act, a person "traffics" in confiscated property if that person "knowingly" and intentionally: (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property, (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property. *See* 22 U.S.C. § 6023(13).

market and publicize the products produced at the confiscated RRHSC Property. The agents retained by Imperial and Habanos include Defendant WPP PLC ("WPP") through its U.S-based advertising agency subsidiaries, Defendants Young & Rubicam LLC ("Y&R"), and BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW").

9.      Beginning no later than 2017, Y&R and BCW assisted in setting up, or directly set up, sponsored official "portals" for Imperial to market Habanos products on the U.S.-based social media platforms Twitter, YouTube, and Instagram.[9]

10.     Imperial's agent, WPP, through Y&R, BCW, and previously through a third WPP subsidiary, Ogilvy, has continuously marketed and publicized the RRHSC Property and the Habanos' products made at and shipped from there since at least 2010.

## Parties, Jurisdiction, and Venue

### Parties

11.     Plaintiffs Luis Manuel Rodriguez, Maria Teresa Rodriguez, Alfredo Ramon Forns, Ramon Alberto Rodriguez, Raul Lorenzo Rodriguez, and Francisco Ramon Rodriguez are individuals residing in Miami-Dade County, Florida.

12.     Plaintiff Christina Conroy is an individual residing in Montgomery County, Maryland.

13.     Each Plaintiff was a U.S. citizen prior to 1996, and each is a U.S. National under 22 U.S.C. § 6023(15)(B).

---

[9]    These portals include:
https://www.instagram.com/habanos_oficial/
https://twitter.com/Habanos_Oficial
https://www.youtube.com/channel/UCstGLy96wdZG7eCM4855_DA.

14.     Plaintiff Luis Manuel Rodriguez is the last surviving son of RRG. He obtained his interest in the Claim through RRG's will upon RRG's death in 1964.

15.     Plaintiff Maria Teresa Rodriguez, a/k/a Maria Teresa Landa, is the last surviving daughter of RRG. She obtained her interest in the Claim through RRG's will upon RRG's death in 1964.

16.     Plaintiff Alfredo Ramon Forns is the only child of RRG's daughter, Maria Mercedes Rodriguez ("MMR"). MMR, who was a U.S. citizen prior to 1996, obtained her interest in the Claim through RRG's will upon RRG's death in 1964. Plaintiff Alfredo Ramon Forns obtained his interest in the Claim by operation of law upon MMR's death in 2013.

17.     Plaintiff Ramon Alberto Rodriguez is the son of Ramon Francisco Rodriguez, ("RFR") who predeceased RRG. Plaintiff Ramon Alberto Rodriguez obtained his interest in the Claim through RRG's will upon RRG's death in 1964.

18.     Plaintiffs Raul Lorenzo Rodriguez and Francisco Ramon Rodriguez are the sons of Raul Bernardo Lupo Rodriguez ("RBLR"), and Christina Conroy is the only child of Alex Lorenzo Rodriguez ("ALR"), the third son of RBLR. ALR predeceased RBLR. RBLR obtained his interest in the Claim through RRG's will upon RRG's death in 1964. Plaintiffs Raul Lorenzo Rodriguez, Francisco Ramon Rodriguez, and Christina Conroy obtained one-half of their interest in the Claim by operation of law upon RBLR's death in 1986. The other half of RBLR's interest in the Claim was transferred by operation of law to his wife Esther Beltran Rodriguez ("EBR") upon RBLR's death in 1986. EBR, who was a U.S. citizen prior to 1996, passed her interest in the Claim to Plaintiffs Raul Lorenzo Rodriguez, Francisco Ramon Rodriguez, and Christina Conroy through her will upon EBR's death in 2019.

6

19.     Upon information and belief, Defendant Imperial, is a limited liability company incorporated in England and Wales, having its principal place of business in England.

