UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LUIS MANUEL RODRIGUEZ, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>IMPERIAL BRANDS PLC, *et al.*,<br><br>     Defendants. | Case No.: 1:20-cv-23287-DPG |

### DEFENDANT IMPERIAL BRANDS PLC'S MOTION FOR A LIMITED STAY

  Defendant Imperial Brands plc ("Imperial") respectfully submits this motion for a limited stay to give the European Commission an opportunity to decide Imperial's pending request for authorization to defend itself in this litigation, so that Imperial can avoid the risk of criminal liability in its home jurisdiction. In support, Imperial states as follows:

### PRELIMINARY STATEMENT

  1. Plaintiffs sue under Title III of the Helms-Burton Act, seeking hundreds of millions of dollars in treble damages, based on allegations that Imperial is "trafficking" in real property—a factory in Havana—that the Cuban regime confiscated from Plaintiffs' ancestor nearly sixty years ago. There is no nexus between the lawsuit and this forum, save for Plaintiffs' residence.

  2. Several U.S. allies, including the European Union, oppose the extraterritorial application of Title III, and have enacted countermeasures. Imperial is a U.K.-incorporated, U.K.-headquartered company, all of whose alleged suit-related conduct took place outside the United States. The European Commission recently stated that EU law prohibits EU companies like Imperial from participating in Title III lawsuits—including by filing motions to dismiss—without

prior authorization from the European Commission. Violation of that restriction is a criminal offense under English law, punishable on indictment by an unlimited criminal fine.

3. Within eight days of service, Imperial applied to the European Commission for authorization to defend this lawsuit or, at minimum, for authorization in the first instance to file and litigate a motion to dismiss the complaint, and requested expedited review of its application. Subject to and without waiver of any of its defenses, including defenses as to jurisdiction,[1] Imperial now seeks a temporary stay of this case as against it until the *earlier* of: (a) forty-five days after the European Commission grants Imperial's request for authorization, or (b) February 9, 2021. Another Judge of this Court recently granted another EU-headquartered defendant similar relief in another Title III case.[2]

4. The limited stay that Imperial requests will promote important interests in international comity. A stay will avoid needlessly requiring Imperial to choose between (a) defying the European Commission by filing a motion to dismiss without prior authorization, and risking criminal proceedings in its home jurisdiction, or (b) defaulting on the September 9, 2020 deadline

---

[1] *Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675, 678 (11th Cir. 2009) ("[A] motion to stay is neither a responsive pleading nor a motion made under Rule 12, and thus does not operate as a waiver of the defense of lack of personal jurisdiction under Rule 12(h).").

When the European Commission authorizes it to file a motion to dismiss, Imperial will demonstrate, *inter alia*, that the complaint reveals no basis to subject Imperial to personal jurisdiction. The complaint rightly does not attempt to plead that this U.K.-incorporated, U.K.-headquartered company is subject to the Court's general jurisdiction. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317-22 (11th Cir. 2018). The complaint equally reveals no basis for specific jurisdiction, because the claim does not arise out of or relate to any connection between Imperial and the forum. *Id.* at 1313. In particular, *Plaintiffs*' residence in the forum does not support the exercise of specific jurisdiction. *Id.* at 1315-16. *See also* Order at 6-16, *Iglesias v. Pernod Ricard*, No. 1:20-cv-20157-KMW (S.D. Fla. Aug. 17, 2020), ECF No. 55 (dismissing Title III case for lack of personal jurisdiction); *Del Valle v. Trivago GmbH*, Civil Action No. 19-22619-Civ-Scola, 2020 WL 2733729, at *2-4 (S.D. Fla. May 26, 2020) (same).

