UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 1:20-cv-20078-RNS**

MARIA DOLORES CANTO MARTI, as
personal representative of the Estates of
Dolores Marti Mercade and Fernando Canto
Bory,

    Plaintiff,

v.

IBEROSTAR HOTELES Y
APARTAMENTOS, S.L., a Spanish limited
liability company,

    Defendant.

_____/

### **DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO LIFT STAY**

Defendant IBEROSTAR HOTELES Y APARTAMENTOS, S.L.U. ("Iberostar") submits this Response to Plaintiff's Motion to Lift Stay in the above-titled action (ECF No. 21) (the "Motion"). The proceedings were stayed by this Court on April 24, 2020 (the "Stay"), "pending the Iberostar's request for authorization from the European Commission" (ECF No. 17) (the "Order"). In support of Defendant's opposition to Plaintiff's Motion, Defendant states as follows:

### I.   PRELIMINARY STATEMENT

1. The European Commission requires an EU-based company to obtain authorization before it can file a response to any lawsuit brought under the Cuban Liberty and Democratic Solidarity (Libertad) Act (the "Helms-Burton Act" or the "Act"). This requirement arises from Council Regulation 2271/96, *Protecting Against the Effects of the Extra-Territorial Application of*

*Legislation Adopted by a Third Country, and Actions Based Thereon or Resulting Therefrom*, 1996 O.J. (L 309) 1 (EC) (the "Council Regulation 2271/96").

2. On April 15, 2020, Iberostar filed an application for authorization to the European Commission to respond to the Complaint in this action (the "Application").

3. On May 19, 2020, the European Commission acknowledged receipt of Defendant's Application.

4. On June 15, 2020, Iberostar requested the European Commission to provide an update on the status of the Application.

5. On June 22, 2020, the European Commission confirmed that it is "currently assessing [Defendant's] application," and that the Commission does "[its] utmost to ensure that a decision is taken in due course."

6. The Order staying the case was entered on April 24, 2020, and required Iberostar to submit a status report every 30 days regarding Iberostar's request for authorization. Since the last status report filed by Iberostar, the European Commission, on July 24, 2020, requested additional information from Iberostar.

7. This morning, on August 10, 2020, the European Commission informed Iberostar that "the duration of the administrative procedure pursuant to Article 5, second paragraph, [of Council Regulation 2271/96] varies according to the complexity of the case." It also stated that "the procedure requires extensive consultation of both the Commission's services and Member States' authorities," and reminded Iberostar that "until and unless [Iberostar] receives an explicit authorisation from the Commission, Article 5, first paragraph, prohibits [Iberostar] from actively appearing before U.S. courts pursuant to the relevant summons or any others based on Title III of the Helms-Burton Act, including the filing of a Rule 12 motion."

8. When Defendant sought the Stay, Defendant was confident the European Commission would resolve the Application within ten weeks. This estimate was based upon the European Commission traditional practice in other matters and because the application sought it be considered on an expedited basis. *See* Declaration of Hermenegildo Altozano, ¶ 5 (ECF No. 16-2). However, we believe this is the first time the European Commission has considered an authorization request under Council Regulation 2271/96 based on a claim under the Helms-Burton Act.[1] Because the process is confidential and may be without precedent it has taken longer than anticipated. The current pandemic has also slowed down the processing of Iberostar's Application, making it difficult to make a prediction at this point. Defendant is doing everything in its power to assist the process, keeping the Commission informed of the need and status in this litigation, and emphasizing to the Commission the importance of its resolution of Defendant's Application.

9. The Order should be maintained and the Stay should not be lifted in order to provide Defendant a fair opportunity to obtain the authorization it needs to participate in these proceedings, and avoid the EUR 600,000 in fines for each breach that Defendant is exposed to if it does not obtain authorization to defend itself in this action.

