**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**20-CV-20157-KMW**

MARLENE CUETO IGLESIAS and
MIRIAM IGLESIAS ALVAREZ,

      Plaintiffs,

v.

PERNOD RICARD, Public Societe
Anonyme,

      Defendant.

_____/

## ORDER

THIS MATTER is before the Court on Defendant Pernod Ricard S.A.'s Motion to Dismiss the First Amended Complaint under Fed. R. Civ. P. 12(B)(1), 12(B)(2), 12(B)(5) and 12(B)(6). [DE 30]. Plaintiffs have filed a Response in Opposition [DE 33], and Defendant has filed a Reply [DE 34], making this matter ripe for disposition.[1] For the following reasons, the Court grants Defendant's Motion to Dismiss, in part, and grants Plaintiffs leave to file a Second Amended Complaint.

## I. BACKGROUND

Plaintiff Iglesias filed her initial complaint on January 14, 2020 alleging the Cuban Government forcefully confiscated Conac Cueto, C.I.A., ("Cueto") a Cuban-based cognac producer and seller founded by her father, Fernando Tomas Cueto Sanchez. In her initial complaint, Plaintiff alleged that all Cueto's assets, including intellectual property, were seized by

---

[1] Defendant has also filed a Notice of Supplemental Authority [DE 37], which this Court has considered in ruling on this motion.

the Cuban Government without compensation, merged into the Cuban Government Rum Company and eventually rebranded as Havana Club. [DE 1 at 4−6].

Defendant filed a motion to dismiss the initial complaint on March 24, 2020, citing multiple grounds under Fed. R. Civ. P. 12(b). [DE 19]. Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs[2] filed a First Amended Complaint on April 6, 2020. [DE 22]. Plaintiffs allege that the Cuban Government partnered with Defendant Pernod Ricard ("Pernod") to distribute the Havana Club brand. [DE 22 at 6]. On April 20, 2020, Defendant filed the Motion to Dismiss the First Amended Complaint currently before the Court. [DE 30].

## II.   THE FIRST AMENDED COMPLAINT

Plaintiffs claim damages pursuant to Title III of the LIBERTAD Act, 22 U.S.C. § 6082, and allege that Defendant trafficked in property owned by the Cueto family which was confiscated by the Cuban Government on or after January 1, 1959. [DE 22 at para. 39, 40]. The Subject Property is described as 100% interest in certain property of Conac Cueto, C.I.A., a Cuban company, originally located at Avenue 25 #5401, Almendares, Buena Vista, Havana, Cuba. [DE 22 at para. 21]. Fernando Tomas Cueto Sanchez founded Conac Cueto in the early 1950's. [DE 22 at para. 23]. The property confiscated from Cueto included intellectual property, oak barrels, bottles, labels, corks, tasters, meters, and other assets the Company used in the production and sale of cognac. [DE 22 at para. 25].

Plaintiffs allege that, from about 1993 until today, Defendant knowingly and intentionally commenced, conducted, promoted and distributed its Havana Club brand and line of products worldwide using the assets and intellectual property of the Subject Property without authorization of Plaintiffs. [DE 22 at para. 33]. Additionally, from about 1993 and for a least a year after, Defendant knowingly and intentionally participated in and profited from the communist Cuban

---

[2] Plaintiff Miriam Iglesias Alvarez joined the amended complaint as the surviving spouse of Cueto's deceased founder. [DE 22 at 5−6]. Both Plaintiffs became United States citizens on August 5, 1986 and are residents of Los Angeles County, California.

Government's possession of the Subject Property without the authorization of Plaintiffs. [DE 22 at para. 34].

III.   **THE POSITIONS OF THE PARTIES**

Defendant Pernod moves to dismiss this matter on multiple grounds. Pernod first asserts that the Court lacks personal jurisdiction. Specifically, Pernod maintains that because it is a foreign corporation, Plaintiffs cannot establish general personal jurisdiction based on Pernod's contacts with Florida or the contacts of Pernod's Florida-based subsidiaries. Pernod next contends that Plaintiffs cannot establish specific jurisdiction over it because Plaintiffs' claims pertain to activity that occurred entirely outside of the United States. Pernod further argues that this Court lacks subject matter jurisdiction over this matter because Plaintiffs have failed to sufficiently allege that Pernod knowingly trafficked in property in which Plaintiffs have a claim, or that Plaintiffs have an interest in the property at issue. Finally, Pernod asserts that Plaintiffs failed to properly serve the Defendant.

In support of these contentions, Pernod has submitted the Declaration of Antoine Brocas, the Group Corporate Affairs Director and Secretary of the Board at Pernod Ricard, S.A. [DE 30-1]. In the Declaration, Mr. Brocas, who states that he has been in his position since September 2018 and is responsible for the organization of Pernod's directors and the corporate governance of the group [DE 30-1 at para. 1], attests that Pernod's Florida-based subsidiaries have separate corporate interests and distinct officers from Defendant Pernod.

In response, Plaintiffs argue that Defendant's Florida-based subsidiary, Pernod USA LLC, is the alter ego of Defendant Pernod. [DE 33 at 3, 6−9]. Plaintiffs contend that as such, their Florida contacts and activities may be imputed to Pernod and are sufficient to establish personal jurisdiction over the Defendant. Plaintiffs also contend that subject matter has been established: Plaintiffs have standing because they hold an interest in Cueto and were harmed by Defendant Pernod's distribution of the Havana Club brand worldwide using Cueto property. Plaintiffs further contend that they have properly pled a cause of action under the Helms-Burton Act by alleging

that the Defendant has knowingly trafficked in Plaintiffs' property that was confiscated by the Cuban Government. Further, Plaintiffs dispute Defendant's contention that Pernod was not properly served pursuant to the French Code of Civil Procedure and specifically point to the applicable Article under that Code to establish that service of process was proper. Finally, Plaintiffs request that if the Court agrees with Defendant's arguments regarding jurisdiction, Plaintiffs be permitted to conduct brief discovery into the ties of Pernod Ricard USA LLC and Defendant. [DE 33 at 1–2].

