```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                      CASE NO. 20:CV-23287-DPG
 3

 4   FRANCISCO R. RODRIGUEZ, et al.,      Miami, Florida

 5        Plaintiffs,                     September 23, 2020

 6            vs.                         10:15 a.m. to 11:00 a.m.

 7   IMPERIAL BRANDS, PLC, et al.,        Pages 1 to 39

 8        Defendants.

 9   _____

10                STATUS CONFERENCE and MOTION HEARING
                  BEFORE THE HONORABLE DARRIN P. GAYLES
11                   UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   FOR THE PLAINTIFFS:       FRANCISCO RODRIGUEZ, ESQ.
                               PAULINO A. NUNEZ, JR., ESQ.
14                             RODRIGUEZ TRAMONT & NUNEZ
                               255 Alhambra Circle
15                             Suite 1150
                               Coral Gables, Florida 33134
16                                      -and-
                               JAMES L. BERENTHAL, ESQ.
17                             DAVID W. BERENTHAL, ESQ.
                               BERENTHAL & ASSOCIATES
18                             777 Third Avenue, Suite 22D
                               New York, New York 10017
19
     FOR DEFENDANT IMPERIAL BRANDS:
20
                               MARK F. RAYMOND, ESQ.
21                             NELSON MULLINS BROAD and CASSEL
                               2 S Biscayne Boulevard
22                             One Biscayne Tower - 21st Floor
                               Miami, Florida 33131
23                                      -and-
                               ANDREW RHYS DAVIES, ESQ.
24                             JUSTIN L. ORMAND, ESQ.
                               ALLEN & OVERY, LLP
25                             1221 6th Avenue
                               New York, New York 10020
```

```
 1    FOR DEFENDANT IMPERIAL BRANDS:

 2                              JONATHAN ETRA, ESQ.
                               BROAD & CASSEL
 3                              2 S. Biscayne Boulevard
                               One Biscayne Tower - 21st Floor
 4                              Miami, Florida 33131

 5

 6    FOR DEFENDANTS WPP PLC,
      BCW LLC & YOUNG & RUBICAM LLC:
 7
                               NAIM SURGEON, ESQ.
 8                              PEDRO FREYRE, ESQ.
                               AKERMAN LLP
 9                              BRICKELL CITY CENTRE
                               98 SE 7th, St #1100
10                              Miami, Florida 33131
                                    -and-
11                              CHRISTOPHER DAVIES, ESQ.
                               JESSICA LUTKENHAUS, ESQ.
12                              TICO ALMEIDA, ESQ.
                               WILMER HALE
13                              1875 Pennsylvania Avenue, NW
                               Washington, DC 20006
14

15    STENOGRAPHICALLY REPORTED BY:

16                              PATRICIA DIAZ, FCRR, RPR, FPR
                               Official Court Reporter
17                              United States District Court
                               400 North Miami Avenue
18                              11th Floor
                               Miami, Florida 33128
19                              (305) 523-5178

20

21

22

23

24

25
```

```
 1                    (Call to the Order of the Court.)

 2           COURTROOM DEPUTY:  Calling Rodriguez, and all versus

 3   Imperial Brands, PLC, and all.

 4           Counsel, please make your appearance.

 5           MR. RODRIGUEZ:  Yes, this is Frank R. Rodriguez for the

 6   plaintiffs.  Also on the call is my partner Paulino A. Nunez.

 7   We are from the law firm of Rodriguez Tramont & Nunez.

 8           Also on the call on behalf of the plaintiffs are our

 9   co-counsel James L. Berenthal and David W. Berenthal from the

10   law firm of Berenthal & Associates.

11           The Court should also know, in addition, I am also a

12   party in the case.

13           THE COURT:  Okay.  Thank you.

14           MR. RAYMOND:  Good morning, Judge, Mark Raymond, along

15   with partner Jonathan Etra from the law firm of Broad & Cassel

16   on behalf of Imperial, and I am joined by our co-counsel,

17   Andrew Rhys Davies and Justin Ormand.  And Mr. Davies will be

18   taking the lead on our argument, Judge.

19           THE COURT:  Okay.  Thank you.

20           MR. SURGEON:  Good morning, this is Naim Surgeon from

21   Akerman, and my partner Pedro Freyre is also appearing.  With

22   us are our co-counsel from Wilmer Hale, Christopher Davies and

23   Jessica Lutkenhaus.  Also appearing is Tico Almeida, and we are

24   on behalf of WPP PLC, Young & Rubicam, LLC and BCW, LLC.

25           THE COURT:  All right.
```

    1          Okay.  Good morning.  I originally set this down for a
    2   status conference because I wanted to make sure that the
    3   parties are aware that Mr. Surgeon is one of my former law
    4   clerks.  I don't think it's going to have -- I know it's not
    5   going to have any bearing on my decisions in this matter.  It's
    6   not the first case where Mr. Surgeon has appeared before me or
    7   any of my former law clerks.  It has been years since he
    8   clerked for me, but especially as to the plaintiffs, I just
    9   wanted to make you aware to see if -- well, to see if you had
   10   any objection and to give you an opportunity to file whatever
   11   motion you thought appropriate, but I just wanted to make sure
   12   you are aware.
   13          I am not necessarily expecting a response now but,
   14   Mr. Rodriguez, I am prepared to deal with these motions that
   15   are pending today.  If you prefer not to proceed today, this
   16   will be the time to let me know or we can proceed with the
   17   scheduling issues and deal with perhaps the more substantive
   18   issues later.
   19          MR. RODRIGUEZ:  This is Frank Rodriguez, Your Honor, I
   20   think that's the way to go.  I think we should proceed now.
   21          I don't anticipate there is going to be any issues.
   22   I'd like to discuss it internally before we respond and Your
   23   Honor has allowed that courtesy, but I think we should proceed
   24   today.  If Your Honor had on your agenda to deal with these
   25   motions, which I understood was the case, I think we should

1    deal with the motions.

2          THE COURT:  Okay.  So we are here for a few motions.

3    They are interrelated, the plaintiff's motion -- well, the

4    defendants -- defendant Imperial Brands' motion for a limited

5    stay, which is joined by the codefendants in this case, as well

6    as Imperial Brands' motion to extend time to respond to the

7    complaint while the Court considers the motion to stay, and the

8    plaintiffs' motion to strike the declaration of Andrew Rhys

9    Davies, which was submitted in support of the motion to stay.

10         So why don't we simply start with the motion to stay

11   and I can -- I will consider arguments regarding the

12   declaration along with that motion.  So Mr. Raymond.

13         MR. RAYMOND:  Judge, as I mentioned, my co-counsel,

14   Andrew Davies, will be making the argument on behalf of our

15   team, please.

16         THE COURT:  Okay.  Thank you.

17         MR. RHYS DAVIES:  Thank you, Your Honor.  This is

18   Andrew Rhys Davies.  All of this is subject to the jurisdiction

19   of the defenses but we are here on this motion to stay because

20   under EU law as interpreted by the European Commission --

21         THE COURT REPORTER:  I'm sorry, he is breaking up.  I

22   don't know if he is breaking up for others as well.

23         MR. RODRIGUEZ:  This is Rodriguez, he is breaking up.

24         MR. SURGEON:  Yes, I am noticing that as well.

25         MR. RHYS DAVIES:  My apologies, is this any better?

1          THE COURT REPORTER:  No, I cannot understand what he is

2     saying.

3          MR. RODRIGUEZ:  No, I cannot understand anything you

4     are saying.

5          MR. RHYS DAVIES:  Can we try having everyone on mute?

6          THE COURT:  Well, this is Judge Gayles.  Everyone not

7     speaking, if you can put your phone on mute, and Mr. Rhys

8     Davies, if you are using the speaker feature on your phone,

9     maybe if you take that off, maybe that might help him speak

10    directly into the receiver.

11         MR. RHYS DAVIES:  Judge, I hope this is better.

12         THE COURT:  It's still a little choppy but why don't

13    you proceed and we will see how it goes.

14         MR. RHYS DAVIES:  Thank you, Judge.  We are here on the

15    same option because under EU law as interpreted by the European

16    Commission, Imperial Brands cannot respond to the complaint

17    without authorization.  This is somewhat frustrating to the

18    Imperial Brands because this is a case that should be

19    dismissed, but given EU law and the risk to Imperial Brands

20    which is criminal liability for violating the requirement, we

21    are asking for this very limited relief for a limited stay to

22    give the European Commission time to decide this request for

23    authorization.

24         In essence, what we are asking is that the Court follow

25    the approach that Judge Scola took in the Iberostar case and

1    grant that kind of limited stay.

2         We think that that's required by considerations of

3    comity.  As Judge Scola said in the Iberostar case, the

4    European Commission has a strong interest in evaluating its own

5    rules and regulations, and then when we look at the next

6    factor -- I am talking here about the stay factors from the

7    Turner case from the Eleventh Circuit.

8         When we look to the fairness to the parties element, we

9    think that those very strongly support a stay.  On the

10   plaintiff's side, you know, there is no prejudice.  All we are

11   asking for is a short delay, no impact on their substantive

12   rights or their claim.  In fact, if they still haven't taken

13   steps to issue a summons as to one of the defendants and so

14   they really have no plausible argument about any prejudice from

15   delay.  Also, they are only seeking money damages so there is

16   no emergent relief being sought.

17        On the other side of the scale, Imperial faces the risk

18   of criminal prosecution and an unlimited fine if it responds to

19   the complaint without authorization.  As Judge Scola said in

20   the Iberostar case, you know, any EU company really does face

21   immediate and concrete harm if it moves to dismiss without

22   authorization.  And, actually, Imperial's position is worse

23   than the defendant in the Iberostar case because Imperial faces

24   an unlimited criminal fine as distinct from the Iberostar

25   defendant which faced a fixed penalty per violation.

```
1              And then on the third Turner factor, judicial
2    efficiency, here, as Judge Scola said, there is no reason to
3    presume the EC is unlikely to render a prompt decision on the
4    request for authorization.  Also, granting the short stay will
5    avoid the need for a necessary default proceedings and also the
6    risk of criminal proceedings in the U.K.
7              Then, finally, if the stay we are asking for is not
8    immoderate, as the Eleventh Circuit said, we can't have
9    immoderate stays, what we are asking for is a stay that ends on
10   the earlier of 25 days after the authorization is granted with
11   a long stop date of February 9th, 2021, and that's five months
12   after the original deadline, which is the same amount of time
13   it took the plaintiffs to serve that complaint after they first
14   threatened to do so.
15             So I don't know if the Court has questions about any of
16   that or any of the other points.  That's really what I wanted
17   to say to the Court about the stay motion.
18             THE COURT:  So you say the latest date would be the
19   February 9, 2021, date and is that a date certain by which you
20   would expect to receive a response or -- where do you get that
21   date I guess is my question?
22             MR. RHYS DAVIES:  Well, Your Honor, we hope to have a
23   decision long before February 9, 2021.  You recognize we needed
24   to pick an outside date.  That date is five months after the
25   original deadline to respond to the complaint.
```

1          I will add, in case it's helpful, that December 31 is

2     the end of the transitional period as the United Kingdom leaves

3     the European Union, so as of January 1, decision-making

4     authority reverts from the European Commission to the British

5     government.  So in the event, we hope unlikely event, but in

6     the event the European Commission hasn't made a decision by

7     December 31, the deadline we propose will give the British

8     government a few weeks to make that decision post January 1.

9     So that was our thinking, Your Honor.

10          THE COURT:  One of the issues raised by the plaintiff

11     is certain SEC filings made by Imperial, and the plaintiff

12     suggests that perhaps the position you were taking with the SEC

13     is different than the position you are taking in this case.

14          Can you address that issue?

15          MR. RHYS DAVIES:  Yes, Judge.  There is no

16     inconsistency.  All that the SEC filing says is that Imperial

17     Brands takes us to comply with international sanctions to the

18     extent they are applicable.  And that goes on to say, one of

19     the facets of that is that there may be limitations of the

20     nationalities of the employees who can be involved in certain

21     parts of the business.

22          You know, there is no inconsistency between that and

23     what we are asking for here.  I mean, certainly, no one could

24     seriously suggest that this European regulation requires

25     Imperial to find U.S. employees and to have them involved in

 1    sanctioned countries.  That seems to be the argument.  There is

 2    just no basis for that.

