UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23287-DPG

LUIS MANUEL RODRIGUEZ, *et al*.,

Plaintiffs,

v.

IMPERIAL BRANDS PLC, *et al*.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
IMPERIAL BRANDS PLC'S MOTION TO DISMISS**

**CLAIM OF UNCONSTITUTIONALITY**

NELSON MULLINS BROAD AND CASSEL
Mark F. Raymond
Mark.Raymond@nelsonmullins.com
Jonathan Etra
jonathan.etra@nelsonmullins.com
2 South Biscayne Blvd. 21st Floor
Miami, FL 33131
Telephone: 305-373-9400

ALLEN & OVERY LLP
Andrew Rhys Davies (admitted *pro hac vice*)
andrewrhys.davies@allenovery.com
Justin L. Ormand (admitted *pro hac vice*)
justin.ormand@allenovery.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-610-6300

*Attorneys for Defendant Imperial Brands plc*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT ...............................................................................................................4

I.      THE COMPLAINT PLEADS NO BASIS FOR PERSONAL JURISDICTION OVER IMPERIAL—A U.K. COMPANY THAT IS NOT ALLEGED TO HAVE COMMITTED ANY SUIT-RELATED CONDUCT IN THIS FORUM...........................4

      A.    Allegations About Imperial's Non-U.S. Cuban-Cigar Business Do Not Plead that Imperial Has Purposefully Availed Itself of the Privilege of Conducting Activities in this Forum ...................................................................5

            1.    The Complaint does not plead purposeful availment by alleging that forum-resident plaintiffs were damaged by the use of real property in Cuba for purposes of Imperial's non-U.S. Cuban-cigar business ..........................................................................................6

            2.    Allegations about social media platforms that are unconnected to the claim asserted in this lawsuit provide no basis for specific jurisdiction .........................................................................................8

            3.    Imperial's knowledge of the existence of the Helms-Burton Act does not constitute purposeful availment of this forum...........................11

      B.    In the Transnational Context of this Case, It Would Be Unconstitutionally Unreasonable to Exercise Personal Jurisdiction over Imperial..............................12

II.     DUE PROCESS PROHIBITS THE APPLICATION OF TITLE III TO IMPERIAL'S CONCEDEDLY "NON-U.S." CUBAN-CIGAR BUSINESS..................14

CONCLUSION...........................................................................................................18

REQUEST FOR HEARING.......................................................................................18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................9

*Allstate Ins. Co. v. Hague*,
449 U.S. 302 (1981)....................15, 17

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*,
221 F.3d 1211 (11th Cir. 2000) ....................14, 15

*Am. Ins. Ass'n v. Garamendi*,
539 U.S. 396 (2003)....................17

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*,
480 U.S. 102 (1987)....................12, 13, 14

*Astro Aluminum Treating Co. v. Inter Contal, Inc.*,
296 So. 3d 462 (Fla. Dist. Ct. App. 2020) ....................5

*Bioheart, Inc. v. Peschong*,
No. 13-cv-60304, 2013 WL 1729278 (S.D. Fla. Apr. 22, 2013)....................10

*Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*,
No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017)....................9

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)....................11

*Buzz Pop Cocktails Corp. v. Booze Pops, LLC*,
No. 8:19-cv-1840-MSS-TGW, 2020 WL 2838825 (M.D. Fla. Apr. 22, 2020)....................10

*Calder v. Jones*,
465 U.S. 783 (1984)....................8

*Cossaboon v. Maine Med. Ctr.*,
600 F.3d 25 (1st Cir. 2010)....................9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................12

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ....................8

*Durango-Georgia Paper Co. v. H.G. Estate, LLC*,
   739 F.3d 1263 (11th Cir. 2014) ................................................................16

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 (4th Cir. 2020) ...................................................................9

*Fraser v. Smith*,
   594 F.3d 842 (11th Cir. 2010) ........................................................5, 10, 11

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*,
   267 F.3d 1228 (11th Cir. 2001) ......................................................15, 16, 17

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
   106 F. Supp. 3d 1231 (S.D. Fla. 2015) ........................................................7

*Honus Wagner Co. v. Luminary Grp. LLC*,
   No. 17-cv-61317, 2017 WL 6547899 (S.D. Fla. Dec. 21, 2017)...........................10

*In re Healthsouth Corp. Sec. Litig.*,
   No. 98-J-2634-S, 2000 WL 34211319 (N.D. Ala. Dec. 13, 2000)..........................14

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945)...........................................................................6, 12

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ...............................................................8

*McCullough v. Finley*,
   907 F.3d 1324 (11th Cir. 2018) ...............................................................3

*New York v. United States*,
   505 U.S. 144 (1992)...........................................................................11

*Odebrecht Constr., Inc. v. Prasad*,
   876 F. Supp. 2d 1305 (S.D. Fla. 2012), *aff'd sub nom.*, *Odebrecht Constr., Inc.
   v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268 (11th Cir. 2013)......................12

