UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23287-DPG

LUIS MANUEL RODRIGUEZ, *et al*.,

Plaintiffs,

v.

IMPERIAL BRANDS PLC, *et al*.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT IMPERIAL BRANDS PLC'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**<u>CLAIM OF UNCONSTITUTIONALITY</u>**

NELSON MULLINS BROAD AND CASSEL
Mark F. Raymond
mark.raymond@nelsonmullins.com
Jonathan Etra
jonathan.etra@nelsonmullins.com
2 South Biscayne Blvd. 21st Floor
Miami, FL 33131
Telephone: 305-373-9400

ALLEN & OVERY LLP
Andrew Rhys Davies (admitted *pro hac vice*)
andrewrhys.davies@allenovery.com
Justin L. Ormand (admitted *pro hac vice*)
justin.ormand@allenovery.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-610-6300

*Attorneys for Defendant Imperial Brands plc*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

I.     THE AMENDED COMPLAINT PLEADS NO BASIS FOR PERSONAL
       JURISDICTION OVER IMPERIAL—A U.K. COMPANY THAT IS NOT
       ALLEGED TO HAVE COMMITTED ANY SUIT-RELATED CONDUCT IN
       THIS FORUM ................................................................................................................... 4

       A.     Allegations About Imperial's Non-U.S. Cuban-Cigar Business Do Not
              Plead that Imperial Has Purposefully Availed Itself of the Privilege of
              Conducting Activities in this Forum ...................................................................... 6

              1.     The Amended Complaint Pleads No Basis to Impute to Imperial
                     the Alleged Jurisdictional Contacts of Other Entities, Including
                     Habanos ...................................................................................................... 7

              2.     Even if Habanos's Alleged Jurisdictional Contacts Were Imputed
                     to Imperial, They Do Not Make Out a Prima Facie Case of
                     Jurisdiction ................................................................................................. 9

                     a.     Allegations that forum residents were damaged by the use
                            of real property in Cuba for purposes of a "non-U.S."
                            Cuban-cigar business do not plead purposeful availment ............... 9

                     b.     Allegations about social media platforms that are
                            unconnected to the claim asserted in this lawsuit provide no
                            basis for specific jurisdiction ...................................................... 11

              3.     Imperial's knowledge of the existence of the Helms-Burton Act
                     does not constitute purposeful availment of this forum ........................... 13

       B.     In the Transnational Context of this Case, It Would Be Unconstitutionally
              Unreasonable to Exercise Personal Jurisdiction over Imperial ............................ 14

II.    DUE PROCESS PROHIBITS THE APPLICATION OF TITLE III TO
       IMPERIAL'S CONCEDEDLY "NON-U.S." CUBAN-CIGAR BUSINESS .................. 17

CONCLUSION .......................................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*.,
    751 F.3d 796 (7th Cir. 2014) ...........................................................................................11, 12

*Allstate Ins. Co. v. Hague*,
    449 U.S. 302 (1981) ...........................................................................................................18, 20

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty*.,
    221 F.3d 1211 (11th Cir. 2000) .......................................................................................17, 18

*Am. Ins. Ass'n v. Garamendi*,
    539 U.S. 396 (2003)..................................................................................................................19

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*,
    480 U.S. 102 (1987)...........................................................................................................15, 16

*Astro Aluminum Treating Co. v. Inter Contal, Inc*.,
    296 So. 3d 462 (Fla. Dist. Ct. App. 2020) ...............................................................................6

*Ballard v. Maco Caribe, Inc*.,
    No. 14-cv-21670, 2014 WL 4723144 (S.D. Fla. Sept. 23, 2014) .............................................8

*United States ex rel. Bibby v. Mortg. Invs. Corp.*,
    987 F.3d 1340 (11th Cir. 2021) ...................................................................................4, 7, 8

*Bioheart, Inc. v. Peschong*,
    No. 13-cv-60304, 2013 WL 1729278 (S.D. Fla. Apr. 22, 2013) .............................................12

*Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*,
    No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017) ........................11

*Braman Motors, Inc. v. BMW of N. Am., LLC*,
    No. 17-cv-23360, 2019 WL 7759096 (S.D. Fla. Sept. 30, 2019) ..........................................4, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).................................................................................................................13

*Buzz Pop Cocktails Corp. v. Booze Pops, LLC*,
    No. 8:19-cv-1840-MSS-TGW, 2020 WL 2838825 (M.D. Fla. Apr. 22, 2020).......................12

*Calder v. Jones*,
    465 U.S. 783 (1984)................................................................................................................10

*Chamberlin v. Venture Resorts, Inc.*,
  No. 5:17-cv-105-OC-30PRL, 2017 WL 2172091 (M.D. Fla. May 17, 2017) .......................... 5

*Consol. Dev. Corp. v. Sherritt, Inc.*,
  216 F.3d 1286 (11th Cir. 2000) ................................................................................................. 9

*Cossaboon v. Maine Med. Ctr.*,
  600 F.3d 25 (1st Cir. 2010) ...................................................................................................... 12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .................................................................................................................. 15

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
  593 F.3d 1249 (11th Cir. 2010) ............................................................................................... 11

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003) ................................................................................................................... 7

*Durango-Georgia Paper Co. v. H.G. Estate, LLC*,
  739 F.3d 1263 (11th Cir. 2014) ............................................................................................... 19

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ................................................................................................... 12

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) .............................................................................................................. 13

*Fraser v. Smith*,
  594 F.3d 842 (11th Cir. 2010) ........................................................................................ 6, 12, 13

*Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*,
  267 F.3d 1228 (11th Cir. 2001) .......................................................................................... 18, 20

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
  No. 20-cv-21630, 2021 WL 1648222 (S.D. Fla. Apr. 27, 2021) ................................................ 9

*Honus Wagner Co. v. Luminary Grp. LLC*,
  No. 17-cv-61317, 2017 WL 6547899 (S.D. Fla. Dec. 21, 2017) ............................................... 12

