UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1: 20-CV-23287-DPG

LUIS MANUEL RODRIGUEZ, *et al*.,

               Plaintiffs,

   v.

IMPERIAL BRANDS PLC, *et al*.,

               Defendants.

**DEFENDANT CORPORACIÓN HABANOS, S.A.'S
MOTION TO DISMISS WITH PREJUDICE AND FOR OTHER RELIEF, AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

**<u>CLAIM OF UNCONSTITUTIONALITY</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................iii

STATEMENT OF THE CASE ................................................................................................1

ARGUMENT ...........................................................................................................................4

    I.      Personal Jurisdiction Is Lacking ................................................................................4

          A.  Assertion of Personal Jurisdiction Would Violate the
              Due Process Clause ...........................................................................................4

              1.  The Claims Do Not "Arise Out of or Relate to" the Alleged
                    Forum Contacts.......................................................................................5

                    (a) Alleged Use of Twitter, Instagram and YouTube...............................5

                        (i)  The Amended Complaint and Exhibits .........................................5

                        (ii)  Habanos, S.A.'s Factual Submissions ..........................................8

                    (b) Alleged Retention of N.Y. Advertising Agencies.................................9

                    (c) There is No Nexus Between the Social Media Accounts
                        and Plaintiffs' Trafficking Claim .................................................10

                2.  The Alleged Forum Contacts Do Not Satisfy the Purposeful
                      Availment Requirement ........................................................................11

                3.  Plaintiffs' Florida Residence Does Not Provide Personal
                      Jurisdiction............................................................................................13

                4.  The Due Process Clause's Reasonableness Requirement
                      Is Not Met..............................................................................................13

           B.  The Statutory Requirements for Personal Jurisdiction Are Also
              Not Satisfied....................................................................................................15

               1.  Florida Long-Arm Statute ....................................................................15

               2.  Fed. R. Civ. P. 4(k)(2) ...........................................................................16

    II.     Even If Personal Jurisdiction Is Found, Venue Is Improper...............................17

i

**III.**   **Service of Process Was Insufficient**........................................................................18

**IV.**   **Due Process Limits On Prescriptive Jurisdiction Prohibit Title III's Application to Habanos, S.A.**.......................................................................20

**V.**   **If Dismissal Is Denied, a More Definite Statement is Required** .........................20

**CONCLUSION** ...........................................................................................................................20

**REQUEST FOR HEARING**.......................................................................................................21

# TABLE OF AUTHORITIES

**Cases**.............................................................................................................**Page**

*AMA Multimedia LLC v. Wanat*,
    No. 15-cv-01674, 2017 WL 5668025 (D. Ariz. Sept. 29, 2017) ..........................................12

*Arcencibia v. AGA Service Co.*,
    No. 20-cv-24694, 2021 WL 1318225 (S.D. Fla. April 8, 2021)............................................8

*Argos Glob. Partner Servs., LLC v. Ciuchini*,
    446 F. Supp. 3d 1073 (S.D. Fla. 2020) ............................................................................12

*Asahi Metal Indus. Co. Ltd. v. Sup. Crt*,
    480 U.S. 102 (1987).....................................................................................................5, 14

*Atuahene v. City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ..........................................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................................7

*Blue Water Int'l v. Hattrick's Irish Sports Pub*,
    No. 8:17-cv-1584, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017).......................................12

*Bristol-Myers Squibb v. Sup. Crt*,
    137 S.Ct. 1773 (2017)..............................................................................................3, 5, 10

*Brophy v. Almanzar*,
    359 F. Supp. 3d 917 (C.D. Cal. 2018) ..............................................................................12

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................................................14

*Celorio v. Google Inc.*,
    872 F. Supp. 2d 1327 (N.D. Fla. 2012).............................................................................13

*Consol. Dev. Corp. v. Sherritt, Inc.*,
    216 F.3d 1286 (11th Cir. 2000) .......................................................................................16

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..................................................................................................4, 5, 14

*Day v. Taylor*,
    400 F.3d 1272 (11th Cir. 2005) .........................................................................................8

*Del Valle v. Trivago GmbH*,
   No. 19-cv-22619, 2020 WL 2733729 (S.D. Fla. May 26, 2020)...........................................16

*DFSB Kollective Co. v. Bourne*,
   897 F. Supp. 2d 871 (N.D. Cal. 2012) .................................................................................12, 13

*Diamond Crystal Brands v. Food Movers Int'l*,
   593 F.3d 1249 (11th Cir. 2010) ............................................................................................9, 10

*Dish Network, LLC v. Jadoo TV, Inc.*,
   No. 18-cv-9768, 2020 WL 6536659 (C.D. Cal. Mar. 16, 2020)...........................................12

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003).................................................................................................................19

*Ford Motor Co. v. Montana*,
   141 S.Ct. 1017 (2021)...................................................................................................11, 13, 14

*Fraser v. Smith*,
   594 F.3d 842 (11th Cir. 2010) ..............................................................................................5, 11

*Gonzalez v. Amazon.com, Inc.*,
   835 F. App'x 1011 (11th Cir. 2021).........................................................................................18

*Griffin Indus. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) .................................................................................................7

*Haas v. Chaiyaphakdiphon*,
   No. 2:12-cv-01309, 2013 WL 783046 (D. Nev. Feb. 28, 2013)...............................................18

*Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*,
   No. 20-cv-21630, 2021 WL 1648222 (S.D. Fla. April 27, 2021)..........................................8

*Home Ins. Co. v. Thomas Indus.*,
   896 F.2d 1352 (11th Cir. 1990) .................................................................................................9

*Honus Wagner v. Luminary Grp. LLC*,
   No. 17-cv-61317, 2017 WL 6547899 (S.D. Fla. Dec. 21, 2017)..........................................12

*Hurtado v. Balerno Int'l Ltd.*,
   No. 17-cv-62200, 2018 WL 4053122 (S.D. Fla. Aug. 24, 2018) ..........................................19

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)..................................................................................................8

iv

*In re Takata Airbag Prod. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..............................................................7, 14

*In re Zantac Prod. Liab. Litig.*,
    -- F. Supp. 3d --, 2020 WL 7866660 (S.D. Fla. Dec. 31, 2020) ............................10

*Internet Sols. Corp. v. Marshall*,
    39 So. 3d 1201 (Fla. 2010)......................................................................................15

*Jenkins Brick v. Bremer*,
    321 F.3d 1366 (11th Cir. 2003) ..............................................................................18

*Keim v. ADF MidAtlantic, LLC*,
    199 F. Supp. 3d 1362 (S.D. Fla. 2016) ...................................................................11

*King v. Burwell*,
    576 U.S. 473 (2015)................................................................................................18

*Kountze v. Kountze*,
    996 So.2d 246 (Fla. App. 2008)..............................................................................16

*Lawrence v. U.S.*,
    597 F. App'x 599 (11th Cir. 2015) ............................................................................7

*Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*,
    No. 08-cv-3226, 2008 WL 5412431 (C.D. Cal. Dec. 29, 2008)............................12

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ..............................................................................10

