# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


CASE NO.: 20-cv-23287-DPG

LUIS MANUEL RODRIGUEZ,
MARIA TERESA RODRIGUEZ, a/k/a
MARIA TERESA LANDA,
ALFREDO RAMON FORNS,
RAMON ALBERTO RODRIGUEZ,
RAUL LORENZO RODRIGUEZ,
CHRISTINA CONROY, and
FRANCISCO RAMON RODRIGUEZ,

        Plaintiffs,

v.

IMPERIAL BRANDS PLC,
CORPORACIÓN HABANOS, S.A.,
WPP PLC, YOUNG & RUBICAM LLC,
and BCW LLC, a/k/a BURSON COHN &
WOLFE LLC,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY
<u>DEFENDANTS WPP PLC, YOUNG & RUBICAM LLC, AND BCW LLC</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................3

ARGUMENT ......................................................................................................................5

I.      PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE PERSONAL JURISDICTION
        OVER WPP, Y&R, AND BCW .................................................................................. 5

        A.      Plaintiffs Correctly Do Not Assert That WPP Defendants Are Subject To
                General Jurisdiction In Florida .......................................................................6

        B.      Plaintiffs Fail To Establish Specific Jurisdiction Over WPP, Y&R, Or BCW
                Under Florida's Long-Arm Statute ..................................................................7

                1.      Florida's Long-Arm Statute Does Not Authorize Specific Jurisdiction
                        Because None Of The Allegedly Tortious Activities Took Place In
                        Florida ......................................................................................................7

                2.      The Allegedly Tortious Activities Of Y&R And BCW Cannot Be
                        Imputed To WPP Under Agency Theory To Establish Jurisdiction..........10

        C.      Exercising Jurisdiction Would Violate Defendants' Due Process Rights .............11

                1.      The Alleged Confiscation Of The RRHSC Property Does Not "Arise
                        Out Of Or Relate To" WPP Defendants' Activity......................................12

                2.      There Is No "Purposeful Availment" Because WPP Did Not Have
                        Minimum Contacts With The United States .............................................13

                3.      The Exercise Of Specific Personal Jurisdiction Does Not Comport
                        With "Traditional Notions Of Fair Play And Substantial Justice" ............14

II.     PLAINTIFFS FAIL TO ALLEGE THAT WPP, Y&R, AND BCW UNLAWFULLY
        "TRAFFICKED" IN CONFISCATED PROPERTY ........................................................ 15

III.    PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED WITH
        PREJUDICE .......................................................................................................... 19

CONCLUSION...................................................................................................................20

REQUEST FOR HEARING..................................................................................................21

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ................................................................9

*Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*,
221 F.3d 1211 (11th Cir. 2000) ..........................................................14

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987) ......................................................................14, 15

*Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen*,
*S.A.*,
197 F.3d 1070 (11th Cir. 1999) ............................................................6

*Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*,
No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017) ...........................9

*Bristol-Myers Squibb Co. v. Superior Ct.*,
137 S. Ct. 1773 (2017) ........................................................................12

*Bryant v. Dupree*,
252 F.3d 1161 (11th Cir. 2001) ..........................................................19

*BTG Patent Holdings, LLC v. Bag2Go, GmbH*,
193 F. Supp. 3d 1310 (S.D. Fla. 2016) ................................................14

*Calder v. Jones*,
465 U.S. 783 (1984) ............................................................................13

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
267 U.S. 333 (1925) ............................................................................10

*Carmouche v. Tamborlee Mgmt., Inc.*,
789 F.3d 1201 (11th Cir. 2015) ............................................................6

*Casita, L.P. v. Maplewood Equity Partners L.P.*,
960 So. 2d 854 (Fla. 3d DCA 2007) ..................................................7, 8

*Citicorp Ins. Brokers (Marine), Ltd. v. Charman*,
635 So. 2d 79 (Fla. 1st DCA 1994) ......................................................7

*Consol. Dev. Corp. v. Sherritt, Inc.*,
216 F.3d 1286 (11th Cir. 2000) ..........................................................10

ii

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..................................................................................6, 7

*Del Valle v. Trivago GMBH*,
   No. 19-22619-Civ-Scola, 2020 WL 2733729 (S.D. Fla. May 26, 2020).............................7, 8

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
   593 F.3d 1249 (11th Cir. 2010) ..................................................................14

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988)..................................................................................18, 19

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..................................................................................12, 13

*Glen v. Trip Advisor LLC*,
   No. 19-1809-LPS, 2021 WL 1200577 (D. Del. Mar. 30, 2021) ...............................19

*Gonzalez v. Amazon.com, Inc.*,
   No. 19-23988-Civ-Scola, 2020 WL 2323032 (S.D. Fla. May 11, 2020)........................19

*Gonzalez v. Amazon.com, Inc.*,
   835 F. App'x 1011 (11th Cir. 2021) ...............................................................19

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
   106 F. Supp. 3d 1231 (S.D. Fla. 2015) ..........................................................10, 11

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..................................................................................11

*Kountze v. Kountze*,
   996 So. 2d 246 (Fla. App. 2008)..................................................................8

*Lampkin-Asam v. Volusia Cnty. Sch. Bd.*,
   261 F. App'x 274 (11th Cir. 2008) ...............................................................19

*Licciardello v. Lovelady*,
   544 F.3d 1280 (11th Cir. 2008) ..................................................................13

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) .......................................................... *passim*

*Madara v. Hall*,
   916 F.2d 1510 (11th Cir. 1990) ..................................................................5, 6

*Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*,
   288 F.3d 1264 (11th Cir. 2002) ..................................................................10, 14

*Melgarejo v. Pycsa Pan., S.A.*,
　　537 F. App'x 852 (11th Cir. 2013) .................................................................7, 20

*Mother Doe I v. Al Maktoum*,
　　632 F. Supp. 2d 1130 (S.D. Fla. 2007) ...............................................................11

*Ocheesee Creamery LLC v. Putnam*,
　　851 F.3d 1228 (11th Cir. 2017) ..........................................................................18

*Pathman v. Grey Flannel Auctions, Inc.*,
　　741 F. Supp. 2d 1318 (S.D. Fla. 2010) .................................................................7

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
　　558 F.3d 1210 (11th Cir. 2009) .....................................................................14, 15

*Prunty v. Arnold & Itkin LLP*,
　　753 F. App'x 731 (11th Cir. 2018) ...............................................................7, 8, 9

*Snow v. DirecTV, Inc.*,
　　450 F.3d 1314 (11th Cir. 2006) .........................................................................5, 6

*Taylor v. Moskow*,
　　717 F. App'x 836 (11th Cir. 2017) ........................................................................8

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
　　425 U.S. 748 (1976) .............................................................................................18

*Wagner v. Daewoo Heavy Indus. Am. Corp.*,
　　314 F.3d 541 (11th Cir. 2002) .............................................................................19

*Waite v. AII Acquisition Corp.*,
　　901 F.3d 1307 (11th Cir. 2018) ...........................................................................11

*Walden v. Fiore*,
　　571 U.S. 277 (2014)..............................................................................................12

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
　　No. 8:12-cv-755-T-26TBM, 2012 WL 5830590 (M.D. Fla. Nov. 16, 2012),........................10

## STATUTES, RULES, AND REGULATIONS

22 U.S.C. § 6023(13) (2018) .................................................................15, 16, 17, 18

22 U.S.C. §§ 6081 *et seq.* (2018) ..................................................................1, 17

22 U.S.C. § 6082(a) (2018)...................................................................................15

Fla. Stat. § 48.193 (2020)................................................................................ *passim*

Fed. R. Civ. P. 4(k) ...........................................................................................................1, 6, 11

Fed. R. Civ. P. 12(b)(2) and (6) ....................................................................................................1

## OTHER AUTHORITIES

*Cuban Liberty and Democratic Solidarity Act: Hearings Before the Subcomm. on*
*W. Hemisphere and Peace Corps Affs. of the S. Comm. on Foreign Rels.*,
104th Cong. 152 (1995) (statement of Ignacio E. Sanchez) .....................................................18

Jason Rotstein, The Legacy of the Libertad Act: Defeating Title III Claims and
Protecting International Comity, *Harv. Int'l Law Journal Online*,
https://harvardilj.org/2019/11/the-legacy-of-the-libertad-act-defeating-title-iii-
claims-and-protecting-international-comity/ (last accessed Apr. 28, 2021) ...........................18

U.S. Gov't Accountability Off., GAO-17-201, Cuba: U.S. Policy Changes
Increased Engagement with Private Sector 9, 50 (2016) .........................................................16

Defendants WPP plc ("WPP"), Young & Rubicam LLC ("Y&R"), and BCW LLC ("BCW") (collectively, "WPP Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6).

