UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LUIS MANUEL RODRIGUEZ, et al.,              Case No.: 1:20-cv-23287(DPG)(AMO)

      Plaintiffs,

v.

IMPERIAL BRANDS PLC, et al.,

      Defendants.

_____/

**Memorandum of Law in Opposition to Imperial Brands PLC's**
**<u>Motion to Dismiss Plaintiffs' Amended Complaint Under Rule 12(b)(2) and (6)</u>**

Plaintiffs, Luis Manuel Rodriguez, Maria Teresa Rodriguez, a/k/a Maria Teresa Landa, Alfredo Ramon Forns, Ramon Alberto Rodriguez, Raul Lorenzo Rodriguez, Christina Conroy, and Francisco Ramon Rodriguez, pursuant to Local Rule 7.1, submit this memorandum of law in opposition to the motion to dismiss under Rule 12(b)(2) and (6) ("Motion") filed separately by Imperial Brands plc ("Imperial").

## Preliminary Statement

### A.  *Plaintiffs' Claim*

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of the Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba (collectively the "Property"). The Castro government confiscated ownership of RRHSC, which was then owned by Plaintiffs' ancestor Ramon Rodriguez Gutierrez ("RRG")[1], and the Property without compensation to RRG. *See* Amended Complaint (Am. Comp.) ¶7, (ECF 82).[2] Plaintiffs are the owners of a "Claim" created by the Helms-Burton Act ("HBA" or "Libertad Act") in order to compensate victims of the Cuban government's uncompensated confiscation of property.

### B.  *Imperial's Trafficking in Plaintiffs' Confiscated Property*

In 2007 or 2008, Imperial entered into a joint venture with Cuba and its tobacco monopoly company, "Tabacuba." Defendant Habanos is a joint venture company controlled by Cuba with

---

[1]     Two of RRG's sons, Plaintiff Luis Manuel Rodriguez and Raul Bernardo Lupo Rodriguez ("RBLR"), who is now deceased, were involved in managing the RRHSC business prior to confiscation and owned small minority interests in RRHSC.

[2]     The facts set out in the Amended Complaint are not challenged by Imperial and therefore should be accepted as true for purposes of Imperial's Motion.

financial interests owned 50% by Imperial and 50% by Cuba. *See* Am. Comp. ¶7. At all relevant times [3], Imperial's joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively "manufacture[d], market[ed], distribute[d] and s[old] cigars manufactured in Cuba." *See* Am. Compl. ¶6. Imperial and Habanos have "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA.[4]

### C. *Habanos' Declaration Confirms Additional Trafficking by Imperial*

Imperial's joint venture partner, Tabacuba, is the Cuban tobacco monopoly company: "the only economic organization in the country that integrally directs tobacco activity in all phases of its production chain, from agriculture to marketing."[5]   Both Tabacuba and "La Vega" (the Cuban state tobacco leaf monopoly company) have offices in the confiscated Property. *See* Am. Compl. ¶2. Imperial benefits directly from Tabacuba (and La Vega's) extensive use (trafficking) of the Property for management of the day-to-day business of all Cuban tobacco. *See id.*, ¶¶ 8, 9, 10, 53-55, 63 and 66.  In connection with its separate motion ("Habanos' Motion"), Defendant Habanos, Imperial's joint venture partnership, has filed several Declarations. Plaintiffs contend that those Declarations should not be considered on Habanos' Motion.[6] Even if the Court were to disagree, the Declaration of Jorge Fernández Núñez ("Fernández Decl.," ECF No. 89-6) confirms additional

---

[3]    Imperial reportedly sold its Cuban Joint Venture interests in October 2020.

[4]    The unauthorized use of the Property by Imperial and Habanos extended to Tabacuba's management of the day-to-day business of all Cuban tobacco products from offices it maintained in the RRHSC Property at all times from 2008 until at least October 29, 2020. *See* Am. Compl., ¶ 9. This included use of a portion of the Property by Tabacuba, for its executive offices, and the use of the loading dock and space for warehousing and shipping Habanos' products. *See id.*, ¶ 54.

[5]    *See* http://www.tabacuba.com.cu/en_us/info/nuestra-fortaleza-es-la-herencia.

