UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23287(DPG)(AMO)

LUIS MANUEL RODRIGUEZ, et al.,

    Plaintiffs,

v.

IMPERIAL BRANDS PLC, et al.,

    Defendants.
_____/

**<u>Memorandum of Law in Opposition to Defendant Corporación Habanos, S.A.'s
Motion to Dismiss Amended Complaint</u>**

**PRELIMINARY STATEMENT**

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of the Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba (collectively the "Property"). The Castro government confiscated ownership of RRHSC, which was then owned by Plaintiffs' ancestor Ramon Rodriguez Gutierrez ("RRG")[1], and the Property without compensation to RRG. *See* Amended Complaint (Am. Comp.) ¶7, (ECF 82).[2] Plaintiffs are the owners of a "Claim" created by the Helms-Burton Act ("HBA" or "Libertad Act") in order to compensate victims of the Cuban government's uncompensated confiscation of property.

In 2007 or 2008, Imperial entered into a joint venture with Cuba and its tobacco monopoly company, "Tabacuba." Defendant Habanos is a joint venture company controlled by Cuba with financial interests owned 50% by Imperial and 50% by Cuba. *See* Am. Comp. ¶7. At all relevant times[3], Imperial's joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively "manufacture[d], market[ed], distribute[d] and s[old] cigars manufactured in Cuba." *See* Am. Compl. ¶6. Habanos has "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA.

---

[1]  Two of RRG's sons, Plaintiff Luis Manuel Rodriguez and Raul Bernardo Lupo Rodriguez ("RBLR"), who is now deceased, were involved in managing the RRHSC business prior to confiscation and owned small minority interests in RRHSC.

[2]  The facts set out in the Amended Complaint are not challenged by Imperial and therefore should be accepted as true for purposes of Imperial's Motion.

[3]  Imperial reportedly sold its Cuban Joint Venture interests in October 2020.

Habanos moves to dismiss contending that the Court does not have personal jurisdiction over it. As demonstrated below, Habanos deliberately chose to "avail itself" of the forum by using U.S. companies to further its trafficking of Plaintiffs' Property through U.S. internet services. That conduct is in violation of U.S. law. It is sufficient to subject Habanos to jurisdiction. The Court should deny the Motion.

## LEGAL ARUGMENT

### I. HABANOS ATTEMPTS TO INCORPORATE CO-DEFENDANT'S MOTION TO DISMISS BY REFERNCE MUST FAIL

Habanos moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject-matter jurisdiction, and in support thereof, it "relies upon Defendants' joint Memorandum of Law and Defendant Imperial Brands PLC's Memorandum of Law, which is briefly supplemented here." Motion at 1.  Further, Habanos states "Imperial argues that requirements (1) and (2) are not met with respect to it even assuming that Habanos, S.A.'s alleged conduct is attributable to Imperial. In addition to advancing its own arguments, *infra*, Habanos, S.A. concurs in Imperial's argument, at I(A)(2) of its Memorandum.[4]"  Motion at 5, No. 2. Habanos continues its attempt to "piggy-back" off of Imperial's motion to dismiss and states "Imperial argues, in support of its Rule 12(b)(6) motion, that Title III's application to its

. . Cuban cigar business would exceed the Due Process Clause's limits . . . . Habanos, S.A. relies upon Imperials' argument . . . "  Motion at 20.

Attempts to incorporate co-defendant's motions by reference are inappropriate and should be discarded. *Jolly v. Hoegh Autoliners Shipping AS*, No. 3:20-CV-1150-J-34PDB, 2020 WL

---

[4] Requirement 1 being that the Plaintiffs' claim "arises out of or relates to" Habanos's contact with the forum, and requirement 2 being that Defendant Habanos, S.A. "purposefully availed itself of the privilege of conducting activities within the forum,"  Motion at 5 (internaal quotation marks and citations omitted).

3

6505037, at *1 (M.D. Fla. Nov. 5, 2020) ("'[A]ttempts to join or adopt the motions of other Defendants are improper and due to be stricken in that adopting and incorporating by reference the arguments of other Defendants violates Local Rule 3.01(a)[5] . . . and places an undue burden on judicial resources.")  Habanos' attempt to adopt Imperial's arguments should also be rejected.

