UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23287-DPG

LUIS MANUEL RODRIGUEZ, *et al.*,

Plaintiffs,

v.

IMPERIAL BRANDS PLC, *et al.*,

Defendants.

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION
<u>TO DISMISS THE AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.      PLAINTIFFS LACK STANDING BECAUSE THIS LAWSUIT DOES NOT SEEK TO REMEDY ANY CONCRETE INJURY THAT DEFENDANTS HAVE CAUSED ............................................................................................................................ 2

      A.     Plaintiffs Have Suffered No Concrete Injury Due to the Alleged Use of Real Property That They Do Not Own .......................................................................... 2

      B.     The Article III Causation Requirement Is Also Not Satisfied Because This Lawsuit Seeks to Remedy an Injury Caused by Cuba's Acts of Confiscation, Not by Defendants' Subsequent Alleged Trafficking ............................................... 5

II.     THE AMENDED COMPLAINT DOES NOT STATE A TITLE III CLAIM ................. 7

      A.     Plaintiffs Cannot Satisfy the Two-Year Statute of Repose by Speculating That the Alleged Trafficking Might Have Continued Beyond 2010 ...................... 7

      B.     Because All of the Alleged Conduct Was Performed by Cuban Companies, Plaintiffs Cannot Plead the "Trafficking" Element of Their Title III Claim .......... 9

      C.     Plaintiffs Do Not Plead that Defendants Knowingly and Intentionally Trafficked in Confiscated Property to Which a U.S. National Owns a Claim ................................................................................................................ 11

      D.     The Amended Complaint Also Does Not Plead the Ownership Element of Plaintiffs' Title III Claim ..................................................................................... 13

            1.     This action should be dismissed because Plaintiffs cannot allege that the RRHSC Property was confiscated from a U.S. national ..................... 13

            2.     This action should also be dismissed because Plaintiffs cannot plead that they own the claim that they purport to assert ................................... 14

CONCLUSION ............................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*,
  183 F.3d 1277 (11th Cir. 1999) ...................................................................................6

*Appeal of Lord*,
  368 Pa. 121 (1951)........................................................................................................4

*Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*,
  788 F.3d 1329 (11th Cir. 2015) ...................................................................................6

*Baker Botts, L.L.P. v. ASARCO LLC*,
  576 U.S. 121 (2015).....................................................................................................10

*Barnett v. Blane*,
  11-cv-14345, 2012 WL 12862653 (S.D. Fla. July 3, 2012) ........................................8

*Bryant v. United States*,
  768 F.3d 1378 (11th Cir. 2014) ...................................................................................8

*Danopulos v. Am. Trading II, L.L.C.*,
  69 N.E.3d 157 (Ohio Ct. App. 2016)...........................................................................3

*Davis v. Boston Sci. Corp.*,
  2:17-cv-682-FTM-38CM, 2018 WL 3155683 (M.D. Fla. June 28, 2018) ................9

*Dole Food Co. v. Patrickson*,
  538 U.S. 468 (2003).....................................................................................................6

*Edwards v. Landsman*,
  51 So. 3d 1208 (Fla. 4th DCA 2011) ...........................................................................3

*Exxon Mobil Corp. v. Corporación CIMEX S.A.*,
  19-cv-01277 (APM), 2021 WL 1558340 (D.D.C. Apr. 20, 2021) ...................14, 15

*Fed. Republic of Germany v. Philipp*,
  141 S. Ct. 703 (2021)..............................................................................................4, 14

*Flores-Figueroa v. United States*,
  556 U.S. 646 (2009).....................................................................................................13

*Gonzalez v. Amazon.com, Inc.*,
  835 F. App'x 1011 (11th Cir. 2021) ...........................................................................15

*In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*,
   909 F. Supp. 1083 (N.D. Ill. 1995) ...................................................................6

*In re British Am. Ins. Co. Ltd.*,
   607 B.R. 753 (S.D. Fla. Bankr. 2019) ...............................................................8

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   23 F. Supp. 3d 203 (S.D.N.Y. 2014) .................................................................8

*In re Newpower*,
   233 F.3d 922 (6th Cir. 2000) .............................................................................3

*In re Shek*,
   947 F.3d 770 (11th Cir. 2020) ...............................................................10, 11, 13

*In re Wild*,
   994 F.3d 1244 (11th Cir. 2021) .......................................................................10

*Mann v. Palmer*,
   713 F.3d 1306 (11th Cir. 2013) .........................................................................9

*Mannino v. Passalacqua*,
   101 N.Y.S.3d 381 (N.Y. App. Div. 2019) ........................................................4

*Mori v. Saito*,
   10-cv-6465(KBF), 2013 WL 1736527 (S.D.N.Y. Apr. 19, 2013) .....................8

