# EXHIBIT B

```
 1            UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF FLORIDA
 2
          CASE NO.:  1:20-cv-23287-DPG-AMO
 3

 4   LUIS MANUEL RODRIGUEZ, et al.,

 5         Plaintiffs,

 6   -vs-

 7   IMPERIAL BRANDS PLC, et al.,

 8         Defendants.
     _____/
 9

10

11                        Esquire Deposition Solutions
                          Remote Proceeding
12                        Zoom Videoconference

13                        Wednesday, November 24, 2021
                          10:05 a.m.
14

15

16   VIDEOCONFERENCE DEPOSITION OF JAMES BELLINGHAUSEN

17           AS CORPORATE REPRESENTATIVE OF

18                 YOUNG & RUBICAM, LLC

19

20        Taken remotely before Matthew J. Haas,

21   Notary Public in and for the State of Florida at

22   Large, pursuant to Notice of Taking Deposition in

23   the above cause.

24

25
```



```
 1        Q.    How are you aware of his position,
 2   Mr. Solis's position, with VMLY&R, S.L.?
 3        A.    As part of my declaration in trying
 4   to confirm the -- trying to confirm whether or
 5   not Habanos or Imperial were clients of Y&R, LLC,
 6   when it became evident that they were not clients
 7   of VMLY&R, LLC, I did reach out to confirm with
 8   him.
 9        Q.    When did this conversation take
10   place?
11        A.    It was actually just an email
12   exchange, and the email exchange was around
13   February -- I believe that was February of this
14   year.
15        Q.    Can you summarize the emails?
16        A.    The email was just trying to confirm
17   whether Habanos had been a client of VMLY&R, S.L.
18        Q.    And what was Mr. Solis's response?
19        A.    He did confirm that from -- I think
20   from 2016, as I recall the date, through January
21   of 2021, that Habanos had been a client but was
22   no longer a client of the office.
23        Q.    Was there anyone else involved in
24   those emails?
25        A.    I believe he copied counsel when
```



```
 1   distinction used by the VMLY&R network?
 2        A.    Yes, it is -- it is an internal
 3   distinction.
 4        Q.    Can you tell me how many offices
 5   Y&R, LLC has in Florida?
 6        A.    To my knowledge Y&R, LLC has one
 7   office in Florida.
 8        Q.    Can you tell me how many employees
 9   Y&R, LLC has in Florida?
10        A.    As of December 31, 2020, Y&R, LLC
11   had approximately 119 employees in the Miami
12   office.
13        Q.    Can you tell me how many offices
14   VML, LLC has in Florida?
15        A.    VML, LLC has no office in Florida.
16        Q.    Can you tell me if any other group
17   under the VMLY&R network has an office in
18   Florida?
19        A.    The North America -- to my knowledge
20   there's no other VMLY&R office in Miami other
21   than the one that we've talked about.
22        Q.    Let's move to your next declaration
23   dated April 28, 2021.  I'm going to place it into
24   the chat.
25        A.    Is it okay if I retrieve that one?
```



