UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

(Jury Trial Demanded)

LUIS MANUEL RODRIGUEZ, et al.,          Case No.: 1:20-cv-23287(DPG)(AMO)


        Plaintiffs,

v.

IMPERIAL BRANDS PLC, et al.,

        Defendants.

_____/

## SECOND AMENDED COMPLAINT

Plaintiffs, LUIS MANUEL RODRIGUEZ, MARIA TERESA RODRIGUEZ, a/k/a MARIA TERESA LANDA, ALFREDO RAMON FORNS, RAMON ALBERTO RODRIGUEZ, RAUL LORENZO RODRIGUEZ, CHRISTINA CONROY, and FRANCISCO RAMON RODRIGUEZ, sue Defendants, IMPERIAL BRANDS PLC, CORPORACIÓN HABANOS, S.A., WPP PLC, YOUNG & RUBICAM LLC, and BCW LLC, a/k/a BURSON COHN & WOLFE LLC, and allege as follows:

## Introduction

1.      Plaintiffs (collectively, the "Rodriguez Family") are the heirs and successors of Ramón Rodriguez Gutiérrez ("RRG") and the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita[1] ("RRHSC"). Before 1961, RRHSC owned and operated the former Partagás cigarette factory building (the "RRHSC Property") in Havana.[2]

_____

[1]      Ramon Rodriguez and Sons, a Limited Partnership.

[2]      A picture of Partagás cigarette boxes with a drawing of the Partagás (RRHSC) factory and a photograph of the factory believed to have been taken in the 1950s is shown at Composite Exhibit 1.

2.      In 1955, RRHSC erected a modern mixed-use building adjacent and connected to the main building of the Partagás factory at the corner of Calle 23 y 16 (23rd Street and 16th). The new building's structure included a ground level garage for the factory's fleet of trucks, a storage facility, a mezzanine suite of executive offices and a six-story tower, all of which are contained within the RRHSC Property.[3] Today, the RRHSC Property, rebranded "Empresa de Tabaco Torcido 'José Martí,'" prominently displays the names Tabacuba (the Cuban state tobacco monopoly company), La Vega (the Cuban state tobacco leaf monopoly company) and H. Upmann on its façade.[4]

3.      After taking control of power in 1959, the Castro Regime and Cuba's communist government systematically "nationalized" the major privately-owned business enterprises in Cuba without compensation to the lawful owners of the property. In 1961, as part of its takeover of the entire tobacco industry, the Castro government confiscated ownership of RRHSC and the RRHSC Property. Before the RRHSC Property was confiscated, the Partagás factory produced world-renowned cigarettes under the Partagás brand and had grown to become the third largest manufacturer of cigarettes in Cuba with a 16.3% share of the market.

4.      The Rodriguez Family are the owners of a "Claim" under the Cuban Liberty and Democratic Solidarity Act also known as the Helms-Burton Act (the "Liberty Act" or "Libertad

---

[3]   A picture of the modern mixed-use building that was erected as an annex to the main Partagás cigarette factory is shown at Composite Exhibit 2. The photographs at Composite Exhibit 2 were taken in December 2019.

[4]   Pictures of the modern façade are shown at Composite Exhibit 3.

Act") due to the Cuban government's confiscation and trafficking in the RRHSC Property.[5] The

Liberty Act took effect in 1996:

> It is the purpose of statute to deter third party foreign investors from
> trafficking in the confiscated property (defined as '**purchas[ing] an
> equity interest in, manag[ing], or enter[ing] into joint ventures**
> using property and assets some of which were confiscated from
> United States nationals.')

*Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting

22 U.S.C. § 6081(5)); *see also* 22 U.S.C. § 6022(6) (Liberty Act is designed "to protect United

States nationals against confiscatory takings and the wrongful trafficking in property confiscated

by the Castro regime.").

     5.     In 2007, Defendant Imperial Brands PLC ("Imperial"), well-aware of the Liberty

Act, purchased a company known as Altadis S.A ("Altadis"). At the time, Altadis had a "50%

ownership interest in [Corporación Habanos S.A.], a company which distributes cigars

manufactured in Cuba."[6]

     6.     Through its purchase of Altadis, Imperial acquired "ownership interests in

Corporación Habanos S.A. as well as non-parties Altabana S.L., Promotora de Cigarros, S.L. and

Internacional Cubana de Tabaco, S.A.," (collectively, the "Cuban Joint Ventures"). According to

---

[5]   A recent decision in this District quoted from the Liberty Act and an Eleventh Circuit
opinion to describe the claims created by the Liberty Act. *See Havana Docks Corp. v. Royal
Caribbean Cruises, Ltd.*, 19-CV-23590, 2020 WL 1905219, at *7 (S.D. Fla. Apr. 17, 2020) ("'[t]he
***Helms-Burton Act refers to the property interest that former owners of confiscated property now
have as ownership of a 'claim to such property*.'" *Glen II* [*Glen v. Club Mediterranee S.A.*], 450
F.3d [1251] at 1255 [(11th Cir. 2006)] (quoting 22 U.S.C. § 6082(a)(1)(A)) (emphasis added); *see
also id.* (noting that actions brought under Title III of the Liberty Act are "actions brought 'on a
claim to the confiscated property' against traffickers in the property") (quoting 22 U.S.C. §
6082(a)(4)).

[6]   *See* October 12, 2007, letter from Imperial to the SEC's Office of Global Security at 2.
(Copy attached as Exhibit 4A).

Imperial, the Cuban Joint Ventures collectively "manufacture, market, distribute and sell cigars manufactured in Cuba."[7]

7.      Corporación Habanos S.A. ("Habanos"), as well as non-parties Altabana S.L., Promotora de Cigarros, S.L. and Internacional Cubana de Tabaco, S.A., are joint venture companies controlled by the Cuban government, directly or through Tabacuba. At all times relevant to the claims asserted by Plaintiffs in this action, financial interest in, and operational control of, Habanos was 50% owned by Cuba, through one or more Cuban-owned companies, and 50% owned by Imperial. The Cuban government at all times maintained ultimate control of Habanos.

8.      Non-party Tabacuba is the Cuban government run monopoly that manages the growth, purchase and resale of all raw tobacco grown in Cuba.

9.      Defendant Habanos is a legal person, corporate or otherwise, separate from Cuba, a majority of whose shares or other ownership interest, here ultimate control, is owned by Cuba or a political subdivision of Cuba. In the alternative, Habanos is an organ of the Cuban government that engages in public activity on behalf of the Cuban foreign government including marketing all Cuban tobacco products worldwide.  Under the Liberty Act, Habanos is an instrumentality of the Cuban Government and is statutorily deemed to be the Cuban Government itself.[8]

---

[7]     *See* Imperial, *Prospectus* for "€15,000,000,000 Debt Issuance Programme," at 27. (Copy attached as Exhibit 4B).

