**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-23287 Gayles / Otazo-Reyes

| | |
|---|---|
| LUIS MANUEL RODRIGUEZ, *et al.,* | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| IMPERIAL BRANDS PLC, *et al.,* | : |
| | : |
| Defendants. | : |

**DEFENDANT CORPORACIÓN HABANOS, S.A.'S**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE**
**AND FOR OTHER RELIEF, AND**
**MEMORANDUM OF LAW IN SUPPORT THEREOF**

**CLAIM OF UNCONSTITUTIONALITY**

### TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................iii

STATEMENT OF THE CASE ............................................................................1

ARGUMENT .......................................................................................................2

I.    Venue Is Improper ...............................................................................2

II.    The Court Lacks Personal Jurisdiction, and, If the FSIA Applies,
Also Lacks Subject-Matter Jurisdiction .............................................7

A.    The FSIA, Invoked by Plaintiffs, Does Not Apply; If Applicable, It
Divests This Court of Subject-Matter and Personal Jurisdiction ...............7

B.    Whether or Not the FSIA Applies and, If Applicable, an Exception to
Immunity Is Met, Due Process Personal Jurisdiction Is Required but
Lacking; If the FSIA Does Not Apply, Personal Jurisdiction Is Also
Lacking for Failure to Satisfy the Florida Long-Arm or Rule 4(k)(2).........13

1.    The Requirements for Jurisdiction as to the Claim for the
Cigar Factory Are Not Met ..........................................................14

i.    Due Process Requirements Are Not Met As to the
Cigar Factory .......................................................................14

(a) The Due Process Requirement that the Claim for
Trafficking in the Factory "Arise Out of or Alleged
Relate to" the Contacts Is Not Met...........................................14

(b) The Due Process "Purposeful Availment" Requirement
Is Not Met with Respect to the Cigar Factory.........................17

(c) Plaintiffs' Florida Residence Does Not Provide Due
Process Personal Jurisdiction ...................................................19

ii.    Statutory Requirements Are Not Met with Respect to the
Cigar Factory .......................................................................20

Florida Long-Arm.................................................................20

Fed. R. Civ. P. 4(k)(2) ..........................................................21

i

2. The Requirements for Jurisdiction as to the Mixed-Use Building Are Not Met ...................................................................21

    i. Due Process Requirements Are Not Met As to the Mixed-Use Building ..........................................................21

    ii. Statutory Requirements Are Not Met with Respect to the Mixed Use Building..................................................23

III. Due Process Prohibits Title III's Application to Habanos, S.A...........................23

IV. The Complaint Must Be Dismissed for Insufficient Service of Process..............24

V. If Dismissal Is Denied, a More Definite Statement Is Required .......................25

CONCLUSION ...........................................................................25

REQUEST FOR HEARING.................................................................25

## TABLE OF AUTHORITIES

**Cases**........................................................................................................................**Page**

*Africa Growth Corp. v. Rep. of Angola*,
     No. 17-cv-2469, 2019 WL 3253367 (D.D.C. July 19, 2019) ................................13

*Am. Online, Inc. v. Huang*,
     106 F. Supp. 2d 848 (E.D. Va. 2000) ...................................................................19

*Araya-Solorzano v. Gov't of the Rep. of Nicaragua*,
     562 F. App'x 901 (11th Cir. 2014) .......................................................................13

*Arencibia v. AGA Serv.*,
     No. 20-cv-24694, 2021 WL 1318225 (S.D. Fla. April 8, 2021)............................15

*Argos Glob. Partner Servs., LLC v. Ciuchini*,
     446 F. Supp. 3d 1073 (S.D. Fla. 2020) .............................................................17, 19

*BackGrid USA, Inc. v. Mod. Notoriety Inc.*,
     No. 21-cv-03318, 2021 WL 4772474 (C.D. Cal. Sept. 15, 2021) .......................3, 17

*Blue Water Int'l v. Hattrick's Irish Sports Pub*,
     No. 17-cv-1584, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017)............................17

*BNSF Ry. Co. v. Loos*,
     139 S.Ct. 893 (2019)............................................................................................25

*Bristol-Myers Squibb v. Sup. Crt*,
     137 S.Ct. 1773 (2017)...........................................................................................14

*Brophy v. Almanzar*,
     359 F. Supp. 3d 917 (C.D. Cal. 2018) ..................................................................17

*Cap. Trans. Int'l. v. Int'l. Petroleum Industrial Co.*,
     No. 10-cv-529, 2013 WL 557236 (M.D. Fla. Feb. 14, 2013)..............................7-9

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
     307 F. Supp. 2d 553 (S.D.N.Y. 2004).....................................................................2

*Day v. Taylor*,
     400 F.3d 1272 (11th Cir. 2005) ............................................................................15

*Del Valle v. Trivago GmbH*,
     No. 19-cv-22619, 2020 WL 2733729 (S.D. Fla. May 26, 2020)...........................20

*Devengoechea v. Bolivarian Republic of Venezuela*,
    889 F.3d 1213 (11th Cir. 2018) .................................................................12, 13

*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) .................................................................18

*DHTK LLC v. UNKNWN LLC*,
    No. 19-cv-61627, 2020 WL 4932237 (S.D. Fla. July 23, 2020) .........................12

*Diamond Crystal Brands v. Food Movers Int'l*,
    593 F.3d 1249 (11th Cir. 2010) .................................................................16, 18

*Dish Network, LLC v. Jadoo TV, Inc.*,
    No. 18-cv-9768, 2020 WL 6536659 (C.D. Cal. Mar. 16, 2020).........................18, 19

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003).................................................................................8

*Eitzen Chem. PTE, Ltd. v. Carib Petroleum*,
    749 F. App'x 765 (11th Cir. 2018) .................................................................12

*Euclid Fish Co. v. Cape Fla. Seafood*,
    No. 21-mc-22310, 2021 WL 4976530 (S.D. Fla. Aug. 20, 2021) .........................13

*Exxon Mobil Corp. v. Corporación CIMEX, S.A.*,
    534 F. Supp. 3d 1 (D.D.C. 2021) .................................................................10

*Exxon Mobil Corp. v. Corporación CIMEX, S.A.*,
    No. 19-cv-1277, 2021 WL 4709566 (D.D.C. Oct. 08, 2021) ...............................10

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
    703 F.3d 742 (5th Cir. 2012) .................................................................13

*Fischell v. Cordis Corp.*,
    No. 15-cv-184, 2016 WL 8467615 (W.D. Mich. Feb. 18, 2016) .........................5

*Ford Motor Co. v. Montana Eighth Judicial Dist.*,
    141 S.Ct. 1017 (2021).................................................................................20

*France.com, Inc. v. French Republic*,
    992 F.3d 248 (4th Cir. 2021) .................................................................10

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) .................................................................22

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) ........................................................................13

*Gerling Glob. Reins. Corp. v. Gallagher*,
  267 F.3d 1228 (11th Cir. 2001) ..............................................................23

*Griffin Indus. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ..............................................................16

*GSS Grp. Ltd. v. Nat'l Port Auth.*,
  680 F.3d 805 (D.C. Cir. 2012) ................................................................13

*Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*,
  669 F. Supp. 2d 1353 (S.D. Fla. 2009) ....................................................4

*Herbal Brands Inc. v. Photoplaza Inc.*,
  No. 21-cv-577, 2021 WL 5299677 (D. Ariz. Nov. 15, 2021) ..............18

*Home Ins. Co. v. Thomas Indus.*,
  896 F.2d 1352 (11th Cir. 1990) ..............................................................16

*Honus Wagner v. Luminary Grp. LLC*,
  No. 17-cv-61317, 2017 WL 6547899 (S.D. Fla. Dec. 21, 2017).........17

*Hurtado v. Balerno Int'l Ltd.*,
  No. 17-cv-62200, 2018 WL 4053122 (S.D. Fla. Aug. 24, 2018) ........24

*Iglesias v. Pernod Ricard*,
  No. 20-cv-20157, 2021 WL 3083063 (S.D. Fla. Aug. 17, 2020
  & June 17, 2021)......................................................................................12

*In re Chocolate Confectionary Antitrust Litig.*,
  674 F. Supp. 2d 580 (M.D. Pa. 2009)................................................22-23

*In re Takata Airbag*,
  396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..................................................18

*In re Zantac*,
  6 F. Supp. 3d 1192 (S.D. Fla. 2021) .......................................................23

*Internet Sols. Corp. v. Marshall*,
  39 So. 3d 1201 (S.D. Fla. 2010) .............................................................20

*Jenkins Brick v. Bremer*,
  321 F.3d 1366 (11th Cir. 2003) ............................................................2-3

*Kennedy v. Heidi Motel Inc.*,
   No. 19-cv-60946, 2019 WL 11553695 (S.D. Fla. June 20, 2019) .........................................3

*King v. Burwell*,
   576 U.S. 473 (2015)..................................................................................................................24

*Lawrence v. U.S.*,
   597 F. App'x 599 (11th Cir. 2015) .........................................................................................16

*Leroy v. Great W. United Corp.*,
   443 U.S. 173 (1979)................................................................................................................5, 6

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ..............................................................................................18

*Lubian v. Rep. of Cuba*,
   2011 WL 13186846 (S.D. Fla. Jan. 25, 2011) ......................................................................12

*Magnuson v. Video Yesteryear*,
   85 F.3d 1424 (9th Cir. 1996) ..................................................................................................24

*Maxcess, Inc. v. Lucent Tech.*,
   433 F.3d 1337 (11th Cir. 2005) ..............................................................................................15

*McCullough v. Royal Caribbean Cruises*,
   268 F. Supp. 3d 1336 (S.D. Fla. 2017) ..................................................................................12

*Molinos Valle del Cibao, C. por A. v. Lama*,
   633 F.3d 1330 (11th Cir. 2011) ..............................................................................................12

