UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-cv-23287-DPG

LUIS MANUEL RODRIGUEZ,
MARIA TERESA RODRIGUEZ, a/k/a
MARIA TERESA LANDA,
ALFREDO RAMON FORNS,
RAMON ALBERTO RODRIGUEZ,
RAUL LORENZO RODRIGUEZ,
CHRISTINA CONROY, and
FRANCISCO RAMON RODRIGUEZ,

           Plaintiffs,

v.

IMPERIAL BRANDS PLC,
CORPORACIÓN HABANOS, S.A.,
WPP PLC, YOUNG & RUBICAM LLC,
and BCW LLC, a/k/a BURSON COHN &
WOLFE LLC,

           Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT BY DEFENDANTS
WPP PLC, YOUNG & RUBICAM LLC, AND BCW LLC**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 5

I.     DESPITE EXTENSIVE JURISDICTIONAL DISCOVERY, PLAINTIFFS STILL FAIL TO ALLEGE PERSONAL JURISDICTION OVER WPP, Y&R, AND BCW ....................................... 5

     A.     Plaintiffs Still Fail To Establish Specific Jurisdiction Over WPP, Y&R, Or BCW Under Florida's Long-Arm Statute .................................................................... 6

          1.     Florida's Long-Arm Statute Does Not Authorize Specific Jurisdiction Because None Of The Allegedly Tortious Activities Took Place In Florida ...................................................................................... 6

          2.     Plaintiffs Allege No Basis To Impute Jurisdictional Contacts To WPP .................................................................................................................... 8

          3.     Exercising Specific Jurisdiction Would Violate WPP Defendants' Due Process Rights ................................................................... 10

     B.     General Jurisdiction Over Any Of The WPP Defendants Is Improper ................ 11

          1.     General Jurisdiction Over WPP Defendants In Florida Is Both Improper and Unconstitutional ................................................................... 12

          2.     There Is No Jurisdiction Over WPP Pursuant To Rule 4(k) ...................... 13

II.    PLAINTIFFS CANNOT DEMONSTRATE THAT WPP, Y&R, AND BCW UNLAWFULLY "TRAFFICKED" IN ALLEGEDLY CONFISCATED PROPERTY ........................... 14

III.   PLAINTIFFS IMPROPERLY ATTRIBUTE CONDUCT OF "WPP GROUP" TO WPP DEFENDANTS ................................................................................................................ 18

IV.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ................... 20

CONCLUSION .................................................................................................................... 20

REQUEST FOR HEARING ................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County*, 221 F.3d 1211 (11th Cir. 2000)..............................................................11

*Barrett v. Scutieri*,
2007 WL 9703152 (S.D. Fla. Mar. 19, 2007), *aff'd*, 281 F. App'x 952 (11th Cir. 2008)....................................................................................................20

*BTG Patent Holdings, LLC v. Bag2Go, GmBH*,
193 F. Supp. 3d 1310 (S.D. Fla. 2016) ...........................................................11

*Carmouche v. Tamborlee Management, Inc.*,
789 F.3d 1201 (11th Cir. 2015) .......................................................................12

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934 (7th Cir. 2000) ....................................................9

*Citicorp Insurance Brokers (Marine), Ltd. v. Charman*,
635 So. 2d 79 (Fla. 1st DCA 1994) ...................................................................6

*Consolidated Development Corporation v. Sherritt, Inc.*,
216 F.3d 1286 (11th Cir. 2000) .......................................................................14

*Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*,
2008 WL 926512 (S.D. Fla. Mar. 31, 2008)....................................................19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...................................................................................12, 13

*de Fernandez v. Crowley Holdings, Inc.*,
2022 WL 860373 (S.D. Fla. Mar. 23, 2022) (Gayles, J.) .................................17

*Del Valle v. Trivago GMBH*,
2020 WL 2733729 (S.D. Fla. May 26, 2020) ................................................7, 8

*Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*,
593 F.3d 1249 (11th Cir. 2010) .......................................................................10

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988).......................................................17, 18

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
141 S. Ct. 1017 (2021).....................................................................................10

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)................................................................................13, 14

*Havana Docks Corp. v. Carnival Corp.*,
    2022 WL 831160 (S.D. Fla. Mar. 21, 2022) ....................................................17

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................10, 13

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*,
    162 F.3d 1290 (11th Cir. 1998) ......................................................................9

*Kountze v. Kountze*,
    996 So. 2d 246 (Fla. App. 2008)....................................................................8

*Lane v. Capital Acquisitions & Management Co.*, 2006 WL 4590705 (S.D. Fla.
    Apr. 14, 2006), *judgment entered*, 569 F. Supp. 2d 1268 (S.D. Fla. 2008),
    *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675
    (11th Cir. 2009)................................................................................19

*Louis Vuitton Malletier, S.A. v. Mosseri*,
    736 F.3d 1339 (11th Cir. 2013) ....................................................................10, 11

*Madara v. Hall*,
    916 F.2d 1510 (11th Cir. 1990) ......................................................................5

*McBee v. Delica Co.*,
    417 F.3d 107 (1st Cir. 2005) ........................................................................11

*McCullough v. Royal Caribbean Cruises, Ltd.*,
    268 F. Supp. 3d 1336 (S.D. Fla. 2017) (Gayles, J.)........................................13

*Meier v. Sun International Hotels, Ltd.*,
    288 F.3d 1264 (11th Cir. 2002) ......................................................................8

*Melgarejo v. Pycsa Panama, S.A.*,
    537 F. App'x 852 (11th Cir. 2013) ................................................................6, 7

*MeterLogic, Inc. v. Copier Solutions, Inc.*,
    126 F. Supp. 2d 1346 (S.D. Fla. 2000) ..........................................................8

*Ocheesee Creamery LLC v. Putnam*,
    851 F.3d 1228 (11th Cir. 2017) ....................................................................17

*Overcash v. Shelnutt,*
    753 F. App'x 741 (11th Cir. 2018) ...................................................................20

