UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20 cv 23287(DPG)(AMO)

LUIS MANUEL RODRIGUEZ, et al.,

         Plaintiffs,

  v.

IMPERIAL BRANDS PLC, et al.,

  Defendants.

_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' JOINT MOTION FOR STAY**

   Plaintiffs, by and through their undersigned counsel, respectfully submit their opposition

to Defendants' Joint Motion for a Stay [of discovery] (the "Motion") [ECF No. 230], and state:

**PRELIMINARY STATEMENT**

   Defendants seek what they call a "limited" stay. Motion at 1.  In the case of Defendant

Imperial Brands plc ("Imperial"), however, it is more accurate to classify the request as

"indefinite" or "perpetual," as there is no limitation at all. As it did at the commencement of the

case, Imperial claims that it requires authorization from its government authority (previously the

E.U., and now the U.K. government) to litigate in this Court, except to the extent of an earlier,

limited, permission to litigate Imperial's motion to dismiss. Motion at 3. Corporaćion Habanos,

S.A. ("Habanos") claims that the discovery order is premature until the upcoming Motion to

Dismiss the Second Amended Complaint is decided as it claims it is subject to sovereign

immunity.  Motion at 7.  WPP plc ("WPP") Young & Rubicam LLC ("Y&R") and BCW LLC

("BCW", together with WPP and Y&R referred to collectively as the "WPP Defendants") jointly

with Habanos & Imperial claim that the Motions to Dismiss will obviate the need for further proceedings and merit-based discovery. Motion at 3. The arguments propounded by Defendants in support of their respective motions to dismiss were previously presented to the Court by Defendants as grounds for finding that Plaintiffs' proposed amended Complaint was futile. .[ECF Nos. 169 (by Habanos), 171 (by Imperial), 173 (by WPP Defendants)]. The Court disagreed with Defendants and found that the proposed Second Amended Complaint was not futile. [ECF No. 207]. More recently, Defendants moved for extension of time to file a joint scheduling report, again raising the same arguments for a stay.[1] *See* ECF 217. The Court gave Defendants an extra 15-days to file the scheduling report, but otherwise denied that motion. *See* ECF 223. With the more recent entry of a Scheduling Order (ECF 234), the Court has in effect started the discovery and trial preparation "clock."

As demonstrated below, none of the Defendants offer sufficient cause to further delay merits discovery and ultimate resolution of this 2020 case. Moreover, a further delay of proceedings could prejudice Plaintiffs. The Court should deny Defendants' Motion in its entirety.

## Argument

The movant for a stay of discovery bears the burden of proof to demonstrate the stays' (i) necessity, (ii) appropriateness, and (ii) reasonableness. *See Lewis v. Mercedes-Benz USA, LLC*, 19-CIV-81220-RAR, 2020 WL 4923640, at *4 (S.D. Fla. Mar. 25, 2020). Here, the stay is neither necessary, appropriate, or reasonable.

While a district court has broad discretion to manage its own docket, including pre-trial activities such as discovery and scheduling, *Cabrera v. Progressive Behavioral Sci., Inc*., 331

---

[1]     *See* ECF 217 (Defendants' Joint Motion for Extension of Time to File Joint Scheduling Report and Proposed Scheduling Order)

F.R.D. 185, 186 (S.D. Fla. 2019) citing to *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1269 (11th Cir. 2001), *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (district courts have broad discretion to stay proceedings), overall stays of discovery are rarely granted. *Nankivil v. Lockheed Martin Corp*., 216 F.R.D. 689, 692 (M.D. Fla. 2003), aff'd, 87 Fed. Appx. 713 (11th Cir. 2003). "[A] stay of discovery should be a sparingly ordered thing." *Ray v. Spirit Airlines, Inc.*, 12-61528-CIV, 2012 WL 5471793, at *3 (S.D. Fla. Nov. 9, 2012).

Defendants contend that "Courts in this district routinely stay discovery." Motion at 3. To the contrary, "Motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district." *Flecha v. Neighbors Moving Services, Inc.*, 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013) *citing* to S.D. Local Rules, App. A, Discovery Practices Handbook I.D(5).[2] The moving party must demonstrate good cause and the Court must balance the harm caused by the delay against the possibility that the motion will resolve the entire action. *Flecha v. Neighbors Moving Services, Inc*., 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013) citing to Fel*dman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fl. 1997). In making its determination, the Court must also consider the costs and burdens of proceeding with discovery. *Cabrera v. Progressive Behavioral Sci., Inc*., 331 F.R.D. 185, 186 (S.D. Fla. 2019).

