UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LUIS MANUEL RODRIGUEZ, et al.,          Case No.: 1:20-cv-23287(DPG)(AMO)

       Plaintiffs,

v.

IMPERIAL BRANDS PLC, et al.,

       Defendants.

_____/

**<u>Memorandum of Law in Opposition to Motion to Dismiss Second Amended Complaint</u>**

Plaintiffs respectfully submit this memorandum of law in opposition to the motion to dismiss (DE 227) under Rule 12(b)(1) and (6) ("Motion") filed jointly by Defendants, Corporación Habanos, S.A. ("Habanos"), Imperial Brands plc ("Imperial"), WPP PLC ("WPP"), Young & Rubicam LLC ("Y&R"), and BCW LLC, a/k/a Burson Cohn & Wolfe LLC ("BCW") (collectively, "WPP Defendants").

## **Preliminary Statement**

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of the Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba (collectively the "Property"). In 1961, the Castro government confiscated ownership of RRHSC and the Property. Plaintiffs are the owners of a "Claim" under the Helms-Burton Act ("HBA" or "Libertad Act") due to the Cuban government's confiscation and trafficking in the Property.

The HBA took effect in 1996:

> It is the purpose of statute ***to deter third party foreign investors from trafficking in the confiscated property*** (defined as '***purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures*** using property and assets some of which were confiscated from United States nationals.')

*Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting 22 U.S.C. § 6081(5)); *see Havana Club Holding, S.A. v. Galleon S.A.*, 203 F.3d 116, 125 (2d Cir. 2000) ("Congress sought to discourage business arrangements" like the joint venture arrangement at issue in that case that sought to challenge a U.S. trademark in the Havana Club mark).

Despite the clear warning, Imperial was neither deterred nor discouraged. Instead, in 2008, Imperial entered into a joint venture with Cuba and its tobacco monopoly company, "Tabacuba."

Defendant Habanos is a joint venture company controlled by Cuba with financial interests owned 50% by Cuba and 50% by Imperial. *See* Amended Complaint (Am. Compl.) ¶7, (ECF 82). According to Imperial, its joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively "manufacture, market, distribute and sell cigars manufactured in Cuba."[1] Plaintiffs allege that, in furtherance thereof, Imperial and its joint venture partnership, Habanos, together with the WPP Defendants as their agents, have "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA. Among other things, the unauthorized use of the Property by Imperial and Habanos extended to Tabacuba's management of the day-to-day business of all Cuban tobacco products from offices it maintained in the RRHSC Property at all times from 2007 or 2008 until at least October 29, 2020. *See* SAC, ¶ 11. This included use of a portion of the Property by Tabacuba, for its executive offices, and the use of the loading dock and space for warehousing and shipping Habanos' products. *See id.*, ¶ 80.  Plaintiffs further allege that Imperial and Habanos retained WPP, through WPP's U.S. based subsidiaries Y&R and BCW, to market products produced, shipped, or stored at or from the confiscated RRHSC Property. The marketing arrangement included use of official "portals" on U.S. based social media companies. *See id.*, ¶ 82.  Plaintiffs seek redress against the Defendants for violations of the HBA, as each of the Defendants have either participated in, or profited from, trafficking of the Property.

All Defendants collectively move to dismiss contending broadly that Plaintiffs do not have Article III standing and have otherwise supposedly failed to state a claim. Defendants repeatedly assert that the Property was confiscated by "the Cuban Government" and try to separate themselves

---

[1]    *See* Am. Compl. ¶6, citing Imperial *Prospectus* for "€15,000,000,000 Debt Issuance Programme," at 27. The Amended Complaint included a link to the Prospectus that was available on the Imperial Website. As that link has now apparently been removed or disabled, Plaintiffs are separately filing a copy of the Prospectus.

from its conduct. Among other things, Defendants argue that Plaintiffs fail to allege "trafficking" because the conduct at issue is that of Cuban companies, who Defendants contend, "are categorically incapable of committing trafficking." *See* Motion at 6. They also insist that Plaintiffs have failed to allege that Defendants knowingly trafficked in confiscated property. Significantly, Defendants' arguments completely ignore that, under the HBA, the Habanos joint venture controlled by Cuba is an "agency or instrumentality" of Cuba.[2] As a result, Defendant Habanos, Imperial's partner and the WPP Defendants' principal, therefore *is* the Cuban Government from which Defendants try so hard to separate.[3]   As demonstrated below, Defendants' arguments misconstrue both the complaint's allegations as well as the HBA and other governing legal doctrines.

## I.   Plaintiffs' Have Standing to Pursue Their Claims Under the HBA

Defendants' primary argument is that Plaintiffs lack Article III standing to pursue their claims. Defendants acknowledge as they must that that this court has twice held that HBA plaintiffs do have Article III standing. *See De Fernandez v. Crowley Holdings, Inc*., --- F.Supp.3d ----, 2022 WL 860373, at *3– 4 (S.D. Fla. Mar. 23, 2022); *N. Am. Sugar Indus. Inc. v. Xinjiang Goldwind Sci. & Tech. Co. Ltd.*, No. 20-cv-22471, 2021 WL 3741647, at *3–5 (S.D. Fla. Aug. 24, 2021). As

---

[2]   Under the HBA, "The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of Title 28. *See* 22 U.S.C. § 6023(1); *see also* 28 U.S.C. § 1603 (a) ("A "foreign state" . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)"); *id*., § 1603 (b) ("An 'agency or instrumentality of a foreign state' means any entity-- (1) *which is a separate* legal person, *corporate or otherwise, and* (2) which is an organ of a foreign state or political subdivision thereof, or *a majority of whose* shares or *other ownership interest is owned by a foreign state* or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . .  nor created under the laws of any *third country*.") (emphasis added).

