# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23287(DPG)(AMO)

LUIS MANUEL
RODRIGUEZ, et al.,

                    Plaintiffs,

      v.

IMPERIAL BRANDS PLC,
et al.,

                 Defendants.

_____

**PLAINTIFFS' RESPONSE TO DEFENDANTS
WPP PLC, YOUNG & RUBICAM LLC AND BCW LLC'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys, Berenthal & Associates, P.C. and Rodriguez, Tramont & Nuñez P.A., hereby respond in opposition to Defendants WPP plc ("WPP"), Young & Rubicam LLC ("Y&R") and BCW LLC ("BCW") (collectively, "WPP Defendants") Motion to Dismiss the Second Amended Complaint (the "Motion") (DE 229) and state as follows:

## PRELIMINARY STATEMENT

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of that property consisting of the former Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba ("RRHSC Property"). The Castro government confiscated ownership of RRHSC, which was then owned by Plaintiffs' ancestor Ramon Rodriguez Gutierrez ("RRG"), and as a consequence also confiscated the RRHSC Property, all without compensation to RRG. *See* Second Amended Complaint ("SAC") ¶¶1-4, [ECF No. 208]. Plaintiffs are the owners of a "Claim" created by the Helms-Burton Act ("HBA") to compensate victims of trafficking in property confiscated by the Cuban government without compensation.

In 2007 or 2008, Imperial entered into a joint venture with Cuba and its tobacco monopoly company, "Tabacuba." Habanos is a joint venture company controlled by Cuba with financial interests owned 50% by Imperial and 50% by Cuba. *See* SAC ¶7. At all relevant times[1], Imperial's joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively "manufacture[d], market[ed], distribute[d] and s[old] cigars manufactured in Cuba." *See* SAC ¶6.

---

[1] Imperial reportedly sold its Cuban Joint Venture interests in October 2020.

Imperial's joint venture partner, Tabacuba, is the Cuban tobacco monopoly company: "the only economic organization in the country that integrally directs tobacco activity in all phases of its production chain, from agriculture to marketing."[2]  Both Tabacuba and "La Vega" (the Cuban state tobacco leaf monopoly company) have offices in the confiscated RRHSC Property. See SAC ¶2. Imperial benefits directly from Tabacuba (and La Vega's) extensive use (trafficking) of the RRHSC Property for management of the day-to-day business of all Cuban tobacco. See id., ¶¶ 8, 9, 10, 80, 81, 82 and 91.  Imperial and Habanos have "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA.[3]

Beginning as early as 2010 Imperial and Habanos also retained WPP through its subsidiary advertising agencies. Beginning in 2017, Imperial and Habanos' commercial activity using or otherwise benefiting from the confiscated Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated, with Y&R and BCW's assistance, by the use of sponsored official social media "portals" operated by Twitter, Instagram and YouTube.  SAC ¶22.  The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC Property. *See* SAC ¶ 12. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law.[4]

---

[2] *See* http://www.tabacuba.com.cu/en_us/info/nuestra-fortaleza-es-la-herencia

[3] The unauthorized use of the Property by Imperial and Habanos extended to Tabacuba's management of the day-to-day business of all Cuban tobacco products from offices it maintained in the RRHSC Property at all times from 2008 until at least October 29, 2020. See SAC ¶ 11 This included use of a portion of the Property by Tabacuba, for its executive offices, and the use of the loading dock and space for warehousing and shipping Habanos' products. See id., ¶ 79.

[4] The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. See 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services

The WPP Defendants at all times acted as agents of Imperial or Habanos for the purpose of advertising, marketing and promoting Cuban Cigar products and the Habanos Brand name. The WPP Defendants together with other WPP subsidiaries, operate as a single company, (the "WPP Group" "Young & Rubican Group" or similar). The entities under the WPP Group, including WPP, Y&R, BCW, are part of a complex network that share resources and operate as a single entity. *See* SAC, ¶ 21. The WPP Group, acting through Y&R and BCW, continuously trafficked in the RRHSC Property by marketing and publicizing the Cuban tobacco products made, stored, shipped or managed from the RRHSC Property since at least 2010 through October 2020. *See* SAC, ¶¶ 82 – 83.

