**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-23287(DPG)(AMO)

LUIS MANUEL
RODRIGUEZ, et al.,

                 Plaintiffs,

     v.

IMPERIAL BRANDS PLC,
et al.,

               Defendants.

_____

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT IMPERIAL BRANDS PLC'S**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs, by and through their attorneys, Berenthal & Associates, P.C. and Rodriguez, Tramont & Nuñez P.A., hereby submit this memorandum of law in opposition to the motion under Rule 12(b)(2) and (6) ("Motion") filed by Imperial Brands plc ("Imperial") to Dismiss the Second Amended Complaint (the "Motion") (DE 226) and state:

<u>**Preliminary Statement**</u>

### A.   *Plaintiffs' Claim*

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of the Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba (collectively the "RRHSC Property"). The Castro government confiscated ownership of RRHSC, which was then owned by Plaintiffs' ancestor Ramon Rodriguez Gutierrez ("RRG"), and thereby also confiscated the RRHSC Property, all without compensation to RRG.  See Second Amended Complaint ("SAC") ¶¶1-4, [ECF No. 208]. Plaintiffs are the owners of a "Claim" created by the Helms Burton Act ("HBA") to compensate victims of trafficking in property confiscated by the Cuban government without compensation.

### B.   *Imperial's Trafficking in Plaintiffs' Confiscated Property*

In 2007 or 2008, Imperial entered into a joint venture with Cuba and its tobacco monopoly company, "Tabacuba." Habanos is a joint venture company controlled by Cuba with financial interests owned 50% by Imperial and 50% by Cuba. *See* SAC ¶7. At all relevant times[1], Imperial's joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively

---

[1] Imperial reportedly sold its Cuban Joint Venture interests in October 2020.

"manufacture[d], market[ed], distribute[d] and s[old] cigars manufactured in Cuba." *See* SAC ¶6. Imperial's joint venture partner, Tabacuba, is the Cuban tobacco monopoly company: "the only economic organization in the country that integrally directs tobacco activity in all phases of its production chain, from agriculture to marketing."[2] Both Tabacuba and "La Vega" (the Cuban state tobacco leaf monopoly company) have offices in the confiscated RRHSC Property. See SAC ¶2. Imperial benefits directly from Tabacuba (and La Vega's) extensive use (trafficking) of the RRHSC Property for management of the day-to-day business of all Cuban tobacco. See id., ¶¶ 8, 9, 10, 80, 81, 82 and 91. Imperial and Habanos have "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA.[3]

Beginning as early as 2010 Imperial and Habanos also retained WPP through its subsidiary advertising agencies. The WPP Defendants at all times acted as agents of Imperial or Habanos for the purpose of advertising, marketing and promoting Cuban Cigar products and the Habanos Brand name. *See* SAC ¶ 14. Beginning in 2017, Imperial and Habanos' commercial activity using or otherwise benefiting from the confiscated Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated, with Y&R and BCW's assistance, by the use of sponsored official social media "portals" operated by Twitter, Instagram and YouTube. *See* SAC ¶22. The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC

---

[2] *See* http://www.tabacuba.com.cu/en_us/info/nuestra-fortaleza-es-la-herencia

[3] The unauthorized use of the Property by Imperial and Habanos extended to Tabacuba's management of the day-to-day business of all Cuban tobacco products from offices it maintained in the RRHSC Property at all times from 2008 until at least October 29, 2020. See SAC ¶ 11 This included use of a portion of the Property by Tabacuba, for its executive offices, and the use of the loading dock and space for warehousing and shipping Habanos' products. See id., ¶ 79.

Property. *See* SAC ¶ 12. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law.[4]

For the reasons set forth herein, Imperial is subject to this Court's jurisdiction, and should be held accountable for its trafficking as provided for under the HBA.