20.     Upon information and belief, Defendant Habanos is a Cuban joint venture corporation 50% owned by Imperial, either directly or through one or more subsidiaries, and 50% owned by the Cuban government, either directly or through one or more Cuban-controlled entities. According to Imperial, "The international marketing of Cuban hand-made cigars is carried out through Habanos S.A., in which we have a 50 per cent stake."[10]

21.     Upon information and belief, Defendant WPP PLC ("WPP"), is limited liability company incorporated in the UK. WPP earns more income from the U.S than any other country.[11] WPP also leases over 2.8 million square feet of office space in the U.S.[12]

22.     Upon information and belief, Defendant Young & Rubicam LLC ("Y&R"), is a limited liability company incorporated in Delaware having its principal place of business in New York. Y&R is a subsidiary of WPP and has offices in Miami-Dade.

23.     Upon information and belief, Defendant BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW"), is a limited liability company incorporated in Delaware having its principal place of business in New York. BCW is a subsidiary of WPP and has offices in Miami-Dade.

**Jurisdiction and Venue**

24.     Plaintiffs' claim arises under 22 U.S.C. § 6021, et seq., and the amount in controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

---

[10]   *See* https://www.imperialbrandsplc.com/about-us/our-companies/tabacalera.html

[11]   *See* WPP Form 20-F filing with SEC for year ended 12/31/2017 at 10, https://www.sec.gov/Archives/edgar/data/806968/000119312518141442/d462033d20f.htm

[12]   *See id*. at 12.

Therefore, this Court has subject matter jurisdiction (federal question) pursuant to 28 U.S.C. § 1331.

25.     As further set out below, Habanos committed tortious acts in Miami-Dade County, Florida. In particular: (1) Habanos leases, possesses, controls, manages, uses, or otherwise acquired or holds an interest in the confiscated RRHSC Property[13]; (2) Habanos has engaged and continues to engage "in a commercial activity using or otherwise benefiting from" the RRHSC Property confiscated by Cuba[14]; and (3) Habanos "causes, directs [or] participates in . . . trafficking" by Imperial, WPP, Y&R, BCW, and by non-defendants, Twitter, YouTube, and Instagram.[15] These acts have caused damage to Plaintiffs, six of whom reside in Florida.

26.     As further set out below, Imperial committed tortious acts in Miami-Dade County, Florida. In particular, Imperial through its ownership in and its control of Habanos: (1) leases, possesses, controls, manages, uses, or otherwise acquired or holds an interest in the confiscated RRHSC Property[16]; (2) has engaged and continues to engage "in a commercial activity using or otherwise benefiting from" the RRHSC Property confiscated by Cuba[17]; and (3) "causes, directs [or] participates in, or profits from, trafficking" by Habanos and other joint venture companies owned by Imperial and Tabacuba, including Altabana, S.L.[18], as well as by WPP, Y&R, BCW,

---

[13]   *See* 22 U.S.C. § 6023(13)(A)(i).

[14]   *See* 22 U.S.C. § 6023(13)(A)(ii).

[15]   *See* 22 U.S.C. § 6023(13)(A)(iii).

[16]   *See* 22 U.S.C. § 6023(13)(A)(i).

[17]   *See* 22 U.S.C. § 6023(13)(A)(ii).

[18]   Altabana is a joint venture corporation 50% owned by Imperial, either directly or through one or more subsidiaries, and 50% owned by Cuba or Cuban-controlled entities. According to Imperial, Altabana holds Imperials "investments in subsidiary companies involved in the marketing and sale

Twitter, YouTube, and Instagram.[19] In addition, Imperial has further profited, or is attempting to further profit, from the confiscated RRHSC Property through its recent agreement to sell some or all of its interests in Habanos and other joint venture companies owned by Imperial and Tabacuba, involved in the manufacture, sale, marketing, and distribution of Cuban tobacco products that have value at least in part as a result of their engagement "in a commercial activity using or otherwise benefiting from" the confiscated RRHSC Property. The These acts have caused damage to Plaintiffs, six of whom reside in Florida.

27.     As further set out below, WPP committed tortious acts in Miami-Dade County, Florida. In particular, WPP through its ownership in and its control of Y&R and BCW "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Y&R, BCW, Twitter, YouTube, and Instagram.[20] These acts have caused damage to Plaintiffs, six of whom reside in Florida.