[2] Ex. A (Order, *Marti v. Iberostar Hoteles y Apartamentos, S.L.*, No. 20-20078-Civ-Scola (S.D. Fla. Apr. 24, 2020), ECF No. 17).

to respond to the complaint in this case. Such a stay will protect Imperial without causing any cognizable prejudice to Plaintiffs. There is nothing emergent about the purely monetary relief that Plaintiffs seek, and nothing will prevent them from prosecuting their claim once the short stay expires. Moreover, Plaintiffs cannot plausibly argue that a stay of the requested duration is unreasonable, given that it took them almost sixteen months to file this lawsuit after Title III went into effect, and almost five months to file and serve the complaint on Imperial after they first threatened to do so. Finally, the requested stay will preserve judicial resources, by allowing Plaintiffs' claim to be adjudicated on the merits, without unnecessary default-judgment proceedings before this Court or the risk of criminal proceedings in the United Kingdom.

## BACKGROUND

**Title III of the Helms-Burton Act Causes "Uproar" Among U.S. Allies**

5. In 1996, Congress enacted Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081-85, for the purpose of deterring foreign investment in and business with Cuba. *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006). To that end, Title III purports to create a new "statutory right of action against any person or entity who traffics in property confiscated by the Cuban government from any American citizen or company." *Odebrecht Constr., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1311 (S.D. Fla. 2012). Trafficking includes "knowingly and intentionally" engaging in "commercial activity using or otherwise benefiting from confiscated property" and profiting from trafficking committed by another. 22 U.S.C. § 6023(13)(A)(ii), (iii).

6. Although labeled "money damages," *id.* § 6082(a)(1)(A), the Title III statutory remedy is unconnected to any harm caused by the alleged trafficking. Rather, the "trafficker" is liable to "any United States national who owns the claim to" property confiscated by the Cuban government for three-times the greater of (a) the present fair-market value of that property, or

(b) the value at the time of confiscation plus compound interest at the judgment rate. *Id.* § 6082(a)(1)(A)(i)(III), (1)(B), (3)(B), (3)(C)(ii).

7. "The passage of the [Helms-Burton] Act caused an international uproar among United States' allies due to the extraterritorial reach of Title III." *Odebrecht Constr., Inc.*, 876 F. Supp. 2d at 1311-12 (citations omitted). "In light of the foreign reaction to Title III," successive Presidents suspended the statute from 1996 through 2019 because they determined that doing so was "necessary to the national interests of the United States" and would "expedite a transition to democracy in Cuba." *Id.* at 1312-14; *see* 22 U.S.C. § 6085(b) (authorizing the President to suspend Title III). In May 2019, however, President Trump lifted the suspension, and Title III became effective. *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/. Thereafter, plaintiffs began filing Title III cases—including this case—in this and other districts.

**The European Union and United Kingdom Enact Countermeasures to Title III**

8. Meanwhile, the United States' allies, including the European Union, Canada, and Mexico, enacted measures to counteract Title III's extraterritorial effect. *Odebrecht Constr., Inc.*, 876 F. Supp. 2d at 1312; *see also* Jürgen Huber, The Helms-Burton Blocking Statute of the European Union, 20 Fordham Int'l L.J. 699-701 (1996) ("Huber") (describing the EU's measures aimed at "neutralizing the extra-territorial effects" of Title III).

9. As relevant here, the EU implemented a regulation, Council Regulation (EC) No. 2271/96, based on findings that the extraterritorial application of Title III would violate international law and impede the attainment of important EU policies, including the harmonious development of world trade, the free movement of capital, and the removal of restrictions on direct investment. Ex. B (Council Regulation (EC) No. 2271/96, Protecting Against the Effects of the Extra-Territorial Application of Legislation Adopted by a Third Country, and Actions Based

4

Thereon or Resulting Therefrom, 1996 O.J. (L 309) 1 (EC) ("Regulation 2271/96");[3] *see also* Huber, *supra*, at 711-13. Regulation 2271/96's "main purpose" is to "protect EU operators engaging in lawful international trade and/or movement of capital as well as related commerce activities with third countries in accordance with EU law." Ex. C (Guidance Note, Questions and Answers: adoption of update of the Blocking Statute (2018/C 277 I/03)) ¶ 1. In particular, the EU maintains that EU companies must be "free to choose whether to start working, continue, or cease business operations" in Cuba, free of the coercive, extraterritorial application of Title III. *Id.* ¶ 5.