10. The Stay is warranted, moderate and consistent with Eleventh Circuit precedent. As such, the Order should not be vacated. The Stay is warranted on international comity grounds because the Council Regulation 2271/96 requires Iberostar to obtain authorization before it files a motion to dismiss with this Court. Title III is in conflict with an EU statute that condemns the

---

[1] Defendant cannot comment on Plaintiff's speculative statement that "[i]t appears that a similarly situated defendant has filed a motion to dismiss a Title III Helms-Burton action in this district without any apparent authorization from the European Commission." Motion at n.4 (ECF No. 21). Any proceeding before the European Commission is confidential and it is impossible for Defendant—or any third party—to confirm whether or not such defendant has sought authorization from the European Commission, or otherwise been granted or denied such a request.

3

title and imposes strict requirements on its European citizens due to its extra territorial scope and application. The proceeding to obtain authorization is progressing as demonstrated by the fact that the European Commission sought additional information from Iberostar as recently as ten days ago. The Stay is the only way for Defendant to answer this Court's summons without facing fines and be in violation of European regulations. Importantly, Defendant is not seeking to avoid U.S. litigation by invoking a foreign blocking statute, but the opposite. Defendant is seeking authorization to engage in U.S. litigation despite the existence of a foreign blocking statute. The difference is dispositive of the Motion, which should be denied.

11. The time that has elapsed under the Stay that is in place is not immoderate. Ninety days is not excessive in light of the pandemic and the issues raised by the Helms-Burton Act claim against Iberostar, a Spanish entity. The 30 day status reports provide a mechanism to ensure the matter does not linger indefinitely.

## II. LEGAL STANDARD

12. The Supreme Court has recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "How this can best be done calls for the exercise of judgment, which must weigh competing interest and maintain an even balance." *Id*. at 254-55.

13. "A variety of circumstances may justify a stay pending resolution of a related case in another court." *Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000). Here, however, there is no "related case in another court," *id.*, but a proceeding before a European agency, the European Commission, in which Defendant is seeking permission to participate in the litigation brought by Plaintiff before this Court. The Supreme Court has held that

4

abstention principles "permit a federal court to enter a stay order that *postpones* adjudication of the dispute." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719, 116 S. Ct. 1712, 1722 (1996) (emphasis in the original) (internal citations omitted). It is well-settled that "a district court has the authority to stay proceedings on its own motion or on motion of the parties." *In re Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011) (*citing Landis*, 299 U.S. at 254 (noting that federal courts have inherent authority to stay proceedings)) (other internal citations omitted). "Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency." *Cypress Chase Condo. Ass'n "A" v. QBE Ins. Corp.*, No. 10-61987-CIV, 2011 U.S. Dist. LEXIS 41104, 2011 WL 1544860, at *15 (S.D. Fla. Apr. 15, 2011). In the Eleventh Circuit, the critical question for a district court in deciding a stay request is whether the related proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir.2009); *accord In re Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011).

### III. MEMORANDUM OF LAW

14. This Court granted the Stay "[i]n the interest of international comity," Order at ¶ 2, and properly limited the Stay's scope, as required by the Eleventh Circuit, until the European Commission decides Iberostar's Application. *Trujillo*, 221 F.3d at 1264. The Stay is not "immoderate," *id.*, or indefinite. The Stay is warranted to provide Iberostar a fair opportunity to obtain an authorization from the European Commission to comply with this Court's summons, and as such it should not be lifted. As a European entity, Iberostar has no alternative in order to comply with applicable European regulations but to seek authorization from the European Commission.

### I. International Comity Warrants the Stay of this Proceeding Until the European Commission Decides Iberostar's Application for Authorization to Comply with this Court's Summons

15. International comity is an abstention doctrine that reflects "[t]he extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation." *Hilton v. Guyot,* 159 U.S. 113, 163, 16 S.Ct. 139, 40 L.Ed. 95 (1895). It "serves as a guide to federal courts where the issues to be resolved are entangled in international relations." *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004) (internal citations omitted). Comity "is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014) (internal citations omitted).