## IV.   **APPLICABLE LAW**

### A.   Helms-Burton Act

On March 12, 1996, Congress passed the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6021–6091, commonly referred to as the "Helms-Burton Act." The Helms-Burton Act ("Act") was intended "to strengthen international sanctions against the Castro government" and, "to protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro regime." 22 U.S.C. §§ 6022(2), (6).[3] Title III of the Act was designed to deter trafficking in wrongfully confiscated property by permitting United States nationals who were victims of the confiscations to be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting wrongful seizures. § 6081(11); *see also* § 6082(a)(1)(A). Specifically, Title III provides, "any person that . . . traffics in property which was confiscated by the Cuban Government on or

---

[3] Until recently, since the time that the Helms-Burton Act was passed, every President has invoked Title III's waiver provision which prevented any person from seeking a remedy under that Title. *See Odebrecht Const., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1312 (S.D. Fla. 2012). On April 17, 2019, however, the U.S. Department of State announced that the federal government would no longer suspend Title III. *See* U.S. Department of State, Secretary of State Michael R. Pompeo's Remarks to the Press (Apr. 17, 2019), https://www.state.gov/remarks-to-the-press-11/. As a result, on May 2, 2019, those claiming injury from property confiscated in Cuba were able to bring an action under Title III of the Act for the first time.

after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages." § 6082(a)(1)(A).[4]

Pursuant to 22 U.S.C. § 6083, one who alleges ownership of claims to confiscated property under the Act may submit a certification of a claim to ownership that has been made by the Foreign Claims Settlement Commission under title V of the International Claims Settlement Act of 1949 (22 U.S.C. § 1643, *et seq.*). This certification acts as "conclusive proof" of ownership of a claim in a civil action under the Act. § 6083(a)(1). For claims that have not been certified by the Foreign Claims Settlement Commission, "the court may appoint a special master, including the Foreign Claims Settlement Commission, to make determinations regarding the amount and ownership of the claim." § 6083(a)(2).

---

[4] The Act defines "Traffics" as follows:

(A) As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally—
  (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
  (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
  (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property.

22 U.S.C. § 6023 (13)(A).

Under the Act, "Property" is defined as:

(A) The term "property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.
(B) For purposes of subchapter III of this chapter, the term "property" does not include real property used for residential purposes unless, as of March 12, 1996—
  (i) the claim to the property is held by a United States national and the claim has been certified under title V of the International Claims Settlement Act of 1949; or
  (ii) the property is occupied by an official of the Cuban Government or the ruling political party in Cuba.

22 U.S.C. § 6023 (12).

B.      Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

**V.      ANALYSIS**

A.      Personal Jurisdiction

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323−24 (M.D. Fla. 2011).  To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the non-resident defendant.  *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010).  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own.  *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).  Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990).  Where the court's jurisdiction has not been established, dismissal under Fed. R. Civ. P. 12(b)(2) is appropriate.

When deciding the issue of personal jurisdiction, a court must conduct a two-part inquiry. *See Future Tech. Today, Inc.*, 218 F.3d at 1249 (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94

F.3d 623, 626 (11th Cir. 1996)).  First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied.  *Id.*  Thereafter, if the requirements of the long-arm statute are satisfied, the court must inquire as to "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment."  *Sculptchair*, 94 F.3d at 626 (quoting *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).[5]

A federal court may exercise either of two forms of personal jurisdiction: general jurisdiction or specific jurisdiction.  As the Supreme Court explained:

> [O]ur decisions have recognized two types of personal jurisdiction: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State.  But "only a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction in that State.
>
> Specific jurisdiction is very different.  In order for a state court to exercise specific jurisdiction, "the *suit*" must "aris[e] out of or relat[e] to the defendant's contacts with the *forum*."  In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.* 137 S.Ct. 1773, 1779–80 (2017) (citations omitted) (emphasis in original).

---

[5] In *Sculptchair*, the Court examined the application of the Fourteenth Amendment's Due Process Clause to the exercise of specific jurisdiction, but as explained in *Oldfield*, the "language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical."  *Oldfield*, 558 F.3d at 1219 n.25.  Accordingly, for purposes of this Order, the Court assumes that the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court as does the Fourteenth Amendment.

Florida's long-arm statute "provides for both specific and general jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citing Fla. Stat. § 48.193(1)−(2)). Thus, Defendant may be subject to personal jurisdiction under Florida's long-arm statute in two ways. First, § 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida. Second, § 48.193(2) provides that Florida courts may exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida. *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1203 (11th Cir. 2015). Florida law governs the extent of the long-arm statute. Accordingly, federal courts are required to construe the statute in accordance with rulings of the Florida Supreme Court, or if that Supreme Court has not ruled on the matter, Florida's intermediate courts. *Sculptchair*, 94 F.3d at 627 (citing *Cable/Home Commc'n Corp. v. Network Prods.*, 902 F.2d 829, 856 (11th Cir. 1990)).

In this case, Plaintiffs fail to specify in the First Amended Complaint whether they seek to establish general or specific jurisdiction over the Defendant. Rather, Plaintiffs advance several broad allegations in their Response to the Motion to Dismiss regarding Defendant's ties to the state of Florida and Defendant's subsidiary's ties to Florida. Consequently, the Court will examine whether Plaintiffs have sufficiently alleged either general or specific jurisdiction.