 3          Imperial is subject to the law to the extent it is

 4    subject to it and takes the steps it has to take to make sure

 5    its employees are not subject to criminal prosecution but there

 6    is no inconsistency at all.

 7          THE COURT:  Okay.  Mr. Surgeon on behalf of the

 8    co-defendants because you are joining in the request to stay --

 9    so you want the same stay.  If I grant a stay for Imperial, you

10    want the same stay.  Is that what you are asking for?

11          MR. SURGEON:  Yes, Your Honor, that's correct.

12          THE COURT:  Can you just elaborate on that?  Is it

13    because of discovery, because your cases are tied together

14    factually?  What is exactly the reason why your clients would

15    need a concurrent stay along with Imperial?

16          MR. SURGEON:  Your Honor, as we set forth in the motion

17    to join, the facts are intertwined with respect to Imperial and

18    our clients, and as we note in the motion, in terms of how our

19    clients became involved, it was -- we were involved because

20    Imperial essentially hired our clients and so the relationship

21    between our clients evolved and Imperial isn't something that

22    can be separated out and, therefore, we think that if the case

23    is to proceed it should proceed with both defendants

24    participating.  You know, to the extent you also would like to

25    comply with the Court's notice of court practice, I would

1   certainly think that there would be joint issues that both

2   parties would want to address.  So in light of all the factors,

3   we think that a stay that is coextended with any stay the Court

4   grants to Imperial would make the most sense and also favor

5   judicial economy under the circumstances.

6            THE COURT:  All right.  Mr. Rodriguez.

7            MR. RODRIGUEZ:  Yes, Your Honor, thank you.

8            Judge, let's take a look at what defendants are asking

9   and the basis of their ask.  It's a European Union, what they

10  refer to as a blocking statute, Regulation 227196, and let me

11  read from 227196, Article 4 specifically, Judge.  It's

12  Document 14-B in Your Honor's docket.

13           Article 4 says that no judgment of a Court located

14  outside the community giving effect directly or indirectly to

15  the laws specified in the Annex, and the Annex specifically

16  addresses the Helms-Burton law, which is the basis of this

17  lawsuit, shall be recognized or be enforceable in any manner.

18           There is also an attachment to the motion to stay which

19  is Document 14-C in the docket, and that's a European

20  Commission document that is called a guidance note.  It's a Q

21  and A on this particular European Union regulation, and there

22  is a specific question, how does the blocking statute protect

23  EU operators?

24           And the response in this European Commission Guidance

25  Note is in bold, and in bold it says, "The blocking statute

1    nullifies the effect in the EU of any foreign decision,

2    including court rulings or arbitration awards based on the

3    listed extraterritorial legislation or the acts and provisions

4    adopted pursuant to them," again, referring to Article 4.  So,

5    you know, let's call it what it is.

6         What in effect Imperial is asking for is for this

7    Court, apparently on the basis of international comity, to give

8    deference to a statute that's not -- it's not really a blocking

9    statute but a nullification statute, a statute that on its face

10   unequivocally states that it will never recognize any ruling by

11   this Court.

12        I mean, look, comity is a two-way street, Your Honor, I

13   would respectfully submit, and we want to refer the Court to a

14   case that was cited both by the defendants in their motion and

15   I believe their reply and also by the plaintiffs in its

16   opposition memo.

17        It is a Societe Nacional case.  It's cited in page

18   eight of the plaintiff's opposition memo and this is what it

19   says about comity.  It says, "Comity in the legal sense is

20   neither a matter of absolute obligation, on the one hand, nor

21   of mere courtesy or good will, upon the other.  But it is the

22   recognition which one nation allows within its territory to the

23   legislative, executive or judicial acts of another nation."

24        Well, you know, in effect, Imperial is asking for, you

25   know, for the Court to give deference to this very statute

1   that, again, on its face is basically saying we are not going

2   to abide by anything that this Court is going to do.

3        Now, going into the defendants' reply, they make a

4   couple of arguments related to this.  They say, well, the Court

5   should accord what they refer to in quotes due respect to the

6   EU Commission's position that prohibit EU companies from moving

7   to dismiss Title III actions without authorization, and they

8   cite the Societe Nacional case that I cite to, Judge, on page

9   two of the reply.  And they also argue that the Court has an

10  obligation to take every reasonable precaution to avoid

11  subjecting Imperial to, quote, different legal commands of

12  separate sovereigns.  And it cites to In Re:  Grand Jury

13  Proceedings, again, page three of its reply.

14       Now, those cases, Judge, deal -- those are blocking

15  statutes.  You know, they deal with blocking statutes.  Those

16  are cases involving production of evidence, production of

17  documents and how do you do it.

18       Okay.  It's a totally different circumstance than what

19  we have before this Court.  It is not -- these are truly

20  blocking statutes, are you going to produce evidence this way

21  or are you going to deal with producing evidence that way?

22       It is not -- it's not what we have here where you are

23  dealing with a statute that where the defendants want this

24  Court to give deference to a statute that is basically saying

25  we don't care what you do because we are not going to recognize

1    anything that you do.

2        So, again, these are not nullification statutes.  These

3    are blocking statutes, and I would respectfully submit they

4    have no application to the issues before the Court before

5    today.

6        THE COURT:  So, Mr. Rodriguez, I mean, you do concede

7    that -- well, from your argument, that these blocking statutes

8    do exist.  Right?

9        MR. RODRIGUEZ:  Yes, the blocking statutes, absolutely,

10   yes.

11       THE COURT:  What I am wondering is if your argument

12   goes more to what might happen down the road as opposed to

13   where we are procedurally now because it seems to me that

14   Imperial is simply asking for time to seek permission.  It may

15   be granted.  It may be denied, but your arguments seem to go to

16   what will happen ultimately down the road.  So either -- well,

17   there are a bunch of scenarios, right.

18       So, you know, Imperial could proceed with litigation

19   and prevail or it cannot proceed in the litigation and either

20   have a default entered against it or lose.  And in those latter

21   two scenarios where if Imperial loses, whether or not it's

22   recognized by the European Union, that's a whole different

23   issue than whether or not I give them an opportunity to find

24   out if they can defend themselves I guess is the point that I

25   am making.  I believe that we are talking right now about

1    something more procedural than the ultimate issue.

2           MR. RODRIGUEZ:  Let me -- I'm sorry, Judge, I didn't

3    mean to interrupt.

4           THE COURT:  You didn't.

5           MR. RODRIGUEZ:  May I respond?

6           THE COURT:  Absolutely.

7           MR. RODRIGUEZ:  Rhetorically, rhetorically, what

8    happens if the Court grants the stay and the European Union

9    Commission allows the defendant, Imperial, to file and litigate

10   a motion to dismiss and the motion is denied?

11          You know, I mean, are they going to get another stay so

12   they can seek to file an answer?

13          I mean, they have -- first of all, I'd like to see what

14   this is that they filed.  I think that it's very relevant and

15   it's very important.  What was their ask of the European Union

16   Commission.  They are asking for, you know, something that's

17   not insignificant from this Federal District Court, and I think

18   we are entitled to see what it is that they have asked.

19          You know, in their papers they are saying, well, you

20   know, this is confidential and -- that's nonsense.  I mean, the

21   specific article that they reference is not -- it doesn't say

22   that it's confidential.  What it says is, if the European Union

23   Commission itself were -- you know, gets confidential

24   information, it will keep it confidential, unless the party

25   that submits the information allows it to, you know, disclose.

1          But that's not an issue here.  Let's see what it is

2     that they have asked because we could be chasing our tail for

3     quite a long time.  I mean, if they go ahead and -- I mean,

4     first of all, I would submit to Your Honor -- and Your Honor, I

5     mean, look, if somebody asked for relief and the relief that

6     they ask is, hey, let me litigate this case or at a minimum let

7     me respond to the motion to dismiss, that is akin to, you know,

8     when you are dealing with somebody and you are trying to sell

9     something and you say, well -- they ask you, how much do you

10    want for your widget.  Well, I want either a hundred dollars or

11    $200.

12         They stop listening at a $100, because that's what --

13    well, we all know that.  It's a human condition.  So, here,

14    they have asked the European Union let me at least respond to

15    the motion to dismiss.

16         Where does that get us?  I mean, do they have the

17    audacity -- are they telling this Court, well, we are going to

18    win on the motion to dismiss.  I think that's a little

19    premature for them to take that position.  So, I am not -- I

20    don't know where -- I am not sure that this relates to, you

21    know, something down the road because, you know, first of all,

22    I think we are entitled to see what it is that they filed.  I

23    think that we -- I'd be in a better position to respond to your

24    question if I knew exactly what it is they filed.

25         You know, they claim that, no, it's not -- the best

1   evidence rule doesn't apply here because, you know, we are just

2   asking for authority.  Well, no.  You know, Mr. Rhys Davies

3   filed an affidavit and he said, we asked specifically for

4   authority to litigate and to respond to the motion to dismiss

5   and when you get to that level of specificity, there is no

6   reason why we shouldn't see what it is that they filed before

7   the EU Commission.

8          THE COURT:  I'm sorry, sir, perhaps there is a better

9   question for Mr. Rhys, but I am sure you have probably done

10  your own research.

11         These applications, do you know whether or not they are

12  public or confidential?

13         I am assuming if they were public you probably would

14  have gotten your hand on it already, but the argument, as I

15  understand it in the pleadings, was that the defendants don't

16  want to divulge what's in the application because that's

17  information that could be used against them, so I am assuming

18  that's confidential.

19         Do you know?  Counsel?

20         MR. RHYS DAVIES:  Your Honor, this is Andrew Rhys

21  Davies.  They are confidential.  They are not public.

22         THE COURT:  Okay.

23         MR. RODRIGUEZ:  Your Honor, this is Rodriguez, just for

24  the court reporter's benefit.

25         You would think that something that significant would

1    have already been set forth in their papers at this point that

2    these inherently, especially based on our argument that these

3    things are -- just all of them are confidential if you make the

4    application case.  That's the first time I am hearing that.

5            THE COURT:  So, Mr. Rodriguez, just kind of considering

6    all of these issues, the kind of central issue that I kept

7    coming back to was what is the prejudice to the plaintiff for a

8    limited stay in this case?

9            MR. RODRIGUEZ:  Well, the premise of your question,

10   Your Honor, respectfully, I don't think I agree with because I

11   don't think it would be a limited stay.  It's sort of an

12   unlimited stay.  You know, it's a let's see what happens kind

13   of stay.  So I, respectfully, want to push back a little bit on

14   the premise of your question.  I don't think it's limited,

15   number one.  So that has all kinds of room for prejudice.

16           The best-case scenario, if it is limited, let's say to

17   sometime in February, which is -- you know, that's already

18   several months down the road.  We could be back in a position

19   where they may or may not be authorized to proceed.  They may

20   only be authorized to respond to the motion to dismiss and I am

21   not sure that puts us in a great place because if we prevail,

22   which I think we will, in the motion to dismiss, we are back

23   in -- you know, they may have to ask for another stay.

24           Another issue, Judge, that I would, respectfully, like

25   to inject in this, which we set forth in our papers is, how

1    credible is the likelihood of -- I mean, the whole premise of

2    their position is we are going to get prosecuted either civilly

3    or criminally if we go forward with this.

4         You know, I haven't seen it and they have not stated

5    any party -- this has been in the books since 1996.

6    Helms-Burton was passed in '96.  I am not aware of anybody ever

7    being prosecuted, and there is a case, Photochromic Lens, cited

8    again by both parties and it was cited in page six of

9    plaintiff's opposition memo, and Photochromic deals with this

10   French blocking statute and the production of documents.

11        And the Court in Photochromic stated that, "Although

12   the risk of criminal prosecution weighs heavily against

13   ordering production, courts have discounted this risk when

14   considering the French blocking statute.  The legislative

15   history of the statute indicates that it was not intended to be

16   enforced against foreign subjects, rather it was intended to

17   provide foreign subjects with leverage in foreign courts.

18        It's exactly what this statute is doing, providing

19   leverage, you know, in foreign courts.

20        If you go to the -- going back to the document that I

21   referenced, I think it's 14-C in the docket, the first question

22   is, what is the blocking statute, and as part of their response

23   is -- its main purpose -- well, it says, the blocking statute

24   aims at countering the unlawful effects of third country

25   extraterritorial sanctions on the natural and legal persons

1    specified in Article 11, hereinafter referred to as EU

2    operators.