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ...............................................................13

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987)............................................................................5

*United States ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) ...............................................................16

*Parrish v. Consol. City of Jacksonville*,
   No. 3:04-cv-00986-TJC-HTS, 2005 WL 1500894 (M.D. Fla. June 22, 2005) .................14

*Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*,
   No. 8:18-cv-00510-T-02AAS, 2019 WL 78840 (M.D. Fla. Jan. 2, 2019) ............................10

*PG Creative Inc. v. Affirm Agency, LLC*,
   No. 18-cv-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) (Gayles, J.) .................. *passim*

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ......................................................................................9

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ....................................................................................3, 4

*Sovereign Offshore Servs., LLC v. Shames*,
   No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ............................................10

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
   447 F.3d 1357 (11th Cir. 2006) ......................................................................................6

*United States v. Baston*,
   818 F.3d 651 (11th Cir. 2016) ..........................................................................14, 15, 16

*United States v. Ibarguen-Mosquera*,
   634 F.3d 1370 (11th Cir. 2011) ........................................................................14, 16, 17

*United States v. Noel*,
   893 F.3d 1294 (11th Cir. 2018) ............................................................................14, 15

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ....................................................................... *passim*

*Walden v. Fiore*,
   571 U.S. 277 (2014) ................................................................................. *passim*

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .....................................................................................11

*Zurvita, Inc. v. Wei Xu*,
   No. 8:18-cv-02480-T-02CPT, 2019 WL 423347 (M.D. Fla. Feb. 4, 2019) ...........................10

**Statutes**

Fla. Stat. § 48.193(1)(a)(2) ...................................................................................5

**Rules**

Fed. R. Civ. P. 4(k) .............................................................................................5

Fed. R. Civ. P. 12(b)(2) .....................................................................................1, 7

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 16

31 C.F.R. § 515.204 ..............................................................................................................6

**Other Authorities**

United States Dep't of State, Legal Considerations Regarding Title III of the
    Libertad Bill, 141 Cong. Rec. S15106 (Oct. 12, 1995) ....................................................14, 16

Council Regulation (EC) No. 2271/96, Protecting Against the Effects of the
    Extra-Territorial Application of Legislation Adopted by a Third County, and
    Actions Based Thereon or Resulting Therefrom,
    1996 O.J. (L. 309) 1 (EC) .....................................................................................................12

Defendant Imperial Brands plc ("Imperial") submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6), to dismiss the Complaint dated August 6, 2020.

## PRELIMINARY STATEMENT

Plaintiffs sue under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85, seeking to recover the value of real property in Havana, Cuba that the Cuban Government allegedly confiscated in 1961. They seek that recovery, not from the Cuban Government, but rather from a British company, Imperial, on the basis that Imperial allegedly used the property in 2010 to manufacture, sell, market, and distribute hand-rolled Cuban cigars. Using the statutory terminology, Plaintiffs assert that Imperial "trafficked" in the real property. Under Title III, Plaintiffs claim, Imperial must pay them three-times the value of the property in 1961, plus six decades of compound interest. This claim fails as a matter of law, and it should therefore be dismissed at the outset.

In the joint motion to dismiss that is being filed simultaneously herewith, Imperial shows that Plaintiffs lack Article III standing. Because Congress cannot authorize suit in the absence of concrete harm caused by the defendant, Title III cannot impose liability on Imperial based on its alleged use of real property in which Plaintiffs have no ownership interest. Nor can Title III require Imperial to remedy harm caused—not by Imperial's alleged use of the real property—but by the Cuban Government's alleged confiscation of it decades earlier.

The joint motion also demonstrates that the Complaint fails to state a Title III claim. It is apparent from the face of the Complaint that the claim is barred by the statute of repose because the only alleged trafficking took place in 2010, well outside the two-year period preceding the filing of this case. And the Complaint fails plausibly to plead several essential elements of a Title III claim, including that Imperial knowingly and intentionally trafficked in property to which a

United States national owns a claim, or, indeed, that Plaintiffs actually own the claim they purport to assert through this lawsuit.

In this submission, Imperial demonstrates that the Complaint should be dismissed on two further grounds. *First*, the Complaint pleads no basis for the exercise of personal jurisdiction over Imperial. The Complaint rightly does not seek to assert general personal jurisdiction over this foreign-incorporated, foreign-headquartered company. And the Complaint's attempt to assert specific personal jurisdiction is precluded by federal due process. Imperial's suit-related conduct comprises the alleged use, through an indirect ownership interest in a Cuban company, of real property in Cuba, to manufacture, sell, market, and distribute Cuban hand-rolled cigars that cannot be imported into the United States. The Complaint rightly characterizes this as a "non-U.S. business." [DE 1 ("Compl.") ¶ 51]. These allegations do not plead that Imperial purposefully availed itself of the privilege of conducting suit-related activities in this forum. There is, therefore, no constitutional authority for the exercise of personal jurisdiction here.