*In re Healthsouth Corp. Sec. Litig.*,
  No. 98-J-2634-S, 2000 WL 34211319 (N.D. Ala. Dec. 13, 2000) ........................................... 17

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
  326 U.S. 310 (1945) .............................................................................................................. 6, 15

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ....................................................................................... 4, 10, 13

*McCullough v. Finley*,
   907 F.3d 1324 (11th Cir. 2018) .................................................................................3

*New York v. United States*,
   505 U.S. 144 (1992).................................................................................................14

*Odebrecht Constr., Inc. v. Prasad*,
   876 F. Supp. 2d 1305 (S.D. Fla. 2012), *aff'd sub nom.*, *Odebrecht Constr., Inc.
   v. Sec'y, Florida Dep't. of Transp.*, 715 F.3d 1268 (11th Cir. 2013) ....................15

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
   558 F.3d 1210 (11th Cir. 2009) ...............................................................................16

*Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*,
   484 U.S. 97 (1987)......................................................................................................6

*United States ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) .................................................................................19

*Parrish v. Consol. City of Jacksonville*,
   No. 3:04-cv-00986-TJC-HTS, 2005 WL 1500894 (M.D. Fla. June 22, 2005) .......17

*Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*,
   No. 8:18-cv-00510-T-02AAS, 2019 WL 78840 (M.D. Fla. Jan. 2, 2019) ..............12

*PG Creative Inc. v. Affirm Agency, LLC*,
   No. 18-cv-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) ..................... *passim*

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) ...............................................................................12

*Snow v. DirecTV, Inc.*,
   450 F.3d 1314 (11th Cir. 2006) ...........................................................................3, 4, 8

*Sovereign Offshore Servs., LLC v. Shames*,
   No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ..............................12

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
   447 F.3d 1357 (11th Cir. 2006) .................................................................................6

*United States v. Baston*,
   818 F.3d 651 (11th Cir. 2016) ...........................................................................17, 18

*United States v. Ibarguen-Mosquera*,
   634 F.3d 1370 (11th Cir. 2011) .........................................................................17, 19

*United States v. Noel*,
   893 F.3d 1294 (11th Cir. 2018) .........................................................................17, 18

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ................................................................ *passim*

*Walden v. Fiore*,
   571 U.S. 277 (2014) .............................................................................10, 14

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...................................................................................13

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
   No. 20-MD-2924, 2020 WL 6907056 (S.D. Fla. Nov. 24, 2020) ............................................5

*Zurvita, Inc. v. Wei Xu*,
   No. 8:18-cv-02480-T-02CPT, 2019 WL 423347 (M.D. Fla. Feb. 4, 2019) ..........................12

**Statutes**

Fla. Stat. § 48.193(1)(a)(2) ...........................................................................5

**Rules**

Fed. R. Civ. P. 4(k) ........................................................................................5

Fed. R. Civ. P. 12(b)(2) ..........................................................................1, 3, 5

Fed. R. Civ. P. 12(b)(6) ........................................................................1, 3, 19

31 C.F.R. § 515.204 .......................................................................................7

**Other Authorities**

United States Dep't of State, Legal Considerations Regarding Title III of the
   Libertad Bill, 141 Cong. Rec. S15106 (Oct. 12, 1995) ....................................17, 19

Council Regulation (EC) No. 2271/96, Protecting Against the Effects of the
   Extra-Territorial Application of Legislation Adopted by a Third Country, and
   Actions Based Thereon or Resulting Therefrom,
   1996 O.J. (L. 309) 1 (EC) .......................................................................15, 16, 18

Defendant Imperial Brands plc ("Imperial") submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6), to dismiss the Amended Complaint filed March 22, 2021.

## PRELIMINARY STATEMENT

Plaintiffs sue under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85, seeking to recover the value of real property in Havana, Cuba that the Cuban Government allegedly confiscated in 1961. They seek that recovery, not from the Cuban Government, but rather from a British company, Imperial, on the basis that Imperial—through an indirect, non-controlling fifty percent ownership interest in a Cuban corporation, Defendant Corporación Habanos, S.A. ("Habanos")—allegedly used the property to manufacture, sell, market, and distribute hand-rolled Cuban cigars. Using the statutory terminology, Plaintiffs assert that Imperial "trafficked" in the real property. Under Title III, Plaintiffs claim, Imperial must pay them three-times the value of the property in 1961, plus six decades of compound interest. This claim fails as a matter of law, and it should therefore be dismissed at the outset.

In the joint motion to dismiss that is being filed simultaneously herewith, Imperial shows that Plaintiffs lack Article III standing. Because Congress cannot authorize suit in the absence of concrete harm caused by the defendant, Title III cannot impose liability on Imperial based on the alleged use of real property in which Plaintiffs have no ownership interest. Nor can Title III require Imperial to remedy harm caused—not by Defendants' alleged use of the real property— but by the Cuban Government's alleged confiscation of it decades earlier. The joint motion also shows that the Amended Complaint fails to allege the essential elements of a Title III claim.

In this submission, Imperial demonstrates that the Amended Complaint should be dismissed on two further grounds. *First*, the Amended Complaint pleads no basis for the exercise of personal jurisdiction over Imperial. Plaintiffs rightly do not seek to assert general personal

jurisdiction over foreign-incorporated, foreign-headquartered Imperial. And their attempt to assert specific personal jurisdiction is precluded by federal due process. The Amended Complaint alleges that—through its indirect, non-controlling shareholding in Habanos—Imperial used real property in Cuba, to manufacture, sell, market, and distribute Cuban cigars that cannot be imported into the United States. The Amended Complaint rightly characterizes this as a "non-U.S. business." [DE 83 ("Am. Compl.") ¶ 58]. These allegations do not plead that Imperial purposefully availed itself of the privilege of conducting suit-related activities in this forum. There is, therefore, no constitutional authority for the exercise of personal jurisdiction here.

*Second,* for similar reasons to those that bar the exercise of personal jurisdiction, Congress lacks legislative jurisdiction to apply Title III to Imperial's "non-U.S." Cuban-cigar business. It is well established that Congressional solicitude for forum residents like Plaintiffs does not permit Congress to regulate the overseas business dealings of foreign companies relating to persons, property, and events outside the United States.