*Maxcess, Inc. v. Lucent Technologies, Inc.*,
    433 F.3d 1337 (11th Cir. 2005) ................................................................................8

*Magnuson v. Video Yesteryear*,
    85 F.3d 1424 (9th Cir. 1996) ..................................................................................18

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) .....................................................................7

*Mother Doe I v. Al Maktoum*,
    632 F. Supp. 2d 1130 (S.D. Fla. 2007) ..............................................................16, 17

*NSM Music, Inc. v. Villa Alvarez*,
    No. 02-cv-6482, 2003 WL 685338 (N.D. Ill. Feb. 25, 2003)............................18, 19

*NuboNau, Inc. v. NB Labs, Ltd.*,
No. 10-cv-2631, 2012 WL 843503 (S.D. Cal. Mar. 9, 2012) ...............................................12

*Oldfield v. Pueblo De Bahia Lora*,
558 F.3d 1210 (11th Cir. 2009) ...........................................................................11, 13, 17

*Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*,
No. 8:08-cv-264, 2008 WL 4067431 (M.D. Fla. Aug. 27, 2008) .........................................17

*Performance Indus. Mfg., Inc. v. Vortex Performance Pty*,
No. 8:18-cv-00510, 2019 WL 78840 (M.D. Fla. Jan. 2, 2019) ...........................................12

*PG Creative Inc. v. Affirm Agency, LLC*,
No. 18-cv-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) ..........................................13

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
619 F. Supp. 2d 1260 (M.D. Fla. 2009) ..................................................................20

*Prince v. Poulos*,
876 F.2d 30 (5th Cir. 1989) ..........................................................................18

*Rhodes v. Unisys Corp.*,
170 F. App'x 681 (11th Cir. 2006) ....................................................................11

*Robey v. JPMorgan Chase Bank*,
343 F. Supp. 3d 1304 (S.D. Fla. 2018) ...............................................................18

*Schuster v. Carnival Corp.*,
No. 10-cv-21879, 2011 WL 13220428 (S.D. Fla. Feb. 3, 2011) .........................................13, 16

*Snow v. DirecTV, Inc.*,
450 F.3d 1314 (11th Cir. 2006) ........................................................................7

*Sovereign Offshore Servs. v. Shames*,
No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ...........................................12

*Storms v. Haugland Energy Grp.*,
No. 18-cv-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) .........................................7, 10

*Tarantino v. Riddell*,
No. 17-cv-60567, 2018 WL 2011551 (S.D. Fla. Apr. 30, 2018).........................................8

*Taylor v. Moskow*,
717 F. App'x 836 (11th Cir. 2017) ....................................................................16

*TMJ Prac. Mgmt. Assocs. v. Curran*,
    No. 16-cv-81903, 2017 WL 3130421 (S.D. Fla. July 24, 2017) ..........................................18

*TracFone Wireless, Inc. v. Sunstrike Int'l, Ltd.*,
    273 F.R.D. 697 (S.D. Fla. 2011) .......................................................................................19

*United States v. Ibarquen-Mosquera*,
    634 F.3d 1370 (11th Cir. 2011) ........................................................................................14

*United States v. Street*,
    472 F.3d 1298 (11th Cir. 2006) ........................................................................................18

*Vallejo v. Narcos Prods., LLC*,
    No. 1:18-cv-23462, 2019 WL 5884494 (S.D. Fla. June 14, 2019)......................................16

*Volt, LLC v. Volt Lighting Grp.*,
    369 F. Supp. 3d 1241 (M.D. Fla. 2019)......................................................................13, 16

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018) ........................................................................................11

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................................13

*Watts v. Haun*,
    393 So.2d 54 (Fla. Dist. Ct. App. 1981) ..........................................................................15

*Williams Elec. Co. v. Honeywell, Inc.*,
    854 F.2d 389 (11th Cir. 1988) ..........................................................................................15

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    145 F. Supp. 2d 1168 (N.D. Cal. 2001) ............................................................................14

**Statutes**

22 U.S.C. § 6082(a)(1)(A) ......................................................................................................2

28 U.S.C. § 1391(b)(2) ....................................................................................................4, 17

28 U.S.C. §1603(a)(2)............................................................................................................19

28 U.S.C. §1608(b)(3)(B) ......................................................................................................19

Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996,
    Pub. L. No. 104-114 (1996).......................................................................................*passim*

Fla. Stat. § 48.193(1)(a)(2) .................................................................................15, 16

Cal. Code Civ. Proc § 410.10 .....................................................................................17

**Rules**

Fed. R. App. P. 25(a) ..................................................................................................18

Fed. R. Civ. P. 4(f) .......................................................................................................4

Fed. R. Civ. P. 4(f)(2)(C)(ii) ...............................................................................18, 19

Fed. R. Civ. P. 4(f)(3) .................................................................................................19

Fed. R. Civ. P. 4(k)(2).................................................................................4, 5, 16, 17

Fed. R. Civ. P. 5(b) .....................................................................................................18

Fed. R. Civ. P. 12(b)(1)................................................................................................1

Fed. R. Civ. P. 12(b)(2)................................................................................................1

Fed. R. Civ. P. 12(b)(3)................................................................................................1

Fed. R. Civ. P. 12(b)(5)................................................................................................1

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 20

Fed. R. Civ. P. 12(e) .............................................................................................1, 20

**Regulations**

31 C.F.R. ¶ 515.204(a)................................................................................................2

**Other Materials**

*Restatement (Third), Foreign Relations Law of the United States*,
   § 471, Comment b (1987) .......................................................................................19

**Legislative/Administrative Materials**

Dep't of State, Legal Considerations Regarding Title III,
141 Cong. Rec. S15106 (Oct. 12, 1995) ...............................................................................14


Hearings, S. Hrg 104-212, Cuban Liberty and Democratic Solidarity Act, Subcomm.
On Western Hemisphere, Comm. On Foreign Relations
(May 22 & June 14, 1995) (testimony of Brice M. Clagett)..................................................15

Defendant Corporación Habanos, S.A. ("Habanos, S.A.") respectfully submits this Memorandum of Law in support of its motion, pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (5), to dismiss this action with prejudice for lack of personal jurisdiction, and, in the alternative, for improper venue and insufficient service of process.

Habanos, S.A. also moves to dismiss this action, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.  In support, it relies upon Defendants' joint Memorandum of Law and Defendant Imperial Brands PLC's Memorandum of Law, which is briefly supplemented here.

Finally, Habanos, S.A. submits the instant Memorandum in support of its Fed. R. Civ. P. 12(e) motion that, if dismissal is denied, Plaintiffs be required to file a more definite statement.

## STATEMENT OF THE CASE

1.     Corporación Habanos, S.A. is a Cuban joint venture corporation owned in equal parts by a Cuban party (allegedly Tabacuba) and a U.K. party: allegedly, from 2008 to at least 2020, the Defendant Imperial Brands PLC ("Imperial"), either directly or through one or more subsidiaries.  Amended Complaint, ECF 82 ("AC"), ¶¶ 23–24, 50.