## PRELIMINARY STATEMENT

Plaintiffs sue under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081 *et seq.* (2018), to recover the value of the "RRHSC Property," a cigarette factory allegedly confiscated by the Cuban government in 1961. ECF No. 82 ("Am. Compl.") ¶¶ 1–3. Plaintiffs do not claim that any WPP Defendant has—or has ever had—any ownership interest in or control over the RRHSC Property, or has ever used the RRHSC Property. Rather, the amended complaint contends that WPP Defendants were hired to "market and publicize" products made by Defendants Imperial Brands plc ("Imperial") and/or Corporación Habanos S.A. ("Habanos") at the RRHSC Property. *Id.* ¶ 11. In particular, the amended complaint alleges that WPP Defendants have managed the YouTube, Twitter, and Instagram "portals" for Imperial and/or Habanos since 2017. *Id.* ¶ 37. Plaintiffs seek to hold all three WPP Defendants liable for three times the value of the RRHSC Property based on this alleged marketing and social media activity. This claim must be dismissed with prejudice.

This motion addresses two fatal defects in the amended complaint:[1]

*First*, the exercise of personal jurisdiction over WPP Defendants is improper, under either Florida's long-arm statute or Federal Rule of Civil Procedure 4(k). All WPP Defendants are incorporated and headquartered outside of Florida. Plaintiffs do not allege that the purportedly unlawful marketing activities for Imperial and/or Habanos were undertaken by WPP Defendants'

---

[1] In the joint motion to dismiss filed concurrently, WPP Defendants, Imperial, and Habanos identify multiple additional grounds for dismissal, including that Plaintiffs lack Article III standing and that Plaintiffs fail to state a Title III claim. ECF No. 91.

Florida-based employees—indeed, declarations from the Chief Financial Officers ("CFOs") of BCW and VMLY&R (the business name under which Y&R currently operates) confirm they were not.  *See* Decl. of Gerald Lombardo ("BCW Decl.") ¶¶ 14–15; Decl. of Jim Bellinghausen ("VMLY&R Decl.") ¶¶ 6, 16–17.  Despite being on notice of this fatal defect since at least the filing of WPP Defendants' motion on February 26, 2021, Plaintiffs' amended complaint contains no new allegations connecting WPP Defendants or their marketing activities to Florida.[2]

Plaintiffs suggest that Y&R or BCW must have subsidiaries that performed the work at issue.  *See* Am. Compl. ¶ 32.  Yet this is guesswork; Plaintiffs apparently chose to conduct no fact investigation regarding which corporate entities actually performed marketing services for Habanos.  In the two attached declarations, BCW and VMLY&R's CFOs identify two Spanish entities—VMLY&R Madrid S.L. and BCW S.L. (Spain)—as indirect subsidiaries of WPP that performed marketing activities for Habanos.  BCW Decl. ¶ 21; VMLY&R Decl. ¶ 24.  Neither Spanish subsidiary has been owned by either BCW or Y&R during the trafficking period alleged in the amended complaint.  BCW Decl. ¶ 25; VMLY&R Decl. ¶ 28.  Moreover, Plaintiffs still fail to allege that any of the marketing activity targeted Florida consumers, which is not surprising given that Habanos products cannot be sold legally in the U.S.  Thus, as was the case with the original complaint, the only connection between this case and the forum is that six of the seven plaintiffs reside here, which is insufficient to establish personal jurisdiction.

---

[2] Because Plaintiffs still do not tie any WPP Defendants' employees or activities in Florida, or anywhere else in the United States, to any of the relevant marketing activity for Habanos and/or Imperial, the Court may dismiss Plaintiffs' claim as to WPP, Y&R, and BCW without relying on either of the two declarations attached to this motion.  Similarly, this Court may dismiss the amended complaint without considering the declarations and exhibits submitted in support of co-defendant Habanos's motion to dismiss.

*Second*, the vaguely-described marketing services allegedly undertaken by WPP Defendants do not constitute "trafficking" under any reasonable understanding of the term. Title III was not intended to reach marketing activities by entities that have no ownership or other interest in confiscated property and that have made no use of confiscated property. Applying Title III to alleged marketing activities would be contrary to the statutory text and Congress's intent. Extending Title III to marketing would implicate constitutional concerns, as it would amount to the regulation of speech protected by the First Amendment. WPP Defendants' alleged marketing activity is not proscribed by Title III, and this Court should avoid any overly broad interpretation of the statute that would impose severe monetary penalties on protected speech.

These defects are the same as those identified in WPP Defendants' original motion to dismiss. *See* ECF No. 74. Plaintiffs failed to rectify—or even address—any of these issues in the amended complaint. This continued failure to allege essential facts indicates that Plaintiffs cannot state a claim. Moreover, even if WPP's two Spanish subsidiaries were named as defendants in future litigation, the Court could not exercise personal jurisdiction over two foreign subsidiaries entirely owned by a foreign parent company with no substantial activity in the forum state or the U.S. Allowing Plaintiffs any further amendment to their claims would be futile.

For the foregoing reasons, WPP Defendants respectfully request that the Court grant this motion to dismiss with prejudice.

## **BACKGROUND**

On August 6, 2020, members of the Rodriguez family ("Plaintiffs") commenced this suit in the U.S. District Court for the Southern District of Florida. ECF No. 1. On February 26, 2021, WPP Defendants and Imperial filed both separate and joint motions to dismiss, arguing that Plaintiffs' complaint must be dismissed for a multitude of reasons, including lack of personal

jurisdiction and lack of standing.  ECF Nos. 72–74.  Rather than oppose the motions, Plaintiffs filed an amended complaint.  ECF Nos. 82, 84.

The amended complaint alleges that Plaintiffs own a claim to real property—the RRHSC Property—confiscated by Cuba's Castro government in 1961.  Am. Compl. ¶¶ 3–4, 46.  According to Plaintiffs, Imperial purchased in 2007 an indirect interest in Habanos together with "ownership interests" in other non-party entities (collectively referred to, with Habanos, as the "Cuban Joint Ventures").  *Id.* ¶¶ 5–6, 30, 50.  Beginning in January 2008, Habanos and the other Cuban Joint Ventures allegedly used the RRHSC Property to produce and distribute hand-rolled cigars.  *Id.* ¶¶ 8–9, 51–52.[3]  Plaintiffs allege that Imperial and/or Habanos retained WPP as an "agent," along with WPP's U.S.-based subsidiaries Y&R and BCW, to "market and publicize" Habanos products "since at least 2010."  *Id.* ¶¶ 11, 13.  Neither the original complaint nor the amended complaint describes the scope or form of the alleged marketing activities, except to allege that "no later than 2017," Y&R and BCW set up "portals" on social media websites, Twitter, YouTube, and Instagram.  *Id.* ¶ 12.  Plaintiffs continue to offer no factual details concerning the alleged "portals," their accessibility, or their use in advertising Habanos products.