[6]    Plaintiffs' response to Habanos' Motion also addresses aspects of several of the Declarations and reasons why some should not be considered at all.

trafficking. Mr. Fernandez confirms that two entire floors of the Property (in the "mixed use" structure) are currently used by La Vega for its offices. From there, it "purchases raw tobacco from Cuban farmers and entities located in Cuba and sells this raw tobacco to other Cuban entities in Cuba." *See* Fernández Decl., ¶¶ 4-5. This includes the tobacco used by Habanos to make its Cuban cigars. Even if Habanos at some point stopped using some part of the factory portion the Property, Imperial, through Habanos and its partner Tabacuba's management of "tobacco activity in all phases of its production chain, from agriculture to marketing," at all times continued to traffic in the Property. Imperial's trafficking also included its marketing and sale of Cigars that used tobacco products managed, bought, or sold from the Property.

### D. Imperial's Trafficking Through U.S. Agents and U.S. Internet Services in Violation of U.S. Law

Of particular significance to the instant Motion, beginning in 2017, Imperial and Habanos' commercial activity using or otherwise benefiting from the confiscated Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated by Imperial and Habanos' use of official social media "portals" operated by Twitter, Instagram and YouTube. The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC Property. *See Am. Comp.*, ¶ 55. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law.[7]

---

[7]    The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public ***at no cost to the user***") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . ***organizations administered or controlled by the Government of Cuba***.") (emphasis added); *see also* 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market,

4

### E. *Imperial's Trafficking Through Additional U.S. Agents (Y&R and BCW or their subsidiaries) in Violation of U.S. Law*

Beginning as early as 2010 Imperial and Habanos also retained WPP through its subsidiary advertising agencies. Plaintiffs allege, and Imperial does not dispute, that WPP's involvement was through its U.S. based subsidiaries, Y&R and BCW (or through foreign subsidiaries of Y&R and BCW). The use of U.S. companies (or their subsidiaries, even if foreign-incorporated) as marketing and distribution agents is also in violation of U.S. law. [8] Y&R and BCW admit that what they term companies "using the name and brand" Y&R or BCW, respectively, engaged in marketing activities for Habanos.[9] They also acknowledge that these companies were at one time subsidiaries of Y&R or BCW, respectively, albeit incorporated outside of the U.S.[10]

### F. *Imperial's Motion*

Imperial's Motion first replays arguments from Defendants' "Joint Motion," contending that Plaintiffs lack Article III standing and have otherwise failed to state a claim under Title III of

produce or co-produce, create or assist in the creation of information or informational materials.").

[8]     *See* 31 C.F.R § 515.206 (excluding from "exempt transactions" the: "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

[9]     On its separate motion, Y&R and BCW have filed declarations contending that the companies, through an unexplained corporate restructuring, were "moved out from" the Y&R or BCW corporate "chain" and somehow became instead indirect subsidiaries of WPP. *See* ECF 93-1, ¶¶ 19-25 (BCW); ECF 93-2, ¶¶ 22-28 (Y&R). Plaintiffs have filed a motion seeking jurisdictional discovery as to the issues raised by the Y&R and BCW Declarations.

[10]     There is no dispute that Twitter, Instagram and YouTube are U.S. companies. Nor is it disputed that Imperial and Habanos have used Twitter, Instagram and YouTube's U.S.-based internet services for trafficking. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law, independently and regardless of whether the Y&R and BCW entities are U.S. companies or subsidiaries. Therefore, the Court's exercise of personal jurisdiction over Imperial (and Habanos) is not affected the Court's ruling on the WPP Defendants' Motion.

5

the HBA. Plaintiffs disagree and respectfully refer the Court to their "Opp. to Joint Motion." Turning to issues germane to the instant Motion, Imperial argues that Plaintiffs "do not plead that Imperial purposefully availed itself of the privilege of conducting suit-related activities in this forum" and that Congress cannot "apply Title III to Imperial's 'non-U.S.' Cuban-cigar business." *See* Motion at 2. The latter is a recuring theme of the Motion, as Imperial repeatedly points to its trafficking in Cuba and complains about the purported "extra-territorial" application of U.S. law. As demonstrated below, jurisdiction over Imperial is not based on its trafficking in Cuba nor on any "extra-territorial" application of U.S. law. Personal jurisdiction over Imperial, instead, stems from Imperial's deliberate use, in violation of U.S. law, of U.S. websites operated by U.S. companies to traffic in the confiscated Property. Through these intentional acts, Imperial's conduct has damaged Plaintiffs, six of whom reside in this district. At bottom, Imperial insists that, despite having illegally retained U.S. companies to use U.S. internet services in violation of U.S. law in furtherance of intentionally tortious conduct damaging to forum residents, neither this Court nor any U.S. court has personal jurisdiction over it. Imperial is wrong. This Court has personal jurisdiction over Imperial.