## II.  THE COURT HAS PERSONAL JURISDICTION OVER HABANOS

### A.  PLAINTIFFS' CLAIMS AGAINST DEFENDANT ARISE FROM HABANOS' TRAFFICKING AS DEFINED UNDER THE HELMS-BURTON ACT

Habanos argues that personal jurisdiction is lacking as the social media portal used to market Habanos products were established after production at the Partagas Factory ended and thus Plaintiffs' claims cannot "arise out of or relate to" Defendant's activites in the forum.  Motion at 5, 6.  As demonstrated herein, Habanos is mistaken as: (1) Habanos contention is yet another improper attempt to dismiss the case based on its affirmative defense of limitations; (2) Habanos fails to establish that the factory was not in use in 2019 and 2020, and (3) Habanos admits that during the relevant time period, the confiscated "Property" was used at a minimum for the oversight of all tobacco production in Cuba.

### 1.  DEFENDANT'S DECLARATIONS DO NOT DEFEAT JURISDICTION

Habanos's Motion goes beyond the scope of jurisdiction and moves to argue the merits of the case by raising issues of fact regarding the use the Property (both the Partagas Factory portion and the mixed use adjacent to the factory).  Motion at 8, 9.  Although Habanos attempts to tie in use of the Property to its argument regarding due process, it is clear Habanos' statements regarding said use have nothing to do with Habanos' contacts with the forum.

---

[5] Middle District of Florida Local Rule 3.01(a) is similar to Southern District Local Rule 7.1 (c)(2) insofar as it places a page limit on the memorandum of law submitted with a motion..

As set out in Plaintiffs' "Opp. to Joint Motion" at 10-12, the statute of limitations is an affirmative defense and cannot warrant dismissal of Plaintiffs' complaint. Although Habanos now dresses its limitations argument under the guise of jurisdiction, it remains improper. Jurisdiction is proper over Habanos because it affirmatively chose to retain U.S. companies to use U.S. internet services to market ("traffic") in the Property. This was in violation of U.S. law and subjects Habanos to jurisdiction.

Even if the declarations were to be considered, it is obvious that each of the affidavits fail to affirmatively preclude the use of the factory portion of the Property for the entire relevant period. Plaintiffs allege that "Tabacuba and Habanos have continuously used the RRHSC property without authorization from the Rodriguez Family since at least 2010, and likely for many years before that, until the present." Amd. Comp.¶51.  Habanos claims that the factory was in a state of deterioration not suitable for the production of cigars or other use since April or May of 2015.  Declaration of Mirel García Días in Support of Habanos dated April 6, 2021 ("Días Decl.", ECF No. 89-3) ¶ 9. Días continues that the factory was in the same state of disrepair at the time of his visit on April 6, 2021.  *Id*. At ¶10.  However, Días' statement that the factory was not suitable for any use is conclusory. It also does not preclude that the factory was in use, even if just for storage and shipping. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)  ("conclusory assertions of ultimate fact are insufficient to shift to the Plaintiffs the burden of producing evidence supporting jurisdiction").

Similarly, the two other declarations proffered by Habanos limit their knowledge to use/non use of the factory through 2018. Declaration of Martha Riquelme Armenteros dated April 15, 2021 ("Armenteros Decl."), Declaration of Rafael Agrmonte Hevia dated April 19, 2021 ("Hevia Decl.").  Of interest, however, is Armenteros' declaration that claims that the Empresa

5

de Tabaco Torcido "José Martí" (the "Empresa") ceased using the building in January 2011, but employed security guards to keep watch over the allegedly vacant factory. Hevia Decl. ¶4. Habanos' declarations fail to preclude that the factory portion of the Property was in use, notwithstanding its state of decay, in 2019 and 2020, even if it was not in use continuously from 2010.