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) (en banc) ...........................................................4

*Porter v. Alexander*,
   141 S.E. 343 (N.C. 1928)...................................................................................3

*Richardson v. Seattle-First Nat. Bank*,
   38 Wash. 2d 314 (1951).....................................................................................3

*Salma v. Capon*,
   161 Cal. App. 4th 1275 (Ct. App. 2008)............................................................4

*Sec'y, U.S. Dep't. of Labor v. Preston*,
   873 F.3d 877 (11th Cir. 2017) ...........................................................................8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)........................................................................................4, 7

*State v. Klinkenberg*,
   76 Wash. 466 (1913)..........................................................................................4

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................. *passim*

*Trichell v. Midland Credit Mgmt., Inc.*,
    964 F.3d 990 (11th Cir. 2020) ......................................................... 2

*United Cos. Fin. Corp. v. Bergelson*,
    573 So. 2d 887 (Fla. 4th DCA 1990) ............................................. 3

*United States v. Belmont*,
    301 U.S. 324 (1937) ................................................................. 4, 14

*United States v. NEC Corp.*,
    11 F.3d 136 (11th Cir. 1993) ......................................................... 15

*Villarreal v. R.J. Reynolds Tobacco Co.*,
    839 F.3d 958 (11th Cir. 2016) ....................................................... 10

*Williams Mgmt. Enters., Inc. v. Buonauro*,
    489 So. 2d 160 (Fla. 5th DCA 1986) ............................................. 3

**Statutes**

22 U.S.C. § 6022(2) ............................................................................. 7

22 U.S.C. § 6023(1) ............................................................................. 6

22 U.S.C. § 6023(5) ........................................................................... 12

22 U.S.C. § 6023(11) .................................................................... 10, 11

22 U.S.C. § 6023(12)(B) ..................................................................... 11

22 U.S.C. § 6023(13) .......................................................................... 11

22 U.S.C. § 6023(13)(B)(iv) ......................................................... 10, 11

22 U.S.C. § 6082(a)(1)(A) ............................................................ 12, 13

22 U.S.C. § 6082(a)(4)(B) ................................................................... 15

22 U.S.C. § 6082(c)(2) .......................................................................... 6

22 U.S.C. § 6082(d) .............................................................................. 6

22 U.S.C. § 6084 ............................................................................... 7, 8

28 U.S.C. § 1603(b) .............................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(1)...................................................................................................1

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

**Other Authorities**

Restatement (Second) of Torts § 222A.............................................................................3

Restatement (Second) of Torts § 225..............................................................................3

Defendants submit this reply in further support of their motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]

## **PRELIMINARY STATEMENT**

Defendants demonstrated in their motion to dismiss that the Amended Complaint does not plead that Plaintiffs have Article III standing. Defendants' alleged trafficking in real property in Cuba—the RRHSC Property—has caused Plaintiffs no cognizable harm because they do not own that property. There is no concrete injury as the Supreme Court has defined that essential requirement because there is no close common-law analogue to a claim that—like this one—arises from the use of real property that is owned by a third party. Plaintiffs' attempt to analogize their Title III claim to common-law conversion fails, both because that common-law claim requires the ownership interest that Plaintiffs lack, and because common-law conversion is limited to *personal* property. As the Supreme Court recently put it: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

Plaintiffs also lack Article III standing because this lawsuit seeks to remedy an injury that Defendants' alleged trafficking did not cause—the loss of the value of the RRHSC Property when the Cuban Government confiscated it in 1961 plus compound interest running from that date. That was *decades* before Defendants' alleged use of or benefiting from the property began. Plaintiffs' only response is to assert—incorrectly—that the Amended Complaint pleads that Defendant Corporación Habanos, S.A. ("Habanos, S.A.") *is* Cuba. To the contrary, the Amended Complaint establishes that Habanos, S.A. is *not* an agency or instrumentality of Cuba by alleging that Cuba only has an *indirect non-majority* interest in Habanos, S.A. And in any event, the Amended

---

[1]    Capitalized terms have the meanings assigned to them in Defendants' memorandum of law dated April 28, 2021 [DE 91 ("MTD")]. Plaintiffs' opposition [DE 99] is cited as "Opp."

Complaint provides no basis to impute Habanos, S.A.'s alleged status to Imperial or the WPP Defendants.

Defendants also demonstrated in their motion that the Amended Complaint fails to plead the elements of a Title III claim. Plaintiffs offer only insufficient responses, consisting, variously, of unsupportable distorted interpretations of the statutory text, mischaracterizations of the controlling case law, and rank speculation dressed up as "information and belief."