1      Q.   Does VMLY&R, S.L., report to
2  Mr. Himpe -- I'm sorry, his name is?
3      A.   Himpe.
4      Q.   Himpe?
5      A.   H-I-M-P-E.
6      Q.   H-I-M-P-E.  Thank you.  I'll repeat
7  the question, then.
8           Does VMLY&R, S.L., report to Stefan
9  Himpe?
10          MR. DAVIES:  Objection.
11          THE WITNESS:  No, VMLY&R, S.L., does
12     not report directly to Mr. Himpe.
13 BY MR. BERENTHAL:
14     Q.   Do you know if there are any Spanish
15 organizations that do report to Mr. Himpe?
16     A.   To my knowledge, there are no
17 Spanish organizations that report directly to
18 Mr. Himpe, no.
19     Q.   Where is Mr. Himpe located?
20     A.   In New York.
21     Q.   He's the global chief financial
22 officer of VMLY&R; is that correct?
23     A.   Global chief financial officer of
24 VMLY&R, that's correct.
25     Q.   Do you know what his



```
 1              But depending on what the billing
 2         arrangements were, generally the client
 3         might want centralized billing, we would
 4         bill the local office or the other office
 5         for the work on whatever the agreed-upon
 6         amount was.
 7    BY MR. BERENTHAL:
 8         Q.    Turning your --
 9         A.    And we obviously set up job numbers
10    to record the time.  Those job numbers would
11    reference the client, it wouldn't reference a
12    specific office.
13         Q.    I'm going to ask you to turn your
14    attention to Paragraph 20.  You make the
15    statement in the last sentence, "VMLY&R has not
16    performed any work in the U.S. for Habanos or
17    Imperial."
18              Has VMLY&R performed work for
19    Habanos or Imperial outside the United States?
20              MR. DAVIES:  Objection.
21              MR. ANDREW RHYS DAVIES:  Objection,
22         vague as to Imperial.
23              MR. DAVIES:  Matthew, did you get
24         both Andrew's objection and mine?
25              THE COURT REPORTER:  I did.
```



```
 1              MR. DAVIES:  Thanks.
 2              THE WITNESS:  I think, as I stated
 3        earlier, I did have an email exchange with
 4        Luis Solis who confirmed that Habanos was a
 5        client of VMLY&R, S.L., so I am aware of
 6        that relationship.
 7   BY MR. BERENTHAL:
 8        Q.    Let's move on to Paragraph 21.  You
 9   refer to an email address that is cited in the
10   amended complaint, press.habanos@yr.com.
11              Can you tell me what the yr.com
12   signifies in that email address?
13              MR. DAVIES:  Objection.
14              THE WITNESS:  That is the domain
15        name.
16   BY MR. BERENTHAL:
17        Q.    Do you know whose domain name is
18   yr.com?
19        A.    Y&R, LLC has paid for the licensing
20   of that domain name.
21        Q.    So the yr.com domain belongs to Y&R,
22   LLC, correct?
23        A.    That is correct.
24        Q.    Did you check your systems for the
25   existence of a press.habanos@yr.com email
```



```
 1   VMLY&R Madrid, S.L.?
 2           A.    Yes.
 3           Q.    You state here in Paragraph 24 that
 4   during your inquiry, you were able to confirm
 5   that a foreign corporation, VMLY&R, S.L.,
 6   previously had Habanos as a client.  How did you
 7   confirm this?
 8           A.    That was through an email exchange
 9   with Luis Solis, the chief financial officer of
10   VMLY&R, S.L.
11           Q.    Did you initiate the email?
12           A.    No, he initiated the email.
13           Q.    He emailed you directly?
14           A.    Yes, he had emailed me along with
15   counsel.
16           Q.    Was this in response to any inquiry
17   regarding Habanos, Corporacion Habanos, S.A., as
18   a client?
19           A.    Yes, after -- you know, after the
20   results of the investigation of the email
21   indicated three employees that were in Spain,
22   we made the inquiry to Luis as to whether Habanos
23   was a client of VMLY&R, S.L.
24           Q.    You made the inquiry to Mr. Solis?
25           A.    I think he had discussions with
```



1     Q.    Mr. Bellinghausen, just a few
2  questions here before we close out.  First, I'd
3  like to ask you a couple of questions about
4  employment matters.
5           Can anyone at Y&R, LLC hire
6  employees on behalf of Y&R, S.L., of Spain?
7     A.    No, they can not.
8     Q.    Can anyone at Y&R, LLC fire
9  employees of Y&R, S.L., Spain?
10    A.    No, they cannot.
11    Q.    Does anyone at Y&R, LLC prepare the
12 financial statements of Y&R, S.L., of Spain?
13    A.    No, they do not.
14    Q.    Does Y&R, LLC provide funding to
15 Y&R, S.L., of Spain?
16    A.    No, it does not.
17    Q.    Does Y&R S.L., Spain provide funding
18 to Y&R, LLC?
19    A.    No, it does not.
20    Q.    Does Y&R, LLC guarantee the loans of
21 Y&R, S.L., of Spain?
22    A.    No, it does not.
23    Q.    And does Y&R, S.L., Spain guarantee
24 loans on behalf of Y&R, LLC?
25    A.    No, it does not.



```
 1                     CERTIFICATE OF OATH

 2                      BY NOTARY PUBLIC

 3

 4   STATE OF FLORIDA
     COUNTY OF MIAMI-DADE
 5

 6        I, the undersigned authority, certify that

 7   JAMES BELLINGHAUSEN remotely appeared before me

 8   and was duly sworn.

 9

10        WITNESS my hand and official seal this 2nd day

11   of December, 2021.
```



_____

MATTHEW J. HAAS
Court Reporter
Notary Public
Commission No. HH87002
Expires:  February 8, 2025

```
 1              COURT REPORTER'S CERTIFICATE

 2

 3              I, Matthew J. Haas, court reporter in

 4   and for the State of Florida, certify that I was

 5   authorized to and did stenographically report the

 6   deposition of JAMES BELLINGHAUSEN; that a review

 7   of the transcript was not requested; and that the

 8   transcript is a true and complete record of my

 9   stenographic notes.

10

11              I further certify that I am not a

12   relative, employee, attorney or counsel of any of

13   the parties, nor am I a relative or employee of

14   any of the parties' attorney or counsel connected

15   with the action, nor am I financially interested

16   in the action.

17

18

19              Dated this 2nd day of December,

20   2021.

21

22

23   _____

24                MATTHEW J. HAAS
                  Court Reporter
25
```