[8]     *See* Liberty Act, 22 U.S.C. § 6023(5) (A) ("The term 'Cuban Government' ***includes*** . . . any ***agency or instrumentality of the Government of Cuba***.") (emphasis added); *see also* 22 U.S.C. § 6023(1) ("The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of Title 28"); *see also* 28 U.S.C. § 1603(b) ("An 'agency or instrumentality of a foreign state' means any entity-- (1) ***which is a separate*** legal person, ***corporate or otherwise***, ***and*** (2) . . . ***a majority of whose*** shares or ***other ownership interest is owned by a foreign state*** or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . .  nor created under the laws of any ***third country***.") (emphasis added).

10.     At all relevant times, Imperial was a joint venture partner in Habanos. The Cuban Government, i.e., Habanos, is well-aware, and certainly "knows or should have known" that it confiscated RRHSC and the RRHSC Property and that it has continuously used the RRHSC Property for the purpose of production and shipping of millions of hand-rolled cigars (sold under various premium brand names) manufactured at the RRHSC Property, or manufactured at other nearby factories, and processed, stored, packaged, and shipped from the RRHSC Property.

11.     The unauthorized and continuous use of the RRHSC Property by Imperial and Habanos also extended to Tabacuba's management of the day-to-day business of all or some Cuban tobacco products from offices it maintained in the RRHSC Property, including purchasing of raw tobacco from Cuban farmers and subsequent reselling the same to other entities in Cuba for further manufacture or use.

12.     Some or all of the Cuban tobacco in the Cuban cigar products manufactured by Habanos and advertised or promoted by WPP, Y&R and BCW were purchased, managed and resold by Tabacuba from Tabacuba's offices at the RRHSC Property.

13.      Imperial either inquired of its joint venture partner Tabacuba or should have inquired of Habanos regarding the ownership, and Cuba's acquisition, of the RRHSC Property used by Habanos and Tabacuba. In any event, Imperial is bound by the knowledge of its joint venture partner, Tabacuba and of Habanos, which knowledge should be deemed to be that of Imperial itself.

14.     The WPP Defendants at all times acted as agents of Imperial or Habanos for the purpose of advertising, marketing and promoting Cuban Cigar products and the Habanos Brand name.

15.     The WPP Defendants, as agents of Imperial or Habanos, either inquired of their principal (Imperial or Habanos), or should have inquired of their principal, regarding the ownership of the RRHSC Property used by Habanos and Tabacuba. In any event, the WPP Defendants are bound by the knowledge of their principal, which knowledge should be deemed to be that of the WPP Defendants themselves.

16.     Habanos, and therefore Imperial, WPP, Y&R and BCW, either knew, or had reason to know, that all or some of the Cuban tobacco in the products manufactured, sold, advertised, or promoted by Habanos, Imperial, WPP, Y&R and BCW were purchased, managed or sold by Tabacuba from the RRHSC Property.

17.     At all times from January 2008 until at least October 29, 2020, Imperial, both through Habanos and the other Cuban Joint Ventures, as well as through the Cuban tobacco monopoly company, Tabacuba, Imperial's joint-venture partner in Habanos, had the use of, and continued to use, the RRHSC Property without compensation to, or authorization from, the Rodriguez Family.

18.     The unauthorized use of the RRHSC Property has included the production and shipping of millions of hand-rolled cigars (sold under various premium brand names) manufactured at the RRHSC Property, or manufactured at other nearby factories, and processed, stored, packaged, and shipped from the RRHSC Property. The unauthorized use of the RRHSC Property by Imperial and Habanos also extended to Tabacuba's management of the day-to-day business of all or some Cuban tobacco products from offices it maintained in the RRHSC Property at all times from 2007 until at least October 29, 2020.[9]  Both Habanos, and Imperial, through its

---

[9]    Tabacuba is the monopoly that purchases raw tobacco from Cuban farmers and entities located in Cuba and subsequently resells the tobacco to other entities in Cuba for further manufacture or use.  Every piece of tobacco that comes from Cuba has at one point been purchased

financial interests in Habanos and the other Cuban Joint Ventures, benefitted from Tabacuba's continuous use of the RRHSC Property during the entire time that Imperial owned interests in the Cuban Joint Ventures. Imperial also benefitted from use of the RRHSC Property for marketing of Habanos' products.

19.     All Defendants are liable to Plaintiffs under the Liberty Act for "trafficking"[10] because they participated in, or profited from, trafficking of the RRHSC Property by the Cuban government, through Tabacuba and its joint venture partner, Defendant Imperial. Tabacuba and Imperial trafficked in the RRHSC Property through their Cuban Joint Ventures, including Habanos, and the distribution network that Tabacuba and Imperial own.

20.     Imperial and its partner Tabacuba, together with the Cuban Joint Ventures, also increased and expanded the benefit they received from trafficking in the RRHSC Property by retaining agents to assist in the trafficking by marketing and publicizing the products managed from or produced or stored at the confiscated RRHSC Property. The agents retained by Imperial and Habanos include Defendant WPP PLC ("WPP"), through its U.S-based advertising agency subsidiaries, Defendants Young & Rubicam LLC ("Y&R"), BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW"), and non-party Ogilvy & Mather ("Ogilvy").

───────────────

and later resold by Tabacuba.

[10]   For purposes of the Act, a person "traffics" in confiscated property if that person "knowingly" and intentionally: (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property, (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property. *See* 22 U.S.C. § 6023(13).

21.     WPP, together with Y&R, BCW, Ogilvy, and other WPP subsidiaries, operates as a single company, (the "WPP Group" or similar).  The entities under the WPP Group, including WPP, Y&R, BCW, and Ogilvy are part of a complex network that share resources and operate as a single entity. The WPP Group, acting nominally through Ogilvy, and later through Y&R and BCW, continuously trafficked in the RRHSC Property by marketing and publicizing the Cuban tobacco products made, stored, shipped or managed from the RRHSC Property since at least 2010 through October 2020.

22.     Beginning no later than 2017, all Defendants further increased their trafficking in the RRHSC Property when the WPP Group, nominally acting through Y&R and BCW, assisted in setting up, or directly set up, sponsored official "portals" for Imperial and its Cuban Joint Ventures to market Habanos products on the U.S.-based social media platforms Twitter, YouTube, and Instagram.[11]

23.     In furtherance of Defendants' trafficking in the RRHSC Property, the WPP Group also set up multiple file share sites on internet domains nominally controlled by Y&R (YR.com) or by BCW (BM.com, an internet domain nominally controlled by BCW's predecessor, Burson-Marsteller). In addition, the WPP Group used multiple email addresses running through U.S.-based servers, including email running through the servers nominally controlled by Y&R (YR.com) and Ogilvy (the Ogilvy.com server, including an internet domain nominally controlled by Ogilvy & Mather).