*Moreira v. Société Générale, S.A.*,
   -- F. Supp. 3d --, 2021 WL 5524484 (S.D.N.Y. Nov. 24, 2021) .........................................16

*Mother Doe I v. Al Maktoum*,
   632 F. Supp. 2d 1130 (S.D. Fla. 2007) ..............................................................................21, 23

*Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*,
   No. 18-cv-81445, 2019 WL 3532024 (S.D. Fla. Aug. 2, 2019) ...........................................3

*OBB Personenverkehr v. Sachs*,
   577 U.S. 27 (2015)..................................................................................................................10

*Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*,
   578 F. Supp. 2d 621 (S.D.N.Y. 2008)....................................................................................9

*Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*,
    No. 08-cv-264, 2008 WL 4067431 (M.D. Fla. Aug. 27, 2008)...........................................21

*Pat. Holder LLC v. Lone Wolf Distribs., Inc.*,
    No. 17-cv-23060, 2017 WL 5032989 (S.D. Fla. Nov. 1, 2017) ...........................................4

*Patrickson v. Dole Food Co*.,
    251 F.3d 795 (9th Cir. 2001) ...........................................................................................9, 10

*Performance Indus. Mfg., Inc. v. Vortex Performance Pty*,
    No. 18-cv-00510, 2019 WL 78840 (M.D. Fla. Jan. 2, 2019) ..............................................17

*PG Creative Inc. v. Affirm Agency*,
    No. 18-cv-24299, 2019 WL 5684219 (S.D. Fla. Oct. 31, 2019) ..........................................20

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
    619 F. Supp. 2d 1260 (M.D. Fla. 2009).............................................................................25

*Poschmann v. Ponte Vedra Corp.*,
    No. 18-cv-14321, 2018 WL 7890201 (S.D. Fla. Dec. 27, 2018)...........................................3

*Prince v. Poulos*,
    876 F.2d 30 (5th Cir. 1989) ..............................................................................................24

*Princz v. Fed. Rep. of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994).........................................................................................12

*Qatar v. First Abu Dhabi Bank PJSC*,
    432 F. Supp. 3d 401 (S.D.N.Y. 2020)..................................................................................9

*Rep. of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992).........................................................................................................12

*Rep. of Germany v. Philipp*,
    141 S.Ct. 703 (2021)...................................................................................................10-11

*Rodriguez v. Pan Am. Health Org.*,
    No. 18-cv-24995, 2020 WL 1666757 (S.D. Fla. Apr. 3, 2020)..................................2, 5-6

*Rosen v. Terapeak, Inc.*,
    No. 15-cv-112, 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015)..........................................19

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)...........................................................................................................6

*Schuster v. Carnival Corp.*,
   No. 10-cv-21879, 2011 WL 13220428 (S.D. Fla. Feb. 3, 2011) ..........................................17, 20

*Segal v. PEMEX*,
   No. 05-cv-2390, 2009 WL 10670372 (M.D. Fla. Feb. 9, 2009)..............................................2, 6

*Sequeira v. Rep. of Nicaragua*,
   815 F. App'x 345 (11th Cir. 2020) ......................................................................................10

*Sequeira v. Rep. of Nicaragua*,
   No. 16-cv-25052, 2019 WL 2267507 (S.D. Fla. Feb. 14, 2019) ...........................................13

*S-Fer Int'l, Inc. v. Stonesheets LLC*,
   No. 14-cv-24662, 2016 WL 8808749 (S.D. Fla. July 22, 2016) ...........................................12

*SkyHop Techs., Inc. v. Praveen Narra & Indyzen, Inc.*,
   No. 21-cv-60799, 2021 WL 5749520 (S.D. Fla. Oct. 18, 2021) ...........................................19

*Snow v. DirecTV*,
   450 F.3d 1314 (11th Cir. 2006) ...........................................................................................16

*Sovereign Offshore Servs. v. Shames*,
   No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ...........................................17

*Stansell v. BGP, Inc.*,
   No. 09-cv-2501, 2010 WL 2791850 (M.D. Fla. July 14, 2010) ...........................................12

*Stewart v. Dutra Constr. Co.*,
   543 U.S. 481 (2005)............................................................................................................25

*Storms v. Haugland Energy Grp., LLC*,
   No. 18-cv-80334, 2018 WL 4347603 (S.D. Fla. Aug. 17, 2018) .........................................18

*Tarantino v. Riddell*,
   No. 17-cv-60567, 2018 WL 2011551 (S.D. Fla. Apr. 30, 2018)...........................................15

*Telchi v. Israel Mil. Indus.*,
   No. 14-cv-20244, 2015 WL 6550664 (S.D. Fla. Oct. 29, 2015) ..........................................13

*Tifa Ltd. v. Rep. of Ghana*,
   692 F. Supp. 393 (D.N.J. 1988) .............................................................................................6

*TracFone Wireless, Inc. v. Sunstrike Int'l, Ltd.*,
   273 F.R.D. 697 (S.D. Fla. 2011) ..........................................................................................24

*Tracfone Wireless, Inc. v. Wilson*,
   No. 10-cv-20180, 2010 WL 11566068 (S.D. Fla. Mar. 15, 2010) ......................................3

*TriOptima AB v. Quantile Techs. Ltd.*,
   No. 19-cv-390, 2020 WL 11613655 (E.D. Tex. Nov. 30, 2020)..........................................19

*U.S. v. Baston*,
   818 F.3d 651 (11th Cir. 2016) ...........................................................................................23

*U.S. v. Ibarquen-Mosquera*,
   634 F.3d 1370 (11th Cir. 2011) .........................................................................................24

*U.S. v. Street*,
   472 F.3d 1298 (11th Cir. 2006) .........................................................................................24

*Volt, LLC v. Volt Lighting Grp.*,
   369 F. Supp. 3d 1241 (M.D. Fla. 2019)........................................................................17, 20

*Watts v. Haun*,
   393 So.2d 54 (Fla. Dist. Ct. App. 1981) ...........................................................................20

*Werner v. Dowlatsingh*,
   818 F. App'x 671 (9th Cir. 2020) .........................................................................................3

*Williams Elec. Co. v. Honeywell, Inc.*,
   854 F.2d 389 (11th Cir. 1988) ...........................................................................................20

*Zanakis v. Scanreco, Inc.*,
   No. 18-cv-21813, 2019 WL 2211872 (S.D. Fla. Feb. 6, 2019) ...........................................23

**Statutes**

Title III, Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996
   22 U.S.C. § 6081-6085 ...............................................................................................*passim*

Foreign Sovereign Immunities Act
   28 U.S.C. §§ 1330, 1602 *et seq.*................................................................................*passim*

28 U.S.C. § 1391(b)(1) ...............................................................................................5-6

28 U.S.C. § 1391(b)(2) ...............................................................................................2, 4-6

28 U.S.C. § 1391(c) ....................................................................................................5

28 U.S.C. § 1391(f).....................................................................................................2

ix

28 U.S.C. § 1391(f)(1) ...................................................................................................2-5

28 U.S.C. § 1391(f)(4) ......................................................................................................6

28 U.S.C. § 1392(b)(2) ......................................................................................................3

28 U.S.C. § 1603(a) ...........................................................................................................2

28 U.S.C. § 1603(b)(2) ..................................................................................................7, 8

28 U.S.C. § 1604 .............................................................................................................10

28 U.S.C. § 1605 .............................................................................................................10

28 U.S.C. § 1605(a)(2) ...............................................................................................10, 13

28 U.S.C. § 1605(a)(3) ....................................................................................................10

28 U.S.C. § 1608 ........................................................................................................24, 25

Fla. Stat. § 48.193(1)(a)(2) .............................................................................................20

**Rules**

Fed. R. App. P. 25(a) ......................................................................................................24

Fed. R. Civ. P. 4(f)(2)(C) ...........................................................................................24, 25

Fed. R. Civ. P. 4(f)(3) .....................................................................................................24

Fed. R. Civ. P. 4(k)(2).................................................................................................*passim*

Fed. R. Civ. P. 4, Advisory Committee Notes (1963) ....................................................24

Fed. R. Civ. P. 5(b) .........................................................................................................24

Fed. R. Civ. P. 12(b)(1).....................................................................................................1

Fed. R. Civ. P. 12(b)(2).....................................................................................................1

Fed. R. Civ. P. 12(b)(3).....................................................................................................1

Fed. R. Civ. P. 12(b)(5).....................................................................................................1

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

Fed. R. Civ. P. 12(e) ....................................................................................................1, 25

Cal. C. Civ. P. § 410.10 ....................................................................................................21

## Other Materials

Black's Law Dictionary, "Mail" (11th ed. 2019) ........................................................24

Dep't of State, Legal Considerations Regarding Title III,
    141 Cong. Rec. S15106, S15108 (Oct. 12, 1995)................................................23

H.R. Rept. No. 94-1489, 94th Cong., 2d Sess., Comm. on Judiciary (Sept. 9, 1976) .................25

Merriam-Webster.com Dictionary, "Mail" *available at* www.merriam-
    Awebster.com/dictionary/mail................................................................................24

*Restatement (Third), Foreign Relations Law of the United States*, § 471, *cmt. b* (1987)............24

Corporación Habanos, S.A. ("Habanos, S.A.") respectfully submits this Memorandum of Law in support of its individual motion to dismiss this action with prejudice:

(a)        for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3); or

(b)        in the alternative, for lack of personal jurisdiction, insufficient service of process, and failure to state a claim upon which relief may be granted, and, additionally in the event that the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.* ("FSIA"), is applicable, for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (5) and (6).

Habanos S.A. further submits this Memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(e) for a more definite statement in the event that dismissal is denied.