*Quality Auto Painting Center of Roselle, Inc. v. State Farm Indemnity Co.,*
    917 F.3d 1249 (11th Cir. 2019) ...............................................................19, 20

*Schulman v. Institute for Shipboard Education,*
    624 F. App'x 1002 (11th Cir. 2015) .......................................................13, 14

*Snow v. DirecTV, Inc.,*
    450 F.3d 1314 (11th Cir. 2006) .................................................................5, 9

*Taylor v. Moskow,*
    717 F. App'x 836 (11th Cir. 2017) ...............................................................8

*Thompson v. Carnival Corp.,*
    174 F. Supp. 3d 1327 (S.D. Fla. 2016) ........................................................14

*United States v. Bestfoods,*
    524 U.S. 51 (1998) .........................................................................................18

*UnitedHealthcare of Florida, Inc. v. American Renal Associates Holdings, Inc.,*
    2017 WL 1832436 (S.D. Fla. May 8, 2017) .................................................9

*Virgin Health Corp. v. Virgin Enterprises Ltd.,*
    393 F. App'x 623 (11th Cir. 2010) ...............................................................8

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) .......................................................................................17

*Waite v. All Acquisition Corp.,*
    901 F.3d 1307 (11th Cir. 2018) .....................................................10, 12, 13

*Weiland v. Palm Beach County Sherriff's Office,*
    792 F.3d 1313 (11th Cir. 2015) ...................................................................19

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P.
    4(k) ........................................................................................................ *passim*
    8(a) ................................................................................................................19
    12(b)(2) and (6) .............................................................................................1

22 U.S.C.
  § 6023(13) (2018) ...................................................................................15, 16, 17
  § 6081(5)-(6) ..........................................................................................16
  §§ 6081 *et seq.* (2018) ...........................................................................1
  § 6082(a) ................................................................................................15

## OTHER AUTHORITIES

142 Cong. Rec. S1479-81 (daily ed. Mar. 5, 1996) ..............................................18

142 Cong. Rec. S1481 ................................................................................18

*Cuban Liberty and Democratic Solidarity Act: Hearings No. 104-212 Before the*
  *S. Comm on Western Hemisphere and Peace Corps Affairs*, 104th Cong.
  (1995) (statement of Ignacio E. Sanchez) ......................................................16

U.S. Gov't Accountability Off., GAO-17-201, Cuba: U.S. Policy Changes
  Increased Engagement with Private Sector 9, 50 (2016) ....................................15

Defendants WPP plc ("WPP"), Young & Rubicam LLC ("Y&R"), and BCW LLC ("BCW") (collectively, "WPP Defendants") respectfully submit this memorandum of law in support of their motion to dismiss with prejudice the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6).

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs sue under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081 *et seq.*, to recover three times the value of the "RRHSC Property," a cigarette factory in Havana allegedly confiscated by the Cuban government in 1961.  ECF No. 208 (Second Amended Complaint or "SAC") ¶¶ 1-4.  As in the two previous complaints, Plaintiffs do not allege that any WPP Defendant has—or has ever had—any ownership interest in or control over the RRHSC Property.  Plaintiffs further do not allege that any WPP Defendant has ever visited, used, or marketed the RRHSC Property.  And Plaintiffs do not sufficiently describe conduct by WPP Defendants from which the Court could reasonably infer any WPP Defendant's knowledge of the use of the RRHSC Property, or even of its existence.

Plaintiffs instead conclusorily allege that WPP Defendants and affiliated entities, beginning no later than 2017, set up "portals" on social media websites on behalf of Corporación Habanos, S.A. ("Habanos") and Imperial Brands plc ("Imperial") for "marketing and promoting Cuban Cigar products."  SAC ¶ 14.  At least "[s]ome" of those Cuban cigar products were allegedly "purchased, managed and resold" from the RRHSC Property by non-party Tabacuba, *id.* ¶ 12, which is alleged to be Imperial's joint venture partner in Habanos, *id.* ¶¶ 13, 17.  Based on the alleged social media portals that are—at most—indirectly related to the RRHSC Property, Plaintiffs seek to hold WPP Defendants liable for three times the value of the RRHSC Property itself, as well as interest on that amount for the past 60 years.  As explained below, all claims against WPP Defendants must be dismissed with prejudice for at least three independent reasons

in addition to the bases for dismissal presented in Defendants' concurrently-filed joint motion to dismiss.

*First*, the exercise of personal jurisdiction over WPP Defendants is improper under either Florida's long-arm statute or Federal Rule of Civil Procedure 4(k).  Even after the benefit of extensive jurisdictional discovery, Plaintiffs fail to allege any conduct tying their allegedly confiscated Cuban factory to the state of Florida.  Plaintiffs claim that this Court nevertheless has jurisdiction over British holding company WPP and two of its Delaware-incorporated indirect subsidiaries, Y&R and BCW, largely because (1) Y&R and BCW have a small business presence in the state; and (2) an ill-defined "WPP Group" uses U.S. Internet and administrative services.  Even assuming the truth of those allegations, neither BCW's or Y&R's Florida offices nor the WPP Group's allegedly shared U.S. administrative services demonstrate any connection between the conduct at issue and the state of Florida.  The allegations are insufficient to establish jurisdiction over any WPP Defendant in this Court.

*Second*, the SAC fails to state a claim because the vague marketing services allegedly undertaken by WPP Defendants do not constitute "trafficking."  Title III was not intended to reach marketing activities that do not involve transacting in the confiscated property by entities that have no ownership or other interest in confiscated property and that have never made use of confiscated property.  Moreover, extending Title III to such marketing also would implicate constitutional concerns, as doing so would regulate speech protected by the First Amendment.  This Court should not interpret "trafficking" so broadly as to impose severe monetary penalties on protected speech.