## I.   THE FACTORS WEIGH IN FAVOR OF ALLOWING DISCOVERY

As noted, a stay of discovery pending the determination of a motion to dismiss, is the exception rather than the rule. *Cabrera v. Progressive Behavioral Sci., Inc.*, 331 F.R.D. 185, 186 (S.D. Fla. 2019).  While overall stays of discovery are rarely granted, a motion to dismiss that

---

[2]      "Normally, the pendency of a motion to dismiss or motion for summary judgment will not justify a unilateral motion to stay discovery pending a ruling on the dispositive motion. Such motions for stay are generally denied except where a specific showing of prejudice or burdensomeness is made, or where a statute dictates that a stay is appropriate or mandatory."  S.D. Local Rules, App. A, Discovery Practices Handbook I.D(5).

proposes to dispose of the entire action *may* serve as "good cause" to stay discovery, but only if there is a strong likelihood that the motion will dispose of the action in its entirety. *See Cabrera v. Progressive Behavioral Sci., Inc*., 331 F.R.D. 185, 186 (S.D. Fla. 2019), *see also Cresthaven-Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co*., 9:19-CV-80959, 2020 WL 705209, at *2 (S.D. Fla. Feb. 12, 2020).

In order to determine whether discovery should be stayed, the Court must first make a determination that the motion to dismiss at issue appears to be meritorious and will dispose of the entire case. *Cabrera*, 331 F.R.D. 651 (S.D. Fla. 2019). Here, Defendants arguments are based in part on what they contend are pleading failures. Those do not serve as basis for dismissal with prejudice. Moreover, there is no question that the WPP Defendants are subject to jurisdiction in New York if not in this Court. Again, no basis for disposal of the action in its entirety.

### A. THE LIKELYHOOD OF DEFENDANTS' SUCCESS ON THE MERITS OF THEIR MOTIONS TO DISMISS WEIGH IN FAVOR OF THE PLAINTIFFS

Defendants have each already laid bare the basis of their motions to dismiss in their respective oppositions to Plaintiffs' Motion for Leave to Amend the Amended Complaint. [ECF Nos. 168, 169, 173]. Each Defendant argued that Plaintiffs' proposed amendments to the amended complaint were futile.[3] Defendants there reiterated or reincorporated prior arguments from their respective motion(s) to dismiss. [ECF Nos. 168, 169, 173]. The Court has already taken a "preliminary peek" at the Defendants' motions and granted Plaintiffs leave to amend the complaint. [ECF No. 207]. In making that determination, the Court found not futile Plaintiffs'

---

[3]    A proposed amendment to a complaint is futile where the amended complaint would still be subject to dismissal. *Patel v. Georgia Dept. BHDD*, 485 Fed. Appx. 982, 982 (11th Cir. 2012).

proposed amendments. Consequently, there is not a strong likelihood that the Second Amended

Complaint is subject to dismissal, and the upcoming motions to dismiss are not "clearly

meritorious and truly case dispositive."[4] [*See* ECF No. 207 "the undersigned cannot conclude

that the proposed Second Amended Complaint is 'clearly insufficient or frivolous on its face'."].

The Court as reflected in its more recent Order denying a stay of the filing of a joint scheduling

order, [ECF 224] was unpersuaded by Defendants' similar arguments. *See* ECF 217. It is fair to

see that the Court has had now multiple, and not merely preliminary, "peeks" and found

Defendants' arguments wanting. Any stay of discovery would merely serve as an undue delay in

the proceedings which, as set forth below, can serve as an extreme prejudice to each Plaintiff.

## B. THERE IS NO GOOD CAUSE TO STAY DISCOVERY

Defendants effectively seek to stay the current action indefinitely.  Defendants' Motion

seeks a stay until after a final decision on their motions to dismiss, thus delaying discovery even

further. Moreover, such delay would also compress all trial deadlines set in the Court's recent

Scheduling Order.  The effect would be to further, and substantially, prejudice Plaintiffs in their

ability to prove their case. Alternatively, the delays would effectively render the Scheduling

Order a nullity.

The instant action was commenced on August 6, 2020. [ECF No. 1]. Twenty-two days

later, Imperial filed its first motion for a stay pending application for authority from the

European Union to defend against the instant action.  [ECF No. 14].  That application led to the

instant action being stayed for over five months until the stay was lifted on February 12, 2021.