[3]   *See* 22 U.S.C. § 6023(5) (A) ("The term 'Cuban Government' *includes* the government of any political subdivision of Cuba, and any *agency or instrumentality of the Government of Cuba*.") (emphasis added).

has the only appellate court to consider the issue. *See Glen v. American Airlines, Inc.*, 7 F. 4th 331 (5th Cir. 2021). Other judges in this district have similarly concluded that HBA plaintiffs have standing to sue. *See Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1188-95 (S.D. Fla. 2020); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1226-31 (S.D. Fla. 2020); *Iglesias v. Ricard*, 2020 U.S. Dist. LEXIS 164117, at *25-29 (S.D. Fla. Aug. 17, 2020).[4]

This Court's reasoning in *de Fernandez* applies equally to Plaintiffs' claims in the instant case and succinctly describes why Defendants' standing arguments fail. *De Fernandez* explained:

> To establish Article III standing, '[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.' '[T]he plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it.' *Muransky*, [*v. Godiva Chocolatier, Inc.*] 979 F.3d [917,] at 924 [(11th Cir. 2020) (en banc)].

> **A. Injury-In-Fact**

> . . . To demonstrate an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " "At the pleading stage of a case, 'general factual allegations of injury' can suffice."

> **1. Legally Protected Interest**

> "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1191 (S.D. Fla. 2020) "That interest must consist of obtaining compensation for, or preventing, the violation

---

4   Decisions from districts courts in New York, Delaware, and D.C. agree that HBA plaintiffs have standing. *See Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 20-CV-851, 2021 WL 6065758, at *7 - *8 (S.D.N.Y.  Dec. 22, 2021); *Moreira v. Societe Generale*, S.A., --- F.Supp. 3d---, 2021 WL 5524484, at *3 - *5 (S.D.N.Y. Nov. 24, 2021) *Exxon Mobil Corp. v. Corporacion CIMEX S.A.*, 19-CV-01277, 2021 WL 1558340, at *20-21 (D.D.C. Apr. 20, 2021); *Glen v. Trip Advisor LLC*, CV 19-1809, 2021 WL 1200577, at *7 (D. Del. Mar. 30, 2021).

of a legally protected right." Here, Plaintiffs allege a current property interest in the Confiscated Property based on their prior ownership and the Concession. That interest is protected by the Act "which conveys a *right* to prevent third-party use of the same."

### 2.   Concrete

Though Plaintiffs have alleged an invasion of a legally protected interest, they must still allege that they have suffered a concrete and particularized injury. . ..

"The Supreme Court has explained that '[c]entral to assessing concreteness is whether the asserted harm has a "close relationship" to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms.' " *Glen v. American Airlines, Inc*., 7 F.4th 331, 334 (5th Cir. 2021). Here, Plaintiffs allege that they were harmed when Defendants used the Confiscated Property "without consent from or paying adequate compensation to Plaintiffs." This harm "bears a close relationship to unjust enrichment, which has indisputable common-law roots." *Glen*, 7 F.4th at 334. Indeed, Congress passed the Act, in part, because it found the remedies for "unjust enrichment from the use of wrongfully confiscated property ... by private entities at the expense of the rightful owners of the property" to be ineffective. 22 U.S.C. § 6081(8). . . .

### B.   Traceability

. . . Plaintiffs must also show that their injuries are "fairly traceable" to Defendants' use of the Confiscated Property. "To show traceability, a plaintiff must allege that his injury is 'connect[ed] with the conduct about which he complains.' " *Glen*, 7 F. 4th at 335 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018)). The SAC alleges that Defendants profited from their use of the Confiscated Property without compensating Plaintiffs. Accordingly, like in the *Glen* and the *Havana Docks* cases, "there exists a causal link between the claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Havana Docks*, 484 F. Supp. 3d at 1230. . ..

*de Fernandez*, slip op., at *3–4 (footnotes and some citations omitted).

At least ten separate federal court orders have held that HBA plaintiffs have standing to sue. Defendants nevertheless insist that neither this court, nor presumably any of the other courts

6

holding similarly, has addressed standing arguments pertaining to HBA plaintiffs' supposed "inability to demonstrate they have suffered concrete harm from" HBA defendants' alleged use of real property in which the HBA plaintiffs necessarily have no legal ownership interest under Cuban law. *See* Mot. at 6. The question of standing to sue in federal court is no trivial matter. Rather, standing "'is a threshold question that must be explored at the outset of any case.' 'It is . . . an indispensable part of the plaintiff's case. . . . '" *de Fernandez*, slip op., at *3. Defendants' argument is not just wrong, it assumes that this and every court that has considered HBA standing has failed in this fundamental inquiry. Moreover, every HBA plaintiff necessarily had their property confiscated by Cuba, and defendants in each of the cases cited above and in note 4 made standing arguments similar if not identical to those Defendants make here.

Also wrong, as well as misleading, is Defendants' further assertion that this court has not addressed "the impermissibility of requiring Defendants to remedy harm that the Cuban Government caused by confiscating the RRHSC Property decades before Defendants' alleged trafficking began." *See* Mot at 6. Defendants well-know that the HBA does not require defendants to remedy harm caused by the Cuban Government's confiscation of property. To the contrary, Defendants must the remedy the harm caused by their own trafficking in the confiscated RRHSC Property. As this court made clear: "***Congress*** passed the Act, in part, because it ***found the remedies for 'unjust enrichment from the <u>use of</u>*** wrongfully confiscated property . . . ***by private entities at the expense of the rightful owners of the property***' to be ineffective." *de Fernandez*, slip op., at *4 (emphasis added) (citation omitted); *see also Sucesores*, 2021 WL 6065758, at *7 ("Congress identified an ***injury produced by <u>later exploitation of</u> confiscated*** property, ***which it <u>expressly distinguished from</u> the harm of the initial confiscation***: 'unjust enrichment from the

use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property' . . . .") (emphasis added) (citing 22 U.S.C. § 6081(2), (8)).