For the reasons set forth at length herein, the WPP Defendants are subject to this Court's jurisdiction, and should be held accountable for their trafficking as provided for under the HBA.

## LEGAL ARGUMENT

### STANDARD OF REVIEW

WPP Defendants filed the instant motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (lack of personal jurisdiction and failure to state a claim). *See* Motion (D.E. 229). When ruling on a motion to dismiss, the Court is bound to the four corners of the complaint (including any sources incorporated by reference. *Tung v. Dycom Indus., Inc*., 454 F. Supp. 3d

---

incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public at no cost to the user") (emphasis added); id., §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . organizations administered or controlled by the Government of Cuba.") (emphasis added); see also 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

1244, 1254 (S.D. Fla. 2020) citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Within the Eleventh Circuit, the Court is also permitted to consider an extrinsic document if it is central to plaintiff's claim and its authenticity is not challenged.[5] *Tung*, 454 F. Supp. 3d at 1254 (citing *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)). The Court must accept all factual allegations in the complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and should afford the Plaintiff every favorable inference   *Chames v. Calhoun Cnty. Comm'n*, 21-11651, 2022 WL 1217652, at *2 (11th Cir. Apr. 26, 2022).  To survive a motion to dismiss, the complaint need only contain enough factual matter, which accepted as true, states a claim to relief that is plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

## I.      THE COURT HAS JURISDICTION OVER THE WPP DEFENDANTS

### A.      *The WPP Defendants Trafficking Through U.S. Internet Services in Violation of U.S. Law*

Plaintiffs allege that the WPP Defendants, acting through various subsidiaries of WPP, Y&R and BCW, operate as a group for the purpose of providing marketing, advertising, and other services. *See* SAC, ¶ 2. The WPP Defendants also "purchase Internet, email, and other networking and telecom services in the United States ("US Services")." *See* SAC, ¶ 54. The WPP Defendants also used of their own U.S. Services as well as social media "portals" operated by Twitter, Instagram, and YouTube, and networking and other services provided through Microsoft, and other services sold by US companies to further the trafficking of the RRHSC Property by Habanos, the Cuban Joint Ventures and other Cuban Government entities. *See id*.

---

[5] While Defendants filed affidavits in relation to prior motions to dismiss, they did not do so here, and are limited to the facial validity of the SAC.

Of particular significance to the instant Motion, beginning in 2017, Imperial and Habanos' commercial activity using or otherwise benefiting from the confiscated Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated by Imperial and Habanos' use of official social media "portals" operated by Twitter, Instagram and YouTube. The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC Property. *See* SAC, ¶ 41.  The trafficking by WPP, Y&R and BCW at issue here is in the form of marketing, merchandizing, branding, or advertising services for the benefit of the Cuban government and the entities it controls, including Habanos and the Cuban Joint Ventures. *See* SAC, ¶ 55.

The trafficking was conducted, at least in part, through US websites, internet domains and other US Services, in violation of both the Liberty Act. This conduct is not exempted by the CACRs, which apply to all "person[s] subject to the jurisdiction of the United States," including corporations owned by U.S. companies, such as Y&R, BCW. . . and the subsidiaries those US companies own and control. The CACRs apply equally to WPP and its direct and indirect subsidiaries.  The use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) for the purpose of marketing, promoting and otherwise facilitating and furthering Imperial and Habanos' "trafficking" in the confiscated RRHSC Property is in violation of U.S. law.[6] The WPP Defendants' use of U.S. companies (or their subsidiaries, even if foreign-

---

[6]     The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public ***at no cost to the user***") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services

incorporated) as marketing and distribution agents to further Imperial and Habanos's trafficking is also in violation of U.S. law. [7]

As demonstrated below the WPP Defendants deliberate use, in violation of U.S. law, of U.S. websites operated by U.S. companies to traffic in the confiscated Property, subjects them to personal jurisdiction in Florida. Through these intentional acts, the WPP Defendants have damaged Plaintiffs, five of whom reside in this district. The WPP Defendants suggest that, despite having illegally used U.S. internet services in violation of U.S. law in furtherance of intentionally tortious conduct to damage to forum residents, this Court does not have personal jurisdiction over them. WPP Defendants are wrong. This Court has personal jurisdiction over them.