## Legal Argument

### Standard of Review

Imperial filed the instant motion to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (lack of personal jurisdiction and failure to state a claim). *See* Motion (D.E. 226). When ruling on a motion to dismiss, the Court is bound to the four corners of the complaint (including any sources incorporated by reference. *Tung v. Dycom Indus., Inc*., 454 F. Supp. 3d 1244, 1254 (S.D. Fla. 2020) (citing *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). The Court may consider an extrinsic document if it is central to plaintiff's claim and its authenticity is not challenged.[5] *Tung*, 454 F. Supp. 3d at 1254 (citing *Speaker v. U.S. Dep't of Health & Hum. Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)). The Court must accept all factual allegations in the

---

[4] The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" ***but only if*** "***such services are widely available to the public at no cost to the user***") (emphasis added); *id*., §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . organizations administered or controlled by the Government of Cuba."); *see also* 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

[5] While Defendants filed affidavits in relation to prior motions to dismiss, they did not do so here, and are limited to the facial validity of the SAC.

4

complaint as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and should afford the Plaintiff every favorable inference  *Chames v. Calhoun Cnty. Comm'n*, 21-11651, 2022 WL 1217652, at *2 (11th Cir. Apr. 26, 2022).  To survive a motion to dismiss, the complaint need only contain enough factual matter, which accepted as true, states a claim to relief that is plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I.     The Court Has Jurisdiction Over Imperial

### A.     *Imperial's Trafficking Through U.S. Agents and U.S. Internet Services in Violation of U.S. Law*

Beginning in 2017, Imperial and Habanos' commercial activity using or otherwise benefiting from the confiscated RRHSC Property, i.e., "trafficking" see 22 U.S.C. § 6023(13)(ii), was furthered and facilitated by Imperial and Habanos' use of official social media "portals" operated by Twitter, Instagram and YouTube. The portals were used to market products produced, shipped, or stored at or from the confiscated RRHSC Property. *See* SAC ¶ 41. Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) is in violation of U.S. law.[6]

This conduct is not exempted by the CACRs, which apply to all "person[s] subject to the

---

[6]      The Habanos-sponsored official social media "portals" established by Twitter, Instagram, and YouTube are not exempted by the HBA nor by the Cuban Assets Control Regulations, 31 C.F.R. Part 515. *See* 31 C.F.R. § 515.578(a) (authorizing the exportation to Cuba of "services incident to the exchange of communications over the internet, such as . . . social networking [and] sharing of photos" but only if "such services are widely available to the public ***at no cost to the user***") (emphasis added); *id.*, §515.578(b)(1) (expressly excluding from authorized services the: "direct or indirect exportation . . . of services with knowledge or reason to know that such services are intended for . . . ***organizations administered or controlled by the Government of Cuba***.") (emphasis added); *see also* 31 C.F.R § 515.206 (excluding from "exempt transactions" the "provision of marketing and business consulting services" and "provision of services to market, produce or co-produce, create or assist in the creation of information or informational materials.").

jurisdiction of the United States," including corporations owned by U.S. companies, such as Y&R, BCW. . . and the subsidiaries those US companies own and control. As demonstrated below deliberate use by the WPP Defendants (Imperial's agents), in violation of U.S. law, of U.S. websites operated by U.S. companies to traffic in the confiscated RRHSC Property, subjects Imperial to personal jurisdiction in Florida.

Imperial argues that Plaintiffs "do not plead that Imperial purposefully availed itself of the privilege of conducting suit-related activities in this forum" and that Congress cannot "apply Title III to Imperial's 'non-U.S.' Cuban-cigar business." *See* Motion at 2.  Imperial repeatedly points to its trafficking in Cuba and complains about the purported "extra-territorial" application of U.S. law. As demonstrated below, jurisdiction over Imperial is not based on its trafficking in Cuba nor on any "extra-territorial" application of U.S. law. Personal jurisdiction over Imperial, instead, stems from Imperial's deliberate use, in violation of U.S. law, of U.S. websites operated by U.S. companies to traffic in the confiscated Property. Through these intentional acts, Imperial's conduct has damaged Plaintiffs, five of whom reside in this district.