28.     Y&R committed tortious acts in Miami-Dade County, Florida. In particular, Y&R "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Twitter, YouTube, and Instagram.[21] These acts have caused damage to Plaintiffs, six of whom reside in Florida.

29.     BCW committed tortious acts in Miami-Dade County, Florida. In particular, BCW "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Twitter,

---

of Cuban cigars." *See* Imperial 2019 Annual Report at 166.

[19]   *See* 22 U.S.C. § 6023(13)(A)(iii).

[20]   *See* 22 U.S.C. § 6023(13)(A)(iii).

[21]   *See* 22 U.S.C. § 6023(13)(A)(iii).

YouTube, and Instagram.[22] These acts have caused damage to Plaintiffs, six of whom reside in Florida.

30.     Imperial knew in 2007, years after the passage of the Liberty Act, when it purchased its interest in Habanos and other entities engaged in trafficking in property confiscated by the Cuban government, that Habanos' operations would "be restricted . . . by the nationality of the personnel that" Imperial could "involve in" the Cuban cigar business that it decided to acquire whose business was based on trafficking in property confiscated by the Cuban government.[23]

31.     Notwithstanding, Imperial decided, beginning no later than 2010 and continuing at least through February 2020, to retain, either directly or through Habanos, WPP and its U.S.-based "U.S. Corporate Agents," Ogilvy and later Y&R and BCW, to engage in the marketing of, i.e., trafficking in, Cuban cigars manufactured at, stored in, or distributed from the confiscated RRHSC Property.[24] In addition, no later than 2017, Imperial also decided, either directly or through Habanos, WPP or its U.S. Corporate Agents, to contract for the use of social media "portals" operated by still additional U.S. corporations. These corporations include Twitter,

---

[22]     *See* 22 U.S.C. § 6023(13)(A)(iii).

[23]     *See* Imperial's October 12, 2007 "Response" to SEC inquiry at 2 (acknowledging that by acquiring "Altadis' 50% ownership interest in [Habanos] a company which distributes cigars manufactured in Cuba," Imperial "may be restricted . . . by the nationality of the personnel that we involve in these activities. In particular, Altadis' cigar operations in Cuba could be materially limited by the operation of the" the Liberty Act). Copy attached at Exhibit 4; *see id*. at 4 ("Altadis owns a 50% interest in Habanos, the remaining 50% of which is owned by the Cuban state.")

[24]     The marketing, merchandizing, or advertising services provided by Y&R and BCW are not exempted by the Liberty Act nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R § 515.206 (excluding from "exempt transactions" the: "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

Instagram and YouTube[25], all for the purpose of furthering Imperial and Habanos' ability to profit from the trafficking of property confiscated by the Cuban government, including the RRHSC Property.

32.     WPP similarly knew that its extensive U.S. business activities, conducted both directly and through its many wholly-owned subsidiaries, including Ogilvy, Y&R, and BCW, would render it "subject to the laws of the US . . . that impose sanctions and regulate the supply of services to certain countries." [26] These laws include, of course, the Liberty Act. WPP nevertheless decided to involve these three U.S. subsidiaries in marketing and publicizing products produced at, stored in and shipped from, the confiscated RRHSC Property. WPP thereafter used or allowed its U.S. subsidiaries to contract for the use of social media "portals" operated by still additional U.S. corporations, Twitter, Instagram and YouTube.

33.     Each of the acts described in paragraphs 25 – 32, above, constituted trafficking in violation of the Liberty Act. Further, each act of trafficking in the RRHSC Property caused damage to Plaintiffs, six of whom reside in Miami-Dade County.

---

[25]   The sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the Liberty Act nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public *at no cost to the user*") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . *organizations administered or controlled by the Government of Cuba*.") (emphasis added); *see also* 31 C.F.R § 515.206.

[26]   *See* WPP Form 20-F filing with SEC for year ended 12/31/2017 at 5, https://www.sec.gov/Archives/edgar/data/806968/000119312518141442/d462033d20f.htm (disclosing busines "risks" and acknowledging that: "Failure to comply with these laws could expose the Group [WPP] to civil and criminal penalties . . ..")