10.  To that end, Regulation 2271/96 prohibits EU-incorporated companies such as Imperial from complying, directly or indirectly, actively or by deliberate omission, with any requirement or prohibition, including requests of U.S. courts, based on or resulting, directly or indirectly, from Title III or from lawsuits filed under Title III. Ex. B (Regulation 2271/96) Art. 5;[4] Ex. C (Guidance Note) ¶ 4; *see also* Huber, *supra*, at 702-05. The defendant in another Title III case pending in this District recently reported that the European Commission takes the position that, absent authorization, Regulation 2271/96 "prohibits [the defendant] from actively appearing before U.S. courts pursuant to the relevant summons or any others based on Title III of the Helms-Burton Act, *including the filing of a Rule 12 motion*." Ex. D (Defendants' Response to Plaintiff's Motion to Lift Stay, *Marti v. Iberostar Hoteles y Apartamentos, S.L.*, No. 20-20078-Civ-Scola (S.D. Fla. Aug. 10, 2020), ECF No. 22) ¶ 7 (emphasis added).

11.  The EU Member States are required to impose "effective, proportional and *dissuasive*" sanctions on those who violate Regulation 2271/96. Ex. B (Regulation 2271/96) Art.

---

[3]   Regulation 2271/96 was amended in 2018, purely to address changes to U.S. sanctions against Iran. *See* Commission Delegated Regulation (EU) 2018/1100, *available at* https://eur-lex.europa.eu/legal-content/EN/TXT/PDF/?uri=CELEX:32018R1100&from=EN.

[4]   EU regulations create directly effective law in the EU member states. *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 354 (7th Cir. 2015).

9 (emphasis added); *see also* Huber, *supra*, at 706. In the United Kingdom, where Imperial is incorporated and headquartered, violation of Regulation 2271/96 is a criminal offense, punishable on indictment by an unlimited fine. *See* Ex. E (Statutory Instrument 1996 No. 3171 (The Extraterritorial U.S. Legislation (Sanctions against Cuba, Iran and Libya) (Protection of Trading Interests) Order 1996) ¶ 2(1)(a), Explanatory Note.[5]

12. However, the European Commission may authorize an EU-incorporated company such as Imperial to participate in a Title III lawsuit, if the applicant demonstrates that nonparticipation would cause serious damage to the interests of the applicant or of the EU. Ex. B (Regulation 2271/96) Arts. 5, 7-8;[6] Ex. C (Guidance Note) ¶¶ 16-20. The EU has established a confidential process and promulgated detailed criteria that the Commission must consider when evaluating such an application. Ex. F (Commission Implementing Regulation (EU) 2018/1101) Arts. 3-5. When determining the timeframe for its decision on an application for authorization, the European Commission is required to "take fully into account" the time limits to which the applicant is subject, Ex. B (Regulation 2271/96) Art. 7(b), and will process requests "as swiftly as possible," Ex. C (Guidance Note) ¶ 19.

13. Regulation 2271/96 will be incorporated into English law as "retained EU law" after the conclusion of the "Brexit" transition period on December 31, 2020. Ex. G (Draft The Protecting against the Effects of the Extraterritorial Application of Third Country Legislation

---

[5] The 1996 Statutory Instrument was amended in 2018, purely to reflect the 2018 amendment of Regulation 2271/96 referenced in footnote 3 above that addressed changes to U.S. sanctions against Iran. *See* Statutory Instrument 2018 No. 1357 (The Extraterritorial U.S. Legislation (Sanctions Against Cuba, Iran and Libya) (Protection of Trading Interests) (Amendment) Order 2018), *available at* https://www.legislation.gov.uk/uksi/2018/1357/pdfs/uksi_20181357_en.pdf.

[6] The EU Commission is the executive and administrative organ of the EU. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 250 (2004) (citation and quotation marks omitted).

(Amendment) (EU Exit) Regulations 2019), Explanatory Note. As of January 1, 2021, a U.K. Secretary of State will assume the role of the European Commission in resolving requests from U.K.-based entities like Imperial for authorization to respond to a Title III action. *Id.* Part 3 & Explanatory Note.