16. The issues to be resolved here, namely, Plaintiff's claims brought against a European entity under Title III of the Helms-Burton Act, "are entangled in international relations." *Ungaro–Benages,* 379 F.3d at 1237. As explained in Defendant's Motion to Stay, under Council Regulation 2271/96, Iberostar faces EUR 600,000 in sanctions for each breach of that regulation, including failure to obtain authorization from the European Commission before it files a motion to dismiss with this Court. (ECF No. 16 at ¶ 3.) *See also* Order at ¶ 2 (ECF No. 17).

17. The Stay acknowledges an "expression of understanding" of a United States' district court to Defendant's difficult position, based on its European nationality and domicile and two conflicting legal systems. *GDG Acquisitions*, 749 F.3d at 1030 (internal citations omitted). The Stay also "demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws," *Id*. It is Defendant's "international duty," as a

6

European entity, to obtain permission to comply with this Court's summons. *Id.* It is also a matter of "convenience" to allow Defendant to obtain such authorization before this litigation proceeds. *Id.* Both Defendant's Motion for a Stay and the Order demonstrated "due regard . . . to the rights of persons protected under [the Act]," because Defendant sought, and the Order granted, time to obtain permission from the Commission to engage in Plaintiff's litigation, not to avoid it.

18. Further, the Stay is warranted because the related proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir.2009); *accord In re Braga*, 789 F. Supp. 2d 1294, 1310 (S.D. Fla. 2011). The proceeding before the European Commission arises from a blocking statute engendered by the enactment of Title III of the Act. The Commission's proceeding will therefore have a substantial effect on Iberostar's rights and obligations under both U.S. and European law. *Id.*

19. Plaintiff correctly states that, the doctrine of comity has "historically been extended to foreign proceedings in which a judgment has been rendered." *French Cuff v. Markel Am. Ins. Co.*, 2007 U.S. Dist. LEXIS 115813, *6. *See* Motion at p. 3. This is not such a case because no judgment has been rendered in foreign proceedings here.

20. Plaintiff asserts the Stay was improperly entered "where there is no judgment from a court in another country." Motion at p. 4. To support her statement, Plaintiff cites to *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1025 (11th Cir. 2014). In *GDG Acquisitions*, the Eleventh Circuit reversed a decision by a district court *dismissing* an action on prospective international comity grounds, based on interests "in resolving the dispute in a foreign forum." *GDG Acquisitions*, 749 F.3d at 1030. Plaintiff's reference is misplaced

7

because there is not such an interest here.  Far from asking this Court to dismiss Plaintiff's action to have it "resolv[ed]" in Spain, Iberostar is seeking permission in Europe to engage in litigation in the U.S.  *Id.*  The outcome in *GDG Acquisitions* is inapposite here.

21. Plaintiff further quotes a Second Circuit case, *Pravin Banker Assocs. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997), and its holding that Courts will not yield to foreign proceedings, however, if deferring would "be contrary to the policies or prejudicial to the interests of the United States."  *Id.  See* Motion at p. 3.  Not only is Iberostar not requesting that this court yield to foreign proceedings, but Plaintiff failed to argue any policy or interest of the United States that is being prejudiced by the Stay, which was granted precisely to allow Iberostar to properly appear in this U.S. litigation.  In *Pravin*, the assignee of a creditor sued the Republic of Peru and its instrumentality seeking the enforcement of Peruvian debt.  Peru had started efforts to negotiate the settlement of its unpaid debt and sought the stay of the enforcement proceeding in the U.S. to avoid "a creditor stampede to find and attach Peruvian assets."  *Pravin* 109 F.3d at 853.  The Second Circuit noted that "extending comity to Peru's debt negotiations [was] only appropriate if it [was] consistent with United States government policy."  *Pravin* 109 F.3d at 855.  The Court identified at least two aspects of United States policy implicated by that suit, including "the United States strong interest in ensuring" "the continuing enforceability of foreign debts owed to United States lenders," *id.*, and on that basis affirmed the district court's denial of the stay.  Here, Plaintiff failed to identify any specific United States policy or interest that is being prejudiced by the Order allowing Iberostar to seek authority from the European Commission to participate in these proceedings.