1. General Jurisdiction

Based on the allegations in the First Amended Complaint, Plaintiffs have failed to establish that this Court has general jurisdiction over the Defendant. Florida's long-arm general jurisdiction statute provides, "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "It is clear that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida." *Pathman v. Grey Flannel Actions, Inc.*,

8

741 F. Supp. 2d 1318, 1323 (S.D. Fla. Oct. 1, 2010) (citing *Helicopteros Nactionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *see also Estate of Fraser v. Smith*, 2007 WL 5007084, at *4−6 (S.D. Fla. Nov. 13, 2007) (holding that general jurisdiction in Florida could not be exercised over a foreign tour operator whose contact with Florida consisted of purchasing and taking delivery of boats; sending two shareholders to negotiate the purchase of the boats; advertising in local publications; running an interactive website conducting business; sending an employee to attend a five-month course; directing an employee to attend a trade show to promote its tours; and entering into commission agreements with Florida corporations and individuals). Here, Defendant's contacts with the State of Florida alone are insufficient to establish general jurisdiction over the Defendant. Pernod is a French corporation organized under foreign law; its principal place of business is located at 12 Place des Etats-Unis, 75783 Paris Cedex 16, France. And while Pernod is a foreign publicly traded company that, through its subsidiaries (including but not limited to Pernod Ricard USA, LLC, a Delaware LLC), does business in the State of Florida, Pernod does not maintain a registered agent in the State of Florida. [DE 22 at para. 4].

Plaintiffs assert that Pernod USA LLC's activities within the State of Florida, meet the "substantial and not isolated activity within this state" requirement necessary to satisfy Florida's general jurisdiction long-arm statute. Plaintiffs contend that those activities may be imputed to the Defendant Pernod because Pernod Ricard USA LLC is the alter ego of Pernod Ricard. [DE 33 at 3, 6]. To support their alter-ego claim, Plaintiffs assert:

1. Pernod Ricard USA, LLC is registered to transact business in Florida, but has a mailing address of PERNOD RICARD LEGAL DEPARTMENT, 250 Park Avenue, 17th Floor, New York, NY 10177;

2. Pernod Ricard USA, LLC produces, imports and markets spirits and wines that it supplies throughout the United States;

3. Pernod Ricard USA, LLC's website has a link to Pernod Ricard Global, which redirects to Pernod Ricard of France, with the same logo as Pernod Ricard USA, LLC;

4.  28% of Pernod Ricard's overall sales come from the United States, and Pernod Ricard "touts" Pernod Ricard USA, LLC operation in its investment procurement material;

5.  Defendant Pernod assigns employees to work at Pernod Ricard USA, LLC, including the Finance Director and CFO of Pernod Ricard USA.

[DE 33 at 6−8].  For the following reasons, the Court finds that these allegations are insufficient to support Plaintiffs' alter-ego argument.

Those who seek to pierce the corporate veil in Florida carry a "very heavy burden."  *Gov't of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1362 (S.D. Fla. 2002).  Under Florida law, to pierce the corporate veil under an alter-ego theory, the plaintiff must establish "*both* that the corporation is a 'mere instrumentality' or alter ego of the defendant, *and* that the defendant engaged in 'improper conduct' in the formation or use of the corporation."  *WH Smith, PLC v. Benages & Associates, Inc.*, 51 So.3d 577, 581 (Fla. Dist. Ct. App. 2010) (emphasis in original) (quoting *Bellairs v. Mohrmann*, 716 So.2d 320, 323 (Fla. 2d DCA 1998)).  When plaintiffs fail to "meet their burden of proving that an alter-ego relationship was maintained for an improper purpose," they cannot obtain personal jurisdiction over a defendant on the theory of alter ego.  *McFadden Ford, Inc. v. Mancuso ex rel. Mancuso*, 766 So.2d 241, 243 (Fla. Dist. Ct. App. 2000); *Hobbs v. Don Mealey Chevrolet*, 642 So.2d 1149, 1156 (Fla. Dist. Ct. App. 1994) ("Without evidence that AFSLIC was formed or used for some illegal, fraudulent, or other unjust purpose, the mere fact of American Way Group's and Warmus's ownership and control of AFSLIC was insufficient to justify piercing AFSLIC's corporate veil.").

However, at the motion to dismiss stage, a plaintiff need only allege facts which support a plausible basis for alter ego as a theory of liability.  *See Georgetown Trading Co., LLC v. Venturi Spirits, LLC*, No. 14-62277-CV, 2015 WL 11197790, at *2 (S.D. Fla. Mar. 16, 2015) (finding allegations that the defendants directed and controlled the alleged alter ego, which were made only "on information and belief," were sufficient to survive a motion to dismiss).  To do so, a plaintiff must allege: (1) the shareholder dominated and controlled the corporation to such an extent that

the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and, (3) the fraudulent or improper use of the corporate form caused injury to the claimant. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fl. Dist. Ct. App. 2008)). "It is not necessary that the party seeking to pierce the corporate veil [allege] all of the factors, but enough of the factors must exist to indicate the necessary degree of control by one company over the other to constitute an alter ego relationship." *Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018) (citation omitted). Plaintiffs have not alleged the last two of these requirements and thus have failed to set forth allegations that, if proven true, would support a finding that Pernod USA is the alter ego of Defendant Pernod.