3         Its main purpose is, thus, to protect EU operators

4    engaging in lawful international trade and/or movement of

5    capital as well as related commerce activities with third

6    countries in accordance with EU laws.

7         The whole purpose of this is to protect the EU

8    operators and give them leverage.  They are not going to face

9    any civil prosecution.  Nobody has faced it up to now.  So, you

10   know, I think the whole premise of their ask of this Court is

11   flawed because they haven't produced any evidence of --

12        THE COURT:  I just want to point out one thing, though,

13   counsel.  Although the statute was passed many years ago, the

14   Helms-Burton Act, people couldn't sue under that and these

15   circumstances until last year.  Correct?

16        MR. RODRIGUEZ:  That's true.  They couldn't sue until

17   18 months ago.  I am not sure -- I'm not sure that they -- by

18   the way, besides Cuba and the Helms-Burton, there is Iran and

19   Libya mentioned.  I mean, it's been around, Judge.

20        I mean, I suspect strongly, and unless they, you know,

21   produce any evidence, I am not sure that there is any

22   legitimate liability.

23        THE COURT:  As the parties both mention in the

24   pleading, Judge Scola took up this similar issue in Canto Marti

25   versus Iberostar, case numbers 20-CV-20078-Scola, and he

1    granted initially the motion to stay prior to receiving a

2    response, it appears, and then there is a motion for

3    reconsideration.  And then he again -- or actually there was a

4    motion to vacate the stay and he denied the motion to vacate

5    the stay in a more detailed order considering all these issues

6    that are presented here in this case, and his order denying the

7    motion to vacate the stay came on September 15th, which I think

8    is after the parties had largely briefed these issues.

9         But why is his analysis wrong?  It's essentially the

10   same analysis I have to make in this case.

11        MR. RODRIGUEZ:  If I may, Your Honor, this is Rodriguez

12   for the court reporter's benefit.

13        THE COURT:  Yes.

14        MR. RODRIGUEZ:  Judge, first of all, Judge Scola, I

15   have known him for over 30 years, and he is an excellent judge

16   but, you know, we don't know what was argued specifically and

17   what he considered.  All I can go by is his order, and I can

18   tell you that his order, there is no indication that he

19   considered -- he viewed this as a blocking statute, so it's

20   like the other blocking statute.

21        There is no indication that the argument was made to

22   him, Judge Scola, this is not a blocking statute, this is a

23   nullification statute, and unlike the blocking statute and the

24   analysis done in the blocking statute, which is essentially

25   international comity -- I mean, Judge Scola's entire opinion is

1   based upon an analysis of international comity and,

2   respectfully, Judge, this international comity would -- because

3   of the nullification nature of this statute as opposed to a

4   blocking statute, it doesn't deserve the respect and deference.

5        There is no indication in Judge Scola's opinion or his

6   order that he considered this.  I mean, you know when you have

7   a statute that basically says, hey, I don't care what you do in

8   your courts regarding Helms-Burton, we are not going to

9   recognize anything you do, I think it's a different dynamic

10  than a blocking statute.  That's number one.

11       There is no indication that there was any discussion or

12  that there was any acknowledgment or that Judge Scola

13  considered the argument that I made that there is really no

14  real threat of any impending sanctions.  This is actually

15  something intended to protect, you know, entities like Imperial

16  and to sit -- I think it's very naive to think that they are

17  going to be prosecuted.

18       You know, if they are, you know, dragged into a lawsuit

19  and it's not their choosing and they are faced with the

20  prospect of either defending or defaulting, I just can't see

21  any realistic liability, unless they can show me otherwise

22  where that has occurred.

23       Then, the other thing is, there is no indication that

24  Judge Scola considered what we discussed which is the

25  possibility of these multiple stays and addressing this in a

1    piecemeal fashion, and the difference between asking, which is

2    what they should have done.  Respectfully, what they should

3    have done is gone to the European Union Commission and say,

4    hey, let me litigate this case.  Not let me litigate, oh, and

5    by the way, let me respond to the motion to dismiss.  There is

6    no indication that Judge Scola considered these matters.

7         So, respectfully, Judge, I don't have to tell you, Your

8    Honor, a lot depends on -- and when you consider the issues

9    before you, a lot depends on what's argued and what's put forth

10   in front of you.  So, you know, that's the difference.

11        THE COURT:  Finally, I mean, I want to circle back to a

12   question I asked earlier with regard to prejudice.  I mean, I

13   agree, I can't indefinitely stay the case if I decide that a

14   stay is warranted but let's say it is a stay until

15   February 9th, what substantial prejudice is there to the

16   plaintiffs in this case because the plaintiff is seeking

17   damages and an injunction.  How would this put the plaintiff in

18   a worse position if a stay is granted?

19        MR. RODRIGUEZ:  Your Honor, there is a very compelling

20   basis and that is that my family members are implicated here.

21   This all stems from a company and a property that was owned by

22   my grandfather, who is also my Godfather, who passed away in

23   1962.  His name is Ramon Rodriguez.

24        He had five children.  My father was one of the five

25   children.  Two of his children are still alive and those two

1    are Luis Rodriguez, who is my uncle, and Maria Rodriguez, my

2    aunt.  Both of them are in their 90s, in their 90s.

3         We have had recent decisions, and we don't have to get

4    into a great detail here but recent decisions by Judge Scola

5    regarding who has a claim.  You have to have -- according to

6    Judge Scola, this is very preliminary, but if in '96 when

7    Helms-Burton was passed at that point you had to have been an

8    American citizen to have a claim, and you have to have the

9    claim.  There is some question about assignability, if you can

10   leave it in your will.  These are all in question.

11        Okay.  So, yes, my uncle is, I believe -- Luis is 94, I

12   believe.  They are both in their 90s, their mid 90s, so, yes,

13   delay does matter because it's possible that their claims can

14   be extinguished.

15        THE COURT:  Okay.  Anything else on behalf of yourself,

16   the plaintiff?

17        MR. RODRIGUEZ:  Your Honor, no, not at this time.

18        THE COURT:  Okay.  For counsel for the defendants, in

19   no particular order, what about that issue of prejudice that

20   crucial witnesses are in their 90s and a delay of several

21   months could substantively prejudice the plaintiff?

22        I guess starting with the counsel for Imperial, how do

23   you respond to that issue?

24        MR. RHYS DAVIES:  Your Honor, this is Andrew Rhys

25   Davies.  It took these plaintiffs more than 16 months after

 1   Title III went into effect to bring this lawsuit, so it's not

 2   really consistent with the idea that there is great urgency to

 3   preserve evidence that they took all of that time.  It then

 4   took them five months after threatening to file the lawsuit to

 5   actually serve Imperial.

 6        Now we are seeking this short stay and the risk to

 7   Imperial of potential criminal liability far outweighs the risk

 8   that's being identified, even if that risk were credible at all

 9   given the way that the plaintiffs have conducted this lawsuit

10   in this very slow way to date.

11        MR. RODRIGUEZ:  Your Honor, if I may respond, this is

12   Rodriguez, you know, in order -- on behalf of the Rodriguez

13   family, my -- these law firms filed a Title IV claim with the

14   State Department, which we are certainly are authorized to do

15   under the Helms-Burton Act and also Title III litigation.

16        It was incredibly time consuming initially to -- you

17   know, there is a lot of moving parts when you have five

18   branches of the family and a lot of documentations to compile,

19   documents to compile in order to make these presentations that

20   we did first with the State Department and then in filing this

21   action in the Federal District Court.

22        The five months that they are referring to we sent a

23   demand letter that we have to wait 30 days after the demand

24   letter under Helms-Burton.  We then identified other

25   defendants.  We sent an additional demand letter and, you know,

1    we -- there was no dilatory conduct here.  Okay.  We are where

2    we are now and we have -- you know, I couldn't believe I heard

3    this that their prejudice to them outweighs the prejudice -- I

4    mean, these folks could die and possibly their claims

5    extinguish with them.

6          I would hope not, and I think there is very viable

7    arguments to be made as to why that wouldn't happen but, you

8    know, I suspect they are going to argue that that is the case.

9    So in addition to you have in the case of my uncle, Luis,

10   actually worked at the factory in question, that's the property

11   in question, and has very, very significant testimony and would

12   be a very important witness.  That's an issue.  My aunt as

13   well, but there is also the issue of at least the potential

14   that they are going to -- are they going to stipulate that they

15   won't make that argument later on that the claims are

16   extinguished if these folks pass?

17         I mean, they are in their 90s, for goodness sake.  I

18   mean, days matter, months matter, and there is no indication

19   that this is going to be resolved any time in February.

20         THE COURT:  Mr. Rhys Davies, I know what you are

21   expressing as far as your limitations from making arguments but

22   either you or maybe Mr. Surgeon can deal with that issue.  I

23   mean, is that a real danger that if those family members die

24   during the stay that the claims may -- the plaintiff may no

25   longer be able to proceed on those claims and is there an

1   alternative?

2        What I am also wondering is, I know that the

3   codefendants are seeking a similar stay for the reasons

4   previously stated but is the preservation of their testimony by

5   the other defendants during a stay something that is possible?

6        MR. RHYS DAVIES:  Your Honor, this is Andrew Rhys

7   Davies again.  These points are being raised for the first time

8   on the call and so I am very reluctant to address them, first

9   of all, without speaking to the client but also bearing in mind

10  the limitation to which Imperial is subject.

11       But just to reemphasize there is still a defendant as

12  to whom they have not issued a summons, so these claims about

13  urgency ring very hollow in light of their conduct.  I

14  understand that isn't a direct answer to your question, Your

15  Honor, but I just feel a little bit reluctant to weigh into

16  that having heard these issues for the first time now.

17       MR. RODRIGUEZ:  If I may respond, Your Honor, there is

18  a simple answer to that.  The defendant that I believe

19  Mr. Davies is referring to is Cuba.  The only way to serve Cuba

20  is via DHL.  DHL is telling me that Cuba is not letting them go

21  in.  Because of the pandemic, Cuba isn't receiving any DHL

22  packages.  That's what DHL is telling me.

23       So that's the reason we haven't served Cuba.  I am

24  assuming that's what Mr. Davies is referring to.

25       MR. RHYS DAVIES:  I was referring to the defendant

1    Habanos, not Cuba.

2         MR. RODRIGUEZ:  Habanos is a Cuban government-owned

3    entity.  We have to serve them in that manner as I expressed,

4    Your Honor.

5         THE COURT:  All right.

6         Okay.  Having considered everything, I am going to

7    grant the Imperial Brands' motion to stay as well as the joint

8    motion to stay by the codefendants.

9         I am going to deny the motion, plaintiff's motion to

10   strike the declaration of Mr. Rhys Davies.

11        With regard to the stay, I am going to grant a stay of

12   limited duration.  Like Judge Scola, I considered the factors

13   set forth in Trujillo vs. Conover & Co. Communications,

14   Incorporated at 221 F.3d 1262, an Eleventh Circuit opinion from

15   2020 and Turner Entertainment Company versus Degeto Film, GmbH,

16   cited at 25 F.3d 1512, an Eleventh Circuit opinion from 1994

17   where the Court noted factors that should be considered when

18   judging abstention pursuant to international comity, including

19   the proper level of respect for the acts of a foreign nation,

20   the fairness to the litigants in the efficient use of scarce

21   judicial resource.

22        One issue that wasn't specifically before Judge Scola

23   but I think it's also important here is, we are here talking

24   about not the substantive issue regarding comity and perhaps

25   whether this Court, how this Court proceeds if Imperial is not

1    allowed to defend itself.  What we are talking about here is

2    the more procedural issue of do I give them an opportunity to

3    get a determination on whether they can properly defend

4    themselves.

5         The ultimate question is still to come, what happens,

6    and so without prejudging it, I mean, Mr. Rodriguez may be

7    ultimately right that my decisions in this case or this Court's

8    decisions in this case are not dependent upon the European

9    Union.  The decision issue, rather, in this limited

10   circumstance is, do I give Imperial an opportunity to first

11   find out what limitations, if any, they have on their ability

12   to defend themselves in this case, and considering those

13   procedural issues, I do think a stay is warranted.