*Second*, for similar reasons to those that bar the exercise of personal jurisdiction, Congress lacks legislative jurisdiction to apply Title III to Imperial's "non-U.S." Cuban-cigar business. It is well established that Congressional solicitude for forum residents like Plaintiffs does not permit Congress to regulate the overseas business dealings of foreign companies relating to persons, property, and events outside the United States.

## **BACKGROUND**

Plaintiffs assert a claim under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85, contending that Defendants have "trafficked" in real property in Cuba (the "RRHSC Property") that the Cuban Government confiscated in 1961. Compl. ¶¶ 3, 7, 40–41, 62. Plaintiffs demand that they be awarded the greater of (a) three-times the value of the RRHSC Property in 1961,

when the Cuban Government confiscated it, plus compound interest running from that date, or (b) three-times the RRHSC Property's present value. *Id.* ¶¶ 63–64.

Plaintiffs allege that a Cuban company, defendant Corporación Habanos, S.A. ("Habanos"), and/or the Cuban tobacco company, Tabacuba, have "trafficked" in the RRHSC Property within the meaning of Title III by using it to manufacture, sell, market, and distribute hand-rolled Cuban cigars. *Id.* ¶¶ 6–7, 20, 25–26, 45–46. Plaintiffs further allege that, between 2007 and 2020, Imperial—a company incorporated and with its principal place of business in the United Kingdom—held an indirect fifty percent ownership interest in Habanos. *Id.* ¶¶ 5, 19, 44, 51. By virtue of Imperial's interest in Habanos, Plaintiffs assert that Imperial, too, engaged in trafficking within the meaning of Title III. *Id.* ¶¶ 6–7, 20, 26, 48.

The Complaint does not allege that Imperial is subject to general (or "all-purpose") jurisdiction in this forum. It does, however, assert that Imperial is subject to specific (or "case-linked") jurisdiction, Compl. ¶¶ 36–37, based on the following jurisdictional allegations, which are assumed to be true for purposes of this motion only.[1]

Through its indirect fifty percent ownership interest in Habanos, Imperial has "trafficked" in the RRHSC Property in Havana, Cuba by using it to manufacture, sell, market, and distribute Cuban cigars. *Id.* ¶¶ 25–26, 31; *see also id.* ¶¶ 5, 20, 44–46. Plaintiffs contend that Imperial's alleged conduct has caused them harm in this forum, because they are resident here. *Id.* ¶ 26; *see also id.* ¶¶ 11–12.

Imperial and/or Habanos retained advertising agencies, some of them allegedly U.S.-headquartered, to market Cuban cigars. Compl. ¶ 31. Specifically, beginning in 2017, Imperial

---

[1]     *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (non-conclusory factual allegations are assumed to be true for purposes of a motion under Federal Rule of Civil Procedure 12(b)(6)); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317–18 (11th Cir. 2006) (same for motion under Rule 12(b)(2)).

and/or Habanos used Twitter, Instagram, and YouTube to promote Cuban cigars online. Compl. ¶ 31; *see also id.* ¶ 9 n.9.

At the time it acquired its indirect interest in Habanos in 2017, Imperial was aware of the existence of the Helms-Burton Act. *Id.* ¶ 30. Imperial should therefore have anticipated that using the RRHSC Property for purposes of its "non-U.S." Cuban-cigar business would expose Imperial to a Title III suit in this forum. *Id.* ¶¶ 34, 51

## **ARGUMENT**

## I.   **THE COMPLAINT PLEADS NO BASIS FOR PERSONAL JURISDICTION OVER IMPERIAL—A U.K. COMPANY THAT IS NOT ALLEGED TO HAVE COMMITTED ANY SUIT-RELATED CONDUCT IN THIS FORUM**

A complaint must be dismissed when, as here, it fails to allege facts that establish a prima facie case of personal jurisdiction. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). The jurisdictional facts alleged in the Complaint are uncontroverted for purposes of this motion, so they must be accepted as true. *Id.* at 1317. Nonetheless, "vague and conclusory" assertions are insufficient. *Id.* at 1318–20; *see also PG Creative Inc. v. Affirm Agency, LLC*, No. 18-cv-24299, 2019 WL 5684219, at *1 (S.D. Fla. Oct. 31, 2019) (Gayles, J.) ("Plaintiffs must properly plead facts pertinent to the conduct and activities of the defendant in the forum state.") (citation, internal quotations, and brackets omitted). The facts alleged in the Complaint reveal that Imperial is a foreign company that is being sued based on allegations of conduct that occurred entirely overseas, in the course of what even Plaintiffs concede was Imperial's "non-U.S. business." Compl. ¶ 51. Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

As "Imperial, is a limited liability company incorporated in England and Wales, having its principal place of business in England," Compl. ¶ 19, Plaintiffs correctly do not contend that

Imperial is subject to general (or "all-purpose") jurisdiction in this forum. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1316–18 (11th Cir. 2018) (absent truly exceptional circumstances, a corporation is subject to general jurisdiction in its place of incorporation and its principal place of business only). Plaintiffs contend only that Imperial is subject to specific (or "case-linked") jurisdiction. Compl. ¶¶ 36–37. Dismissal is required because—based on the facts alleged in the Complaint—federal due process precludes the exercise of specific jurisdiction.