## BACKGROUND

Plaintiffs assert a claim under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–85, contending that Defendants have "trafficked" in real property in Cuba (the "RRHSC Property") that the Cuban Government confiscated in 1961. Am. Compl. ¶¶ 3, 10, 46–47. Plaintiffs demand that they be awarded the greater of (a) three-times the value of the RRHSC Property in 1961, when the Cuban Government confiscated it, plus compound interest running from that date, or (b) three-times the RRHSC Property's present value. *Id.* ¶¶ 72–73.

Plaintiffs allege that Defendant Habanos and/or the Cuban tobacco company, Tabacuba, have "trafficked" in the RRHSC Property within the meaning of Title III by using it to manufacture, sell, market, and distribute hand-rolled Cuban cigars. *Id.* ¶¶ 9–10, 24, 29–30, 51–53, 63. Plaintiffs further allege that, between 2007 and 2020, Imperial—a company incorporated

and with its principal place of business in the United Kingdom—held an indirect fifty percent ownership interest in Habanos. *Id.* ¶¶ 5–7, 23, 50, 58. By virtue of that non-controlling shareholding, Plaintiffs assert that Imperial, too, engaged in trafficking within the meaning of Title III. *Id.* ¶¶ 5–11, 24, 30, 36, 50–55, 62–63.

In February 2021, Imperial moved to dismiss, demonstrating that the original Complaint failed to plead a prima facie case for the exercise of personal jurisdiction over Imperial, a foreign corporation that is not alleged to have performed any suit-related conduct in this forum, and that Congress lacks legislative jurisdiction to apply Title III to Imperial's non-U.S. Cuban-cigar business. [DE 71]. In response to the motions to dismiss, Plaintiffs filed their Amended Complaint. The Amended Complaint does not remedy its predecessor's failure to plead any basis for personal jurisdiction over Imperial, or for the exercise of legislative jurisdiction to regulate this non-U.S. business.

The Amended Complaint does not allege that Imperial is subject to general (or "all-purpose") jurisdiction in this forum. It does, however, assert that Imperial is subject to specific (or "case-linked") jurisdiction, Am. Compl. ¶¶ 42–43, based on the following jurisdictional allegations, which are assumed to be true for purposes of this motion only.[1]

Through its indirect fifty percent ownership interest in Habanos, Imperial has "trafficked" in the RRHSC Property in Havana, Cuba by using it to manufacture, sell, market, and distribute Cuban cigars. *Id.* ¶¶ 29–30, 37; *see also id.* ¶¶ 5–11, 24, 50–55, 62–63. Plaintiffs contend that Imperial's alleged conduct has caused them harm in this forum, because they are resident here. *Id.* ¶¶ 30, 39; *see also id.* ¶¶ 14–15.

---

[1]     *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (non-conclusory factual allegations are assumed to be true for purposes of a motion under Federal Rule of Civil Procedure 12(b)(6)); *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317–18 (11th Cir. 2006) (same for motion under Rule 12(b)(2)).

Also through its fifty percent ownership interest in Habanos, Imperial indirectly retained advertising agencies, some of them allegedly U.S.-headquartered, to market Cuban cigars. *Id.* ¶¶ 29–30, 37. Beginning in 2017, Habanos Cuban cigars were promoted online using Twitter, Instagram, and YouTube. *Id.* ¶ 37; *see also id.* ¶ 12 n.10.[2]

At the time it acquired its indirect interest in Habanos in 2007, Imperial was aware of the existence of the Helms-Burton Act. *Id.* ¶¶ 5, 36. Imperial should therefore have anticipated that use of the RRHSC Property for purposes of its "non-U.S." Cuban-cigar business, *id.* ¶ 58, would expose Imperial to a Title III suit in this forum, *id.* ¶¶ 40–41.

## **ARGUMENT**

I.  **THE AMENDED COMPLAINT PLEADS NO BASIS FOR PERSONAL JURISDICTION OVER IMPERIAL—A U.K. COMPANY THAT IS NOT ALLEGED TO HAVE COMMITTED ANY SUIT-RELATED CONDUCT IN THIS FORUM**

"'A plaintiff seeking to establish personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Braman Motors, Inc. v. BMW of N. Am., LLC*, No. 17-cv-23360, 2019 WL 7759096, at *2 (S.D. Fla. Sept. 30, 2019) (Gayles, J.) (quoting *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013)).[3] A complaint must be dismissed when, as here, it fails to allege facts that establish a prima facie case of personal jurisdiction. *Snow v. DirecTV,*

---

[2]   In the closest it comes to a clear, non-conclusory factual statement, the Amended Complaint alleges that Habanos retained the advertising agencies, and seeks to impute that conduct to Imperial "through its ownership interest in Habanos." Am. Compl. ¶¶ 29–30. The Amended Complaint also contains two other vague, factually-unsupported assertions that are inconsistent with the foregoing and with one another: that Imperial retained the advertising agencies "*either* directly *or* through Habanos," *id.* ¶ 37 (emphases added), and that the advertising agencies were hired by Imperial *and* Habanos, *id.* ¶¶ 11, 55.

[3]   A prima facie case of personal jurisdiction consists of "enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby* v. *Mortg. Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021) (citation omitted).

*Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). The jurisdictional facts alleged in the Amended Complaint are uncontroverted for purposes of this facial challenge,[4] so they must be accepted as true. *Id.* at 1317. Nonetheless, "vague and conclusory" assertions are insufficient. *Id.* at 1318–20; *see also PG Creative Inc. v. Affirm Agency, LLC*, No. 18-cv-24299, 2019 WL 5684219, at *1 (S.D. Fla. Oct. 31, 2019) (Gayles, J.) ("Plaintiffs must properly plead facts pertinent to the conduct and activities of the defendant in the forum state.") (citation, internal quotations, and brackets omitted).