 Plaintiffs sue Habanos, S.A., as well as Imperial, for "trafficking" in a cigar factory in Havana, Cuba ("Cigar Factory") and a commercial/residential building, also in Havana ("Mixed-Use Building"). Plaintiffs allege that the buildings (collectively, the "Properties") were owned by a Cuban limited partnership, Ramón Rodriguez e Hijos Sociedad en Comandita, until 1961, when the Cuban Government confiscated them. Plaintiffs assert they are owners as heirs and successors of a 90% interest in the Cuban limited partnership. AC, ¶¶ 1–3.

Plaintiffs' "trafficking" claim is brought under Title III, Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6081–6085 ("Title III"), which provides that

"any person that . . . traffics in property which was confiscated by the Cuban Government . . . shall be liable to any United States national who owns the claim to such property[.]" 22 U.S.C. § 6082(a)(1)(A).  Exercising statutory authority, every President suspended the right to bring Title III actions until President Trump let the suspension lapse in May 2019.  *See* https://2017-2021.state.gov/cuba-title-iii-faqs.

Plaintiffs also sue two New York "advertising agency subsidiaries" of a U.K. company, Young & Rubican LLC ("Y&R") and BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW"), under Title III for marketing and publicizing "the products produced at the confiscated Cigar Factory," as well as the parent company, WPP PLC. AC, ¶¶ 11, 25–27.

Plaintiffs filed this action on August 6, 2020. The other Defendants moved on February 26, 2021 to dismiss the action for lack of personal jurisdiction and on other grounds (ECF 71–72, 74). Rather than respond, Plaintiffs filed the Amended Complaint on March 22, 2021.

On January 26, 2021, Habanos, S.A. received a DHL delivery in Havana of a Summons and the original Complaint. ECF 66. On their consent motion, the Court set April 28, 2021 as the time for all Defendants to respond to the Amended Complaint. ECF 87.

*Personal Jurisdiction Over Corporación Habanos, S.A.*

2.     Plaintiffs do *not* allege that Habanos, S.A., any other Defendant or any third-party sells Cuban cigars in the United States, whether made at the Cigar Factory or elsewhere. United States law prohibits the sale of Cuban cigars in the U.S. *See* 31 C.F.R. ¶ 515.204(a).

Plaintiffs acknowledge that, while not selling in the U.S., Habanos, S.A. sells Cuban cigars throughout the rest of the world, AC, ¶¶ 5, 10, 24, Ex. 4 (ECF 83-4, at 4), allegedly through Imperial's and Tabacuba's distribution network. AC, ¶ 10. Plaintiffs do not allege that the cigars sold by Habanos, S.A., now or in the past, have come only from the Cigar Factory.

2

Rather than claiming sales to the United States, Plaintiffs rest personal jurisdiction over Habanos, S.A. upon different grounds.

*First*, Plaintiffs allege that, no later than 2017, Twitter, Instagram and YouTube, social media platforms of U.S. corporations, have been used to "market Habanos products," including "Cuban cigars manufactured at, stored at, or distributed from the confiscated [] Property." AC, ¶¶ 12, 37–38, 43. The social media accounts on these platforms, as is commonly known, can be accessed throughout the world, and Plaintiffs do not allege otherwise. Plaintiffs do not allege that Cuban cigars can be purchased on the social media accounts.

Plaintiffs' claim of trafficking in the Properties could not, as required, "arise out of or relate to," *Bristol-Myers Squibb v. Sup. Crt*, 137 S.Ct. 1773, 1780 (2017) (alterations omitted), the social media accounts, because the social media accounts were established when cigars no longer came from the Properties. The Amended Complaint and its Exhibits suffice to establish this point, which is dispositive. While there is thus no need to go beyond Plaintiffs' pleading, the proof submitted by Habanos, S.A. in any event establishes the critical temporal sequence.

That the social media accounts are accessible throughout the world, and that they cannot be used to purchase cigars, are also each fatal to Plaintiffs' reliance on them.

*Second*, Plaintiffs allege that the two N.Y. defendants, Y&R and BCW, were "retained" to use Twitter, Instagram and YouTube "to market Habanos products," AC, ¶¶ 11–12, 37. Although Plaintiffs allege that Y&R and BCW have Florida offices, AC, ¶¶ 26–27, they do not allege that these offices market Habanos products.

 This allegation cannot provide jurisdiction because the social media accounts do not provide jurisdiction.  Further, as Y&R and BCW show in their Memorandum, Plaintiffs allegation as to their supposed agency is facially insufficient, and, in any event, their factual

3

submissions establish that Y&R and BCW have had nothing to do with Cuban cigars, let alone

marketing them on Twitter, Instagram or YouTube.

Six of the seven Plaintiffs allegedly reside in Florida, AC, ¶ 29, but a plaintiff's residence

has been authoritatively rejected as a basis for personal jurisdiction.

*Venue and Service of Process*

Habanos, S.A. argues that, even if personal jurisdiction were not lacking, the action could

not proceed because venue would be improper under 28 U.S.C. § 1391(b)(2), invoked by

Plaintiffs, and the purported service of process violated Fed. R. Civ. P. 4(f).

*More Definite Statement*

If dismissal is denied, Habanos, S.A. moves for a more definite statement of the pleading

specifying: (a) the acts of trafficking alleged to be committed by Habanos, S.A. itself; (b) the

acts of trafficking alleged to be committed by others but attributed to Habanos, S.A.; and (c) by

whom the attributed acts are allegedly committed and the basis for the attribution.

## ARGUMENT

### I.      Personal Jurisdiction Is Lacking

Plaintiffs cannot meet their burden to show that either the Due Process or the statutory

requirements for jurisdiction are met. Because the Florida long-arm statute and Fed. R. Civ. P.

4(k)(2) are both subject to Due Process constraints, the Court can begin and end with the

constitutional analysis. Independently sufficient to require dismissal, Plaintiffs also cannot meet

the requirements of either the Florida long-arm or Fed. R. Civ. P. 4(k)(2).

### A.   Assertion of Personal Jurisdiction Would Violate the Due Process Clause

Plaintiffs correctly do not assert general jurisdiction over Habanos, S.A.[1]  For specific

---

[1] Plaintiffs acknowledge that Habanos, S.A. is not "at home" in the United States, archetypically
"the place of incorporation [or] principal place of business," *Daimler AG v. Bauman*, 571 U.S.

jurisdiction, Due Process requires that: (1) Plaintiffs' claims "arise out of or relate to" Habanos, S.A.'s contacts with the forum, *Bristol-Myers*, 137 S. Ct. at 1780; (2) Habanos, S.A. "purposefully avail[ed] itself of the privilege of conducting activities within the forum," *Asahi Metal Indus. Co., Ltd. v. Sup. Crt*, 480 U.S. 102, 109 (1987); and (3) the assertion of jurisdiction is reasonable. *Id.* at 114. Whether based on Habanos, S.A.'s alleged contacts with Florida or with the United States, Plaintiffs cannot satisfy any of the three requirements.[2]

### 1. The Claims Do Not "Arise Out of or Relate to" the Alleged Forum Contacts

#### (a) *Alleged Use of Twitter, Instagram and YouTube*

Plaintiffs first seek to ground jurisdiction on the allegation that Twitter, Instagram and YouTube have been used to "market Habanos products," including "Cuban cigars manufactured at, stored at, or distributed from the confiscated [] Property." AC, ¶¶ 12, 37–38, 43.