Possibly in response to the fact that neither Y&R nor BCW has performed any work for Imperial or Habanos, VMLY&R Decl. ¶¶ 16–17, BCW Decl. ¶¶ 14–15, the amended complaint adds one vague reference to the existence of possible subsidiaries of Y&R and BCW.  Am. Compl. ¶ 32 & n.23.  Plaintiffs make no further allegation either identifying the new subsidiaries or specifying any work they performed.  Plaintiffs allege only that "[b]eginning in 2016," marketing

---

[3] Plaintiffs assert, "[u]pon information and belief," that Habanos and non-party Tabacuba have used the RRHSC Property since 2010 and "likely for many years before that."  Am. Compl. ¶ 51.

responsibility "switched" from non-party Ogilvy,[4] another WPP subsidiary, to Y&R.  *Id.* ¶ 56.
"[B]eginning in 2019," marketing "was again switched to still another WPP subsidiary, BCW,"
which used the same e-mail address that Y&R had allegedly used:  press.habanos@yr.com.  *Id.*
Plaintiffs then allege that Y&R and BCW "each continues to have and to acquire [its] own
subsidiaries."  *Id.* ¶ 32.  By engaging in these undefined advertising activities—apparently either
directly or through unnamed subsidiaries—Plaintiffs claim that all three WPP Defendants
"cause[d], direct[ed] [or] participate[d] in, or profit[ed] from, trafficking" in Habanos products
"manufactured at, stored in, or distributed from the confiscated RRHSC Property" in violation of
the Helms-Burton Act.  *Id.* ¶¶ 31, 34–35, 37.

Like the original complaint, the amended complaint does not identify any connection
between WPP Defendants and Florida.  Though Y&R and BCW have "offices in Miami-Dade,"
*id.* ¶¶ 26–27, Plaintiffs do not assert that Y&R or BCW did anything in Florida relevant to this
suit.  Nor do Plaintiffs suggest any advertising was targeted toward—or even seen by—Florida
residents.  Plaintiffs claim they suffered harm in Florida only because most of them reside there.
*Id.* ¶ 14.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO SUFFICIENTLY ALLEGE PERSONAL JURISDICTION OVER WPP, Y&R, AND BCW

A motion to dismiss for lack of personal jurisdiction must be granted unless the plaintiff
"establish[es] a prima facie case of personal jurisdiction over a nonresident defendant."  *Madara
v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  A district court accepts facts alleged in the

---

[4] Plaintiffs' allegations regarding Ogilvy are irrelevant.  Plaintiffs' own allegations are that Ogilvy
stopped any Cuba-related marketing work in 2015, Am. Compl. ¶ 56, and thus these actions are
beyond the statute of limitations for the Helms-Burton Act.  Moreover, Ogilvy is a distinct
corporation that Plaintiffs have now twice declined to name as a defendant in this suit.  The Court
should disregard whatever noise Plaintiffs attempt to make concerning Ogilvy.

plaintiff's complaint as true only if they do not conflict with the defendant's affidavits and are not "vague and conclusory allegations." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). When presented with a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, a district court should address the personal jurisdiction question before addressing whether plaintiffs state a claim. *Madara*, 916 F.2d at 1514.

Florida's long-arm statute provides for two types of personal jurisdiction: (1) specific jurisdiction, in which the suit "arise[s] out of or relate[s] to a defendant's contacts with Florida," and (2) general jurisdiction, in which the defendant "engages in 'substantial and not isolated activity' in Florida" that is unrelated to the present matter. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(1)-(2) (2020)). When a foreign defendant is without sufficient contacts in any state, Federal Rule of Civil Procedure 4(k) "permits the exercise of personal jurisdiction over [these] defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole." *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir. 1999).

Plaintiffs correctly do not claim that general jurisdiction is proper as to WPP Defendants. Plaintiffs incorrectly argue, however, that the Court can exercise specific jurisdiction over all defendants under section 48.193(1)(a) of Florida's long-arm statute, Am. Compl. ¶ 42, or in the alternative, under Federal Rule of Civil Procedure 4(k), *id.* ¶ 43. The exercise of specific jurisdiction under Florida's long-arm statute or under Rule 4(k) would be improper, and the amended complaint should be dismissed with prejudice as to all WPP Defendants.

A.     **Plaintiffs Correctly Do Not Assert That WPP Defendants Are Subject To General Jurisdiction In Florida**

General jurisdiction is appropriate only if a corporation's place of incorporation or principal place of business is located in the forum or, in "exceptional" cases, where its operations

6

are "so substantial" that personal jurisdiction is proper. *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014); *see also Del Valle v. Trivago GMBH*, No. 19-22619-Civ-Scola, 2020 WL 2733729, at *3 (S.D. Fla. May 26, 2020) ("It is clear that a very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida.") (quoting *Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1323 (S.D. Fla. 2010)).

WPP Defendants are not subject to general jurisdiction in Florida because—as the amended complaint acknowledges—no WPP Defendant has its place of incorporation or principal place of business in the state. *See* Am. Compl. ¶¶ 26–27 (alleging Y&R and BCW are incorporated in Delaware with their principal places of business in New York); *id.* ¶ 25 (alleging WPP "is a limited liability company incorporated in the Bailiwick of Jersey"). Nor do Plaintiffs offer any exceptional circumstances that could subject WPP, Y&R, or BCW to general jurisdiction in Florida. Thus, Plaintiffs rightly do not seek to assert general jurisdiction over any WPP Defendant.

**B.** **Plaintiffs Fail To Establish Specific Jurisdiction Over WPP, Y&R, Or BCW Under Florida's Long-Arm Statute**

1. *Florida's Long-Arm Statute Does Not Authorize Specific Jurisdiction Because None Of The Allegedly Tortious Activities Took Place In Florida*

Plaintiffs allege that the exercise of specific jurisdiction over WPP Defendants is proper under section 48.193(1)(a) of Florida's long-arm statute. Am. Compl. ¶ 42. Jurisdiction is not appropriate under section 48.193(1)(a)(2) unless the cause of action "aris[es] from" the defendant's "[c]ommitting a tortious act within this state." Fla. Stat. § 48.193(1)(a). Under Florida law, a cause of action "aris[es] from" conduct in the state when there is "a direct affiliation, nexus, or substantial connection" between the cause of action and the defendant's activity. *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (internal quotation marks omitted) (quoting *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)). And, to satisfy section 48.193(1)(a)(2), the Florida long-arm statute "expressly requires that the

tort be committed in Florida." *Prunty v. Arnold & Itkin LLP*, 753 F. App'x 731, 735 (11th Cir. 2018) (quoting *Casita, L.P. v. Maplewood Equity Partners L.P.*, 960 So. 2d 854, 857 (Fla. 3d DCA 2007)).

Last year in *Del Valle v. Trivago GMBH*, another court in this district declined specific jurisdiction over defendants sued under the Helms-Burton Act. 2020 WL 2733729, at *3. The plaintiffs in that case argued that the defendants, Expedia, Inc. and Booking.com, unlawfully rented hotel rooms at a property confiscated by the Cuban government. *See id.* Plaintiffs claimed that personal jurisdiction was appropriate—and that the tort occurred in Florida—because the plaintiffs resided in Florida and websites promoting the rentals were accessible in Florida. *See id.* The court disagreed, finding that the alleged trafficking occurred at the confiscated property in Cuba, not through a website. *See id.* The court rejected the plaintiffs' argument that the tort was committed in Florida because the plaintiffs resided there. *See id.* It accordingly dismissed the defendants from the suit for lack of personal jurisdiction. *See id.* at *5.