## I.   Imperial's Trafficking is Intentional Tortious Conduct Aimed at this Forum

### A.  *The Nature of Plaintiffs' HBA Claims*

As set out more fully in Plaintiffs' Opp. to Joint Motion, the HBA Claim is a legislatively created claim designed to compensate victims of Cuba's uncompensated confiscation of property. The remedy provided by HBA claims is analogous to the remedy available to the true owner, or heirs or successors of the true owner, of stolen property who has a claim for conversion.[11] And,

---

[11]     *See Danopulos v. Am. Trading II, LLC*, 69 N.E.3d 157, 159 (Ohio Ct. App. 2016).

significantly: "a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'"[12] The HBA attempts to place victims of Cuba's takings in a position analogous to that of the true owner (or his successors or heirs) of stolen property. Compensation to the owner or heirs is required instead of the return of confiscated or stolen property. The HBA adds the requirement that the trafficking in the confiscated property is done "knowingly,"[13] i.e., "with knowledge or having reason to know." [14]

### B.   Under the HBA Imperial is Responsible for Trafficking by Habanos

Imperial argues that corporations and shareholders are generally treated as distinct entities. Therefore, it argues that conduct of its joint venture partnership, Habanos, cannot be attributed to it because Imperial acquired its interest in Habanos through purchase of a separate company. *See* Motion at 6-8. As discussed more fully below, the relevant "jurisdictional contacts" at issue on this Motion is Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) in violation of U.S. law. That conduct constitutes "trafficking" as defined in the HBA. *See* 22 U.S.C. § 6023(13)(ii).

Imperial's "imputation" argument fails for two reasons. First, under the HBA, all trafficking by Habanos is attributed to Imperial. In particular, under the HBA: "a person 'traffics' in confiscated property ***if that person*** knowingly and intentionally—

---

[12]     *See Danopulos*, 69 N.E.3d 159 (emphasis added); *see also In re Newpower*, 233 F.3d 922, 928–29 (6th Cir. 2000) (noting the "long established at common law [rule] that a thief has no title in the property that he steals"); *Richardson v. Seattle-First Nat. Bank*, 38 Wash. 2d 314, 315–16, 229 P.2d 341, 342 (1951) ("At common law, except in the market overt, ***a thief could convey no title to his vendee***.") (emphasis added).

[13]     *See* 22 U.S.C. § 6023(13)(A).

[14]     *See* 22 U.S.C. § 6023(9).

. . .

(ii)   causes*, directs*, participates in, *or profits from*, *trafficking* (as described in clause (i) or (ii)) *by another person*, or otherwise engages in trafficking (as described in clause (i) or (ii)) *through another person*

*See* 22 USC § 6023 (13)(A)(ii) [15] (sic) (emphasis added). The conduct at issue constitutes "trafficking" as defined in § 6023 (13)(A)(i) or (ii). Therefore, under § 6023 (13)(A)(ii) [second], Imperial is responsible for the trafficking whether Imperial "directed" Habanos, or even if all that Imperial did was to "profit[] from trafficking" by or through Habanos.

This leads to the second reason why Imperial is responsible for the "trafficking" and "jurisdictional contacts" at issue. Imperial did not file affidavits or declarations and did not otherwise challenge the allegations of the Amended Complaint. Therefore, it is making a purely "facial" challenge. As Imperial acknowledges, "Because Imperial is making a purely facial challenge, the Court's review is limited to the allegations in the Amended Complaint." *See* Motion at 5 n.4. Plaintiffs allege that Imperial directed or profited the conduct at issue. *See* Amd. Comp., ¶¶ 30, 37, 55, 57, 62 and 66. Including specifically the use of U.S. internet services operated by U.S. companies. *See id*., ¶¶ 11-12, 37, 54 and 55. In addition, Plaintiffs served Imperial directly with notice that its conduct constituted "trafficking" under the HBA before filing this lawsuit; Imperial nevertheless continued its trafficking. *See id*., ¶¶ 67 – 68. Finally, Imperial again and directly profited from the trafficking (and, therefore, again "trafficked" under (13)(A)(ii) [second]) when it sold its interests in the Cuban Joint Ventures. *See* Amd. Comp., ¶¶ 58 – 59. Again, Imperial

---

[15]   The quoted paragraph is the second subsection designated (13)(A)(ii) and appears immediately after an earlier subsection similarly designated (13)(A)(ii). *See* 22 U.S.C. § 6023(13)(A). Therefore, it presumably should have been designated (13)(A)(ii**i**).