Notwithstanding any of the foregoing, Defendant Habanos has confirmed that two entire floors of the Property (in the "mixed use" structure) are currently in use by Empresa Comercializadora de Tabaco en Rama "La Vega. *See* Declaration of Jorge Fernández Núñez ¶5 (ECF No. 89-6). Tabacuba, is the Cuban tobacco monopoly company: "the only economic organization in the country that integrally directs tobacco activity in all phases of its production chain, from agriculture to marketing." Both Tabacuba and "La Vega" (the Cuban state tobacco leaf monopoly company) have offices in the confiscated Property. *See* Am. Compl. ¶2. Habanos benefits directly from Tabacuba (and La Vega's) extensive use (trafficking) of the Property for management of the day-to-day business of all Cuban tobacco. *See id.*, ¶¶ 8, 9, 10, 53-55, 63 and 66. The Fernández Decl. confirms additional trafficking. Mr. Fernandez confirms that two entire floors of the Property are currently used by La Vega for its offices. From there, it "purchases raw tobacco from Cuban farmers and entities located in Cuba and sells this raw tobacco to other Cuban entities in Cuba." *See* Fernández Decl., ¶¶ 4-5. This includes the tobacco used by Habanos to make its Cuban cigars. Even if Habanos at some point stopped using some part of the factory portion the Property, Habanos, through its principal Tabacuba's management of "tobacco activity in all phases of its production chain, from agriculture to marketing," at all times continued to traffic in the Property. Habanos' trafficking also included its marketing and sale of Cigars that used tobacco products managed, bought, or sold from the Property.

There is no question that notwithstanding Defendant's declarations, Defendant has not only failed to challenge Plaintiffs' allegations that the Property was in use during at least a portion of the relevant time period, but in fact, Defendant has admitted that the Property was used in trafficking the Property and Habanos' tobacco products. Habanos ultimately benefitted from such use.

### III. DEFENDANT'S ACTIONS THROUGH ITS AGENTS ESTABLISH PERSONAL JURISDICTION

#### A. *Habanos's Trafficking Through U.S. Agents and U.S. Internet Services in Violation of U.S. Law*

Of particular significance to the instant Motion, beginning in 2017, Habanos' commercial activity using or otherwise benefiting from the confiscated Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated by Habanos' use of official social media "portals" operated by Twitter, Instagram and YouTube. The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC Property. *See Am. Comp.*, ¶ 55. Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law.[6]

#### B. *Habanos's Trafficking Through Additional U.S. Agents (Y&R and BCW or their subsidiaries) in Violation of U.S. Law*

---

[6] The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public ***at no cost to the user***") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . ***organizations administered or controlled by the Government of Cuba***.") (emphasis added); *see also* 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

7

Beginning as early as 2010 Habanos also retained WPP through its subsidiary advertising agencies. Plaintiffs allege, and Habanos does not dispute, that WPP's involvement was through its U.S. based subsidiaries, Y&R and BCW (or through foreign subsidiaries of Y&R and BCW). The use of U.S. companies (or their subsidiaries, even if foreign-incorporated) as marketing and distribution agents is also in violation of U.S. law.[7] Y&R and BCW admit that what they term companies "using the name and brand" Y&R or BCW, respectively, engaged in marketing activities for Habanos.[8] They also acknowledge that these companies were at one time subsidiaries of Y&R or BCW, respectively, albeit incorporated outside of the U.S.[9]

## C. The Nature of Plaintiffs' HBA Claims

As set out more fully in Plaintiffs' Opp. to Joint Motion, the HBA Claim is a legislatively created claim designed to compensate victims of Cuba's uncompensated confiscation of property. The remedy provided by HBA claims is analogous to the remedy available to the true owner, or

---

[7] *See* 31 C.F.R § 515.206 (excluding from "exempt transactions" the: "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

[8] On its separate motion, Y&R and BCW have filed declarations contending that the companies, through an unexplained corporate restructuring, were "moved out from" the Y&R or BCW corporate "chain" and somehow became instead indirect subsidiaries of WPP. *See* ECF 93-1, ¶¶ 19-25 (BCW); ECF 93-2, ¶¶ 22-28 (Y&R). Plaintiffs have filed a motion seeking jurisdictional discovery as to the issues raised by the Y&R and BCW Declarations.