## ARGUMENT

### I.      PLAINTIFFS LACK STANDING BECAUSE THIS LAWSUIT DOES NOT SEEK TO REMEDY ANY CONCRETE INJURY THAT DEFENDANTS HAVE CAUSED

As Defendants have shown, Plaintiffs lack standing because Defendants' alleged "trafficking" in the RRHSC Property has caused them no cognizable harm. MTD at 7–11. Plaintiffs have no *concrete* injury because they do not own the real property that Defendants allegedly used. *Id.* at 8–10. And Defendants' alleged trafficking did not *cause* the injury this lawsuit seeks to remedy, *i.e.*, the loss of the value of the RRHSC Property when the Cuban Government confiscated it, decades before Defendants' alleged trafficking began. *Id.* at 9–11. Plaintiffs offer no substantial response to either showing.

#### A.      Plaintiffs Have Suffered No Concrete Injury Due to the Alleged Use of Real Property That They Do Not Own

Defendants' alleged "trafficking" of the RRHSC Property has caused no concrete harm because Plaintiffs lack an ownership interest in that property. MTD at 8–9. Plaintiffs respond that Title III is "a legislatively created claim designed to compensate victims of Cuba's uncompensated confiscation," Opp. at 7, but a court "'cannot treat an injury as 'concrete' for Article III purposes based only on Congress's say-so.'" *TransUnion LLC,* 141 S. Ct. at 2205 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999 n.2 (11th Cir. 2020)). Rather, Plaintiffs must

identify "a close historical or common-law analogue" to their Title III claim. *See id.* at 2204. This they cannot do.

Plaintiffs rightly do not dispute that the most likely common-law candidates—trespass and unjust enrichment—are *not* closely analogous to a Title III claim because both require an element that is absent here: an ownership interest in the RRHSC Property. *See* MTD at 8–9 & n.5. Plaintiffs are mistaken, however, that the common-law tort of conversion supplies the required analogy. Opp. at 8–10.

Similar to trespass and unjust enrichment, a plaintiff asserting a conversion claim must demonstrate the right to immediate possession and control of the converted property. Restatement (Second) of Torts §§ 222A, 225; *see also Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011) ("[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property."). Here, Plaintiffs do not contend that they own the RRHSC Property. *See* MTD at 4, 8. To the contrary, they rightly acknowledge that Cuba's confiscation deprived them of "possession and title." Opp. at 9.

Moreover, this Title III claim arises from Defendants' alleged use of real property—the RRHSC Property. Yet, as the cases cited by Plaintiffs reflect, common-law conversion consists of wrongful interference with "another's possessory rights in *personal property*." *Williams Mgmt. Enters., Inc. v. Buonauro*, 489 So. 2d 160, 161 (Fla. 5th DCA 1986) (emphasis added).[2] At common law, "real property cannot be the subject of conversion." *United Cos. Fin. Corp. v.*

---

[2] *See also Porter v. Alexander*, 141 S.E. 343, 344 (N.C. 1928) ("The law of conversion was developed through the common-law action of trover, which was applicable to cases in which the plaintiff had lost *goods* that were afterwards found and appropriated by the defendant.") (emphasis added). Plaintiffs cite conversion cases involving a vehicle, *see Richardson v. Seattle-First Nat. Bank*, 38 Wash. 2d 314, 315 (1951), jewelry, *see Danopulos v. Am. Trading II, L.L.C.*, 69 N.E.3d 157, 158 (Ohio Ct. App. 2016), and cash, *see In re Newpower*, 233 F.3d 922, 926 (6th Cir. 2000).

*Bergelson*, 573 So. 2d 887, 888 (Fla. 4th DCA 1990) (citation omitted).[3] Similarly, "[r]eal property under the English law was never the subject of" larceny because it is "incapable of larcenous asportation." *State v. Klinkenberg*, 76 Wash. 466, 469–70 (1913).

Plaintiffs are correct that their Title III claim need not be "an exact duplicate" of a common-law claim. *TransUnion LLC*, 141 S. Ct. at 2204, 2209; *see* Opp. at 7, 9. But when—as here—the statute omits an element that is "'essential to liability'" at common law, the purported statutory injury lacks the required concreteness. *TransUnion LLC*, 141 S. Ct. at 2209; *see also* MTD at 9 & n.6. Title III omits not one but *two* essential elements of a common-law conversion claim, *supra* at 3, rendering the analogy "strained," and depriving Plaintiffs of standing. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (en banc).