---

[11]     These portals include:
https://www.instagram.com/habanos_oficial/
https://twitter.com/Habanos_Oficial
https://www.youtube.com/channel/UCstGLy96wdZG7eCM4855_DA.

**Parties, Jurisdiction, and Venue**

**Parties**

24.     Plaintiffs Luis Manuel Rodriguez, Alfredo Ramon Forns, Ramon Alberto Rodriguez, Raul Lorenzo Rodriguez, and Francisco Ramon Rodriguez are individuals residing in Miami-Dade County, Florida.

25.     At all times relevant hereto, Maria Teresa Rodriguez, was an individual residing in Miami-Dade County, Florida.

26.     Plaintiff Christina Conroy is an individual residing in Montgomery County, Maryland.

27.     Each Plaintiff was a U.S. citizen prior to 1996, and each is a U.S. National under 22 U.S.C. § 6023(15)(B).

28.     Until the time that RRHSC and the RRHSC Property were confiscated by Cuba in 1961, RRG owned and controlled RRHSC. Two of RRG's sons, Plaintiff Luis Manuel Rodriguez and Raul Bernardo Lupo Rodriguez ("RBLR"), who is now deceased, were involved in managing the RRHSC business prior to confiscation and owned small minority interests in RRHSC.

29.     Plaintiff Luis Manuel Rodriguez is the last surviving son of RRG. He obtained his interest in the Claim through RRG's will upon RRG's death in 1964 and the minority interest that he owned in RRHSC.

30.     Plaintiff Maria Teresa Rodriguez, a/k/a Maria Teresa Landa, was the last surviving daughter of RRG. She obtained her interest in the Claim through RRG's will upon RRG's death in 1964.

31.     Plaintiff Alfredo Ramon Forns is the only child of RRG's daughter, Maria Mercedes Rodriguez ("MMR"). MMR, who was a U.S. citizen prior to 1996, obtained her interest

9

in the Claim through RRG's will upon RRG's death in 1964. MMR was a Florida resident prior to and at the time of her death in 2013, when she died intestate. Plaintiff Alfredo Ramon Forns obtained his interest in the Claim by operation of law upon MMR's death.

32.     Plaintiff Ramon Alberto Rodriguez is the son of Ramon Francisco Rodriguez, ("RFR") who predeceased RRG. Plaintiff Ramon Alberto Rodriguez obtained his interest in the Claim through RRG's will upon RRG's death in 1964.

33.     Plaintiffs Raul Lorenzo Rodriguez and Francisco Ramon Rodriguez are the sons of RBLR, and Christina Conroy is the only child of Alex Lorenzo Rodriguez ("ALR"), the third son of RBLR. ALR predeceased RBLR. RBLR obtained his interest in the Claim through RRG's will upon RRG's death in 1964 and the minority interest that he owned in RRHSC. RBLR was a Florida resident prior to and at the time of his death in 1986, when he died intestate. Plaintiffs Raul Lorenzo Rodriguez, Francisco Ramon Rodriguez, and Christina Conroy obtained one-half of their interest in the Claim by operation of law upon RBLR's death. The other half of RBLR's interest in the Claim was transferred by operation of law to his wife Esther Beltran Rodriguez ("EBR") upon RBLR's death. EBR, who was a U.S. citizen prior to 1996, passed her interest in the Claim to Plaintiffs Raul Lorenzo Rodriguez, Francisco Ramon Rodriguez, and Christina Conroy through her will upon EBR's death in 2019.

34.     Upon information and belief, Defendant Imperial is a limited liability company incorporated in England and Wales, having its principal place of business in England.

35.     Upon information and belief, Defendant Habanos is a Cuban joint venture corporation controlled by Cuba. At all times from January 2008 through October 29, 2020, Imperial owned a 50% financial interest in Habanos, either directly or through one or more subsidiaries, the other 50% financial interest was owned by the Cuban government, either directly

or through one or more Cuban-controlled entities. According to Imperial, "The international marketing of Cuban hand-made cigars is carried out through Habanos S.A., in which we have a 50 per cent stake."[12]

36.     Defendant WPP PLC ("WPP"), is a limited liability company incorporated in the Bailiwick of Jersey with "dual-headquarters in London and New York City"[13], and thus maintains a principal place of business in New York.[14]  WPP earns more of its income from the U.S than any other country.[15]WPP also leases over 2.8 million square feet of office space in the U.S.[16]

37.     Upon information and belief, Defendant Young & Rubicam LLC ("Y&R"), is a limited liability company organized and existing under the laws of the State of Delaware having its principal place of business in New York. Y&R is qualified to do business in the State of Florida and has offices in Miami-Dade County.  Y&R is also qualified to do business in the State of New York.

38.     Y&R LLC is a limited liability company organized and existing under the laws of the State of New York and is the alter ego for Y&R and vice versa.  Confusingly, Y&R also does business through its identity as Y&R LLC and vice versa.

---

[12]   *See* https://www.imperialbrandsplc.com/about-us/our-companies/tabacalera.html

[13]   *See* SEC Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order at 2, ¶ 3, available at https://www.sec.gov/litigation/admin/2021/34-93117.pdf.

[14]   *See id.; see also* WPP Form 20-F filing with SEC for year ended 12/31/2020 ("WPP Form 20-F Filing") at 9 (WPP has "principal offices in London and New York"), available at https://www.sec.gov/Archives/edgar/data/806968/000119312521138800/d10820d20f.htm .

[15]   *See* WPP Form 20-F filing at 8-9.

[16]   *See id*. at 12.

39.     Upon information and belief, Defendant BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW"), is a limited liability company incorporated in Delaware having its principal place of business in New York. BCW is a subsidiary of WPP and has offices in Miami-Dade County.

**Jurisdiction and Venue**

40.     Plaintiffs' claim arises under 22 U.S.C. § 6021, et seq., and the amount in controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees. Therefore, this Court has subject matter jurisdiction (federal question) pursuant to 28 U.S.C. § 1331.

41.     As further set out below, Habanos committed tortious acts in Miami-Dade County, Florida. In particular: (1) Habanos leases, possesses, controls, manages, uses, or otherwise acquired or holds an interest in the confiscated RRHSC Property[17]; (2) Habanos has engaged and continues to engage "in a commercial activity using or otherwise benefiting from" the RRHSC Property confiscated by Cuba[18]; and (3) Habanos "causes, directs [or] participates in . . . trafficking" by Imperial, the WPP Group, including WPP, Y&R, and BCW, and by non-parties, Ogilvy, Twitter, YouTube, and Instagram.[19] The trafficking was furthered through the use of US websites, internet domains and other US Services described more fully below. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

42.     As set forth in this complaint, the RRHSC Property was confiscated by the Cuban government and is currently owned or controlled by Habanos or Tabacuba, each of which is an

---

[17]   *See* 22 U.S.C. § 6023(13)(A)(i).