## STATEMENT OF THE CASE

Habanos, S.A. is a Cuban joint venture corporation owned in equal parts by a Cuban party (allegedly Tabacuba) and a foreign party: allegedly, from 2008 to at least 2020, Imperial Brands PLC ("Imperial"), either directly or through one or more subsidiaries.   Second Amended Complaint, ECF 208 ("SAC"), ¶¶ 6–7, 11, 44, 61.

Plaintiffs sue Habanos, S.A., as well as Imperial, for "trafficking" in a cigar factory in Havana, Cuba ("Cigar Factory") and the commercial floors of a commercial/residential building in Havana ("Mixed-Use Building," together the "Properties"). Plaintiffs allege the Properties were owned by a Cuban limited partnership, to whose owner they are allegedly successors. SAC ¶¶ 1–3. Plaintiffs' claim is brought under Title III, Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6081–6085 ("Title III"). SAC ¶ 101.

Plaintiffs also sue two New York "advertising agency subsidiaries" of a U.K. company, Young & Rubicam LLC ("Y&R") and BCW LLC ("BCW"), under Title III for marketing and publicizing "the products produced at the confiscated Cigar Factory," as well as the parent

company, WPP PLC ("WPP"). SAC ¶¶ 12–16, 20–23.

On January 26, 2021, Habanos, S.A. received a DHL delivery in Havana of a Summons and Complaint. ECF 66. The SAC was filed on March 9, 2022, ECF 208.

## ARGUMENT

### I.     Venue Is Improper

1.      Plaintiffs' allegation that Habanos, S.A. is an "agency or instrumentality of the Cuban government" under the FSIA, SAC ¶ 42, is fatal to proper venue in this District. "Section 1391(f) controls venue in every case where a foreign state is named as a defendant." *Rodriguez v. Pan Am. Health Org.*, No. 18-cv-24995, 2020 WL 1666757, at *9 (S.D. Fla. Apr. 3, 2020) (Gayles, J.).[1] It is clear on the face of the SAC that Plaintiffs cannot satisfy § 1391(f)'s requirements.

Section 1391(f)(1) lays venue in a District where a "substantial part of events or omission giving rise to the claim occurred," just as the general venue statute does. 28 U.S.C. § 1391(b)(2).[2]

Dispositive of venue under § 1391(f)(1), the SAC alleges *no* event or omission in the District giving rise to the claim; to the contrary, its allegations foreclose venue here. Plaintiffs have long been on notice that Habanos, S.A. challenges venue, and have since completed jurisdictional discovery, yet *still*, in their third pleading, allege no acts in the District.

Settled Eleventh Circuit precedent establishes that the requirement of § 1391(b)(2) and § 1391(f)(1) "focus[es] on relevant activities of the defendant, not the plaintiff." *Jenkins Brick v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003).[3] "[R]elevant activities" are "*only* the events

---

[1]  28 U.S.C. § 1603(a) defines "foreign state" to include agencies or instrumentalities. Consequently, § 1391(f)(1) applies in suits against agencies. *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 558 & n.2 (S.D.N.Y. 2004).

[2]  The other provisions of § 1391(f) lay venue where the vessel at issue is found; where an agency is licensed to do business or does business; and the District Court for the District of Columbia.

[3]  Cases applying § 1391(b)(2) are fully applicable to § 1391(f)(1) because their standards are identical. *See Segal v. PEMEX*, No. 05-cv-2390, 2009 WL 10670372, at *2 (M.D. Fla. Feb. 9,

that *directly give rise to a claim*" and have a "close nexus to the wrong." *Tracfone Wireless, Inc. v. Wilson*, No. 10-cv-20180, 2010 WL 11566068, at *3 (S.D. Fla. Mar. 15, 2010) (emphasis in original) (citing *Jenkins Brick*). Further, "only those locations hosting a substantial part of the events [giving rise to the claim] are to be considered." *Jenkins Brick*, 321 F.3d at 1372.

Yet nothing in the SAC alleges Habanos, S.A. has done *any* act in the District, or that others engaged in *any* acts relevant to Plaintiffs' claim in the District, much less what is required.

*First*, the SAC alleges that Habanos, S.A. is marketing Cuban cigars through social media accounts on Twitter, Instagram and YouTube. SAC ¶¶ 22, 41. However, the SAC does not allege these companies are located in Florida; to the contrary, they are located in California.[4]

*Second*, courts have uniformly found marketing on globally accessible websites, such as Twitter, Instagram and YouTube, insufficient for venue in a particular district. *See, e.g.*, *Kennedy v. Heidi Motel Inc.*, No. 19-cv-60946, 2019 WL 11553695, at *7 (S.D. Fla. June 20, 2019) (rejecting venue under § 1392(b)(2) where the "only act related [to] Plaintiff's claim that occurred in the Southern District of Florida is Plaintiff's unilateral act of accessing Defendant's website in the district"); *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-cv-81445, 2019 WL 3532024, at *12 (S.D. Fla. Aug. 2, 2019) ("venue is improper" despite alleged "advertis[ing] nationwide, including Florida"). To hold otherwise would eviscerate the congressional venue scheme and, with "far-reaching implications," permit a plaintiff "to establish venue in his home district over any [defendant] that maintains a website." *Poschmann v. Ponte Vedra Corp.*, No. 18-cv-14321, 2018 WL 7890201, at *2 (S.D. Fla. Dec. 27, 2018).

*Third*, it is unclear if the SAC alleges marketing other than through the social media

___

2009) (applying *Jenkins Brick* to action against foreign state, where § 1391(f)(1) applied).

[4] *BackGrid USA, Inc. v. Mod. Notoriety Inc.*, No. 21-cv-03318, 2021 WL 4772474, at *6 (C.D. Cal. Sept. 15, 2021), *quoting Werner v. Dowlatsingh*, 818 F. App'x 671, 673 n.2 (9th Cir. 2020).

3

accounts, but to the extent it does (without alleging what that marketing may be), *see* SAC ¶¶ 14, 20, 21, 56, Plaintiffs do not allege it occurred in Florida.[5]

*Fourth*, the SAC alleges "Imperial ... either directly or through Habanos" "retain[ed]" "WPP, the WPP Group and its U.S.-based agents" for social media marketing of Cuban cigars connected to the Properties, SAC ¶ 61, but Plaintiffs allege that Y&R and BCW have their principal places of business in *New York*, and that WPP is co-headquartered in *New York* and *London*, not in the District. SAC ¶¶ 36–38. This forecloses venue unless there are allegations that they nonetheless undertook activities in Florida giving rise to this claim—and there are none.

The SAC alleges that Y&R and BCW (and, through these or other subsidiaries, WPP) are registered to do business in Florida, derive revenue from Florida, and have offices in Florida, but these allegations do not support venue: the SAC does not allege that these defendants, or their subsidiaries, engaged in any acts in Florida related to *this claim*, SAC ¶¶ 67–69, as required for venue under §1391(f)(1) or §1391(b)(2). Further, that a defendant is registered to do business, conducts business, or has an office in a district does not provide venue on a claim as to that defendant, *Hemispherx Biopharma, Inc. v. MidSouth Cap., Inc.*, 669 F. Supp. 2d 1353, 1357 (S.D. Fla. 2009), let alone as to another party which allegedly hired that defendant.

*Fifth*, the SAC alleges that all so-called, worldwide "WPP Group" entities use general, back-end networking and other technological services, collectively labeled by the SAC as "U.S. Services."[6] These "U.S. Services" are *not* alleged (even after discovery) to have anything to do

---

[5] Further, while they need not be considered because of this facial insufficiency, the previously submitted declarations by Y&R and BCW establish they undertook *no* activity related to the alleged marketing in the District, *see* ECF 93-1; ECF 93-2. (The Court may consider a factual challenge to venue. *Pat. Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-cv-23060, 2017 WL 5032989, at *2 (S.D. Fla. Nov. 1, 2017)).

[6] These services are: "networking and other services provided through Microsoft, and other services," "YR.com, BM.com, Ogilvy.com," "file share sites on internet domains nominally

with the District. Their only alleged links to the *U.S.* are that some are "sold by U.S. companies," SAC ¶ 54, and some are allegedly "nominally controlled" by Y&R or BCW. SAC ¶ 23. There is no allegation of a link to Florida, let alone one that is related to Plaintiffs' claim.

*Sixth* and finally, the SAC alleges five Plaintiffs reside in Florida. SAC ¶ 66. In addition to not alleging residence in *this* District, "it is absolutely clear" that venue is not established by "the residence of the plaintiff[.]" *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979).[7]

2.      Given Plaintiffs' FSIA allegation, the general venue provision invoked by the SAC ¶ 71, 28 U.S.C. § 1391(b)(2), need not be considered, but, in any event, its requirements are identical to § 1391(f)(1), and thus are not satisfied, as already shown.

3.      Plaintiffs do *not* allege venue under § 1391(b)(1), SAC ¶ 71, and so cannot rely upon it, particularly now, in a second amendment of their pleading. *Fischell v. Cordis Corp.*, No. 15-cv-184, 2016 WL 8467615, at *1 n.3 (W.D. Mich. Feb. 18, 2016) ("Plaintiff does not plead that venue is proper under § 1391(b)(1);" "arguments" "waived" as to § 1391(b)(1)). Additionally, Plaintiffs cannot rely on § 1391(b)(1) because of their allegation that Habanos, S.A. is an "agency or instrumentality," upon which they exclusively rely for service of process, SAC ¶ 43, and invoke for subject-matter jurisdiction. SAC ¶ 42.

If considered, § 1391(b)(1)'s requirement that "*all* defendants are residents of the State in which the district is located" (italics added) is not met. A corporate defendant resides in a State for purposes of this venue provision if it is "subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c). Since Y&R and BCW would be subject to general

---

controlled by Y&R (YR.com) or by BCW (BM.com[)]," and "email addresses running through U.S.-based servers, including ... servers nominally controlled by Y&R (YR.com) and Ogilvy (the Ogilvy.com server[)]." SAC ¶¶ 23, 54, 62.