*Third*, Plaintiffs attempt to hold each WPP Defendant liable for the conduct of a broad and loosely defined "WPP Group" consisting of nonparties and unnamed corporate affiliates.  This treatment of WPP Defendants and other nonparties as a single entity only serves to obfuscate the

lack of individualized allegations as to WPP Defendants and thus runs afoul of Rule 8(b)'s notice pleading requirements. Plaintiffs also make no attempt to provide a legal basis for imputing the acts of distinct corporate entities to WPP Defendants.

Despite two prior complaints and two months of discovery, Plaintiffs cannot cure the defects in their earlier complaints. Allowing Plaintiffs any further amendment would be futile. WPP Defendants respectfully request that the Court grant this motion to dismiss with prejudice.

## **BACKGROUND**

Under Title III of the Helms-Burton Act, Plaintiffs allege that they own a claim to the RRHSC Property, and that Defendants "trafficked" in this property. SAC ¶¶ 3-4, 73. Plaintiffs filed their initial complaint on August 6, 2020, ECF No. 1, which WPP Defendants and Imperial moved to dismiss on grounds similar to the present motion. ECF Nos. 72-74. Plaintiffs then amended their complaint in response to the motions to dismiss, ECF Nos. 82, 84, and all Defendants moved to dismiss for the same defects unaddressed by Plaintiffs' amendment. ECF Nos. 88-89, 91, 93. In response to these motions to dismiss, Plaintiffs obtained leave to conduct jurisdictional discovery, ECF No. 133, during which WPP Defendants responded to more than 150 document requests and to two corporate representative depositions. After jurisdictional discovery closed and while briefing on the second motions to dismiss was in process, Plaintiffs again amended their complaint before the Court could issue a ruling. ECF No. 208. WPP Defendants now move to dismiss this SAC, which suffers from the same fatal defects as the prior two complaints.

According to Plaintiffs, beginning in January 2008, Habanos and other non-party "Cuban Joint Ventures" allegedly used the RRHSC Property to produce and distribute hand-rolled cigars. SAC ¶¶ 17-18, 78-79. Plaintiffs allege that WPP was retained as an "agent"—along with WPP's

U.S.-based subsidiaries Y&R and BCW, "the WPP Group," and non-parties Ogilvy & Mather,[1] Twitter, YouTube, and Instagram—to "assist ... by marketing and publicizing" Habanos' products "since at least 2010." *Id.* ¶¶ 20-21, 61.[2]   The SAC does not describe the scope or form of the alleged marketing activities, except to allege that "no later than 2017," the WPP Group, "nominally acting through" Y&R and BCW, set up "portals" on social media websites, Twitter, YouTube, and Instagram. *Id.* ¶ 22.

Plaintiffs define the "WPP Group" as "WPP, together with Y&R, BCW, Ogilvy, and other WPP subsidiaries." SAC ¶ 21.   Aside from the introduction of the "WPP Group," one of Plaintiffs' few new allegations added after jurisdictional discovery states that "WPP, Y&R, BCW, and the WPP Group" purchased licenses for IT services, which Plaintiffs refer to as "US Services," and shared these services among named WPP Defendants and unnamed WPP entities. *Id.* ¶ 54.   WPP then "directed or allowed its U.S. subsidiaries, including Y&R, BCW, WPP USA and the WPP Group, to use US Services" to provide marketing and advertising services for Habanos. *Id.* ¶ 62.

Plaintiffs make no further allegation identifying the possibly-involved entities, specifying any work these unnamed entities performed, or explaining what it means to "direct[] or allow[] ... use [of the] US Services." SAC ¶ 62.   As in the original and amended complaints, Plaintiffs allege

---

[1] Plaintiffs' allegations regarding Ogilvy are irrelevant, and the Court should disregard them. Plaintiffs explicitly concede that Ogilvy stopped any alleged Cuba-related marketing work in 2015, SAC ¶ 83, and thus these actions are beyond the statute of limitations for the Helms-Burton Act. Moreover, Ogilvy is a distinct corporation that Plaintiffs have opted against naming as a defendant in this suit three times.

[2] The SAC is inconsistent about who retained which WPP entities.   Plaintiffs claim that Imperial retained "WPP, the WPP Group and its U.S.-based corporate agents, Ogilvy and later Y&R and BCW" "either directly or through Habanos," SAC ¶ 61 (emphases added), suggesting that every WPP Defendant and unspecified non-parties had contracts to market Habanos products. Plaintiffs then allege that the advertising agencies were hired by Imperial *and* Habanos. *Id.* ¶¶ 20, 82 (emphasis added).   Not only are these allegations inconsistent, Plaintiffs know from jurisdictional discovery that neither Imperial nor Habanos retained any WPP Defendant for the alleged marketing activity at issue in this case.

only that "[b]eginning in 2016," marketing responsibility "switched" from non-party Ogilvy to Y&R. *Id.* ¶ 83. "[B]eginning in 2019," marketing "was again nominally switched to still another WPP subsidiary, BCW." *Id.* Not only do Plaintiffs fail to allege any facts that would explain their vague references to advertising activities, but Plaintiffs also do not allege who performed which services for which parties. Instead Plaintiffs allege the advertising activity was undertaken either directly *or* through "U.S. Corporate Agents" (defined as Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram), WPP, the WPP Group or unnamed affiliates of WPP, Y&R, or BCW. Plaintiffs claim that all three WPP Defendants "cause[d], direct[ed] [or] participate[d] in, or profit[ed] from, trafficking" in Habanos products "manufactured at, stored in, or distributed from the confiscated RRHSC Property" in violation of the Helms-Burton Act. *Id.* ¶¶ 45, 57-58, 61, 82.

Though Y&R and BCW have "offices in Miami-Dade County," SAC ¶¶ 37, 39, Plaintiffs do not assert that WPP Defendants did anything in Florida relevant to this suit. Nor do Plaintiffs suggest any alleged advertising was targeted toward—or even seen by—Florida residents.