[ECF No. 76].  Since that time, the parties have been engaged in motion practice revolving

---

[4]     A motion to stay discovery should only be grated if the motions to dismiss appear to be "clearly meritorious and truly case dispositive." *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997)

around Defendants' motions to dismiss.  It is improper for Imperial and all Defendants to request a further stay of discovery and of all other substantive proceedings pending resolution of the motions to dismiss, especially given that Habanos effectively admits its intention to stay and delay the action further upon a decision adverse to it. And Imperial too, effectively seeks an unlimited stay based upon a secret UK process – which it purposely chose not to invoke over the last 15 months.

Imperial's assertion that it *will* seek (or perhaps now only very recently, has sought) a stay of proceedings to obtain permission from the U.K. to continue litigating the instant action, makes matters worse. Further, Imperial's admission that it failed until now to seek the additional permission that it now says it needs, is inexcusable. The fact that merits discovery may have been on "*de-facto*" hold changes nothing. If Imperial truly believed that it needed the permission, it has no excuse for failing to seek it in February of 2021, when the initial, limited, permission was granted. Nor can Imperial provide any reason why its failure should be imposed on Plaintiffs.

In this regard, Plaintiffs note as well that there is no evidence that any UK or EU party has ever been sanctioned for purported violation of a "blocking" law that was admittedly enacted with a purpose of putting roadblocks in the way of the U.S. enforcement of the Helms Burton law. Nor did any purported fear of U.K. fines prevent Imperial from: (1) participating in scheduling of or attendance at depositions of the WPP Defendants on jurisdictional issues; (2) opposing Plaintiffs' motion for leave to amend; or (3) seeking to stay the issuance of a Scheduling Order. Yet none of those actions are obviously within the scope of the prior limited permission granted by the U.K. *See* ECF 64-1 at 3, Schedule, Part 2 (authorizing only "Filing and litigating a motion to dismiss the complaint brought before" this Court). Thus, Imperial is

6

not concerned about exceeding the U.K. mandate when it believes that doing so serves Imperial's interests. Significantly too, Imperial is subject to personal jurisdiction here for conduct in the U.S., not Cuba. The U.S. conduct by Imperial's chosen agents, the WPP Defendants, is chargeable to Imperial, and in violation of U.S. law. There is, therefore, nothing "extra-territorial" about application of U.S. law to Imperial.

And Imperial, of course, has not given any assurance that the UK government would not issue another arbitrarily limited "permission" if it deems it appropriate, after following whatever process (secret to Plaintiffs and to this Court) it may follow before deciding. Nor has Imperial given any time limit for the (secret) UK process to unfold. Also unavailing are Imperial's arguments that the Court should stay discovery in the interests of international comity. The UK's initial grant of permission allowed Imperial only limited permission to participate in this action. Plainly, the UK has reserved for itself the right to deny permission to defend against the action beyond the motion to dismiss stage. By doing so, the UK has demonstrated that it does not have confidence in the United States' Courts. Thus, acting contrary to the mutual respect that underlies the theory of international comity. Habanos, in turn, has suggested that it will seek a stay to pursue an interlocutory appeal of a decision adverse to Habanos.

The WPP Defendants for their part have not set forth any reason why discovery should not occur other than their argument that the action will be disposed in its entirety. The WPP Defendants cannot deny, however, that they are subject to personal jurisdiction in the U.S. Although Plaintiffs deny such entitlement, in the best case for them, the WPP Defendants would be entitled to a transfer, not dismissal. Furthermore, "being required to defend a lawsuit does not constitute a hardship or inequity sufficient to justify a stay of a proceeding." *Marc Irwin*

*Sharfman, M.D., P.A. v. Premier Med., Inc*., 6:20-CV-1278-WWB-LRH, 2021 WL 6884300, at *2 (M.D. Fla. Dec. 29, 2021).[5]

In short, Defendants have failed to set forth any good cause why discovery cannot take place.

### C.  THE BALANCING OF THE HARMS WEIGHS IN FAVOR OF THE PLAINTIFFS

An applicant for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. N. Am. Co*., 299 U.S. 248, 255 (1936).  The Court must balance the harm caused by stay against the possibility that the motion will resolve the entire action.  *Flecha v. Neighbors Moving Services, Inc*., 944 F. Supp. 2d 1201, 1203 (S.D. Fla. 2013).  As set forth above, the Court has already twice "peeked at" the arguments set forth in the motions to dismiss. The Court first determined that Plaintiffs' proposed amendments to the Complaint were not futile. More recently, it determined that Defendants' arguments did not support staying the entry of a Scheduling Order. The Court, therefore, has twice considered the issue and apparently concluded there is insufficient likelihood that the Defendants' motions to dismiss will dispose of the entire action.