A.     The HBA Remedies "Concrete" Harm

Given the apparently unanimous conclusion of available decisions that HBA plaintiffs have standing to sue, Defendants are necessarily forced to try to create a standing argument without relying on any opinion involving standing under the HBA. Defendants fare no better under cases that have decided the question of standing by non-HBA plaintiffs.

The Eleventh Circuit's *en banc* decision in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020), focused on the standing "injury" requirement, explaining that:

> Congress may "elevate to the status of legally cognizable *injuries* concrete, de facto *injuries that were previously inadequate in law*" . . . Congress . . . [C]an also recognize and provide legal remedies for *concrete injuries* that already exist, but *for which there is no cause of action*.

*Muransky*, 979 F.3d at 925 (emphasis added, citations omitted). Contrary to Defendants' suggestion, courts do not focus on the legal elements of common law claims, but instead on whether the harm or injury that Congress sought to remedy is a real injury: "To establish standing, an injury in fact must be concrete. "A 'concrete' injury must be 'de facto'; that is, it must actually exist," as opposed to being hypothetical or speculative."  *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019) (citation omitted); *see Muransky*, 979 F.3d at 929 ("a '*bare procedural violation*, *divorced from* any *concrete harm*' is not enough to establish an Article III injury.") (emphasis added).[5]

---

[5]     The statute at issue in *Muransky* ("FACTA") prohibits publication of more than six digits of a credit card account number on a receipt. Although the defendant violated FACTA by exceeding the allowed number of digits, Muransky did not allege that anyone other than he had ever seen the offending receipt. *See Muransky*, 979 F. 3d at 930.

There is no dispute that Cuba's uncompensated taking of property cut-off legal title. Defendants' citation to *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1254–55 (11th Cir. 2006) ("*Club Med*"), adds nothing to their standing argument. There is simply no question that: "Congress may 'elevate' ***harms that 'exist' in the real world*** before Congress recognized them ***to actionable legal status***." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (emphasis added). That is of course what Congress, and the President, did when enacting the HBA. Congress also made express findings that explain its reasons for the creation of the statutory right at issue here:

> (1) Individuals enjoy a fundamental right to own and enjoy property which is enshrined in the United States Constitution.
> . . .
> (8) The international judicial system, as currently structured, lacks fully effective remedies for the wrongful confiscation of property and for unjust enrichment from the use of wrongfully confiscated property by governments . . ..
> . . .
> (10) The United States Government has an obligation to its citizens to provide protection . . . including the provision of private remedies.

*See* 22 U.S.C § 6081. Congress's findings demonstrate that it was intent on creating a statutory remedy for the harm suffered by victims of Cuba's uncompensated takings. Again, "***Congress*** passed the Act, in part, because it ***found the remedies for 'unjust enrichment from the <u>use of</u>*** wrongfully confiscated property . . . ***by private entities at the expense of the rightful owners of the property***' to be ineffective." *de Fernandez*, slip op., at *4 (emphasis added) (citation omitted).

The limitation imposed on Congress by the standing doctrine is that Congress "may not simply enact ***an injury into existence***, using its lawmaking power to transform something that is ***not remotely harmful*** into something that is." *TransUnion*, 141 S. Ct. at 2205 (emphasis added). This explains why the *Muranski* plaintiffs did not have standing to sue. Although Congress validly enacted FACTA to provide a remedy for persons injured by a violation of the statute, "no one's identity is stolen at the moment a receipt is printed with too many digits." "The question, always,

is whether an injury in fact accompanies a statutory violation." *Muransky*, 979 F.3d at 930. Similarly, the *Transunion* plaintiffs injured by publication of false or misleading information had a claim under the statute at issue there. That was so even "when the OFAC alerts on the disseminated credit reports were only misleading and not literally false." *See TransUnion*, 141 S. Ct. at 2209. This because: "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate.. . . [T]he harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* It was only plaintiffs whose information had not been published at all that that had no claim. *Id.*

> *Muransky* teaches that:
>
>> [B]y looking to history, we can discern a concrete injury where the "intangible ***harm*** has a close relationship ***to a harm*** that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." The fit between a new statute and a pedigreed common-law cause of action need not be perfect, but we are called to consider at a minimum whether ***the harms*** match up between the two."

*Muransky*, 979 F.3d at 926 (emphasis added, citations omitted). This standard is readily met here. At common law, a taking of property without compensation is the essence of theft. *See Danopulos v. Am. Trading II, LLC*, 69 N.E.3d 157 (Ohio Ct. App. 2016). The true owner has then a claim for conversion: "Conversion is a common-law tort relating to the wrongful exercise of dominion over property in exclusion of the owner's right, or the withholding of property from the owner's possession under a claim inconsistent with the owner's rights." *Id.* at 159. And, significantly: "Under the common law, a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the

possession of the goods against 'the rightful owner.'"[6] *Id.*  The common law also prevented the government from taking land without compensation. *See Appeal of Lord*, 368 Pa. 121, 124–25, 81 A.2d 533 (1951).[7]

The harm that Congress sought to remedy, the uncompensated taking of property, is obviously not some theoretical or "procedural" harm. It is true that there is no claim for "conversion" of real property at common law. By its nature, of course, real property is not mobile. Cuba, however, is a foreign country whose totalitarian regime and uncompensated taking of property caused many U.S. Citizens to flee Cuba. The harm that the HBA seeks to remedy is a concrete harm analogous to harm recognized at common law. It has a direct analogue to common law remedies available to the owner of property taken either by theft or by government taking: "[O]ne who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'" *Danopulos*, 69 N.E.3d at 159.