**II.     Defendants' Trafficking is Intentional Tortious Conduct Aimed at this Forum**

      ***A.  The Nature of Plaintiffs' HBA Claims***

As set out more fully in Plaintiffs' Opp. to Joint Motion, the HBA Claim is a legislatively created claim designed to compensate victims of Cuba's uncompensated confiscation of property when the confiscated property is used by Cuba's joint venture partners and other who assist it in trafficking. The remedy available under the HBA is analogous to the remedy available to the true owner, or heirs or successors of the true owner, of stolen property who has a claim for conversion.

---

are intended for . . . ***organizations administered or controlled by the Government of Cuba***.") (emphasis added); *see also* 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

[7]     *See* 31 C.F.R § 515.206 (excluding from "exempt transactions" the: "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

And, significantly: "a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'"   At common law, a taking of property without compensation is the essence of theft. *See Danopulos v. Am. Trading II, LLC*, 69 N.E.3d 157 (Ohio Ct. App. 2016). The true owner has then a claim for conversion: "Conversion is a common-law tort relating to the wrongful exercise of dominion over property in exclusion of the owner's right, or the withholding of property from the owner's possession under a claim inconsistent with the owner's rights." Id. at 159. And, significantly: "Under the common law, a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'"   *Id*.   The common law also prevented the government from taking land without compensation. *See Appeal of Lord*, 368 Pa. 121, 124–25, 81 A.2d 533 (1951).

The harm that Congress sought to remedy, is not some theoretical or "procedural" harm. It is true that there is no claim for "conversion" of real property at common law. By its nature, of course, real property is not mobile. Cuba, however, is a foreign country whose totalitarian regime and uncompensated taking of property caused many U.S. Citizens to flee Cuba. The harm that the HBA seeks to remedy is a concrete harm analogous to harm recognized at common law. It has a direct analogue to common law remedies available to the owner of property taken either by theft or by government taking: "[O]ne who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'" The HBA also adds the requirement that the trafficking in the confiscated property is done "knowingly,"  i.e., "with knowledge or having reason to know."

8

B.     The WPP Defendants are Responsible for Trafficking by Habanos

As discussed more fully below, the relevant "jurisdictional contacts" at issue on this Motion is the WPP Defendants' conduct in facilitating Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) in violation of U.S. law. That conduct constitutes "trafficking" as defined in the HBA. *See* 22 U.S.C. § 6023(13)(ii).

The WPP Defendants intentional conduct assisted and furthered Habanos' trafficking. The WPP Defendants also profited from the trafficking. Under the HBA, therefore, the trafficking by Habanos is attributed to the WPP Defendants. In particular, under the HBA: "a person 'traffics' in confiscated property if that person knowingly and intentionally—

. . .

(ii)     causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person

*See* 22 USC § 6023 (13)(A)(ii)    (sic).

The conduct at issue constitutes "trafficking" as defined in § 6023 (13)(A)(i) or (ii). Therefore, under § 6023 (13)(A)(ii) [second], the WPP Defendants are responsible for the trafficking whether they "cause[ed], direct[ed], participated in Habanos, or even if all they did was to "profit[] from trafficking" by or through Habanos.

This leads to the second reason why the WPP Defendants are responsible for the "trafficking" and "jurisdictional contacts" at issue. Imperial did not file affidavits or declarations and did not otherwise challenge the allegations of the Amended Complaint. Therefore, it is making a purely "facial" challenge. As Imperial acknowledges, "Because Imperial is making a purely

facial challenge, the Court's review is limited to the allegations in the Amended Complaint." See Motion at 5 n.4. Plaintiffs allege that Imperial directed or profited the conduct at issue. See Amd. Comp., ¶¶ 30, 37, 55, 57, 62 and 66. Including specifically the use of U.S. internet services operated by U.S. companies. See id., ¶¶ 11-12, 37, 54 and 55. In addition, Plaintiffs served Imperial directly with notice that its conduct constituted "trafficking" under the HBA before filing this lawsuit; Imperial nevertheless continued its trafficking. See id., ¶¶ 67 – 68. Finally, Imperial again and directly profited from the trafficking (and, therefore, again "trafficked" under (13)(A)(ii) [second]) when it sold its interests in the Cuban Joint Ventures. *See* SAC, ¶¶ 98 – 99.