At bottom, Imperial insists that, despite having illegally retained U.S. companies to use U.S. internet services in violation of U.S. law in furtherance of intentionally tortious conduct damaging to forum residents, neither this Court nor any U.S. court has personal jurisdiction over it. Imperial is wrong. This Court has personal jurisdiction over Imperial.

## II.    Imperial's Trafficking is Intentional Tortious Conduct Aimed at this Forum

### A. The Nature of Plaintiffs' HBA Claims

As set out more fully in Plaintiffs' Opp. to Joint Motion, the HBA Claim is a legislatively created claim designed to compensate victims of Cuba's uncompensated confiscation of property.

The remedy provided by HBA claims is analogous to the remedy available to the true owner, or heirs or successors of the true owner, of stolen property who has a claim for conversion."[7]  And, significantly: "a thief does not acquire good title to stolen property and, therefore, 'one who purchases or acquires property from a thief,' even in good faith, does not have a right to the possession of the goods against 'the rightful owner.'"[8] The HBA attempts to place victims of Cuba's takings in a position analogous to that of the true owner (or his successors or heirs) of stolen property. Compensation to the owner or heirs is required instead of the return of confiscated or stolen property. The HBA adds the requirement that the trafficking in the confiscated property is done "knowingly,"[9] i.e., "with knowledge or having reason to know." [10]

## B.    Imperial is Responsible for Trafficking by Habanos and the WPP Defendants

Imperial argues that corporations and shareholders are generally treated as distinct entities. Therefore, it argues that conduct of its joint venture partnership, Habanos, cannot be attributed to it because Imperial acquired its interest in Habanos through purchase of a separate company. *See* Motion at 6-8. As discussed more fully below, the relevant "jurisdictional contacts" at issue on this Motion is Imperial and Habanos' use of U.S.-based internet services run by U.S. companies (Twitter, Instagram and YouTube) in violation of U.S. law. That conduct constitutes "trafficking"

---

[7]    *See Danopulos v. Am. Trading II, LLC*, 69 N.E.3d 157, 159 (Ohio Ct. App. 2016).

[8]    *See Danopulos*, 69 N.E.3d 159 (emphasis added); *see also In re Newpower*, 233 F.3d 922, 928–29 (6th Cir. 2000) (noting the "long established at common law [rule] that a thief has no title in the property that he steals"); *Richardson v. Seattle-First Nat. Bank*, 38 Wash. 2d 314, 315–16, 229 P.2d 341, 342 (1951) ("At common law, except in the market overt, **a thief could convey no title to his vendee**.") (emphasis added).

[9]    *See* 22 U.S.C. § 6023(13)(A).

[10]    *See* 22 U.S.C. § 6023(9).

as defined in the HBA. See 22 U.S.C. § 6023(13)(ii).

Imperial's "imputation" argument fails for two reasons. First, under the HBA, all trafficking by Habanos and the WPP Defendants is attributed to Imperial. Under the HBA: "a person 'traffics' in confiscated property *if that person* knowingly and intentionally—

> (ii)      causes, ***directs***, participates in, ***or profits from***, ***trafficking*** (as described in clause (i) or (ii)) ***by another person***, or otherwise engages in trafficking (as described in clause (i) or (ii)) ***through another person***

*See* 22 USC § 6023 (13)(A)(ii)[11] (sic). The conduct at issue constitutes "trafficking" as defined in § 6023 (13)(A)(i) or (ii). Therefore, under § 6023 (13)(A)(ii) [second], Imperial is responsible for the trafficking whether it "cause[ed], direct[ed], participated in Habanos, or even if all Imperial did was to "profit[] from trafficking" by or through Habanos.