34.     Due to their extensive use of U.S. Corporate agents to market, publicize and assist in the trafficking, in violation of the Liberty Act, of property confiscated by the Cuban government, Defendants Habanos, Imperial and WPP should reasonably have anticipated the possibility that they would be sued in the United States by U.S. Nationals holding claims to property confiscated by the Cuban government, including this lawsuit on the Claim to the RRHSC Property.

35.     Due to their actions described above, all Defendants should further have reasonably anticipated the possibility that they would be sued in the United States by U.S. Nationals holding claims to property confiscated by the Cuban government, including this lawsuit on the Claim to the RRHSC Property, in the Southern District of Florida, which is widely-known to be home to over a million Cuban refugees and their successors, many of whom are U.S. Nationals owning claims to  property confiscated by the Cuban government.

36.     This Court has personal jurisdiction over each Defendant pursuant to the Florida "long-arm" statute, Section 48.193(1)(a), Florida Statutes, because each Defendant committed a tortious act within this state, either directly or through an agent, and the cause of action asserted against each Defendant arises from that tortious conduct.

37.      In the alternative, if Defendants are deemed not to have sufficient contacts with Florida despite their commission of multiple acts of trafficking in violation of the Liberty Act causing damage to Plaintiffs in Florida, Defendants are nevertheless subject to personal jurisdiction under the federal "long-arm" statute set out in Rule 4(k) of the Federal Rules of Civil Procedure.[27] If Defendants' personal contacts with any single state are not sufficient to subject

---

[27]     Rule 4(k) provides in relevant part: "(2) For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

them to personal jurisdiction in any particular state, Rule 4(k) allows the Court to consider a defendant's contacts with the U.S. as a whole where the claim asserted against the defendant arises under federal law. Plaintiffs' claim here arises under the federal Liberty Act. Therefore, Defendants' contacts with the U.S. as a whole, including Imperial, Habanos and WPP's reliance on Y&R, BCW, Twitter, YouTube, and Instagram to conduct marketing and social media campaigns in violation of the Liberty Act, are sufficient to satisfy the applicable constitutional requirements.

38.     Venue is proper in the Southern District of Florida under 28 U.S.C. §§ 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida.

### Facts

39.     Plaintiffs are U.S. Nationals as defined by the Libertad Act. *See* 22 U.S.C. § 6023(15).

40.     The RRHSC Property was owned and improved by RRHSC until the Cuban Government confiscation in 1961.

41.     As part of its takeover of the entire tobacco industry, the Castro government confiscated ownership of RRHSC and the RRHSC Property on June 30, 1961.[28]

42.     The communist Cuban Government maintains possession and control of the RRHSC Property and has not paid any compensation to Plaintiffs, or their predecessor RRG, for

---

[28] On June 30, 1961, by decision of the "Junta Central de Planificacion," Cuba's Central (Economic) Planning Board, Cuba's communist government confiscated ownership of RRHSC as part of it takeover of the entire tobacco industry. *See* excerpt at Exhibit 5; English translation of excerpt at Exhibit 5A; Spanish text of excerpt at Exhibit 5B. The Junta Central de Planificacion's decision and proclamation appears in Cuba's government register, the "Gaceta Oficial," No. 131 dated July 7, 1961, page 13203.

its seizure. Nor has any claim to the RRHSC Property been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure.

43.     Plaintiffs are the rightful owners of the Claim arising from Cuba's "nationalization" and uncompensated taking of the RRHSC Property.

44.     Upon information and belief, Imperial acquired its interest in Habanos in 2007 when it acquired "Altadis' 50% ownership interest in" Habanos "a company which distributes cigars manufactured in Cuba."  Imperial knew that its joint venture partner in Habanos and Altabana, Cuba (through its monopoly company, Tabacuba), acquired its interest in and control over the Cuban tobacco industry and the RRHSC Property by "nationalizing" assets when the rightful owners of the property fled the brutal Castro dictatorship.