**Plaintiffs File This Title III Case Sixteen Months After Title III Became Effective, and Almost Five Months After They Threatened To Do So**

14. A March 2020 letter from Plaintiffs' counsel alleged that Imperial is "trafficking" in property—a cigar factory in Havana, Cuba—that belonged to Plaintiffs' ancestor and that the Cuban government confiscated in 1961. Ex. H at 2-4. Plaintiffs stated that unless Imperial ceased its alleged trafficking within thirty days, they would file a Title III lawsuit seeking $405 million in treble damages, plus attorneys' fees. *Id.* at 12. Imperial's counsel responded that there is no basis for any such claim, including because evidence from public sources reveals that the factory has been closed for the better part of a decade. Therefore, Plaintiffs would not be able to allege compliance with 22 U.S.C. § 6084, which provides that a Title III claim "may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." Ex. I.

15. After Plaintiffs' March 2020 letter, Imperial heard nothing from Plaintiffs for almost five months, until they served the summons and complaint at Imperial's U.K. headquarters on August 19, 2020. Absent a stay, Imperial's response to the complaint is due on September 9, 2020. Fed. R. Civ. P. 12(a)(1)(A)(i).

16. In light of the European Commission's position that Regulation 2271/96 prohibits an EU operator such as Imperial from moving to dismiss a Title III action without prior authorization, *supra* ¶ 10, on August 27, 2020, Imperial sought authorization to defend this lawsuit or, at a minimum, for authorization in the first instance to file and litigate a motion to dismiss the complaint. Declaration of Andrew Rhys Davies (Aug. 28, 2020) ¶¶ 4-5 (filed separately).

17.     Imperial now seeks a modest stay of proceedings to allow the European Commission time to evaluate Imperial's application, and to avoid exposing Imperial to the risk of criminal liability by forcing it to respond to this lawsuit without authorization. The Court should order that Imperial's response to the complaint be due on the *earlier* of (a) forty-five days after the European Commission grants Imperial's request for authorization, or (b) February 9, 2021 (*i.e.*, five months after Imperial's existing deadline to respond to the complaint).

## LEGAL STANDARD

18.     Notwithstanding that "[f]ederal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred upon them," "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 (11th Cir. 1994) (quoting *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)). Abstention on international-comity grounds can justify far-reaching relief, extending even to the dismissal of a lawsuit. *See, e.g., Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227 (11th Cir. 2004). Here, however, Imperial seeks much more modest relief—a limited stay pending a decision by the European Commission on Imperial's request for authorization to defend this lawsuit.

19.     District courts have broad inherent authority to stay their proceedings. *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000). A stay may be justified "simply as a means of controlling the district court's docket and of managing cases before the district court." *Id.* "And, in some cases, a stay might be authorized also by principles of abstention." *Id*. (citation omitted). The temporary stay sought here would serve three important objectives, by promoting: "(1) a proper level of respect for the acts of our fellow sovereign nations," also known as "international comity," "(2) fairness" to the parties; and "(3) efficient use of scarce judicial resources." *Turner Entm't Co.*, 25 F.3d at 1518. And because the requested stay

is time-limited, it does not violate the bar on "immoderate" stays. *Ortega Trujillo*, 221 F.3d at 1264.

## ARGUMENT

**International Comity Requires a Temporary Stay to Allow the European Commission an Opportunity to Decide Imperial's Request for Authorization to Defend this Action**

20. A temporary stay is necessary to promote international comity—the recognition "which one nation allows within its territory to the legislative, executive, or judicial acts of another nation." *Turner Entm't Co.*, 25 F.3d at 1519 (internal quotations and citation omitted). The United States Supreme Court has admonished courts to "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987). As the Eleventh Circuit put it: "Courts and legislatures should take *every reasonable precaution*" to avoid subjecting participants in global commerce to "differing legal commands of separate sovereigns." *In re Grand Jury Proceedings*, 691 F.2d 1384, 1391 (11th Cir. 1982) (emphasis added; citation and quotation marks omitted).