22. Plaintiff also states, quoting *Custom Polymers PET, LLC v. Gamma Meccanica SPA*, 185 F. Supp. 3d 741, 751 (D.S.C. 2016), that "[a]bstention is rarely invoked and only under

8

exceptional circumstances may a federal court order a stay or dismissal of an action to avoid duplicative litigation in a foreign country." Motion at p. 3. *Polymers* was decided under South Carolina law by a South Carolina district court. It is not binding on this court and inapposite in this case for several reasons.

23. First, unlike in *Polymers*, the purpose of the Stay is not "to avoid duplicative litigation in a foreign country," *Polymers*, 185 F. Supp. 3d at 751, but to allow time for Iberostar "to obtain authorization before filing a response" to this lawsuit, Order at ¶ 1.

24. Second, the factors considered in *Polymers* when addressing whether to stay the case under principles of international comity followed "the Fourth Circuit['s] *Colorado River* abstention doctrine," *Polymers*, 185 F. Supp. 3d at 751, which was later discussed and applied by the Eleventh Circuit in *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th Cir. 1994). The *Colorado River* factors are, however, inapplicable to this case because they assume the existence of duplicative litigation in a foreign country, an element that is lacking here. *Colorado River* requires, first, considering "the relative order of the two suits." *Polymers*, 185 F. Supp. 3d at 751. Obviously Iberostar cannot request permission to appear in a U.S. litigation before such litigation has started. The proceeding before the European Commission must necessarily come after the Helms-Burton litigation has been brought in the U.S. The second factor, *i.e.*, "[w]hether [Florida] is a more convenient forum than [Spain]" is not pertinent either because Defendant is not seeking to move this litigation to Spain or to have the claims brought by Plaintiff litigated in Spain. *Polymers*, 185 F. Supp. 3d at 753. The third factor, the "source of law in the case," *Polymers*, 185 F. Supp. 3d at 751, is also irrelevant because the issues to be decided in each proceeding are different and thus subject to different applicable laws. The European Commission must decide whether Iberostar should be allowed

9

to participate in the U.S. litigation under Council Regulation 2271/96. This Court will decide claims brought under the Helms-Burton Act. Put simply, the analysis under *Polymers* does not work in the case at hand.

25. Finally, Plaintiff wrongly alleges that Defendant "attempts to supersede United States law with foreign law," Motion at p. 6, by asking this Court to "defer[] to the 'blocking law' of another country," *id.* at p. 5. Defendant, however, is doing the opposite, namely, seeking authorization to *comply* with this Court's summons *despite the blocking law*.

26. In *Societe Nationale*, the Supreme Court barred an approach that would "effectively subject every American court hearing a case involving a national of a contracting state to the internal laws of that state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 539 (1987). Unlike in *Societe Nationale*, Council Regulation 2271/96 does not apply to every European national before "an American court hearing a case," but only in those few cases arising from the Helms-Burton Act. In any event, in *Societe Nationale*, the party resisting discovery invoked a French blocking statute *to avoid to comply* with a U.S. court discovery request. Here, Iberostar is invoking a European blocking statute, namely, the Council Regulation 2271/96, in order to seek the authority *to comply* with this Court's summons.

27. Plaintiff also cites to *Snowden v. Connaught Labs., Inc.*, 138 F.R.D. 138, 141 (D. Kan. 1991), in which "a district court rejected a defendant's attempt to use a Canadian blocking statute to thwart compliance with an order or subpoena from outside of Ontario." Motion at pp. 6-7. Unlike in *Snowden*, Iberostar is not seeking to "thwart compliance with an order" from this Court, but to pursue an avenue that will allow it to defend itself. *Id.* And to that end, Defendant filed the Application with the European Commission.