In addition, assuming *arguendo* that the Plaintiffs are able to satisfy the general jurisdiction requirements of the Florida Long-Arm statute, general jurisdiction over Defendant Pernod still would not be established under the facts of this case. The Eleventh Circuit has made clear, "[t]he reach of [section 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Carmouche*, 789 F.3d at 1204 (citing *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). Thus, to determine whether general jurisdiction exists over a defendant under section 48.193(2), a court "need only determine whether the district court's exercise of jurisdiction over [the defendant] would exceed constitutional bounds." *Id.* "[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Carmouche*, 789 F.3d at 1204 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l. Shoe Co.*, 326 U.S. at 317)). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation's place of incorporation and its principal place of business are "paradigm

all-purpose forums." *Id.* But, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. *Id.* at 139 n.19.[6]

In *Daimler*, the Supreme Court, examined the plaintiffs' attempt to establish general jurisdiction over a foreign corporate defendant based upon the agency theory that its subsidiary had sufficient contacts with California for jurisdiction to attach.[7] In particular, the Court held that California courts could not exercise general personal jurisdiction over a German company with a wholly-owned subsidiary that did business in California. *Daimler*, 571 U.S. 117. The Court explained that California courts could not exercise general personal jurisdiction over the parent company even if the subsidiary's contacts with California were "imputable" to the parent. *Id.* at 136. The Court reached this conclusion even though the company's subsidiary was the largest supplier of luxury vehicles to the California market and accounted for 2.4% of the parent's worldwide sales. *Id.* at 123. Notably, neither the defendant foreign corporation nor its subsidiary were incorporated in California, nor had their principal place of business there. *Id.* at 139.

---

[6] The only "exceptional" case the Supreme Court has identified in which a court exercised general personal jurisdiction over a foreign corporation without offending due process is *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952). In *Perkins*, a Philippines mining company ceased its mining operations during the Japanese occupation of the Philippines in World War II. 342 U.S. at 448. The president of the company moved to Ohio, where he kept an office and oversaw the work of the company. *Id.* The Supreme Court held that Ohio courts could exercise general jurisdiction over the company without offending due process. *Id.* In so doing, the Court explained that in Perkins, "Ohio was the corporation's principal, if temporary, place of business," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 n.11 (1984), and that "[g]iven the wartime circumstances, Ohio could be considered a surrogate for the place of incorporation or head office," *Daimler*, 571 U.S. at 130 n.8 (internal quotation marks and citation omitted).

[7] The Court recognizes that Plaintiffs have advanced an alter-ego theory, rather than an agency theory. However, under Florida law, an agency relationship is predicated on the parent's control of the subsidiary: "[T]he parent corporation, to be liable for its subsidiary's acts under the . . . agency theory, must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *In re Chinese-Manufactured Drywall Products Liability Litigation (Drywall II)*, 753 F.3d 521, 529 (5th Cir. 2014) (citing *Enic, PLC v. F.F.S. & Co., Inc.*, 870 So.2d 888, 891 (Fla. Dist. Ct. App. 2004)). This control-focused inquiry overlaps with the alter-ego test adopted by most circuits. *Id.* (citing *Daimler*, 571 U.S. at 134−35) (noting that several Courts of Appeals impute jurisdictional contacts "when the former is so dominated by the latter as to be its alter ego.").

Thus, a foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business. Accordingly, even if Plaintiff had sufficiently alleged the Pernod USA was the alter ego of Defendant Pernod for purposes of satisfying Florida's long-arm requirement of "substantial and not isolated activity" in the state, Pernod's connections with Florida are not "so 'continuous and systematic' as to render [it] essentially at home" here. *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317); *Daimler*, 571 U.S. at 139 n.19. As such, Plaintiffs are unable to establish general jurisdiction over Pernod.

### 2. Specific Jurisdiction

The Court next examines whether Plaintiffs have sufficiently alleged specific jurisdiction based on Defendant's actions within Florida that relate to the Plaintiffs' cause of action.[8] Section (1)(a) of Florida's long-arm statute lists those acts that will subject a defendant to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts. Fla. Stat. § 48.193(1)(a).[9] In addition, the statute expressly provides a defendant's contacts may be

---

[8] The First Amended Complaint is silent as to what type of jurisdiction Plaintiffs seek to establish. However, as correctly noted by Defendant, in response to the Motion to Dismiss, Plaintiffs seemingly argue that the Defendant is subject to the Court's general jurisdiction but do not cite the relevant Florida long-arm statute provisions. As such, and out of an abundance of caution, the Court also evaluates whether the Complaint establishes specific jurisdiction over the Defendant.

[9] Fla. Stat. § 48.193 provides, in relevant part:

(1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

    1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

    2. Committing a tortious act within this state.

based not only on the defendant's personal activities, but also on the actions of the defendant's agents. *See id.*

To the extent that Plaintiffs propose Defendant is subject to specific personal jurisdiction, the Complaint fails to adequately allege facts to establish such jurisdiction. As previously stated, in the Complaint, Plaintiffs do not specify which of the Florida long-arm sections, if any, they rely upon to establish specific jurisdiction over the Defendant. Thus, the Court is unable to assess whether any of the subsections are applicable to Pernod.

It should be noted that subsection 48.193 (1)(a)(1), of the Florida long-arm statute provides that specific jurisdiction may apply to a defendant who is "operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state," if the cause of action arises from those acts. But, again, Plaintiffs do not contend that Defendant Pernod itself engages in activities within the State of Florida to establish specific jurisdiction over that entity. Rather, Plaintiffs contend that jurisdiction can be established through its wholly-owned subsidiary, Pernod USA. Therefore, the Court must determine whether Defendant Pernod, through its alleged agent, Pernod USA, was "operating, conducting, engaging in, or carrying on a business venture" in Florida, and whether the business venture had a substantial connection to the cause of action in this case.