14        Obviously, it's going to take some time and I am

15   mindful of the potential prejudice to the plaintiffs, as they

16   identified, as two or more crucial witnesses are of advanced

17   age.  I think perhaps one way to work around that is to have an

18   exception to the stay to allow at least the other defendants

19   and the plaintiff to proceed with compelling testimony of those

20   specific people that were identified by Mr. Rodriguez because

21   of their age.  Of course, Imperial won't be able to participate

22   in such a deposition now but the deposition can occur again

23   with Imperial, if necessary.

24        So having considered those factors outlined in the

25   Turner case and, of course, the Court's inherent power to

1    control its docket and to decide whether or not a stay is

2    warranted, I do find that a limited stay is appropriate.

3         The stay will not exceed past February 9th of 2021

4    because we cannot proceed or wait indefinitely for an answer

5    regarding these issues.

6         Like Judge Scola, I am going to direct the parties to

7    file joint status reports every 30 days to advise the Court

8    where we are with regard to -- well, actually, it should -- I

9    guess the status should be from Imperial to advise the Court

10   where they are regarding the application.

11        I am denying the motion to strike Mr. Rhys Davies'

12   declaration for a number of reasons they outlined in their

13   response to the motion.  The motion to strike is for pleadings.

14   It's not a pleading, and the Court can simply weigh what's in

15   the affidavit and accept what it thinks is appropriate in any

16   event.

17        A declaration is actually not needed in this instance.

18   I don't think a declaration was filed in Judge Scola's case.

19        Mr. Davies, Rhys Davies, is an officer of the Court.

20   The attorney simply could have argued the issue with no reason

21   to doubt his truthfulness as far as the fact that the

22   application was filed.  I accept his representation that it is

23   a confidential document, the application, and it is not subject

24   to disclosure under the circumstances and so I don't find the

25   best evidence rule to be applicable here.

1          I will issue an order to that effect.

2          Is there anything else we need to take up today

3    starting with Mr. Rodriguez?

4          MR. RODRIGUEZ:  Nothing from the plaintiffs, Your

5    Honor.

6          THE COURT:  And as to Imperial, Mr. Rhys Davies?

7          MR. RHYS DAVIES:  Nothing further, Your Honor, thank

8    you.

9          THE COURT:  All right.  And Mr. Surgeon, as to the

10   other defendants?

11         MR. SURGEON:  As to the WPP defendants, Your Honor,

12   nothing else.

13         THE COURT:  All right.  Then we will be in recess.

14   Thank you.

15         MR. RODRIGUEZ:  Thank you, Your Honor.

16         MR. RAYMOND:  Thank you, Judge.

17         (Proceedings were concluded at 11:00 a.m.)

18

19

20

21

22

23

24

25

```
 1                        C E R T I F I C A T E
 2
 3            I hereby certify that the foregoing is an
 4    accurate transcription of the proceedings in the
 5    above-entitled matter.
 6
 7            Please note:  This hearing occurred during the
 8    COVID-19 pandemic and is therefore subject to the
 9    technological limitations of reporting remotely.
10
11
12
13
      September 30, 2020        /s/Patricia Diaz
14    DATE                      PATRICIA DIAZ, FCRR, RPR, FPR
                                Official Court Reporter
15                              United States District Court
                                400 North Miami Avenue, 11th Floor
16                              Miami, Florida 33128
                                (305) 523-5178
17
18
19
20
21
22
23
24
25
```

## #

**#1100** [1] - 2:9

## $

**$100** [1] - 16:12
**$200** [1] - 16:11

## '

**'96** [2] - 19:6, 24:6

## /

**/s/Patricia** - 32:13

## 1

**1** [3] - 1:7, 9:3, 9:8
**10017** [1] - 1:18
**10020** [1] - 1:25
**10:15** [1] - 1:6
**11** [1] - 20:1
**1150** [1] - 1:15
**11:00** [2] - 1:6, 31:17
**11th** [2] - 2:18, 32:15
**1221** [1] - 1:25
**1262** [1] - 28:14
**14-B** [1] - 11:12
**14-C** [2] - 11:19, 19:21
**1512** [1] - 28:16
**15th** [1] - 21:7
**16** [1] - 24:25
**18** [1] - 20:17
**1875** [1] - 2:13
**1962** [1] - 23:23
**1994** [1] - 28:16
**1996** [1] - 19:5

## 2

**2** [2] - 1:21, 2:3
**20-CV-20078-Scola** [1] - 20:25
**20006** [1] - 2:13
**2020** [3] - 1:5, 28:15, 32:13
**2021** [4] - 8:11, 8:19, 8:23, 30:3
**20:CV-23287-DPG** [1] - 1:2
**21st** [2] - 1:22, 2:3
**221** [1] - 28:14
**227196** [2] - 11:10, 11:11
**22D** [1] - 1:18
**23** [1] - 1:5
**25** [2] - 8:10, 28:16

## 255

**255** [1] - 1:14

## 3

**30** [4] - 21:15, 25:23, 30:7, 32:13
**305** [2] - 2:19, 32:16
**31** [2] - 9:1, 9:7
**33128** [2] - 2:18, 32:16
**33131** [3] - 1:22, 2:4, 2:10
**33134** [1] - 1:15

## 4

**4** [3] - 11:11, 11:13, 12:4
**400** [2] - 2:17, 32:15

## 5

**523-5178** [2] - 2:19, 32:16

## 6

**6th** [1] - 1:25

## 7

**777** [1] - 1:18
**7th** [1] - 2:9

## 9

**9** [2] - 8:19, 8:23
**90s** [6] - 24:2, 24:12, 24:20, 26:17
**94** [1] - 24:11
**98** [1] - 2:9
**9th** [3] - 8:11, 23:15, 30:3

## A

**a.m** [3] - 1:6, 31:17
**abide** [1] - 13:2
**ability** [1] - 29:11
**able** [2] - 26:25, 29:21
**above-entitled** [1] - 32:5
**absolute** [1] - 12:20
**absolutely** [2] - 14:9, 15:6
**abstention** [1] - 28:18
**accept** [2] - 30:15, 30:22
**accord** [1] - 13:5

**accordance** [1] - 20:6
**according** [1] - 24:5
**accurate** [1] - 32:4
**acknowledgment** [1] - 22:12
**Act** [2] - 20:14, 25:15
**action** [1] - 25:21
**actions** [1] - 13:7
**activities** [1] - 20:5
**acts** [3] - 12:3, 12:23, 28:19
**add** [1] - 9:1
**addition** [2] - 3:11, 26:9
**additional** [1] - 25:25
**address** [3] - 9:14, 11:2, 27:8
**addresses** [1] - 11:16
**addressing** [1] - 22:25
**adopted** [1] - 12:4
**advanced** [1] - 29:16
**advise** [2] - 30:7, 30:9
**affidavit** [2] - 17:3, 30:15
**age** [2] - 29:17, 29:21
**agenda** [1] - 4:24
**ago** [2] - 20:13, 20:17
**agree** [2] - 18:10, 23:13
**ahead** [1] - 16:3
**aims** [1] - 19:24
**Akerman** [1] - 3:21
**AKERMAN** [1] - 2:8
**akin** [1] - 16:7
**al** [2] - 1:4, 1:7
**Alhambra** [1] - 1:14
**alive** [1] - 23:25
**ALLEN** [1] - 1:24
**allow** [1] - 29:18
**allowed** [2] - 4:23, 29:1
**allows** [3] - 12:22, 15:9, 15:25
**ALMEIDA** [1] - 2:12
**Almeida** [1] - 3:23
**alternative** [1] - 27:1
**American** [1] - 24:8
**amount** [1] - 8:12
**analysis** [4] - 21:9, 21:10, 21:24, 22:1
**Andrew** [7] - 3:17, 5:8, 5:14, 5:18, 17:20, 24:24, 27:6
**ANDREW** [1] - 1:23

**Annex** [2] - 11:15
**answer** [4] - 15:12, 27:14, 27:18, 30:4
**anticipate** [1] - 4:21
**apologies** [1] - 5:25
**appearance** [1] - 3:4
**APPEARANCES** [1] - 1:12
**appeared** [1] - 4:6
**appearing** [2] - 3:21, 3:23
**applicable** [2] - 9:18, 30:25
**application** [6] - 14:4, 17:16, 18:4, 30:10, 30:22, 30:23
**applications** [1] - 17:11
**apply** [1] - 17:1
**approach** [1] - 6:25
**appropriate** [3] - 4:11, 30:2, 30:15
**arbitration** [1] - 12:2
**argue** [2] - 13:9, 26:8
**argued** [2] - 21:16, 23:9, 30:20
**argument** [11] - 3:18, 5:14, 7:14, 10:1, 14:7, 14:11, 17:14, 18:2, 21:21, 22:13, 26:15
**arguments** [5] - 5:11, 13:4, 14:15, 26:7, 26:21
**Article** [4] - 11:11, 11:13, 12:4, 20:1
**article** [1] - 15:21
**assignability** [1] - 24:9
**ASSOCIATES** [1] - 1:17
**Associates** [1] - 3:10
**assuming** [3] - 17:13, 17:17, 27:24
**attachment** [1] - 11:18
**attorney** [1] - 30:20
**audacity** [1] - 16:17
**aunt** [2] - 24:2, 26:12
**authority** [3] - 9:4, 17:2, 17:4
**authorization** [7] - 6:17, 6:23, 7:19, 7:22, 8:4, 8:10, 13:7
**authorized** [3] - 18:19, 18:20, 25:14
**Avenue** [5] - 1:18, 1:25, 2:13, 2:17, 32:15
**avoid** [2] - 8:5, 13:10
**awards** [1] - 12:2

**aware** [4] - 4:3, 4:9, 4:12, 19:6

## B

**based** [3] - 12:2, 18:2, 22:1
**basis** [5] - 10:2, 11:9, 11:16, 12:7, 23:20
**BCW** [2] - 2:6, 3:24
**bearing** [2] - 4:5, 27:9
**became** [1] - 10:19
**BEFORE** [1] - 1:10
**behalf** [7] - 3:8, 3:16, 3:24, 5:14, 10:7, 24:15, 25:12
**benefit** [2] - 17:24, 21:12
**BERENTHAL** [3] - 1:16, 1:17, 1:17
**Berenthal** [2] - 3:9, 3:10
**best** [3] - 16:25, 18:16, 30:25
**best-case** [1] - 18:16
**better** [4] - 5:25, 6:11, 16:23, 17:8
**between** [3] - 9:22, 10:21, 23:1
**Biscayne** [4] - 1:21, 1:22, 2:3, 2:3
**bit** [2] - 18:13, 27:15
**blocking** [21] - 11:10, 11:22, 11:25, 12:8, 13:14, 13:15, 13:20, 14:3, 14:7, 14:9, 19:10, 19:14, 19:22, 19:23, 21:19, 21:20, 21:22, 21:23, 21:24, 22:4, 22:10
**bold** [2] - 11:25
**books** [1] - 19:5
**Boulevard** [2] - 1:21, 2:3
**branches** [1] - 25:18
**BRANDS** [3] - 1:7, 1:19, 2:1
**Brands** [5] - 3:3, 6:16, 6:18, 6:19, 9:17
**Brands'** [3] - 5:4, 5:6, 28:7
**breaking** [3] - 5:21, 5:22, 5:23
**BRICKELL** [1] - 2:9
**briefed** [1] - 21:8
**bring** [1] - 25:1
**British** [2] - 9:4, 9:7
**Broad** [1] - 3:15
**BROAD** [2] - 1:21,

**bunch** [1] - 14:17
**Burton** [8] - 11:16, 19:6, 20:14, 20:18, 22:8, 24:7, 25:15, 25:24
**business** [1] - 9:21
**BY** [1] - 2:15