### A.   Allegations About Imperial's Non-U.S. Cuban-Cigar Business Do Not Plead that Imperial Has Purposefully Availed Itself of the Privilege of Conducting Activities in this Forum

Plaintiffs proffer two statutory bases for specific jurisdiction over Imperial: (1) Section 48.193(1)(a)(2) of Florida's long-arm statute, which applies to a defendant that has committed a tortious act "within this state," Fla. Stat. § 48.193(1)(a)(2); *see* Compl. ¶ 36; and (2) the national long-arm statute, Fed. R. Civ. P. 4(k), which applies when a federal-law claim is asserted against a defendant that, like Imperial, is not subject to jurisdiction in any state, *Fraser v. Smith*, 594 F.3d 842, 848–49 (11th Cir. 2010); *see* Compl. ¶ 37. However, those two statutes are limited by the Due Process Clauses of the Fourteenth and Fifth Amendments, respectively. *Waite*, 901 F.3d at 1312–13; *Fraser*, 594 F.3d at 849 n.10.[2] These constitutional due process limitations preclude the exercise of personal jurisdiction here.

---

[2]      The Eleventh Circuit uses case law decided under the Fourteenth and Fifth Amendments interchangeably, *Fraser*, 594 F.3d at 848, 849 n.10, except that the Fifth Amendment analysis looks to the defendant's contacts with the United States, rather than the forum state, *id.* at 850. The United States Supreme Court has not endorsed the use of nationwide contacts, *see Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987), but here nothing turns on that question because the Complaint fails to allege minimum contacts with Florida or with the United States.

When, as here, due process precludes jurisdiction, the Court need not "address whether the requirements of Florida's long-arm statute would be met." *Waite*, 901 F.3d at 1313. Nonetheless, the long-arm statute "must be strictly construed in order to guarantee compliance with due process requirements," *Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d

The exercise of personal jurisdiction violates due process unless the defendant has created "'minimum contacts'" with the forum, "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite*, 901 F.3d at 1312 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Due process permits the exercise of specific jurisdiction only if the claim arises from the defendant's "purposeful availment" "'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *PG Creative Inc.*, 2019 WL 5684219, at *5 (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006)); *see also Waite*, 901 F.3d at 1313.

Here, Imperial's suit-related conduct comprises the alleged use of real property *in Cuba* to manufacture, market, sell, and distribute Cuban cigars. Compl. ¶ 26; *supra* at 3. Wholly absent from the Complaint is any allegation connecting Imperial's suit-related conduct to this forum. That is to be expected, given that Cuban products cannot be sold in the United States. 31 C.F.R. § 515.204. The Complaint recognizes that reality, aptly characterizing Imperial's Cuban-cigar business, from which these claims arise, as a "non-U.S. business." Compl. ¶ 51.

1. **The Complaint does not plead purposeful availment by alleging that forum-resident plaintiffs were damaged by the use of real property in Cuba for purposes of Imperial's non-U.S. Cuban-cigar business**

There is no basis for Plaintiffs' assertion that this Court may exercise specific jurisdiction because Imperial, through an indirect fifty percent shareholding in Habanos, used the RRHSC Property in Cuba to manufacture, sell, market, and distribute Cuban cigars. Compl. ¶¶ 25–26, 31; *see also id.* ¶¶ 5, 20, 44–46. Even if Habanos's alleged jurisdictional contacts were imputed to

---

462, 466 (Fla. Dist. Ct. App. 2020) (quotation marks omitted), so it is not satisfied by the Complaint's allegations of injury to Florida residents, *Waite*, 901 F.3d at 1316; *infra* at 6–8, or by allegations about the use of globally accessible social media sites, *infra* at 8–10.

Imperial,[3] there is no basis for the exercise of specific jurisdiction because no allegation connects those contacts to this forum. *Waite*, 901 F.3d at 1313.

The allegation that Imperial has recently disposed of its indirect ownership interest in Habanos, Compl. ¶¶ 26, 51, equally does not permit the exercise of specific jurisdiction here. Imperial's disposal of an indirect interest in a Cuban company that allegedly used real property in Cuba to produce Cuban cigars does not connect Imperial to this forum in any way. *See Waite*, 901 F.3d at 1316.