As "Imperial, is a limited liability company incorporated in England and Wales, having its principal place of business in England," Am. Compl. ¶ 23, Plaintiffs correctly do not contend that Imperial is subject to general (or "all-purpose") jurisdiction in this forum. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1316–18 (11th Cir. 2018) (absent truly exceptional circumstances, a corporation is subject to general jurisdiction in its place of incorporation and its principal place of business only).

Plaintiffs contend only that Imperial is subject to specific (or "case-linked") jurisdiction. Am. Compl. ¶¶ 42–43. Plaintiffs proffer two statutory bases for specific jurisdiction over Imperial: (1) Section 48.193(1)(a)(2) of Florida's long-arm statute, which applies to a defendant that has committed a tortious act "within this state," Fla. Stat. § 48.193(1)(a)(2); *see* Am. Compl. ¶ 42; and (2) the national long-arm statute, Fed. R. Civ. P. 4(k), which applies when a federal-law claim is asserted against a defendant that, like Imperial, is not subject to jurisdiction

---

[4]     A complaint is subject to "facial" challenge under Rule 12(b)(2) when its allegations fail to establish a prima facie case of jurisdiction. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, --- F. Supp. 3d ----, No. 20-MD-2924, 2020 WL 6907056, at *2 (S.D. Fla. Nov. 24, 2020). Because Imperial is making a purely facial challenge, the Court's review is limited to the allegations in the Amended Complaint. *See Chamberlin v. Venture Resorts, Inc.*, No. 5:17-cv-105-OC-30PRL, 2017 WL 2172091, at *2 (M.D. Fla. May 17, 2017) ("Because this is a facial challenge to jurisdiction, the Court confines its inquiry to the Complaint.").

in any state, *Fraser v. Smith*, 594 F.3d 842, 848–49 (11th Cir. 2010); *see* Am. Compl. ¶ 43. However, those two statutes are limited by the Due Process Clauses of the Fourteenth and Fifth Amendments, respectively. *Waite*, 901 F.3d at 1312–13; *Fraser*, 594 F.3d at 849 n.10.[5] Dismissal is required because—based on the facts alleged in the Amended Complaint—federal due process precludes the exercise of specific jurisdiction here.

> **A.**    **Allegations About Imperial's Non-U.S. Cuban-Cigar Business Do Not Plead that Imperial Has Purposefully Availed Itself of the Privilege of Conducting Activities in this Forum**

The exercise of personal jurisdiction violates due process unless the defendant has created "'minimum contacts'" with the forum, "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite*, 901 F.3d at 1312 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). Due process permits the exercise of specific jurisdiction only if the claim arises from or relates to the defendant's "purposeful availment" "'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *PG Creative Inc.*, 2019 WL 5684219, at *5 (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006)); *see also Waite*, 901 F.3d at 1313.

---

[5]    The Eleventh Circuit uses case law decided under the Fourteenth and Fifth Amendments interchangeably, *Fraser*, 594 F.3d at 848, 849 n.10, except that the Fifth Amendment analysis looks to the defendant's contacts with the United States, rather than the forum state, *id*. at 850. The United States Supreme Court has not endorsed the use of nationwide contacts, *see Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987), but here nothing turns on that question because the Amended Complaint fails to allege minimum contacts with Florida or with the United States.

When, as here, due process precludes jurisdiction, the Court need not "address whether the requirements of Florida's long-arm statute would be met." *Waite*, 901 F.3d at 1313. Nonetheless, the long-arm statute "must be strictly construed in order to guarantee compliance with due process requirements," *Astro Aluminum Treating Co. v. Inter Contal, Inc.*, 296 So. 3d 462, 466 (Fla. Dist. Ct. App. 2020) (quotation marks omitted), so it is not satisfied by the Amended Complaint's allegations of injury to Florida residents, *Waite*, 901 F.3d at 1316; *infra* at 9–10, or by allegations about the use of globally accessible social media sites, *infra* at 11–13.

Here, the suit-related conduct comprises *Habanos's* alleged use of real property *in Cuba* to manufacture, market, sell, and distribute Cuban cigars. Am. Compl. ¶ 30; *supra* at 3–4. These allegations fail for two independent reasons to plead a prima facie case for jurisdiction over Imperial. First, the Amended Complaint pleads no basis to impute Habanos's alleged contacts to Imperial. Second, it describes no connection between the alleged conduct and this forum—an omission that is to be expected, given that Cuban products cannot be sold in the United States, 31 C.F.R. § 515.204. The Amended Complaint recognizes that reality, aptly characterizing the Cuban-cigar business from which these claims arise as a "non-U.S. business." Am. Compl. ¶ 58.

### 1. The Amended Complaint Pleads No Basis to Impute to Imperial the Alleged Jurisdictional Contacts of Other Entities, Including Habanos

According to the Amended Complaint, it was not Imperial, but Habanos, that used the RRHSC Property to manufacture, sell, market, and distribute hand-rolled Cuban cigars. Am. Compl. ¶¶ 8–9, 29, 50–51, 53, 63. As to Imperial, the only non-conclusory, factual allegation is that, in 2007, Imperial purchased a Spanish company, Altadis, S.A., that owned a fifty percent ownership interest in Habanos, and that Imperial thereby acquired an indirect financial interest in Habanos that it held until 2020. *Id.* ¶¶ 5–7, 24, 50, 58. But the Amended Complaint pleads no basis to subject Imperial to personal jurisdiction based on contacts that Imperial did not itself create, but rather based on Habanos's contacts that are imputed to Imperial "through its ownership interest in Habanos." *Id.* ¶ 30.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Therefore, a shareholder's "ownership interest," Am. Compl, ¶ 30—especially the non-controlling interest alleged here—does not permit attribution of the corporation's jurisdictional contacts to a shareholder. *See, e.g., United States ex rel. Bibby* v. *Mortg. Invs. Corp.*, 987 F.3d 1340, 1354–56

(11th Cir. 2021); *see also Braman Motors, Inc.,* 2019 WL 7759096, at *5 ("The general allegation regarding BMW AG's corporate relationship with BMW NA is insufficient for this Court to find that BMW AG has subjected itself to the Court's jurisdiction in Florida."). To impute Habanos's alleged jurisdictional contacts to Imperial, the Amended Complaint would need to allege exceptional facts establishing a prima facie case for veil piercing. *Ex rel. Bibby,* 987 F.3d at 1356.[6] The Amended Complaint alleges no such facts. Therefore, as in *Braman Motors, Inc.,* 2019 WL 7759096, at *5–6, the Amended Complaint should be dismissed for lack of personal jurisdiction.