Plaintiffs' effort fails at the threshold because the three social media accounts were established when cigars no longer came from the Properties and, thus, the alleged trafficking could not "arise out of or relate to" the accounts.

#### (i) The Amended Complaint and Exhibits

Examination of the Amended Complaint and its Exhibits suffices to require dismissal on

---

117, 137 (2014), *see* AC, ¶ 7; Ex. 4 (ECF 83-4, at 4), and do not allege the narrow exception for entities with sufficiently extensive operations in the forum, *Daimler*, 571 U.S. at 139 n.19.

[2] Imperial argues that requirements (1) and (2) are not met with respect to it even assuming that Habanos, S.A.'s alleged conduct is attributable to Imperial. In addition to advancing its own arguments, *infra*, Habanos, S.A. concurs in Imperial's argument, at I(A)(2) of its Memorandum.

Because Plaintiffs invoke Fed. R. Civ. P. 4(k)(2), Habanos, S.A. addresses why Due Process precludes the exercise of jurisdiction based not only on Habanos, S.A.'s alleged Florida contacts, but also on Habanos, S.A.'s aggregate U.S. contacts.

Although Fed. R. Civ. P. 4(k)(2) is subject to the Fifth Amendment's, not the Fourteenth Amendment's, Due Process Clause, the Eleventh Circuit construes the two to have the same substantive requirements. *Fraser v. Smith*, 594 F.3d 842, 849 n.10 (11th Cir. 2010).

this ground.

The three social media accounts cited by Plaintiffs, AC, ¶ 12, show on their face, in information accessible to the public, that they were started in January 2015 (Twitter and YouTube) and February 2016 (Instagram). *See* screenshots attached to Declaration of Susan Bailey, ¶¶ 2–4 ("Bailey Decl.").

In the Amended Complaint, Plaintiffs rely upon appended copies of photographs of the Cigar Factory to show its use. *All* of these photographs were taken well before the start date of the social media accounts, between 2005 and sometime earlier than December 2013.[3]  This is shown by the dates appearing on the publications where they were published, or the dates shown on the data embedded in the originals of the photographs. *See* Bailey Decl. ¶¶ 6–10; Declaration of Karel Perez Alejo ¶¶ 3–4. Moreover, the blog post of January 2013 that Plaintiffs specify as the source of Exhibit 7 states that "[i]t's been over a year" since the factory was used for cigars—that is, sometime in 2011—with cigar operations having been moved out of it because of "terrible floods from water coming through the roof," requiring "renovations." Bailey Decl. ¶ 10, Ex. G.

Even aside from the foregoing, Plaintiffs' pleading would be insufficient. Imperial's previously filed motion to dismiss forcefully raised the issue of whether the social media accounts were established only after use of the Properties for cigars had ended. ECF 71, at 8–10.

---

[3] *Ex. 2*, ECF 83-2, referenced at AC, ¶¶ 2, 51, 53—**on May 15, 2013**; *Ex. 3*, ECF 83-3, top image, referenced at *id.* ¶¶ 2, 53—**on or before January 12, 2005**, and bottom image, referenced at *id.*, ¶¶ 2, 53—**earlier than December 15, 2013**; *Ex. 6*, ECF 83-6, referenced at *id.*, ¶ 52—**in or earlier than 2009**; *Ex. 7*, ECF 83-7, referenced at *id.*, ¶¶ 52, 53—**earlier than January 24, 2013**. *Amended Complaint ¶ 53* identifies a "publicity piece" on the cited webpage as being from **February 2010.**

The bottom images on Exhibit 2, ECF 83-2, referenced at AC, ¶¶ 2, 51, 53, are of the Mixed-Use Building, not the Cigar Factory.  Allegedly taken in December 2019, *id.*, they do not indicate any use of the building or the vehicles parked outside of it for cigars.

In response, Plaintiffs added in their Amended Complaint "from January 2008 until at least October 29, 2020" to their allegation that Habanos, S.A. had "the use of . . . the [] Property," and that this use "has included the production and shipping of . . . cigars." AC, ¶¶ 8–9.  Noticeably, Plaintiffs do *not* specify *when* during Jan.  2008 – Oct. 29, 2020 the Properties' use "included" production and shipping of cigars, and did *not* append any exhibit showing such use after the social media accounts were established—despite notice that the temporal issue was critical.

Evasive, vague and conclusory allegations such as these are "insufficient to establish a prima facie case of personal jurisdiction." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006).  On a Rule 12(b)(2) motion, "generalized allegations [] devoid of specificity" are not to be credited, *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1149 (S.D. Fla. 2019) (collecting cases), nor are "vague and conclusory allegation[s]." *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1346 n.5 (S.D. Fla. 2017), *quoting Snow*, 450 F.3d at 1318; *see also Storms v. Haugland Energy Grp.*, No. 18-cv-80334, 2018 WL 4347603, at *8 (S.D. Fla. Aug. 17, 2018), *report and recommendation adopted*, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018) (Bloom, J.) (applying *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) to jurisdictional allegations and holding that "naked assertions devoid of further factual enhancement," as well as "conclusory and speculative allegations," "are not entitled to the assumption of truth").  These strictures have added force here, as Plaintiffs were on notice of the temporal issue.

Also dispositive is the "well-settled" rule that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *see also Lawrence v. U.S.*, 597 F. App'x 599, 602 (11th Cir. 2015) ("[W]e are not . . . required to accept as true allegations in the complaint that are contrary to factual details presented in [plaintiff's] exhibits.").

In considering Plaintiffs' pleading, the Court may consider what the sources of Plaintiffs' exhibits reveal. *See Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity;" considered document "*not* mentioned in, *nor* attached" to complaint) (emphasis added); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (applying same rule; considered document referenced in, but not attached to, complaint); *Tarantino v. Riddell*, No. 17-cv-60567, 2018 WL 2011551, at *2 & n.2 (S.D. Fla. Apr. 30, 2018) (court considered letter not referenced in complaint because it was "integral to the allegations" of the complaint); *Arencibia v. AGA Service Co.*, No. 20-cv-24694, 2021 WL 1318225, at *3 (S.D. Fla. April 8, 2021) (court may consider "documents referred to in the complaint that are central to the claim").[4]

Plaintiffs' own Exhibits and their sources establish that use of the Properties for cigars ended well before the social media accounts began.