Plaintiffs' argument is identical to the claim rejected in *Del Valle*: Plaintiffs allege that tortious acts occurred in Florida because several plaintiffs reside in Florida. Am. Compl. ¶¶ 14, 31, 34–35. Yet "the existence of an injury within Florida . . . is insufficient to support jurisdiction over an out-of-state tortfeasor." *Taylor v. Moskow*, 717 F. App'x 836, 841 (11th Cir. 2017) (quoting *Kountze v. Kountze*, 996 So. 2d 246, 252 (Fla. App. 2008)). As in *Del Valle*, the amended complaint's core allegation is that the Cuban government allegedly confiscated Plaintiffs' property *in Cuba*. Am. Compl. ¶ 3. No tort occurred in Florida. *See Del Valle*, 2020 WL 2733729, at *3.

Plaintiffs attempt to connect their claim to Florida because Y&R and BCW have "offices in Miami-Dade" and allegedly set up "'official' portals" for Habanos on social media platforms. Am. Compl. ¶¶ 26–27, 55. Yet Plaintiffs' amended complaint still does not allege that Y&R,

BCW, or any of Y&R or BCW's unnamed subsidiaries performed any work for Imperial or Habanos in Miami. Nor could they: None of these entities has done any work for either Habanos or Imperial in the U.S., let alone in Florida or with Florida-based employees. *See* VMLY&R Decl. ¶¶ 16–18; BCW Decl. ¶¶ 14–16.[5] Further, Plaintiffs allege neither a connection between WPP and Florida nor any direct activities relevant to this suit that were undertaken by WPP. Y&R and BCW's limited business operations in Florida are unrelated to any alleged work with Habanos or Imperial and thus, are insufficient to establish jurisdiction under the Florida long-arm statute.

Moreover, the minimal allegations regarding WPP Defendants' marketing activities do not show that a "tort [was] committed in Florida," as required to establish jurisdiction under section 48.193(1)(a)(2). *Prunty*, 753 F. App'x at 735. Plaintiffs fail to allege that WPP Defendants' online advertising activities specifically targeted Florida or Floridians, or even that Floridians accessed or saw the allegedly unlawful marketing. Plaintiffs claim only that Y&R and BCW assisted in setting up "portals" for Imperial to market Habanos products on Twitter, YouTube, and Instagram. *See* Am. Compl. ¶ 12. But the listed social media platforms can be accessed around the world. Florida courts recognize that a tort does not occur in the state just because the defendant's online activity is accessible in Florida. *See Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *2 (M.D. Fla. Sept. 21, 2017); *cf. Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (arguing that running a website "should not open a defendant up to personal jurisdiction in every spot on the planet where that . . . website is accessible").

---

[5] Rather, two Spanish indirect subsidiaries of WPP—VMLY&R Madrid S.L. and BCW S.L. (Spain)—previously had contracts to perform marketing for Habanos; neither of those two corporations has been in Y&R or BCW's ownership chains since 2003, well before the period relevant to Plaintiffs' claims. VMLY&R Decl. ¶¶ 27–28; BCW Decl. ¶¶ 24–25.

Finally, Plaintiffs continue to allege that BCW used the same e-mail address as Y&R when it began marketing Habanos products in 2019.  Am. Compl. ¶ 56.  As WPP Defendants argued previously, it is unclear how this fact—even if true—is relevant to jurisdiction.  Plaintiffs never allege that this e-mail address was used by anyone in Florida or sent e-mails that were received by anyone in Florida.  Further, no U.S.-based employees of Y&R or BCW or their subsidiaries had access to send or receive e-mail from this e-mail account.  *See* VMLY&R Decl. ¶ 21.  Thus, Plaintiffs do not and cannot allege that any relevant activity relates to Florida.  They accordingly fail to demonstrate the cause of action "aris[es] from" WPP Defendants' alleged tortious activity as required by section 48.193(1)(a)(2) of the Florida long-arm statute.

2.    *The Allegedly Tortious Activities Of Y&R And BCW Cannot Be Imputed To WPP Under Agency Theory To Establish Jurisdiction*

Plaintiffs' only factual allegation related to WPP is described as "us[ing] or allow[ing] its U.S. subsidiaries to contract for the use of social media 'portals.'"  Am. Compl. ¶ 38.  Yet "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."  *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); *see also Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293–94 (11th Cir. 2000) ("[A]s long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 337 (1925))).  Rather, the jurisdictional contacts of a subsidiary will be imputed to a parent entity only where the parent exercises "day-to-day control of the internal affairs or basic operations of the subsidiary."  *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (quoting *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12-cv-755-T-26TBM, 2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012)).

Plaintiffs allege that WPP has two U.S.-based subsidiaries, Y&R and BCW, which have "offices in Miami-Dade." Am. Compl. ¶¶ 26–27, 31, 34–35. Plaintiffs provide no details about WPP Defendants' corporate relationships or any allegations suggesting WPP exercises day-to-day control over Y&R and BCW. Thus, Y&R and BCW's activities cannot be imputed to WPP. *See Hard Candy, LLC*, 106 F. Supp. 3d at 1241. Because WPP's alleged ownership of the subsidiaries is Plaintiffs' sole basis for personal jurisdiction over WPP, *see* Am. Compl. ¶¶ 31, 38, this provides an independent basis for the dismissal of WPP.

### C. Exercising Jurisdiction Would Violate Defendants' Due Process Rights

Application of section 48.193(1)(a)(2) of the Florida long-arm statute and Rule 4(k) must satisfy due process.[6] *See* Fed. R. Civ. P. 4(k)(2); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). To prove that the exercise of specific jurisdiction affords the defendants their due process rights, the plaintiff must satisfy a three-part test, which examines: "(1) whether the plaintiff's claims 'arise out of or relate to' . . . the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state . . . ; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs cannot satisfy these elements. The application

---

[6] Rule 4(k) applies only when "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2). It could not apply to Y&R or BCW, which are incorporated and have their principal places of business (and accordingly are subject to jurisdiction) in other states. *See* Am. Compl. ¶¶ 26–27 (noting places of incorporation and principal places of business); *see also Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1143 (S.D. Fla. 2007) (declining to exercise jurisdiction under Rule 4(k) when the defendants may have been subject to jurisdiction in the courts of another state). To the extent it applies to WPP, that exercise of jurisdiction is unconstitutional because Plaintiffs fail to allege any minimum contacts between WPP and the United States, as discussed further below.

of personal jurisdiction to WPP Defendants is accordingly unconstitutional and all three defendants must be dismissed.

      1.     *The Alleged Confiscation Of The RRHSC Property Does Not "Arise Out Of Or Relate To" WPP Defendants' Activity*

Due process requires that the allegedly tortious activity must "'arise out of or relate to' at least one of the defendant's contacts with the forum." *Mosseri*, 736 F.3d at 1355; *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014). Although "a strict causal relationship" between a defendant's contacts and the underlying controversy is not "always require[d]," "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Thus, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025 (brackets omitted) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017)). Regardless of whether the plaintiffs are nonresidents or residents of the forum State, specific jurisdiction will be improper where "the forum State, and the defendant's activities there, lack[] any connection to the plaintiffs' claims." *Id.* at 1031 (citing *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781).