is bound by the pleadings on this Motion and cannot escape responsibility by reference to general corporate law.[16]

## II.    Imperial is Subject to Personal Jurisdiction

As discussed above, the Claim created by the HBA is in the nature of a tort akin to conversion. The HBA also adds a requirement that the statutory "trafficking" be done intentionally. As such, the claim is in the nature of an intentional tort and should be treated as such for purposes of analyzing personal jurisdiction. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (concluding that "trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute."). The HBA claim at issue arises under federal law and does not have a direct analogue under state or other federal statutes. Recent cases are clear, however, that a defendant's physical presence in the forum is not necessary for an exercise of personal jurisdiction. See *Louis Vuitton*, 736 F.3d at 1353 – 54 (discussing the Florida long-arm statute). Service here is

---

[16]    To the extent that Imperial suggests, as Defendants did in their Joint Motion, that some allegations in the complaint are improperly plead "on information and belief," Imperial is wrong about the pleading rules. While allegations based "upon information and belief" generally do not have to be taken as true, "[p]leading on information [and] belief is still permissible where . . . the *facts are 'peculiarly within the possession and control of the defendant*.'" *Palm Partners LLC v. Palm Beach Treatment Ctr., LLC*, 9:17-CV-80582, 2017 WL 5668050, at *2 (S.D. Fla. Aug. 18, 2017) (emphasis added) (quoting *Belik v. Carlson Travel Grp., Inc*., 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011)).  The Property, of course, is in Cuba and was forcibly confiscated by the Cuban Government. *See* Exhibit 5A. There can be no dispute that, as Congress expressly found, the Cuban Government wrongfully confiscated the property of millions, including "thousands of United States nationals" and "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States." *See* 22 U.S.C. § 6081 (3). Nor is there any dispute about the genesis of the HBA itself, which was enacted after "Cuban MiG's shot down two U.S. civilian private planes in February 1996." *See Odebrecht Const., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268, 1277 (11th Cir. 2013) (citing 22 U.S.C. § 6046 ("Congressional findings condemning attack"). If any case calls out for allowing "[p]leading on information [and] belief" where "the facts are 'peculiarly within the possession and control of the defendant,'" this is it.

proper under the Florida's long arm statute and Fed. R. Civ. Pro. 4(k) where as here the claim arises under federal law and the defendant is not otherwise subject to jurisdiction in any individual state. "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."   Fed. R. Civ. P. 4.   The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019) after discussing recent cases found, personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. *See id*. at *5.

In cases involving trademark infringement and committed by internet postings, Florida cases have required that the use of an interactive website. Plaintiffs do not allege that such was involved here. A claim under the HBA claim is, however, significantly different. The HBA defines "trafficking" to include essentially all commercial use of confiscated property.  *See* 22 U.S.C. § 6023(13)(A)(i)-(iii). Here the specific conduct at issue is Imperial's use of U.S. internet services operated by U.S. corporations. This is not a case like the many that Imperial cites involving websites that can generally be accessed from anywhere. Imperial expressly contracted with U.S. companies for the use of their U.S. based internet services. More importantly, as demonstrated above, Imperial's trafficking through U.S. internet services operated by U.S. corporations is directly prohibited by law, including the Cuban Asset Control Regulations ("CACRs"). When Imperial illegally used internet services to further its trafficking of the Property in violation of the HBA, although it did so virtually, it deliberately entered the country in order to further its unlawful conduct. This conduct provides more than sufficient basis for subjecting Imperial to personal jurisdiction.

Nor is there any due process or other Constitutional impediment that prevents assertion of personal jurisdiction over Imperial. The U.S. Supreme Courts' recent decision in the recent case of *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), discussed the Constitutional standards at length. Discussing "specific jurisdiction" the Court explained:

> The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The ***defendant***, we have said, ***must take "some act by which [it] purposefully avails itself*** of the privilege of conducting activities within the forum State." The ***contacts must be the defendant's own choice and not "random, isolated, or fortuitous***. They must show that the ***defendant deliberately "reached out beyond" its home***—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The *plaintiff 's claims*, we have often stated, "***must arise out of or relate to the defendant's contacts***" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

141 S. Ct. at 1024-25 (emphasis added, citations omitted). In the instant case, of course, Imperial's conduct is particularly apt for the exercise of personal jurisdiction, by its "own choice" and not through any "random, isolated, or fortuitous." Imperial plainly and "deliberately 'reached out beyond' its home."