[9] There is no dispute that Twitter, Instagram and YouTube are U.S. companies. Nor is it disputed that Imperial and Habanos have used Twitter, Instagram and YouTube's U.S.-based internet services for trafficking. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law, independently and regardless of whether the Y&R and BCW entities are U.S. companies or subsidiaries. Therefore, the Court's exercise of personal jurisdiction over Imperial (and Habanos) is not affected the Court's ruling on the WPP Defendants' Motion.

heirs or successors of the true owner, of stolen property who has a claim for conversion.[10] And, significantly: "a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'"[11] The HBA attempts to place victims of Cuba's takings in a position analogous to that of the true owner (or his successors or heirs) of stolen property. Compensation to the owner or heirs is required instead of the return of confiscated or stolen property. The HBA adds the requirement that the trafficking in the confiscated property is done "knowingly,"[12] i.e., "with knowledge or having reason to know." [13]

### D. Habanos is Subject to Personal Jurisdiction

As discussed above, the Claim created by the HBA is in the nature of a tort akin to conversion. The HBA also adds a requirement that the statutory "trafficking" be done intentionally. As such, the claim is in the nature of an intentional tort and should be treated as such for purposes of analyzing personal jurisdiction. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (concluding that "trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute."). The HBA claim at issue arises under federal law and does not have a direct analogue under state or other federal statutes. Recent cases are clear, however, that a defendant's physical presence in the forum is not necessary for an

---

[10]  *See Danopulos v. Am. Trading II, LLC*, 69 N.E.3d 157, 159 (Ohio Ct. App. 2016).

[11]  *See Danopulos*, 69 N.E.3d 159 (emphasis added); *see also In re Newpower*, 233 F.3d 922, 928–29 (6th Cir. 2000) (noting the "long established at common law [rule] that a thief has no title in the property that he steals"); *Richardson v. Seattle-First Nat. Bank*, 38 Wash. 2d 314, 315–16, 229 P.2d 341, 342 (1951) ("At common law, except in the market overt, ***a thief could convey no title to his vendee***.") (emphasis added).

[12]  *See* 22 U.S.C. § 6023(13)(A).

[13]  *See* 22 U.S.C. § 6023(9).

9

exercise of personal jurisdiction. See *Louis Vuitton*, 736 F.3d at 1353 – 54 (discussing the Florida long-arm statute). The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019) after discussing recent cases found, personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. *See id*. at *5.

In cases involving trademark infringement and committed by internet postings, Florida cases have required that the use of an interactive website. Plaintiffs do not allege that such was involved here. A claim under the HBA claim is, however, significantly different. The HBA defines "trafficking" to include essentially all commercial use of confiscated property. *See* 22 U.S.C. § 6023(13)(A)(i)-(iii). Here the specific conduct at issue is Imperial's use of U.S. internet services operated by U.S. corporations. This is not a case like the many that Habanos directly and through attempted incorporation of Imperial's Motion, cites involving websites that can generally be accessed from anywhere. Imperial expressly contracted with U.S. companies for the use of their U.S. based internet services. More importantly, as demonstrated above, Habanos' trafficking through U.S. internet services operated by U.S. corporations is directly prohibited by law, including the Cuban Asset Control Regulations ("CACRs"). When Habanos illegally used U.S. internet services to further its trafficking of the Property in violation of the HBA, although it did so virtually, it deliberately entered the country in order to further its unlawful conduct. This conduct provides more than sufficient basis for subjecting Imperial to personal jurisdiction.

Nor is there any due process or other Constitutional impediment that prevents assertion of personal jurisdiction over Habanos. The U.S. Supreme Courts' recent decision in the recent case of *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), discussed the Constitutional standards at length. Discussing "specific jurisdiction" the Court explained:

> The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The ***defendant***, we have said, ***must take "some act by which [it] purposefully avails itself*** of the privilege of conducting activities within the forum State." The ***contacts must be the defendant's own choice and not "random, isolated, or fortuitous***. They must show that the ***defendant deliberately "reached out beyond" its home***—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The *plaintiff's claims*, we have often stated, "***must arise out of or relate to the defendant's contacts***" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

141 S. Ct. at 1024-25 (emphasis added, citations omitted). In the instant case, of course, Habanos' conduct is particularly apt for the exercise of personal jurisdiction, by its "own choice" and not through any "random, isolated, or fortuitous." Habanos plainly and "deliberately 'reached out beyond' its home."