Plaintiffs are also wrong to analogize Title III to the federal and state constitutional claims that may be available with respect to certain *domestic* governmental takings. Opp. at 8–9 (citing *Appeal of Lord*, 368 Pa. 121 (1951)). Claims arising from a *foreign* government's taking of the property of its *own* nationals have long been barred by the domestic takings rule. *See Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709–11 (2021); *United States v. Belmont*, 301 U.S. 324, 332 (1937). Plaintiffs tacitly concede that the Cuban Government confiscated the RRHSC Property from a Cuban national. Opp. at 19. Therefore, their Title III claim assuredly does not bear the required "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 141 S. Ct. at 2204 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

---

[3]     *See also Mannino v. Passalacqua*, 101 N.Y.S.3d 381, 384 (N.Y. App. Div. 2019) ("An action sounding in conversion does not lie where the property involved is real property."); *Salma v. Capon*, 161 Cal. App. 4th 1275, 1295 (Ct. App. 2008) ("The tort of conversion applies to personal property, not real property.").

Finally, Plaintiffs are not assisted by citing inapposite cases that: (a) involved a plaintiff that—unlike Plaintiffs before this Court—was suing in respect of a claim certified by the Foreign Claims Settlement Commission, MTD at 10 n.8; (b) incorrectly deferred to Congress on the question of whether an injury is concrete, *id.*; and (c) did not address Defendants' argument that a Title III plaintiff suing in respect of real property that it does not own suffers no "concrete" injury as the Supreme Court's recent jurisprudence defines that requirement because there is no close common-law analogue to such a novel claim, *id.* at 9 n.7.

**B.    The Article III Causation Requirement Is Also Not Satisfied Because This Lawsuit Seeks to Remedy an Injury Caused by Cuba's Acts of Confiscation, Not by Defendants' Subsequent Alleged Trafficking**

Defendants have shown that Plaintiffs lack standing for the additional reason that this lawsuit does not seek to remedy any injury caused by Defendants' alleged trafficking in the RRHSC Property. MTD at 9–11. To the contrary, Plaintiffs demand damages based on the value of the property when the Cuban government confiscated it in 1961 plus compound interest from that date—decades before Defendants' alleged trafficking began. *Id*.

Far from arguing that this lawsuit seeks to remedy an injury caused by Defendants—a core requirement for Article III standing, *see id.* at 7—Plaintiffs acknowledge that Congress enacted Title III "in order to compensate victims of the *Cuban government's* uncompensated confiscation of property." [DE 100 at 2 (emphasis added)].[4] The causation requirement of Article III standing is not satisfied when—as here—the injury sought to be remedied was caused by a third party. MTD at 11. Article III confers no "freewheeling power to hold defendants accountable for legal

---

[4]    *See also* Opp. at 7 (conceding that Title III is "a legislatively created claim designed to compensate victims of *Cuba's* uncompensated confiscation") (emphasis added).

infractions," only "the power to redress harms that *defendants* cause *plaintiffs*." *TransUnion LLC*, 141 S. Ct. at 2205 (emphases added).

Plaintiffs cannot circumvent the limitations of Article III by asserting incorrectly that "Defendant Habanos is deemed to be Cuba for purposes of this HBA claim." Opp. at 7; *see id.* at 4 & n.2. This argument fails on every level. The Amended Complaint conclusively establishes that Habanos, S.A. is *not* an agency or instrumentality of Cuba, by alleging that the Cuban interest in Habanos, S.A. is only fifty percent, and that it is not directly owned by Cuba itself but rather by Tabacuba, a Cuban company. Am. Comp. ¶ 7. "[O]nly *direct* ownership of a *majority* of shares by the foreign state satisfies the statutory requirement." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (emphasis added); *see also In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1083, 1091 & n.7 (N.D. Ill. 1995) (entity is an agency or instrumentality only if foreign state owns "*more than 50%* of its shares") (emphasis added).[5] Moreover, under Title III, "agency or instrumentality" status has only limited procedural implications pertaining to service of process and enforcement, 22 U.S.C. § 6082(c)(2), (d), not the open-ended consequences that Plaintiffs imagine. And in any event, the Amended Complaint pleads no basis to pierce the corporate veil between Habanos, S.A. and Imperial [DE 88 at 7–8], much less to impute to Imperial acts of confiscation that Cuba committed in 1961, decades before Imperial had an indirect

---

[5]     Title III defines "agency or instrumentality" by reference to the definition in the Foreign Sovereign Immunities Act ("FSIA"). *See* 22 U.S.C. § 6023(1); 28 U.S.C. § 1603(b). The FSIA's definition of "agency or instrumentality," which was the subject of the Supreme Court's ruling in *Dole*, defines an "agency or instrumentality" in relevant part as any entity "which is a separate legal person, corporate or otherwise," "a *majority* of whose shares or other ownership interest is owned *by a foreign state* or political subdivision thereof[.]" 28 U.S.C. § 1603(b) (emphasis added).

        Moreover, even if the Amended Complaint alleged that Habanos, S.A. is an agency or instrumentality, the Eleventh Circuit has made clear that Cuban agencies or instrumentalities must be regarded as separate from the Cuban Government. *See Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277, 1286–89 (11th Cir. 1999); *see also Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1342–43 (11th Cir. 2015); MTD at 19.

shareholding in Habanos, S.A. Nor is there any basis to impute such acts to the WPP Defendants, which are not alleged to have any ownership or control over Habanos, S.A.