[18]   *See* 22 U.S.C. § 6023(13)(A)(ii).

[19]   *See* 22 U.S.C. § 6023(13)(A)(iii).

agency or instrumentality of the Cuban government[20], or an organ of the Cuban government.  As set forth in this complaint, this action is based upon a commercial activity carried on in the United States by Habanos through its agents, and acts performed in the United States in connection with Habanos' commercial activity, or upon acts performed outside the United States in connection with a commercial activity of the Cuban government that causes a direct effect in the United States, specifically, advertising, marketing and trafficking, of tobacco products that were purchased, sold, manufactured, packaged or marketed from the RRHSC Property, through agents WPP Group, WPP, Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram. The trafficking was furthered through the use of US websites, internet domains and other US Services described more fully below. Habanos is not immune to the jurisdiction of this Court pursuant to 28 U.S.C. §1605(a)(2).

43.     Pursuant to 22 U.S.C. § 6082 (Section 302 of the HBA) service of process on an agency or instrumentality of a foreign state in the conduct of a commercial activity, or against individuals acting under color of law, shall be made in accordance with section 1608 of Title 28. Pursuant to Fed. R. Civ. P. 4(j)(1) and 28 U.S.C. §1608, as an agency or instrumentality of the Cuban government, Habanos is properly served by "Serving a Foreign, State, or Local Government."

44.     As further set out below, Imperial committed tortious acts in Miami-Dade County, Florida. In particular, Imperial through its ownership interest in Habanos: (1) leases, possesses, controls, manages, uses, or otherwise acquired or holds an interest in the confiscated RRHSC Property[21]; (2) has engaged and continued, at least until October 2020, to engage "in a commercial

---

[20]   *See* n. 8, *supra*.

[21]   *See* 22 U.S.C. § 6023(13)(A)(i).

activity using or otherwise benefiting from" the RRHSC Property confiscated by Cuba[22]; and (3) "causes, directs [or] participates in, or profits from, trafficking" by Habanos and other joint venture companies owned by Imperial and Tabacuba, including the Cuban Joint Ventures and Altabana, S.L.[23], as well as by the WPP Group, WPP, Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram.[24] The trafficking was furthered through the use of US websites, internet domains and other US Services described more fully below. In addition, Imperial has further profited from the confiscated RRHSC Property through its recent sale of some or all of its interests in Habanos and the other Cuban Joint Venture companies owned by Imperial and Tabacuba involved in the management, manufacture, sale, marketing, and distribution of Cuban tobacco products that have value at least in part as a result of their engagement "in a commercial activity using or otherwise benefiting from" the confiscated RRHSC Property. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

45.     As further set out below, WPP committed tortious acts in Miami-Dade County, Florida. WPP through its ownership in and its control of the WPP Group, including WPP, Y&R, BCW and Ogilvy "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Y&R, BCW, Twitter, YouTube, and Instagram.[25] This trafficking was conducted in part

---

[22]   *See* 22 U.S.C. § 6023(13)(A)(ii).

[23]   Altabana is a joint venture corporation 50% owned by Imperial, either directly or through one or more subsidiaries, and 50% owned by Cuba or Cuban-controlled entities. According to Imperial, Altabana holds Imperial's "investments in subsidiary companies involved in the marketing and sale of Cuban cigars." *See* Imperial 2019 Annual Report at 166.

[24]   *See* 22 U.S.C. § 6023(13)(A)(iii).

[25]   *See* 22 U.S.C. § 6023(13)(A)(iii).

through the use of US websites, internet domains and other US Services described more fully below. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

46.     Upon information and belief, WPP itself has few if any direct employees. Instead, WPP uses employees of the various WPP affiliates in the WPP Group to supervise and control the entirety of the WPP Group. The members of the WPP Group share resources, act as alter egos for one another and together constitute a constructive joint venture. Among other things, "WPP centrally coordinated the group's financial matters, reporting, control, treasury, tax, mergers, acquisitions, investor relations, legal affairs and internal audit from its headquarters."[26]

47.     Upon information and belief, Y&R, together with other subsidiaries of WPP ("affiliates"), operate as a single company, under the name "VMLY&R".

48.     Upon information and belief, Y&R and its affiliates operating under the name "VMLY&R" share resources, act as alter egos for one another and together constitute a constructive joint venture.

49.     Upon information and belief, Y&R directly benefits by having other companies operate under the name "VMLY&R", "Y&R" and/or "Young & Rubicam" as it presents the image of a large, wide reaching, and multifaceted international company to the general public and specifically to Y&R clients.

50.     Upon information and belief, BCW, together with other subsidiaries of WPP ("affiliates"), operates as a single company, under the name "BCW"

---

[26] *See* SEC Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order at 3, ¶ 5, available at https://www.sec.gov/litigation/admin/2021/34-93117.pdf.

51.     Upon information and belief, BCW and its affiliates operating under the name "BCW", share resources, act as alter egos for one another and together constitute a constructive joint venture.

52.     Defendant BCW has also done business under the name "Young & Rubicam" and "Young & Rubicam Group."

53.     Upon information and belief, BCW directly benefits by having its affiliates conduct business and operate under the name "BCW", as it presents the image of a large, wide reaching, and multifaceted international company to the general public and specifically to BCW clients.

54.     Upon information and belief, WPP, Y&R, BCW, and the WPP Group also use the unincorporated trade name "Young & Rubicam Group," or "Y&R Group," (collectively, "Y&R Group") among other things, to: (1) purchase Internet, email, and other networking and telecom services in the United States ("US Services"), including the "YR.com," " BM.com," and "Ogilvy.com" Internet domains, social media "portals" operated by Twitter, Instagram, and YouTube, networking and other services provided through Microsoft, and other services sold by US companies; (2)  distribute US Services among WPP, Y&R, BCW, Ogilvy, and other affiliates in the WPP Group; and (3) market and sell WPP Group products and services, including through the use of US Services, to clients worldwide, including Habanos, the Cuban Joint Ventures and other Cuban Government entities.

55.     The sale of U.S. Services to the Cuban Government, including Habanos and the Cuban Joint Ventures, is prohibited by law including the Cuban Assets Control Regulations, 31 C.F.R. Part 515 ("CACRs").[27] U.S. companies, including the U.S. companies that provide the U.S.