[7] *See also Rodriguez*, 2020 WL 1666757 at *10 (Gayles, J.) (no § 1391(f)(1) venue "[a]lthough some plaintiffs reside in the [District]").

jurisdiction in New York under Plaintiffs' own allegations that they are headquartered there, Plaintiffs cannot rely on Rule 4(k)(2) to establish personal jurisdiction over them in Florida. (The same would be true as to WPP on the SAC's allegation that it has co-headquarters in N.Y.)

Rather, acts *in Florida* related to the claim sufficient to satisfy both Due Process and the Florida long-arm are required as to each of these defendants for personal jurisdiction. Yet there have been no relevant acts in Florida at all; hence, they are not resident in Florida because there is no personal jurisdiction over them, and there can be no venue under § 1391(b)(1).

4.      Plaintiffs may seek to lay venue elsewhere in a refiled action: in the *District of Columbia*, where venue always lies in suits against agencies or instrumentalities, § 1391(f)(4), *Segal*, 2009 WL 10670372, at *3; *Tifa Ltd. v. Rep. of Ghana*, 692 F. Supp. 393, 407 (D.N.J. 1988); *California*, where they allege acts related to the claim (creating social media accounts with California companies) occurred, under § 1391(b)(2); or *New York*, either under § 1391(b)(2), because of Y&R's and BCW's alleged acts there, or § 1391(b)(1), because Y&R, BCW and WPP are allegedly subject to general jurisdiction and Plaintiffs could invoke Rule 4(k)(2) as to Habanos, S.A. and Imperial. However, it is clear that venue does not lie here.

5.      The Court need go no further than venue to dismiss this action, and should not reach the other issues presented by the instant motion. As it is a threshold issue, the Court may properly dismiss for lack of venue without first determining subject-matter or personal jurisdiction, or service of process, as courts often do. *See, e.g.*, *Rodriguez*, 2020 WL 1666757 at *10 (Gayles, J.) (dismissing for lack of venue without reaching subject-matter and personal jurisdiction). Those issues should be left to a court where venue is proper. There are "sound prudential justification[s] for doing so," *Leroy*, 443 U.S. at 180; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999) ("leeway to choose among threshold issues"): judicial economy, the risk of

needlessly creating a conflict with rulings of the court with proper venue; and the ease and simplicity of deciding venue.

## II.     The Court Lacks Personal Jurisdiction, and, If the FSIA Applies, Also Lacks Subject-Matter Jurisdiction

Habanos, S.A. is not, as alleged, an "agency or instrumentality." SAC ¶ 42. If the Court finds to the contrary, then the FSIA is the exclusive source of subject-matter jurisdiction. As none of the exceptions to FSIA immunity are met, the Court would be divested of jurisdiction.

Whether or not the FSIA applies, or, if applicable, any of the exceptions to FSIA immunity are satisfied, the exercise of personal jurisdiction must satisfy the Due Process Clause. Plaintiffs cannot meet its requirements, independently requiring dismissal.

If the FSIA does *not* apply, Plaintiffs must *additionally* satisfy the Florida long-arm or Fed. R. Civ. P. 4(k)(2), but cannot meet the requirements of either.

### A.     The FSIA, Invoked by Plaintiffs, Does Not Apply; If Applicable, It Divests This Court of Subject-Matter and Personal Jurisdiction

1.   That Habanos, S.A. is not an FSIA "agency or instrumentality" is established on the face of the SAC. Plaintiffs have thus failed at the threshold to meet its *prima facie* burden in invoking the FSIA, *Cap. Trans Int'l, LLC v. Int'l Petroleum Inv. Co.*, No. 10-cv-529, 2013 WL 557236, at *7 (M.D. Fla. Feb. 14, 2013).

A "separate legal person" is an "agency or instrumentality" within the FSIA when "a majority of whose shares or other ownership interest is owned by a foreign state" or it is "an organ of a foreign state[.]" 28 U.S.C. § 1603(b)(2). The SAC alleges that Habanos, S.A., is a separate legal person, SAC ¶ 9, and is 50% owned by a U.K. company, SAC ¶¶ 5, 7, 35, 60 n.33, 77, 86, 97, leaving 50% for Cuban ownership—not "a majority." The SAC's gambit to meet the "majority" ownership prong by alleging the Cuban Government has "ultimate control" of Habanos,

S.A., SAC ¶ 9, is foreclosed by *Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003) (rejecting that "control may be substituted for an ownership interest").[8]

The SAC's reliance on § 1603(b)(2)'s "organ" prong, SAC ¶ 9, also fails. It is contrary to authority, and extends the FSIA to a vast new category of entities: commercial trading joint ventures with foreign parties, including those which trade in consumer products.

The SAC alleges that Habanos, S.A. markets Cuban cigars internationally (except for the U.S.), SAC ¶¶ 5, 11, 77, 82, 86; it makes contradictory allegations as to whether it also manufactures the cigars it sells. SAC ¶¶ 12, 60, n.33, 77. Plaintiffs allege it is "jointly control[led]" by a U.K. company, Imperial, and a Cuban non-party, Tabacuba. SAC ¶ 82; *see also id.* ¶ 7 ("operational control of [] Habanos . . . 50% owned by Imperial"). Habanos, S.A. distributes profits equally "between Imperial and Cuba in their 50-50 joint venture," SAC ¶ 97 n.47. Habanos, S.A. is a "corporation," SAC ¶ 35, a "*sociedad anonima*" (hence, the "S.A." in its name), *i.e.*, a mercantile stock company established under the Cuban Code of Commerce by two or more persons contributing assets to the company "to obtain profits" and registered on Cuba's Mercantile Registry. *See* Declaration of Professor Marta Moreno Cruz (April 18, 2022, submitted herewith) ("Moreno Decl.") on Cuban law.

Habanos, S.A. is thus a "purely commercial venture" and, hence, cannot be considered an "organ." *Cap. Trans Int'l.*, 2013 WL 557236 at *8–*9 (company that "[i]nvest[s] in, establish[es], and run[s] business and industrial projects" for profit not an "organ").

*Cap. Trans Int'l* so held on the basis of a thorough analysis of the FSIA and the authority. A company created to "bring [their] shareholders a profit" through the conduct of a "business" is

---

[8] Separately, even if Plaintiffs had alleged majority state ownership, such ownership must be direct, not through an intermediary. *Dole*, 538 U.S. at 473–77; but, the SAC alleges ownership "by Cuba, *through* one or more Cuban-owned companies." SAC ¶ 7 (emphasis added).

not an "organ;" this is the "key inquiry." *Id.* at *9.  They stand in contrast to legal entities that "perform governmental functions," *Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 578 F. Supp. 2d 621, 626 (S.D.N.Y. 2008), such as a central bank, the "paradigmatic example." *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 409 (S.D.N.Y. 2020).[9]

That profits may ultimately inure to the benefit of the State, through indirect ownership or less than majority direct ownership, does not convert such a company into an "organ." *See, e.g., Cap. Trans Int'l.*, 2013 WL 557236, at *9 and *Ocean Line*, 578 F. Supp. 2d at 625 (entities not organ despite profits inuring to State through intermediary).[10]

Plaintiffs' sole assertion of a "public activity"—that Habanos, S.A. "market[s] all Cuban tobacco products worldwide," SAC ¶ 9—fundamentally misconceives what constitutes a "public activity" for purposes of determining "organ" status, namely, a company that is *not* created to "bring its shareholders a profit" through the conduct of a "business," the "key inquiry." *Cap. Trans Int'l* at *9.  By the SAC's own allegations, that is what Habanos, S.A. does.

While this is dispositive, subsidiary indicia sometimes considered, identified in *Cap. Trans. Int'l.* 2013 WL 557236, at *9–*10; *see also First Abu Dhabi Bank*, 432 F. Supp. 3d at 409, weighs against agency status. The SAC does *not* allege that Habanos, S.A. was created by Government decree, that Habanos, S.A.'s are public employees, or that it is an agency or instrumentality of the State under Cuban law.[11]  "Ownership structure" weighs against "organ"

---

[9] *See also, e.g.*, *Patrickson v. Dole Food Co.*, 251 F.3d 795, 808 (9th Cir. 2001), *aff'd*, 538 U.S. 468 (2003) (company created "in pursuit of profits" is not "organ"); *First Abu Dhabi Bank*, 432 F. Supp. 3d at 409 (comparing commercial companies run for profit with "organs," such as legal entities dedicated to protecting depositors).

[10] Were it otherwise, *Dole* would be subverted: because profits flow upward through ownership of shares, third-tier commercial companies owned by government-owned corporations would always be an agency or instrumentality, contrary to the Supreme Court's insistence that this ownership structure does not establish agency or instrumentality status.

[11] *See also* Moreno Decl., confirming that Habanos, S.A. is not an organ, agency or instrumentality

status, as Habanos, S.A. is 50% foreign owned. The control accompanying majority shareholder position does not weigh in favor of "organ" status, *Dole Food*, 251 F.3d at 808; here, there is not even that and concededly "joint[] control" and 50% "operational control." SAC ¶¶ 7, 82.

2.  If the FSIA were applicable, it would provide Habanos, S.A. with immunity from suit because, when applicable, it is the "sole basis for obtaining jurisdiction over a foreign state," *OBB Pesonenverkehr v. Sachs*, 577 U.S. 27, 34 (2015), and none of the exceptions to the immunity it confers on agencies and instrumentalities are met. 28 U.S.C. §§ 1604–1605.