## <u>ARGUMENT</u>

**I.    DESPITE EXTENSIVE JURISDICTIONAL DISCOVERY, PLAINTIFFS STILL FAIL TO ALLEGE PERSONAL JURISDICTION OVER WPP, Y&R, AND BCW**

A complaint may survive a motion to dismiss for lack of personal jurisdiction only when it "establish[es] a prima facie case of personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A district court accepts facts alleged in the plaintiff's complaint as true only when they are not "vague and conclusory allegations." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). When presented with a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, a district court should address personal jurisdiction before addressing whether plaintiffs state a claim. *Madara*, 916 F.2d at 1514.

The allegations in the SAC fall far short of establishing that any relevant conduct occurred in Florida that would justify specific personal jurisdiction in the state, and no WPP Defendant comes close to being "essentially at home" in Florida to the extent necessary to establish general personal jurisdiction.  *See* SAC ¶¶ 66-69.  Rule 4(k) jurisdiction is likewise improper because the SAC alleges that all WPP Defendants have their places of incorporation or principal places of business elsewhere in the U.S.  *See id.* ¶¶ 36-39.  Because no avenue exists to establish personal jurisdiction over WPP Defendants, the SAC should be dismissed with prejudice as to all WPP Defendants.

A.   **Plaintiffs Still Fail To Establish Specific Jurisdiction Over WPP, Y&R, Or BCW Under Florida's Long-Arm Statute**

1.   *Florida's Long-Arm Statute Does Not Authorize Specific Jurisdiction Because None Of The Allegedly Tortious Activities Took Place In Florida*

Plaintiffs contend that the exercise of specific jurisdiction over WPP Defendants is proper under section 48.193(1)(a) of Florida's long-arm statute.  *See* SAC ¶ 66.  Jurisdiction is not appropriate under section 48.193(1)(a)(2) unless the cause of action "aris[es] from" the defendant's "[c]ommitting a tortious act within this state," meaning there must be "a direct affiliation, nexus, or substantial connection" between the cause of action and the defendant's activity.  *Melgarejo v. Pycsa Pan., S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (internal quotations omitted) (quoting *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).  Yet, for the third time, Plaintiffs allege no facts connecting this case to Florida.

Plaintiffs' claim against WPP Defendants arises from the alleged marketing and social media promotion of Cuban cigars and the Habanos brand name.  *See* SAC ¶ 14.  None of the alleged marketing activity, however, took place in Florida.  No WPP Defendant is incorporated or headquartered in Florida.  *See id.* ¶¶ 36-37, 39.  WPP is not alleged to have any offices, employees, or presence of any kind in Florida.  Although both BCW and Y&R are "qualified" to do business

in Florida and have offices in Florida, *id.* ¶¶ 37, 39, the SAC does not allege that any of the marketing at issue here was done at or from those offices—and it was not, as Plaintiffs know from their jurisdictional discovery of WPP Defendants.[3]   The SAC does not allege that any Florida-based employees had any involvement in the marketing of Cuban cigars or even access to the social media "portals" at the center of Plaintiffs' allegations.   Moreover, Plaintiffs fail to allege that any of WPP Defendants' alleged advertising activities specifically targeted Florida or Floridians or that Floridians even accessed or saw the allegedly unlawful marketing.   Plaintiffs' deficient allegations fail to demonstrate "a direct affiliation, nexus, or substantial connection" between the cause of action and WPP Defendants in Florida.   *See Melgarejo*, 537 F. App'x at 860.

Last year in *Del Valle v. Trivago GMBH*, another court in this District declined specific jurisdiction over defendants sued under the Helms-Burton Act in similar circumstances.   2020 WL 2733729, at *3 (S.D. Fla. May 26, 2020), *appeal filed*, (11th Cir. June 24, 2020).   The plaintiffs argued that defendants Expedia, Inc. and Booking.com unlawfully rented hotel rooms at a property confiscated by the Cuban government.   *See id.*   The plaintiffs claimed that personal jurisdiction was appropriate—and that the tort occurred in Florida—because the plaintiffs resided in Florida, and websites promoting the rentals were accessible in Florida.   *See id.*   The court disagreed, finding that the alleged trafficking occurred at the confiscated property in Cuba, not through a website. *See id.*   It accordingly dismissed the defendants from the suit for lack of personal jurisdiction.   *See id.* at *5.

Plaintiffs' argument is identical to the claim rejected in *Del Valle*:   Plaintiffs allege that tortious acts occurred in Florida primarily because several Plaintiffs reside in Florida.   SAC ¶¶ 24,

---

[3] Plaintiffs know from jurisdictional discovery that all allegedly relevant marketing work was performed in Spain by two Spain-based entities.

45, 57-59 (alleging the defendants' trafficking "caused damage to Plaintiffs, five of whom reside in Florida"). Yet "the existence of an injury within Florida ... is insufficient to support jurisdiction over an out-of-state tortfeasor." *Taylor v. Moskow*, 717 F. App'x 836, 841 (11th Cir. 2017) (quoting *Kountze v. Kountze*, 996 So. 2d 246, 252 (Fla. App. 2008)). As in *Del Valle*, the SAC's core connection to Florida is that Plaintiffs reside here. SAC ¶¶ 24-25. And as in *Del Valle*, no tort is alleged to have occurred in Florida. *See* 2020 WL 2733729, at *3. There is accordingly no basis for this Court to exercise specific jurisdiction over WPP, Y&R, or BCW.

2.   *Plaintiffs Allege No Basis To Impute Jurisdictional Contacts To WPP*

Plaintiffs also appear to allege the Court may impute Y&R and BCW's alleged contacts in Florida to WPP to establish specific jurisdiction over WPP. *See* SAC ¶ 46. But that is not correct. "[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002). To establish specific jurisdiction over a nonresident parent corporation based on the jurisdictional contacts of a subsidiary, the plaintiff must demonstrate either the existence of an agency relationship between the parent and the subsidiary, *see id.* at 1273, or facts sufficient for "the court to pierce the corporate veil," *see MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1354 (S.D. Fla. 2000). It is not clear whether Plaintiffs attempt to allege an agency or alter ego theory, but their allegations are insufficient in any event. To establish an agency relationship for the purposes of exercising specific personal jurisdiction under Florida's long-arm arm statute, a plaintiff must show: (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 626 (11th Cir. 2010). Similarly, to pierce the corporate veil under an alter ego theory, the Court must analyze whether "(1) the subsidiary was a mere instrumentality of the parent, and (2) the parent engaged in

improper conduct through its organization or use of the subsidiary." *Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (internal quotations and citations omitted).