Indeed, Defendants' Motion does not set forth any hardship, prejudice, inequity or undue burden if the instant action is allowed to proceed. Imperial does repeat a list of theoretical

---

[5]      Even if the Court were to consider the cost of engaging in discovery as a factor in Defendants' request, Imperial's estimated net income from 2021 exceeds two billions dollars (https://www.businesswire.com/news/home/20220201005385/en/Imperial-announces-2021-financial-and-operating-results), and it sold its premium cigar business (including its interest in Habanos) in 2020 for $1.43 billion dollars, WPP's 2021 revenue exceeded ten billion dollars( https://www.wpp.com/news/2022/02/2021-preliminary-results ), and Habanos reported revenues of over five hundred million in 2020 ( https://halfwheel.com/habanos-s-a-generates-507-million-in-2020-revenue-china-now-largest-market/393576/ ).

possible fines and legal implications should Imperial go forward with the litigation without UK permission. But Imperial provided the same list (based on EU law) in its motion for stay in August of 2020. Imperial, however, was obviously not sufficiently concerned about possible UK fines and penalties to seek permission to further litigate this case during the 15-monrths or so since it received the UK's initial, limited, permission. Imperial has not set forth any basis as to why it has not applied for further authority to defend the action.  Imperial should not be heard to impose the costs of its failure to do so on Plaintiffs and this Court.

Moreover, further delay may severely prejudice the Plaintiffs. Section 302(a)(4) of the Helms Burton Act states "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082. Several court orders in this district have interpreted the effect of this statute as extinguishing any claim upon the death of a claimant (although no court order known to Plaintiffs involved an already-litigating claimant) after March 12, 1996.[6] Should it be ultimately concluded that the death of a claimant extinguishes their claim, then each Plaintiff (and their estate and heirs and successors) is at risk of having their claim extinguished by the passage of time.

Most of the Plaintiffs are either middle-aged or senior citizens. One Plaintiff, Luis Rodriguez, is 95 years old, Maria Teresa Landa sadly passed away, three of the Plaintiffs are in

---

[6]    *See Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd*., 535 F. Supp. 3d 1299, 1308 (S.D. Fla. 2021), reconsideration denied, 20-21630-CIV, 2021 WL 3054908 (S.D. Fla. July 20, 2021) ("The Act expressly requires that actionable claims must be acquired before March 12, 1996. . . .  no United States national may bring an action unless he acquired ownership of the claim before March 12, 1996."); *de Fernandez v. Seaboard Marine, Ltd*., 20-CV-25176, 2021 WL 3173213, at *9 (S.D. Fla. July 27, 2021), *reconsideration denied sub nom. Fernandez v. Seaboard Marine, Ltd*., 20-CV-25176, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021) ("the Estates do not have an actionable ownership interest in the Confiscated Property and cannot maintain a Title III action on behalf of the deceased").

their mid-70's, and at least two Plaintiffs are in ill health. Surely, it cannot be the case that Defendants should be allowed to successfully defend against a Helms Burton claim, not on the merits, but by simply waiting out the clock. Further delay in this action poses an extreme prejudice and hardship to Plaintiffs.  In short, the potential harm, the extinguishment of the claim, outweighs any posited harm to the Defendants. Discovery should be allowed.

## CONCLUSION

For the stated reasons, the Court should deny Defendants' Joint Motion for a Stay of Discovery.

Respectfully submitted,

**RODRIGUEZ TRAMONT & NUÑEZ P.A.**

By:  _/s/ Paulino A. Núñez Jr._
  Paulino A. Núñez Jr.
  Florida Bar No. 814806
  Primary email: pan@rtgn-law.com
  255 Alhambra Circle
  Suite 1150
  Coral Gables, FL 33134
  Telephone: (305) 350-2300

**BERENTHAL & ASSOCIATES, P.A.**

By:  _/s/ David W. Berenthal_
  David W. Berenthal
  Florida Bar No. 159220
  E-mail: dwb@berenthalaw.com
  255 Alhambra Circle
  Suite 1150
  Coral Gables, FL 33134
  Telephone: (212) 302-9494

## CERTIFICATE OF SERIVCE

I HEREBY CERTIFY that on May 5, 2022, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification of the filing to all counsel and parties of record.

  _/s/ Paulino A. Núñez Jr._
  Paulino A. Núñez Jr.