The HBA does not attempt to take title back from the [not-so] innocent joint-venture partners or agents of the Cuban Government. But it does create a right intended at least in part to place victims of Cuba's takings in a position analogous to that of the true owner of stolen property – or that of an heir or successor to the true owner. Instead of requiring the "innocent" purchaser of property (or of a joint venture in property) stolen or taken without compensation by Cuba to return the property, Cuba's partner or vendee is required to compensate the true owner. Again: "The fit

---

[6]      *See also In re Newpower*, 233 F.3d 922, 928–29 (6th Cir. 2000) (noting the "long established at common law [rule] that a thief has no title in the property that he steals"); *Richardson v. Seattle-First Nat. Bank*, 38 Wash. 2d 314, 315–16, 229 P.2d 341, 342 (1951) ("At common law, except in the market overt, *a thief could convey no title to his vendee*.") (emphasis added).

[7]      *See Appeal of Lord*, 81 A.2d at 534–35 (noting that: "As the King's power decreased and the power of his nobles increased, slowly *the right*, first of the nobles and then *of every land owner to freely and absolutely own, possess and enjoy the land which he owned* in freehold*, became recognized by all as a sacred, absolute, inviolable right*.") (emphasis added).

between a new statute and a pedigreed common-law cause of action need not be perfect." *Muransky*, 979 F.3d at 926. Here, "Congress did indeed 'elevate to the status of legally cognizable' a harm that has traditionally been regarded as providing a basis for a lawsuit in American courts: the harm of unjust enrichment. 'The equitable doctrine of unjust enrichment rests, generally, on the principle that a party should not be allowed to enrich himself at the expense of another.' . . . Congress itself recognized the relationship between unjust enrichment and claims under the [HBA], finding that '[t]he international judicial system, as currently structured, lacks fully effective remedies ... for unjust enrichment from the use of wrongfully confiscated property by governments and private entities at the expense of the rightful owners of the property.'" *Moreira v. Societe Generale*, ---F.Supp. 3d---, 2021 WL 5524484, at *4 (S.D.N.Y. Nov. 24, 2021) (citations omitted). Nor, contrary to Defendant's insistence, is there any doubt that "the harms match-up between the two." Cuba's joint venture partners and agents are in the exact position of someone who acquires property from a thief, even if innocently.

### B. Defendants Caused the Injury That Plaintiffs Seek to Remedy

Defendants finally try to salvage their standing argument by pointing to the "causation element." According to Defendants, causation is missing because "the injury that is sought to be remedied was caused, not by" Defendants, but rather by "'the independent action of some third party not before the court,'" i.e., presumably, by Cuba. Again, that is plainly wrong as well as misleading. Defendants must the remedy the harm caused by their own trafficking in the confiscated RRHSC Property. As this court made clear: "***Congress*** passed the Act, in part, because it ***found the remedies for 'unjust enrichment from the*** <u>***use of***</u> wrongfully confiscated property . . . . ***by private entities at the expense of the rightful owners of the property***' to be ineffective." *de Fernandez*, slip op., at *4 (emphasis added) (citing 22 U.S.C. § 6081(8)). *See also Sucesores*, 2021

WL 6065758, at *7 ("Congress identified an **_injury produced by later exploitation of confiscated_**

**property,** **_which it_** **_expressly distinguished from_** **the harm of the initial confiscation**: 'unjust

enrichment from the use of wrongfully confiscated property by governments and private entities

at the expense of the rightful owners of the property' . . ..") (emphasis added) (citing 22 U.S.C. §

6081(2), (8)). Nor can Defendants negate causation by pointing to the presumptive damages

allowed under the HBA. Defendants have not, and on their facial challenge to standing under the

HBA, cannot establish that the damages allowed under the HBA are unrelated to their unjust

enrichment through use of the confiscated RRHSC Property. Defendants' standing arguments

cannot support dismissal.

## II. <u>Plaintiffs' Amended Complaint States a Claim Under the HBA</u>

Defendants also move to dismiss with a series of arguments under 12(b)(6). None of their

arguments can support dismissal.

### <u>Standard on Rule 12(b)(6) Motion</u>

> When considering a motion to dismiss under 12(b)(6), a court "must
> accept as true all factual allegations contained in the complaint, and
> plaintiffs should receive the benefit of all favorable inferences that
> can be drawn from the facts alleged. *Iqbal*, 556 U.S. at 678, 129
> S.Ct. 1937; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th
> Cir. 2012). A court considering a Rule 12(b)(6) motion generally is
> limited to the facts contained in the complaint and attached exhibits
> but also may consider documents referred to in the complaint that
> are central to the claim and whose authenticity is undisputed. *See*
> *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 959 (11th Cir.
> 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate
> unless it appears beyond doubt that the plaintiff can prove no set of
> facts in support of his claim which would entitle him to relief."
> *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (cleaned
> up).

*In re Mednax Services, Inc., Customer Data Sec. Breach Litig*., 21-MD-02994-RAR, 2022 WL

1468057, at *3 (S.D. Fla. May 10, 2022).