WPP Defendants argue that (a) WPP cannot be subject to specific jurisdiction for acts attributed to Y&R and/or BCW, and (b) Y&R and/or BCW's actions do not subject them to specific jurisdiction in this forum.   As discussed more fully below, the relevant "jurisdictional contacts" at issue on this Motion is the use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) in violation of U.S. law. That conduct constitutes "trafficking" as defined in the HBA. See 22 U.S.C. § 6023(13)(ii).

WPP's argument fails for two reasons. First, under the HBA, all trafficking by Y&R and BCW are attributed to WPP.  In particular, under the HBA: "a person 'traffics' in confiscated property if that person knowingly and intentionally  –

> (iii) causes, **directs**, participates in, **or profits from**, **trafficking** (as described in
>
> clause (i) or (ii)) **by another person**, or otherwise engages in trafficking (as
>
> described in clause (i) or (ii)) **through another person**

*See* 22 U.S.C. §6023(13)(A)(iii) (emphasis added). Therefore, under § 6023(13)(A)(iii), WPP is responsible for the trafficking even if all that WPP did was to "profit from trafficking" by or

through the other WPP Defendants.

Second, the WPP Defendants chose not to file affidavits or declarations for the instant motion to dismiss and did not otherwise challenge the allegations of the SAC, thus making their motion a purely "facial" challenge and the Court's review is limited to the allegations in the Amended Complaint."  Insofar as the WPP Defendants impliy that certain allegations are conclusory, Plaintiffs have submitted additional facts to clarify such allegations.  However as demonstrated herein, the SAC properly alleges both a claim of trafficking under the HBA and a claim of jurisdiction over the WPP Defendants.

III.    WPP, Y&R, AND BCW ENGAGED IN TRAFFICKING AS DEFINED BY THE HBA

Pursuant to the HBA a person "traffics" in confiscated property if, *inter alia*, that person "knowingly and intentionally":

> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, property; or
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,

. . . . 22 U.S.C. § 6023 (emphasis added).

It is undisputed that two entire floors of the RRHSC Property are used by Tabacuba (Núñez Decl.[ECF No. 89-6] ) and that Tabacuba is the Cuban monopoly that "integrally directs tobacco activity in all phases of its production chain, from agriculture to marketing."[8]  There is no dispute that at the very least, Tabacuba is trafficking in the RRHSC Property.  As a consequence, every

---

[8]   http://www.tabacuba.com.cu/en_us/info/nuestra-fortaleza-es-la-herencia/  last   visited June 9, 2021.

leaf of tobacco grown, cultivated, sold and or marketed in or from Cuba, including those leaves used by Habanos, is overseen and controlled by Tabacuba, which uses the RRHSC Property to conduct its operations.

The SAC properly pleads that the WPP Defendants assisted Imperial, Habanos and Tabacuba in marketing, advertising or promoting the confiscated RRHSC Property. (SAC ¶12, 14, 96).   Contrary to the WPP Defendants' the SAC properly alleges that the WPP Defendants illegally trafficked under §6023(13)(A)(ii) and (iii) by engaging in commercial activity that benefits from confiscated property and by causing, directing, participating in, or profiting from trafficking.[9]

The crux of WPP Defendants' argument is that the HBA creates a wide net of liability by holding each company that received money from traffickers in connection with trafficked property liable for trafficking.  (Motion 14-18)   The WPP Defendants go so far as to propose a brightline rule "With no connection to the confiscated property, there can be no trafficking." (Motion at 17). While the WPP Defendants may object to the law, it is clear that Congress intended the HBA to hold such secondary actors liable for trafficking, and the Courts have consistently upheld this basis of liability.   "[T]he allegations of participation and profit are sufficient to show trafficking. *Havana Docks Corp. v. Carnival Corp.*, 19-CV-21724, 2022 WL 831160, at *44 (S.D. Fla. Mar. 21, 2022), *motion to certify appeal denied sub nom*. *Havana Docks Corporation* v. *Bloom/Mcaliley Carnival Corporation* ., 19-CV-21724, 2022 WL 1522007 (S.D. Fla. May 13, 2022).