This leads to the second reason why Imperial is responsible for the "trafficking" and "jurisdictional contacts" at issue. Imperial did not file affidavits or declarations and did not otherwise challenge the allegations of the SAC. Therefore, it is making a purely "facial" challenge. As Imperial acknowledges, "Because Imperial is making a purely facial challenge, the Court's review is limited to the allegations in the Amended Complaint." *See* Motion at 4 n.3. Plaintiffs allege that Imperial directed or profited the conduct at issue. *See* SAC, ¶¶ 19, 44, 61, 87 and 90. Including specifically the use of U.S. internet services operated by U.S. companies. *See id*., ¶¶ 44, 61, 64 and 82. In addition, Plaintiffs served Imperial directly with notice that its conduct constituted "trafficking" under the HBA before filing this lawsuit; Imperial nevertheless continued

---

[11]      The quoted paragraph is the second subsection designated (13)(A)(ii) and appears immediately after an earlier subsection similarly designated (13)(A)(ii). *See* 22 U.S.C. § 6023(13)(A). Therefore, it presumably should have been designated (13)(A)(ii**i**).

its trafficking. *See id.*, ¶¶ 98 – 99. Finally, Imperial again and directly profited from the trafficking (and, therefore, again "trafficked" under (13)(A)(ii) [second]) when it sold its interests in the Cuban Joint Ventures. *See id.*, ¶87. Again, Imperial is bound by the pleadings on this Motion and cannot escape responsibility by reference to general corporate law.[12]

## III.   Imperial's Agents Engaged in Trafficking Under the HBA

Under the HBA a person "traffics" in confiscated property if, *inter alia*, that person "knowingly and intentionally":

(i)     sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,

(ii)    engages in a commercial activity using or otherwise benefiting from confiscated property, property; or

(iii)   causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as

---

[12]    To the extent that Imperial suggests, as Defendants did in their Joint Motion, that some allegations in the complaint are improperly plead "on information and belief," Imperial is wrong about the pleading rules. While allegations based "upon information and belief" generally do not have to be taken as true, "[p]leading on information [and] belief is still permissible where . . . the **facts are 'peculiarly within the possession and control of the defendant.'**" *Palm Partners LLC v. Palm Beach Treatment Ctr., LLC*, 9:17-CV-80582, 2017 WL 5668050, at *2 (S.D. Fla. Aug. 18, 2017) (emphasis added) (quoting *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011)). The Property, of course, is in Cuba and was forcibly confiscated by the Cuban Government. *See* Exhibit 5A. There can be no dispute that, as Congress expressly found, the Cuban Government wrongfully confiscated the property of millions, including "thousands of United States nationals" and "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States." *See* 22 U.S.C. § 6081 (3). Nor is there any dispute about the genesis of the HBA itself, which was enacted after "Cuban MiG's shot down two U.S. civilian private planes in February 1996." *See Odebrecht Const., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268, 1277 (11th Cir. 2013) (citing 22 U.S.C. § 6046 ("Congressional findings condemning attack"). If any case calls out for allowing "[p]leading on information [and] belief" where "the facts are 'peculiarly within the possession and control of the defendant,'" this is it.

described in clause (i) or (ii)) through another person.

. . . . 22 U.S.C. § 6023 (emphasis added).

The SAC properly pleads that the WPP Defendants assisted Imperial, Habanos and Tabacuba in marketing, advertising or promoting the confiscated RRHSC Property. (SAC ¶12, 14, 96). The SAC also properly alleges that the WPP Defendants illegally trafficked under §6023(13)(A)(ii) and (iii) by engaging in commercial activity that benefits from confiscated property and by causing, directing, participating in, or profiting from trafficking.[13] As demonstrated above, the SAC also alleges that Imperial profited from the actions of the WPP Defendants, including the use of US Internet, networking and social media services in violation of the CACRs. Congress plainly intended the HBA to hold secondary actors such as Imperial liable for trafficking, and the courts have upheld this basis of liability. "[T]he allegations of participation and profit are sufficient to show trafficking. *Havana Docks Corp. v. Carnival Corp.*, 19-CV-21724, 2022 WL 831160, at *44 (S.D. Fla. Mar. 21, 2022), *motion to certify appeal denied sub nom*. *Havana Docks Corporation* v. *Bloom/Mcaliley Carnival Corporation* ., 19-CV-21724, 2022 WL 1522007 (S.D. Fla. May 13, 2022).