45.     The RRHSC Property is currently in the exclusive control of the Cuban government through Tabacuba, Habanos and its joint venture partner, Imperial. Upon information and belief, Tabacuba and Habanos have continuously used the RRHSC property without authorization from the Rodriguez Family since at least 2010, and likely for many years before that. The unauthorized use of the RRHSC Property includes the production and shipping of millions hand-rolled cigars (sold under various premium brand names) and other tobacco products manufactured at the property, or manufactured at other nearby factories, and stored, processed or shipped from the RRHSC Property. Imperial and Habano's trafficking also includes use of the RRHSC Property for marketing and publicity of Habanos' products.[29]

---

[29]     *See* Composite Exhibit 6 containing pictures published by the Habanos website of "visit the factories" tours promoted by Habanos at the RRHSC Property. Exhibit 7 is a picture of the loading dock at the RRHSC Property in operation.

46.     Habanos itself documented its possession, control of, management, and use of the RRHSC Property. In a February 2010 publicity piece entitled: "Cigar Factory Readings and Readers," Habanos referred to the factory (the RRHSC Property) "Standing on famous 23rd Street in Havana's bustling Vedado neighborhood right between the 14th and 16th streets," as the "humongous and modern H. Upmann cigar factory." [30] The continuous use of the RRHSC Property includes the use of a portion of the RRHSC Property by Imperial's joint venture partner, Tabacuba, for its executive offices, and the use of the loading dock[31] and space for warehousing and shipping Habanos' products. Tabacuba's name appears prominently on the building.[32]

47.     Imperial, Habanos, and Tabacuba, (collectively, the "Direct Traffickers") knowingly and intentionally lease, possesses, control, manage, use, or otherwise acquired or hold an interest in the confiscated RRHSC Property, without the authorization of the Rodriguez Family. Each also has and continues to engage in a commercial activity using or otherwise benefiting from the confiscated RRHSC Property without the authorization of the Rodriguez Family.

48.     Imperial and its partner Tabacuba, through the joint venture companies they jointly control, have expanded their use of and benefit from the RRHSC Property by retaining agents to market and publicize the products produced at the confiscated RRHSC Property. The agents retained by Imperial and Habanos include WPP through its advertising agency subsidiaries, Y&R and BCW. Among other things, those agencies assisted in setting up, or directly set up, the sponsored "official" portals listed above on the Twitter, YouTube, and Instagram platforms (Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram, collectively, the "U.S. Corporate Agents"). The

---

[30]  *See* http://habanosnews.habanos.com/en/cigar-factory-readings-and-readers .

[31]  *See* Exhibit 7.

[32]  *See* Composite Exhibits 2 and 3.

work of the U.S. Corporate Agents on behalf of Imperial, Habanos and Tabacuba has included marketing and publicizing the Habanos' products manufactured in, stored at, or shipped from, the RRHSC Property. WPP, acting in serial and uninterrupted fashion first through Ogilvy and later through Y&R, and BCW, has continuously marketed and publicized the RRHSC Property, and the Habanos' products made at, stored in, or shipped from the RRHSC Property, since at least 2010.

49.     Between 2010 and 2015, WPP used a subsidiary known as Ogilvy to market Habanos products. Beginning in 2016, marketing of Habanos products was switched to Y&R, another WPP subsidiary. Most recently, beginning in 2019, marketing of Habanos products was again switched to still another WPP subsidiary, BCW. In each instance, the switch from one to another WPP subsidiary was done without any apparent break or interruption in marketing services. Indeed, although WPP ostensibly switched from using Y&R to using BCW as the Habanos trafficking marketer, BCW continued using the same contact address as Y&R had been using -- (press.habanos@yr.com).

50.     The Direct Traffickers have expanded their trafficking by retaining agents to assist in and further their trafficking in the property. The U.S. Corporate Agents have and, with the possible exception of Twitter, Instagram and Ogilvy, continue to, knowingly and intentionally, act as agents for the Direct Traffickers. Each has and continues to cause, direct, participate in, or profit from, the trafficking of the RRHSC Property by the Direct Traffickers, all without the authorization of the Rodriguez Family.