21. Here, absent a stay, Imperial is obliged to respond to the complaint by September 9, 2020. Under the EU's recently articulated position, Imperial is obliged *not* to respond to the complaint until the European Commission has granted authorization. Imperial sought such authorization promptly after service. *Supra* ¶ 16. This is precisely the kind of "special problem," *Société Nationale Industrielle Aérospatiale*, 482 U.S. at 546, "entangled in international relations," *Ungaro-Benages*, 379 F.3d at 1237, that implicates international-comity concerns. Here, those concerns require issuance of a temporary stay, to permit the European Commission to consider Imperial's pending request for authorization.

22. The Eleventh Circuit has often held that it is appropriate to stay district-court proceedings in the interests of international comity, usually in the context of parallel proceedings in another jurisdiction. *See e.g.*, *Turner*, 25 F.3d at 1523; *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1223-24 (11th Cir. 1999); *Dash 224, LLC v. Aerovias de Integracion Reg'l Aires, S.A.*, No. 1:13-cv-22796, 2014 WL 11456463, at *5 (S.D. Fla. Mar. 27, 2014), *aff'd*, 605 F. App'x 868 (11th Cir. 2015).

23. Consistent with these authorities, the Honorable Robert N. Scola, Jr. recently stayed a Title III action against an EU defendant "in the interest of international comity," pending the European Commission's decision on a request for authorization to file a motion to dismiss. Ex. A (Order, *Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 20-20078-Civ-Scola (S.D. Fla. Apr. 24, 2020) ("*Iberostar*"), ECF No. 17).[7] Judge Scola noted that under Spanish law, the Spanish defendant in that case faced a penalty of EUR 600,000 if it participated in the U.S. litigation without authorization from the European Commission. *Id.* Here, Imperial faces much greater potential liability, in the form of an unlimited criminal fine. *Supra* ¶ 11.

24. This Court should adopt the same approach, and grant Imperial's request for a limited stay. That relief is consistent with the comity factors set forth in the Restatement, which courts often reference as a guide to comity. *See, e.g.*, *United States v. MacAllister*, 160 F.3d 1304, 1308-09 (11th Cir. 1998). Those factors support a stay here because the EU views the extraterritorial application of Title III to EU companies as contrary to international law, asserts a strong interest in permitting its companies to engage in international trade, and takes the position that its companies must not respond to Title III lawsuits without authorization. Restatement (Third) of Foreign Relations Law § 403(2)(a), (b) (1987). Moreover, Imperial is a foreign entity whose

---

[7] A move to vacate the stay is pending before Judge Scola. *See Iberostar*, ECF Nos. 21-23.

alleged conduct took place entirely overseas. *Id.* § 403(2)(c), (e)-(h). *See supra* ¶¶ 2, 14. At a minimum, these factors demonstrate that the EU's interest in this matter is more than strong enough to warrant a temporary stay. A stay will allow Imperial to respect the EU's recently articulated view that authorization is required before an EU company can move to dismiss a Title III lawsuit, avoid the needless risk of being found to have violated EU law, and defend this lawsuit.

**The Temporary Stay Sought Here Is Fair to the Parties**

25. The requested temporary stay is appropriate under the circumstances of this case because it will protect Imperial without prejudicing Plaintiffs. *Turner Entm't Co.*, 25 F.3d at 1522 ("a federal court must be satisfied that its decision will not result in prejudice to the party opposing the stay"). Plaintiffs initiated this lawsuit with full knowledge—based on the pleadings in *Iberostar*—that Imperial, as an EU company, would need time to seek authorization from the European Commission before it could respond to the complaint. Moreover, there is nothing emergent about the purely monetary relief that Plaintiffs are seeking, and they have demanded interest that would compensate them for any short delay in payment. ECF No. 1 (Compl.) ¶ 63. As the stay will not prevent Plaintiffs from prosecuting their claim, this is nothing like cases in which comity-related relief has been denied because it would irrevocably impair a party's rights. *Cf. In re Grand Jury Proceedings*, 691 F.2d at 1391 (quashing a grand jury subpoena on comity grounds would "emasculate the grand jury process").