28. Finally, Plaintiff argues that "a stay of an action brought under Helms-Burton in favor of a proceeding to obtain authorization under the EC Blocking Regulation does nothing for international comity as the European Union rejects the premise and effect of Title III of the Helms-Burton Act just as the United States rejects the premise and effect of the EC Blocking Regulation." Motion at pp. 10-11. This is incorrect. First, Plaintiff adduces no evidence that the United States "rejects the premise and effect of the EC Blocking Regulation." Motion at p. 11. Second, staying the U.S. proceeding to allow Defendant to obtain an authorization promotes international comity because allowing Iberostar to pursue such -authorization, despite the conflict over permissibility of extra-territoriality between the Helms-Burton Act and the Council Regulation 2271/96, enables Iberostar to appear before the European Commission and establish a record of compliance while the Court establishes and expresses understanding and due regard to foreign nations without any serious impairment to Plaintiff's rights.

## II. The Stay Is Neither Immoderate nor Indefinite, but Fully Consistent With Eleventh Circuit's Precedent.

29. In exercising its discretion to stay a case pending resolution of "related proceedings in another forum, the district court must limit properly the scope of the stay." *Trujillo*, 221 F.3d at 1264. A stay must not be "immoderate." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir.1982). "[A] stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." *Landis*, 299 U.S. at 257. In considering whether a stay is "immoderate," the Eleventh Circuit examines "both the scope of the stay (including its potential duration) and the reasons cited by the district court for the stay." *Trujillo,* 221 F.3d at 1264.

30. The "reasons cited by the district court for the stay," *id.*, are to provide an opportunity to Defendant to obtain an authorization before the European Commission. In the Order, this Court determined that, "in the interest of international comity . . . it [was] appropriate to stay this case pending the Iberostar's request for authorization from the European Commission." Order at ¶ 2. The reasons are consistent with abstention principles, including international comity, and with binding precedent. *See* ¶¶14-28 *above*.

31. The scope of the Stay and its potential duration was consistent with the Stay's goal. The Order took into account that the "request for authorization ha[d] already been filed and is currently pending before the European Commission." Order at ¶ 2. On June 22, 2020, the European Commission confirmed that it was "assessing [Defendant's] application," and that the Commission does "[its] utmost to ensure that a decision is taken in due course." *See* ¶ 5 *above*. The European Commission continues to work on Iberostar's Application and has recently requested additional information. *See* ¶¶ 6-7 *above*.

32. Plaintiff alleges that the "Eleventh Circuit has found that a district court abused its discretion when it stayed 'a case pending the resolution of related proceedings in another forum . . .' *Trujillo,* 221 F.3d at 1264." Motion at p. 4. The facts in *Trujillo*, however, were very different from the facts in this case.

33. In *Trujillo*, Banco Central del Ecuador brought suit in a Bahamian court against several members of the Trujillo family and several companies associated with the Trujillos. The Eleventh Circuit found the stay to be "indefinite in scope" because the "stay appear[ed] to expire only after a trial of the Bahamian case and the exhaustion of appeals in that case." *Trujillo,* 221 F.3d at 1264. Also because "the Bahamian case [was] not progressing quickly." *Id.* In support of its holding the Eleventh Circuit cited to two cases, *American Manuf. Mut.*

*Ins.Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519 (11th Cir.1984) and *CTI–Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir.1982).

34. In *Stone*, the Eleventh Circuit found the stay of federal court proceedings pending conclusion of state court proceedings indefinite where the state proceedings had been pending for 18 months and no trial date had been set in state court. *Stone*, 743 F.2d at 1524.