---

3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state
   . . .
6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

   a. The defendant was engaged in solicitation or service activities within this state; or
   b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

The same allegations that Plaintiffs advance regarding the exercise of general jurisdiction based upon Plaintiffs' alter-ego theory should arguably support any contention that Defendant Pernod was "operating, conducting, engaging in, or carrying on a business venture" through Pernod USA, and that those activities give rise to Plaintiffs' cause of action. However, Plaintiffs merely advance the conclusory assertion of alter ego, while giving only a general description of what business Pernod USA conducts. [DE 22 at 2−3]. Although Plaintiffs provide a few details regarding the parent-subsidiary relationship between Defendant Pernod and Pernod USA, that is the extent of Plaintiffs' allegations describing their relationship and, more specifically, Defendant's potential acts within Florida. Since Plaintiffs have failed to allege sufficient facts to support this argument or even include allegations invoking specific jurisdiction in the Complaint, jurisdiction cannot be established on this basis.

Further, specific jurisdiction may be exercised over a foreign defendant in Florida where a claim arises from a defendant's commission of "a tortious act within [the] state." Fla. Stat. § 48.193(1)(a)(2). And, "[i]ntentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). Nonetheless, Plaintiffs have failed to allege that Defendant, or its agent, committed a tortious act in Florida by selling or distributing the Havana Club, or to cite to the applicable Florida long arm statute. Thus, Plaintiffs have not adequately alleged that Defendant committed an intentional tort to establish jurisdiction.

Moreover, even if the specific jurisdiction long arm statute were satisfied, as with general jurisdiction, "the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello*, 544 F.3d at 1284 (quoting *Int'l Shoe Co.*, 326 U.S. at 319). To determine whether the exercise of specific jurisdiction affords due process, the Eleventh Circuit applies a three-part test. *Louis Vuitton Malletier, S.A. v.*

*Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). First, courts consider whether plaintiffs have established that their claims "arise out of or relate to" at least one of the defendant's contacts with the forum. *Id.* (internal quotation marks omitted). Second, courts determine whether plaintiffs have demonstrated that defendant "purposefully availed" itself of the privilege of conducting activities within the forum state. *Id.* (internal quotation marks omitted). If the plaintiffs carry their burden of establishing the first two prongs, a court next considers whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

Plaintiffs have failed to address any of these issues in response to the Motion to Dismiss, and the Complaint fails to provide allegations for the Court to assess whether specific jurisdiction requirements could be met in this case. As such, the Court concludes that Plaintiffs have failed to establish that Defendant Pernod is subject to specific jurisdiction in this case. The Court, however, grants Plaintiffs leave to file a Second Amended Complaint to advance allegations to establish specific jurisdiction, if appropriate.

B.     Subject Matter Jurisdiction

Defendant contends that the Court lacks subject matter jurisdiction over this matter because Plaintiffs lack standing. Specifically, Defendant contends that Plaintiffs' injuries were not the result of Defendant's actions and that Plaintiffs cannot establish causation.

This argument fails, however, because Defendant misapprehends the nature of Plaintiffs' cause of action. The injury for which Plaintiffs seek to be compensated is not the Cuban Government's confiscation of Cueto's property in Cuba, but rather the proceeds obtained by a third party, in this case Pernod, who allegedly intentionally and knowingly trafficked in that confiscated property. Thus, Defendant's contention that it was not complicit in the 1963 taking by the Cuban Government or has not been empowered to return the property [DE 30 at 24] is not relevant.

The Act provides a cause of action for U.S. nationals against those entities who knowingly traffic in confiscated property. In other words, an entity or person need not be complicit in the taking of the property at issue to be found liable for money damages under the Act. *See Glen v. Club Mediterranee, S.A.* 450 F.2d 1251, 1256 (11th Cir. 2006) (stating purpose of Act is to provide a statutory remedy to U.S. nationals who were the victims of the confiscation and to deny traffickers any profits from economically exploiting those wrongful seizures.). Defendant asserts that Pernod's commercial activities with Corporación Cuba Ron S.A. are not the cause of Plaintiffs' injury given that the commercial activity occurred with a different product and brand name nearly thirty years after the alleged illegal taking. [DE 30 at 25]. This argument is unavailing because Plaintiffs' sole cause of action is not based on whether Defendant participated in the illegal taking but whether they knowingly and intentionally trafficked in the confiscated property in which Plaintiffs hold an interest. Additionally, Plaintiffs allege that Cueto's intellectual property was taken, so Defendant's assertion that the product is different after thirty years—even if true— is not sufficient to defeat these allegations.

This issue was addressed in *Havana Docks Corp. v. Norwegian Cruise Line Holdings, LTD.*, No. 19-cv-23591 (S.D. Fla.), where the court granted a motion for reconsideration of its earlier dismissal of a Helms-Burton Act action. *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, LTD.*, No. 19-cv-23591, ECF No. 53 (S.D. Fla. April 15, 2020). The Court explained that the liability of the defendant under the Act was based upon Congress' determination that trafficking in confiscated property by foreign investors undermines the foreign policy of the United States to protect claims of United States nationals who had property wrongfully confiscated by the Cuban Government. *Id.* at 21. The Court noted that in enacting the Act, Congress intended to create a chilling effect that would discourage third-country nationals from seeking to profit from illegally confiscated property. *Id.* Thus, while the Court did not expressly examine whether the defendant's activities in that case had caused actual injury to the plaintiff, implicit in the Court's ruling was the determination that the defendant could be liable to the plaintiff under the statute for

trafficking in the confiscated property, even if the defendant was not involved in the initial taking. Notably, the Court stated that the issue of the amount of compensation that the plaintiff was entitled to recover (the injury amount) was entirely distinct from the issue of the trafficking that created liability under the Act. *See Havana Docks*, Case No. 19-cv-23591, ECF No. 53 at 26. Ultimately, the Court vacated its order granting the defendant's motion to dismiss. Like the plaintiff in *Havana Docks*, Plaintiffs' standing here is predicated on their claim that they hold an interest in the confiscated property that was the subject of dealings between Defendant and the Cuban Government.