---

# C

**cannot** [5] - 6:1, 6:3, 6:16, 14:19, 30:4
**Canto** [1] - 20:24
**capital** [1] - 20:5
**care** [2] - 13:25, 22:7
**CASE** [1] - 1:2
**case** [34] - 3:12, 4:6, 4:25, 5:5, 6:18, 6:25, 7:3, 7:7, 7:20, 7:23, 9:1, 9:13, 10:22, 12:14, 12:17, 13:8, 16:6, 18:4, 18:8, 18:16, 19:7, 20:25, 21:6, 21:10, 23:4, 23:13, 23:16, 26:8, 26:9, 29:7, 29:8, 29:12, 29:25, 30:18
**cases** [3] - 10:13, 13:14, 13:16
**Cassel** [1] - 3:15
**CASSEL** [2] - 1:21, 2:2
**central** [1] - 18:6
**CENTRE** [1] - 2:9
**certain** [3] - 8:19, 9:11, 9:20
**certainly** [4] - 9:23, 11:1, 25:14
**certify** [1] - 32:3
**chasing** [1] - 16:2
**children** [3] - 23:24, 23:25
**choosing** [1] - 22:19
**choppy** [1] - 6:12
**Christopher** [1] - 3:22
**CHRISTOPHER** [1] - 2:11
**circle** [1] - 23:11
**Circle** [1] - 1:14
**Circuit** [4] - 7:7, 8:8, 28:14, 28:16
**circumstance** [2] - 13:18, 29:10
**circumstances** [3] - 11:5, 20:15, 30:24
**cite** [2] - 13:8
**cited** [5] - 12:14, 12:17, 19:7, 19:8,

**cites** [1] - 13:12
**citizen** [1] - 24:8
**CITY** [1] - 2:9
**civil** [1] - 20:9
**civilly** [1] - 19:2
**claim** [6] - 7:12, 16:25, 24:5, 24:8, 24:9, 25:13
**claims** [6] - 24:13, 26:4, 26:15, 26:24, 26:25, 27:12
**clerked** [1] - 4:8
**clerks** [2] - 4:4, 4:7
**client** [1] - 27:9
**clients** [5] - 10:14, 10:18, 10:19, 10:20, 10:21
**Co** [1] - 28:13
**co** [5] - 3:9, 3:16, 3:22, 5:13, 10:8
**co-counsel** [4] - 3:9, 3:16, 3:22, 5:13
**co-defendants** [1] - 10:8
**codefendants** [3] - 5:5, 27:3, 28:8
**coextended** [1] - 11:3
**coming** [1] - 18:7
**Comity** [1] - 12:19
**comity** [9] - 7:3, 12:7, 12:12, 12:19, 21:25, 22:1, 22:2, 28:18, 28:24
**commands** [1] - 13:11
**commerce** [1] - 20:5
**Commission** [13] - 5:20, 6:16, 6:22, 7:4, 9:4, 9:6, 11:20, 11:24, 15:9, 15:16, 15:23, 17:7, 23:3
**Commission's** [1] - 13:6
**Communications** [1] - 28:13
**community** [1] - 11:14
**companies** [1] - 13:6
**Company** [1] - 28:15
**company** [2] - 7:20, 23:21
**compelling** [2] - 23:19, 29:19
**compile** [2] - 25:18, 25:19
**complaint** [5] - 5:7, 6:16, 7:19, 8:13, 8:25
**comply** [2] - 9:17,

**concede** [1] - 14:6
**concluded** [1] - 31:17
**concrete** [1] - 7:21
**concurrent** [1] - 10:15
**condition** [1] - 16:13
**conduct** [2] - 26:1, 27:13
**conducted** [1] - 25:9
**CONFERENCE** [1] - 1:10
**conference** [1] - 4:2
**confidential** [9] - 15:20, 15:22, 15:23, 15:24, 17:12, 17:18, 17:21, 18:3, 30:23
**Conover** [1] - 28:13
**consider** [2] - 5:11, 23:8
**considerations** [1] - 7:2
**considered** [10] - 21:17, 21:19, 22:6, 22:13, 22:24, 23:6, 28:6, 28:12, 28:17, 29:24
**considering** [4] - 18:5, 19:14, 21:5, 29:12
**considers** [1] - 5:7
**consistent** [1] - 25:2
**consuming** [1] - 25:16
**control** [1] - 30:1
**Coral** [1] - 1:15
**correct** [2] - 10:11, 20:15
**counsel** [9] - 3:4, 3:9, 3:16, 3:22, 5:13, 17:19, 20:13, 24:18, 24:22
**countering** [1] - 19:24
**countries** [2] - 10:1, 20:6
**country** [1] - 19:24
**couple** [1] - 13:4
**course** [2] - 29:21, 29:25
**COURT** [33] - 1:1, 3:13, 3:19, 3:25, 5:2, 5:16, 5:21, 6:1, 6:6, 6:12, 8:18, 9:10, 10:7, 10:12, 11:6, 14:6, 14:11, 15:4, 15:6, 17:8, 17:22, 18:5, 20:12, 20:23, 21:13, 23:11, 24:15, 24:18,

26:20, 28:5, 31:6, 31:9, 31:13
**Court** [35] - 2:16, 2:17, 3:1, 3:11, 5:7, 6:24, 8:15, 8:17, 11:3, 11:13, 12:7, 12:11, 12:13, 12:25, 13:2, 13:4, 13:9, 13:19, 13:24, 14:4, 15:8, 15:17, 16:17, 19:11, 20:10, 25:21, 28:17, 28:25, 30:7, 30:9, 30:14, 30:19, 32:14, 32:15
**court** [4] - 10:25, 12:2, 17:24, 21:12
**Court's** [1] - 10:25, 29:7, 29:25
**courtesy** [2] - 4:23, 12:21
**COURTROOM** [1] - 3:2
**courts** [4] - 19:13, 19:17, 19:19, 22:8
**COVID-19** [1] - 32:8
**credible** [2] - 19:1, 25:8
**criminal** [7] - 6:20, 7:18, 7:24, 8:6, 10:5, 19:12, 25:7
**criminally** [1] - 19:3
**crucial** [2] - 24:20, 29:16
**Cuba** [7] - 20:18, 27:19, 27:20, 27:21, 27:23, 28:1
**Cuban** [1] - 28:2

---

# D

**damages** [2] - 7:15, 23:17
**danger** [1] - 26:23
**DARRIN** [1] - 1:10
**DATE** [1] - 32:14
**date** [8] - 8:11, 8:18, 8:19, 8:21, 8:24, 25:10
**David** [1] - 3:9
**DAVID** [1] - 1:17
**DAVIES** [14] - 1:23, 2:11, 5:17, 5:25, 6:5, 6:11, 6:14, 8:22, 9:15, 17:20, 24:24, 27:6, 27:25, 31:7
**Davies** [18] - 3:17, 3:22, 5:9, 5:14, 5:18, 6:8, 17:2, 17:21, 24:25, 26:20, 27:7, 27:19, 27:24, 28:10,

30:19, 31:6
**Davies'** [1] - 30:11
**days** [4] - 8:10, 25:23, 26:18, 30:7
**DC** [1] - 2:13
**deadline** [3] - 8:12, 8:25, 9:7
**deal** [8] - 4:14, 4:17, 4:24, 5:1, 13:14, 13:15, 13:21, 26:22
**dealing** [2] - 13:23, 16:8
**deals** [1] - 19:9
**December** [2] - 9:1, 9:7
**decide** [3] - 6:22, 23:13, 30:1
**decision** [7] - 8:3, 8:23, 9:3, 9:6, 9:8, 12:1, 29:9
**decision-making** [1] - 9:3
**decisions** [5] - 4:5, 24:3, 24:4, 29:7, 29:8
**declaration** [6] - 5:8, 5:12, 28:10, 30:12, 30:17, 30:18
**default** [2] - 8:5, 14:20
**defaulting** [1] - 22:20
**defend** [4] - 14:24, 29:1, 29:3, 29:12
**DEFENDANT** [2] - 1:19, 2:1
**defendant** [7] - 5:4, 7:23, 7:25, 15:9, 27:11, 27:18, 27:25
**defendants** [15] - 1:8, 5:4, 7:13, 10:8, 10:23, 11:8, 12:14, 13:23, 17:15, 24:18, 25:25, 27:5, 29:18, 31:10, 31:11
**DEFENDANTS** [1] - 2:6
**defendants'** [1] - 13:3
**defending** [1] - 22:20
**defenses** [1] - 5:19
**deference** [4] - 12:8, 12:25, 13:24, 22:4
**Degeto** [1] - 28:15
**delay** [4] - 7:11, 7:15, 24:13, 24:20
**demand** [3] - 25:23, 25:25
**denied** [3] - 14:15, 15:10, 21:4
**deny** [1] - 28:9
**denying** [2] - 21:6,

30:11
**Department** [2] - 25:14, 25:20
**dependent** [1] - 29:8
**deposition** [2] - 29:22
**DEPUTY** [1] - 3:2
**deserve** [1] - 22:4
**detail** [1] - 24:4
**detailed** [1] - 21:5
**determination** [1] - 29:3
**DHL** [4] - 27:20, 27:21, 27:22
**Diaz** [1] - 32:13
**DIAZ** [2] - 2:16, 32:14
**die** [2] - 26:4, 26:23
**difference** [2] - 23:1, 23:10
**different** [5] - 9:13, 13:11, 13:18, 14:22, 22:9
**dilatory** [1] - 26:1
**direct** [2] - 27:14, 30:6
**directly** [2] - 6:10, 11:14
**disclose** [1] - 15:25
**disclosure** [1] - 30:24
**discounted** [1] - 19:13
**discovery** [1] - 10:13
**discuss** [1] - 4:22
**discussed** [1] - 22:24
**discussion** [1] - 22:11
**dismiss** [10] - 7:21, 13:7, 15:10, 16:7, 16:15, 16:18, 17:4, 18:20, 18:22, 23:5
**dismissed** [1] - 6:19
**distinct** [1] - 7:24
**DISTRICT** [3] - 1:1, 1:1, 1:11
**District** [4] - 2:17, 15:17, 25:21, 32:15
**DIVISION** [1] - 1:2
**divulge** [1] - 17:16
**docket** [4] - 11:12, 11:19, 19:21, 30:1
**Document** [2] - 11:12, 11:19
**document** [3] - 11:20, 19:20, 30:23
**documentations** [1] - 25:18
**documents** [3] -

13:17, 19:10, 25:19
**dollars** [1] - 16:10
**done** [4] - 17:9, 21:24, 23:2, 23:3
**doubt** [1] - 30:21
**down** [5] - 4:1, 14:12, 14:16, 16:21, 18:18
**dragged** [1] - 22:18
**due** [1] - 13:5
**duration** [1] - 28:12
**during** [3] - 26:24, 27:5, 32:7
**dynamic** [1] - 22:9

**E**

**EC** [1] - 8:3
**economy** [1] - 11:5
**effect** [6] - 11:14, 12:1, 12:6, 12:24, 25:1, 31:1
**effects** [1] - 19:24
**efficiency** [1] - 8:2
**efficient** [1] - 28:20
**eight** [1] - 12:18
**either** [6] - 14:16, 14:19, 16:10, 19:2, 22:20, 26:22
**elaborate** [1] - 10:12
**element** [1] - 7:8
**Eleventh** [4] - 7:7, 8:8, 28:14, 28:16
**emergent** [1] - 7:16
**employees** [3] - 9:20, 9:25, 10:5
**end** [1] - 9:2
**ends** [1] - 8:9
**enforceable** [1] - 11:17
**enforced** [1] - 19:16
**engaging** [1] - 20:4
**entered** [1] - 14:20
**Entertainment** [1] - 28:15
**entire** [1] - 21:25
**entities** [1] - 22:15
**entitled** [3] - 15:18, 16:22, 32:5
**entity** [1] - 28:3
**especially** [2] - 4:8, 18:2
**ESQ** [13] - 1:13, 1:13, 1:16, 1:17, 1:20, 1:23, 1:24, 2:2, 2:7, 2:8, 2:11, 2:11, 2:12
**essence** [1] - 6:24
**essentially** [3] - 10:20, 21:9, 21:24
**et** [2] - 1:4, 1:7

**Etra** [1] - 3:15
**ETRA** [1] - 2:2
**EU** [13] - 5:20, 6:15, 6:19, 7:20, 11:23, 12:1, 13:6, 17:7, 20:1, 20:3, 20:6, 20:7
**European** [19] - 5:20, 6:15, 6:22, 7:4, 9:3, 9:4, 9:6, 9:24, 11:9, 11:19, 11:21, 11:24, 14:22, 15:8, 15:15, 15:22, 16:14, 23:3, 29:8
**evaluating** [1] - 7:4
**event** [4] - 9:5, 9:6, 30:16
**evidence** [8] - 13:16, 13:20, 13:21, 17:1, 20:11, 20:21, 25:3, 30:25
**evolved** [1] - 10:21
**exactly** [3] - 10:14, 16:24, 19:18
**exceed** [1] - 30:3
**excellent** [1] - 21:15
**exception** [1] - 29:18
**executive** [1] - 12:23
**exist** [1] - 14:8
**expect** [1] - 8:20
**expecting** [1] - 4:13
**expressed** [1] - 28:3
**expressing** [1] - 26:21
**extend** [1] - 5:6
**extent** [3] - 9:18, 10:3, 10:24
**extinguish** [1] - 26:5
**extinguished** [2] - 24:14, 26:16
**extraterritorial** [2] - 12:3, 19:25