Plaintiffs cannot transform these purely *foreign* alleged activities into a basis for specific jurisdiction by asserting that they "caused damage" to Plaintiffs in the United States, where Plaintiffs live. Compl. ¶¶ 26, 33. "'[M]ere injury to a forum resident'" "'is not a sufficient connection to the forum'" for purposes of the Due Process Clause. *Waite*, 901 F.3d at 1316 (bracket in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).[4] Rather, the due process inquiry turns on "whether the *defendant's* actions connect [it] to the *forum.*'" *Waite*, 901 F.3d at 1316 (emphases and bracket in original) (quoting *Walden*, 571 U.S. at 289). Here, nothing connects Imperial's alleged conduct to this forum.

Plaintiffs are not assisted by the alternative "effects test" for specific jurisdiction, because they cannot meet the threshold requirement that the defendant committed an "intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum."

---

[3]   A corporation's jurisdictional contacts are not imputed to its shareholders, absent some extraordinary reason to pierce the corporate veil. *See, e.g.*, *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1240–41 (S.D. Fla. 2015). The Complaint alleges no basis for veil piercing. Nonetheless, as Habanos's alleged contacts as alleged in Paragraphs 26 and 31 of the Complaint disclose no basis for specific jurisdiction, Imperial proceeds, for purposes of this motion to dismiss under Rule 12(b)(2) only, as though those allegations had been leveled at Imperial.

[4]   *See also PG Creative Inc.*, 2019 WL 5684219, at *5 ("And the Supreme Court has 'made clear that mere injury to a forum resident is not a sufficient connection to the forum.'") (quoting *Walden*, 571 U.S. at 278).

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013). The Complaint is devoid of any allegation that Imperial "expressly aimed" its alleged overseas conduct "at a specific individual in the forum." *Id.* (citation and quotation marks omitted). Moreover, the Due Process Clause additionally requires that the defendant's alleged tortious conduct connect the defendant to the *forum*, not merely to a forum resident, *Waite*, 901 F.3d at 1316, such as where the defendant targets the forum with a defamatory publication, which is read by forum residents, causing reputational injury in the forum to the forum-resident plaintiff, *Walden*, 571 U.S. at 286–87 (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)). As there is no allegation that Imperial expressly aimed any suit-related conduct at this forum, the fortuity that Plaintiffs "happen[] to be" forum residents "is wholly deficient evidence" of Imperial's contacts with this forum. *PG Creative Inc.*, 2019 WL 5684219, at *5.

## 2. Allegations about social media platforms that are unconnected to the claim asserted in this lawsuit provide no basis for specific jurisdiction

Plaintiffs also are not assisted by their allegation that Imperial and/or Habanos retained advertising agencies, some of them allegedly U.S.-headquartered, to market Cuban cigars. Compl. ¶ 31. As a threshold matter, it is "well-established" that "merely contracting with a forum resident" is not a sufficient basis for specific jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010). Rather, the court must "focus[] on the substance of the transaction," to determine whether "the *nonresident defendant's* conduct" created jurisdictionally sufficient contacts with the forum. *Id.* (emphasis in original). Here, the substance of the alleged transaction—use of Twitter, Instagram, and YouTube beginning in 2017 to promote Cuban cigars online, Compl. ¶ 31; *see also id.* ¶ 9 n.9—fails for two separate reasons to plead any basis for personal jurisdiction. First, these allegations do not plead that Imperial purposefully availed itself of the privilege of conducting activities in this forum. *PG Creative*

*Inc.*, 2019 WL 5684219, at *5. Second, because there is no allegation that the RRHSC Property has been used to manufacture, sell, market, or distribute cigars at any time since 2010, these alleged jurisdictional contacts—the use of social media platforms beginning in 2017—do not satisfy the "arising out of" requirement for specific jurisdiction, *id.* at *4–5.

*First*, the Complaint's allegations about the use of social media do not plead purposeful availment because use of a website that is accessible worldwide does not create jurisdictional minimum contacts with any forum. As courts in this Circuit recognize, due process does not permit an out-of-state defendant to be subject to specific personal jurisdiction in this forum "merely because a Floridian might view [defendant's] Facebook, Twitter, Yelp, or TripAdvisor pages." *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *4 (M.D. Fla. Sept. 21, 2017) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)). Any other approach would contravene *Walden* by exposing a defendant to personal jurisdiction "in every spot on the planet" where the website could be accessed, with the result that "a plaintiff could sue everywhere." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803.[5] Therefore, "simply posting information about a company on a website that is visible throughout the world, and not directed at or used to contact a particular forum, does not create minimum contacts with a

---

[5]     *See also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) (website that is "accessible to all but targeted at no one in particular" does not support the exercise of personal jurisdiction); *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.") (citations omitted); *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 35 (1st Cir. 2010) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.") (citation and quotation marks omitted).