Confirming Plaintiffs' inability to make out a prima facie case for jurisdiction over Imperial, the Amended Complaint suggests without any factual support that Imperial should be tagged with the alleged jurisdictional contacts of three *additional* foreign entities in which Imperial previously held indirect fifty percent ownership interests, Altabana S.L., Promotora de Cigarros, S.L., and Internacional Cubana de Tabaco, S.A. Am. Compl. ¶¶ 30, 36; *see also id.* ¶¶ 6, 8–11, 58. The Amended Complaint does not allege what suit-related conduct, if any, these entities may have committed, much less disclose a basis to impute any such conduct to Imperial. Such shotgun pleading does not satisfy federal pleading standards, *Ballard v. Maco Caribe, Inc.*, No. 14-cv-21670, 2014 WL 4723144, at *4 (S.D. Fla. Sept. 23, 2014) (Gayles, J.), and falls far short of the required "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum state," *Braman Motors, Inc.,* 2019 WL 7759096, at *2 (quotation marks omitted); *see also Snow*, 450 F.3d at 1318–20 ("vague and conclusory" jurisdictional assertions are insufficient).

---

[6]    In *Ex rel. Bibby*, the plaintiff established a prima facie case for imputation by alleging, *inter alia*, that the shareholder "unilaterally controlled" the corporation, "ignored corporate formalities," and "commingled" corporate and shareholder assets. 987 F.3d at 1356.

For similar reasons, the Amended Complaint pleads no prima facie case for jurisdiction over Imperial by alleging that the so-called "mixed-use" portion of the RRHSC Property, Am. Compl. ¶ 2, has been used—not by Imperial nor even by an entity in which Imperial held some ownership interest—but rather by Tabacuba, *id.* ¶¶ 9, 53, 68. Tabacuba is alleged to be the "Cuban state tobacco monopoly company" and a fifty percent shareholder in Habanos. *Id.* ¶¶ 2, 8, 10–11, 50–51, 63, 66. The Amended Complaint alleges no facts that could warrant imputing Tabacuba's alleged jurisdictional contacts to Imperial.

### 2. Even if Habanos's Alleged Jurisdictional Contacts Were Imputed to Imperial, They Do Not Make Out a Prima Facie Case of Jurisdiction

#### a. Allegations that forum residents were damaged by the use of real property in Cuba for purposes of a "non-U.S." Cuban-cigar business do not plead purposeful availment

Plaintiffs urge this Court to exercise specific jurisdiction because Habanos used the RRHSC Property in Cuba to manufacture, sell, market, and distribute Cuban cigars. Am. Compl. ¶¶ 29–30; *see also id.* ¶¶ 8–9, 29, 50–51, 53, 63. Even if that alleged conduct were imputed to Imperial, exercising jurisdiction here would violate due process, because the alleged conduct is wholly unconnected to this forum. *Waite*, 901 F.3d at 1313. As the Eleventh Circuit has held, it is "clear" that due process bars the exercise of specific jurisdiction over a domestic plaintiff's claim about a foreign defendant's use of confiscated property in Cuba. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).[7]

Plaintiffs cannot transform Habanos's purely foreign alleged activities into a basis for specific jurisdiction by asserting that they "caused damage" to Plaintiffs in the United States,

---

[7]     *See also Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.,* No. 20-cv-21630, 2021 WL 1648222, at *4 (S.D. Fla. Apr. 27, 2021) (dismissing Title III claim against foreign defendant because its alleged forum contacts "cannot be said to be related to the unlawful trafficking in the confiscated property in Cuba").

where Plaintiffs live. Am. Compl. ¶¶ 30, 39. "'[M]ere injury to a forum resident'" "'is not a sufficient connection to the forum'" for purposes of the Due Process Clause. *Waite*, 901 F.3d at 1316 (bracket in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).[8] Rather, the due process inquiry turns on "whether the *defendant's* actions connect [it] to the *forum.*'" *Waite*, 901 F.3d at 1316 (emphases and bracket in original) (quoting *Walden*, 571 U.S. at 289). Here, nothing connects the alleged conduct to this forum.

Plaintiffs are not assisted by the alternative "effects test" for specific jurisdiction, because they cannot meet the threshold requirement that the defendant committed an "intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1356. The Amended Complaint is devoid of any allegation that Habanos (or Imperial) "expressly aimed" any alleged overseas conduct "at a specific individual in the forum." *Id.* (citation and quotation marks omitted). Moreover, the Due Process Clause additionally requires that the defendant's alleged tortious conduct connect the defendant to the *forum*, not merely to a forum resident, *Waite*, 901 F.3d at 1316, such as where the defendant targets the forum with a defamatory publication, which is read by forum residents, causing reputational injury in the forum to the forum-resident plaintiff, *Walden*, 571 U.S. at 286–87 (citing *Calder v. Jones*, 465 U.S. 783, 788–89 (1984)). As there is no allegation that Habanos or Imperial expressly aimed any suit-related conduct at this forum, the fortuity that Plaintiffs "happen[] to be" forum residents "is wholly deficient evidence" of Defendants' contacts with this forum. *PG Creative Inc.*, 2019 WL 5684219, at *5.

---

[8]    *See also PG Creative Inc.*, 2019 WL 5684219, at *5 ("And the Supreme Court has 'made clear that mere injury to a forum resident is not a sufficient connection to the forum.'") (quoting *Walden*, 571 U.S. at 278).