### (ii) Habanos, S.A.'s Factual Submissions

The foregoing, based on Plaintiffs' own pleading and exhibits, is dispositive, and the Court thus need not and should not go further. *See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, No. 20-cv-21630, 2021 WL 1648222, at *2 (S.D. Fla. April 27, 2021) ("Before courts may consider materials provided by a defendant and plaintiff the court must first decide if the plaintiff has made out a *prima facie* case supporting the court's exercise of personal jurisdiction"). In addition and in the alternative, Habanos S.A.'s submitted declarations establish

---

[4] Considering documents "explicitly relied upon" in the pleading *or* "integral" to the complaint even though not referenced or attached prevents efforts "to maintain a claim . . . by extracting [] isolated [information] from a document and placing it in the complaint, even though if the [information] were examined in the full context of the document," it would foreclose plaintiff's action. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

that the Properties were no longer used for cigars when the social media accounts were established.[5] *See* Declaration of Mirel García Días (engineer who inspected Factory) and attached photographs from 2015 and 2021; Declaration of Rafael Agramonte Hevia (engineer who inspected Factory) and attached 2018 report; Declaration of Martha Riquelme Armenteros (employee of the cigar company that had occupied the Factory). They show that cigars no longer came from the Cigar Factory as of January 2011, and that the operations carried on there were moved elsewhere then, because of the property's physical deterioration.[6]

(b) *Alleged Retention of N.Y. Advertising Agencies*

Plaintiffs' other allegation to support personal jurisdiction—that Y&R and BCW were "retained" to set up and use Twitter, Instagram and YouTube social media accounts "to market Habanos products," AC, ¶¶ 11–12, 37— necessarily fails because the social media accounts do not provide jurisdiction. Further, as Y&R and BCW show in their Memorandum, Plaintiffs' allegation as to their supposed agency are facially insufficient, and, in any event, their factual submissions establish that they have had nothing to do with Cuban cigars, let alone marketing them on Twitter, Instagram or YouTube.[7]

---

[5] Where, as here, the defendant "makes a showing" that the requirements for personal jurisdiction are not met, the plaintiff may "not merely reiterate the factual allegations in the complaint;" it must "substantiate the jurisdictional allegations" by "competent proof." *Diamond Crystal Brands v. Food Movers Int'l*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation omitted). A pleading's allegations are not taken as true when "[]controverted by … affidavits," *Home Ins. Co. v. Thomas Indus.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citation omitted).

[6] As to the Mixed-Use Building, Plaintiffs acknowledge that the occupant is a "tobacco leaf" company, AC, ¶ 2 & Ex. 2 (ECF 83-2), not a cigar company.  *See also* Declaration of Jorge Fernández Nuñéz, ¶¶ 4–6 (company does not deal in or market cigars).

[7] Plaintiffs allege that Ogilvy, a "U.S.-based" subsidiary of WPP, was retained to market Habanos products, AC 37, 55–56, but only Y&R and BCW are alleged to have been involved with the social media accounts, AC, ¶¶ 12, 55. Further, the social media accounts began only after Ogilvy's supposed engagement is alleged to have ended.  AC, ¶ 56.

It does not appear that Plaintiffs allege that Y&R and BCW were retained to do anything more than assist with the social media accounts. *See* AC, ¶¶ 11–12. Even if the pleading were read otherwise, it would lack any specificity, making it insufficient on its face. *See supra*, p.7; *In re Zantac Prod. Liab. Litig.*, -- F.Supp.3d --, 2020 WL 7866660, at *9–*10 (S.D. Fla. Dec. 31, 2020) (applying *Twombly* to find that plaintiff's "[n]on-specific statements" about "marketing" throughout the U.S. "fail to allege specific, non-conclusory facts" and thus "are not accepted as true and are insufficient to establish a *prima facie* case of jurisdiction"); *Storms*, 2018 WL 4347603, at *8, *10 (rejecting reliance on alleged advertising in forum where complaint "fails to specify how Defendant 'advertised' in Florida," and rejecting allegation that defendant "regularly carries on business in the [forum]" as "conclusory and not entitled to the assumption of truth"). Plaintiffs' glaring omission is even more striking as marketing activities are publicly visible.[8]  Any such allegation would further fail in the face of Y&R and BCW's factual showing that they have had nothing to do with Cuban cigars.[9]

    (c)  *There Is No Nexus Between the Social Media Accounts and Plaintiffs' Trafficking Claim*

It is self-evident that Plaintiffs' trafficking claim cannot "arise out of or relate to," *Bristol-Myers,* 137 S. Ct. at 1780, Habanos, S.A.'s contacts with the forum when the social media accounts were established after cigars no longer came from the Properties.  There is no

---

[8] Plaintiffs' allegation concerning Ogilvy is devoid of *any* specificity, let alone what is required. *See* AC, ¶¶ 37, 55–56. The only marketing activity specifically alleged in the entire pleading is in connection with the social media accounts, and there is no allegation that Ogilvy was involved.

[9] It is "well-established . . . that [] merely contracting with a forum resident" cannot "establish sufficient minimum contacts." *Diamond Crystal*, 593 F.3d at 1268; *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–56 (11th Cir. 2013). Instead, the inquiry "focuses on the substance of the transaction." *Diamond Crystal*, 593 F.3d at 1268–69. The alleged retention of Y&R and BCW gets Plaintiffs nowhere, because the alleged "substance," the social media accounts, do not provide personal jurisdiction.

way around this simple failing, which requires dismissal for lack of personal jurisdiction.

Since there is no nexus here at all, it is unnecessary to consider what degree of nexus is required. It nonetheless may be noted that the nexus required by the Eleventh Circuit is a tight one. "[T]o satisfy the relatedness requirement," Plaintiff's injuries must be a "foreseeable consequence" of the forum contacts. *Oldfield v. Pueblo De Bahia Lora*, 558 F.3d 1210, 1223 (11th Cir. 2009); *see also Fraser v. Smith*, 594 F.3d 842, 851 (11th Cir. 2010) (same). "But for" causation is required. *See, e.g.*, *Fraser*, 594 F.3d at 850–51; *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1369–70 (S.D. Fla. 2016). As the social media accounts began when cigars no longer came from the Cigar Factory, Plaintiffs' injuries could not be a consequence, foreseeable or otherwise, of the social media accounts, nor could the social media accounts have any causal relation, "but for" or otherwise, with Plaintiffs' trafficking claims.[10]

   2.   The Alleged Forum Contacts Do Not Satisfy the Purposeful Availment
        Requirement

Separately requiring dismissal, Plaintiffs' allegations are insufficient with respect to the requirement that Habanos, S.A. have "purposefully availed itself of the privilege of conducting activities within the forum state." *Waite*, 901 F.3d 1313 (internal quotations omitted). Courts in

---

[10] *See also Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1315 (11th Cir. 2018) (temporal factor precluded meeting requirement); *Rhodes v. Unisys Corp.*, 170 F. App'x 681, 685 (11th Cir. 2006) (same).