As described in Section I.B, Plaintiffs make no allegations connecting any of WPP Defendants' work to Florida. No Florida employees of any of the three companies named are alleged to have worked on the marketing or social media portals at issue.[7] Nor do Plaintiffs

---

[7] VMLY&R Madrid S.L. and BCW S.L. (Spain) do not have U.S. offices and did not perform marketing work for Habanos in the United States. VMLY&R Decl. ¶¶ 25–26; BCW Decl. ¶¶ 22–23.

contend the marketing or social media portals were targeted to Florida.[8]  Plaintiffs' claims accordingly do not arise out of or relate to any of WPP Defendants' contacts with Florida, and exercise of jurisdiction would be unconstitutional.

2.    *There Is No "Purposeful Availment" Because WPP Did Not Have Minimum Contacts With The United States*

Plaintiffs fail to meet the other requirements of due process as to WPP.  To assess purposeful availment, the traditional "minimum contacts" test applies.[9]  Under the "minimum contacts" test, the defendant's contacts must: (1) be "related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum."  *Mosseri*, 736 F.3d at 1357.

Plaintiffs do not plead that WPP has minimum contacts with the U.S.  The amended complaint still fails to explain what WPP does in the U.S. or who performs this work on behalf of WPP in the U.S.  Read liberally, Plaintiffs are perhaps alleging that WPP relied on Y&R and BCW to "conduct marketing and social media campaigns," *see* Am. Compl. ¶ 43, which the declarations prove is false, VMLY&R Decl. ¶ 16; BCW Decl. ¶ 14.  Regardless, Plaintiffs provide no basis to

---

[8] *Ford*'s clarification of the "arise out of or relate to" standard is not intended to address Internet contacts, as the Court states: "None of this is to say that any person using any means to sell any good in a State is subject to jurisdiction there."  *Ford Motor Co.*, 141 S. Ct. at 1028 n.4. Applying *Ford* here is clear:  There was no sale at all in the U.S., let alone in Florida.  And *Ford* had in-state marketing by defendants, which Plaintiffs have not even alleged as to WPP Defendants.  *Ford* does not, then, alter the "arise out of or relate to" analysis concerning WPP Defendants' alleged online marketing campaigns.

[9] There are two tests that courts use to assess purposeful availment: the traditional "minimum contacts" test and the effects test.  *Mosseri*, 736 F.3d at 1356.  The effects test evaluates "the commission of an intentional tort."  *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008) (citing *Calder v. Jones*, 465 U.S. 783, 791 (1984)).  Because the complaint does not allege that WPP intentionally aimed its conduct at the plaintiffs with the goal of causing injury, the effects test does not apply.

13

impute Y&R and BCW's activities to WPP, as discussed above.  Even the most favorable reading of Plaintiffs' complaint does not indicate that any activities were directed toward Florida, let alone that *WPP* took any such actions.  Further, even if Plaintiffs alleged that the online advertising targeted Florida, which they have not, such an allegation would not necessarily by itself be sufficient to show purposeful availment.  *See BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1320 (S.D. Fla. 2016) (refusing to find purposeful availment where the only activities in Florida were "Internet press releases, third party news stories, and social media activities").  Thus, the exercise of personal jurisdiction here would violate WPP's due process rights.[10]

> 3.    *The Exercise Of Specific Personal Jurisdiction Does Not Comport With "Traditional Notions Of Fair Play And Substantial Justice"*

When evaluating "traditional notions of fair play and substantial justice,"[11] relevant factors include: "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies."  *Meier ex rel. Meier*, 288 F.3d at 1276.  This Circuit has emphasized the burden is particularly "unique" for a foreign defendant that is being forced to litigate "in a foreign legal system."  *Oldfield v. Pueblo*

---

[10] In its individual motion to dismiss, co-defendant Imperial argues that no legislative jurisdiction exists over Imperial's foreign business, ECF No. 88, at 17–19, an argument equally relevant to WPP's foreign business.  Because "[t]he inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing . . . personal jurisdiction consistent with due process," *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000), the reasoning in Section II of Imperial's individual motion applies and there is no legislative jurisdiction as to WPP.

[11] Only when the plaintiff has satisfied the first two elements of the due process test does the court consider "traditional notions of fair play and substantial justice."  *Mosseri*, 736 F.3d at 1355 (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

*De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) (quoting *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987)). Here, the exercise of personal jurisdiction over WPP, a foreign entity, would impose an unfair and inappropriate burden on WPP. Aside from its ownership of Y&R and BCW, *see* Am. Compl. ¶ 31, Plaintiffs have not alleged that WPP has any contacts with Florida. There is accordingly a significant burden in forcing WPP to litigate here. *See Oldfield*, 558 F.3d at 1221.

## II. PLAINTIFFS FAIL TO ALLEGE THAT WPP, Y&R, AND BCW UNLAWFULLY "TRAFFICKED" IN CONFISCATED PROPERTY

Plaintiffs fall equally short in alleging that WPP Defendants "traffic[ked]" in any property confiscated by the Cuban government. "[T]rafficking," as defined in 22 U.S.C. § 6023(13) (2018), is an essential element of a Title III claim, 22 U.S.C. § 6082(a) (2018). Because the alleged marketing activity does not constitute trafficking, Plaintiffs' claim must be dismissed.[12]

Trafficking consists of "knowingly and intentionally" committing certain acts with respect to confiscated property without proper authorization. 22 U.S.C. § 6023(13). In particular, Section 6023(13)(A) provides that an entity "traffics" when it:

(i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,

(ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or

(iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person.

---

[12] The joint motion to dismiss filed by all co-defendants demonstrates that WPP Defendants' and Imperial's purported liability flows entirely from the alleged conduct of Habanos—a "Cuban joint venture corporation," Am. Compl. ¶ 24—and/or non-party Tabacuba—"the Cuban tobacco monopoly company," *id.* ¶ 8—which cannot constitute trafficking for which Defendants could be liable.

*Id.* § 6023(13)(A).

Even Plaintiffs distinguish between WPP, Y&R, and BCW and the other Defendants, which they call the "Direct Traffickers." *See* Am. Compl. ¶ 54. According to Plaintiffs, the Direct Traffickers held an ownership interest in, controlled, and used the RRHSC Property in purported violation of Sections 6023(13)(A)(i) and (ii). *Id.* WPP Defendants, however, are not alleged to have leased, managed, controlled, or otherwise have had an interest in the RRHSC Property, 22 U.S.C. § 6023(13)(A)(i), or to have engaged in a commercial activity using or otherwise benefiting from the RRHSC Property, *id.* § 6023(13)(A)(ii). Plaintiffs instead allege that each WPP Defendant "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Twitter, YouTube, and Instagram. Am. Compl. ¶¶ 29–31, 34–35, 57 & nn.20–21, 26.