Addressing the need for fairness, the Court made clear that:

> When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct. Later decisions have added that ***our doctrine similarly provides defendants with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign***." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

*Id*. at 1026 (emphasis added, citations omitted). Again, this applies with full force to Imperial, which had more than ample warning and express knowledge that use of U.S. persons to conduct its trafficking could "subject [it] to the jurisdiction of a foreign sovereign."

The Court held that jurisdiction was proper in Montana because one plaintiff was injured there. Even though the allegedly defective car at issue was neither designed, manufactured nor sold by Ford in Montana. Like Imperial, Ford argued that:

> [T]he needed link must be causal in nature: Jurisdiction attaches "***only if the defendant's forum conduct gave rise to the plaintiff 's claims***." . . . And that rule reduces, Ford thinks, to locating specific jurisdiction in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle. ***On that view, the place of accident and injury is immaterial***. . . .
>
> But Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff 's suit and a defendant's activities. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. ***None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do***. As just noted, our most common formulation of ***the rule demands that the suit "***arise out of or ***relate to the defendant's contacts with the forum***." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, ***we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff 's claim came about because of the defendant's in-state conduct***.

*Id*. at 1027 (emphasis added, citations omitted).

Again, the discussion applies directly to Imperial's conduct. Contrary to Imperials' repeated refrain of "extra-territorial" application of the HBA to its conduct in Cuba, Plaintiffs make no such assertion. Plaintiffs instead argue that jurisdiction in this forum is appropriate because of Imperial's deliberate conduct in reaching out to and contracting with U.S. companies

in order that they would use their U.S. internet services to in order to further Imperial's "trafficking" of Plaintiffs' Property. There is no surprise, no unfairness, nor any Constitutional or other reason that the Court should apply to save Imperial from its deliberate conduct.

Nor is there any reason why jurisdiction in this District is inappropriate. As discussed in Plaintiffs' Opposition to Joint Motion, Congress expressly found that Imperial's chosen partner, effectively the Cuban Government, had forcibly confiscated property from thousands of U.S. Nationals, and thousands more who fled Cuba as refugees and became U.S. Nationals. That includes six of the seven Plaintiffs. It is also no surprise that the Plaintiffs would be found in South Florida, as the Court can take judicial notice of the many hundreds of thousands of local residents who fled here directly from Cuba or whose ancestors did so. As the *Ford* Court held, the place of the plaintiff's injury can indeed be the Constitutionally appropriate forum. In this regard as well, it is significant that Plaintiffs are directly damaged under the HBA when Imperial trafficked in the Property. The place of injury is plainly an appropriate forum.

Imperial finally contends that this Court should, in effect, save Imperial from itself. This because the EU and now the UK believe that application of the HBA is necessarily extra-territorial in nature. As to that point, although Imperial's trafficking in the RRHSC commenced in Cuba, again, the matter that brings Imperial to this Court was its deliberate choice to retain U.S. companies to use their U.S. internet services to further Imperial's trafficking. That conduct is unlawful in the United States – there is nothing extra-territorial about it. Imperial's argument based upon the EU / UK blocking statute is even worse. Imperial asks this Court's assistance to nullify U.S. law, including the HBA and CACRs, because the EU and UK have passed a law that attempts to nullify any judgment that this Court may enter against it under the HBA. Needless to say, there

is no authority that would require or even authorize the nullification of U.S. law. Even if Imperial

and the UK do not like the law.

## Conclusion

For the foregoing reasons and based on the cited authorities, the Court should deny the

Imperial's Motion to Dismiss.


Respectfully submitted,

Rodriguez Tramont & Nuñez P.A.          Berenthal & Associates, P.C.
By: */s/ Paulino A. Núñez Jr.*           By: */s/ James L. Berenthal*
Paulino A. Núñez Jr.                     James L. Berenthal
Florida Bar No. 814806                   Florida Bar No.126035
Primary email: pan@rtgn-law.com          email: jlb@berenthalaw.com
255 Alhambra Circle                      45 East 72nd Street
Suite 1150                               Suite 5-C
Coral Gables, FL 33134                   New York, NY 10021
Telephone: (305) 350-2300                Telephone: (212) 302-9494


## Certificate of Service

I HEREBY CERTIFY that on June 21, 2021, a true and correct copy of the foregoing was
filed with the Clerk of Court using the CM/ECF system which will send a notification of the filing
to all counsel and parties of record.

*/s/ Paulino A. Núñez Jr.*
Paulino A. Núñez Jr.

.