> Addressing the need for fairness, the Court made clear that:
>
> When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct. Later decisions have added that ***our doctrine similarly provides defendants with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign***." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

*Id*. at 1026 (emphasis added, citations omitted). Again, this applies with full force to Habanos, which had full knowledge that use of U.S. persons to conduct its trafficking could "subject [it] to the jurisdiction of a foreign sovereign."

The *Ford* Court held that jurisdiction was proper in Montana because one plaintiff was injured there. Even though the allegedly defective car at issue was neither designed, manufactured nor sold by Ford in Montana. Like Habanos, Ford argued that:

11

> [T]he needed link must be causal in nature: Jurisdiction attaches "*only if the defendant's forum conduct gave rise to the plaintiff's claims*." . . . And that rule reduces, Ford thinks, to locating specific jurisdiction in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle. *On that view, the place of accident and injury is immaterial*. . . .
>
> But Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff's suit and a defendant's activities. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. *None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do*. As just noted, our most common formulation of *the rule demands that the suit "*arise out of or *relate to the defendant's contacts with the forum*." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, *we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct*.

*Id*. at 1027 (emphasis added, citations omitted).

Again, the discussion applies directly to Habanos' conduct. Contrary to Habanos' refrain of "extra-territorial" application of the HBA to its conduct in Cuba. Plaintiffs make no such assertion. Plaintiffs instead argue that jurisdiction in this forum is appropriate because of Habanos' deliberate conduct in reaching out to and contracting with U.S. companies in order that they would use their U.S. internet services to in order to further Imperial's "trafficking" of Plaintiffs' Property. There is no surprise, no unfairness, nor any Constitutional or other reason that the Court should apply to save Habanos from its deliberate conduct.

Nor is there any reason why jurisdiction in this District is inappropriate. As discussed in Plaintiffs' Opp. to Joint Motion, Congress expressly found that the Cuban Government, had forcibly confiscated property from thousands of U.S. Nationals, and thousands more who fled

12

Cuba as refugees and became U.S. Nationals. That includes six of the seven Plaintiffs. It is also no surprise that the Plaintiffs would be found in South Florida, as the Court can take judicial notice of the many hundreds of thousands of local residents who fled here directly from Cuba or whose ancestors did so. As the *Ford* Court held, the place of the plaintiff's injury can indeed be the Constitutionally appropriate forum. In this regard as well, it is significant that Plaintiffs are directly damaged under the HBA when Habanos trafficked in the Property. The place of injury is plainly an appropriate forum.[14]

## IV. SERVICE OF PROCESS WAS PROPER

Habanos also argues that service of process was improper pursuant to Fed. R. Civ. P. 4(f)(2)(c)(ii) "Serving an Individual in a Foreign Country." Habanos also acknowledges, however, that service was made pursuant to Fed. R. Civ. P. 4(j)(1) and 28 U.S.C. §1608, thus rendering its principal argument superfluous.

Pursuant to Fed. R. Civ. P. 4(j)(1) and 28 U.S.C. §1608 an agency or instrumentality of the Cuban government Habanos is properly served by "Serving a Foreign, State, or Local Government" and 28 U.S.C. §1608. Habanos argues that it cannot be an instrumentality of the Cuban government as Cuba must directly own a majority of shares, and not through any subsidiary. Defendants' arguments completely ignore that, under the HBA, the Habanos joint venture

---

[14] Habanos also requests, improperly, that the Court dismiss the Plaintiffs' complaint "with prejudice". Motion at 1. Should the Court reject Plaintiffs' arguments in opposition, it nevertheless should not dismiss with prejudice. It is well settled that an adjudication not on the merits does not serve to bar a claimant from brining the action again. *Abram v. Fulton Cty. Gov't*, 482 F. App'x 421, 425 (11th Cir. 2012). "Dismissal under Rule 12(b)(4) or Rule 12(b)(5) does not constitute a judgment on the merits." *Id.* Similarly, dismissal under Rule 12(b)(1) or (2) does not constitute an adjudication on the merits. *McQueary v. Child Support Enf't*, 812 F. App'x 911, 914 (11th Cir. 2020) ("If a court lacks subject matter jurisdiction, it also lacks the power to dismiss the complaint with prejudice as an adjudication on the merits"). If the Court were to conclude that dismissal on Habanos' Motion was appropriate. Dismissal should not be with prejudice.