*     *     *

Congress intended Title III to "strengthen international sanctions against the Castro government," 22 U.S.C. § 6022(2), by discouraging foreign investment in Cuba, MTD at 3. But when, as here, Defendants' alleged trafficking has caused Plaintiffs no harm because they do not own the RRHSC Property, Plaintiffs cannot bring suit "to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via the statutory damages)." *TransUnion LLC*, 141 S. Ct. at 2206 (quoting *Spokeo, Inc.,* 578 U.S. at 345 (Thomas, J., concurring)). Permitting this suit to proceed against Defendants in the absence of concrete harm caused to Plaintiffs by Defendants' alleged trafficking would "flout constitutional text, history, and precedent." *Id.* This lawsuit should therefore be dismissed.

## II.  THE AMENDED COMPLAINT DOES NOT STATE A TITLE III CLAIM

Defendants have also shown that Plaintiffs fail to state a claim because this case is barred by the Title III statute of repose, MTD at 12–15, and because Plaintiffs cannot plead several essential elements of their Title III claim, *id.* at 15–24. Plaintiffs have no substantial response.

### A.  Plaintiffs Cannot Satisfy the Two-Year Statute of Repose by Speculating That the Alleged Trafficking Might Have Continued Beyond 2010

The Title III statute of repose provides that a claim "may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." 22 U.S.C. § 6084. This is fatal, as the Amended Complaint contains no factual allegation that Defendants were trafficking in the RRHSC Property in the two years preceding this suit. MTD at 12–15.

Plaintiffs do not contend that they have alleged—or that they have any factual basis to allege—trafficking by Defendants during the repose period. Instead, they insist that there is no

7

need to plead compliance with a *statute of limitations*, which provides an affirmative defense to a claim. Opp. at 10–11. Alternatively, Plaintiffs contend that because the RRHSC Property is "in Cuba," the Court should credit their unsupported "information and belief" that whatever use Habanos, S.A. was allegedly making of the RRHSC Property in 2010, Am. Compl. ¶ 53, continued through August 2018. MTD at 11–12. They are wrong.

First, unlike the affirmative defense provided by a statute of limitations, a statute of repose like § 6084 "acts as a condition precedent to the action itself." *Bryant v. United States*, 768 F.3d 1378, 1383 (11th Cir. 2014) (quotations and citation omitted) (applying state law). Section 6084 is a statute of repose because it runs from the time when Defendants' conduct (the alleged trafficking) ended, not from when the claim accrued. *See Sec'y, U.S. Dep't. of Labor v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) ("Whereas a statute of limitations establishes a time limit 'based on the date when *the claim accrued*,' a statute of repose bars 'any suit that is brought after a specified time *since the defendant acted*,' without regard to any later accrual.") (emphasis in original). Where "a statute of repose applies, there is no claim at all and it is appropriate to dismiss for failure to state a claim." *In re British Am. Ins. Co. Ltd.*, 607 B.R. 753, 756 (S.D. Fla. Bankr. 2019) (applying state law); *see also Mori v. Saito*, 10-cv-6465(KBF), 2013 WL 1736527, at *3–5 (S.D.N.Y. Apr. 19, 2013) (dismissing federal securities claims for failure to "affirmatively plead" compliance with the statute of repose).[6]

---

[6]      *See also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203, 208 (S.D.N.Y. 2014) (federal statute of repose "is a substantive element of the claim that frees a defendant from liability after a fixed period of time"); *Barnett v. Blane*, 11-cv-14345, 2012 WL 12862653, at *6–7 (S.D. Fla. July 3, 2012) (dismissing claims barred by the statute of repose because "[s]tatutes of repose by their nature reimpose on some plaintiffs the hardship of having a claim extinguished before it is discovered, or perhaps before it even exists") (quotations and citation omitted).

Second, the fact that the Amended Complaint does not affirmatively "plead that Defendants use of the Property ceased in 2010 nor at any other time before October 2020," Opp. at 10–12, does not permit the inference that the use Habanos, S.A. was allegedly making of the RRHSC Property in February 2010, Am. Compl. ¶ 53, continued into the repose period. Contrary to Plaintiffs' contention, they have not properly alleged upon "information and belief" that Defendants were trafficking in the RRHSC Property during the repose period. Opp. at 11–12. Information-and-belief pleading is only allowed "where the information is 'in exclusive control of the defendant and cannot be possessed by other entities.'" *Davis v. Boston Sci. Corp.*, 2:17-cv-682-FTM-38CM, 2018 WL 3155683, at *4–5 (M.D. Fla. June 28, 2018) (citation omitted). But the materials exhibited to the Amended Complaint show that the RRHSC Property is a city-block-sized building on a public street, and that it bears signage identifying who is using it. Am. Compl. Ex. 2. In addition, as to Plaintiffs' observation that the RRHSC Property "is in Cuba," Opp. at 12, "[t]he Eleventh Circuit has repeatedly noted that difficulty in obtaining information is not the same as the inability to do so." *Davis*, 2018 WL 3155683, at *4 (citing cases).