---

[27] *See* 31 C.F.R § 515.206 (excluding from "exempt transactions" the: "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

Services that the WPP Group purchases for distribution to WPP subsidiaries for resale to clients worldwide, including Habanos, the Cuban Joint Ventures and other Cuban Government entities, expressly prohibit the sale of those services to Cuba.[28]

56.     The trafficking by WPP, Y&R and BCW at issue here is in the form of marketing, merchandizing, branding, or advertising services for the benefit of the Cuban government and the entities it controls, including Habanos and the Cuban Joint Ventures. That trafficking was conducted, in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act. This conduct is not exempted by the CACRs, which apply to all "person[s] subject to the jurisdiction of the United States," including corporations owned by U.S. companies, such as Y&R, BCW, Ogilvy and the subsidiaries those US companies own and control. The CACRs apply equally to WPP and its direct and indirect subsidiaries. [29]

57.     Y&R, either directly or through its affiliates, committed tortious acts in Miami-Dade County, Florida. Y&R "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Twitter, YouTube, and Instagram.[30] That trafficking was conducted, in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act and the CACRs. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

---

28     For example, Microsoft states that "*All Microsoft Online Services*," including Office 365, "*are unavailable in Cuba*." *See* Microsoft.com "International availability" (emphasis added) available at: https://www.microsoft.com/en-us/microsoft-365/business/international-availability; *see also* Google Workspace Terms of Service ("3.3 *Restrictions*. *Customer* will not, and *will not allow End Users to* . . . (d) access or *use the Services* . . . (vii) *in a manner that breaches, or causes the breach of, Export Control Laws*.") (emphasis added) available at: https://workspace.google.com/terms/premier_terms.html.

29     *See* 31 C.F.R § 515.329(c)-(d); *see also* 50 U.S.C. app. § 5(b)(1); *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1281–82 (11th Cir. 2013).

30     *See* 22 U.S.C. § 6023(13)(A)(iii).

58.     BCW, either directly or through its affiliates, committed tortious acts in Miami-Dade County, Florida. BCW "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, Twitter, YouTube, and Instagram.[31] That trafficking was conducted, in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act and the CACRs. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

59.     WPP, either directly or through its affiliates, including the WPP Group, Y&R, BCW, and Ogilvy committed tortious acts in Miami-Dade County, Florida. WPP "causes, directs [or] participates in, or profits from, trafficking" by Imperial, Habanos, the WPP Group, Y&R, BCW, and Ogilvy, Twitter, YouTube, and Instagram.[32] That trafficking was conducted, in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act and the CACRs. These acts have caused damage to Plaintiffs, five of whom reside in Florida.

60.     Imperial knew in 2007, years after the passage of the Liberty Act, when it purchased its interest in Habanos and the other Cuban Joint Ventures engaged in trafficking in property confiscated by the Cuban government, that Habanos' operations would "be restricted . . . by the nationality of the personnel that" Imperial could "involve in" the Cuban cigar business that it decided to acquire, whose business was based on trafficking in property confiscated by the Cuban government.[33]

---

[31]  *See* 22 U.S.C. § 6023(13)(A)(iii).

[32]  *See* 22 U.S.C. § 6023(13)(A)(iii).

[33]  *See* Imperial's October 12, 2007 "Response" to SEC inquiry at 2 (acknowledging that by acquiring "Altadis' 50% ownership interest in [Habanos] a company which distributes cigars manufactured in Cuba," Imperial "may be restricted . . . by the nationality of the personnel that we involve in these activities. In particular, Altadis' cigar operations in Cuba could be materially limited by the operation of the" the Liberty Act). Copy attached at Exhibit 4; *see id*. at 4 ("Altadis owns a 50% interest in Habanos, the remaining 50% of which is owned by the Cuban state.")

61.    Notwithstanding, Imperial decided, beginning no later than 2010 and continuing at least through October 2020, to retain, either directly or through Habanos, WPP, the WPP Group and its U.S.-based corporate agents, Ogilvy and later Y&R and BCW, to engage in the marketing of, i.e., trafficking in, Cuban cigars managed from, or manufactured at, stored in, or distributed from, the confiscated RRHSC Property. In addition, no later than 2017, Imperial also decided, either directly or through Habanos, WPP, the WPP Group and U.S. Corporate Agents, to contract for the use of social media "portals" operated by still additional U.S. corporations. These corporations include Twitter, Instagram and YouTube[34], all for the purpose of furthering Imperial and Habanos' ability to profit from the trafficking of property confiscated by the Cuban government, including the RRHSC Property. That trafficking was conducted, in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act and the CACRs.

62.    WPP similarly knew that its extensive U.S. business activities, conducted both directly and through its many wholly-owned subsidiaries, including Ogilvy, Y&R, BCW, WPP USA and the WPP Group, and the additional subsidiaries owned and controlled by these U.S. companies, would render it "subject to the laws of the US . . . that impose sanctions and regulate the supply of services to certain countries." [35] These laws include, of course, the Liberty Act. WPP

---

[34]   The sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the Liberty Act nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public ***at no cost to the user***") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . ***organizations administered or controlled by the Government of Cuba***.") (emphasis added); *see also* 31 C.F.R § 515.206.

[35]   *See* WPP Form 20-F filing with SEC for year ended 12/31/2017 at 5,

nevertheless decided to involve these U.S. subsidiaries, or the subsidiaries of these WPP subsidiaries, in marketing and publicizing products produced at, stored in and shipped from, the confiscated RRHSC Property. WPP thereafter directed or allowed its U.S. subsidiaries, including Y&R, BCW, WPP USA and the WPP Group, to use US Services, including YR.com, BM.com, Ogilvy.com, and the social media portals by Twitter, Instagram and YouTube, for the purpose of trafficking in the RRHSC Property, including providing marketing and advertising services for Habanos through US Services.

63.     Each of the acts described in paragraphs 40 – 62, above, constituted trafficking in violation of the Liberty Act. Further, each act of trafficking in the RRHSC Property caused damage to Plaintiffs, five of whom reside in Miami-Dade County.

64.     Due to their extensive use of US Services to market, publicize and assist in the trafficking of the RRHSC Property confiscated by the Cuban government, including through U.S. Agents using US Services in violation of the Liberty Act and the CACRs, Defendants Habanos, Imperial and WPP should reasonably have anticipated the possibility that they would be sued in the United States by U.S. Nationals holding claims to property confiscated by the Cuban government, including this lawsuit on the Claim to the RRHSC Property.

65.     Due to their actions described above, all Defendants should further have reasonably anticipated the possibility that they would be sued in the Southern District of Florida, which is widely-known to be home to over a million Cuban refugees and their successors, many of whom are U.S. Nationals owning claims to property confiscated by the Cuban government.

---

https://www.sec.gov/Archives/edgar/data/806968/000119312518141442/d462033d20f.htm
(disclosing business "risks" and acknowledging that: "Failure to comply with these laws could expose the Group [WPP] to civil and criminal penalties . . ..")

66.     This Court has personal jurisdiction over each Defendant pursuant to the Florida "long-arm" statute, Section 48.193(1)(a), Florida Statutes, because each Defendant committed a tortious act within this state, either directly or through an agent, and the cause of action asserted against each Defendant arises from that tortious conduct.