*Sequeira v. Rep. of Nicaragua*, 815 F. App'x 345 (11th Cir. 2020) establishes that the commercial activity exception, 28 U.S.C. § 1605(a)(2), invoked by Plaintiffs, SAC ¶ 42, does not apply. There, the plaintiff sued Nicaragua for taking his farmland "and sell[ing] the livestock as meat products in the United States." The Eleventh Circuit held that plaintiff could proceed only under the expropriation exception, 28 U.S.C. §1605(a)(3), not the commercial activity exception. *Id.*, at 347, 350–51.[12]  Plaintiffs' claim here is on all fours with *Sequiera*, which is controlling.[13]

Plaintiffs cannot satisfy the controlling expropriation exception. In *Rep. of Germany v.*

---

or part of the Cuban Government under Cuban law.

[12] That the plaintiff claimed damages for commercial use of the property did not make the commercial activity exception applicable because the action's gravamen was the taking of the property, a sovereign act. *Id.* at 347.

[13] *See also France.com, Inc. v. French Republic*, where the plaintiff sued France's tourism agency, as well as France, for its use of a domain allegedly expropriated, via judicial process, to promote tours, lodging and restaurants. 992 F.3d 248, 253 (4th Cir. 2021). The Fourth Circuit held that only the expropriation exception applied, even though it considered the agency's use of the domain to be commercial.

A court in the District of Columbia held that the commercial activity exception applied to a Title III action. *Exxon Mobil Corp. v. Corporación CIMEX, S.A.*, 534 F. Supp. 3d 1, 14-15 (D.D.C. 2021); No. 19-cv-1277, 2021 WL 4709566 (Oct. 8, 2021) (denying reconsideration); *appeal pending*, No. 21-7127. Unlike here, the court was not bound by *Sequeira* and relied exclusively on its own Circuit's authority. It certified interlocutory review because there was "a substantial ground for difference of opinion" even under D.C. authority. ECF 77 at 5–6. It did not consider *France.com*.

*Philipp*, 141 S.Ct. 703 (2021), the Supreme Court held that the exception's requirement that the property at issue was "taken in violation of international law" is not met if the confiscated property was owned at the time by nationals of the expropriating country. *Id.* at 711. Here, the SAC does not allege that the limited partnership which owned the Properties was organized under U.S. law, or that the partnership's owner was a U.S. national at the time of the confiscation. *See* SAC ¶ 1.

Even if it could be invoked, the SAC fails to satisfy the commercial activity exception's requirements. *As to the Cigar Factory*, the social media accounts cannot be the "direct effect" of use of the Cigar Factory, as required,[14] because the accounts were established in 2015 and 2016, years *after* use of the Cigar Factory ended. *Infra* at 16–17. Habanos, S.A.'s alleged hiring of U.S. marketing entities, SAC ¶ 82, and their or the "WPP Group"'s alleged use of the "U.S. Services," also post-date use of the Cigar Factory, *see infra* at 16–17, and so they too cannot be a "direct effect."

*As to the Mixed-Use Building*, Habanos, S.A.'s marketing of *cigars*, through globally accessible social media accounts and allegedly with the assistance of WPP agencies, is not a "direct effect" of Tabacuba's alleged use of office space in that building to sell raw tobacco to manufacturers of cigars, which then sell the cigars to Habanos, S.A., which then markets and sells the cigars outside the U.S. SAC ¶¶ 11, 80, 85.[15]  (The SAC does *not* allege that Tabacuba and

---

[14] That the action is "based upon an act outside the" U.S. "in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."

[15] The declaration of Lisset Fernández García ("Fernández García Decl.," April 12, 2022, filed herewith), establishes that Habanos, S.A. does *not* manufacture cigars and never occupied the Cigar Factory.

The SAC does not allege that Habanos, S.A., occupies or uses the Mixed-Use Building, but, rather, alleges that Tabacuba does. SAC ¶¶ 8, 11, 18, 80. The declarations of Jorge Fernández Nuñéz, ¶¶ 4–6, ECF and Fernández García additionally establish that Habanos, S.A. has never occupied, used or held an interest in the Mixed-Use Building.

Habanos, S.A. are *alter egos*, let alone the specific facts required to plead *alter ego*).[16]

In sharp contrast, for the "effect" to be "direct," it must "follow[] as an immediate consequence of the defendant's ... activity, " *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992); have "no intervening element, but, rather, flow[] in a straight line without deviation or interruption," *Lubian v. Rep. of Cuba*, 2011 WL 13186846, at *5 (S.D. Fla. Jan. 25, 2011) (*quoting Princz v. Fed. Rep. of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994)); and "must be more than 'purely trivial' or 'remote and attenuated[.]'" *Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1224 (11th Cir. 2018). The relation between Tabacuba's alleged use of the Mixed-Use Building as office space to sell raw tobacco and Habanos, S.A.'s marketing cigars through globally accessible social media accounts and allegedly through WPP agencies, does not satisfy any of these requirements.[17]

Case law where the relation between the property abroad at issue and the U.S. is not as attenuated as here stands against the SAC's assertion of "direct effect." Advertising on U.S. websites the sale or rental of the unlawfully converted real property in Angola was held not to be

---

[16] Conclusory allegations of *alter ego* would fail even if they had been made, which they were not. They "must be supported by facts." *Stansell v. BGP, Inc.*, No. 09-cv-2501, 2010 WL 2791850, at *1 (M.D. Fla. July 14, 2010), *cited with approval*, *DHTK LLC v. UNKNWN LLC*, No. 19-cv-61627, 2020 WL 4932237, at *4 (S.D. Fla. July 23, 2020) (Gayles, J.); *see also, e.g., S-Fer Int'l, Inc. v. Stonesheets LLC*, No. 14-cv-24662, 2016 WL 8808749, at *4 (S.D. Fla. July 22, 2016). The entities must be "so united" that one "practically ceases to exist". *McCullough v. Royal Caribbean Cruises*, 268 F. Supp. 3d 1336, 1349 n.9 (S.D. Fla. 2017) (Gayles, J.); *Eitzen Chem. PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 771 (11th Cir. 2018); *Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). 100% common ownership is not sufficient, *Eitzen*, at 771, and here, Tabacuba allegedly owns only 50% of Habanos, S.A. A plaintiff "must allege" "the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent," *and* the corporate form was "used fraudulently or for an improper purpose . . . caus[ing] injury to the claimant." *Iglesias v. Pernod Ricard*, No. 20-cv-20157, (S.D. Fla. Aug. 17, 2020), ECF 55, Order at 10–11, 15–16; 2021 WL 3083063, at *2 (S.D. Fla. June 17, 2021), *appeal pending*, No. 21-12398.

[17] Further, the evidence establishes that the only WPP-affiliated entities that worked for Habanos, S.A. are Spanish companies working from abroad. ECF 93-1, 93-2, 173.

a "direct effect" of the challenged conversion and use of the property. *Africa Growth Corp. v. Rep. of Angola*, No. 17-cv-2469, 2019 WL 3253367 (D.D.C. July 19, 2019). In *Sequeira v. Rep. of Nicaragua*, No. 16-cv-25052, 2019 WL 2267507, at *12 (S.D. Fla. Feb. 14, 2019), *report and recommendation adopted*, No. 16-cv-25052, 2019 WL 2268978 (S.D. Fla. Mar. 29, 2019), *aff'd on other grounds*, 815 F. App'x 345 (11th Cir. 2020), the export to the U.S. of goods grown on expropriated property in Nicaragua was held not to be "direct effect" of the challenged taking and use of the property. That Plaintiffs reside in the U.S. does not establish "direct effect." *Araya-Solorzano v. Gov't of the Rep. of Nicaragua*, 562 F. App'x 901, 903 (11th Cir. 2014).

The SAC also does not satisfy either of the two other prongs of the commercial activity exception. This action is not "based upon" use of the social media accounts, U.S. marketing agents or U.S. Services, as required by 28 U.S.C. § 1605(a)(2) (that action is "based upon" "a commercial activity carried on in the United States" or "an act performed in the United States"). Further, in determining, as required, the "'particular conduct'" a claim is "based upon," the Court must identify the "'gravamen'" of the claim. *Devengoechea*, 889 F.3d at 1224: the gravamen here is not any commercial activity in the U.S. or act in the U.S. but acts and activities in Cuba.

> B.  <u>Whether or Not the FSIA Applies and, If Applicable, an Exception to Immunity Is Met, Due Process Personal Jurisdiction Is Required but Lacking; If the FSIA Does Not Apply, Personal Jurisdiction Is Also Lacking for Failure to Satisfy the Florida Long-Arm or Rule 4(k)(2)</u>

If, contrary to Point II(A), the Court finds the FSIA applicable and an immunity exception's requirements met, Plaintiffs still must satisfy the Due Process requirements for jurisdiction.[18]

---

[18] *See Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 65 (2d Cir. 2021); *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748, 755 (5th Cir. 2012), *as revised* (Jan. 17, 2013); *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012); *Euclid Fish Co. v. Cape Fla. Seafood*, No. 21-mc-22310, 2021 WL 4976530, at *8 (S.D. Fla. Aug. 20, 2021), *report and recommendation adopted*, No. 21-mc-22310, 2021 WL 4145207 (S.D. Fla. Sept. 13, 2021); *Telchi v. Israel Mil. Indus.*, No. 14-cv-20244, 2015 WL 6550664, at *4–*5 (S.D.

Likewise, if the FSIA is inapplicable, Plaintiffs must satisfy the Due Process requirements. As the Due Process requirements are not met, dismissal is required in either event.

In addition, if the FSIA is inapplicable, the statutory requirements of the Florida long-arm statute or Fed. R. Civ. P. 4(k)(2), each invoked by Plaintiffs, SAC ¶¶ 66, 70, must be satisfied, but Plaintiffs fail to meet the requirements for either.[19]

For jurisdictional contacts, the SAC alleges: (a) social media marketing of Habanos, S.A.'s cigars, SAC ¶¶ 22, 41, 54–59; (b) retention of advertising agencies in the "WPP Group" to market the cigars, SAC ¶ 61; and (c) the "U.S. Services" used in the ordinary course of "WPP Group" affiliates' business worldwide that are "sold by" U.S. companies or "nominally controlled" by WPP's U.S. subsidiaries. SAC ¶¶ 23, 54, 62.