There are few allegations in the SAC even marginally relevant to establishing alter ego or agency.  Plaintiffs state that WPP, Y&R, and BCW, together with the so-called "WPP Group," allegedly "purchase Internet, email, and other networking and telecom services in the United States" and "distribute US Services" amongst WPP Group entities.  SAC ¶ 54.  But "a corporate parent may provide administrative services for its subsidiary in the ordinary course of business without calling into question the separateness of the two entities for purposes of personal jurisdiction." *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939, 945 (7th Cir. 2000); *see also UnitedHealthcare of Fla., Inc. v. Am. Renal Assocs. Holdings, Inc.*, 2017 WL 1832436, at *7 (S.D. Fla. May 8, 2017) (finding "the sharing of a website, address or telephone number and the use of the same generic trademarks" insufficient to demonstrate an agency relationship).  Plaintiffs repeatedly allege that "Y&R and its affiliates," "BCW and its affiliates," and "members of the WPP Group ... act as alter egos for one another." SAC ¶¶ 46, 48, 51.  Plaintiffs also add, without any explanation or underlying facts, that "WPP uses employees of the various WPP affiliates in the WPP Group to supervise and control the entirety of the WPP Group." *Id.* ¶ 46.  The SAC contains no further description of the method by which named and unnamed WPP entities "act as alter egos," *id.* ¶¶ 46, 48, 51, or how WPP "supervise[s] and control[s]" its subsidiaries, *id.* ¶¶ 46.  Plaintiffs never explain the relevance of these vague and conclusory allegations to alter ego or agency theories even with the benefit of discovery.  Such conclusory allegations, without any factual support, should not be credited. *Snow*, 450 F.3d at 1318.

3.    *Exercising Specific Jurisdiction Would Violate WPP Defendants' Due Process Rights*

Application of the Florida long-arm statute must also satisfy due process.  *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).  To exercise specific jurisdiction, the Court analyzes:  "(1) whether the plaintiff's claims 'arise out of or relate to' ... the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state ... ; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The first two elements of the due process test fail because of the same factual deficiencies that prevent Plaintiffs from satisfying Florida's long-arm statute.[4]  Namely, as described in Section I.A.1, Plaintiffs make no allegations connecting WPP Defendants' alleged work to Florida.  None of the marketing activities at issue here are alleged to have been planned or executed in Florida.  Yet, to satisfy the first element of due process, *there must* be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (brackets and internal quotations omitted).  Plaintiffs accordingly fail to satisfy the "arise out of or relate to" requirement of due process.

---

[4] Only after the plaintiff has satisfied the first two elements of the due process test does the court consider "traditional notions of fair play and substantial justice."  *Mosseri*, 736 F.3d at 1355 (citing *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).  Because Plaintiffs do not satisfy the first two elements with respect to any of the WPP Defendants, the Court need not consider "traditional notions of fair play and substantial justice."

Further, Plaintiffs do not plead that the alleged marketing targeted Florida. Even if they did, however, it would be insufficient to show purposeful availment, which requires that the defendant's "minimum contacts" (1) be "related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) [be] such that the defendant should reasonably anticipate being haled into court in the forum." *Mosseri*, 736 F.3d at 1357; *see also Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010) ("Other courts have recognized that 'the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.'" (quoting *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005)); *BTG Patent Holdings, LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1320 (S.D. Fla. 2016) (refusing to find purposeful availment where the only activities in Florida were "Internet press releases, third party news stories, and social media activities"). Plaintiffs allege no facts that would satisfy these elements. Thus, without minimum contacts, the exercise of personal jurisdiction would violate WPP Defendants' due process rights.[5]

### B.   General Jurisdiction Over Any Of The WPP Defendants Is Improper

Unlike the prior two iterations of the complaint, Plaintiffs' SAC contends that the Court has general jurisdiction over WPP Defendants via the Florida long-arm statute. *See* SAC ¶¶ 67-69. It reasserts that jurisdiction exists via Federal Rule of Civil Procedure 4(k)(2). *Id.* ¶ 70. Neither argument is persuasive.

---

[5] In its individual motion to dismiss, Imperial argues that no legislative jurisdiction exists over Imperial's foreign business, ECF No. 226, at 17-20, an argument equally relevant to WPP's foreign business. Because "[t]he inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing ... personal jurisdiction consistent with due process," *Am. Charities for Reasonable Fundraising Regul., Inc. v. Pinellas Cnty.*, 221 F.3d 1211, 1216 (11th Cir. 2000), the reasoning in Section II of Imperial's individual motion applies, and there is no legislative jurisdiction as to WPP.

1.      *General Jurisdiction Over WPP Defendants In Florida Is Both Improper And Unconstitutional*

Because Florida's long-arm statute "extends to the limits on personal jurisdiction imposed by the Due Process Clause," this Court need only determine whether the exercise of general jurisdiction over WPP Defendants "would exceed constitutional bounds." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015). General personal jurisdiction exists only when a corporation's place of incorporation or principal place of business is located in the forum or, in "exceptional" cases, where its operations are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014); *see, e.g.*, *Waite*, 901 F.3d at 1317. WPP Defendants are not subject to general jurisdiction in Florida because—as the SAC acknowledges—no WPP Defendant has its place of incorporation or principal place of business in the state. *See* SAC ¶¶ 37, 39 (alleging Y&R and BCW are incorporated in Delaware[6] with their principal places of business in New York); *id.* ¶ 36 (alleging WPP "is a limited liability company incorporated in the Bailiwick of Jersey with 'dual-headquarters in London and New York City'").