Nor can Defendants base their 12(b)(6) arguments on facts outside of the SAC by pointing

to matters asserted in affidavits filed by Habanos in support of jurisdictional arguments:

> A district court should decide a motion to dismiss under Rule 12(b)(1) only " '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.' "Turcios, 275 F. App'x at 880 (quoting Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir.2003)). However, ***when the facts necessary to sustain jurisdiction are necessarily intertwined with the merits of the cause of action***, " '***the proper course of action for the district court is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case***.' " Id.

*Waziry v. HR Club Mgmt., LLC*, 13-60333-CIV, 2013 WL 3834392, at *2 (S.D. Fla. July 24,

2013) (emphasis added).

### A. Defendants' Improper Invocation of their Affirmative Defense of Limitations Does Not Support Dismissal

Defendants next argue that Plaintiffs claims should be dismissed due to a statute of

limitations. The argument misconstrues the law, the complaint, and the rules governing motions

to dismiss. Defendants first say that a claim under the HBA "may not be brought more than 2 years

after the trafficking giving rise to the action has ceased to occur." 22 U.S.C. § 6084. While the

body of the statute is accurately quoted, Defendants fail to acknowledge that it is expressly titled

"Limitation of actions." Nor does Defendants' limitations argument provide a basis for dismissal.

Defendants state that that they call "the sole factual allegation on that topic" is supposedly that

"Habanos, S.A. was using the RRHSC Property in February 2010." They then insist that "Plaintiffs

cannot "circumvent" Section 6084 by asserting upon 'information and belief' that Habanos, S.A.

has continually used the RRHSC Property since 2010." *See* Motion at 12.

Defendants' argument attempts to manufacture a requirement that Plaintiffs plead that the

Property was in continuous use. But there is no basis for any such requirement. Defendants do not

explain why Plaintiffs would be required to plead anything more than that the Property was used,

and otherwise "trafficked" as defined in the HBA. Nor can they. First, the law is clear that, with respect to statute of limitations:

> 'A ***statute of limitations bar is an affirmative defense***, and ***plaintiffs are not required to negate an affirmative defense in their complaint***.' *Id.* (quotation marks, ellipsis, and alterations omitted). As a result, '[a] dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.'

*Roberts v. Carnival Corporation*, 824 Fed.Appx. 825 (11th Cir. 2020) (emphasis added) (quoting La *Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Plaintiffs did not plead that Defendants use of the Property ceased in 2010 nor at any other time before October 2020, when Plaintiffs believe that Imperial sold its interest in Habanos. Defendants' accusation that Plaintiffs are attempting to "circumvent Section 6084" is wrong and baseless. This is nothing more than an attempt to require Plaintiffs to negate Defendants affirmative defense. Again, Defendants provide no basis for such a requirement. Without more, this argument fails.

Defendants' argument is not improved by their assertion that Plaintiffs cannot plead on 'information and belief.' Because Defendants have provided no basis for requiring any pleading at all regarding their affirmative defense, Plaintiffs' supposed failure to properly plead matters on information and belief cannot serve to create a non-existent requirement to plead at all. Indeed, Defendants' citation to *Moreira*, 2021 WL 5524484, confirms that Plaintiffs have no obligation to plead timeliness and that failure to do so precludes dismissal. *See Moreira* at *6. Significantly, the *Moreira* court concluded that dismissal there was appropriate precisely because the plaintiffs there "explicitly allege that Defendants' trafficking conduct ended more than a decade ago." *Id.* The *Moreira* plaintiffs alleged: "SocGen processed at least 2,500 transactions . . . ***between 2004 and 2010***"; "[F]rom at least ***2000 to 2010***, Paribas offered U.S.-dollar financing to Cuban entities." *See Moreira, id.*, quoting plaintiffs' complaint. ¶¶ 37 & 43 (emphasis added). In sharp contrast, there

are no allegations in Plaintiffs' SAC that Defendants ever stopped trafficking in the RRHSC Property. To the contrary, Plaintiffs expressly plead that all Defendants trafficked in the RRHSC Property from at least 2010 through October 2020.  *See* SAC, ¶ 17[8]; *see also id*., ¶ 21.[9] Defendants further assertion that Plaintiffs somehow plead that their use of the Property stopped in 2010 or at any other time is baseless. Nor is it supported by their citation to paragraph 20 of the SAC, which merely refers to a 2010 "publicity piece" that expressly refers to the RRHSC Property.

Finally, Defendants' suggestion that photographs attached to complaint somehow support a limitations defense on their face is nothing more than an improper attempt to reverse the black letter rule that inferences from a complaint must be viewed favorably to Plaintiffs on Defendants' Rule 12(b)(6) motion. That a photograph was taken on a particular date may not necessarily support that use of the Property continued after that date. It certainly cannot support the opposite proposition – that use stopped on any particular date after the photograph was taken. Defendants' reference to an Internet blog on which a picture may have appeared also does not support dismissal. To be clear Plaintiffs do not concede authenticity of the blog and do not agree consideration of any blog on this Motion. Defendants' limitations arguments also cannot support dismissal.

### B.  Defendants are Not Excused from the HBA by Habanos' Trafficking

Defendants next argument for dismissal attempts to turn the HBA on its head. There is no dispute that one of the main goals, if not the principal goal, of Congress when passing the HBA.

---

[8]      Alleging that: "At all times from January 2008 until at least October 29, 2020, Imperial, both through Habanos and the other Cuban Joint Ventures, as well as through the Cuban tobacco monopoly company, Tabacuba, Imperial's joint-venture partner in Habanos, had the use of, and continued to use, the RRHSC Property."