---

[9]   The SAC alleges that the WPP Defendants causes, directs, participates and/or profits from trafficking (SAC ¶45) and it also alleges that the WPP Defendants acted as agents of Imperial or Habanos for advertising, marketing and promoting Cuban Cigar products and the Habanos Brand name, such acts are defined as commercial activities (SAC ¶14, 42)

"'[T]rafficking' in confiscated property provides badly needed financial benefit, *including hard currency*, oil, and productive investment and expertise, to the current Cuban Government" 22 U.S.C. § 6081(6) (emphasis added). "Trafficking undermines the foreign policy of the United States" (id.), a clear reference to the embargo against Cuba.  Most important, the HBA exists to provide the "victims of these confiscations . . . with a judicial remedy . . . that would deny traffickers any profits from economically exploiting Castro's wrongful seizures."  22 U.S.C. 6081(11).  There can be no doubt, HBA was created to stop hard currency from entering Cuba, and to deprive traffickers of profits related to the trafficked goods, even the secondary, tertiary and more remote traffickers) who profit from the wrongful seizures.  If a defendant profits from trafficking by another person or is otherwise engaged in trafficking through another person they have engaged in trafficking under 22 U.S.C. § 6023(13)(A)(iii). *See de Fernandez v. Crowley Holdings, Inc.*, 21-CV-20443, 2022 WL 860373, at *5 (S.D. Fla. Mar. 23, 2022).  The SAC properly pleads that the WPP Defendants have profited from their commercial activities in promoting those cigar products which a product of Imperial, Habanos and Tabacuba's trafficking in the RRHSC Property.  *See* SAC ¶12, 14, 19, 45, 57, 58, 59, 61 and 96.

Particularly on point is properties is *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022).  In *Glen*, plaintiff's grandfather owned beachfront properties in Varadero Cuba that were confiscated by the Cuban government without compensating Glen's grandfather (or successors).  At the time Glen brought the action, the property was home to four resort hotels. Glen brought an action against American Airlines for operating a website "BookAAHotels.com", that offered its users the option to reserve hotel rooms at these luxury hotels.  American Airlines was not occupying the hotels, but rather advertising

these hotels and acting as a booking agent for use of these hotels. American Airlines argued that it was not responsible for confiscating the property or for the operation of the hotels. American Airlines also argued that as it only made $503.18 in profit, it should not be liable for damages in the amount of three times the value of the property.   Although it concluded for other reasons that Glen could not assert an HBA claim, the Fifth Circuit agreed that Glen's injury was traceable to American, even though the injury was separate from confiscation or use of the property.  All that is required is a "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022).

IV.     THE COURT HAS SPECIFIC JURISDICTION OVER THE DEFENDANTS

Plaintiffs have plead that each Defendant committed a tortious act in this state, either directly or through an agent, and the cause of action asserted against each Defendant arises from that tortious conduct.  F.S. § 48.193(1)(a).  SAC ¶2.  Further, where, as here, the claim asserted against the defendant arises under federal law, if any defendants' personal contacts with a single state are not sufficient to subject them to personal jurisdiction in any state, Rule 4(k) allows the Court to consider a defendant's contacts with the U.S.

As discussed *supra*, the claim created by the HBA is in the nature of a tort akin to unjust enrichment.  The HBA also adds a requirement that the statutory "trafficking" be done intentionally. As such, the claim is in the nature of an intentional tort and should be treated as such for purposes of analyzing personal jurisdiction. See *Louis Vuitton Malletier, S.A. v. Mosseri*, 736

14

F.3d 1339, 1353 (11th Cir. 2013) (concluding that "trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute."). The HBA claim at issue arises under federal law and does not have a direct analogue under state or other federal statutes. Recent cases are clear, however, that a defendant's physical presence in the forum is not necessary for an exercise of personal jurisdiction. *See Mosseri*, 736 F.3d at 1353 – 54 (discussing the Florida long-arm statute). Further, if it is not otherwise subject to jurisdiction in any individual state, service against WPP is proper under Fed. R. Civ. Pro. 4(k) because claim arises under federal law and the.   "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4.  The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019) after discussing recent cases found, personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. *See id*. at *5.