When Imperial profited from trafficking by the WPP Defendants, Habanos, or otherwise engaged in trafficking through another person, it engaged in trafficking under 22 U.S.C. § 6023(13)(A)(iii). *See de Fernandez v. Crowley Holdings, Inc.*, 21-CV-20443, 2022 WL 860373, at *5 (S.D. Fla. Mar. 23, 2022). The Fifth Circuit's decision in *Glen v. Am. Airlines, Inc.*, 7 F.4th

---

[13]   The SAC alleges that the WPP Defendants causes, directs, participates and/or profits from trafficking (SAC ¶45) and it also alleges that the WPP Defendants acted as agents of Imperial or Habanos for advertising, marketing and promoting Cuban Cigar products and the Habanos Brand name, such acts are defined as commercial activities (SAC ¶14, 42)

331, 336 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 863 (2022), is particularly on point.  In *Glen*, plaintiff's grandfather owned beachfront properties in Varadero Cuba that were confiscated by the Cuban government without compensating Glen's grandfather (or successors). Glen sued American Airlines for operating a website "BookAAHotels.com," that offered its users the option to reserve hotel rooms at these luxury hotels. American Airlines was not occupying the hotels, but rather advertising these hotels and acting as a booking agent for use of these hotels. American Airlines argued that it was not responsible for confiscating the property or for the operation of the hotels. American Airlines also argued that as it only made $503.18 in profit, it should not be liable for damages in the amount of three times the value of the property. Although it concluded for other reasons that Glen could not assert an HBA claim, the Fifth Circuit agreed that Glen's injury was traceable to American, even though the injury was separate from confiscation or use of the property. All that is required is a "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property." *See Am. Airlines, Inc.*, 7 F.4th at 336.

## IV.   <u>The Court Has Specific Jurisdiction Over Imperial</u>

Plaintiffs have plead that each Defendant committed a tortious act in this state, either directly or through an agent, and the cause of action asserted against each Defendant arises from that tortious conduct.  F.S. § 48.193(1)(a).  SAC ¶ 66.  Further, where, as here, the claim asserted against the defendant arises under federal law, if any defendants' personal contacts with a single state are not sufficient to subject them to personal jurisdiction in any state, Rule 4(k) allows the Court to consider a defendant's contacts with the U.S.

As discussed *supra*, the claim created by the HBA is in the nature of a tort akin to unjust

enrichment. The HBA also adds a requirement that the statutory "trafficking" be done intentionally. As such, the claim is in the nature of an intentional tort and should be treated as such for purposes of analyzing personal jurisdiction. See *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (concluding that "trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute."). The HBA claim at issue arises under federal law and does not have a direct analogue under state or other federal statutes. Recent cases are clear, however, that a defendant's physical presence in the forum is not necessary for an exercise of personal jurisdiction. *See Mosseri*, 736 F.3d at 1353 – 54 (discussing the Florida long-arm statute).

If Imperial is not otherwise subject to jurisdiction in any individual state, service upon it is proper under Fed. R. Civ. Pro. 4(k) because claim arises under federal law and the.   "For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4.  The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019) after discussing recent cases found, personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. *See id.* at *5.

A claim under the HBA is significantly different that other claims such as trademark infringement involving questions of jurisdiction and use of the internet. The HBA defines "trafficking" to include essentially all commercial use of confiscated property.  *See* 22 U.S.C. § 6023(13)(A)(i)-(iii). As demonstrated above, Imperial is charged with the WPP Defendants' use of U.S. internet services and social media portals operated by U.S. corporations for the purpose of

trafficking. This is not a case like the many that the Defendants cite involving websites that can generally be accessed from anywhere. Imperial, through Habanos and the WPP Defendants expressly contracted with U.S. companies such as Twitter and Facebook for the use of their U.S. based internet services. More importantly, the WPP Defendants' trafficking through U.S. internet services operated by U.S. corporations is directly prohibited by law, including the Cuban Asset Control Regulations ("CACRs"). When the WPP Defendants illegally used internet services to further its trafficking of the Property in violation of the HBA, although they did so virtually, they deliberately entered the state (or the country) in order to further their unlawful trafficking. This conduct provides more than sufficient basis for subjecting Imperial, through the conduct of its agents the WPP Defendants, to personal jurisdiction.