51.     Imperial recently announced that it "has agreed the sale of its worldwide premium cigar businesses," including the non-U.S. business it calls "the Rest of the World business

16

("Premium Cigar RoW").[33] By Imperial's own admission, these "assets" consist primarily of Imperial's interest in Cuban joint venture companies, including:

> A 50 per cent stake in Habanos S.A., which exports hand-made cigars from Cuba and is responsible for international marketing activities. . . .
>
> A 50 per cent stake in Altabana S.L., which is responsible for the distribution of Cuban cigars worldwide through its network of over 20 subsidiary distributors.
>
> A 50 per cent stake in Internacional Cubana de Tabaco, S.A., which is responsible for the manufacturing of Cuban premium machine-made cigars.
>
> A 50 per cent stake in Promotora de Cigarros, S.L., which manages the distribution of the Cuban premium machine-made cigar portfolio worldwide.
>
> Other sales of premium cigar products through Tabacalera SA including:
>
> Exclusive distribution of Cuban handmade cigars in Spain;

52.     Imperial has further profited, or is attempting to further profit, from the confiscated RRHSC Property through its recent agreement to sell some or all of its interests in Habanos and other Imperial subsidiaries involved in the manufacture, sale, marketing, and distribution of Cuban tobacco products that have value at least in part as a result of their engagement "in a commercial activity using or otherwise benefiting from" the confiscated RRHSC Property.

53.     Consistent with its purpose of "deter[ing] third party foreign investors from trafficking in confiscated property (defined as '**purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures** using property and assets some of which were confiscated from United States nationals.')[34], the Liberty Act defines trafficking in property confiscated by the

---

[33]     *See Imperial Brands PLC agrees sale of Worldwide Premium Cigar Business* at 1, https://www.imperialbrandsplc.com/media/key-announcements/2020/imperial-brands-plc-agrees-sale-of-worldwide-premium-cigar-busin.html

[34]     *See Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting 22 U.S.C. § 6081(5)).

Cuban government broadly. For purposes of the act, a person "traffics" in confiscated property if

that person "knowingly"[35] and intentionally:

> (i)      sells, transfers, distributes, dispenses, brokers, manages, or
> otherwise disposes of confiscated property, or purchases, *leases*, receives,
> *possesses*, *obtains control of*, *manages*, *uses*, or otherwise acquires or holds an
> interest in confiscated property,
>
> (ii)      *engages in a commercial activity using or otherwise benefiting
> from* confiscated property, or
>
> (iii)      *causes*, *directs*, *participates in*, *or profits from*, *trafficking* (as
> described in clause (i) or (ii)) *by another person*, *or otherwise engages in
> trafficking* (as described in clause (i) or (ii)) *through another person*, without the
> authorization of any United States national who holds a claim to the property.

*See* 22 U.S.C. § 6023(13) (emphasis added).

54.      Property is also broadly defined in the Liberty Act:

> The term "property" means any property (including patents, copyrights,
> trademarks, and any other form of intellectual property), whether real,
> personal, or mixed, and any present, future, or contingent right, security, or
> other interest therein, including any leasehold interest.

55.      The conduct described above constitutes trafficking in the RRHSC Property by

Imperial and Habanos. In particular, each knowingly and intentionally engages or engaged in a

commercial activity using or otherwise benefiting from the confiscated RRHSC Property, without

the authorization of the Rodriguez Family. Each also causes, directs, participates in, or profits

from, trafficking of the RRHSC Property by Cuba (and Tabacuba), again without the authorization

of the Rodriguez Family.

---

[35]      The term "knowingly" is defined in the Act as meaning "with knowledge or having reason
to know." *See* 22 U.S.C. § 6023(9).