26. Indeed, the stay that Imperial is seeking is comparable in duration to the time it took Plaintiffs to file and serve their complaint on Imperial after they first threatened to do so, and is significantly shorter than the sixteen months it took Plaintiffs to initiate this action after Title III became effective. *Supra* ¶¶ 7, 14-15. Moreover, even now, three weeks after Plaintiffs filed this lawsuit, the public docket reflects that Plaintiffs still have not issued a summons against one of the

defendants, much less served that defendant. Under all of these circumstances, Plaintiffs have no plausible claim that the modest stay sought here would cause any cognizable prejudice.

27. By contrast, Imperial faces a risk of significant harm, absent a stay. Imperial would have to choose between (a) filing a motion to dismiss without authorization and risking criminal prosecution in its home jurisdiction, together with the resulting monetary and reputational harm, and (b) not responding to the complaint and risking entry of an (unwarranted) default judgment. There is no reason to place Imperial in that invidious position, for the sake of a short delay. A stay is properly granted when, as here, it will "ensur[e] the ability of the parties to fully and fairly litigate their claims." *Turner Entm't Co.*, 25 F.3d at 1522.

**A Temporary Stay Would Preserve Scarce Judicial Resources**

28. The stay that Imperial seeks here is also warranted to promote the "efficient use of scarce judicial resources." *Id.* at 1518. There is a strong public-policy preference for adjudicating cases on the merits, rather than by default. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316-17 (11th Cir. 2002). Imperial seeks this stay precisely so that it can defend itself. Moreover, granting a temporary stay so that this case can be decided on the merits will avoid the need both for unnecessary default-judgment proceedings here and, potentially, collateral litigation arising from such proceedings, and criminal proceedings in the United Kingdom.

**The Requested Stay Is Limited in Duration**

29. Finally, the requested stay should be granted because it is appropriately limited in duration. *Ortega Trujillo*, 221 F.3d at 1264 (stay must not be "immoderate"). There is an outer limit of February 9, 2021, and the stay will expire sooner if Imperial's request for authorization is granted more quickly. *See e.g.*, *Morrissey v. Subaru of Am., Inc.*, No. 1:15-cv-21106-KMM, 2015 WL 4512641, at *2 (S.D. Fla. July 24, 2015) (stay was appropriate where moving party "identified the specific resolution point that will terminate the stay"). Indeed, because the European

Commission has already been addressing the complexities of these issues in the context of *Iberostar*, it is quite possible that Imperial's application could be resolved expeditiously.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(3)

Imperial has conferred with Plaintiffs' counsel about its request to stay these proceedings as against it in accordance with Local Rule 7.1(a)(3), and Plaintiffs' counsel does not agree to the requested relief. Counsel for other defendants as to which Plaintiffs have issued summonses and purported to serve process—WPP plc, Young & Rubicam LLC and BCW LLC—consent to the relief requested.

Imperial also requested that Plaintiffs' counsel consent to an extension of Imperial's deadline to respond to the complaint pending resolution of this motion. Plaintiff's counsel refused to do so, offering only a short extension that could require Imperial to respond to the complaint before a ruling on this motion to stay. Imperial will therefore be separately filing a motion to extend its time to respond to the complaint while the present motion to stay is pending.

WHEREFORE, Imperial respectfully requests that the Court enter an order staying the proceedings as against Imperial until the earlier of: (a) forty-five days after the European Commission grants Imperial's request for authorization, or (b) February 9, 2021.

Dated: August 28, 2020
Miami, Florida

Respectfully submitted,

/s/ Mark Raymond
NELSON MULLINS BROAD & CASSELL
Mark Raymond
Mark.Raymond@nelsonmullins.com
Jonathan Etra
Jonathan.Etra@nelsonmullins.com
2 South Biscayne Blvd., 21st Floor
Miami, FL 33131
Telephone: (305) 373-9400

ALLEN & OVERY LLP
Andrew Rhys Davies (*pro hac vice pending*)
andrewrhys.davies@allenovery.com
Justin L. Ormand (*pro hac vice pending* )
justin.ormand@allenovery.com
1221 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 610-6300

*Attorneys for Defendant Imperial Brands plc*