35. In *CTI-Container*, the Eleventh Circuit vacated a decision to stay a federal litigation pending determination by the Iran-United States Claims Tribunal of its jurisdiction to hear claims, on the basis of an agreement between the United States and the Government of Iran. *CTI–Container*, 685 F.2d at 1288. The Eleventh Court's *rationale* to vacate the stay in *CTI-Container* was mostly because there was "no way to estimate the months or even years that may pass before [the pending claims in the parallel litigation] are decided by the Iran-United States Claims Tribunal." *CTI–Container*, 685 F.2d at 1287.

36. In the words of the Eleventh Circuit, in both *CTI-Container* and *Stone* the stay requests were denied because they "involved stays resulting in indefinite delays pending the outcome of proceedings that were unlikely to control or to narrow substantially the claims or unresolved issues in the stayed lawsuit." *Miccosukee*, 559 F.3d at 1197. This is not the case here.

37. This case has not been stayed pending parallel litigation before a foreign court. The distinction is of paramount importance in this case. The Stay is not of indefinite nature because it will expire as soon as the European Commission resolves Iberostar's Application, which it has been actively considering for 90 days now. There is no need to wait for a "trial of [a] Bahamian case and the exhaustion of appeals," like there was in *Trujillo*. *Trujillo,* 221 F.3d at 1264. There is no pending state court parallel proceeding that has caused this litigation to be stayed for *18 months*, like the case in *Stone*. *Stone*, 743 F.2d at 1524. Finally, there is no agreement

13

between two countries, like Iran and the United States, that has made a foreign tribunal question whether it has jurisdiction to determine the foreign dispute that caused the U.S. litigation to be stayed, like there was in *CTE-Container*. *CTI–Container*, 685 F.2d at 1288. This stay has nothing to do with waiting for a full, complex and long foreign proceeding to finalize: Iberostar requested authorization to file a Motion to Dismiss; the European Commission is actively considering the petition, and Defendant is swiftly providing the Commission with any information it needs so that it can resolve Iberostar's Application as soon as possible.

38. In *Trujillo* the fact that "the record indicate[d] that the Bahamian case [was] not progressing," played a strong role in the Eleventh Circuit's decision to have the stay vacated. *Trujillo,* 221 F.3d at 1264. Here, the European Commission has been in close contact with Defendant and it does "[its] utmost to ensure that a decision is taken in due course." *See* ¶ 5 *above*.

39. Furthermore, to vacate the stay in *Trujillo*, the Eleventh Circuit considered that "courts regularly permit parallel proceedings in an American court and a foreign court." *Trujillo*, 221 F.3d at 1265 (internal citations omitted). Here, the authorization proceeding before the European Commission and this U.S. litigation cannot proceed in parallel. Iberostar is seeking permission to comply with this Court's summons, which Iberostar cannot do unless it is expressly authorized. Otherwise, "Iberostar faces EUR 600,000 in sanctions for each breach for failure to first obtain authorization." Order at ¶ 2.

### III. CONCLUSIONS

40. The Stay is warranted, consistent with Eleventh Circuit's precedent, and necessary for Iberostar to obtain authorization to comply with this Court's summons.

41. For the foregoing reasons, Defendant respectfully requests the Motion be denied.

Filed this 10th day of August, 2020.

Respectfully Submitted,

*Counsel for Iberostar*

HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
Email: adolfo.jimenez@hklaw.com
Email: katharine.menendez@hklaw.com

By: /s/Adolfo E. Jiménez
    Adolfo E. Jiménez
    Fla. Bar No. 869295
    Katharine Menéndez de la Cuesta
    Fla. Bar No. 125633

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 10, 2020, a true and correct copy of this RESPONSE TO PLAINTIFF'S MOTION TO LIFT STAY was filed with the Clerk of Court using the CM/ECF system which will send notification of the filing to all counsel and parties of record.

/s/Adolfo E. Jiménez
Adolfo E. Jiménez