Defendant also asserts that there are no allegations in the Complaint that Pernod trades in Conac Cueto products, benefits from Conac Cueto's intellectual property or that the Cueto family has any rights in the rum products Pernod produces in Cuba [DE 30 at 24, 25]. The Complaint does allege that the intellectual property of Conac Cueto was used in the production and sale of Havana Club brand and line of products.[10] The Complaint also alleges that Defendant owns rights in the brand Havana Club [DE 22 at 2] and further alleges that beginning in 1993, Defendant "commenced conducted, promoted and distributed its Havana Club brand and line of products worldwide using the Subject Property by using the assets and intellectual property of the Subject Property" and "participated and profited from the communist Cuban Government's possession of the Subject Property." [DE 22 at 6]. Therefore, Plaintiffs allege that Defendant used Cueto property in its product distribution. These allegations are sufficient to establish Plaintiffs' standing as an injured party due to, as discussed below, the Defendant's trafficking actions.

---

[10] Defendant states that Plaintiffs allege that the intellectual property of Cueto was used in the production and sale of Havana Club *rum* [DE 30 at 25], but the Complaint alleges that intellectual property of the subject property was used in the distribution of the Havana Club *brand and line of products* worldwide. [DE 22 at 6]. Thus, the Complaint does not limit the use of intellectual property to the Havana Club rum products.

C.      Failure to State a Claim Under the Act

Defendant contends that Plaintiffs have not alleged plausible allegations that Pernod transacts in property expropriated from the Cueto Family and have not sufficiently alleged that the Defendant knowingly and intentionally trafficked in the confiscated property at issue [DE 30 at 26−31].  Under the Act, "a person 'traffics' in confiscated property if that person knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property."  22 U.S.C. § 6023(13).  In the Complaint, Plaintiffs allege that Pernod "knowingly and intentionally commenced, conducted, promoted and distributed its Havana Club brand and line of products worldwide using the Subject Property by using the assets and intellectual property of the Subject Property without authorization of Plaintiffs" and "knowingly and intentionally participated in and profited from the communist Cuban Government's possession of the Subject Property without the authorization of Plaintiff."  [DE 22 at 6].  Plaintiffs further allege that Defendant knowingly and intentionally engaged in conduct with regard to the subject property that meets the definition of trafficking under the Act.  [DE 22 at 7].  Additionally, Plaintiffs cite to Cuban newspapers that reported on the Cuban Government's confiscation of various areas of private property, including rum and alcohol companies, and argue that those articles were sufficient to alert Pernod that the subject property had been confiscated when Defendant started to do business with the Cuban Government.  [DE 22 at 7].  Finally, Plaintiffs contend that the markings on the seized property, including barrels and other materials, gave or should have given Defendant reason to know that the property was owned by Cuban citizens.  [DE 22 at 7].

These allegations distinguish the case at bar from *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125 (S.D. Fla. March 10, 2020), which Defendant cites in its Motion to Dismiss.  In *Gonzalez*, the Court granted the defendant's motion to dismiss finding that the plaintiff failed, among other things, to sufficiently allege that the defendant knowingly and intentionally trafficked in confiscated property.  *Id.* at *2.  Specifically, the Court concluded that the complaint only offered conclusory allegations about the defendant's actions and failed to put forth allegations that would

19

demonstrate the defendant's knowledge that it was trafficking in confiscated property. *Id. See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (conclusory allegations cannot survive a motion to dismiss); *see also Ruiz v. Experian Information Solutions, Inc.*, 2017 WL 1378242, at *2 (S.D. Fla. Apr. 14, 2017) (conclusory allegation of knowledge is not sufficient to satisfy the scienter requirement).

Here, the Complaint alleges that Defendant knowingly and intentionally conducted business—*i.e.* trafficked with the Cuban government—related to the Havana Club brand even though Defendant knew or should have known, because of the publication in Cuban newspapers and the markings on the materials, that the Cuban government had wrongfully confiscated such property from Cuban citizens. Plaintiffs, therefore, have alleged the requisite scienter sufficient to survive the Motion to Dismiss. To the extent that Defendant contests the veracity of those allegations, such determinations are "inappropriate in deciding a motion to dismiss," *Garcia-Bengochea v. Carnival Corp.*, 407 F. Supp. 3d 1281, 1284 (S.D. Fla. 2019) (citing *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 977 (11th Cir. 2015)), and Defendant's motion is denied on this ground.

Defendant also argues Plaintiffs have not pled ownership of a *claim* to property confiscated by the Government of Cuba. Instead, Plaintiffs have alleged that they have inherited 100% of the Cuban business *entity*, and the entity cannot bring a claim under the Act because the entity is not a U.S. national. [DE 30 at 29−30]. Defendant contends, "[w]hile the Cuban corporation Conac Cueto certainly may be said to possess a claim against the government of Cuba for its expropriated Cuban assets, it may not assert it under Title III" because the entity was organized under the laws of Cuba and therefore does not qualify as a corporate "national of the United States." [DE 30 at 30]. That is, the "claim is not owned by a U.S. national, and Title III explicitly limits the availability of its civil remedy to the claims of U.S. nationals." *Id.*

The Defendant fails to cite any case law to support its proposition but instead relies on the pre-enactment testimony of a member of the House of Representatives, and argues that a United

States citizen must already own the claim to the confiscated property on March 12, 1996, when the Act was passed.  Thus, Defendant contends that in order for Plaintiffs to hold an actionable claim, Cueto would have had to set up a U.S. subsidiary or affiliated entity in the United States and have transferred the claim to that entity.  [DE 30 at 30].