**F**

**F.3d** [2] - 28:14, 28:16
**face** [4] - 7:20, 12:9, 13:1, 20:8
**faced** [3] - 7:25, 20:9, 22:19
**faces** [2] - 7:17, 7:23
**facets** [1] - 9:19
**fact** [2] - 7:12, 30:21
**factor** [2] - 7:6, 8:1
**factors** [5] - 7:6, 11:2, 28:12, 28:17, 29:24
**factory** [1] - 26:10
**facts** [1] - 10:17
**factually** [1] - 10:14

**fairness** [2] - 7:8, 28:20
**family** [4] - 23:20, 25:13, 25:18, 26:23
**far** [3] - 25:7, 26:21, 30:21
**fashion** [1] - 23:1
**father** [1] - 23:24
**favor** [1] - 11:4
**FCRR** [2] - 2:16, 32:14
**feature** [1] - 6:8
**February** [7] - 8:11, 8:19, 8:23, 18:17, 23:15, 26:19, 30:3
**Federal** [2] - 15:17, 25:21
**few** [2] - 5:2, 9:8
**file** [5] - 4:10, 15:9, 15:12, 25:4, 30:7
**filed** [8] - 15:14, 16:22, 16:24, 17:3, 17:6, 25:13, 30:18, 30:22
**filing** [2] - 9:16, 25:20
**filings** [1] - 9:11
**Film** [1] - 28:15
**finally** [2] - 8:7, 23:11
**fine** [2] - 7:18, 7:24
**firm** [3] - 3:7, 3:10, 3:15
**firms** [1] - 25:13
**first** [13] - 4:6, 8:13, 15:13, 16:4, 16:21, 18:4, 19:21, 21:14, 25:20, 27:7, 27:8, 27:16, 29:10
**five** [7] - 8:11, 8:24, 23:24, 25:4, 25:17, 25:22
**fixed** [1] - 7:25
**flawed** [1] - 20:11
**Floor** [4] - 1:22, 2:3, 2:18, 32:15
**FLORIDA** [1] - 1:1
**Florida** [7] - 1:4, 1:15, 1:22, 2:4, 2:10, 2:18, 32:16
**folks** [2] - 26:4, 26:16
**follow** [1] - 6:24
**FOR** [4] - 1:13, 1:19, 2:1, 2:6
**foregoing** [1] - 32:3
**foreign** [6] - 12:1, 19:16, 19:17, 19:19, 28:19
**former** [2] - 4:3, 4:7

**forth** [5] - 10:16, 18:1, 18:25, 23:9, 28:13
**forward** [1] - 19:3
**FPR** [2] - 2:16, 32:14
**FRANCISCO** [2] - 1:4, 1:13
**Frank** [2] - 3:5, 4:19
**French** [2] - 19:10, 19:14
**FREYRE** [1] - 2:8
**Freyre** [1] - 3:21
**front** [1] - 23:10
**frustrating** [1] - 6:17

**G**

**Gables** [1] - 1:15
**Gayles** [1] - 6:6
**GAYLES** [1] - 1:10
**given** [2] - 6:19, 25:9
**GmbH** [1] - 28:15
**Godfather** [1] - 23:22
**goodness** [1] - 26:17
**government** [3] - 9:5, 9:8, 28:2
**government-owned** [1] - 28:2
**Grand** [1] - 13:12
**grandfather** [1] - 23:22
**grant** [4] - 7:1, 10:9, 28:7, 28:11
**granted** [4] - 8:10, 14:15, 21:1, 23:18
**granting** [1] - 8:4
**grants** [2] - 11:4, 15:8
**great** [3] - 18:21, 24:4, 25:2
**guess** [4] - 8:21, 14:24, 24:22, 30:9
**guidance** [1] - 11:20
**Guidance** [1] - 11:24

**H**

**Habanos** [2] - 28:1, 28:2
**Hale** [1] - 3:22
**HALE** [1] - 2:12
**hand** [2] - 12:20, 17:14
**harm** [1] - 7:21
**heard** [2] - 26:2, 27:16
**HEARING** [1] - 1:10
**hearing** [2] - 18:4, 32:7
**heavily** [1] - 19:12

**Helms** [8] - 11:16, 19:6, 20:14, 20:18, 22:8, 24:7, 25:15, 25:24

**Helms-Burton** [8] - 11:16, 19:6, 20:14, 20:18, 22:8, 24:7, 25:15, 25:24

**help** [1] - 6:9

**helpful** [1] - 9:1

**hereby** [1] - 32:3

**hereinafter** [1] - 20:1

**hired** [1] - 10:20

**history** [1] - 19:15

**hollow** [1] - 27:13

**Honor** [29] - 4:19, 4:23, 4:24, 5:17, 8:22, 9:9, 10:11, 10:16, 11:7, 12:12, 16:4, 17:20, 17:23, 18:10, 21:11, 23:8, 23:19, 24:17, 24:24, 25:11, 27:6, 27:15, 27:17, 28:4, 31:5, 31:7, 31:11, 31:15

**Honor's** [1] - 11:12

**HONORABLE** [1] - 1:10

**hope** [4] - 6:11, 8:22, 9:5, 26:6

**human** [1] - 16:13

**hundred** [1] - 16:10

---

## I

**Iberostar** [6] - 6:25, 7:3, 7:20, 7:23, 7:24, 20:25

**idea** [1] - 25:2

**identified** [4] - 25:8, 25:24, 29:16, 29:20

**III** [3] - 13:7, 25:1, 25:15

**immediate** [1] - 7:21

**immoderate** [2] - 8:8, 8:9

**impact** [1] - 7:11

**impending** [1] - 22:14

**IMPERIAL** [3] - 1:7, 1:19, 2:1

**Imperial** [38] - 3:3, 3:16, 5:4, 5:6, 6:16, 6:18, 6:19, 7:17, 7:23, 9:11, 9:16, 9:25, 10:3, 10:9, 10:15, 10:17, 10:20, 10:21, 11:4, 12:6, 12:24, 13:11, 14:14, 14:18, 14:21, 15:9, 22:15, 24:22,

25:5, 25:7, 27:10, 28:7, 28:25, 29:10, 29:21, 29:23, 30:9, 31:6

**Imperial's** [1] - 7:22

**implicated** [1] - 23:20

**important** [3] - 15:15, 26:12, 28:23

**including** [2] - 12:2, 28:18

**inconsistency** [3] - 9:16, 9:22, 10:6

**Incorporated** [1] - 28:14

**incredibly** [1] - 25:16

**indefinitely** [2] - 23:13, 30:4

**indicates** [1] - 19:15

**indication** [7] - 21:18, 21:21, 22:5, 22:11, 22:23, 23:6, 26:18

**indirectly** [1] - 11:14

**information** [3] - 15:24, 15:25, 17:17

**inherent** [1] - 29:25

**inherently** [1] - 18:2

**inject** [1] - 18:25

**injunction** [1] - 23:17

**insignificant** [1] - 15:17

**instance** [1] - 30:17

**intended** [3] - 19:15, 19:16, 22:15

**interest** [1] - 7:4

**internally** [1] - 4:22

**international** [7] - 9:17, 12:7, 20:4, 21:25, 22:1, 22:2, 28:18

**interpreted** [2] - 5:20, 6:15

**interrelated** [1] - 5:3

**interrupt** [1] - 15:3

**intertwined** [1] - 10:17

**involved** [4] - 9:20, 9:25, 10:19

**involving** [1] - 13:16

**Iran** [1] - 20:18

**issue** [19] - 7:13, 9:14, 14:23, 15:1, 16:1, 18:6, 18:24, 20:24, 24:19, 24:23, 26:12, 26:13, 26:22, 28:22, 28:24, 29:2, 29:9, 30:20, 31:1

**issued** [1] - 27:12

**issues** [13] - 4:17,

4:18, 4:21, 9:10, 11:1, 14:4, 18:6, 21:5, 21:8, 23:8, 27:16, 29:13, 30:5

**itself** [2] - 15:23, 29:1

**IV** [1] - 25:13

---

## J

**JAMES** [1] - 1:16

**James** [1] - 3:9

**January** [2] - 9:3, 9:8

**Jessica** [1] - 3:23

**JESSICA** [1] - 2:11

**join** [1] - 10:17

**joined** [2] - 3:16, 5:5

**joining** [1] - 10:8

**joint** [3] - 11:1, 28:7, 30:7

**JONATHAN** [1] - 2:2

**Jonathan** [1] - 3:15

**JR** [1] - 1:13

**judge** [2] - 11:8, 21:15

**Judge** [35] - 3:14, 3:18, 5:13, 6:6, 6:11, 6:14, 6:25, 7:3, 7:19, 8:2, 9:15, 11:11, 13:8, 13:14, 15:2, 18:24, 20:19, 20:24, 21:14, 21:22, 21:25, 22:2, 22:5, 22:12, 22:24, 23:6, 23:7, 24:4, 24:6, 28:12, 28:22, 30:6, 30:18, 31:16

**JUDGE** [1] - 1:11

**judging** [1] - 28:18

**judgment** [1] - 11:13

**judicial** [4] - 8:1, 11:5, 12:23, 28:21

**jurisdiction** [1] - 5:18

**Jury** [1] - 13:12

**Justin** [1] - 3:17

**JUSTIN** [1] - 1:24

---

## K

**keep** [1] - 15:24

**kept** [1] - 18:6

**kind** [4] - 7:1, 18:5, 18:6, 18:12

**kinds** [1] - 18:15

**Kingdom** [1] - 9:2

**known** [1] - 21:15

---

## L

**largely** [1] - 21:8

**last** [1] - 20:15

**latest** [1] - 8:18

**latter** [1] - 14:20

**law** [11] - 3:7, 3:10, 3:15, 4:3, 4:7, 5:20, 6:15, 6:19, 10:3, 11:16, 25:13

**lawful** [1] - 20:4

**laws** [2] - 11:15, 20:6

**lawsuit** [5] - 11:17, 22:18, 25:1, 25:4, 25:9

**lead** [1] - 3:18

**least** [3] - 16:14, 26:13, 29:18

**leave** [1] - 24:10

**leaves** [1] - 9:2

**legal** [2] - 12:19, 13:11, 19:25

**legislation** [1] - 12:3

**legislative** [2] - 12:23, 19:14

**legitimate** [1] - 20:22

**Lens** [1] - 19:7

**letter** [3] - 25:23, 25:24, 25:25

**letting** [1] - 27:20

**level** [2] - 17:5, 28:19

**leverage** [3] - 19:17, 19:19, 20:8

**liability** [4] - 6:20, 20:22, 22:21, 25:7

**Libya** [1] - 20:19

**light** [1] - 11:2, 27:13

**likelihood** [1] - 19:1

**limitation** [1] - 27:10

**limitations** [4] - 9:19, 26:21, 29:11, 32:9

**limited** [11] - 5:4, 6:21, 7:1, 18:8, 18:11, 18:14, 18:16, 28:12, 29:9, 30:2

**listed** [1] - 12:3

**listening** [1] - 16:12

**litigants** [1] - 28:20

**litigate** [5] - 15:9, 16:6, 17:4, 23:4

**litigation** [3] - 14:18, 14:19, 25:15

**LLC** [4] - 2:6, 3:24

**LLP** [2] - 1:24, 2:8

**located** [1] - 11:13

**look** [5] - 7:5, 7:8, 11:8, 12:12, 16:5

**lose** [1] - 14:20

**loses** [1] - 14:21

**Luis** [3] - 24:1, 24:11, 26:9

**Lutkenhaus** [1] - 3:23

**LUTKENHAUS** [1] - 2:11

---

## M

**main** [2] - 19:23, 20:3

**manner** [2] - 11:17, 28:3

**Maria** [1] - 24:1

**Mark** [1] - 3:14

**MARK** [1] - 1:20

**Marti** [1] - 20:24

**matter** [6] - 4:5, 12:20, 24:13, 26:18, 32:5

**matters** [1] - 23:6

**mean** [23] - 9:23, 12:12, 14:6, 15:3, 15:11, 15:13, 15:20, 16:3, 16:5, 16:16, 19:1, 20:19, 20:20, 21:25, 22:6, 23:11, 23:12, 26:4, 26:17, 26:18, 26:23, 29:6