forum." *Bioheart, Inc. v. Peschong*, No. 13-cv-60304, 2013 WL 1729278, at *4 (S.D. Fla. Apr. 22, 2013).[6]

*Second*, allegations that, beginning in 2017, Habanos used social media to promote Cuban cigars online, Compl. ¶ 31, disclose no basis for specific jurisdiction because those allegations are untethered to the claim asserted in this lawsuit. For specific jurisdiction, the defendant's in-forum contacts must be the "but-for" cause of the claim. *Waite*, 901 F.3d at 1313–14 (citing, *inter alia*, *Fraser*, 594 F.3d at 844). The claim asserted here arises from the alleged use of the RRHSC Property to manufacture, sell, market, and distribute Cuban cigars. Compl. ¶¶ 6–7, 20, 25–26, 45–46, 55. But there is no allegation that such use extended past February 2010, years before the alleged social media usage began. *Id.* ¶ 46; *see also* Joint Mot. to Dismiss, at 10–12. The Eleventh Circuit has made clear that jurisdictional contacts cannot support specific jurisdiction when—as here—they post-date the alleged wrong. *Waite*, 901 F.3d at 1315.

---

[6]     *See also Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-cv-1840-MSS-TGW, 2020 WL 2838825, at *8 (M.D. Fla. Apr. 22, 2020) ("'[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction.'") (bracket in original) (quoting *Fraser*, 594 F.3d at 874); *Zurvita, Inc. v. Wei Xu*, No. 8:18-cv-02480-T-02CPT, 2019 WL 423347, at *2 (M.D. Fla. Feb. 4, 2019) (offering goods on the "generally accessible website, Amazon.com" did not constitute purposeful availment in Florida); *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *6 (M.D. Fla. Jan. 2, 2019) (specific jurisdiction was not available because "Defendant does not have contacts with Florida other than through its generally-accessible website"); *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10, 12 (S.D. Fla. Dec. 21, 2017) (defendant's use of a website that was "available to anyone with internet access in the world, including Florida residents" did not create minimum contacts with Florida); *Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [plaintiff's] physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.").

### 3. Imperial's knowledge of the existence of the Helms-Burton Act does not constitute purposeful availment of this forum

The allegation that Imperial was aware of the Helms-Burton Act and therefore also aware of the risk of being sued in a U.S. court, Compl. ¶¶ 30, 34, does not permit the exercise of personal jurisdiction. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Fraser*, 594 F.3d at 852 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). The foreseeability required by the Due Process Clause "'is that the defendant's *conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there.'" *Fraser*, 594 F.3d at 852 (emphasis added) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Put differently, it is a defendant's purposeful in-forum activities that provide constitutionally-sufficient "fair warning" that the defendant may be subject to jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

There is no support for the bootstrapping argument, Compl. ¶¶ 30, 34, that a defendant may be subject to jurisdiction based only on its alleged knowledge that a legislature has conferred a cause of action on forum residents. Such a rule would impermissibly free Congress of the constraints of the Due Process Clause. *See New York v. United States*, 505 U.S. 144, 156 (1992) ("Congress exercises its conferred powers subject to the limitations contained in the Constitution.").

\*       \*       \*

Here—as in *Waite* and *Walden*—due process precludes the exercise of personal jurisdiction because "none of [Imperial's] challenged conduct had anything to do with [Florida or the United States] itself." *Walden*, 571 U.S. at 289. As in those controlling authorities, Plaintiffs' purported injury allegedly occurred in this forum "'not because anything

independently occurred there, but because [Florida] is where [Plaintiffs] chose to be.'" *Waite*, 901 F.3d at 1316 (first alteration in original) (quoting *Walden,* 571 U.S. at 290). As *Waite* and *Walden* make clear, that is not a constitutional basis to exercise personal jurisdiction.

### B.      In the Transnational Context of this Case, It Would Be Unconstitutionally Unreasonable to Exercise Personal Jurisdiction over Imperial

Plaintiffs' inability to plead the purposeful availment and causation requirements of specific jurisdiction, *supra* at 4–12, requires dismissal. *PG Creative Inc.*, 2019 WL 5684219, at *7. The Court need go no further to grant Imperial's motion, *Waite*, 901 F.3d at 1313 n.2, but dismissal is required here for the additional reason that exercising personal jurisdiction in the transnational context of this matter would be unreasonable and offensive to "'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987) (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

The United States Supreme Court has recognized that in the "transnational context," expansive exercises of personal jurisdiction can imperil international comity, implicating the "fair play and substantial justice" element of the due-process inquiry. *Daimler AG v. Bauman*, 571 U.S. 117, 140–42 (2014). Therefore, where, as here, the interests of a foreign sovereign are at stake, a court must not exercise personal jurisdiction without considering the "substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co.*, 480 U.S. at 115 (emphasis in original).