  **b.**  **Allegations about social media platforms that are unconnected to the claim asserted in this lawsuit provide no basis for specific jurisdiction**

Plaintiffs also are not assisted by their allegation about the retention of advertising agencies, some of them allegedly U.S.-headquartered, to market Cuban cigars online. Am. Compl. ¶¶ 29–30, 37. As a threshold matter, even assuming that U.S. advertising agencies were involved, it is "well-established" that "merely contracting with a forum resident" is not a sufficient basis for specific jurisdiction. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010). Rather, the court must "focus[] on the substance of the transaction," to determine whether "the *nonresident defendant's* conduct" created jurisdictionally sufficient contacts with the forum. *Id.* (emphasis in original). Here, the substance of the alleged transaction—use of Twitter, Instagram, and YouTube beginning in 2017 to promote Cuban cigars online, Am. Compl. ¶ 37; *see also id.* ¶ 12 n.10—fails for two separate reasons to plead any basis for personal jurisdiction. First, these allegations do not plead purposeful availment of the privilege of conducting activities in this forum. *PG Creative Inc.*, 2019 WL 5684219, at *5. Second, allegations about the use of social media platforms beginning in 2017 do not satisfy the "arise out of or relate to" requirement for specific jurisdiction, *Waite*, 901 F.3d at 1313–14, because they substantially postdate the last alleged use of the RRHSC Property in 2010.

*First*, the Amended Complaint's allegations about the use of social media do not plead purposeful availment because use of a website that is accessible worldwide does not create jurisdictional minimum contacts with any forum. As courts in this Circuit recognize, due process does not permit an out-of-state defendant to be subject to specific personal jurisdiction in this forum "merely because a Floridian might view [defendant's] Facebook, Twitter, Yelp, or TripAdvisor pages." *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *4 (M.D. Fla. Sept. 21, 2017) (citing *Advanced Tactical*

*Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 803 (7th Cir. 2014)). Any other approach would contravene *Walden* by exposing a defendant to personal jurisdiction "in every spot on the planet" where the website could be accessed, with the result that "a plaintiff could sue everywhere." *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d at 803.[9] Therefore, "simply posting information about a company on a website that is visible throughout the world, and not directed at or used to contact a particular forum, does not create minimum contacts with a forum." *Bioheart, Inc. v. Peschong*, No. 13-cv-60304, 2013 WL 1729278, at *4 (S.D. Fla. Apr. 22, 2013).[10]

*Second*, allegations about the use of social media to promote Cuban cigars online beginning in 2017, Am. Compl. ¶ 37, disclose no basis for specific jurisdiction because those

---

[9]     *See also Fidrych v. Marriott Int'l, Inc*., 952 F.3d 124, 143 (4th Cir. 2020) (website that is "accessible to all but targeted at no one in particular" does not support the exercise of personal jurisdiction); *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.") (citations omitted); *Cossaboon v. Maine Med. Ctr*., 600 F.3d 25, 35 (1st Cir. 2010) ("[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.") (citation and quotation marks omitted).

[10]    *See also Buzz Pop Cocktails Corp. v. Booze Pops, LLC*, No. 8:19-cv-1840-MSS-TGW, 2020 WL 2838825, at *8 (M.D. Fla. Apr. 22, 2020) ("'[T]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction.'") (bracket in original) (quoting *Fraser*, 594 F.3d at 874); *Zurvita, Inc. v. Wei Xu*, No. 8:18-cv-02480-T-02CPT, 2019 WL 423347, at *2 (M.D. Fla. Feb. 4, 2019) (offering goods on the "generally accessible website, Amazon.com" did not constitute purposeful availment in Florida); *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd*., No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *6 (M.D. Fla. Jan. 2, 2019) (specific jurisdiction was not available because "Defendant does not have contacts with Florida other than through its generally-accessible website"); *Honus Wagner Co. v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10, 12 (S.D. Fla. Dec. 21, 2017) (defendant's use of a website that was "available to anyone with internet access in the world, including Florida residents" did not create minimum contacts with Florida); *Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web, and [plaintiff's] physical location in Florida are insufficient to establish that Defendant has minimum contacts with Florida.").

allegations are untethered to the claim asserted in this lawsuit. For specific jurisdiction, the claim must "'arise out of or relate to'" the defendant's in-forum contacts. *Waite*, 901 F.3d at 1313–14 (quoting *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355). The claim asserted here arises from the alleged use of the RRHSC Property to manufacture, sell, market, and distribute Cuban cigars. Am. Compl. ¶¶ 9–10, 24, 29–30, 51–53, 63. But there is no allegation that such use extended past February 2010, years before the alleged social media usage began. *Id.* ¶ 53; *see also* Joint Mot. to Dismiss, at 12. Jurisdictional contacts cannot support specific jurisdiction when—as here—they post-date the alleged wrong. *Waite*, 901 F.3d at 1315.[11]

### 3. Imperial's knowledge of the existence of the Helms-Burton Act does not constitute purposeful availment of this forum

The allegation that Imperial was aware of the Helms-Burton Act and therefore also aware of the risk of being sued in a U.S. court, Am. Compl. ¶¶ 5, 36, 40–41, does not permit the exercise of personal jurisdiction. "'"[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *Fraser*, 594 F.3d at 852 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). The foreseeability required by the Due Process Clause "'is that the defendant's *conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there.'" *Fraser*, 594 F.3d at 852 (emphasis added) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Put differently, it is a defendant's purposeful in-forum activities that provide constitutionally-sufficient "fair warning" that the defendant may be subject to jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

---

[11]     *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), does not undermine the ruling of the *Waite* court. A defendant's alleged in-forum contacts need not be the "but-for" cause of the claim, *id.* at 1026, but they must still "relate to" the claim, *id.* The "relate to" requirement "must" "incorporate[] real limits" "to adequately protect defendants foreign to a forum," *id.,* so it cannot be satisfied by jurisdictional contacts that post-date the alleged wrong.