*Ford Motor Co. v. Montana*, 141 S.Ct. 1017 (2021) does not displace Circuit authority or support a different result here. To the contrary, in *Ford*, the Court found the "necessary connection between [the] in-state activity and the [] claims" because Ford had "systematically served [the forum] market" – "among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective… All that assistance to Ford's in-state business creates reciprocal obligations—most relevant here, that the car models Ford so extensively markets in Montana and Minnesota be safe for their citizens to use there." *Id*. at 1028, 1030–31, 1022. Unlike Ford, Habanos, S.A. does not and cannot sell in the forum, does not and cannot provide services in the forum, and the situation is the reverse of that in *Ford*, where the forum contacts preceded the plaintiff's purchase of a Ford car while, here, the social media accounts were established only after cigars no longer came from the Properties.

this Circuit have uniformly held that use of globally accessible websites, without more, does not show purposeful availment. *Blue Water Int'l v. Hattrick's Irish Sports Pub*, No. 8:17-cv-1584, 2017 WL 4182405, at *1 (M.D. Fla. Sept. 21, 2017) (rejecting jurisdiction "merely because a Floridian might view [defendant's] Facebook, Twitter, Yelp, or TripAdvisor pages").  If it did, there would be "personal jurisdiction in every spot on the planet where that [] website is accessible." *Id.* (quotation omitted).[11]

Although Plaintiffs emphasize that Twitter, Instagram and YouTube are based in the United States, *see* AC, ¶¶ 12, 37, 38, 55, that does not make any difference. *NuboNau, Inc. v. NB Labs, Ltd.*, No. 10-cv-2631, 2012 WL 843503, at *6 (S.D. Cal. Mar. 9, 2012). Courts uniformly conclude that the "location of such companies should not be deemed meaningful contact for jurisdictional purposes." *AMA Multimedia LLC v. Wanat*, No. 15-cv-01674, 2017 WL 5668025, at *6 (D. Ariz. Sept. 29, 2017), *aff'd*, 970 F.3d 1201 (9th Cir. 2020).[12]  Doing so would render "essentially meaningless" the purposeful availment requirement because it is "ubiquitous for businesses—large and small—to maintain Facebook and/or other similar accounts for marketing purposes;" "millions . . . around the globe" would be subjected to personal jurisdiction. *DFSB*

---

[11] *See also Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1092 (S.D. Fla. 2020) (finding "Defendants' website, visible to internet users in Florida" does not create requisite "substantial connection" with forum); *Honus Wagner v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10 (S.D. Fla. Dec. 21, 2017) (no minimum contacts from website "available to anyone with internet access in the world, including Florida residents"); *Sovereign Offshore Servs. v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web . . . [is] insufficient"); *Performance Indus. Mfg., Inc. v. Vortex Performance Pty*, No. 8:18-cv-00510, 2019 WL 78840, at *6 (M.D. Fla. Jan. 2, 2019).

[12] *See also Brophy v. Almanzar*, 359 F. Supp. 3d 917, 925 (C.D. Cal. 2018) (rejecting reliance on Instagram's headquarters); *Dish Network, LLC v. Jadoo TV, Inc.*, No. 18-cv-9768, 2020 WL 6536659, at *8 (C.D. Cal. Mar. 16, 2020) (same as to YouTube); *Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, No. 08-cv-3226, 2008 WL 5412431, at *4 (C.D. Cal. Dec. 29, 2008); *NuboNau*, 2012 WL 843503, at *6.

*Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012).

Also fatally, Plaintiffs make no allegation that the social media accounts can be used to purchase cigars (as is readily apparent from the accounts, they cannot, *see* Bailey Decl., ¶ 5). Courts in this Circuit have rejected reliance on websites that display general promotional information but do not allow transactions with forum residents. *See Volt, LLC v. Volt Lighting Grp.*, 369 F. Supp. 3d 1241, 1248 (M.D. Fla. 2019); *Schuster v. Carnival Corp.*, No. 10-cv-21879, 2011 WL 13220428, at *8 (S.D. Fla. Feb. 3, 2011). Simply promoting a product is "too narrow a thread on which to find meaningful 'contact' for the purposes of due process." *Celorio v. Google Inc.*, 872 F. Supp. 2d 1327, 1333 (N.D. Fla. 2012), *report and recommendation adopted*, 2012 WL 1795213 (N.D. Fla. May 17, 2012) (internal quotation omitted).

### 3. Plaintiffs' Florida Residence Does Not Provide Personal Jurisdiction

That six of the seven Plaintiffs allegedly reside in Florida, AC, ¶¶ 14, 29–35, does not change the analysis because "the place of plaintiff's injury and residence cannot create a defendant's contact with the forum." *Ford*, 141 S.Ct. at 1028; *see also Walden v. Fiore*, 571 U.S. 277, 290 (2014) (same); *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-cv-24299, 2019 WL 5684219, at *5 (S.D. Fla. Oct. 31, 2019) ("Supreme Court has made clear that mere injury to a forum resident is not . . . sufficient").

### 4. The Due Process Clause's Reasonableness Requirement Is Not Met

The Due Process Clause requires that a court evaluate the minimum contacts a defendant may have purposefully established with the forum "in light of other factors to ensure that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice." *Oldfield*, 558 F.3d at 1221 (internal quotations omitted). Far from standardless, the inquiry focuses upon whether the "quality and nature of an interstate transaction" is such "that the

potential defendant should reasonably anticipate being haled into" the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985). This ensures the required "clear notice" that the forum-related conduct will subject the defendant to jurisdiction.  *Ford*, 141 S.Ct. at 1030.

Habanos, S.A. could not have "reasonably anticipate[d] being haled" into a U.S. court by establishing social media accounts well after the Properties had been a source of cigars, and when, further, the accounts are accessible throughout the world, they cannot be used to purchase cigars, and Habanos, S.A. cannot sell cigars in the U.S. That Habanos, S.A. is a Cuban joint venture corporation with 50% Cuban ownership does not change the standard or its application.

Further, courts are required to "consider" the interest of other nations that might be affected by the assertion of jurisdiction. *Asahi Metal*, 480 U.S. at 115.[13]  For this reason, and because "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *id.* at 115, courts consider "the limitations imposed by international law [in] determining whether or not to exercise personal jurisdiction over a foreign defendant." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 145 F. Supp. 2d 1168, 1176 (N.D. Cal. 2001). *See also, e.g.*, *United States v. Ibarquen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011) (considering international law to determine Due Process limitations on prescriptive jurisdiction).

The State Department found that Title III would be "difficult to defend under international law" because of its extraterritorial reach. Dep't of State, Legal Considerations Regarding Title III, 141 Cong. Rec. S15106, S15108 (Oct. 12, 1995).  Whatever may be the case

---

[13] *See also Daimler*, 571 U.S. at 141 (reversing where Circuit "paid little heed to the risks to international comity [of] its expansive view of [] jurisdiction"); *Takata Airbag*, 396 F. Supp. 3d at 1147 (citing "the Supreme Court's concerns for international comity" in finding no jurisdiction).

when U.S. territory is more significantly involved, the State Department's position has undeniable force here, and weighs decisively against jurisdiction.  Indeed, Congress was advised that international law criticisms of Title III's reach could be disregarded because the Due Process Clause incorporates the international law limits on Title III's reach.[14]

### B.   The Statutory Requirements for Personal Jurisdiction Are Also Not Satisfied

#### 1.   Florida Long-Arm Statute

Even aside from Due Process requirements, personal jurisdiction is lacking because Plaintiffs' reliance on the tortious activity prong of Fla. Stat. § 48.193(1)(a)(2), AC, ¶¶ 29, 42, fails.[15] It requires Plaintiffs to "demonstrate that the foreign defendant 'committed a substantial aspect of the alleged tort in Florida,'" such as by establishing that the activities in Florida 'were essential to the success of the tort,'" *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (*quoting Watts v. Haun*, 393 So.2d 54, 56 (Fla. Dist. Ct. App. 1981) (alterations omitted), and without which the "tort . . . is not completed." *Internet Sols. Corp. v. Marshall,* 39 So. 3d 1201, 1214 (Fla. 2010).  These requirements cannot be met because the social media accounts did not concern cigars from the Properties and, even if they did, that the social media accounts would be accessible in Florida as well as throughout the U.S. and internationally would neither be "substantial" nor "essential" to Plaintiffs' claim, which would be "complete[]" even were they not accessible in Florida.