Plaintiffs offer little more explanation for how WPP Defendants engaged in trafficking prohibited by the Helms-Burton Act. Their theory must be—given the lack of allegations that WPP, Y&R, or BCW caused, directed, or participated in trafficking—that WPP Defendants "profit[ed] from" being hired by Imperial and/or Habanos to market Cuban cigars, *see* Am. Compl. ¶¶ 37, 55–57 (alleging Imperial and/or Habanos and/or Tabacuba decided to "retain" WPP, Y&R, and BCW), a theory disproven by declarations demonstrating that no WPP Defendant performed the work in question, BCW Decl. ¶ 18; VMLY&R Decl. ¶ 20. Under Plaintiffs' theory, any company receiving money from alleged "Direct Traffickers" in connection with those entities' business would be liable for trafficking under the Helms-Burton Act.[13]

---

[13] In an attempt to distort the statute's definition of "trafficking," Plaintiffs rely on a completely distinct, and irrelevant, regulatory regime known as the Cuban Assets Control Regulations ("CACR"). Am. Compl. ¶ 33. The CACR, initially promulgated by the Office of Foreign Assets Control ("OFAC") over 30 years before Helms-Burton was enacted, determines which activities U.S. companies may engage in with Cuban persons or entities. U.S. Gov't Accountability Off., GAO-17-201, Cuba: U.S. Policy Changes Increased Engagement with Private Sector 9, 50 (2016). Notably, the CACR does not even use the term "trafficking," a concept for which Congress first created liability several decades after the CACR went into effect. Plaintiffs have incorrectly

Title III cannot be read so broadly. Plaintiffs' definition of trafficking would impose liability on a virtually limitless variety of actors. For example, Plaintiffs' theory would encompass, among others, journalists who—knowing that an article about a purportedly confiscated property will generate "clicks" and profits for their online magazine or newspaper—write stories about Habanos cigars; or organizers of cigar conventions in Europe and Asia at which Habanos pays a fee to display its products; or the owners of countless tobacco shops and cigar bars from South America to Australia that may keep a few boxes of Habanos products on their shelves. Each of these reporters, internet media companies, or business owners would have—under Plaintiffs' theory—profited from Habanos' alleged use of the confiscated property to manufacture and distribute cigars. This is not what Congress intended nor what the statute says.

When it enacted Helms-Burton, Congress focused on foreign investment and direct dealing in confiscated property. Congress therefore defined trafficking to include the sale, purchase, or holding of an interest in confiscated property. The statutory findings in Title III reflect Congress's concern that "[t]he Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property" confiscated from U.S. nationals and "*this 'trafficking'* . . . undermines the foreign policy of the United States." 22 U.S.C. § 6081(5)–(6) (emphasis added). The findings equate trafficking with investment and related ownership interests in the confiscated property.

Section 6023(13)(A)(iii) was intended to ensure that corporations could not evade liability for their investments in confiscated property through the use of joint ventures or other corporate structuring—not to dramatically expand the scope of trafficking to companies that have no interest

---

conflated Title III of the Helms-Burton Act with OFAC regulations for imports and exports of goods and services. The CACR has nothing to do with this case.

in or control over and that make no use of confiscated property.  *See* 22 U.S.C. § 6023(13)(A)(iii) (noting the provision was limited to "trafficking (as described in clause (i) or (ii)").  Indeed, during Senate hearings before the passage of the Helms-Burton Act, one of the drafters of the legislation[14] testified that Section 6023(13)(A)(iii) "makes it clear . . . to the courts that Congress' intent is that intermediate shell subsidiaries not be created to avoid liability. . . .  Therefore, it takes up the chain of a parent company . . . which is not doing it directly but through some subsidiaries."  *Cuban Liberty and Democratic Solidarity Act: Hearings Before the Subcomm. on W. Hemisphere and Peace Corps Affs. of the S. Comm. on Foreign Rels.*, 104th Cong. 152 (1995) (statement of Ignacio E. Sanchez).  Plaintiffs' reading of Section 6023(13)(A)(iii) would go beyond such theories of vicarious liability to draw in entities with no investment in or connection to the confiscated property.  This cannot be correct.

Beyond impermissibly distorting the statutory language and intent of Congress, holding advertising companies liable for marketing activities would implicate constitutional concerns. Advertising is entitled to First Amendment protections.  *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 760–70 (1976) (rejecting a First Amendment exception for commercial speech); *Ocheese Creamery LLC v. Putnam*, 851 F.3d 1228, 1234 (11th Cir. 2017) ("Commercial speech . . . is undeniably entitled to substantial protection under the First and Fourteenth Amendments of the United States Constitution." (quotation marks omitted)).  Under the doctrine of "constitutional avoidance," "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such

---

[14] *See* Jason Rotstein, The Legacy of the Libertad Act: Defeating Title III Claims and Protecting International Comity, *Harv. Int'l Law Journal Online*, https://harvardilj.org/2019/11/the-legacy-of-the-libertad-act-defeating-title-iii-claims-and-protecting-international-comity/ (last accessed Apr. 28, 2021).

problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). This Court should not interpret the Helms-Burton Act to impose regulations on speech, particularly when there is no indication that Congress intended the statute to cover such activity. The Court should accordingly conclude that WPP Defendants have not "trafficked" in the RRHSC Property.

## III. PLAINTIFFS' AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

A district court has the discretion to dismiss a complaint with prejudice where there (1) there has been "repeated failure to cure deficiencies" by prior amendments; (2) "where allowing amendment would cause undue prejudice to the opposing party;" or (3) "where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). When an amended complaint merely repeats previously alleged claims, the district court may regard any amendment as futile. *See, e.g.*, *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 276 (11th Cir. 2008) (affirming the district court's dismissal with prejudice where the second amended complaint repeated claims already made in prior complaints). District courts need give a plaintiff only one opportunity to amend a complaint to state a claim. *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). Multiple Helms-Burton claims, litigated both in the Eleventh Circuit and elsewhere, have been dismissed with prejudice after the district court determined that further amendment of the complaint was futile. *See, e.g.*, *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-Civ-Scola, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020), *aff'd*, 835 F. App'x 1011, 1012 (11th Cir. 2021); *Glen v. Trip Advisor LLC*, No. 19-1809-LPS, 2021 WL 1200577, at *9 (D. Del. Mar. 30, 2021).

Plaintiffs have already amended their complaint in an attempt to allege personal jurisdiction and state a claim for relief. Indeed, they did so with the benefit of first previewing the

motions to dismiss and declarations filed by WPP Defendants and Imperial. ECF Nos. 71–72, 74. Yet Plaintiffs failed to meaningfully respond to the previously-identified factual deficiencies, as set forth above. Plaintiffs only vaguely addressed personal jurisdiction by implying that Y&R and BCW may own subsidiaries who may have done the work—but failed to name the subsidiaries, identify the work performed, or provide any details about the relationship to Y&R or BCW. Plaintiffs added no allegations to connect the defendants or the claim to Florida; to describe the allegedly unlawful marketing work; or to suggest that WPP is responsible for the acts of Y&R or BCW. Plaintiffs' failure to add any allegations on these critical points is both fatal to their claim and indicates they have no relevant allegations that would state a claim.

Even if the Court were inclined to permit Plaintiffs another amendment to add as new defendants the two Spanish entities that worked with Habanos, such an amendment would be futile because the Court has no jurisdiction over VMLY&R Madrid S.L. or BCW S.L. (Spain). Both entities are incorporated and headquartered abroad; the employees who performed work for Habanos were located abroad; and neither entity has an office in the U.S. BCW Decl. ¶¶ 22–23; VMLY&R Decl. ¶¶ 25–26. As such, there is no connection to Florida and no basis for this Court's jurisdiction. *See Mosseri*, 736 F.3d at 1355 (holding that due process permits jurisdiction when claims "arise out of or relate to" contacts with the forum); *Melgarejo*, 537 F. App'x at 860 (determining that Florida long-arm statute section 48.193(1)(a)(2) requires "a 'direct affiliation,' 'nexus,' or 'substantial connection'" between the cause of action and the defendant's activity). Because amendment is futile, the Court should dismiss the amended complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the amended complaint against WPP Defendants with prejudice.

## REQUEST FOR HEARING

This case raises novel and complex issues of law, and WPP Defendants accordingly request a hearing. The joint brief submitted concurrently by WPP Defendants, Imperial, and Habanos also includes a request for hearing, and WPP Defendants are amenable to holding a combined hearing on both the joint motion to dismiss and this separate motion to dismiss.