13

controlled by Cuba is an "agency or instrumentality" of Cuba.[15] Service of process was, therefore, proper under Rule 4(j)(1) and 28 U.S.C. §1608. This argument also cannot support dismissal.

## V. A MORE DEFINATE STATEMENT IS UNWARRANTED AS DEFENDANT HAS ACTUAL KNOWLEDGE OF THE FACTS ALLEGED IN THE COMPLAINT

Habanos' claims that it requires a more definite statement in order to better respond to the Amended complaint is also without merit. Motion at 20. The Amended Complaint is clear, on its face, that Habanos trafficked in the subject Property without compensating the rightful owners, to wit, the Plaintiffs. Specifically, Habanos "intentionally lease, possesses, control, manage, use, or otherwise acquired or hold an interest in the confiscated RRHSC Property . . . . and continues to engage in a commercial activity using or otherwise benefiting from the confiscated RRHSC Property without the authorization of the Rodriguez Family." Am. Compl. ¶54. Habanos and Imperial have also "expanded their trafficking by retaining agents to assist in and further their trafficking in the property." Am. Compl. ¶57. Such expansion includes retaining agents to "setting

---

[15] Under the HBA, "The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of Title 28. *See* 22 U.S.C. § 6023(1); *see also* 28 U.S.C. § 1603 (a) ("A "foreign state" . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)"); *id*., § 1603 (b) ("An 'agency or instrumentality of a foreign state' means any entity-- (1) ***which is a separate*** legal person, ***corporate or otherwise***, ***and*** (2) which is **an organ** of a foreign state or political subdivision thereof, or ***a majority of whose*** shares or ***other ownership interest is owned by a foreign state*** or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any ***third country***.") (emphasis added).

Not only is Habanos an agency/instrumentality of the Cuban government due do its 'other ownership interest", but it is also an organ of the Cuban government. "The capstone of organ designation is 'whether the entity engages in a public activity on behalf of a foreign government.'" *Cap. Trans Int'l, LLC v. Int'l Petroleum Inv. Co*., No. 8:10-CV-529-T-30TGW, 2013 WL 557236, at *6 (M.D. Fla. Feb. 14, 2013), vacated in part, No. 8:10-CV-529-T-30TGW, 2013 WL 12344236 (M.D. Fla. Feb. 25, 2013) (citing *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd*., 322 F.3d 635, 640 (9th Cir. 2003))[15]. "Habanos,S.A. was founded in 1994 to exclusively undertake the commercialization of all Habanos brands all over the world." http://www.habanos.com/en/empresa/ "Its corporate purpose is to market all Cuban tobacco products . . .. and throughout the rest of the world . . ." Id.

up, or directly set up, the sponsored "official" portals . . . on the Twitter, YouTube, and Instagram platforms . . . .)  Am. Compl. . ¶55.  No further statement is warranted at this time.

## CONCLUSION

For the foregoing reasons and based on the cited authorities, the Court should deny the Motion to Dismiss.

Respectfully submitted,

| | |
|---|---|
| Rodriguez Tramont & Nuñez P.A | Berenthal & Associates, P.A. |
| By: /s/ *Paulino A. Núñez Jr.* | By: /s/ *James L. Berenthal* |
| Paulino A. Núñez Jr. | James L. Berenthal |
| Florida Bar No. 814806 | Florida Bar No.126035 |
| Primary email: pan@rtgn-law.com | Primary email: jlb@berenthalaw.com |
| 255 Alhambra Circle | 255 Alhambra Circle |
| Suite 1150 | Suite 1150 |
| Coral Gables, FL 33134 | Coral Gables, FL 33134 |
| Telephone: (305) 350-2300 | Telephone: (212) 302-9494 |

### Certificate of Service

I HEREBY CERTIFY that on June 21, 2021, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification of the filing to all counsel and parties of record.

/s/ *Paulino A. Núñez Jr.*
Paulino A. Núñez Jr.