Moreover, "information and belief" allegations should be disregarded as speculation when—as here—they are not accompanied by facts that show the asserted belief to be plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). Here, Plaintiffs are speculating, because they cannot make a good-faith factual allegation that the use that Habanos, S.A. was allegedly making of the RRHSC Property in February 2010 continued through August 2018.

**B.     Because All of the Alleged Conduct Was Performed by Cuban Companies, Plaintiffs Cannot Plead the "Trafficking" Element of Their Title III Claim**

As Defendants have shown, the Amended Complaint does not plead the essential element of "trafficking," because the alleged conduct was assertedly performed by Defendant Habanos, S.A., and/or non-party Tabacuba—Cuban corporations whose conduct is categorically excluded

from the statutory definition of trafficking in 22 U.S.C. § 6023(13)(B)(iv). MTD at 15–16. Plaintiffs do not deny that all of the asserted liability in this case flows from the alleged conduct of these two Cuban corporations. Instead, they fault Defendants for relying on the plain language of § 6023(13)(B)(iv), and ask the Court to subvert the statutory text by reference to Congress's supposed purpose. Opp. at 14–15.

The Court should not eschew the plain meaning of § 6023(13)(B)(iv) on the basis that Plaintiffs believe that a different interpretation would better promote Congress's goal of deterring foreign investment in Cuba. Opp. at 13. A court's "job is to follow the text even if doing so will supposedly undercut a basic objective of the statute." *Baker Botts, L.L.P. v. ASARCO* LLC, 576 U.S. 121, 135 (2015) (internal quotations omitted). As the Eleventh Circuit has said, "[e]levating general notions of purpose over the plain meaning of the text is inconsistent with our judicial duty to interpret the law as written." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969–70 (11th Cir. 2016).[7]

Here, the statutory text is clear. "Trafficking" excludes "transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba." 22 U.S.C. § 6023(13)(B)(iv). A "person," is "any person *or entity,* including any agency or instrumentality of a foreign state." *Id.* § 6023(11) (emphasis added). It is common ground that Habanos, S.A., and Tabacuba are Cuban "entities." Therefore, their alleged conduct is not trafficking.

---

[7]     Contrary to Plaintiffs' misapprehension, Opp. at 14, "context" is relevant in the sense that a statute should be interpreted as a whole, *In re Shek*, 947 F.3d 770, 777 (11th Cir. 2020) (cited in Opp. at 14), but that does not permit supposed Congressional purpose to trump the statutory text. "The inquiry both begins and ends with a careful examination of the statute's language." *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021).

Plaintiffs' alternative interpretation of § 6023(13)(B)(iv)—as exempting individual residents of confiscated residential property from Title III claims provided that property is not the subject of a certified claim—is not supportable. Opp. at 14–15. A different section of the statute—§ 6023(12)(B)—performs that role.[8] Under Plaintiffs' proposed interpretation, § 6023(13)(B)(iv) would duplicate § 6023(12)(B), in violation of the surplusage canon. *In re Shek*, 947 F.3d at 777. Further, Plaintiffs' proposal to limit "person" as used in § 6023(13)(B)(iv) to "individual Cuban residents," Opp. at 14, is contrary to the statute, which provides that "person" means "any person *or entity, including any agency or instrumentality of a foreign state*." 22 U.S.C. § 6023(11) (emphasis added). The inclusion of agencies and instrumentalities in the definition of "person," *id.,* also dooms Plaintiffs' contention that § 6023(13)(B)(iv) is inapplicable because Habanos, S.A. is an agency or instrumentality of Cuba. Opp. at 15. That contention also fails because the Amended Complaint pleads that Habanos, S.A. is *not* an agency or instrumentality of Cuba in any event. *Supra* at 6.

### C. Plaintiffs Do Not Plead that Defendants Knowingly and Intentionally Trafficked in Confiscated Property to Which a U.S. National Owns a Claim

Defendants have shown that the Amended Complaint does not allege that they "knowingly and intentionally" trafficked in confiscated property without the authorization of a U.S. national who holds a claim to the property. MTD at 16–20; *see* 22 U.S.C. § 6023(13).