67.     This Court also has personal jurisdiction over Y&R pursuant to the Florida "long-arm" statute, Section 48.193(2), Florida Statutes.  At all times relevant hereto, Y&R has engaged in substantial and not isolated activity in the State of Florida such that exercising general jurisdiction over Y&R does not offend the notions of due process.  Y&R filed for, and was granted, authority to transact business in the State of Florida since 2018; prior to 2018, one of Y&R's alter egos, Young & Rubicam Inc. (a Delaware Corporation), was qualified to do business in Florida from 1998 to 2018; prior to that, another one of Y&R's alter egos, Young & Rubicam Inc. (a New York Corporation), filed for, and was granted, authority to transact business in Florida from 1995 to 1997. Y&R, together with its alter egos, has had a constant presence in Florida since at least 1995.  Upon information and belief, Y&R derived significant income from the State of Florida, either directly or through its alter egos.  Upon information and belief, Y&R, directly or through one of its alter egos, either owned or leased one or more properties in the State of Florida from 1995 to 2020.

68.     This Court also has personal jurisdiction over BCW pursuant to the Florida "long-arm" statute, Section 48.193(2), Florida Statutes.  At all times relevant hereto, BCW has engaged in substantial and not isolated activity in the State of Florida such that exercising general jurisdiction over BCW does not offend the notions of due process.  Burson-Marsteller, LLC, the predecessor to BCW, filed for, and was granted, authority to transact business in the State of Florida in 2003.  In 2018, Burson-Marsteller, LLC filed an amendment to its certificate to transact

business in Florida reflecting that the company had changed its name to BCW LLC (and if the name is unavailable, it would use Burson Cohn & Wolfe LLC as an alternate name of transacting business in Florida), and as of 2021, BCW remains authorized to business in Florida. Upon information and belief, BCW has had a constant presence in Florida since at least 2003 through at least the end of 2020.  Upon information and belief, BCW derived significant income from the State of Florida.  Upon information and belief, BCW, directly or through one of its affiliates, either owned or leased one or more properties in the State of Florida from 2003 to 2020.

69.     This Court also has personal jurisdiction over WPP pursuant to the Florida "long-arm" statute, Section 48.193(2), Florida Statutes.  Upon information and belief, WPP operating through one or more of its subsidiaries has engaged in substantial and not isolated activity in the State of Florida such that exercising general jurisdiction over WPP does not offend the notions of due process.

70.     In the alternative, if Defendants are deemed not to have sufficient contacts with Florida despite their commission of multiple acts of trafficking in violation of the Liberty Act causing damage to Plaintiffs in Florida, those Defendants who are not subject to the jurisdiction of any other State within the United States, are nevertheless subject to personal jurisdiction under the federal "long-arm" statute set out in Rule 4(k) of the Federal Rules of Civil Procedure.[36] If Defendants' personal contacts with any single state are not sufficient to subject them to personal jurisdiction in any particular state, Rule 4(k) allows the Court to consider a defendant's contacts with the U.S. as a whole where the claim asserted against the defendant arises under federal law.

---

[36]   Rule 4(k) provides in relevant part: "(2) For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

Plaintiffs' claim here arises under the federal Liberty Act. Therefore, Defendants' contacts with the U.S. as a whole, including Imperial, Habanos and WPP's reliance on Y&R, BCW, and US Services, including Twitter, YouTube, and Instagram to conduct marketing and social media campaigns in violation of the Liberty Act, are sufficient to satisfy the applicable constitutional requirements.

71.     Venue is proper in the Southern District of Florida under 28 U.S.C. §§ 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida.

## Facts

72.     Plaintiffs are U.S. Nationals as defined by the Libertad Act. *See* 22 U.S.C. § 6023(15).

73.     The RRHSC Property was owned and improved by RRHSC until the Cuban Government confiscation in 1961.

74.     As part of its takeover of the entire tobacco industry, the Castro government confiscated ownership of RRHSC and the RRHSC Property on June 30, 1961.[37]

75.     The communist Cuban Government maintains possession and control of the RRHSC Property and has not paid any compensation to Plaintiffs, or their predecessor RRG, for its seizure. Nor has any claim to the RRHSC Property been settled pursuant to an international claims settlement agreement or other mutually accepted settlement procedure.

---

[37]   On June 30, 1961, by decision of the "Junta Central de Planificación," Cuba's Central (Economic) Planning Board, Cuba's communist government confiscated ownership of RRHSC as part of it takeover of the entire tobacco industry. *See* excerpt at Exhibit 5; English translation of excerpt at Exhibit 5A; Spanish text of excerpt at Exhibit 5B. The Junta Central de Planificación's decision and proclamation appears in Cuba's government register, the "Gaceta Oficial," No. 131 dated July 7, 1961, page 13203.

76.     Plaintiffs are the rightful owners of the Claim arising from Cuba's "nationalization" and uncompensated taking of the RRHSC Property.

77.     Upon information and belief, Imperial acquired its interest in Habanos in 2007 when it acquired "Altadis' 50% ownership interest in" Habanos "a company which distributes cigars manufactured in Cuba."  Imperial knew that Cuba, its joint venture partner in Habanos, Altabana, and the Cuban Joint Ventures (through its monopoly company, Tabacuba), acquired its interest in and control over the Cuban tobacco industry and the RRHSC Property by "nationalizing" assets when the rightful owners of the property fled the brutal Castro dictatorship.

78.     The RRHSC Property is currently in the exclusive control of the Cuban government through Tabacuba and Imperial's (now presumably former) joint venture partnership, Habanos. Upon information and belief, Tabacuba and Habanos have continuously used the RRHSC property without authorization from the Rodriguez Family since at least 2010, and likely for many years before that, until the present.[38]

79.     The unauthorized use of the RRHSC Property includes the management, production, storage, and shipping of millions hand-rolled cigars (sold under various premium brand names) and other tobacco products manufactured at the property, or manufactured at other nearby factories, and stored, processed or shipped from the RRHSC Property. Imperial and Habanos' trafficking also includes use of the RRHSC Property for marketing and publicity of Habanos' products.[39] The RRHSC Property, of course, is in Cuba which remains under the control of the same regime that confiscated the property.

---

[38]   The photographs at Composite Exhibit 2 were taken in December 2019 and show the Tabacuba offices at the RRHSC Property occupied, as well as vehicles outside of two loading docks at the property.