1. The Requirements for Jurisdiction as to the Claim for the Cigar Factory Are Not Met

(i) Due Process Requirements Are Not Met As to the Cigar Factory

(a) The Due Process Requirement that the Claim for Trafficking in the Factory "Arise Out of or Relate to" the Alleged Contacts Is Not Met

As to the Cigar Factory, the Title III claim cannot, as required, "arise out of or relate to," *Bristol-Myers Squibb v. Sup. Crt*, 137 S.Ct. 1773, 1780 (2017) (alterations omitted), social media marketing of cigars because the marketing began only *after* use of the Cigar Factory ended. This is established on the face of the SAC and, in any event, is shown by Habanos, S.A.'s factual submissions.

*Facial Insufficiency*

The three cited social media accounts, SAC ¶ 22 & n.11, show on the face of the accounts

---

Fla. Oct. 29, 2015).

[19] In its Statement of Interest to this Court, the United States recognized that Defendants' personal jurisdiction challenges "raise substantial questions." ECF 125 at 2.

that they were created in January 2015 (YouTube, Twitter) and February 2016 (Instagram), *see* Declaration of Susan Bailey, ¶¶ 2-4, ECF 89-1, but the alleged use of the Cigar Factory ended long before that.[20] To show the dates of the Cigar Factory's use, Plaintiffs rely upon photograph exhibits. *All* of these photographs were taken between some time on or before January 12, 2005 and, at the latest, December 2013.[21] Further, the January 2013 blog post the SAC specifies, as Ex. 7's source states, "[i]t's been over a year" since the Factory was used for cigars—*i.e.*, no later than 2011—with cigar operations having been moved out due to "terrible floods from water coming through the roof," requiring "renovations." Bailey Decl. ¶ 10.

Even aside from the foregoing, the SAC is insufficient. It only alleges that use of the Properties "from January 2008 until at least October 29, 2020" "*included* the production and shipping of . . . cigars," SAC ¶ 17–18 (italics added) without alleging *when* between 2008 and 2020 the Properties' use "included" production and shipping of cigars. "Vague and conclusory

---

[20] Plaintiffs do not allege a different start date for the social media accounts. *See* SAC ¶ 22 (accounts "set[] up" "no later than 2017"). Because the temporal sequence is critical to the SAC's jurisdictional theory, and there can be no dispute as to the accounts' authenticity given that Plaintiffs refer to and rely on them in the SAC, the start dates shown on the face of the accounts can be considered in a facial challenge. *Maxcess, Inc. v. Lucent Tech.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity"); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (considering document referenced in complaint, but not attached); *see also Tarantino v. Riddell*, No. 17-cv-60567, 2018 WL 2011551, at *2 & n.2 (S.D. Fla. Apr. 30, 2018); *Arencibia v. AGA Serv.*, No. 20-cv-24694, 2021 WL 1318225, at *3 (S.D. Fla. April 8, 2021).

[21] This is shown by the dates appearing on the publications where they were published, or the dates shown on data embedded in the original photographs. Bailey Decl., ¶¶ 6-10; Declaration of Karel Perez Alejo, ¶¶ 3-4, ECF 89-2: *Ex. 2*, ECF 208-2, referenced at SAC ¶¶ 2, 78, 80—on May 15, 2013; *Ex. 3*, ECF 208-3, top image, referenced at *id.* ¶¶ 2, 80—on January 11, 2005, and bottom image, referenced at *id.*, ¶ 2—earlier than December 15, 2013; *Ex. 6*, ECF 208-6, referenced at *id.*, ¶ 79—in or earlier than 2009; *Ex. 7*, ECF 208-7, referenced at *id.*, ¶¶ 79–80—earlier than January 24, 2013. *SAC ¶ 80* identifies a "publicity piece" on the cited webpage as being from February 2010. The bottom images on Exhibit 2, ECF 208-2, referenced at SAC ¶¶ 2, 78, are of the Mixed-Use Building, not the Cigar Factory.

15

allegations...are insufficient," *Snow v. DirecTV*, 450 F.3d 1314, 1318 (11th Cir. 2006); conclusory assertions of 'continuing' or 'ongoing' conduct do not cut it." *Moreira v. Société Générale, S.A.*, -- F. Supp. 3d --, 2021 WL 5524484, at *5 (S.D.N.Y. Nov. 24, 2021) (Title III case). Here, there is not even that.

Further, it is "well-settled" that "when the exhibits contradict [] general and conclusory allegations . . . , the exhibits govern." *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Lawrence v. U.S.*, 597 F. App'x 599, 602 (11th Cir. 2015) (rejecting allegations "that are contrary to factual details presented in [] exhibits"). In a facial challenge, the court may consider what the sources of a pleading's exhibits reveal, *supra* at 15 n.19, and here they reveal that the Cigar Factory was out of use by the time the social media accounts were established.

### *Factual Challenge*

The foregoing, based on Plaintiffs' own pleading, is dispositive. In addition, Habanos S.A. submits proofs establishing that the Factory was no longer used for cigars when the social media accounts were established.[22] Habanos, S.A.'s proofs show: (*i*) the social media accounts were established in Jan. 2015 (YouTube, Twitter) and Feb. 2016 (Instagram), Bailey Decl. ¶¶ 2–4, ECF 89.1; (*ii*) all cigar operations moved out of the Factory in 2011 due to deterioration; and (*iii*) there were no cigar-related operations in the Cigar Factory from 2011–present.[23] There is no way around

---

[22] Where, as here, the defendant "makes a showing" that the requirements for personal jurisdiction are not met, the plaintiff may "not merely reiterate the factual allegations in the complaint;" it must "substantiate the jurisdictional allegations" by "competent proof." *Diamond Crystal Brands v. Food Movers Int'l*, 593 F.3d 1249, 1257 (11th Cir. 2010) (internal quotation omitted). A pleading's allegations are not taken as true when "[]controverted by … affidavits," *Home Ins. Co. v. Thomas Indus.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citation omitted).

[23] Declarations of Martha Riquelme Armenteros (employee of cigar manufacturer that occupied the Factory), ECF 89-5; Juan Luis Arias (security technician), ECF 117-1. Habanos, S.A.'s proofs also show that, when operations were moved out in 2011, the Factory was unusable absent major repairs, and that no repairs have since been made. Declarations of Mirel García Días (engineer who inspected Factory) and attached photographs, ECF 89-3; Rafael Agramonte Hevia (engineer

this dispositive, temporal disjuncture.

>(b) The Due Process "Purposeful Availment" Requirement Is Not Met with Respect to the Cigar Factory

**Social media marketing**. In addition to failing because the social media accounts were established after the Factory was no longer in use, the SAC's reliance on the social media accounts fails because it is well-settled that purposeful availment is not shown by use of globally accessible websites that cannot be used for transactions. *Blue Water Int'l v. Hattrick's Irish Sports Pub*, No. 17-cv-1584, 2017 WL 4182405, at *1 (M.D. Fla. Sept. 21, 2017) (no jurisdiction "merely because a Floridian might view [defendant's] Facebook[ or] Twitter . . . pages").[24]

**Social Media Company Headquarters**. It makes no difference for purposeful availment that Twitter, Instagram and YouTube are based in the U.S. SAC ¶¶ 54, 61. Courts uniformly conclude that the location of such companies are not to be deemed meaningful contact for jurisdictional purposes.[25] To hold otherwise would render "essentially meaningless" the

---

who inspected Factory) and attached report, ECF 89-4.

[24] *See also Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1092 (S.D. Fla. 2020) ("Defendants' website, visible to internet users in Florida" does not create requisite "substantial connection" with forum); *Honus Wagner v. Luminary Grp. LLC*, No. 17-cv-61317, 2017 WL 6547899, at *10 (S.D. Fla. Dec. 21, 2017) (no minimum contacts from website "available to anyone with internet access in the world, including Florida residents"); *Sovereign Offshore Servs. v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *4 (S.D. Fla. Aug. 3, 2017) ("Defendant's awareness that his blog posts would be accessible in Florida, by virtue of the nature of the world-wide web . . . [is] insufficient"); *Performance Indus. Mfg., Inc. v. Vortex Performance Pty*, No. 18-cv-00510, 2019 WL 78840, at *6 (M.D. Fla. Jan. 2, 2019). Otherwise, there would be "jurisdiction in every spot on the planet where that [] website is accessible." *Blue Water Int'l*, 2017 WL 4182405 at *1 (quotation omitted).

Plaintiffs make no allegation that the social media accounts can be used to purchase cigars (as is readily apparent from the accounts, they cannot, *see* Bailey Decl., ¶ 5). Courts uniformly reject reliance on websites that only display general promotional information. *See Volt, LLC v. Volt Lighting Grp.*, 369 F. Supp. 3d 1241, 1248 (M.D. Fla. 2019); *Schuster v. Carnival Corp.*, No. 10-cv-21879, 2011 WL 13220428, at *8 (S.D. Fla. Feb. 3, 2011).

[25] *See BackGrid USA*, 2021 WL 4772474 at *6 (rejecting reliance on headquarters of Twitter and Instagram); *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 925 (C.D. Cal. 2018) (same as to

purposeful availment requirement because such accounts are "ubiquitous" for marketing;"
"millions . . . around the globe" would be subject to jurisdiction where such companies are based.
*DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 883 (N.D. Cal. 2012).

**Alleged Retention of Y&R, BCW and Non-U.S. "WPP Group" Agencies**. Nor does it
make any difference that Habanos, S.A. allegedly retained "WPP Group and its U.S.-based []
agents" for the social media marketing. SAC ¶ 61. It is the substance of the agent's work, not the
location of the alleged agent, that is jurisdictionally relevant;[26] and, as shown, the substance—use
of globally accessible social media accounts—is insufficient.