Nor do Plaintiffs offer any exceptional circumstances that could subject WPP, Y&R, or BCW to general jurisdiction in Florida under Florida's long-arm statute. A truly "exceptional" case is one in which a nonresident defendant's operations are "so substantial and of such a nature as to render [it] at home in the State." *Waite*, 901 F.3d at 1317. To show circumstances are "exceptional," the plaintiff must demonstrate that "the [defendant] corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche*, 789 F.3d at 1205. Plaintiffs here do

---

[6] Plaintiffs also allege that Y&R was incorporated in New York rather than Delaware. SAC ¶ 38.

not assert such "exceptional" circumstances.  Plaintiffs plead only that Y&R and BCW have "authority to transact business" in Florida, "derive[] significant income" from Florida, and own or lease property in Florida.  SAC ¶¶ 67-68.  Plaintiffs plead no relationship between WPP and Florida beyond WPP's ownership of Y&R and BCW.  *See id.* ¶ 20.  Without alleging WPP Defendants' leadership was based in Florida or the companies directed their operations from Florida, Plaintiffs' allegations about BCW and Y&R's limited activities in the forum do not demonstrate that either company or WPP is "at home" in the state.  *Waite*, 901 F.3d at 1318 (finding no general jurisdiction despite the company's "significant business in Florida" because there was no allegation that company leadership was based in Florida or otherwise directed its operations from Florida).  It would accordingly be unconstitutional to exercise general jurisdiction over WPP Defendants.[7]

### 2.   There Is No Jurisdiction Over WPP Pursuant To Rule 4(k)

Finally, Plaintiffs raise the notion that WPP could be subject to jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  SAC ¶ 70.  This rule permits suit against a foreign corporation whose contacts with the U.S. are "so 'continuous and systematic' as to render [it] essentially at home" here, while simultaneously not being sufficient to provide general jurisdiction in any one state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317).  The Supreme Court and Eleventh Circuit have described such instances as "exceptional," *Daimler*, 571 U.S. at 139 n.19; *Schulman v. Inst. for Shipboard Educ.*,

---

[7] The Supreme Court in *Daimler*, 571 U.S. at 135 & n.13, and courts in this District have foreclosed the argument that general jurisdiction can be asserted over a foreign entity based on the jurisdictional contacts of its alleged agent.  *See, e.g.*, *McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1348 (S.D. Fla. 2017) (Gayles, J.) (collecting cases).  While the Supreme Court has recognized that agency relationships "may be relevant to the existence of *specific* jurisdiction," "[i]t does not inevitably follow ... that similar reasoning applies to *general* jurisdiction."  *Daimler*, 571 U.S. at 135 n.13.

624 F. App'x 1002, 1006 (11th Cir. 2015), and courts in this District have emphasized the rarity

of satisfying Rule 4(k)(2).  *See, e.g.*, *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1337

(S.D. Fla. 2016) ("[I]t is a rare occurrence when a court invokes jurisdiction under the rule.").

The Eleventh Circuit has ruled that jurisdiction via Rule 4(k)(2) is inappropriate in virtually

identical circumstances.  In *Consolidated Development Corp. v. Sherritt, Inc.*, the Eleventh Circuit

denied general jurisdiction over Canadian parent companies under Rule 4(k)(2) where the parent

companies were not registered to do business in the U.S., did not have employees in the U.S., and

did not own property in the U.S.  216 F.3d 1286, 1292-93 (11th Cir. 2000).  Here, similarly,

Plaintiffs do not allege that WPP is registered to do business in the U.S. or owns property in the

U.S.[8]  Further, as Plaintiffs admit, WPP has "few if any direct employees" anywhere, let alone in

the U.S.  SAC ¶ 46.  Rule 4(k) jurisdiction does not apply to WPP.  To the extent Rule 4(k) applies

to WPP, that exercise of jurisdiction is also unconstitutional because Plaintiffs fail to allege any

minimum contacts between WPP and the U.S.  *See* Section I.B.2.

## II.   PLAINTIFFS CANNOT DEMONSTRATE THAT WPP, Y&R, AND BCW UNLAWFULLY "TRAFFICKED" IN ALLEGEDLY CONFISCATED PROPERTY

The SAC fails to allege WPP Defendants' alleged marketing activity constitutes

"trafficking" in property confiscated by the Cuban government.[9]  "[T]rafficking" is an essential

---

[8] The SAC includes allegations that defeat its own Rule 4(k)(2) arguments, alleging that WPP "maintains a principal place of business in New York."  SAC ¶ 36.  While WPP Defendants do not agree with this assertion—or the notion that a corporation can have more than one "principal" place of business—jurisdiction cannot be premised on Rule 4(k)(2) unless a defendant is not subject to jurisdiction in any U.S. state, which cannot be true for WPP if, as Plaintiffs allege, WPP "maintains a principal place of business in New York."  *Id.*; *see Schulman*, 624 F. App'x at 1006 (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919).

[9] The joint motion to dismiss filed by all co-defendants demonstrates that WPP Defendants' and Imperial's purported liability flows entirely from the alleged conduct of Habanos (a "Cuban joint venture corporation," SAC ¶ 35) and/or non-party Tabacuba ("the Cuban tobacco monopoly company," *id.* ¶ 17), which cannot constitute trafficking for which Defendants could be liable.

element of a Title III claim, 22 U.S.C. § 6082(a), and consists of "knowingly and intentionally" committing certain acts with respect to confiscated property without proper authorization, *id.* § 6023(13).  As relevant here, § 6023(13)(A) provides that an entity "traffics" when it:

> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person.

*Id.* § 6023(13)(A).