[9]      Alleging that: the WPP Defendants and their affiliates "are part of a complex network that share resources and operate as a single entity" and "continuously trafficked in the RRHSC Property by marketing and publicizing the Cuban tobacco products made, stored, shipped or managed from the RRHSC Property since at least 2010 through October 2020."

> It is the purpose of statute **to deter third party foreign investors from trafficking in the confiscated property** (defined as '**purchas[ing] an equity interest in, manag[ing], or enter[ing] into joint ventures** using property and assets some of which were confiscated from United States nationals.')

*Glen v. Club Mediterranee S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) (emphasis added) (quoting 22 U.S.C. § 6081(5)); *see also* 22 U.S.C. § 6081(5) ("The Cuban Government is offering foreign investors the opportunity to purchase an equity interest in, manage, or enter into joint ventures using property and assets some of which were confiscated from United States nationals."); *id*. at (11) ("To deter trafficking in wrongfully confiscated property, United States nationals who were the victims of these confiscations should be endowed with a judicial remedy in the courts of the United States that would deny traffickers any profits from economically exploiting Castro's wrongful seizures.").

Defendants nevertheless argue that, because Habanos – the very type of the joint venture arrangement that the HBA intends to deter – was involved in the trafficking alleged by Plaintiffs, Defendants' trafficking somehow ceases to be trafficking.  In support, Defendants cite to a portion of the HBA definitions, but ignore the ones that are directly on point. Defendants' argument again ignores the statute and governing law. The Eleventh Circuit in *In Re Shek*, 947 F.3d 770 (2020), recently discussed guidelines for statutory interpretation:

> Statutory provisions are not written in isolation and do not operate in isolation, so we cannot read them in isolation. The plain meaning of a statutory provision derives not only from the "particular statutory language at issue," but also "the language and design of the statute as a whole." As one prominent treatise on statutory interpretation puts it, "[***c]ontext is a primary determinant of meaning***," and "[t]he entirety of the document thus provides the context for each of its parts." We must interpret statutes "harmoniously," reconciling separate sections so that they are compatible and not contradictory.

> Most importantly for present purposes, we must attempt to give effect to every word or provision in [in the statute]. . . . "Because legal drafters should not include words that have no effect, **_courts avoid a reading that renders some words altogether redundant_**." This surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a "clause, sentence, or word ... superfluous, void, or insignificant."

*Shek*, 947 F.3d at 776 – 77 (emphasis added, citations omitted).

The Eleventh Circuit's admonition applies with full force here. Defendants point to a single sub-paragraph in support of this argument. 22 U.S.C. § 6023(13)(B)(iv). Ignoring the obvious purpose of the statute and legislative findings, as well as paragraphs in the same statute that are directly on point, Defendants argue that Habanos, and its joint venture partner and agents, cannot "traffic" under the HBA because, under sub-paragraph (13)(B)(iv): "trafficking does not include 'transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba.'" *See* Motion at 15. The language quoted appears obviously designed to prevent claims against individual Cuban residents, other than government officials, living in residential property in Cuba that may have been confiscated by the government, unless the property was the subject of a certified claim.[10]

Sub-paragraph (13)(B)(iv) certainly does not mean that Congress wiped out the entire purpose of the HBA in a single definition. To the contrary, as demonstrated above, Defendants ignore two sections of the HBA definitions that make clear that the HBA, in fact, is not self-

---

[10]   *See* 22 U.S.C. § 6023(12)(B) ("For purposes of subchapter III of this chapter, **_the term "property"_** does not include real property used for residential purposes **_unless_**, as of March 12, 1996-- (i) the claim to the property is held by a United States national and the **_claim has been certified under title V of the International Claims Settlement Act_** of 1949; **_or_** (ii) **_the property is occupied by an official of the Cuban Government or the ruling political party in Cuba_**.") (emphasis added).

18

annihilating. Defendants' arguments completely ignore that, under the HBA, the Habanos joint venture controlled by Cuba is an "agency or instrumentality" of Cuba.[11] As a result, Defendant Habanos, Imperial's partner and the WPP Defendants' principal, therefore *is* the Cuban Government.[12] There is no provision in the HBA that excuses Defendants from their trafficking. This argument too cannot support dismissal.

### C.   Plaintiffs Properly Plead That Defendants Knowingly Trafficked in the RRHSC Property

Defendants also argue that Plaintiffs do not properly plead that they "knowingly" trafficked in the confiscated Property. This argument also ignores the complaint and the HBA. Plaintiffs agree that Defendants must "knowingly" traffic in the confiscated Property. *See* 22 U.S.C. § 6023(13)(A).[13] Nor do Plaintiffs merely plead that Imperial should generally have known that the tobacco industry as a whole was nationalized. Even though Imperial knows well that it was. To the contrary, again, one Defendant here is Habanos, an instrumentality of the Cuban Government

---

[11]   Under the HBA, "The term 'agency or instrumentality of a foreign state' has the meaning given that term in section 1603(b) of Title 28. *See* 22 U.S.C. § 6023(1); *see also* 28 U.S.C. § 1603 (a) ("A "foreign state" . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)"); *id*., § 1603 (b) ("An 'agency or instrumentality of a foreign state' means any entity-- (1) ***which is a separate*** legal person, ***corporate or otherwise***, ***and*** (2) which is an organ of a foreign state or political subdivision thereof, or ***a majority of whose*** shares or ***other ownership interest is owned by a foreign state*** or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . .  nor created under the laws of any ***third country***.") (emphasis added).

[12]   *See* 22 U.S.C. § 6023(5) (A) ("The term 'Cuban Government' ***includes*** the government of any political subdivision of Cuba, and any ***agency or instrumentality of the Government of Cuba***.") (emphasis added).