A claim under the HBA is significantly different that other claims such as trademark infringement involving questions of jurisdiction and use of the internet. The HBA defines "trafficking" to include essentially all commercial use of confiscated property.  *See* 22 U.S.C. § 6023(13)(A)(i)-(iii). Here the specific conduct at issue is the WPP Defendants' use of U.S. internet services and social media portals operated by U.S. corporations for the purpose of trafficking.  This is not a case like the many that the Defendants cite involving websites that can generally be accessed from anywhere. The WPP Defendants expressly contracted with U.S. companies such as Twitter and Facebook for the use of their U.S. based internet services. More importantly, the WPP

Defendants' trafficking through U.S. internet services operated by U.S. corporations is directly prohibited by law, including the Cuban Asset Control Regulations ("CACRs"). When the WPP Defendants illegally used internet services to further its trafficking of the Property in violation of the HBA, although they did so virtually, they deliberately entered the state (or the country) in order to further their unlawful trafficking. This conduct provides more than sufficient basis for subjecting the WPP Defendants to personal jurisdiction.

Nor is there any due process or other Constitutional impediment that prevents assertion of personal jurisdiction over the WPP Defendants. The U.S. Supreme Courts' recent decision in the recent case of *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), discussed the Constitutional standards at length. Discussing "specific jurisdiction" the Court explained:

> The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." ***The contacts must be the defendant's own choice and not "random, isolated, or fortuitous***. They ***must show that the defendant deliberately "reached out beyond" its home***—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff 's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

141 S. Ct. at 1024-25 (emphasis added, citations omitted). In the instant case, the WPP Defendants' conduct is particularly apt for the exercise of personal jurisdiction. By their "own choice" and not through any "random, isolated, or fortuitous," the WPP Defendants deliberately exploited a market.

Addressing the need for fairness, the Court made clear that:

> When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct. Later decisions have added that our doctrine similarly provides defendants with "fair warning"— knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

*Id*. at 1026 (citations omitted). Again, this applies with full force to the WPP Defendants and in particular WPP, which knew or should have known that use of U.S. persons to conduct its trafficking could "subject [it] to the jurisdiction of a foreign sovereign." The Court held that jurisdiction was proper in Montana because one plaintiff was injured there. Even though the allegedly defective car at issue was neither designed, manufactured nor sold by Ford in Montana.

Like the WPP Defendants, Ford argued that:

> [T]he needed link must be causal in nature: Jurisdiction attaches "**only if the defendant's forum conduct gave rise to the plaintiff 's claims.**" . . . And that rule reduces, Ford thinks, to locating specific jurisdiction in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle. On that view, the place of accident and injury is immaterial. . . .

> But Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff 's suit and a defendant's activities. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. **None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.** As just noted, our most common formulation of **the rule demands that the suit "arise out of _or relate to_ the defendant's contacts with the forum**." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But **again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff 's claim came about because of the defendant's in-state conduct**.

*Id.* at 1027 (emphasis added, citations omitted).

Again, the discussion applies directly to the issue at hand. Plaintiffs argue that jurisdiction in this forum is appropriate because of the WPP Defendants deliberate conduct in providing their U.S. internet services in order to further Imperial and Habanos' "trafficking" of Plaintiffs' Property.   There is no surprise, no unfairness, nor any Constitutional or other reason that the Court should apply to save WPP Defendants from their deliberate conduct. Nor is there any reason why jurisdiction in this District is inappropriate. As discussed in Plaintiffs' Opposition to the Defendants' Joint Motion to Dismiss, Congress expressly found that the Cuban Government, had forcibly confiscated property from thousands of U.S. Nationals, and thousands more who fled Cuba as refugees and became U.S. Nationals. That includes six of the seven Plaintiffs. It is also no surprise that the Plaintiffs would be found in South Florida, as the Court can take judicial notice of the many hundreds of thousands of local residents who fled here directly from Cuba or whose ancestors did so. As *the* Ford Court held, the place of the plaintiff's injury can indeed be the Constitutionally appropriate forum. In this regard as well, it is significant that Plaintiffs are directly damaged under the HBA when Imperial and Habanos trafficked in the Property through the WPP Defendants' efforts. The place of injury is plainly an appropriate forum.