Nor is there any due process or other Constitutional impediment that prevents assertion of personal jurisdiction over Imperial. The U.S. Supreme Courts' recent decision in the recent case of *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021), discussed the Constitutional standards at length. Discussing "specific jurisdiction" the Court explained:

> The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." ***The contacts must be the defendant's own choice and not "random, isolated, or fortuitous***. They ***must show that the defendant deliberately "reached out beyond" its home***—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff 's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

141 S. Ct. at 1024-25 (emphasis added, citations omitted). In the instant case, the conduct of

Imperial, through the WPP Defendants, is particularly apt for the exercise of personal jurisdiction. By their "own choice" and not through any "random, isolated, or fortuitous," Imperial and the WPP Defendants deliberately exploited a market.

> Addressing the need for fairness, the Court made clear that:

> When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct. Later decisions have added that our doctrine similarly provides defendants with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

*Id*. at 1026 (citations omitted). Again, this applies with full force to Imperial which knew or should have known that use of U.S. persons to conduct its trafficking could "subject [it] to the jurisdiction of a foreign sovereign." The Court held that jurisdiction was proper in Montana because one plaintiff was injured there. Even though the allegedly defective car at issue was neither designed, manufactured nor sold by Ford in Montana. Like Imperial, Ford argued that:

> [T]he needed link must be causal in nature: Jurisdiction attaches "**only if the defendant's forum conduct gave rise to the plaintiff 's claims.**" . . . And that rule reduces, Ford thinks, to locating specific jurisdiction in the State where Ford sold the car in question, or else the States where Ford designed and manufactured the vehicle. On that view, the place of accident and injury is immaterial. . . .

> But Ford's causation-only approach finds no support in this Court's requirement of a "connection" between a plaintiff 's suit and a defendant's activities. That rule indeed serves to narrow the class of claims over which a state court may exercise specific jurisdiction. But not quite so far as Ford wants. **None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.** As just noted, our most common formulation of **the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum.**" The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But **again,**

> **we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff 's claim came about because of the defendant's in-state conduct**.

*Id*. at 1027 (emphasis added, citations omitted).

Again, the discussion applies directly to the issue at hand. Plaintiffs argue that jurisdiction in this forum is appropriate because of the deliberate conduct of Imperial to obtain the benefit of U.S. internet services to further Imperial and Habanos' "trafficking" in the RRHSC Property. There is no surprise, no unfairness, nor any Constitutional or other reason that the Court should apply to save Imperial from its deliberate conduct. Nor is there any reason why jurisdiction in this District is inappropriate. As discussed in Plaintiffs' Opposition to the Defendants' Joint Motion to Dismiss, Congress expressly found that the Cuban Government, had forcibly confiscated property from thousands of U.S. Nationals, and thousands more who fled Cuba as refugees and became U.S. Nationals. That includes five of the Plaintiffs. It is also no surprise that the Plaintiffs would be found in South Florida, as the Court can take judicial notice of the many hundreds of thousands of local residents who fled here directly from Cuba or whose ancestors did so. As *the* Ford Court held, the place of the plaintiff's injury can indeed be the Constitutionally appropriate forum. In this regard as well, it is significant that Plaintiffs are directly damaged under the HBA when Imperial and Habanos trafficked in the Property through the WPP Defendants' efforts. The place of injury is plainly an appropriate forum.