56.     The conduct described above also constitutes trafficking in the RRHSC Property by WPP, Y&R, and BCW. In particular, by assisting Imperial, Habanos, and Tabacuba in marketing and publicizing the Habanos' products manufactured, stored at or shipped from the RRHSC Property, each causes, directs, participates in, or profits from, or otherwise engages in, trafficking in the RRHSC Property by Imperial, Habanos, and Cuba, all without the authorization of the Rodriguez Family.

57.     Imperial and its joint venture partner Cuba (Tabacuba) have profited substantially from trafficking in the confiscated RRHSC Property. According to data reported in Imperial's Annual Reports for the period from 2009 to 2019, "profits" earned by Imperial and Cuba from sales and distribution of Cuban cigars totaled over $1.5 billion. Total "revenues" exceeded $6.7 billion.[36] A significant portion of that profit and revenue was earned by trafficking in the confiscated RRHSC Property.

58.     Plaintiffs provided a thirty-day notice each to Imperial, WPP, Y&R and BCW (and to Habanos in care of Imperial) stating, as provided by 22 U.S.C. § 6082 (3)(B) –(D), Plaintiffs' intention to commence this action and demanding that each Defendant immediately cease unlawfully trafficking in the RRHSC Property.

59.     Notwithstanding Plaintiffs' notice, after the end of the 30-day period beginning on the date the notice was provided, each Defendant (with the possible exception of Y&R) continued to traffic in the confiscated RRHSC Property.

---

[36]     Imperial's profits and revenues are reported in GBP. The over $1.5 billion in "profits" and over $6.7 billion in "revenues" were calculated by adding the "profits" and "revenues" reported in GBP by Imperial for its Habanos and Altabana joint ventures for the years 2009 to 2019. Those figures were then converted to dollars at an exchange rate of 1.25 GBP per dollar. That result was then doubled two to reflect the presumably equal distribution of profits and revenues between Imperial and Cuba in their 50-50 joint venture companies.

**Claim for Damages**

60.     Plaintiffs incorporate and reallege paragraphs 1 through 59 as if fully set forth herein.

61.     This claim is brought pursuant to the Liberty Act, 22 U.S.C. § 6082.

62.     As set out above, beginning no later than 2010 (Imperial, Habanos, and WPP), or no later than 2016 (Y&R) or no later than 2019 (BCW), each Defendant trafficked in the RRHSC Property which was confiscated by the Cuban Government on or after January 1, 1959 in violation of the Liberty Act and is therefore liable to Plaintiffs, who own the Claim to the RRHSC Property, for money damages.

63.     Plaintiffs are entitled to money damages under 22 U.S.C. § 6082(a)(1)(A), including:

(i)     the amount which is the greater of--

. . . (II) the amount determined [by a special master pursuant to 22 U.S.C. § 6083(a)(2)]; or (III) the "fair market value" of the RRHSC Property, "calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater" ; and

(ii)    court costs and reasonable attorneys' fees.

64.     In addition, treble damages are warranted. Because Defendants (with the possible exception of Y&R) continued to traffic in the RRHSC Property after receiving notice from Plaintiffs pursuant to § 6082 (3)(B)–(D), Plaintiffs are entitled to three times the money damages

determined pursuant to § 6082(a)(1)(A), plus court costs and reasonable attorneys' fees. *See* 22 U.S.C. § 6082(a)(3)(B)-(C).

## Jury Trial Demand

Plaintiffs hereby demand a trial by jury.

Dated: August 6, 2020                          Respectfully submitted,

Rodriguez Tramont & Nuñez P.A.                 Berenthal & Associates, P.A.


By: /s/ *Paulino A. Núñez Jr.*                 By: /s/ *James L. Berenthal*
Frank R. Rodriguez                             James L. Berenthal
Florida Bar No. 348988                         Florida Bar No.126035
Email: frr@rtgn-law.com                        Email: jlb@berenthalaw.com
Paulino A. Núñez Jr.                           777 Third Avenue, Suite 22D
Florida Bar No. 814806                         New York, NY 10017-1426
Email: pan@rtgn-law.com                        Telephone:  (212) 302-9494
255 Alhambra Circle
Suite 1150
Coral Gables, FL 33134
Telephone: (305) 350-2300