Similar arguments were rejected by the Court in *Garcia-Bengochea* where the Court described the defendant's argument for dismissal as follows:

> Carnival argues that even if Plaintiff did acquire ownership of Parreno's certified claim, Plaintiff still does not own a "direct interest" in the confiscated property because "the claim concerns stock in [La Maritima], which in turn owned the docks."  In Carnival's view, this requires dismissal because, "[a]s a matter of corporate law, Plaintiff does not own a claim to the docks themselves."  And because La Maritima "is not a United States national capable of bringing a Helms-Burton claim," Carnival says Plaintiff cannot save his case by attempting to bring the action on behalf of the company.

407 F. Supp. 3d at 1285 (internal citations omitted).  The Court concluded that such an interpretation would undermine Congress' goal of deterring trafficking and yield an untenable result: any corporation that was nationalized by the Cuban Government once it was confiscated (as Plaintiffs allege occurred in this case) would not qualify as a U.S. national capable of bringing a Helms-Burton claim, nor would any person who held an interest in that Cuban entity qualify.  If true, virtually no one could bring an action under the Act.  *Id.* at 1290.

The Court agrees with the rationale advanced in *Garcia-Bengochea* and concludes that Plaintiffs' allegation that they have—albeit through an alleged inheritance—a claim to property once owned by a corporation confiscated by the Cuban Government is sufficient to survive a motion to dismiss.  Moreover, whether Plaintiffs actually own the Cueto property as asserted in the Complaint involves factual determinations that go beyond the four corners of the current pleading.  Specifically, the Court notes that although the Court found the plaintiff's allegations regarding its claim in *Garcia-Bengochea* sufficient to survive a motion to dismiss, the Court subsequently entered judgment for the defendant on the amended pleadings, finding that in order to advance a viable claim under the Act, a United States citizen must already own the claim to

the confiscated property on March 12, 1996, when the Act was passed. *See Garcia-Bengochea v. Carnival Corp.*, No.19-cv-21725, ECF No. 120 (S.D. Fla. July 9, 2020). There, undisputed exhibits attached to the defendant's amended pleadings showed the plaintiff inherited his claim under a will executed in January 2000. Therefore, while the Court finds Plaintiffs have sufficiently pled an interest in the subject property at this stage of the proceedings, factual questions remain regarding Plaintiffs' actual interest in the property, and when and how they acquired it.[11]

      D.     Service of Process

Defendant finally argues that Plaintiffs failed to properly serve Pernod with this action. Rule 12(b)(5) permits a court to dismiss a case for insufficient service of process. Fed. R. Civ. P. 12(b)(5). Initially, a defendant has the burden of challenging the sufficiency of service and "must describe with specificity how the service of process failed to meet the procedural requirements of Fed. R. Civ. P. 4." *Hollander v. Wolf*, No. 09-cv-80587, 2009 WL 3336012, at *3 (S.D. Fla. Oct. 14, 2009); *accord Developers Surety and Indemnity Co. v. Italian Cast Stone*, *Inc.*, No. 8:16-cv-3491T-24-TGW, 2017 WL 3113469, at *2 (M.D. Fla. May 5, 2017). Once a defendant meets its burden, the burden shifts to the plaintiff to prove a *prima facie* case of proper service of process.

---

[11] The Complaint alleges that Plaintiffs' interest accrued when the founder of Cueto passed away on December 9, 1979, [DE 22 at para. 27]. But should Plaintiffs file a Second Amended Complaint and this action proceed, Plaintiffs face the burden of proving whether the interest indeed belongs to Plaintiffs and was transferred or vested prior to the March 12, 1996 cutoff specified in the Act. Section 6082(a)(4)(B) provides:

> In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996.

22 U.S.C. § 6082(a)(4)(B). It should be noted that Plaintiffs appear to anticipate this issue in a footnote in the Amended Complaint:

> [N]o lawyer within the Cuban government would allow Mr. Cueto to draft a will leaving his stolen property to his wife or children as such lawyers were agents of the State and under orders that such theft was lawful as part of Castro's attempt to institute a communist regime in the former capitalist regime of Cuba.

[DE 22 at 5 n.1].

*Id.* The plaintiff makes a *prima facie* showing of proper service by presenting a signed return of service. *Martinez v. Deutsche Bank Nat'l Trust Co.*, No. 5:11-cv-580-Oc-10TBS, 2012 WL 162360, at *2 (M.D. Fla. Jan. 19, 2012). If the plaintiff can establish that service was proper, the burden shifts back to the defendant to "bring strong and convincing evidence of insufficient process." *Developers*, 2017 WL 3113469 at *2 (citation omitted). "The Court may look to affidavits, depositions, and oral testimony to resolve disputed questions on fact." *Hollander*, 2009 WL 3336012, at *3 (citations omitted).

Defendant contends that Plaintiffs failed to properly serve Pernod in France in compliance with Fed. R. Civ. P. 4(h)(2), which requires that the procedures in 4(f) be followed. Specifically, Defendant asserts that although, pursuant to 4(f)(1), Plaintiffs are authorized to serve the Defendant by any internationally agreed means of service that is reasonably calculated to give notice, Plaintiffs failed to adhere to Article 654 of the French *Nouveau Code de Procédure Civile* (Code of Civil Procedure) in effecting that service. [DE 30 at 32]. Defendant argues that Article 654 requires that service of process on a corporate entity meet the requirement that process be personal when the process is delivered to its legal representative, to the latter's proxy or to any person empowered for this purpose. *Id.* In support of its contention, Pernod has submitted the Declaration of Antoine Brocas, the Group Corporate Affairs Director and Secretary of the Board at Pernod Ricard, S.A. [DE 30-1]. In the Declaration, Brocas states that on February 25, 2020, a *hussier de justice* came to Pernod's office in Paris and delivered a non-delivery notice by leaving it with the attendant at the welcome desk. Mr. Brocas states that the employee who was handed the notice is not a legal representative of Pernod, nor is that individual authorized to accept service of process for Pernod. [DE 30-1 at para. 7].