**members** [2] - 23:20, 26:23

**memo** [2] - 12:16, 12:18, 19:9

**mention** [1] - 20:23

**mentioned** [2] - 5:13, 20:19

**mere** [1] - 12:21

**MIAMI** [1] - 1:2

**Miami** [8] - 1:4, 1:22, 2:4, 2:10, 2:17, 2:18, 32:15, 32:16

**mid** [1] - 24:12

**might** [2] - 6:9, 14:12

**mind** [1] - 27:9

**mindful** [1] - 29:15

**minimum** [1] - 16:6

**money** [1] - 7:15

**months** [9] - 8:11, 8:24, 18:18, 20:17, 24:21, 24:25, 25:4, 25:22, 26:18

**morning** [3] - 3:14, 3:20, 4:1

**most** [1] - 11:4

**motion** [36] - 4:11, 5:3, 5:4, 5:6, 5:7, 5:8, 5:9, 5:10, 5:12, 5:19, 8:17, 10:16, 10:18, 11:18, 12:14, 15:10, 16:7, 16:15, 16:18, 17:4, 18:20, 18:22, 21:1, 21:2, 21:4, 21:7, 23:5, 28:7, 28:8, 28:9, 30:11, 30:13

**MOTION** [1] - 1:10
**motions** [4] - 4:14, 4:25, 5:1, 5:2
**movement** [1] - 20:4
**moves** [1] - 7:21
**moving** [2] - 13:6, 25:17
**MR** [41] - 3:5, 3:14, 3:20, 4:19, 5:13, 5:17, 5:23, 5:24, 5:25, 6:3, 6:5, 6:11, 6:14, 8:22, 9:15, 10:11, 10:16, 11:7, 14:9, 15:2, 15:5, 15:7, 17:20, 17:23, 18:9, 20:16, 21:11, 21:14, 23:19, 24:17, 24:24, 25:11, 27:6, 27:17, 27:25, 28:2, 31:4, 31:7, 31:11, 31:15, 31:16
**MULLINS** [1] - 1:21
**multiple** [1] - 22:25
**mute** [2] - 6:5, 6:7

## N

**Nacional** [2] - 12:17, 13:8
**Naim** [1] - 3:20
**NAIM** [1] - 2:7
**naive** [1] - 22:16
**name** [1] - 23:23
**nation** [3] - 12:22, 12:23, 28:19
**nationalities** [1] - 9:20
**natural** [1] - 19:25
**nature** [1] - 22:3
**necessarily** [1] - 4:13
**necessary** [2] - 8:5, 29:23
**need** [3] - 8:5, 10:15, 31:2
**needed** [2] - 8:23, 30:17
**NELSON** [1] - 1:21
**never** [1] - 12:10
**New** [4] - 1:18, 1:25
**next** [1] - 7:5
**NO** [1] - 1:2
**nobody** [1] - 20:9
**nonsense** [1] - 15:20
**North** [2] - 2:17, 32:15
**note** [3] - 10:18, 11:20, 32:7
**Note** [1] - 11:25
**noted** [1] - 28:17
**nothing** [3] - 31:4,

31:7, 31:12
**notice** [1] - 10:25
**noticing** [1] - 5:24
**nullification** [4] - 12:9, 14:2, 21:23, 22:3
**nullifies** [1] - 12:1
**number** [3] - 18:15, 22:10, 30:12
**numbers** [1] - 20:25
**Nunez** [2] - 3:6, 3:7
**NUNEZ** [2] - 1:13, 1:14
**NW** [1] - 2:13

## O

**objection** [1] - 4:10
**obligation** [2] - 12:20, 13:10
**obviously** [1] - 29:14
**occur** [1] - 29:22
**occurred** [2] - 22:22, 32:7
**OF** [1] - 1:1
**officer** [1] - 30:19
**Official** [1] - 32:14
**official** [2] - 1:24, 2:16
**One** [1] - 1:22, 2:3
**one** [13] - 4:3, 7:13, 9:10, 9:18, 9:23, 12:20, 12:22, 18:15, 20:12, 22:10, 23:24, 28:22, 29:17
**operators** [4] - 11:23, 20:2, 20:3, 20:8
**opinion** [4] - 21:25, 22:5, 28:14, 28:16
**opportunity** [4] - 4:10, 14:23, 29:2, 29:10
**opposed** [2] - 14:12, 22:3
**opposition** [3] - 12:16, 12:18, 19:9
**option** [1] - 6:15
**Order** [1] - 3:1
**order** [9] - 21:5, 21:6, 21:17, 21:18, 22:6, 24:19, 25:12, 25:19, 31:1
**ordering** [1] - 19:13
**original** [2] - 8:12, 8:25
**originally** [1] - 4:1
**ORMAND** [1] - 1:24
**Ormand** [1] - 3:17
**otherwise** [1] - 22:21
**outlined** [2] - 29:24,

30:12
**outside** [2] - 8:24, 11:14
**outweighs** [2] - 25:7, 26:3
**OVERY** [1] - 1:24
**own** [2] - 7:4, 17:10
**owned** [2] - 23:21, 28:2

## P

**packages** [1] - 27:22
**page** [4] - 12:17, 13:8, 13:13, 19:8
**Pages** [1] - 1:7
**pandemic** [2] - 27:21, 32:8
**papers** [3] - 15:19, 18:1, 18:25
**part** [1] - 19:22
**participate** [1] - 29:21
**participating** [1] - 10:24
**particular** [2] - 11:21, 24:19
**parties** [7] - 4:3, 7:8, 11:2, 19:8, 20:23, 21:8, 30:6
**partner** [2] - 3:6, 3:15, 3:21
**parts** [2] - 9:21, 25:17
**party** [3] - 3:12, 15:24, 19:5
**pass** [1] - 26:16
**passed** [4] - 19:6, 20:13, 23:22, 24:7
**past** [1] - 30:3
**PATRICIA** [2] - 2:16, 32:14
**PAULINO** [1] - 1:13
**Paulino** [1] - 3:6
**Pedro** [1] - 3:21
**PEDRO** [1] - 2:8
**penalty** [1] - 7:25
**pending** [1] - 4:15
**Pennsylvania** [1] - 2:13
**people** [2] - 20:14, 29:20
**per** [1] - 7:25
**perhaps** [5] - 4:17, 9:12, 17:8, 28:24, 29:17
**period** [1] - 9:2
**permission** [1] - 14:14
**persons** [1] - 19:25

**phone** [2] - 6:7, 6:8
**Photochromic** [3] - 19:7, 19:9, 19:11
**pick** [1] - 8:24
**piecemeal** [1] - 23:1
**place** [1] - 18:21
**plaintiff** [9] - 9:10, 9:11, 18:7, 23:16, 23:17, 24:16, 24:21, 26:24, 29:19
**plaintiff's** [5] - 5:3, 7:10, 12:18, 19:9, 28:9
**plaintiffs** [10] - 3:6, 3:8, 4:8, 8:13, 12:15, 23:16, 24:25, 25:9, 29:15, 31:4
**Plaintiffs** [1] - 1:5
**PLAINTIFFS** [1] - 1:13
**plaintiffs'** [1] - 5:8
**plausible** [1] - 7:14
**PLC** [4] - 1:7, 2:6, 3:3, 3:24
**pleading** [2] - 20:24, 30:14
**pleadings** [2] - 17:15, 30:13
**point** [4] - 14:24, 18:1, 20:12, 24:7
**points** [2] - 8:16, 27:7
**position** [7] - 7:22, 9:12, 9:13, 13:6, 16:19, 16:23, 18:18, 19:2, 23:18
**possibility** [1] - 22:25
**possible** [2] - 24:13, 27:5
**possibly** [1] - 26:4
**post** [1] - 9:8
**potential** [3] - 25:7, 26:13, 29:15
**power** [1] - 29:25
**practice** [1] - 10:25
**precaution** [1] - 13:10
**prefer** [1] - 4:15
**prejudging** [1] - 29:6
**prejudice** [11] - 7:10, 7:14, 18:7, 18:15, 23:12, 23:15, 24:19, 24:21, 26:3, 29:15
**preliminary** [1] - 24:6
**premature** [1] - 16:19
**premise** [4] - 18:9, 18:14, 19:1, 20:10

**prepared** [1] - 4:14
**presentations** [1] - 25:19
**presented** [1] - 21:6
**preservation** [1] - 27:4
**preserve** [1] - 25:3
**presume** [1] - 8:3
**prevail** [2] - 14:19, 18:21
**previously** [1] - 27:4
**procedural** [3] - 15:1, 29:2, 29:13
**procedurally** [1] - 14:13
**proceed** [13] - 4:15, 4:16, 4:20, 4:23, 6:13, 10:23, 14:18, 14:19, 18:19, 26:25, 29:19, 30:4
**proceedings** [4] - 8:5, 8:6, 31:17, 32:4
**Proceedings** [1] - 13:13
**proceeds** [1] - 28:25
**produce** [2] - 13:20, 20:21
**produced** [1] - 20:11
**producing** [1] - 13:21
**production** [4] - 13:16, 19:10, 19:13
**prohibit** [1] - 13:6
**prompt** [1] - 8:3
**proper** [1] - 28:19
**properly** [1] - 29:3
**property** [2] - 23:21, 26:10
**propose** [1] - 9:7
**prosecuted** [3] - 19:2, 19:7, 22:17
**prosecution** [4] - 7:18, 10:5, 19:12, 20:9
**prospect** [1] - 22:20
**protect** [4] - 11:22, 20:3, 20:7, 22:15
**provide** [1] - 19:17
**providing** [1] - 19:18
**provisions** [1] - 12:3
**public** [3] - 17:12, 17:13, 17:21
**purpose** [3] - 19:23, 20:3, 20:7
**pursuant** [2] - 12:4, 28:18
**push** [1] - 18:13
**put** [3] - 6:7, 23:9, 23:17
**puts** [1] - 18:21

**Q**

**questions** [1] - 8:15
**quite** [1] - 16:3
**quote** [1] - 13:11
**quotes** [1] - 13:5

**R**

**raised** [2] - 9:10, 27:7
**Ramon** [1] - 23:23
**rather** [2] - 19:16, 29:9
**Raymond** [2] - 3:14, 5:12
**RAYMOND** [4] - 1:20, 3:14, 5:13, 31:16
**Re** [1] - 13:12
**read** [1] - 11:11
**real** [2] - 22:14, 26:23
**realistic** [1] - 22:21
**really** [6] - 7:14, 7:20, 8:16, 12:8, 22:13, 25:2
**reason** [5] - 8:2, 10:14, 17:6, 27:23, 30:20
**reasonable** [1] - 13:10
**reasons** [2] - 27:3, 30:12
**receive** [1] - 8:20
**receiver** [1] - 6:10
**receiving** [2] - 21:1, 27:21
**recent** [2] - 24:3, 24:4
**recess** [1] - 31:13
**recognition** [1] - 12:22
**recognize** [4] - 8:23, 12:10, 13:25, 22:9
**recognized** [2] - 11:17, 14:22
**reconsideration** [1] - 21:3
**reemphasize** [1] - 27:11
**refer** [3] - 11:10, 12:13, 13:5
**reference** [1] - 15:21
**referenced** [1] - 19:21
**referred** [1] - 20:1
**referring** [5] - 12:4, 25:22, 27:19, 27:24, 27:25

**regard** [3] - 23:12, 28:11, 30:8
**regarding** [6] - 5:11, 22:8, 24:5, 28:24, 30:5, 30:10
**Regulation** [1] - 11:10
**regulation** [2] - 9:24, 11:21
**regulations** [1] - 7:5
**related** [2] - 13:4, 20:5
**relates** [1] - 16:20
**relationship** [1] - 10:20
**relevant** [1] - 15:14
**relief** [4] - 6:21, 7:16, 16:5
**reluctant** [2] - 27:8, 27:15
**remotely** [1] - 32:9
**render** [1] - 8:3
**reply** [4] - 12:15, 13:3, 13:9, 13:13
**REPORTED** [1] - 2:15
**REPORTER** [2] - 5:21, 6:1
**Reporter** [2] - 2:16, 32:14
**reporter's** [2] - 17:24, 21:12
**reporting** [1] - 32:9
**reports** [1] - 30:7
**representation** [1] - 30:22
**request** [3] - 6:22, 8:4, 10:8
**required** [1] - 7:2
**requirement** [1] - 6:20
**requires** [1] - 9:24
**research** [1] - 17:10
**resolved** [1] - 26:19
**resource** [1] - 28:21
**respect** [4] - 10:17, 13:5, 22:4, 28:19
**respectfully** [8] - 12:13, 14:3, 18:10, 18:13, 18:24, 22:2, 23:2, 23:7
**respond** [14] - 4:22, 5:6, 6:16, 8:25, 15:5, 16:7, 16:14, 16:23, 17:4, 18:20, 23:5, 24:23, 25:11, 27:17
**responds** [1] - 7:18
**response** [6] - 4:13, 8:20, 11:24, 19:22, 21:2, 30:13

**reverts** [1] - 9:4
**rhetorically** [2] - 15:7
**RHYS** [13] - 1:23, 5:17, 5:25, 6:5, 6:11, 6:14, 8:22, 9:15, 17:20, 24:24, 27:6, 27:25, 31:7
**Rhys** [14] - 3:17, 5:8, 5:18, 6:7, 17:2, 17:9, 17:20, 24:24, 26:20, 27:6, 28:10, 30:11, 30:19, 31:6
**rights** [1] - 7:12
**ring** [1] - 27:13
**risk** [8] - 6:19, 7:17, 8:6, 19:12, 19:13, 25:6, 25:7, 25:8
**road** [4] - 14:12, 14:16, 16:21, 18:18
**Rodriguez** [19] - 3:2, 3:5, 3:7, 4:14, 4:19, 5:23, 11:6, 14:6, 17:23, 18:5, 21:11, 23:23, 24:1, 25:12, 29:6, 29:20, 31:3
**RODRIGUEZ** [24] - 1:4, 1:13, 1:14, 3:5, 4:19, 5:23, 6:3, 11:7, 14:9, 15:2, 15:5, 15:7, 17:23, 18:9, 20:16, 21:11, 21:14, 23:19, 24:17, 25:11, 27:17, 28:2, 31:4, 31:15
**room** [2] - 18:15
**RPR** [2] - 2:16, 32:14
**Rubicam** [1] - 3:24
**RUBICAM** [2] - 2:6
**rule** [2] - 17:1, 30:25
**rules** [1] - 7:5
**ruling** [1] - 12:10
**rulings** [1] - 12:2

**S**

**sake** [1] - 26:17
**sanctioned** [1] - 10:1
**sanctions** [3] - 9:17, 19:25, 22:14
**scale** [1] - 7:17
**scarce** [1] - 28:20
**scenario** [1] - 18:16
**scenarios** [2] - 14:17, 14:21
**scheduling** [1] - 4:17
**Scola** [15] - 6:25, 7:3, 7:19, 8:2, 20:24, 21:14, 21:22, 22:12, 22:24, 23:6, 24:4, 24:6, 28:12, 28:22,

30:6
**Scola's** [3] - 21:25, 22:5, 30:18
**SE** [1] - 2:9
**SEC** [3] - 9:11, 9:12, 9:16
**see** [10] - 4:9, 6:13, 15:13, 15:18, 16:1, 16:22, 17:6, 18:12, 22:20
**seek** [2] - 14:14, 15:12
**seeking** [4] - 7:15, 23:16, 25:6, 27:3
**seem** [1] - 14:15
**sell** [1] - 16:8
**sense** [2] - 11:4, 12:19
**sent** [2] - 25:22, 25:25
**separate** [1] - 13:12
**separated** [1] - 10:22
**September** [3] - 1:5, 21:7, 32:13
**seriously** [1] - 9:24
**serve** [4] - 8:13, 25:5, 27:19, 28:3
**served** [1] - 27:23
**set** [5] - 4:1, 10:16, 18:1, 18:25, 28:13
**several** [2] - 18:18, 24:20
**shall** [1] - 11:17
**short** [3] - 7:11, 8:4, 25:6
**show** [1] - 22:21
**side** [2] - 7:10, 7:17
**significant** [2] - 17:25, 26:11
**similar** [2] - 20:24, 27:3
**simple** [1] - 27:18
**simply** [4] - 5:10, 14:14, 30:14, 30:20
**sit** [1] - 22:16
**six** [1] - 19:8
**slow** [1] - 25:10
**Societe** [2] - 12:17, 13:8
**sometime** [1] - 18:17
**somewhat** [1] - 6:17
**sorry** [3] - 5:21, 15:2, 17:8
**sort** [1] - 18:11
**sought** [1] - 7:16
**SOUTHERN** [1] - 1:1
**sovereigns** [1] - 13:12
**speaker** [1] - 6:8
**speaking** [2] - 6:7,

27:9
**specific** [3] - 11:22, 15:21, 29:20
**specifically** [5] - 11:11, 11:15, 17:3, 21:16, 28:22
**specificity** [1] - 17:5
**specified** [2] - 11:15, 20:1
**St** [1] - 2:9
**start** [1] - 5:10
**starting** [2] - 24:22, 31:3
**State** [2] - 25:14, 25:20
**STATES** [2] - 1:1, 1:11
**States** [2] - 2:17, 32:15
**states** [1] - 12:10
**statin** [3] - 4:2, 30:7, 30:9
**STATUS** [1] - 1:10
**statute** [27] - 11:10, 11:22, 11:25, 12:8, 12:9, 12:25, 13:23, 13:24, 19:10, 19:14, 19:15, 19:18, 19:22, 19:23, 20:13, 21:19, 21:20, 21:22, 21:23, 21:24, 22:3, 22:4, 22:7, 22:10
**statutes** [7] - 13:15, 13:20, 14:2, 14:3, 14:7, 14:9
**stay** [49] - 5:5, 5:7, 5:9, 5:10, 5:19, 6:21, 7:1, 7:6, 7:9, 8:4, 8:7, 8:9, 8:17, 10:8, 10:9, 10:10, 10:15, 11:3, 11:18, 15:8, 15:11, 18:8, 18:11, 18:12, 18:13, 18:23, 21:1, 21:4, 21:5, 21:7, 23:13, 23:14, 23:18, 25:6, 26:24, 27:3, 27:5, 28:7, 28:8, 28:11, 29:13, 29:18, 30:1, 30:2, 30:3
**stays** [2] - 8:9, 22:25
**stems** [1] - 23:21
**STENOGRAPHICA LLY** [1] - 2:15
**steps** [2] - 7:13, 10:4
**still** [5] - 6:12, 7:12, 23:25, 27:11, 29:5
**stipulate** [1] - 26:14
**stop** [2] - 8:11, 16:12
**street** [1] - 12:12
**strike** [4] - 5:8,

28:10, 30:11, 30:13
**strong** [1] - 7:4
**strongly** [2] - 7:9, 20:20
**subject** [7] - 5:18, 10:3, 10:4, 10:5, 27:10, 30:23, 32:8
**subjecting** [1] - 13:11
**subjects** [2] - 19:16, 19:17
**submit** [3] - 12:13, 14:3, 16:4
**submits** [1] - 15:25
**submitted** [1] - 5:9
**substantial** [1] - 23:15
**substantive** [3] - 4:17, 7:11, 28:24
**substantively** [1] - 24:21
**sue** [2] - 20:14, 20:16
**suggest** [1] - 9:24
**suggests** [1] - 9:12
**Suite** [2] - 1:15, 1:18
**summons** [2] - 7:13, 27:12
**support** [2] - 5:9, 7:9
**Surgeon** [1] - 3:20
**SURGEON** [6] - 2:7, 3:20, 5:24, 10:11, 10:16, 31:11
**surgeon** [5] - 4:3, 4:6, 10:7, 26:22, 31:9
**suspect** [2] - 20:20, 26:8

## T

**tail** [1] - 16:2
**team** [1] - 5:15
**technological** [1] - 32:9
**terms** [1] - 10:18
**territory** [1] - 12:22
**testimony** [3] - 26:11, 27:4, 29:19
**THE** [34] - 1:10, 1:13, 3:13, 3:19, 3:25, 5:2, 5:16, 5:21, 6:1, 6:6, 6:12, 8:18, 9:10, 10:7, 10:12, 11:6, 14:6, 14:11, 15:4, 15:6, 17:8, 17:22, 18:5, 20:12, 20:23, 21:13, 23:11, 24:15, 24:18, 26:20, 28:5, 31:6, 31:9, 31:13
**themselves** [3] - 14:24, 29:4, 29:12

**therefore** [2] - 10:22, 32:8
**thinking** [1] - 9:9
**thinks** [1] - 30:15
**third** [3] - 8:1, 19:24, 20:5
**Third** [1] - 1:18
**threat** [1] - 22:14
**threatened** [1] - 8:14
**threatening** [1] - 25:4
**three** [1] - 13:13
**Tico** [1] - 3:23
**TICO** [1] - 2:12
**tied** [1] - 10:13
**Title** [4] - 13:7, 25:1, 25:13, 25:15
**today** [5] - 4:15, 4:24, 14:5, 31:2
**together** [1] - 10:13
**took** [6] - 6:25, 8:13, 20:24, 24:25, 25:3, 25:4
**totally** [1] - 13:18
**Tower** [2] - 1:22, 2:3
**trade** [1] - 20:4
**Tramont** [1] - 3:7
**TRAMONT** [1] - 1:14
**transcription** [1] - 32:4
**transitional** [1] - 9:2
**true** [1] - 20:16
**Trujillo** [1] - 28:13
**truly** [1] - 13:19
**truthfulness** [1] - 30:21
**try** [1] - 6:5
**trying** [1] - 16:8
**Turner** [4] - 7:7, 8:1, 28:15, 29:25
**two** [6] - 12:12, 13:9, 14:21, 23:25, 29:16
**two-way** [1] - 12:12

## U

**U.K** [1] - 8:6
**U.S** [1] - 9:25
**ultimate** [2] - 15:1, 29:5
**ultimately** [2] - 14:16, 29:7
**uncle** [3] - 24:1, 24:11, 26:9
**under** [7] - 5:20, 6:15, 11:5, 20:14, 25:15, 25:24, 30:24
**understood** [1] - 4:25
**unequivocally** [1] -

12:10
**Union** [10] - 9:3, 11:9, 11:21, 14:22, 15:8, 15:15, 15:22, 16:14, 23:3, 29:9
**united** [1] - 2:17
**UNITED** [2] - 1:1, 1:11
**United** [2] - 9:2, 32:15
**unlawful** [1] - 19:24
**unless** [3] - 15:24, 20:20, 22:21
**unlike** [1] - 21:23
**unlikely** [2] - 8:3, 9:5
**unlimited** [3] - 7:18, 7:24, 18:12
**up** [6] - 5:21, 5:22, 5:23, 20:9, 20:24, 31:2
**urgency** [2] - 25:2, 27:13

## V

**vacate** [3] - 21:4, 21:7
**versus** [3] - 3:2, 20:25, 28:15
**via** [1] - 27:20
**viable** [1] - 26:6
**viewed** [1] - 21:19
**violating** [1] - 6:20
**violation** [1] - 7:25
**vs** [2] - 1:6, 28:13

## W

**wait** [2] - 25:23, 30:4
**warranted** [3] - 23:14, 29:13, 30:2
**Washington** [1] - 2:13
**weeks** [1] - 9:8
**weigh** [2] - 27:15, 30:14
**weighs** [1] - 19:12
**whole** [4] - 14:22, 19:1, 20:7, 20:10
**widget** [1] - 16:10
**Wilmer** [1] - 3:22
**WILMER** [1] - 2:12
**win** [1] - 16:18
**witness** [1] - 26:12
**witnesses** [2] - 24:20, 29:16
**wondering** [2] - 14:11, 27:2
**worse** [2] - 7:22, 23:18

**WPP** [3] - 2:6, 3:24, 31:11

## Y

**year** [1] - 20:15
**years** [3] - 4:7, 20:13, 21:15
**York** [4] - 1:18, 1:25
**Young** [1] - 3:24
**YOUNG** [1] - 2:6
**yourself** [1] - 24:15