Title III "caused an international uproar among United States' allies," several of which enacted measures to counteract Title III's extraterritorial effect. *Odebrecht Constr., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1311–12 (S.D. Fla. 2012), *aff'd sub nom.*, *Odebrecht Constr., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268 (11th Cir. 2013). As relevant here, the European Union implemented Council Regulation (EC) No. 2271/96, Protecting Against the

12

Effects of the Extra-Territorial Application of Legislation Adopted by a Third County, and Actions Based Thereon or Resulting Therefrom, 1996 O.J. (L. 309) 1 (EC) ("Regulation 2271/96"), now incorporated into English law as "retained EU law" after the conclusion of the "Brexit" transition period [DE 61 ¶ 4; DE 61-1], based on findings that the extraterritorial application of Title III violates international law and impedes the harmonious development of world trade, the free movement of capital, and the removal of restrictions on direct investment [DE 14 ¶ 9; DE 14-2]. These "substantive policies" of the United Kingdom, as reflected in Regulation 2271/96, would be adversely "affected by the assertion of jurisdiction," *Asahi Metal Indus. Co.,* 480 U.S. at 115, over Imperial, a British company that is being sued in respect of alleged conduct having no connection to this forum. Under these circumstances, the required "careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case," *id.*, mandates dismissal.

Further, "in cases involving international defendants, courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Oldfield v. Pueblo De Bahia Lora, S.*A., 558 F.3d 1210, 1221 (11th Cir. 2009) (brackets in original) (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 114). In *Asahi,* the burden of litigating in another country was itself sufficient to render the exercise of jurisdiction "unreasonable and unfair." 480 U.S. at 114–16. The "unique burdens" facing Imperial are much more severe in kind and magnitude, making the case for dismissal even more compelling. Regulation 2271/96 significantly impairs U.K. companies' ability to defend Title III actions, prohibiting them, under penalty of an unlimited criminal fine, from complying without authorization with any requirement or prohibition, including requests of U.S. courts, based on or resulting, directly or indirectly, from Title III or from lawsuits filed under Title III. [DE 14-2, Art. 5, DE 14-5].

Finally, these weighty considerations of international comity and fundamental fairness to Imperial are not outweighed by "the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co.,* 480 U.S. at 113. Regulation 2271/96 prohibits the recognition and enforcement of any judgment rendered in a Title III action [DE 14-2, Art. 4], and confers on U.K. companies counterclaims for harm, including legal costs, caused by Title III, including by Title III lawsuits [*id.* Art. 6]. Therefore, far from promoting Plaintiffs' interest—if any—in obtaining relief, Title III is apt to yield unenforceable judgments, confirming the State Department's prediction that Title III would "fail to provide an effective remedy for U.S. claimants." United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, 141 Cong. Rec. S15106, S15108 (Oct. 12, 1995).[7] Moreover, as the State Department admonished Congress, far from promoting forum interests, Title III "flies in the face of important U.S. interests," including the nation's foreign-policy and business interests. *Id.* at S15106–08.

## II.   DUE PROCESS PROHIBITS THE APPLICATION OF TITLE III TO IMPERIAL'S CONCEDEDLY "NON-U.S." CUBAN-CIGAR BUSINESS

The Due Process Clause of the Fifth Amendment permits the exercise of legislative jurisdiction only if there is some "'minimal contact between a State and the regulated subject.'" *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) (quoting *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000)).[8]

---

[7]     The Court may take judicial notice of the legislative history of Title III as revealed by the congressional record. *Parrish v. Consol. City of Jacksonville*, No. 3:04-cv-00986-TJC-HTS, 2005 WL 1500894, at *1 n.1 (M.D. Fla. June 22, 2005) (taking judicial notice of legislative history of state statute); *In re Healthsouth Corp. Sec. Litig.*, No. 98-J-2634-S, 2000 WL 34211319, at *2 (N.D. Ala. Dec. 13, 2000) (taking judicial notice of congressional record).

[8]     *See also United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018) (it is "well established" that the Due Process Clause of the Fifth Amendment prohibits the "arbitrary or

Therefore, Title III cannot be applied here, to what Plaintiffs concede is Imperial's "non-U.S." Cuban-cigar business, Compl. ¶ 51, based on allegations that Imperial, a U.K. entity, has conducted activities with a Cuban entity, Habanos, in Cuba, involving the use of real estate in Cuba for purposes of a Cuban-cigar business that, by law, cannot include the United States.

To adjudicate a due-process challenge to legislative jurisdiction, the Eleventh Circuit looks to the minimum-contacts inquiry that applies in the personal-jurisdiction context, and to the choice-of-law rule that prohibits a state from applying its substantive law unless it has a "'significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Am. Charities for Reasonable Fundraising Regulation, Inc.*, 221 F.3d at 1216 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)); *see also Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001) ("[W]e inquire not only into the contacts between the regulated *party* and the state, but also into the contacts between the regulated *subject matter* and the state.") (emphasis in original).

Applying this standard, the Eleventh Circuit has upheld the extraterritorial application of federal statutes in cases where the operative events had a significant connection to the United States, such as where the defendant "used this country as a home base and took advantage of its laws," portrayed himself as a U.S. citizen, lived in Florida, and wired the proceeds of his crime into a U.S. bank account, *Baston*, 818 F.3d at 669–70, or where the defendant took a U.S. citizen hostage, *United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018). But the Eleventh Circuit has also made clear that domestic (in that case, Florida) law cannot constitutionally be applied when—as here—the "subject matter" of the suit comprises the overseas business dealings of

---

fundamentally unfair" extraterritorial application of federal statutes) (citing *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011)).

foreign nationals, relating to "persons, property, and events" outside the jurisdiction. *Gerling Glob. Reinsurance Corp. of Am.*, 267 F.3d at 1238.

Confirming that the Due Process Clause prohibits the application of Title III here, Regulation 2271/96 reflects that the extraterritorial application of Title III "violate[s] international law." [DE 14-2.] Although compliance with international law is not necessary to satisfy due process, the Eleventh Circuit has recognized that it is relevant, *Baston*, 818 F.3d at 669, noting that "[i]n determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the protective principle, or the territorial principle." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378–79 (11th Cir. 2011) (citations and footnotes omitted). Here, the "objective principle" does not support the application of Title III because there is no nexus between Imperial's alleged conduct and the United States. *Id.* at 1378 & n.4. As the State Department has recognized, it is "difficult to imagine" how the use of real property in Cuba "has a 'substantial effect' within the territory of the United States." United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15106.[9] The "protective principle" is also inapplicable, given that Imperial's alleged conduct is not "generally recognized as a crime under the laws of states that have reasonably developed legal systems." *Ibarguen-Mosquera*, 634 F.3d at 1378–79 & n.5; *see also* United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15106 ("The principles behind Title III are not consistent with the traditions of the international system and other states have not adopted similar laws."). Further,

---

[9]     The congressional record is a proper subject of judicial notice, *supra* at 14 n.7, and it may therefore be considered on a motion under Rule 12(b)(6), *United States ex rel. Osheroff v. Humana Inc*., 776 F.3d 805, 811 (11th Cir. 2015); *see also Durango-Georgia Paper Co. v. H.G. Estate, LLC*, 739 F.3d 1263, 1272 (11th Cir. 2014) (relying on the congressional record in the course of affirming the dismissal of a complaint under Rule 12(b)(6)).

the "territorial principle" is inapplicable because no international agreement permits the United States to regulate a U.K. company's alleged business dealings in Cuba. *Ibarguen-Mosquera*, 634 F.3d at 1378–79 & n.6.

Finally, Plaintiffs are mistaken that Title III may be constitutionally applied here because *they* are United States citizens. It is well established that legislative solicitude for forum residents is not a constitutionally sufficient basis for the exercise of legislative jurisdiction. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 426 (2003) ("[A] postoccurrence change of residence to the forum State—standing alone—[i]s insufficient to justify application of forum law.") (brackets in original) (quoting *Allstate Ins. Co.*, 449 U.S. at 311); *see also Gerling Glob. Reinsurance Corp. of Am.*, 267 F.3d at 1238 n.6. (Florida residence of victims' descendants was not a "jurisdictionally-significant contact").

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss the Complaint as against Defendant Imperial Brands plc, and grant such other and further relief as the Court may consider appropriate.

## **REQUEST FOR HEARING**

The Complaint raises novel issues. The first action under Title III of the Helms-Burton Act was filed in May 2019, and there is limited decisional law construing Title III. For this reason, and because Imperial has raised a constitutional question, Imperial requests that the Court hold oral argument on this motion. Imperial estimates thirty minutes will be required for oral argument.

Dated: February 26, 2021                          Respectfully submitted,


                                                  /s/ *Mark F. Raymond*
                                                  NELSON MULLINS BROAD AND CASSEL
                                                  Mark F. Raymond
                                                  Mark.Raymond@nelsonmullins.com
                                                  Jonathan Etra
                                                  jonathan.etra@nelsonmullins.com
                                                  2 South Biscayne Blvd. 21st Floor
                                                  Miami, FL 33131
                                                  Telephone: 305-373-9400

                                                  ALLEN & OVERY LLP
                                                  Andrew Rhys Davies (admitted *pro hac vice*)
                                                  andrewrhys.davies@allenovery.com
                                                  Justin L. Ormand (admitted *pro hac vice*)
                                                  justin.ormand@allenovery.com
                                                  1221 Avenue of the Americas
                                                  New York, NY 10020
                                                  Telephone:  212-610-6300

                                                  *Attorneys for Defendant Imperial Brands plc*

18