There is no support for the bootstrapping argument, Am. Compl. ¶¶ 36, 41, that a defendant may be subject to jurisdiction based only on its alleged knowledge that a legislature has conferred a cause of action on forum residents. Such a rule would impermissibly free Congress of the constraints of the Due Process Clause. *See New York v. United States*, 505 U.S. 144, 156 (1992) ("Congress exercises its conferred powers subject to the limitations contained in the Constitution.").

Finally, the allegation that Imperial recently disposed of its indirect ownership interest in Habanos, Am. Compl. ¶¶ 30, 58–59, equally does not permit the exercise of specific jurisdiction here. Imperial's disposal of an indirect interest in a Cuban company that allegedly used real property in Cuba to produce Cuban cigars does not connect Imperial to this forum in any way. *See Waite*, 901 F.3d at 1316.

*   *   *

Here—as in *Waite* and *Walden*—due process precludes the exercise of personal jurisdiction because "none of [Imperial's] challenged conduct had anything to do with [Florida or the United States] itself." *Walden*, 571 U.S. at 289. As in those controlling authorities, Plaintiffs' purported injury allegedly occurred in this forum "'not because anything independently occurred there, but because [Florida] is where [Plaintiffs] chose to be.'" *Waite*, 901 F.3d at 1316 (first alteration in original) (quoting *Walden,* 571 U.S. at 290). As *Waite* and *Walden* make clear, that is not a constitutional basis to exercise personal jurisdiction.

**B.      In the Transnational Context of this Case, It Would Be Unconstitutionally Unreasonable to Exercise Personal Jurisdiction over Imperial**

Plaintiffs' inability to plead the purposeful availment and relatedness requirements of specific jurisdiction, *supra* at 7–14, requires dismissal. *PG Creative Inc.*, 2019 WL 5684219, at *7. The Court need go no further to grant Imperial's motion, *Waite*, 901 F.3d at 1313 n.2, but

dismissal is required here for the additional reason that exercising personal jurisdiction in the transnational context of this matter would be unreasonable and offensive to "'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987) (quoting *Int'l Shoe Co*., 326 U.S. at 316).

The United States Supreme Court has recognized that in the "transnational context," expansive exercises of personal jurisdiction can imperil international comity, implicating the "fair play and substantial justice" element of the due-process inquiry. *Daimler AG v. Bauman*, 571 U.S. 117, 140–42 (2014). Therefore, where, as here, the interests of a foreign sovereign are at stake, a court must not exercise personal jurisdiction without considering the "substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction." *Asahi Metal Indus. Co.*, 480 U.S. at 115 (emphasis in original).

Title III "caused an international uproar among United States' allies," several of which enacted measures to counteract Title III's extraterritorial effect. *Odebrecht Constr., Inc. v. Prasad*, 876 F. Supp. 2d 1305, 1311–12 (S.D. Fla. 2012), *aff'd sub nom.*, *Odebrecht Constr., Inc. v. Sec'y, Florida Dep't. of Transp.*, 715 F.3d 1268 (11th Cir. 2013). As relevant here, the European Union implemented Council Regulation (EC) No. 2271/96, Protecting Against the Effects of the Extra-Territorial Application of Legislation Adopted by a Third Country, and Actions Based Thereon or Resulting Therefrom, 1996 O.J. (L. 309) 1 (EC) ("Regulation 2271/96"), now incorporated into English law as "retained EU law" after the conclusion of the "Brexit" transition period [DE 61 ¶ 4; DE 61-1], based on findings that the extraterritorial application of Title III violates international law and impedes the harmonious development of world trade, the free movement of capital, and the removal of restrictions on direct investment [DE 14 ¶ 9; DE 14-2]. These "substantive policies" of the United Kingdom, as reflected in

Regulation 2271/96, would be adversely "affected by the assertion of jurisdiction," *Asahi Metal Indus. Co.,* 480 U.S. at 115, over Imperial, a British company that is being sued in respect of alleged conduct having no connection to this forum. Under these circumstances, the required "careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case," *id.*, mandates dismissal.

Further, "in cases involving international defendants, courts should consider '[t]he unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Oldfield v. Pueblo De Bahia Lora, S.*A., 558 F.3d 1210, 1221 (11th Cir. 2009) (brackets in original) (quoting *Asahi Metal Indus. Co.*, 480 U.S. at 114). In *Asahi,* the burden of litigating in another country was itself sufficient to render the exercise of jurisdiction "unreasonable and unfair." 480 U.S. at 114–16. The "unique burdens" facing Imperial are much more severe in kind and magnitude, making the case for dismissal even more compelling. Regulation 2271/96 significantly impairs U.K. companies' ability to defend Title III actions, prohibiting them, under penalty of an unlimited criminal fine, from complying without authorization with any requirement or prohibition, including requests of U.S. courts, based on or resulting, directly or indirectly, from Title III or from lawsuits filed under Title III. [DE 14-2, Art. 5, DE 14-5].

Finally, these weighty considerations of international comity and fundamental fairness to Imperial are not outweighed by "the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co.,* 480 U.S. at 113. Regulation 2271/96 prohibits the recognition and enforcement of any judgment rendered in a Title III action [DE 14-2, Art. 4], and confers on U.K. companies counterclaims for harm, including legal costs, caused by Title III, including by Title III lawsuits [*id.* Art. 6]. Therefore, far from promoting Plaintiffs' interests—if any—in obtaining relief, Title III is apt to yield unenforceable judgments, confirming the State

16

Department's prediction that Title III would "fail to provide an effective remedy for U.S. claimants." United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, 141 Cong. Rec. S15106, S15108 (Oct. 12, 1995).[12] Moreover, as the State Department admonished Congress, far from promoting forum interests, Title III "flies in the face of important U.S. interests," including the nation's foreign-policy and business interests. *Id.* at S15106–08.

## II.    DUE PROCESS PROHIBITS THE APPLICATION OF TITLE III TO IMPERIAL'S CONCEDEDLY "NON-U.S." CUBAN-CIGAR BUSINESS

The Due Process Clause of the Fifth Amendment permits the exercise of legislative jurisdiction only if there is some "'minimal contact between a State and the regulated subject.'" *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) (quoting *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000)).[13] Therefore, Title III cannot be applied here, to what Plaintiffs concede is Imperial's "non-U.S." Cuban-cigar business, Am. Compl. ¶ 58, based on allegations that Imperial, a U.K. entity, has conducted activities with a Cuban entity, Habanos, in Cuba, involving the use of real estate in Cuba for purposes of a Cuban-cigar business that, by law, cannot include the United States.

To adjudicate a due-process challenge to legislative jurisdiction, the Eleventh Circuit looks to the minimum-contacts inquiry that applies in the personal-jurisdiction context, and to the choice-of-law rule that prohibits a state from applying its substantive law unless it has a

---

[12]    The Court may take judicial notice of the legislative history of Title III as revealed by the congressional record. *Parrish v. Consol. City of Jacksonville*, No. 3:04-cv-00986-TJC-HTS, 2005 WL 1500894, at *1 n.1 (M.D. Fla. June 22, 2005) (taking judicial notice of legislative history of state statute); *In re Healthsouth Corp. Sec. Litig.*, No. 98-J-2634-S, 2000 WL 34211319, at *2 (N.D. Ala. Dec. 13, 2000) (taking judicial notice of congressional record).

[13]    *See also United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018) (it is "well established" that the Due Process Clause of the Fifth Amendment prohibits the "arbitrary or fundamentally unfair" extraterritorial application of federal statutes) (citing *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011)).

"'significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.'" *Am. Charities for Reasonable Fundraising Regulation, Inc.*, 221 F.3d at 1216 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981)); *see also Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001) ("[W]e inquire not only into the contacts between the regulated *party* and the state, but also into the contacts between the regulated *subject matter* and the state.") (emphases in original).

Applying this standard, the Eleventh Circuit has upheld the extraterritorial application of federal statutes in cases where the operative events had a significant connection to the United States, such as where the defendant "used this country as a home base and took advantage of its laws," portrayed himself as a U.S. citizen, lived in Florida, and wired the proceeds of his crime into a U.S. bank account, *Baston*, 818 F.3d at 669–70, or where the defendant took a U.S. citizen hostage, *United States v. Noel*, 893 F.3d 1294, 1301 (11th Cir. 2018). But the Eleventh Circuit has also made clear that domestic (in that case, Florida) law cannot constitutionally be applied when—as here—the "subject matter" of the suit comprises the overseas business dealings of foreign nationals, relating to "persons, property, and events" outside the jurisdiction. *Gerling Glob. Reinsurance Corp. of Am.*, 267 F.3d at 1238.

Confirming that the Due Process Clause prohibits the application of Title III here, Regulation 2271/96 reflects that the extraterritorial application of Title III "violate[s] international law." [DE 14-2]. Although compliance with international law is not necessary to satisfy due process, the Eleventh Circuit has recognized that it is relevant, *Baston*, 818 F.3d at 669, noting that "[i]n determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle, the

protective principle, or the territorial principle." *United States v. Ibarguen-Mosquera*, 634 F.3d 1370, 1378–79 (11th Cir. 2011) (citations and footnotes omitted). Here, the "objective principle" does not support the application of Title III because there is no nexus between Imperial's alleged conduct and the United States. *Id.* at 1378 & n.4. As the State Department has recognized, it is "difficult to imagine" how the use of real property in Cuba "has a 'substantial effect' within the territory of the United States." United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15106.[14] The "protective principle" is also inapplicable, given that Imperial's alleged conduct is not "generally recognized as a crime under the laws of states that have reasonably developed legal systems." *Ibarguen-Mosquera*, 634 F.3d at 1378–79 & n.5; *see also* United States Dep't of State, Legal Considerations Regarding Title III of the Libertad Bill, *supra*, at S15106 ("The principles behind Title III are not consistent with the traditions of the international system and other states have not adopted similar laws."). Further, the "territorial principle" is inapplicable because no international agreement permits the United States to regulate a U.K. company's alleged business dealings in Cuba. *Ibarguen-Mosquera*, 634 F.3d at 1378–79 & n.6.

Finally, Plaintiffs are mistaken that Title III may be constitutionally applied here because *they* are United States citizens. It is well established that legislative solicitude for forum residents is not a constitutionally sufficient basis for the exercise of legislative jurisdiction. *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 426 (2003) ("[A] postoccurrence change of residence to the forum State—standing alone—[i]s insufficient to justify application of forum law.") (brackets in

---

[14]      The congressional record is a proper subject of judicial notice, *supra* at 17 n. 12, and it may therefore be considered on a motion under Rule 12(b)(6), *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015); *see also Durango-Georgia Paper Co. v. H.G. Estate, LLC*, 739 F.3d 1263, 1272 (11th Cir. 2014) (relying on the congressional record in the course of affirming the dismissal of a complaint under Rule 12(b)(6)).

original) (quoting *Allstate Ins. Co.*, 449 U.S. at 311); *see also Gerling Glob. Reinsurance Corp. of Am.*, 267 F.3d at 1238 n.6. (Florida residence of victims' descendants was not a "jurisdictionally-significant contact").

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss the Amended Complaint as against Defendant Imperial Brands plc, and grant such other and further relief as the Court may consider appropriate.

Dated: April 28, 2021                    Respectfully submitted,

                              /s/ *Mark F. Raymond*
                              NELSON MULLINS BROAD AND CASSEL
                              Mark F. Raymond
                              mark.raymond@nelsonmullins.com
                              Jonathan Etra
                              jonathan.etra@nelsonmullins.com
                              2 South Biscayne Blvd. 21st Floor
                              Miami, FL 33131
                              Telephone: 305-373-9400

                              ALLEN & OVERY LLP
                              Andrew Rhys Davies (admitted *pro hac vice*)
                              andrewrhys.davies@allenovery.com
                              Justin L. Ormand (admitted *pro hac vice*)
                              justin.ormand@allenovery.com
                              1221 Avenue of the Americas
                              New York, NY 10020
                              Telephone:  212-610-6300

                              *Attorneys for Defendant Imperial Brands plc*