In a Title III action involving the internet, a court of this District found the Florida long-

---

[14] *See* Hearings, S. Hrg 104-212, Cuban Liberty and Democratic Solidarity Act, Subcomm. on Western Hemisphere, Comm. On Foreign Relations, 185–86 (May 22 & June 14, 1995) (testimony of Brice M. Clagett).

[15] "A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: . . . 2. Committing a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2).

arm statute inapplicable despite allegations stronger than those here. In *Del Valle v. Trivago GmbH*, No. 19-cv-22619, 2020 WL 2733729 (S.D. Fla. May 26, 2020), Plaintiffs sued web-based travel companies (Expedia, Orbitz, and others). Like the social media accounts here, their websites were "accessible in Florida" as well as throughout the U.S. and internationally, *id.*, but, unlike here, they were "fully-interactive," with "robust internet e-business capabilities" that included renting rooms at the confiscated Cuban hotels, including to Florida residents. *Id.* *1, *3.

Plaintiffs' reliance on Fla. Stat. § 48.193(1)(a)(2) also fails because purchases cannot be made through the accounts. *See Volt*, 369 F. Supp. 3d at 1245–47 (finding long-arm not satisfied by website that does not permit sales); *Schuster* 2011 WL 13220428, at *8–*9 (same).[16]

2. Fed. R. Civ. P. 4(k)(2)

Plaintiffs' invocation of Fed. R. Civ. P. 4(k)(2)—under which a court may look to defendant's "nationwide contacts" if the defendant is "not subject to the jurisdiction of the courts of general jurisdiction of any one state," *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)—also cannot support jurisdiction. If the Court were to find that the exercise of jurisdiction is constitutionally permissible, reliance on Rule 4(k)(2) would still be precluded because such a finding would necessarily rely on contacts with the U.S. that possibly may support jurisdiction in either California or New York.

A court of this District held in *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1143

---

[16] Insofar as Plaintiffs asserts that the long-arm statute is satisfied by "damage" in Florida because six Plaintiffs reside there, this basis for jurisdiction has been repeatedly rejected by binding authority. *See Taylor v. Moskow*, 717 F. App'x 836, 841 (11th Cir. 2017) ("[T]he existence of an injury within Florida . . . is insufficient to support jurisdiction over an out-of-state tortfeasor") (*quoting Kountze v. Kountze*, 996 So.2d 246, 252 (Fla. App. 2008) (*en banc*)); *Vallejo v. Narcos Prods., LLC*, No. 1:18-cv-23462-KMM, 2019 WL 5884494, at *2 (S.D. Fla. June 14, 2019) (§ 48.192(1)(a)(2) is not met although "it is undisputed that . . . the effects of any alleged copyright infringement would be felt in Florida" based on plaintiff's residence).

(S.D. Fla. 2007) that Rule 4(k)(2) is inapplicable when it appears from the record that contacts with a different, particular state "may allow" it to exercise jurisdiction, even if the defendant—as Habanos, S.A. does here—disputes that jurisdiction lies anywhere in the United States and does not consent to jurisdiction in another forum, and no finding is made that the other forum indeed has jurisdiction. Although the Eleventh Circuit has held that a "court is not required [by Rule 4(k)(2)] to analyze the laws of all fifty states," *Oldfield*, 558 F.3d at 1220 n.22, it has never disapproved of the approach in *Mother Doe*.

> *Mother Doe* should be applied here. Twitter, Instagram and YouTube are headquartered in California, which (unlike Florida) exercises jurisdiction "on any basis not inconsistent with the Constitution[.]" Cal. Code Civ. Proc § 410.10.  Insofar as the Court finds the social media accounts satisfy Due Process, that contact "may allow," *Mother Doe*, 632 F. Supp. at 1143, California to exercise jurisdiction. Similarly, insofar as Habanos, S.A.'s alleged relationship with BCW and Y&R is found to satisfy Due Process, that finding "may allow" jurisdiction in New York.  In the event the Court finds Due Process jurisdiction, Plaintiffs cannot, as required by Rule 4(k)(2), "establish that the defendant is not subject to jurisdiction in any state." *Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*, No. 8:08-cv-264, 2008 WL 4067431, at *4 (M.D. Fla. Aug. 27, 2008).

## II.      Even If Personal Jurisdiction is Found, Venue is Improper

> Venue under 28 U.S.C. § 1391(b)(2), invoked by Plaintiff, AC, ¶ 44, requires that "a substantial part of the events or omissions giving rise to the claim occurred" in this District. If any such events occurred in the U.S. at all, they occurred in California, where the social media companies are located, or New York, where Y&R and BCW are located.

> Moreover, "[o]nly the events that directly give rise to a claim," with "a close nexus to the

17

wrong," are "relevant," *Jenkins Brick v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003); *see also Robey v. JPMorgan Chase Bank*, 343 F. Supp. 3d 1304, 1314–17 (S.D. Fla. 2018), and "only those locations hosting a substantial part of the events are to be considered." *Id.  See also TMJ Prac. Mgmt. Assocs. v. Curran*, No. 16-cv-81903, 2017 WL 3130421, at *3 (S.D. Fla. July 24, 2017)**.**  Neither requirement is met by the social media accounts being accessible in Florida. That six of the seven Plaintiffs reside here does not establish venue. *Jenkins Brick*, at 1371–72.

### III.    Service of Process Was Insufficient

1.       Fed. R. Civ. P. 4(f)(2)(C)(ii) authorizes service by "any form of mail" without court order but DHL is not "mail." The plain meaning of "mail" is items "sent or carried in a postal system." Merriam-Webster.com Dictionary, "Mail" *available at* www.merriam-webster.com/dictionary/mail (last accessed Apr. 25, 2021). *See also, e.g.*, Black's Law Dictionary, "Mail" (11th ed. 2019) ("An official system for delivering such items; the postal system"). Where the language is plain, the Circuit has repeatedly stressed, courts "'must enforce it according to its terms.'" *Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1011 (11th Cir. 2021) (*quoting King v. Burwell*, 576 U.S. 473 (2015)); *United States v. Street*, 472 F.3d 1298, 1317 (11th Cir. 2006) (concerning court rules). Moreover, the Advisory Committee described "mail" as use of a "postal service." Fed. R. Civ. P. 4, Advisory Committee's Note (1963).

The two federal appellate courts to address the issue agree that "mail" does not include private courier services. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996) (service by "mail" under Fed. R. Civ. P. 5(b)): *Prince v. Poulos*, 876 F.2d 30, 32 n.1 (5th Cir. 1989) (service by "mail" under Fed. R. App. P. 25(a)). *See also Haas v. Chaiyaphakdiphon*, No. 2:12-cv-01309, 2013 WL 783046, at *1 (D. Nev. Feb. 28, 2013) (Federal Express is not 'mail' under Rule 4(f)(2)(C)(ii), citing *Magnuson*); *NSM Music, Inc. v. Villa Alvarez*, No. 02-cv-6482,

2003 WL 685338, at *2 (N.D. Ill. Feb. 25, 2003) (same).

The Eleventh Circuit has not addressed the issue. Citing Rule 4(f)(2)(C)(ii), some courts in this District have permitted private courier service, but in each case, service was upon prior court order, making the service actually under Rule 4(f)(3) ("by other means . . . as the court orders"), *see, e.g.*, *TracFone Wireless, Inc. v. Sunstrike Int'l, Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011); or was uncontested. *See, e.g.*, *Hurtado v. Balerno Int'l Ltd.*, No. 17-cv-62200, 2018 WL 4053122 (S.D. Fla. Aug. 24, 2018). District Court decisions outside this Circuit are split. Particularly given this Circuit's strict adherence to the plain meaning rule and the appellate authority, this Court should hold that "mail" does not include DHL and hence its use here without court order was insufficient.

2.      Even if DHL is considered a form of "mail," Fed. R. Civ. P. 4(f)(2)(C) would condition its use on its not being "prohibited by the foreign country's law."  Professor Ivonne Pérez Gutiérrez, of the University of Havana Faculty of Law, demonstrates in her expert Declaration here that Cuban law prohibits service in Cuba of process issued in a foreign action by mail or private courier; it requires service through letters rogatory.[17]

---

[17] The Cuban law requiring letters rogatory, which itself dates back over a century to when Cuba was still a colony of Spain, Pérez Gutiérrez Decl., ¶¶ 7–8, is the same as the law of numerous countries. "Civil law states generally regard service of judicial process as a sovereign act that may be performed in their territory only by the state's own officials and in accordance with its own law. In such states, absent the [Hague] Convention, service must ordinarily be made pursuant to a letter rogatory." *Restatement (Third), Foreign Relations Law of the United States*, § 471, *cmt. b* (1987). Even under the Hague Convention, thirty-five of the seventy-seven state parties have rejected the service by mail option. *See* https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf (last visited Apr. 25, 2021).

Although Plaintiffs oddly invoked the FSIA's service provision, 28 U.S.C. §1608(b)(3)(B), in its proof of service, ECF 66, it is clearly inapplicable. Plaintiffs do not allege that Habanos, S.A. is an FSIA "agency or instrumentality." Further, to be an "agency or instrumentality," a "majority" of shares must be owned by the foreign state, 28 U.S.C. §1603(a)(2); Habanos, S.A. is conceded to be fifty percent owned by a third-country company, AC, ¶ 7. *Direct* ownership by the foreign state is required, *see Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003), not ownership "by

## IV.    Due Process Limits on Prescriptive Jurisdiction Prohibit Title III's Application to Habanos, S.A.

Imperial argues, in support of its Rule 12(b)(6) motion, that Title III's application to its concededly "non-U.S." Cuban cigar business would exceed the Due Process Clause's limits on prescriptive jurisdiction. Habanos, S.A. relies upon Imperials' argument, as Habanos, S.A. is allegedly engaged in the very same non-U.S. business.

## V.    If Dismissal Is Denied, a More Definite Statement is Required

If dismissal is denied, Plaintiff should be required to specify: (a) the acts of trafficking allegedly committed by Habanos, S.A. itself; (b) the acts of trafficking allegedly committed by others but attributed to Habanos, S.A.; and (c) by whom the attributed acts are committed and the basis for the attribution.  Because the pleading is "so vague or ambiguous" in these respects, Habanos, S.A. "cannot reasonably prepare a response," Fed. R. Civ. P. 12(e).  It intermingles Habanos, S.A., Tabacuba, other Cuban companies and "Cuba" without specifying which is doing what, and "Cuba" apparently refers to Habanos, S.A., Tabacuba, and/or the Cuban Government without distinction.[18] Classically, this requires a more definite statement.[19]

## CONCLUSION

For the foregoing reasons, and those stated in the Defendants' joint Memorandum of Law, this action should be dismissed with prejudice as to Habanos, S.A.

---

Cuba, through one or more Cuban-owned companies," AC, ¶ 7. Additionally, DHL is not a "form of mail" under the FSIA's service provisions any more than it is under Rule 4.

[18] *See*, *e.g.*, AC, ¶ 9 (Tabacuba activities at the Mixed-Use Building); ¶ 48 (Cuban Government maintains possession and control of the Properties); ¶ 51 & n.33 (Tabacuba and Habanos, S.A. use the Properties but citing to exhibit allegedly showing Tabacuba offices); and ¶ 62 (trafficking in the Property by "Cuba (and Tabacuba)").

[19] *See, e.g., Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012) ("improperly group[ed] [defendants] together and d[id] not describe what action each of them allegedly took against Plaintiff"); *see also Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (same).

## <u>REQUEST FOR HEARING</u>

Several of the issues raised by the Amended Complaint are of first impression or as to which there is only limited decisional law, including the constitutionality of Title III's application to foreign defendants conducting a non-United States business.  For this reason and because of the number of the issues presented, Habanos, S.A. requests that the Court hold oral argument.  Habanos, S.A. requests twenty minutes for the presentation of its oral argument.  It has no objection to the Court holding a combined oral argument on its motions and the motions presented by the other Defendants.

Dated: April 28, 2021                                        Respectfully submitted,


/s/ *Charles Murray Harris, Jr.*
CHARLES MURRAY HARRIS, JR.
Florida Bar No. 967459
E-Mail: charris@trenam.com
STEPHANIE CRANE LIEB
Florida Bar No. 31806
E-Mail: slieb@trenam.com
**TRENAM KEMKER SCHARF BARKIN**
**FRYE O'NEILL & MULLIS**
101 E Kennedy Boulevard
Tampa, FL 33601-1102
Telephone: (727) 820-3950
Fax: (727) 820-0835

MICHAEL R. KRINSKY
  (admitted *pro hac vice*)
E-Mail: mkrinsky@rbskl.com
LINDSEY FRANK
  (admitted *pro hac vice*)
E-Mail: lfrank@rbskl.com
**RABINOWITZ, BOUDIN, STANDARD,**
**KRINSKY & LIEBERMAN, P.C.**
14 Wall Street, Suite 3002
New York, NY 10005
Telephone:  (212) 254-1111
Fax: (212) 254-4614


*Attorneys for Defendant Corporación Habanos, S.A.*


*On the Brief*:
Nathan Yaffe
(Rabinowitz, Boudin, Standard,
Krinsky & Lieberman, P.C.)