Date: April 28, 2021

*s/Naim S. Surgeon*

NAIM S. SURGEON
Florida Bar No. 101682
E-Mail: naim.surgeon@akerman.com
PEDRO FREYRE
Florida Bar No. 192140
E-Mail: pedro.freyre@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 982-5507
Fax: (305) 374-5095

CHRISTOPHER DAVIES (*pro hac vice*)
E-Mail: christopher.davies@wilmerhale.com
JESSICA LUTKENHAUS (*pro hac vice*)
E-Mail: jessica.lutkenhaus@wilmerhale.com
ASHLEY MCLAUGHLIN LEEN (*pro hac vice*)
E-Mail: ashley.leen@wilmerhale.com
**WILMER CUTLER PICKERING HALE
    AND DORR LLP**
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Defendants WPP PLC, YOUNG &
RUBICAM LLC, and BCW LLC*

# DECLARATION OF GERALD LOMBARDO IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS  THE COMPLAINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LUIS MANUEL RODRIGUEZ,
MARIA TERESA RODRIGUEZ, a/k/a
MARIA TERESA LANDA,
ALFREDO RAMON FORNS,
RAMON ALBERTO RODRIGUEZ,
RAUL LORENZO RODRIGUEZ,
CHRISTINA CONROY, and
FRANCISCO RAMON RODRIGUEZ,

         Plaintiffs,

v.

IMPERIAL BRANDS PLC,
CORPORACIÓN HABANOS, S.A.,
WPP PLC, YOUNG & RUBICAM LLC,
and BCW LLC,

         Defendants.

Case No.: 1:20-cv-23287-DPG

**DECLARATION OF GERALD LOMBARDO IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

I, Gerald Lombardo, hereby declare under penalty of perjury the truth of the following statements based upon personal knowledge and knowledge gained from the review of corporate records of BCW LLC ("BCW" or the "Company") and from discussions with others with such knowledge:

1.  I am an adult and competent to testify to the matters below.  I make this Declaration to set forth discrete facts relevant to BCW's motion to dismiss the March 22, 2021 Amended Complaint ("Amended Complaint") filed in the above-captioned litigation.

2.  I am the Chief Financial Officer ("CFO") at BCW.  I have knowledge of the matters set forth herein based upon my position at BCW.

3.  To the extent information is not based on first-hand knowledge, such information was gathered by: i) conferring with a subject matter expert within the Company; and/or ii) reviewing BCW business records stored in our financial systems.

4.  BCW is a corporation organized under the laws of Delaware and with its headquarters in New York, New York.

5.  BCW is a U.S.-based indirect subsidiary of WPP plc, which is a co-defendant in the above-captioned litigation.

6.  The name and brand BCW are also used by several distinct and legally separate subsidiaries of WPP plc that operate outside of the U.S.  These distinct companies offer communications services to their customers in, for example, Latin America, Europe, the Middle East, and Asia-Pacific.

7.  None of the distinct, non-U.S. corporate entities that use the BCW name and brand has been named as a defendant in the above-captioned litigation.  The information that I provide in this Declaration applies to BCW, the company for which I serve as CFO, in support of BCW's motion to dismiss.

### BCW's Minimal Contacts in South Florida

8.  BCW has about 3,489 employees across the U.S. as of January 2021; about 8 of those employees work in Miami, Florida.  Thus, Miami accounts for less than 1 percent of the Company's nationwide headcount.

9.  Other than the Miami office, BCW has no other office in South Florida.

10. By contrast, about 647 BCW employees sit in the New York headquarters, including the BCW Chief Executive Officer, CFO (myself), and Chief People Officer.  Thus, New York accounts for approximately 20 percent of the Company's U.S. total headcount.

11. In 2020, BCW's Miami office accounted for less than 1 percent of the Company's total revenue.

12. By contrast, the New York office accounted for about 30 percent of BCW's total U.S. revenue in 2020.

### BCW in the United States Performed No Work for Habanos or Imperial

13. In order to prepare this Declaration, I reviewed BCW's general ledger system and financial reporting system to determine whether either Corporación Habanos S.A. ("Habanos") or Imperial Brands plc ("Imperial") was set up in the system as a current or former client and, if so, which BCW office performed work for either company.

14. I also queried our general ledger system and financial reporting system to confirm whether BCW Miami had ever had Habanos or Imperial as a client.  BCW Miami did not provide service to either Habanos or Imperial.  BCW's Miami office has not been paid by Habanos or Imperial.

15. If a U.S. office of BCW had worked for a client, that client would need to be set up in these financial systems, even if invoicing were undertaken by another office or even by some other WPP-affiliated company. Thus, I am confident that BCW's Miami office did not perform the work at issue in the Amended Complaint in the above-captioned litigation.

16. Similarly, for BCW's offices in the U.S., I used our general ledger system and financial reporting system to confirm that BCW has not had Habanos or Imperial as a client. Nor has BCW received any revenue in the U.S. from Habanos or Imperial.

17. Finally, with respect to the more general topic of marketing services for products made in or imported from Cuba, my review of our general ledger system and our financial reporting system did not show any work related to marketing any type of products from Cuba. To arrive at this conclusion, I reviewed the descriptions of the time entries by employees for the work done, seeking to identify any references to Cuba.

18. The conclusions above are based on financial data that goes back more than a decade to 2010. While BCW is the result of two companies that merged in 2018, our general ledger system and financial reporting system contain data from both legacy companies. Thus, I am confident that, from 2010 to present, BCW has not performed work in the U.S. for Habanos or Imperial.

**Prior Marketing Work for Habanos Performed by Distinct Foreign Corporation in Spain**

19. I am aware that Plaintiffs filed the Amended Complaint after reading my initial Declaration in which I stated that we have confirmed that BCW did not perform the relevant marketing work for Habanos or Imperial. In fact, Plaintiffs quote from my initial Declaration for the correct proposition that the name and brand BCW are also used by several distinct and legally separate subsidiaries of WPP plc that operate outside of the United States.

20. Possibly in response to this fact, Plaintiffs now speculate in their Amended Complaint that marketing work for Habanos and/or Imperial must have been performed by a subsidiary of Y&R or BCW. Am. Compl. ¶ 32. However, Plaintiffs' speculation is not correct.

21. During my inquiry into this matter, I have been able to confirm that a distinct foreign corporation called "BCW S.L. (Spain)" (hereinafter "BCW of Spain") previously had Habanos as a client.

22. BCW of Spain is incorporated pursuant to the laws of Spain and is headquartered in Spain. This foreign corporation has its own employees who work out of offices in Madrid and Barcelona, Spain. It has no offices in the United States.

23. BCW of Spain is not a direct or indirect subsidiary of the U.S.-headquartered company BCW. BCW of Spain is not currently found anywhere in the corporate chain of ownership for BCW.

24. Almost 20 years ago, BCW undertook a corporate restructuring in which Burson Marsteller S.L. of Spain, which is now known as BCW of Spain, was moved out from BCW's corporate chain. I have recently reviewed the tax documents dated 2003 that were part of this corporate restructuring.

25. Thus, it is my understanding that between 2003 and the present, Burson Marsteller of Spain and its successor BCW of Spain have existed as an indirect subsidiary of WPP plc. It is also my understanding that BCW of Spain flows up a corporate chain of ownership that leads to WPP plc without ever touching the U.S.-headquartered company BCW or its separate corporate chain. Thus, since 2003, BCW of Spain has not been a subsidiary or parent of BCW.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Executed on April 28, 2021, in New York, New York.

Gerald Lombardo

# DECLARATION OF JIM BELLINGHAUSEN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS  THE COMPLAINT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LUIS MANUEL RODRIGUEZ,
MARIA TERESA RODRIGUEZ, a/k/a
MARIA TERESA LANDA,
ALFREDO RAMON FORNS,
RAMON ALBERTO RODRIGUEZ,
RAUL LORENZO RODRIGUEZ,
CHRISTINA CONROY, and
FRANCISCO RAMON RODRIGUEZ,

        Plaintiffs,

v.

IMPERIAL BRANDS PLC,
CORPORACIÓN HABANOS, S.A.,
WPP PLC, YOUNG & RUBICAM LLC,
and BCW LLC, a/k/a BURSON COHN &
WOLFE LLC,

        Defendants.

Case No.: 1:20-cv-23287-DPG

**DECLARATION OF JIM BELLINGHAUSEN IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

I, Jim Bellinghausen, hereby declare under penalty of perjury the truth of the following statements based upon personal knowledge and knowledge gained from the review of corporate records of VML, LLC and Young & Rubicam LLC ("Y&R"), d/b/a VMLY&R ("VMLY&R" or the "Company") and from discussions with others with such knowledge:

1. I am an adult and competent to testify to the matters below.  I make this Declaration to set forth discrete facts relevant to Y&R's motion to dismiss the March 22, 2021 Amended Complaint ("Amended Complaint") filed in the above-captioned litigation.

2. I am the North American Chief Financial Officer ("CFO") at VMLY&R.  I have knowledge of the matters set forth herein based upon my position at VMLY&R.

3. To the extent information is not based on first-hand knowledge, such information was gathered by: i) conferring with a subject matter expert within the Company; and/or ii) reviewing VMLY&R business records and public information.

1

4. Y&R is a corporation organized under the laws of Delaware and with its headquarters in New York, New York.

5. Y&R is a U.S.-based indirect subsidiary of WPP plc, which is a co-defendant in the above-captioned litigation.

6. Y&R and VML, LLC began doing business as VMLY&R in November 2018. Although the companies remain separate legal entities, I oversee both in my role at VMLY&R.

7. The name and brand Y&R are also used by several distinct and legally separate subsidiaries of WPP plc that operate outside of the U.S. These distinct companies offer marketing services to their customers in, for example, Latin America, Europe, and Asia.

8. None of the distinct, non-U.S. corporate entities that use the Y&R name and brand has been named as a defendant in the above-captioned litigation. The information that I provide in this Declaration applies to VMLY&R, the business for which I serve as CFO, in support of Y&R's motion to dismiss.

### VMLY&R's Minimal Contacts in South Florida

9. VMLY&R has about 1,950 employees across the U.S. as of the end of 2020; about 119 of those employees work in Miami, Florida. Thus, Miami accounts for approximately 6 percent of VMLY&R's nationwide total.

10. Other than the Miami office, VMLY&R maintains a regional group in Miami to oversee its Latin American operations. This group had fewer than 10 employees at the end of 2020.

11. By contrast, about 636 VMLY&R employees sit in VMLY&R's New York office. Thus, New York accounts for approximately 32 percent of the Company's nationwide total headcount.

12. In 2020, VMLY&R's Miami office accounted for less than 5 percent of the Company's total revenue.

13. By contrast, the New York office accounted for almost 20 percent of VMLY&R's total U.S. revenue in 2020.

### Y&R in the United States Performed No Work for Habanos or Imperial

14. In order to prepare this Declaration, I reviewed VMLY&R's billing system and financial reporting system to determine whether either Corporación Habanos S.A. ("Habanos") or Imperial Brands plc ("Imperial") was in the systems as a current or former client, and if so, which VMLY&R office performed work for either company.

15. This billing system and financial reporting system reflect both Y&R's pre-November 2018 data and VMLY&R's post-November 2018 data.

16. I also queried our billing system and financial reporting system to confirm whether VMLY&R Miami had ever had Habanos or Imperial as a client. VMLY&R Miami has not provided service to either Habanos or Imperial. Nor has VMLY&R's Miami office received any revenue from Habanos or Imperial.

17. If a U.S. office of VMLY&R had worked for a client, that client would need to be set up in the financial systems, even if invoicing were undertaken by another office or even by some other WPP-affiliated company. Thus, I am confident that VMLY&R's Miami office did not perform the work at issue in the Amended Complaint in the above-captioned litigation.

18. Similarly, for VMLY&R's offices in the U.S., I used our billing system and financial reporting system to assess whether VMLY&R had ever had Habanos or Imperial as a client. VMLY&R has provided service to neither Habanos nor Imperial. Nor has VMLY&R received any revenue in the U.S. from Habanos or Imperial.

19. I reviewed revenue reports from all U.S.-based VMLY&R offices to determine whether VMLY&R had performed marketing services for products made in or imported from Cuba. Based on my review of our billing system and our financial reporting system, I found no work related to marketing any type of products from Cuba.

20. The conclusions above are based on financial data that goes back more than a decade to 2010. As previously stated, VMLY&R's billing system and financial reporting system include legacy data from Y&R as well as from VMLY&R. I therefore am confident that from 2010 to present, VMLY&R has not performed any work in the U.S. for Habanos or Imperial.

21. Plaintiff's Amended Complaint refers to an e-mail address, press.habanos@yr.com. Am. Compl. ¶ 56. No U.S.-based employees of any WPP-affiliated entities have or have ever had access to send or receive e-mails from the e-mail address, press.habanos@yr.com.

**Prior Marketing Work for Habanos Performed by Distinct Foreign Corporation in Spain**

22. I am aware that Plaintiffs filed the Amended Complaint after reading my initial declaration in which I stated that we have confirmed that VMLY&R did not perform marketing work for Habanos or Imperial. In fact, Plaintiffs quote from my initial Declaration for the correct proposition that the name and brand Y&R are also used by several distinct and legally separate subsidiaries of WPP plc that operate outside of the United States.

23. Possibly in response to this fact, Plaintiffs now speculate in their Amended Complaint that marketing work for Habanos and/or Imperial must have been performed by a subsidiary of Y&R or BCW. Am. Compl. ¶ 32. However, Plaintiffs' speculation is not correct.

24. During my inquiry into this matter, I have been able to confirm that a distinct foreign corporation called "VMLY&R Madrid S.L." (hereinafter "VMLY&R of Spain") previously had Habanos as a client.

25. VMLY&R of Spain is incorporated pursuant to the laws of Spain and is headquartered in Spain. This foreign corporation has its own employees who work out of offices in Madrid and Barcelona, Spain. It has no offices in the United States.

26. VMLY&R of Spain is not a direct or indirect subsidiary of the U.S.-headquartered company VMLY&R. VMLY&R of Spain is not currently found anywhere in the corporate chain of ownership for VMLY&R.

27. Almost 20 years ago, VMLY&R undertook a corporate restructuring in which Y&R S.L. of Spain, which is now known as VMLY&R of Spain, was moved out from VMLY&R's corporate chain. I have recently reviewed the tax documents dated 2003 that were part of this corporate restructuring.

28. Thus, it is my understanding that between 2003 and the present, Y&R S.L. of Spain and its successor VMLY&R of Spain have existed as indirect subsidiaries of WPP plc. It is also my understanding that VMLY&R of Spain flows up a corporate chain of ownership that leads to WPP plc without ever touching the U.S.-headquartered company VMLY&R or its separate corporate chain. Thus, since 2003, neither Y&R S.L. of Spain nor its successor VMLY&R of Spain has been a subsidiary or parent of either VMLY&R or Y&R.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge.

Executed on April 25, 2021, in Kansas City, Kansas.

Jim Bellinghausen