There is no merit to Plaintiffs' contention that no further allegation of knowledge and intention "could possibly be necessary" because they have established that Habanos, S.A. "is statutorily deemed to be the Cuban Government itself." Opp. at 16. As shown, the Amended

---

[8]    Section 6023(12)(B) provides that "'property' does not include real property used for residential purposes," unless the claim to such property has been certified under Title V of the International Claims Settlement Act of 1949. 22 U.S.C. § 6023(12)(B).

Complaint affirmatively pleads facts showing that Habanos, S.A. is *not* an agency or instrumentality of the Cuban Government, *supra* at 6, and therefore does not plead that Habanos, S.A. is the "Cuban Government," 22 U.S.C. § 6023(5).

Moreover, the effect of including agencies and instrumentalities within the defined term "Cuban Government," 22 U.S.C. § 6023(5), is not to impute Cuba's knowledge to its agencies and instrumentalities, but rather to ensure that property confiscated by those agencies and instrumentalities is subject to claims under Title III, 22 U.S.C. § 6082(a)(1)(A), subject to the limitations of the FSIA. And in any event, the Amended Complaint pleads no basis to impute Habanos, S.A.'s purported knowledge to Imperial or to the WPP Defendants, *supra* at 6–7.

Plaintiffs are equally mistaken in their contention that the 1961 official announcement of the confiscation of RRHSC, which in turn allegedly owned the RRHSC Property, establishes that Defendants "knowingly and intentionally" trafficked in confiscated property without the authorization of a U.S. national who holds a claim to the property. Opp. at 16–17. As several courts have recognized, the "knowingly and intentionally" element would have no meaning if it were satisfied by allegations that it is common knowledge that most property in Cuba was confiscated. MTD at 17. Yet that is all the official announcement reflects. Moreover, the 1961 announcement does not reflect the confiscation of the RRHSC Property that Defendants allegedly trafficked. Plaintiffs offer nothing but insufficient speculation that Defendants might have had access to other unspecified documents that could have permitted them to draw a connection between RRHSC and the real property they allegedly used. MTD at 18.

Lastly, Plaintiffs concede that the Amended Complaint fails to allege that Defendants knew that a U.S. national held a claim to the RRHSC Property. Opp. at 18. They are mistaken, however, that § 6023(13) imposes no such requirement. Section 6023(13)(A) defines trafficking by reference

to what a defendant must do "knowingly and intentionally" vis-à-vis confiscated property, including failing to obtain authorization from the U.S.-national claimant to the property. As the Supreme Court has recognized, as "a matter of ordinary English grammar," it is "natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). Just so here.

Moreover, Plaintiffs' interpretation would impermissibly render meaningless the language in § 6023(13)(A) "without the authorization of any U.S. national who hold a claim to the property." *See In re Shek*, 947 F.3d at 777. The main operative provision of Title III already makes clear that only U.S. nationals can assert claims. 22 U.S.C. § 6082(a)(1)(A). The reference to U.S. nationals in § 6023(13)(A) adds nothing, unless it is to require that the defendant *know* that a U.S. national holds a claim and traffic in the property regardless.[9]

### D.   The Amended Complaint Also Does Not Plead the Ownership Element of Plaintiffs' Title III Claim

As Defendants have shown, the Amended Complaint does not allege either that (i) the RRHSC Property was confiscated from a U.S. national or (ii) Plaintiffs now own this Title III claim. MTD at 20–24. As Plaintiffs have no genuine response, the Amended Complaint should be dismissed, as several other Title III actions have been under similar circumstances. MTD at 20 (collecting cases).

#### 1.   This action should be dismissed because Plaintiffs cannot allege that the RRHSC Property was confiscated from a U.S. national

Defendants have shown that Congress legislated consistent with the domestic takings rule by limiting Title III claims to trafficking in property that the Cuban Government confiscated from

---

[9]   If the intention had been to clarify that a U.S. national who has consented to the use of confiscated property cannot assert a Title III claim, then that would more naturally have been included in § 6023(13)(B), which identifies conduct that does *not* constitute trafficking.

U.S. nationals, not from Cuban nationals. MTD at 20–22. Dismissal is required, as Plaintiffs concede that neither the RRHSC Property nor RRHSC was owned by a U.S. national at the time the Cuban Government confiscated them. Opp. at 19.

Plaintiffs mistakenly argue that the domestic takings rule is irrelevant because this claim is not asserted against Cuba itself so that there is "no relevant 'immunity' issue." Opp. at 19. The domestic takings rule is not a rule of sovereign immunity. It bars *private* claims arising from a foreign government's taking of the property of its own citizens, *see*, *e.g.*, *Belmont*, 301 U.S. at 328, *and* claims against the expropriating sovereign, *Philipp*, 141 S. Ct. at 709–11.[10] Just as the FSIA did not "purport[] to alter" the domestic takings rule, *id.* at 711, Title III evinces no Congressional intention to abrogate the domestic takings rule to permit claims arising from the Cuban Government's confiscation of property from its own citizens, MTD at 21–22.

### 2.     This action should also be dismissed because Plaintiffs cannot plead that they own the claim that they purport to assert

Defendants have shown that this action should be dismissed because, based on the allegations in the Amended Complaint, Plaintiffs cannot show that they—as opposed to RRHSC— own any claim arising from trafficking in the RRHSC Property. MTD at 22–23. Plaintiffs' only response is unavailing. They misplace their reliance on *Exxon Mobil Corp.*, which determined a question that does not arise here—that Cuba's confiscation of some but not all of the assets of a non-Cuban corporation did not constitute an expropriation of that corporation from its U.S. parent for purposes of public international law and of the FSIA expropriation exception. 2021 WL 1558340 at *17–19. *Exxon Mobil Corp.* does not explain how Plaintiffs could have a Title III claim

---

[10]     *Exxon Mobil Corp. v. Corporación CIMEX S.A.*, 19-cv-01277 (APM), 2021 WL 1558340 (D.D.C. Apr. 20, 2021), mistakenly relied upon by Plaintiffs, did not concern the domestic takings rule at all.

with respect to alleged trafficking in real property that belonged, not to Plaintiffs nor even to their Cuban ancestor, but rather to a separate Cuban legal entity, RRHSC.

Defendants have also shown that this Court should dismiss the claims of those Plaintiffs who concededly acquired their claims after the March 12, 1996 statutory cutoff, as several other courts have done under similar circumstances. MTD at 24. Plaintiffs assert that those other courts "did not consider binding Eleventh Circuit law," Opp. at 20—a peculiar argument, given that one of those courts was the Eleventh Circuit itself. *Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1011–12 (11th Cir. 2021). In any event, the federal common-law "survival" rule discussed in *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993), applies only "[i]n the absence of an expression of contrary intent." *Id.* Title III provides just such an expression, by requiring the U.S. national plaintiff to "acquire[]" ownership of the claim before March 12, 1996, without excluding claims acquired through inheritance. 22 U.S.C. § 6082(a)(4)(B).

## **CONCLUSION**

For all of these reasons, the Court should dismiss the Amended Complaint without further leave to amend, and grant such other and further relief as the Court may consider appropriate.

Dated: July 16, 2021
     Miami, Florida

/s/ Mark F. Raymond
NELSON MULLINS BROAD AND CASSEL
Mark F. Raymond
mark.raymond@nelsonmullins.com
Jonathan Etra
jonathan.etra@nelsonmullins.com
2 South Biscayne Blvd. 21st Floor
Miami, FL 33131
Telephone: 305-373-9400

ALLEN & OVERY LLP
Andrew Rhys Davies (admitted *pro hac vice*)
andrewrhys.davies@allenovery.com
Justin L. Ormand (admitted *pro hac vice*)
justin.ormand@allenovery.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-610-6300

*Attorneys for Defendant Imperial Brands plc*

/s/ Charles Murray Harris, Jr.
TRENAM KEMKER SCHARF BARKIN
FRYE O'NEILL & MULLIS
Charles Murray Harris, Jr.
charris@trenam.com
Stephanie Crane Lieb
slieb@trenam.com
101 E Kennedy Boulevard
Tampa, FL 33601-1102
Telephone: (727) 820-3950

RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
Michael R. Krinsky (admitted *pro hac vice*)
mkrinsky@rbskl.com
Lindsey Frank (admitted *pro hac vice*)
lfrank@rbskl.com
14 Wall Street, Suite 3002
New York, NY 10005
Telephone: (212) 254-1111

*Attorneys for Defendant Corporación Habanos,
S.A.*

/s/ Naim S. Surgeon
AKERMAN LLP
Naim S. Surgeon (Florida Bar No. 101682)
naim.surgeon@akerman.com
Pedro Freyre (Florida Bar No. 192140)
pedro.freyre@akerman.com
3 Brickell City Centre
98 Southeast 7th St., Suite 1100
Miami, Florida 33131
Telephone: 305-982-5507

WILMER CUTLER PICKERING HALE AND
DORR LLP
Christopher Davies (admitted *pro hac vice*)
christopher.davies@wilmerhale.com
Jessica Lutkenhaus (admitted *pro hac vice*)
jessica.lutkenhaus@wilmerhale.com
Ashley McLaughlin Leen (admitted *pro hac vice*)
ashley.leen@wilmerhale.com
1875 Pennsylvania Ave NW
Washington, DC 20006
Telephone: (202) 663-6000

*Attorneys for Defendants WPP PLC, Young &
Rubicam LLC, and BCW LLC, a/k/a Burson Cohn
& Wolfe LLC*