[39]   *See* Composite Exhibit 6 containing pictures published by the Habanos website of "visit

80.     Habanos itself documented its possession, control of, management, and use of the RRHSC Property. In a February 2010 publicity piece entitled: "Cigar Factory Readings and Readers," Habanos referred to the factory (the RRHSC Property) "Standing on famous 23rd Street in Havana's bustling Vedado neighborhood right between the 14th and 16th streets," as the "humongous and modern H. Upmann cigar factory." [40]  The continuous use of the RRHSC Property includes the use of a portion of the RRHSC Property by Imperial's joint venture partner, Tabacuba, for its executive offices for the management of the Cuban tobacco business, and the use of the loading dock[41] and space for warehousing and shipping Habanos' products. Tabacuba's name appears prominently on the building.[42]

81.     Imperial, Habanos, and Tabacuba, (collectively, the "Direct Traffickers") knowingly and intentionally lease, possesses, control, manage, use, or otherwise acquired or hold an interest in the confiscated RRHSC Property, without the authorization of the Rodriguez Family. Each also has engaged and continues to engage in a commercial activity using or otherwise benefiting from the confiscated RRHSC Property without the authorization of the Rodriguez Family.

82.     Imperial and its partner Tabacuba, through the joint venture companies they jointly control, have expanded their use of and benefit from the RRHSC Property by retaining agents to market and publicize the products produced or stored at, or distributed from the confiscated

---

the factories" tours promoted by Habanos at the RRHSC Property. Exhibit 7 is a picture of the loading dock at the RRHSC Property in operation.

[40]   *See* http://habanosnews.habanos.com/en/cigar-factory-readings-and-readers .

[41]   *See* Composite Exhibit 2 and Exhibit 7.

[42]   *See* Composite Exhibits 2 and 3.

RRHSC Property. The agents retained by Imperial and Habanos include WPP through its advertising agency subsidiaries, including the WPP Group, Y&R, BCW, and Ogilvy. Among other things, those agencies assisted in setting up, or directly set up, the sponsored "official" portals listed above on the Twitter, YouTube, and Instagram platforms (Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram, collectively, the "U.S. Corporate Agents"). The work of the U.S. Corporate Agents on behalf of Imperial, Habanos and Tabacuba has included marketing and publicizing the Habanos' products manufactured in, stored at, or shipped from, the RRHSC Property. The trafficking by the U.S. Corporate Agents was accomplished through use of US Services. WPP, acting in serial and uninterrupted fashion, first through Ogilvy and later through Y&R and BCW, has continuously marketed and publicized the RRHSC Property, and the Habanos' products made at, stored in, or shipped from the RRHSC Property, since at least 2010.

83.     Between 2010 and 2015, WPP and the WPP Group nominally used a subsidiary known as Ogilvy to market Habanos products. Beginning in 2016, marketing of Habanos products was nominally switched to Y&R, another WPP subsidiary. Most recently, beginning in 2019, marketing of Habanos products was again nominally switched to still another WPP subsidiary, BCW. In each instance, the switch from one to another WPP subsidiary was done without any apparent break or interruption in marketing services. Indeed, although WPP ostensibly switched from using Y&R to using BCW as the Habanos trafficking marketer, BCW continued using the same contact address as Y&R had been using -- (press.habanos@yr.com).

84.     The Direct Traffickers have expanded their trafficking by retaining agents to assist in and further their trafficking in the property. The U.S. Corporate Agents have, and continued to, knowingly and intentionally, act as agents for the Direct Traffickers at least until October 2020.

Each has and continues to cause, direct, participate in, or profit from, the trafficking of the RRHSC Property by the Direct Traffickers, all without the authorization of the Rodriguez Family.

85.     Imperial, Habanos, WPP, Y&R and BCW either knew, or had reason to know that the Cuban tobacco in the products advertised or promoted by WPP, Y&R and BCW were (i) purchased, stored, managed, or sold by Tabacuba at or from the RRHSC Property, and that (ii) Tabacuba is the Cuban government run monopoly managing the growth, purchase and sale of raw tobacco. Imperial, Habanos, WPP, Y&R and BCW are bound by the knowledge of Imperial's partner Tabacuba which at all times was aware that RRHSC and the RRHSC Property were confiscated by the Cuban government.

86.     In October 2020, Imperial announced that it had completed the sale of what it previously described as "its worldwide premium cigar businesses," including the non-U.S. business it calls "the Rest of the World business ("Premium Cigar RoW"). [43] The sale was apparently completed on October 29, 2020. [44] By Imperial's own admission, these "assets" consisted primarily of Imperial's interest in Cuban joint venture companies, including:

> A 50 per cent stake in Habanos S.A., which exports hand-made cigars from Cuba and is responsible for international marketing activities. . . .
>
> A 50 per cent stake in Altabana S.L., which is responsible for the distribution of Cuban cigars worldwide through its network of over 20 subsidiary distributors.
>
> A 50 per cent stake in Internacional Cubana de Tabaco, S.A., which is responsible for the manufacturing of Cuban premium machine-made cigars.

---

[43]     *See Imperial Brands PLC agrees sale of Worldwide Premium Cigar Business* at 1, https://www.imperialbrandsplc.com/media/key-announcements/2020/imperial-brands-plc-agrees-sale-of-worldwide-premium-cigar-busin.html

[44]     *See Imperial Brands PLC completes sale of its Worldwide Premium Cigar Businesses*, https://www.imperialbrandsplc.com/media/key-announcements/2020/imperial-brands-plc-completes-sale-of-its-worldwide-premium-ciga.html

A 50 per cent stake in Promotora de Cigarros, S.L., which manages the distribution of the Cuban premium machine-made cigar portfolio worldwide.

Other sales of premium cigar products through Tabacalera SA including:

Exclusive distribution of Cuban handmade cigars in Spain.

87.     Imperial has further profited, or is attempting to further profit, from the confiscated RRHSC Property through its recent agreement to sell some or all of its interests in Habanos and other Imperial subsidiaries involved in the manufacture, sale, marketing, and distribution of Cuban tobacco products that have value at least in part as a result of their engagement "in a commercial activity using or otherwise benefiting from" the confiscated RRHSC Property.

88.     Consistent with its purpose of "deter[ing] third party foreign investors from trafficking in confiscated property (defined as '**purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures** using property and assets some of which were confiscated from United States nationals.')[45], the Liberty Act defines trafficking in property confiscated by the Cuban government broadly. For purposes of the act, a person "traffics" in confiscated property if that person "knowingly"[46] and intentionally:

    (i)     sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, *leases*, receives, *possesses*, *obtains control of*, *manages*, *uses*, or otherwise acquires or holds an interest in confiscated property,

    (ii)    *engages in a commercial activity using or otherwise benefiting from* confiscated property, or

    (iii)   *causes*, *directs*, *participates in*, *or profits from*, *trafficking* (as described in clause (i) or (ii)) *by another person*, *or otherwise engages in*

---

[45]   *See Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting 22 U.S.C. § 6081(5)).

[46]   The term "knowingly" is defined in the Act as meaning "with knowledge or having reason to know." *See* 22 U.S.C. § 6023(9).

28

> ***trafficking*** (as described in clause (i) or (ii)) ***through another person***, without the authorization of any United States national who holds a claim to the property.

*See* 22 U.S.C. § 6023(13) (emphasis added).

89.     Property is also broadly defined in the Liberty Act:

> The term "property" means any property (including patents, copyrights, trademarks, and any other form of intellectual property), whether real, personal, or mixed, and any present, future, or contingent right, security, or other interest therein, including any leasehold interest.

90.     The conduct described above constitutes trafficking in the RRHSC Property by Imperial and Habanos. Each knowingly and intentionally engages or engaged in a commercial activity using or otherwise benefiting from the confiscated RRHSC Property, without the authorization of the Rodriguez Family. Each also causes, directs, participates in, or profits from, trafficking of the RRHSC Property by Cuba (and Tabacuba), again without the authorization of the Rodriguez Family.

91.     Habanos is controlled by the Cuban government which confiscated the RRHSC Property. Imperial had access to Cuban government property and corporate records before it purchased its joint venture interest in Habanos. In addition, Imperial knew by no later than 2010 that the RRHSC Property was being used by Habanos to manufacture cigars. Imperial also knew or should have known since at least 2010 that its joint venture partner, Tabacuba, was using the RRHSC Property for administrative offices to support Habanos' operations and for warehousing and shipping cigar products manufactured and sold by Habanos. The use of the RRHSC Property by and for the benefit of Habanos and Imperial continued at least through October 2020.

92.     WPP knew or should have known that the WPP Group including its U.S. subsidiaries, or subsidiaries of those U.S. corporate subsidiaries, continuously beginning in 2010 (Ogilvy), then in 2016 (Y&R) and in 2019 (BCW), were engaged in conduct that constituted

trafficking in confiscated property under the Liberty Act. Similarly, Y&R knew or should have known that its subsidiaries or affiliates beginning in 2016, and BCW knew or should have known that its subsidiaries and/or affiliates, beginning in 2019, were engaged in conduct that constituted trafficking in confiscated property under the Liberty Act. The information was available in Cuban corporate and property records and was available from their principal on the trafficking assignments, Habanos or Imperial.

93.     WPP knew or should have known that by conflating its subsidiaries by having such subsidiaries market their services under the same name, and by sharing services and assets, WPP and the subsidiaries would be acting as one entity

94.     Y&R knew or should have known that by having other companies market their services under the same brand name as Y&R, and by sharing services and assets, Y&R and the subsidiaries would be acting as one entity.

95.     BCW knew or should have known that by having other companies market their services under the same brand name as BCW, and by sharing services and assets, BCW and the subsidiaries would be acting as one entity.

96.     The conduct described above also constitutes trafficking in the RRHSC Property by WPP, Y&R, and BCW. In particular, by assisting Imperial, Habanos, and Tabacuba in marketing and publicizing the Habanos' products manufactured, stored at or shipped from the RRHSC Property, including through extensive use of US Services, each causes, directs, participates in, or profits from, or otherwise engages in, trafficking in the RRHSC Property by Imperial, Habanos, and Cuba, all without the authorization of the Rodriguez Family.

97.     Imperial and its joint venture partner Cuba (Tabacuba) have profited substantially from trafficking in the confiscated RRHSC Property. According to data reported in Imperial's

Annual Reports for the period from 2009 to 2019, "profits" earned by Imperial and Cuba from sales and distribution of Cuban cigars totaled over $1.5 billion. Total "revenues" exceeded $6.7 billion.[47] A significant portion of that profit and revenue was earned by trafficking in the confiscated RRHSC Property.

98.     Plaintiffs provided a thirty-day notice each to Imperial, WPP, Y&R and BCW (and to Habanos in care of Imperial) stating, as provided by 22 U.S.C. § 6082 (3)(B) –(D), Plaintiffs' intention to commence this action and demanding that each Defendant immediately cease unlawfully trafficking in the RRHSC Property.

99.     Notwithstanding Plaintiffs' notice, after the end of the 30-day period beginning on the date the notice was provided, each Defendant continued to traffic in the confiscated RRHSC Property.

### Claim for Damages

100.    Plaintiffs incorporate and reallege paragraphs 1 through 99 as if fully set forth herein.

101.    This claim is brought pursuant to the Liberty Act, 22 U.S.C. § 6082.

102.    As set out above, beginning no later than 2010 (Imperial, Habanos, and WPP), or no later than 2016 (Y&R) or no later than 2019 (BCW), each Defendant trafficked in the RRHSC Property that was confiscated by the Cuban Government on or after January 1, 1959 in violation

---

[47] Imperial's profits and revenues are reported in GBP. The over $1.5 billion in "profits" and over $6.7 billion in "revenues" were calculated by adding the "profits" and "revenues" reported in GBP by Imperial for its Habanos and Altabana joint ventures for the years 2009 to 2019. Those figures were then converted to dollars at an exchange rate of 1.25 GBP per dollar. That result was then doubled to reflect the presumably equal distribution of profits and revenues between Imperial and Cuba in their 50-50 joint venture companies.

of the Liberty Act and each is therefore liable to Plaintiffs, who own the Claim to the RRHSC Property, for money damages.

103.    Plaintiffs are entitled to money damages under 22 U.S.C. § 6082(a)(1)(A), including:

(i)      the amount which is the greater of--

. . . (II) the amount determined [by a special master pursuant to 22 U.S.C. § 6083(a)(2)]; or (III) the "fair market value" of the RRHSC Property, "calculated as being either the current value of the property, or the value of the property when confiscated plus interest, whichever is greater" ; and

(ii)     court costs and reasonable attorneys' fees.

104.    In addition, treble damages are warranted. Because Defendants continued to traffic in the RRHSC Property after receiving notice from Plaintiffs pursuant to § 6082 (3)(B)–(D), Plaintiffs are entitled to three times the money damages determined pursuant to § 6082(a)(1)(A), plus court costs and reasonable attorneys' fees. *See* 22 U.S.C. § 6082(a)(3)(B)-(C).

**Jury Trial Demand**

Plaintiffs hereby demand a trial by jury.

                                        Respectfully submitted,

Rodriguez Tramont & Nuñez P.A.          Berenthal & Associates, P.C.
By:  /s/ *Paulino A. Núñez Jr.*          By: /s/ *James L. Berenthal*
Paulino A. Núñez Jr.                     James L. Berenthal
Florida Bar No. 814806                   Florida Bar No.126035
Primary email: pan@rtgn-law.com          email: jlb@berenthalaw.com
255 Alhambra Circle                      45 East 72nd Street
Suite 1150                               Suite 5-C
Coral Gables, FL 33134                   New York, NY 10021
Telephone: (305) 350-2300                Telephone: (212) 302-9494