As noted, it does not appear that the SAC alleges marketing by the U.S. agencies other than
through social media.[27] To the extent it does (without alleging what that marketing is), *see* SAC
¶¶ 14, 20, 21, 56, this general allegation of "marketing" lacks the required specificity and must be
disregarded.[28]

---

Instagram); *Dish Network, LLC v. Jadoo TV, Inc.*, No. 18-cv-9768, 2020 WL 6536659, at *8 (C.D.
Cal. Mar. 16, 2020) (same as to YouTube).

[26] It is "well-established . . . that [] merely contracting with a forum resident" cannot "establish
sufficient minimum contacts." *Diamond Crystal*, 593 F.3d at 1268; *see also Louis Vuitton
Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355–56 (11th Cir. 2013). Instead, the inquiry "focuses
on the substance of the transaction." *Diamond Crystal*, 593 F.3d at 1268–69.

[27] Further, Y&R and BCW's declarations establish that the U.S. agencies do *no* work for
Habanos, S.A. *See supra* at 4 n.5.

[28] *In re Takata Airbag*, 396 F. Supp. 3d 1101, 1148–49 (S.D. Fla. 2019) (no jurisdiction where
plaintiffs "generally allege" U.S. agents "engage[] in…advertising[ and] marketing" on
defendants' behalf because "generalized allegations [] devoid of specificity … fail to establish that
the Foreign Defendants purposefully availed"); *Storms v. Haugland Energy Grp., LLC*, No. 18-
cv-80334, 2018 WL 4347603, at *3, 8 (S.D. Fla. Aug. 17, 2018), *report and recommendation
adopted*, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018) (advertising allegation "fails to specify how
Defendant 'advertised' in Florida," and thus is "not to be considered in deciding the sufficiency of
the pleading"); *Herbal Brands Inc. v. Photoplaza Inc.*, No. 21-cv-577, 2021 WL 5299677, at *3
(D. Ariz. Nov. 15, 2021) (advertising allegation "conclusory and does not provide any details about
how Defendants specifically advertised the product in [forum]").

The SAC's allegations concerning Ogilvy are devoid of *any* specificity, let alone what is required.
Plaintiffs do *not* allege Ogilvy was involved in the social media accounts. SAC ¶ 22. The only

To the extent, if any, the SAC's allegation of marketing by entities within the so-called "WPP Group" is meant to reference non-U.S. agencies, and not just the U.S. agencies (Y&R and BCW), the allegation fails for lack of specificity: the non-U.S. entities are not identified, their locations not specified and what marketing services they provide (and how) is unstated. *See* SAC ¶¶ 42, 61, 92. In addition, the allegation fails because the only alleged link to the U.S. is the "U.S. Services," which, as shown below, is insufficient.

**"U.S. Services."** Finally, the SAC alleges all members of the "WPP Group" worldwide use U.S. technology services. SAC ¶¶ 23, 54, 62. Overwhelming authority forecloses Plaintiffs' attempt to show jurisdiction over Habanos, S.A. on this basis.[29] Further, the same authority holding that the location of social media companies in the U.S. does not provide jurisdiction, *supra* at 17–18, applies *a fortiori* to Plaintiffs' reliance on general back-end services such as the domain name of a file-sharing site, where email is routed, and where servers happen to be located.

> (c) Plaintiffs' Florida Residence Does Not Provide Due Process Personal Jurisdiction

---

allegation as to Ogilvy is one of unspecified "marketing," which is insufficient.

[29] *See supra* at 17–18; *see also Argos Glob.*, 446 F. Supp. at 1079–80 (existence of shared server "in Florida" insufficient); *Am. Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 859 (E.D. Va. 2000) ("registration of the domain name with [company located in the forum] . . . is simply not a sufficient contact [] to establish personal jurisdiction"); *Dish Network*, 2020 WL 6536659 at *7–*8 ("management and operation of domain names and servers that can be accessed 'anywhere in the world' . . . [is] insufficient"); *Rosen v. Terapeak, Inc.*, No. 15-cv-112, 2015 WL 12724071, at *9–*10 (C.D. Cal. Apr. 28, 2015) (rejecting that the "'fortuitous' presence of a server [is] relevant to a finding of personal jurisdiction"); *TriOptima AB v. Quantile Techs. Ltd.*, No. 19-cv-390, 2020 WL 11613655, at *6 (E.D. Tex. Nov. 30, 2020) (use of "datacenters in Texas . . . [is] insufficient to support personal jurisdiction"); *SkyHop Techs., Inc. v. Praveen Narra & Indyzen, Inc.*, No. 21-cv-60799, 2021 WL 5749520, at *1 (S.D. Fla. Oct. 18, 2021) ("development and maintenance contracts" for technology services insufficient to support jurisdiction).

If it were otherwise, any foreign defendant's hiring a non-U.S. agency could be subject to U.S. jurisdiction, simply because the non-U.S. agency happens to contract with a U.S. technology service for back-end support. This contravenes the overwhelming authority that use of a general technology service does not provide jurisdiction where the service provider happens to be based.

That five Plaintiffs allegedly reside in Florida, SAC ¶ 66, irrelevant because "the place of plaintiff's injury and residence cannot create a defendant's contact with the forum." *Ford Motor Co. v. Montana Eighth Judicial Dist.*, 141 S.Ct. 1017, 1028 (2021); *PG Creative Inc. v. Affirm Agency*, No. 18-cv-24299, 2019 WL 5684219, at *5 (S.D. Fla. Oct. 31, 2019) ("Supreme Court has made clear that mere injury to a forum resident is not ... sufficient").

(ii)  <u>Statutory Requirements Are Not Met with Respect to the Cigar Factory</u>

<u>Florida Long-Arm.</u> The requirements of the <u>Florida Long-Arm</u> provision invoked by SAC ¶ 66, Fla. Stat. § 48.193(1)(a)(2), are not met: the SAC alleges *no* claim-related activity in Florida, while Plaintiffs must "demonstrate that the foreign defendant 'committed a substantial aspect of the alleged tort in Florida.'" *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (*quoting Watts v. Haun*, 393 So.2d 54, 56 (Fla. Dist. Ct. App. 1981) (alterations omitted)). This requires proving that acts in Florida 'were essential to the success of the tort,'" *id.*, and that without those acts the tort "is not completed." *Internet Sols. Corp. v. Marshall,* 39 So. 3d 1201, 1214 (Fla. 2010).

*First*, the SAC does not allege that YouTube, Instagram, and Twitter are located in Florida, and to the contrary, they are in California. *Supra* at 3 n.4.

*Second*, as with Due Process and venue, use of globally accessible websites is insufficient to satisfy the long-arm requirements. *Del Valle v. Trivago GmbH*, No. 19-cv-22619, 2020 WL 2733729 (S.D. Fla. May 26, 2020); *Volt*, 369 F. Supp. 3d at 1245–47 (long-arm not satisfied by website that allows no sales); *Schuster*, 2011 WL 13220428, at *8–*9 (same).

*Third*, as shown, the SAC does not allege any marketing activity in the District. *See supra* at 3–5. The agents allegedly retained for marketing are based in New York and/or London, *id.*, not Florida, which forecloses jurisdiction unless there are allegations of relevant activities in Florida,

yet there are none.

*Fourth*, the SAC's allegations related to the U.S. Services, back-end technological services, are not alleged to have anything to do with Florida, despite discovery. *Supra* at 19–20.

Fed. R. Civ. P. 4(k)(2).   Fed. R. Civ. P. 4(k)(2) invoked by SAC ¶ 70, also does not apply: as a court of this District held, *Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1143 (S.D. Fla. 2007), 4(k)(2) is inapplicable when it appears from the record that contacts with a different, particular state "may allow" it to exercise jurisdiction, even if the defendant—as Habanos, S.A. does here—disputes that jurisdiction lies, and does not consent to jurisdiction, anywhere in the U.S., and even if no finding is made that the other forum indeed has jurisdiction.

There is particularly strong reason to apply *Mother Doe* here. Twitter, Instagram and YouTube are headquartered in California, which (unlike Florida) exercises jurisdiction "on any basis not inconsistent with the Constitution[.]" Cal. Code Civ. Proc § 410.10. Insofar as the Court finds the social media accounts satisfy Due Process, that contact necessarily "may allow," *Mother Doe*, 632 F. Supp. at 1143, California to exercise jurisdiction. And insofar as Habanos, S.A.'s alleged relationship with BCW and Y&R is found to satisfy Due Process, that "may allow" jurisdiction in New York.  Thus, Plaintiffs cannot, as required by Rule 4(k)(2), "establish that the defendant is not subject to jurisdiction in any state." *Owens v. Kristen Gerhard Jebsen Skipsrederi A/S*, No. 08-cv-264, 2008 WL 4067431, at *4 (M.D. Fla. Aug. 27, 2008).

2.  The Requirements for Jurisdiction as to the Mixed-Use Building Are Not Met

(i)  Due Process Requirements Are Not Met As to the Mixed-Use Building

The Due Process and statutory requirements for jurisdiction as to the Mixed-Use Building also are not met.

*First*, that the Due Process purposeful availment requirement is not satisfied by social

media marketing on globally accessible websites that do not allow transactions, the location of the social media companies, the alleged retention of the advertising agencies and the U.S. Services *see supra*, Point IIB1(b), is dispositive as to the Mixed-Use Building just as it is to the Cigar Factory.

*Second,* the SAC alleges that *Tabacuba*, not Habanos, S.A., has offices in the Mixed-Use Building, and uses them to buy "raw tobacco from Cuban farmers and subsequent resell[] ... to other entities in Cuba for further manufacture or use." SAC ¶¶ 2, 8, 11. It does *not* allege that Tabacuba is Habanos, S.A.'s *alter ego* even in conclusory terms, let alone allege the specific facts required to plead *alter ego*. *See supra* at 11–12. Plaintiffs thus cannot assert jurisdiction over Habanos, S.A. for non-party Tabacuba's alleged use of the Mixed-Use Building.

*Third*, the alleged connection between use of the Mixed-Use Building by Tabacuba and Habanos, S.A.'s alleged U.S. marketing contacts is insufficient. The Mixed-Use Building is used to buy and sell raw tobacco, but Habanos, S.A.'s alleged U.S. contacts are not for the marketing of raw tobacco. SAC ¶ 14 (marketing is of "Cuban cigar products and the Habanos brand name"). Moreover, although the Mixed-Use Building is used to sell raw tobacco to manufacturers of cigars, SAC ¶¶ 2, 11, Habanos, S.A. does not manufacture cigars. *See supra* at 11 n.14. Habanos, S.A. also does not use or have an interest in the Mixed-Use Building. Fernández García Decl., ¶ 3.

Thus, the connection, if any, between the Mixed-Use Building and Habanos, S.A.' U.S. contacts is far too "attenuated," *Fraser v. Smith*, 594 F.3d 842, 845, 851 (11th Cir. 2010), to satisfy Due Process's "arises out or relates to" requirement. Indeed, attempts to establish jurisdiction by linking one party's sale of inputs (here, Tabacuba's sale of raw tobacco to cigar manufacturers which sell to Habanos, S.A.) to the forum contacts of another (here, Habanos, S.A.'s), have been rejected.[30] Further, "marketing activities" must "relate to the core conduct … that constitutes the

---

[30] *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 602, 604 n.34

rationale for holding [defendant] liable," *In re Zantac*, 6 F. Supp. 3d 1192, 1212 (S.D. Fla. 2021); Tabacuba's alleged use of the Mixed-Use Building is not the "core conduct" here.

(ii)   <u>Statutory Requirements Are Not Met with Respect to the Mixed-Use Building</u>

The SAC's reliance on the *Florida long-arm* and *Fed. R. Civ. P. 4(k)(2)* as to the Mixed-Use Building fails for identical reasons as with respect to the Factory. As to *long-arm*, globally accessible websites are insufficient; the social media companies are not based in Florida; and neither marketing activities nor the U.S. Services allegedly take place in Florida. As to *4(k)(2)*, *Mother Doe* is equally applicable. *See* Point II(B)(1)(ii).

**III.    Due Process Prohibits Title III's Application to Habanos, S.A.**

Application of Title III to Habanos, S.A. exceeds Due Process limits on prescriptive jurisdiction. There must be "not only [] contacts between the regulated *party* and the state, but also [] contacts between the regulated *subject matter* and the state." *Gerling Glob. Reins. Corp. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001) (italics in original); *see also U.S. v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016). Here, the "regulated party" is not a U.S. national and has no U.S. offices, and the regulated property and its possession and use that constitute the "subject matter" of the action are abroad (and, also, Habanos, S.A.'s cigars are not sold in the U.S.). Further, Title III's application here would give it an extraterritorial reach that the State Department acknowledged to be "difficult to defend under international law,"[31] a weighty consideration in

---

(M.D. Pa. 2009) ("Periodic purchases of raw materials" from "remote wholesaler" "do not establish personal jurisdiction" where remote wholesaler lacked connection to forum and separate company marketed product to U.S.); *Zanakis v. Scanreco, Inc.*, No. 18-cv-21813, 2019 WL 2211872, at *1, *12 (S.D. Fla. Feb. 6, 2019) (no jurisdiction over faulty joystick manufacturer where joystick entered Florida through "attenuated chain of custody" and manufacturer lacked independent connections to Florida).

[31] Dep't of State, Legal Considerations Regarding Title III, 141 Cong. Rec. S15106, S15108 (Oct. 12, 1995).

setting the Due Process limits on prescriptive jurisdiction. *U.S. v. Ibarquen-Mosquera*, 634 F.3d 1370, 1378 (11th Cir. 2011).

## IV.    The Complaint Must Be Dismissed for Insufficient Service of Process

Fed. R. Civ. P. 4(f)(2)(C)(ii) authorizes service by "any form of mail," but DHL, used by Plaintiffs, ECF 66, is not "mail." The plain meaning of "mail" is items "sent or carried in a postal system."[32] The Rule must be applied according to its plain meaning. *King v. Burwell*, 576 U.S. 473 (2015); *U.S. v. Street*, 472 F.3d 1298, 1317 (11th Cir. 2006). Further, the Advisory Committee specified that the Rule referred to a "postal service." Notes, Fed. R. Civ. P. 4 (1963).

The two appellate courts to address the issue held that "mail" does not include courier services. *See Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1431 (9th Cir. 1996) (service by "mail" under Fed. R. Civ. P. 5(b)): *Prince v. Poulos*, 876 F.2d 30, 32 n.1 (5th Cir. 1989) (service by "mail" under Fed. R. App. P. 25(a)).[33]

Even if DHL is considered "mail," Fed. R. Civ. P. 4(f)(2)(C) conditions its use on its not being "prohibited by the foreign country's law." Cuban law prohibits service of process issued in a foreign action by mail (or courier); like numerous other countries, *Restatement (Third), Foreign Relations Law of the United States*, § 471, *cmt. b* (1987), Cuba requires service through letters rogatory. Declaration of Prof. Ivonne Pérez Gutiérrez, ECF 89-7.

That DHL is not "mail" is also dispositive of Plaintiffs' reliance on the FSIA's service provision. SAC ¶ 43; 28 U.S.C. § 1608(b)(3)(B). In language identical to Rule 4, the FSIA requires

---

[32]    Merriam-Webster.com    Dictionary,    "Mail"    *available    at*    www.merriam-webster.com/dictionary/mail (last accessed April 19, 2022); *see also* Black's Law Dictionary, "Mail" (11th ed. 2019) ("An official system for delivering such items; the postal system").

[33] When courts in this District have permitted courier service, it was upon prior court order under Rule 4(f)(3) ("by other means . . . as the court orders"), *see, e.g., TracFone Wireless, Inc. v. Sunstrike Int'l, Ltd.*, 273 F.R.D. 697, 699 (S.D. Fla. 2011); or uncontested. *See, e.g., Hurtado v. Balerno Int'l Ltd.*, No. 17-cv-62200, 2018 WL 4053122 (S.D. Fla. Aug. 24, 2018).

service by "any form of mail," 28 U.S.C. § 1608(b)(3)(B). Because Rule 4 used this language when Congress enacted the FSIA, it must be given the same meaning as Rule 4.[34] Further, the FSIA provision was drafted "to conform ... with the Federal Rules." H.R. Rept. No. 94-1489, 94th Cong., 2d Sess., Comm. on Judiciary, at 25 (Sept. 9, 1976).

### V.      If Dismissal Is Denied, a More Definite Statement is Required

If dismissal is denied, Plaintiffs should be required to specify: (a) the acts of trafficking allegedly committed by Habanos, S.A. itself; (b) the acts of trafficking allegedly committed by others but attributed to Habanos, S.A.; and (c) by whom the attributed acts were committed and the basis for attribution. Because the SAC is "so vague or ambiguous" in these respects, Habanos, S.A. "cannot reasonably prepare a response," Fed. R. Civ. P. 12(e). Many of its allegations intermingle Habanos, S.A., Tabacuba, other Cuban companies and "Cuba" without specifying which is doing what, and use "Cuba" to refer to Habanos, S.A., Tabacuba, and/or the Cuban Government. *See*, *e.g.*, SAC ¶¶ 10; 48, 62. Classically, this requires a more definite statement.[35]

### CONCLUSION

For the foregoing reasons, Habanos, S.A.'s individual motion to dismiss with prejudice should be granted.

### REQUEST FOR HEARING

Oral argument is requested, and would be helpful to the Court, because of the multiplicity of issues presented by the instant motion.  Habanos, S.A. estimates that forty-five minutes will

---

[34] *See Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 487 (2005) ("Congress took the term ... as the ... law found it"); *BNSF Ry. Co. v. Loos*, 139 S.Ct. 893, 898–99 (2019) ("materially indistinguishable" term has same meaning when used in laws with "similar[] . . . purpose").

[35] *See, e.g., Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012) ("improperly group[ed] [defendants] together and d[id] not describe what action each of them allegedly took against Plaintiff").

be required for oral argument.

Dated: April 20, 2022                                    Respectfully submitted,


/s/ *Charles Murray Harris, Jr.*
CHARLES MURRAY HARRIS, JR.                              MICHAEL R. KRINSKY
Florida Bar No. 967459                                     (admitted *pro hac vice*)
E-Mail: charris@trenam.com                              E-Mail: mkrinsky@rbskl.com
STEPHANIE CRANE LIEB                                    LINDSEY FRANK
Florida Bar No. 31806                                      (admitted *pro hac vice*)
E-Mail: slieb@trenam.com                                E-Mail: lfrank@rbskl.com
**TRENAM KEMKER SCHARF BARKIN**                         **RABINOWITZ, BOUDIN, STANDARD,**
**FRYE O'NEILL & MULLIS**                               **KRINSKY & LIEBERMAN, P.C.**
101 E Kennedy Boulevard                                 320 West 85th Street
Tampa, FL 33601-1102                                    New York, NY 10024-3802
Telephone: (727) 820-3950                               Telephone: (212) 254-1111
Fax: (727) 820-0835                                     Fax: (212) 674-4614


*Attorneys for Defendant Corporación Habanos, S.A.*


*On the Brief*:
Nathan Yaffe
(Rabinowitz, Boudin, Standard,
Krinsky & Lieberman, P.C.)


26

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 20, 2022, a true and correct copy of the foregoing

was filed with the Clerk of Court using the CM/ECF system which will send a notification of the

filing to all counsel and parties of record.

/s/ Charles M. Harris, Jr.
Attorney