Plaintiffs rely only upon the third provision here:  They allege that each WPP Defendant "causes, directs [or] participates in, or profits from, trafficking" by "Direct Traffickers" Imperial and Habanos as well as non-parties Twitter, YouTube, and Instagram.  SAC ¶¶ 41, 44-45, 57-59, 81, 84, 96.  Plaintiffs' theory must be—given the lack of allegations that WPP, Y&R, or BCW caused, directed, or participated in trafficking—that WPP Defendants "profit[ed] from" being hired to market Cuban cigars.  *See id.* ¶¶ 61, 82-84.  Under Plaintiffs' theory, any company receiving money from alleged "Direct Traffickers" in connection with those entities' business would be liable for trafficking under the Helms-Burton Act.[10]  There is no legal basis for Plaintiffs' near-limitless indirect trafficking theory.

---

[10] In an attempt to distort the statute's definition of "trafficking," Plaintiffs rely on a distinct, and irrelevant, regulatory regime known as the Cuban Assets Control Regulations ("CACR").  SAC ¶ 56.  The CACR, promulgated by the Office of Foreign Assets Control ("OFAC") over 30 years before Helms-Burton was enacted, determines which activities U.S. companies may engage in with Cuban persons or entities.  U.S. Gov't Accountability Off., GAO-17-201, Cuba: U.S. Policy Changes Increased Engagement with Private Sector 9, 50 (2016).  Plaintiffs have incorrectly—and misleadingly—conflated Title III of the Helms-Burton Act with OFAC regulations for imports and exports of goods and services.  The CACR has nothing to do with this case.

Title III cannot be read as broadly as Plaintiffs suggest.  When it enacted Helms-Burton, Congress focused on foreign investment and direct dealing in confiscated property.  Title III's statutory findings reflect Congress's concern that "[t]he Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using [confiscated] property" and "*[t]his 'trafficking' ...* undermines the foreign policy of the United States." 22 U.S.C. § 6081(5)-(6) (emphasis added).  Section 6023(13)(A)(iii) was intended to ensure that corporations could not evade liability for their investments in confiscated property through the use of joint ventures or other corporate structuring—not to dramatically expand the scope of trafficking to companies that have no interest in or control over and that do not use the confiscated property.  *See id.* § 6023(13)(A)(iii) (noting the provision was limited to "trafficking (as described in clause (i) or (ii)"); *see also Cuban Liberty and Democratic Solidarity Act: Hearings No. 104-212 Before the S. Comm on Western Hemisphere and Peace Corps Affairs*, 104th Cong. 152 (1995) (statement of Ignacio E. Sanchez) (Section 6023(13)(A)(iii) "makes it clear ... to the courts that Congress' intent is that intermediate shell subsidiaries not be created to avoid liability .... Therefore, it takes up the chain of a parent company ... which is not doing it directly but through some subsidiaries").

Here, Plaintiffs argue WPP Defendants "trafficked" in the RRHSC Property although WPP Defendants have not owned, used, or had any interest in or control over that property.  Nor did WPP Defendants market the RRHSC Property itself or reference the RRHSC Property in any marketing.  Indeed, Plaintiffs allege no direct relationship between WPP Defendants and the property.  To impose liability under such circumstances would impose liability on a virtually limitless variety of actors, for example:  organizers of cigar conventions in Europe at which Habanos pays a fee to display its products; the owners of countless tobacco shops and cigar bars

16

from South America to Australia that may keep a few boxes of Habanos products on their shelves; and journalists who write articles about cigarmaking. Each of these actors would have—under Plaintiffs' theory—profited from Habanos' alleged use of the confiscated property to manufacture and distribute cigars. This is not what Congress intended nor what the statute says.

Unsurprisingly, the only Helms-Burton claims to survive the pleading or summary judgment stages have involved direct use of the allegedly confiscated property. *See, e.g.*, *de Fernandez v. Crowley Holdings, Inc.*, 2022 WL 860373, at *2, *5 (S.D. Fla. Mar. 23, 2022) (Gayles, J.) (holding plaintiffs sufficiently alleged trafficking where the defendants "dock[ed] their ships, load[ed] and unload[ed] containers, and use[d] the Container Terminal's services" on the allegedly confiscated property); *Havana Docks Corp. v. Carnival Corp.*, 2022 WL 831160, at *1, *45 (S.D. Fla. Mar. 21, 2022) (finding the defendants "trafficked" in the confiscated property because the defendants' ships used the docks in Havana to embark and disembark passengers). Unlike *Havana Docks*, Plaintiffs here do not allege that WPP Defendants even directly interacted with the confiscated property. *Id.* at *46; 22 U.S.C. § 6023(13)(A)(i), (ii). With no connection to the confiscated property, there can be no trafficking.

Holding advertising companies liable for marketing activities would also implicate constitutional concerns. Advertising is entitled to First Amendment protections. *Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 760-70 (1976) (rejecting a First Amendment exception for commercial speech); *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1234 (11th Cir. 2017). Under the doctrine of "constitutional avoidance," "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades*

*Council*, 485 U.S. 568, 575 (1988).  The Helms-Burton Act should not be interpreted to impose regulations on speech, particularly when there is no indication that Congress intended to do so.[11] Thus, there is no basis to conclude that WPP Defendants "trafficked" in the RRHSC Property.

## III.  PLAINTIFFS IMPROPERLY ATTRIBUTE CONDUCT OF 'WPP GROUP' TO WPP DEFENDANTS

The bulk of new allegations in the SAC against WPP Defendants involve the introduction of an ill-defined "WPP Group" composed of "WPP ... Y&R, BCW, Ogilvy, and other WPP subsidiaries."  SAC ¶ 21.  Throughout the SAC, Plaintiffs proceed to attribute actions to the WPP Group as a whole rather than to named defendants, apparently on the grounds that WPP Defendants may be held liable for each and every act performed by nonparty Ogilvy or all the unnamed WPP subsidiaries within Plaintiffs' definition of the WPP Group.  But "it is a general principle of corporate law ... that a parent corporation ... is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Plaintiffs do not justify holding WPP Defendants liable for the acts of each other or other distinct corporate entities.  Moreover, this practice results in impermissible group pleading that denies the individual WPP Defendants notice of the allegations against them.  For example:

- "[T]he WPP Group used multiple email addresses running through U.S.-based servers, including email running through the servers nominally controlled by Y&R (YR.com) and Ogilvy …."  SAC ¶ 23.

---

[11] Even Senator Coverdell, the Helms-Burton floor manager, did not suggest that liability should extend to advertising vendors.  When introducing Title III, he asked his colleagues to "[i]magine if you were in an airport in Canada or Europe and picked up a brochure actually advertising [confiscated] properties to the highest bidder?  The Castro regime offers the sale of the Hermanos Diaz Refinery in Santiago, Cuba.  Its rightful owner, however, Mr. President, is Texaco."  142 Cong. Rec. S1479-81 (daily ed. Mar. 5, 1996).  Senator Coverdell explained that Helms-Burton was intended to impose liability on the property's purchaser with no mention of the marketing company that made the brochure:  "[Title III] ... puts would-be investors ... on notice that, if they enrich themselves with stolen property, they will be held liable."  *Id.* S1481.

- "[T]obacco products ... were purchased, sold, manufactured, packaged or marketed from the RRHSC Property, through agents WPP Group, WPP, Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram." *Id.* ¶ 42.

- "[N]o later than 2017, Imperial also decided, either directly or through Habanos, WPP, the WPP Group and U.S. Corporate Agents, to contract for the use of social media 'portals' operated by still additional U.S. corporations." *Id.* ¶ 61.

- "The agents retained by Imperial and Habanos include WPP through its advertising agency subsidiaries, including the WPP Group, Y&R, BCW, and Ogilvy.  Among other things, those agencies assisted in setting up, or directly set up, the sponsored 'official' portals listed above on the Twitter, YouTube, and Instagram platforms (Y&R, BCW, Ogilvy, Twitter, YouTube, and Instagram, collectively, the 'U.S. Corporate Agents')." *Id.* ¶ 82.

In each instance, Plaintiffs attribute actions to some undefined combination of WPP, BCW, Y&R, related corporate entities, and unrelated third parties.  This is a straightforward violation of Rule 8(a), which requires that a complaint, at a minimum, "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).  "Group pleading" is impermissible because it "fail[s] to provide fair notice of the claims by failing to specify which defendants interfered with which plaintiffs." *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1274 (11th Cir. 2019).  Federal Rule 8(a)'s requirements are particularly important where, as here, Plaintiffs seek to hold a corporate parent vicariously liable for the acts of its subsidiaries. *Lane v. Cap. Acquisitions & Mgmt. Co.*, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006), *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 F. App'x 675 (11th Cir. 2009); *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, 2008 WL 926512, at *1 (S.D. Fla. Mar. 31, 2008).

Plaintiffs' vague allegations with respect to the WPP Group obfuscate the allegations of liability as to the three WPP-related entities named as defendants.  Plaintiffs offer no basis to hold WPP, BCW, and Y&R liable for the acts of unnamed subsidiaries, let alone for the acts of unrelated

entities like Twitter and Instagram.  Even if Plaintiffs alleged some legal theory that would permit WPP Defendants to be held liable for acts other than their own, Plaintiffs do not identify the "other WPP subsidiaries" whose acts allegedly render WPP Defendants liable to Plaintiffs.  The SAC should accordingly be dismissed for failing to meet the pleading standards of Rule 8(a).

## IV.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

A district court may dismiss a complaint with prejudice where "amendment would be futile," which includes when an amended complaint repeats previously alleged claims.  *Overcash v. Shelnutt*, 753 F. App'x 741, 745 (11th Cir. 2018) (internal quotations omitted); *see also Barrett v. Scutieri*, 2007 WL 9703152, at *4 (S.D. Fla. Mar. 19, 2007) ("Although leave to amend a complaint should be freely given when justice requires, it need not be given where, as here, there has been repeated failure to cure deficiencies by amendments previously allowed or when amendment would be futile."), *aff'd*, 281 F. App'x 952 (11th Cir. 2008).  Plaintiffs have already amended their complaint twice.  Indeed, they did so after previewing two motions to dismiss filed by WPP Defendants, ECF Nos. 71-72, 74, and taking extensive jurisdictional discovery from Y&R and BCW.  After three bites at the apple and jurisdictional discovery, it is clear that Plaintiffs are unable to allege sufficient facts to establish personal jurisdiction or state a claim.  Because amendment is futile, the Court should dismiss the SAC with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC against WPP Defendants with prejudice.

## REQUEST FOR HEARING

This case raises novel and complex issues of law, and WPP Defendants accordingly request a hearing.  The joint brief submitted concurrently by WPP Defendants, Imperial, and Habanos also includes a request for hearing, and WPP Defendants are amenable to holding a combined hearing on both the joint motion to dismiss and this separate motion to dismiss.


Date: April 20, 2022                           _s/Naim S. Surgeon_____

NAIM S. SURGEON
Florida Bar No. 101682
E-Mail:  nsurgeon@stroock.com
**STROOCK & STROOCK & LAVAN LLP**
200 South Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 789-9360
Fax: (305) 789-9302

PEDRO FREYRE
Florida Bar No. 192140
E-Mail:  pedro.freyre@akerman.com
**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Tel: (305) 982-5507
Fax: (305) 374-5095

CHRISTOPHER DAVIES (*pro hac vice*)
E-Mail:  christopher.davies@wilmerhale.com
CHRISTOPHER CASAMASSIMA (*pro hac vice*)
E-Mail:  chris.casamassima@wilmerhale.com
JESSICA LUTKENHAUS (*pro hac vice*)
E-Mail:  jessica.lutkenhaus@wilmerhale.com
ASHLEY MCLAUGHLIN LEEN (*pro hac vice*)
E-Mail:  ashley.leen@wilmerhale.com
JOSEPH HUTTON MARSHALL (*pro hac vice*)
E-Mail:  hutton.marshall@wilmerhale.com
**WILMER CUTLER PICKERING HALE
      AND DORR LLP**
1875 Pennsylvania Ave NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Defendants WPP PLC, YOUNG &
RUBICAM LLC, and BCW LLC*