[13]   Defendants' citation to *Glen v American Airlines,* 2020 WL 4464665 and *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, at *331–33 (D. Del. 2021) as support for the argument that general allegations of knowledge are insufficient, also fails. This may be true in *American Airlines*, where the defendant American Airlines had a passive website selling hotel rooms. It may even be true in *Trip Advisor*, where the defendants were three groups of passive hotel websites and two credit card companies. But in the context of Plaintiffs' allegations, this argument cannot win the day.

that is statutorily deemed to be the Cuban Government itself, *and* a joint venture partner venture of Imperial. No further allegation of knowledge that the Cuban Government confiscated the RRHSC Property could possibly be necessary. And once more, Imperial cannot escape the knowledge of its joint venture partner, which should be deemed to be that of Imperial itself.  The same holds true for Habanos' agents, the WPP Defendants.

At a minimum, there is no basis for assuming that Imperial, which was well-aware of the HBA before purchasing its joint venture interests was unable to obtain information from its partner. The WPP Defendants too were well-aware of the HBA and had easy access to relevant records from their principal. In that regard, the HBA makes clear that the "knowingly" requirement "means with knowledge *or having reason to know*." See 22 U.S.C. § 6023 (13) (emphasis added). On their 12(b)(6) motion, Defendants are certainly not entitled to an inference that, despite express knowledge that their dealings in Cuba would be subject to the HBA, they failed to make inquiry of their owner, Cuba (Habanos), or of Habanos, their partner (Imperial) or principal (WPP). Certainly, Defendants had had "reason to know" that the information was readily available to them. Defendants' failure to so inquire, does not and cannot excuse their knowledge.

Finally, Plaintiffs expressly allege that, prior to commencing this action, Plaintiff provided a pre-suit demand "to Imperial, WPP, Y&R and BCW (and to Habanos in care of Imperial) stating . . . Plaintiffs' intention to commence this action and demanding that each Defendant immediately cease unlawfully trafficking in the RRHSC Property." Despite demand, however, "each Defendant continued to traffic in the confiscated RRHSC Property."  *See* SAC, ¶¶ 98 – 99. Similar allegations have been deemed sufficient to plead scienter "at the very least for the post-notice period." *See de Fernandez v. Seaboard Marine, Ltd*., 20-CV-25176, 2021 WL 3173213, at *8; *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 332 (D. Del. 2021) (same).

If more was somehow necessary, as Defendants acknowledge, Plaintiffs also plead that information about the confiscated Property was available to Defendants in corporate and property records. Defendants' complaint that the nature of such records is not described also does not help their cause. First, the corporate records are not only described, but the relevant excerpt is also attached as exhibit 5 to the SAC. The text of that exhibit is part of the publicly available Cuban "Official Gazetta." Plaintiffs allege and are certainly entitled to an inference that it was publicly available to Defendants. In relevant part, it provides that:

> First: The **Nationalization**, **by means of forced expropriation**, **is decreed**, **and** consequently **the Cuban State**, in complete authority, **is awarded all the interest in assets and business entities located in the national territory and the rights and actions arising from the exploitation of the same**, whatever the interest, title or mode of their ownership, of the following natural persons or judicial entities:
> . . . .
> 96. Ramón Rodriguez e Hijos, S. en C.

Official Cuban Gazetta (emphasis added). *See* translation at exhibit 5A. While Plaintiffs were unable to obtain property records, there is certainly no basis for assuming that they would be significantly different that property records generally available in most countries.

Defendants also cite to *Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F. 3d 1277, 1286–88 (11th Cir. 1999), for the proposition that "Cuban corporations—including specifically joint ventures—must be treated as separate and apart from the Cuban Government." Significantly, however, *Alejandre*, decided in 1999 did not arise under the HBA. To the contrary, the HBA expressly decrees that Cuban joint ventures, at least those controlled by Cuba as alleged here, *must* be treated as the Cuban Government under the HBA. *See* 22 U.S.C. § 6023(5) (A) ("The **term 'Cuban Government' includes** the government of any political subdivision of Cuba, and **any**

*agency or instrumentality of the Government of Cuba*.") (emphasis added). *See also* 22 U.S.C. § 6023(1); *see also* 28 U.S.C. § 1603.

Defendants finally contend that Plaintiffs have not alleged that "Defendants knew that a United States national held a claim to the RRHSC Property." *See* Motion at 19. This argument fails because there is no such requirement in the HBA. Nor could there be, as such a requirement would also effectively eliminate HBA claims. As there is no way that anyone could actually "know" who currently holds a claim, only perhaps who may have once held a certified claim. Instead, the statute actually states:

> (13) Traffics
>
> (A)  As used in subchapter III, and except as provided in subparagraph (B), *a person "traffics" in confiscated property if* that person knowingly and intentionally—
>
> (i)  *sells,* transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii)  *engages* in a commercial activity using or otherwise benefiting from confiscated property, *or*
>
> (ii)  *causes,* directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
>
> without the authorization of any United States national who holds a claim to the property.

*See* 22 USC § 6023 (13) (emphasis added). The structure of the statute makes clear that, in order to be deemed to have "trafficked" in confiscated property, a person must "knowingly" engage in the conduct described in subsections (13)(A)(i), (13)(A)(ii), *or* (13)(A)(iii) (emphasis added). There is no requirement in the statute that the trafficker knowingly acts "without the authorization

of any United States national who holds a claim to the property." To the contrary, that phrase was expressly kept outside of actual requirement of the statute which appear in numbered paragraphs ((13)(A)(i), (13)(A)(ii), *or* (13)(A)(iii)). And, of course, as demonstrated above, Defendants were undeterred after Plaintiffs expressly put Defendants on notice of Plaintiffs' ownership of the RRHSC Property and their intent to file this lawsuit. This argument also cannot support dismissal.

### D. Plaintiffs Properly Plead Ownership of the HBA Claim

#### 1. The HBA Does Not Require That Confiscated Property Have Been Held by a U.S. National at the Time it Was Confiscated

Defendants next argue that Plaintiffs do not plead that the RRHSC limited partnership "was a United States national. . . . Nor does the SAC allege that a United States national owned the limited partnership when it, too, was confiscated." *See* Motion at 21 - 22. While both are true, neither is required by the HBA. To the contrary, the HBA requires only that a United States national have "acquire[d] ownership of the claim before March 12, 1996." [14]  *See* 22 U.S.C. § 6082 (4)(B); *see also* 22 U.S.C. § 6023 (15) (defining U.S. Nationals as "*any*" U.S. citizen, without temporal requirement) (emphasis added); 22 U.S.C § 6081 (3)(iii) (acknowledging protection for "*Cubans who claimed asylum* in the United States as refugees because of persecution *and later became naturalized citizens of the United States*." (emphasis added).

Defendants also argue that the HBA must be deemed require that RRHSC was a U.S. National because: "Any taking by Cuba of property belonging to its own nationals implicates the domestic takings rule." Mot at 22. They also cite to *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703, 709–11 (2021), which held that Germany was "immune from claims arising from expropriations the Nazi regime committed against German nationals." Defendants' "domestic

---

[14]     Each Plaintiff is a U.S. Citizen who acquired an interest in the Claim before 1996. *See* SAC ¶¶ 27 – 33.

takings" arguments add nothing. First, the HBA does not purport to provide any claim against Cuba for its confiscation of domestic property. There is also no relevant "immunity" at issue. The *Sucesores* court expressly rejected a similar argument concluding: "Defendants' contention that international law affirmatively legitimates domestic takings . . . has no basis in law." The explained: "Because the domestic takings rule is rooted in the jurisdictional principle of sovereign immunity. . . the rule does not determine the substantive rights of those subject to a domestic taking." Rather, "[U]nder international law, the law of sovereign immunity from adjudication does not establish causes of action or create or destroy legal obligations[.]" *Sucesores*, 2021 WL 6065758, at *6 (citations omitted).

### 2. *Plaintiffs Properly Plead That They Own the HBA Cliam*

Defendants also argue that Plaintiffs do not own the claim at issue, because the Property was confiscated from RRHSC, not from Ramon Rodriguez Gutierrez ("RRG"). Defendants contend that, because RRG was a shareholder and not direct owner, he cannot assert the claim. This contention has been rejected by courts in this district. *See* Motion at 23 n. 17.  Further, it ignores the action confiscation at issue. As set out in exhibit 5A, the Cuban Government confiscated "extend[ed] the nationalization . . . to **as many assets**, business entities, **rights** and **stocks as are linked or related to those nationalized**, **whatsoever the form and title of the bond of affinity to the nationalized entities**." (Emphasis added). In other words, the Cuban Government ignored and destroyed the corporate form and took all possible rights of RRG, leaving RRHSC only a shell. The court in *Exxon Mobil Corp. v. Corporacion CIMEX S.A.*, 534 F. Supp. 3d 1, 27, discussing international expropriation explained that this type of total taking of all value does create a claim in the shareholders themselves. This reasoning applies here with equal force.

Defendants finally add that Plaintiff Forns cannot assert a claim because he inherited his claim after 1996. Plaintiffs acknowledge that reported HBA decisions have agreed. Plaintiffs submit, however, that Forns' Claim is valid under published (and, therefore, binding) Eleventh Circuit case law. *See U.S. v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("*In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law.*" (citing *James v. Home Constr. Co. of Mobile*, 621 F.2d 727, 729 (5th Cir.1980)). Like the FCA claim at issue there, neither the HBA nor its legislative history reveals the drafters' intent *with respect to survivability*. Like the claim at issue in James, the HBA claim is a remedial action. Therefore, survivability of the claim is governed by federal common law which expressly allows the transfer. Defendants also argue that the Claims held by Francisco Rodriguez, Raul Rodriguez and Cristina Conroy should be dismissed. But they acquired a portion of their claims before 1996. *See* SAC, ¶ 33. As a result, they have a claim no matter what. There is no basis for a partial dismissal of their claims.

## Conclusion

For the foregoing reasons and based on the cited authorities, the Court should deny the Motion to Dismiss.

Respectfully submitted,

| | |
|---|---|
| Rodriguez Tramont & Nuñez P.A. | Berenthal & Associates, P.C. |
| By: /s/ *Paulino A. Núñez Jr.* | By: /s/ *James L. Berenthal* |
| Paulino A. Núñez Jr. | James L. Berenthal |
| Florida Bar No. 814806 | Florida Bar No.126035 |
| Primary email: pan@rtgn-law.com | email: jlb@berenthalaw.com |
| 255 Alhambra Circle | 255 Alhambra Circle |
| Suite 1150 | Suite 1150 |
| Coral Gables, FL 33134 | Coral Gables, FL 33134 |
| Telephone: (305) 350-2300 | Telephone: (212) 302-9494 |

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on May 20, 2022, a copy of the foregoing was filed with the Clerk of Court using the CM/ECF system which will send a notification of the filing to all counsel and parties of record.

/s/ *<u>Paulino A. Núñez Jr.</u>*
Paulino A. Núñez Jr.

.