V.      INSOFAR AS WPP CLAIMS IT IS NOT SUBJECT TO THE JURISDICTION OF ANY STATE, JURISDICTION IS PROPER UNDER FED. R. CIV. P. 4(k)(2)

While WPP's SEC filings state that it claims both London and New York as its headquarters, (SAC ¶13), it appears that WPP seeks to disclaim that it is subject to jurisdiction in any state within the United States. WPP makes clear that it does not acknowledge that is it subject to the general jurisdiction of any state in the United States. Fed. R. Civ. P. 4(k)(2) was designed for such a defendant.

18

Service of a summons on a defendant that is not subject to jurisdiction in any state's courts of general jurisdiction establishes personal jurisdiction over said defendant. *See* Fed. R. Civ. P. 4(k)(2). Contrary to Defendants' arguments, Plaintiffs have set forth a claim of WPP's minimum contact with the United States. Moreover, although it is the self-proclaimed "world leader in communications, experience, commerce and technology"[10] with reported revenues in 2020 of over £3,524,800,000 from the United States, (Ex. 13 Page 17, N. 2), and leased over 1,800,0000 square feet, (Ex. 13 Page 19), and earns more of its income from the U.S. than any other country (SAC ¶36), WPP would nevertheless have this Court believe that it lacks minimum contacts with the United States. Plaintiffs have certainly alleged sufficient contacts with the United States. SAC ¶¶20, 22, 23, 36 and 69.

"The Eleventh Circuit has recognized, '[i]f ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).' *Oueiss v. Saud*, 1:20-CV-25022-KMM, 2022 WL 1311114, at *12 (S.D. Fla. Mar. 29, 2022). *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (" A district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, '[i]f ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).'" (internal citations omitted). As WPP (and Imperial, and Habanos) has failed to identify a jurisdiction where it is subject to general jurisdiction, jurisdiction under Rule 4(k)(2) is appropriate.

VI.    THE CONSEQUENCE FOR TRAFFICKING DOES NOT VIOLATE THE FIRST

---

[10] https://www.wpp.com/about/our-history

AMENDMENT

The doctrine of constitutional avoidance requires that the court avoid passing on the questions of constitutionality unless such adjudication is unavailable. *See Clinton v. Jones*, 520 U.S. 681, 690 (1997) ("It has long been its considered practice not to decide abstract, hypothetical or contingent questions, . . . . or to decide any constitutional question in advance of the necessity for its decision, or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied . . . .or to decide any constitutional question except with reference to the particular facts to which it is to be applied . . . .") (citing *Alabama State Fed'n of Labor, Local Union No. 103, United Broth. of Carpenters & Joiners of Am. v. McAdory*, 325 U.S. 450, 461 (1945)) (Internal Citations Omitted).

The right to free speech is not absolute. "Any First Amendment interest which might be served by advertising during an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 9543949973(1973). While the advertisements and other activities taken by the WPP Defendants are not fully before the court at this time, and thus under the doctrine of avoidance, it is premature to rule on any constitutionality issue at this early juncture, advertisements which promote the use and purchase of trafficked goods (and that promote goods or activities that are prohibited by the United Stated long standing embargo against Cuba) are promoting illegal activities. The HBA can and does hold traffickers economically liable for participating in the trafficking, even if Defendants do so only in the course of carrying out what might otherwise seem

like ordinary commercial speech..

VII.   ANY CONFLATION BETWEEN ENTITIES WAS CAUSED BY DEFENDANTS

The WPP Defendants also complain that "Plaintiffs attribute actions to some undefined combination of WPP, BCW, Y&R, related corporate entities and unrelated third parties." (Motion at 19).  In fact, the "combination" is a direct result of WPP's actions.  As set forth in the complaint, Y&R, together with other subsidiaries of WPP ("affiliates"), operate as a single company, under the name "VMLY&R"; BCW, together with other subsidiaries of WPP, operate as a single company, under the names "BCW", "Young & Rubicam" and "Young & Rubicam Group"; WPP, Y&R, BCW (and the WPP Group) use the unincorporated trade name "Young & Rubicam Group," or "Y&R Group," (SAC ¶¶47- 54). That WPP has its subsidiaries operate under various names, and holds itself out as a single entity is, on its face, clearly deceptive to the public.  For example, while BCW, LLC registered to use the assumed name "Young & Rubicam Group" (Ex. ___), the same "Young & Rubicam Group" name was also used by Y&R and (according to BCW) by BCW, S.L. (Lombardo Depo. 134:16-136:1, Lombardo Ex. 8).

Contrary to Defendants' contentions, there is no issue of "Group Pleading." As acknowledged in the case cited by Defendants, group pleading is an issue when a complaint fails to give fair notice to each defendant of the claims against it. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1274 (11th Cir. 2019).  In the instant action, as in the *Quality Auto* case, "there is no problem with respect to 'some unnamed plaintiff'" and the allegations make clear that "each of the named Defendants is tortiously interfering in the manner alleged with the named Plaintiff[s]." *Id.* at 1275.  Each of the WPP Defendant had fair notice that they are each being accused of trafficking under the HBA.  Any confusion claimed by the

Defendants is a direct consequence of Defendants design to obfuscate and conflate corporate identities.

VIII.  IN THE EVENT THE COURT DETERMINES JURISDICTION IS LACKING THE COURT SHOULD TRANSFER THE ACTION TO NEW YORK

While Plaintiffs maintain that this Court has jurisdiction over the WPP Defendants, and that the instant action should proceed in the Southern District of Florida, should the Court conclude that jurisdiction is lacking, the Court has the authority to transfer the action to an alternate venue with jurisdiction.  *See* 28 USC §1631.  "Whenever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . . in which the action or appeal could have been brought at the time it was filed or noticed."  28 U.S.C. §1631.

A claimant under the HBA may only bring a claim for trafficking that occurred no more than two years prior to the commencement of the action.  22 U.S.C. §6084.  Dismissal of the action would materially prejudice the Plaintiffs as they would be barred from asserting claims for trafficking that occurred more than two years prior to the date of commencing a new action.[11] The interest of justice is, therefore, served by transferring the action to a circuit that has jurisdiction. Thus justice requires that, if the Court lacks jurisdiction, the Court transfer the action to such venue that does have jurisdiction. *See Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (statute of limitations is a factor in determining the interest of justice).

Y&R is subsidiary of WPP, with its headquarters and principal place of business at 3

---

[11] Since the action was first commenced, Imperial has divested itself of its interest in Habanos, and it is unknown if Y&R or BCW have continued to traffic in the last two years.

Columbus Circle, New York, a property owned by WPP, plc.  SAC ¶, Ex. 13 at 5, Ex. 14.  BCW is a subsidiary of WPP with its headquarters in New York, New York.  Lombardo Dec. II at ¶4. WPP, a public limited company organized under the jurisdiction of Jersey has its principal office at 3 World Trade Center, New York, New York.  SAC ¶36, n. 14, Ex. 13 at 1, 13, 17.  Therefore, each of the WPP Defendants are headquartered the Southern District of New York.  *See Daimler AG v. Bauman*, 571 U.S. 117, 157 (2014) ("The majority does not dispute that a State can exercise general jurisdiction where a corporate defendant has its corporate headquarters, and hence its principal place of business within the State.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety. And alternatively, should the Court find that personal jurisdiction is lacking, that the Court transfer the instant action to the United States District Court for the Southern District of New York, and allow such court to determine the remaining portions of the Motion.

## **REQUEST FOR HEARING**

Due to the novel and complex issues that are present in this recently activated area of law, Plaintiffs request a hearing on this motion.

Respectfully submitted,

**RODRIGUEZ TRAMONT & NUÑEZ P.A.**

By: ___/s/ Paulino A. Núñez Jr._____
    Paulino A. Núñez Jr.
    Florida Bar No. 814806
    Primary email: pan@rtgn-law.com
    255 Alhambra Circle
    Suite 1150
    Coral Gables, FL 33134

**BERENTHAL & ASSOCIATES, P.C.**

By:: ___/s/ David W. Berenthal_____
    David W. Berenthal
    Florida Bar No. 159220
    E-mail: dwb@berenthalaw.com
    45 East 72nd Street
    Suite 5C
    New York, NY 10021

Telephone: (305) 350-2300                    Telephone: (212) 302-9494