**1.     Because Imperial Insists That it is Not Subject to the Jurisdiction af Any State, Jurisdiction Is Proper Under Fed. R. Civ. P. 4(k)(2)**

Imperial has made clear that it does not acknowledge that is it subject to the general jurisdiction of any state in the United States. Fed. R. Civ. P. 4(k)(2) was designed for such a defendant.

15

Service of a summons on a defendant that is not subject to jurisdiction in any state's courts of general jurisdiction establishes personal jurisdiction over said defendant.  *See* Fed. R. Civ. P. 4(k)(2).  Moreover, as demonstrated above, Plaintiffs Imperial's conduct through the WPP Defendants is sufficient to establish minimum contact with the United States.

"The Eleventh Circuit has recognized, '[i]f ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).' *Oueiss v. Saud*, 1:20-CV-25022-KMM, 2022 WL 1311114, at *12 (S.D. Fla. Mar. 29, 2022). *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (" A district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, '[i]f ... the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).'" (internal citations omitted).  As Imperial (and WPP) has failed to identify a jurisdiction where it is subject to general jurisdiction, jurisdiction under Rule 4(k)(2) is appropriate.

**V.     Plaintiffs Were Harmed by Imperial's Trafficking in the Property Through the WPP Defendants' Use of US Services in Violation of the CACRs**

Imperial also insists that, even when the conduct of Habanos (and presumably the WPP Defendants as well) is imputed to it under the HBA, Imperial nevertheless remains immune from personal jurisdiction. This argument again relies on Imperial's insistence that Plaintiffs jurisdictional arguments rely on Defendants' use of the confiscated RRHSC Property "in Cuba." This argument fails because the "use in Cuba" premise is false.

Imperial is wrong first because "trafficking" under the HBA is not limited to the physical location of confiscated property. To the contrary, trafficking broadly includes any "commercial

activity using or otherwise ***benefiting*** from confiscated property." *See* 22 U.S.C. § 6023(13)(ii) (emphasis added). Plaintiffs allege that the Cuban government and Tabacuba, Imperial's partner in the Cuban Joint Ventures, broadly exploited the RRHSC Property. Imperial, together with Tabacuba and the Cuban Joint Ventures, then "increased and expanded the benefit they received from trafficking in the RRHSC Property by retaining [the WPP Defendants as] agents to assist in the trafficking by marketing and publicizing the products managed from or produced or stored at the confiscated RRHSC Property." *See* SAC, ¶ 20. The WPP Defendants' use of extensive US Services and US social media portals was no coincidence. It was a deliberate, and "intentional," part of a larger plan that "benefit[ed] from" the confiscated RRHSC Property. As demonstrated above, Imperial is liable for the trafficking by its agents, the WPP Defendants.

The WPP Defendants' trafficking through U.S. Services, networks and U.S. social media portals is a separate act of trafficking. Defendants are again unjustly enriched by that separate act of trafficking. The *American Airlines* court explained that:

> American was unjustly enriched because it did business with the entities that now occupy the properties that were wrongly taken from [plaintiff, Glen]. [***T]here is a direct "causal link between a claimant's injury from the Cuban Government's expropriation of their property and a subsequent trafficker's unjust enrichment from its use of that confiscated property***."

*Am. Airlines*, 7 F.4th at 336 (emphasis added) (citing *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1230 (S.D. Fla. 2020).

Finally, as demonstrated above, the WPP Defendants' (and, therefore, Imperial's) use of US Services and US social media portals to further their trafficking in the RRHSC Property and the promotion of Imperial's Cuban Ventures directly violates the CACRs. *See also Odebrecht Const., Inc. v. Sec'y, Florida Dept. of Transp.*, 715 F.3d 1268, 1281–82 (11th Cir. 2013) (The

CACR "apply to . . . any corporation, wherever located, owned or controlled by a U.S. corporation (i.e. a foreign subsidiary of a U.S. corporation).")

## VI.     Imperial Directed, or Allowed, its Agents to Traffic in Confiscated Property Through U.S. Services - "Due Process" Concerns are Not Implicated

Imperial also argues, in effect, that it would be "fundamentally unfair" and offensive to Constitutional "due process" if it is held liable for its trafficking. The premise for this argument is again Imperial's insistence that it is being called to account for conduct unrelated to the United States. As demonstrated above, the premise for the argument is again false. To the contrary, the conduct that brings Imperial to this Court is its own (or its partner's) decision to retain agents to traffic in the RRHSC Property through U.S. Services and U.S. social media portals. Imperial voluntarily chose to enter the U.S., even if it did so virtually. To paraphrase the *Ford Motor* Court, Imperial "deliberately 'reached out beyond' its home," the resulting contacts were Imperial's "own choice and not 'random, isolated, or fortuitous.'" *Compare Ford Motor*, 141 S. Ct. at 1024-25. There is no "unfairness" and no violation of due process when Imperial is called to account for consequences of its own decisions.

## VII.     Should the Court Determine That Jurisdiction is Lacking the Court Should Transfer the Action To New York

While Plaintiffs maintain that this Court has jurisdiction over Imperial, and that the instant action should proceed in the Southern District of Florida, should the Court conclude that jurisdiction is lacking, the Court has the authority to transfer the action to an alternate venue with jurisdiction. *See* 28 USC §1631. "Whenever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . . in which the action or appeal could have been brought at the

time it was filed or noticed."  28 U.S.C. §1631.

A claimant under the HBA may only bring a claim for trafficking that occurred no more than two years prior to the commencement of the action.  22 U.S.C. §6084.  Dismissal of the action would materially prejudice the Plaintiffs as they would be barred from asserting claims for trafficking that occurred more than two years prior to the date of commencing a new action.[14] The interest of justice is, therefore, served by transferring the action to a circuit that has jurisdiction. Thus, justice requires that, if the Court lacks jurisdiction, the Court transfer the action to such venue that does have jurisdiction. *See Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (statute of limitations is a factor in determining the interest of justice).

Imperial's agent, Y&R, is subsidiary of WPP, with its headquarters and principal place of business at 3 Columbus Circle, New York, a property owned by WPP, plc.  SAC ¶, Ex. 13 at 5, Ex. 14.  BCW is a subsidiary of WPP with its headquarters in New York, New York.  Lombardo Dec. II at ¶4.  WPP, a public limited company organized under the jurisdiction of Jersey has its principal office at 3 World Trade Center, New York, New York.  SAC ¶36, n. 14, Ex. 13 at 1, 13, 17.  Therefore, each of the WPP Defendants are headquartered the Southern District of New York. *See Daimler AG v. Bauman*, 571 U.S. 117, 157 (2014) ("The majority does not dispute that a State can exercise general jurisdiction where a corporate defendant has its corporate headquarters, and hence its principal place of business within the State.").

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Imperial's

---

[14] Since the action was commenced, Imperial has apparently divested itself of its interest in Habanos. It is unknown if the WPP Defendants have continued to traffic in the last two years.

motion in its entirety. And alternatively, should the Court find that personal jurisdiction is lacking, that the Court transfer the instant action to the United States District Court for the Southern District of New York, and allow such court to determine the remaining portions of the Motion.

### **Request For Hearing**

Due to the novel and complex issues that are present in this recently activated area of law, Plaintiffs request a hearing on this motion.

Respectfully submitted,

**RODRIGUEZ TRAMONT & NUÑEZ P.A.**

By:  /s/ Paulino A. Núñez Jr.
    Paulino A. Núñez Jr.
    Florida Bar No. 814806
    Primary email: pan@rtgn-law.com
    255 Alhambra Circle
    Suite 1150
    Coral Gables, FL 33134
    Telephone: (305) 350-2300

**BERENTHAL & ASSOCIATES, P.C.**

By::  /s/ David W. Berenthal
    David W. Berenthal
    Florida Bar No. 159220
    E-mail: dwb@berenthalaw.com
    45 East 72nd Street
    Suite 5C
    New York, NY 10021
    Telephone: (212) 302-9494