Plaintiffs have not submitted an affidavit to directly contradict the statements made in the Declaration, but instead point to a previously filed motion where Plaintiffs requested that the Court deem service had been made on the Defendant. [DE 11]. Although that motion was denied without prejudice because Plaintiffs failed to serve the motion on Defendant, attached to the

23

motion is a communication from the process server in France which states that service had been made properly under French law pursuant to Article 656.  [DE 11-7 at 1].  In addition, Plaintiffs submitted a translation of a document that states that the *hussier de justice* confirmed the address and that service was attempted but was impossible because there was no one at the address capable of or agreeing to accept the Complaint.  [DE 11-6 at 1].  The statement then cites Article 656 of the Code and has the name and seal of an Associate Bailiff.  [DE 11-6 at 1].  Plaintiffs assert that Article 656 provides, *inter alia*, that if no one may or is willing to receive process at the address, then after inquiry to confirm the address, the bailiff may deposit a copy of the process at city hall or deliver a non-delivery notice to the address of the residence.  The corporation then has three months in which to collect the process.  [DE 33 at 11].  Plaintiffs contend that this was the procedure that was followed.

Defendant replied, reiterating that Article 654 applies and that Plaintiffs failed to comply with this specific provision [DE 34 at 14].  Defendant further contends that although Plaintiffs argue compliance with Article 656, they fail to provide any support for the notion that the individual who could potentially accept service of process was absent and that service was refused (Defendant questions how service could have been attempted on an unnamed individual when the service of process was addressed solely to S.A. Pernod Ricard).

The Court finds that service was perfected under these facts.  As Plaintiffs met their *prima facie* case by filing a return of service, Defendant has failed to demonstrate how Plaintiffs failed to comply with the dictates of Rule 4.  Defendant concedes that in France, service can be made via the French Central Authority or by a *hussier de justice* as provided by the French Code of Civil Procedure.  [DE 30 at 32].[12]  Although Defendant points to and relies exclusively on the

---

[12] Defendant states that Plaintiffs sought to have the Court declare the validity of service of process and that the Court deemed Pernod served before Pernod had an opportunity to respond [DE 30 at 32]. However, the docket reflects that Plaintiffs' Corrected Motion to Deem Defendant Served [DE 11], was denied with leave to renew based on the failure to properly serve the Defendant with the motion.  [DE 13]. Plaintiffs did not renew the motion, and Defendant instead filed its original Motion to Dismiss.

requirements of one Article in the Code of Civil Procedure, Defendant does not dispute Plaintiffs' contention that another Article under the Code is equally applicable to this case. Nor does Defendant dispute that if Plaintiffs' allegations regarding service are true, *i.e.*, that no one would accept service at the Defendant's address, service was perfected by the *hussier de justice*. Instead, Defendant questions whether service at the corporation's address was actually attempted, notwithstanding Plaintiffs' documentation to the contrary. Thus, Defendant has not shown "strong and convincing evidence" of insufficient process, and Defendant's Motion to Dismiss on this basis is denied.

E.    Discovery

Plaintiffs have requested that instead of granting the Motion to Dismiss, the Court grant Plaintiffs leave to conduct brief jurisdictional discovery. [DE 33 at 1-2]. Defendant argues that Plaintiffs are not entitled to discovery because there are no facts that could be discovered that would ever establish that this Court has jurisdiction over Pernod for this claim, or ostensibly any claim under the Act.

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). "[J]urisdictional discovery is favored where there is a genuine dispute concerning jurisdictional facts necessary to decide the question of personal jurisdiction; it is not an unconditional right that permits a plaintiff to seek facts that would ultimately not support a showing of personal jurisdiction." *In re Takata*, 396 F. Supp. 3d 1101, 1156 (S.D. Fla. 2019) (citing *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009)).

However, courts have denied requests for jurisdictional discovery where the plaintiff has merely requested to conduct discovery in an incidental fashion and where the plaintiff fails to sufficiently explain what facts or even what type of facts they wish to discover if given the opportunity. *See Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019) (citing *United Techs. Corp. v Mazer*, 556 F.3d 1260, 1280–81 (11th Cir. 2009)) ("We have upheld a . . .

25

decision to deny 'requests' for jurisdictional discovery when a party 'buried such requests in its briefs,' instead of presenting them in a motion."). Such is the case here. Plaintiffs request jurisdictional discovery as an alternative to granting Defendant's Motion to Dismiss but do not sufficiently explain the type of discovery they seek to conduct or the facts that they hope to discover that would be sufficient to establish personal jurisdiction over Defendant in this case. However, while the Court finds that Plaintiffs' current request to conduct jurisdictional discovery falls short of providing sufficient detail for the Court to grant the request, the Court is unwilling to state, at this point, that there is no discovery that Plaintiffs could obtain that would support a claim for jurisdiction over Pernod.

Accordingly, the Court denies Plaintiffs' request to conduct jurisdictional discovery without prejudice to renew their request. If renewed, the request should specify with particularity what is sought; the motion shall describe the information that Plaintiffs anticipate obtaining through that discovery that would establish that this Court has personal jurisdiction over Defendant Pernod. If Plaintiffs choose to renew their request for jurisdictional discovery subject to these requirements, that request must be made within fourteen (14) days of the date of this Order.

## VI.    CONCLUSION

For the reasons set forth above, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 30] is **GRANTED, in part,** and **DENIED, in part**. To the extent that Defendant's Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction, the Motion is granted. To the extent that Defendant seeks dismissal based on lack of subject matter jurisdiction, improper service, failure to state a claim and any other grounds, the Motion is denied. Plaintiffs may file a Second Amended Complaint within fourteen (14) days of this Order.

**DONE and ORDERED** in Chambers in Miami, Florida, this 17th day of August, 2020.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE