\

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-23287(DPG)(AMO)

LUIS MANUEL RODRIGUEZ, et al.,

Plaintiffs,

v.

IMPERIAL BRANDS PLC, et al.,

Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT CORPORACIÓN HABANOS, S.A.'S MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT WITH PREJUDICE**
**AND FOR OTHER RELIEF**

1

## PRELIMINARY STATEMENT

Plaintiffs are the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ("RRHSC"). RRHSC was the owner of the Partagas cigarette factory building and a modern mixed-use building adjacent and connected to said factory at the corner of Calle 23 y 16 (23rd Street and 16th) in Havana, Cuba (collectively the "RRHSC Property"[1]). The Castro government confiscated ownership of RRHSC, which was then owned by Plaintiffs' ancestor Ramon Rodriguez Gutierrez ("RRG") , and the RRHSC Property without compensation to RRG. See Second Amended Complaint ("SAC") [ECF No. 82]. Plaintiffs are the owners of a "Claim" created by the Helms-Burton Act ("HBA" or "Libertad Act") in order to compensate victims of the Cuban government's uncompensated confiscation of property.

In 2007 or 2008, Imperial entered into a joint venture with the Cuban government through Cuba's tobacco monopoly company, "Tabacuba." Habanos is the result of that joint venture, controlled by Cuba with financial interests owned 50% by Imperial and 50% by Cuba. See SAC ¶5-7. At all relevant times , Imperial's joint venture arrangements with Cuba and Tabacuba (the "Cuban Joint Ventures") collectively "manufacture[d], market[ed], distribute[d] and s[old] cigars manufactured in Cuba." See SAC ¶6. Habanos has "trafficked" in the Property without compensation to Plaintiffs in violation of the HBA.

---

[1] Throughout its motion, Habanos attempts to separate the factory located on the RRHSC Property from the mixed used building on the the RRHSC Property. Such a distinction is irrelevant as both structures comprise the RRHSC Property, and the use of either structure constitutes trafficking the RRHSC Property. As Habanos has confirmed that two entire floors of the RRHSC Property (in the "mixed use" structure) are currently in use by Empresa Comercializadora de Tabaco en Rama "La Vega"a/k/a Tabacuba (*See* Declaration of Fernández Núñez Decl. ¶5 (ECF No. 89-6)), it does not matter whether or not the factory portion was in use at any given time – the RRHSC Property was being trafficked.

Habanos moves to dismiss the SAC contending, *inter alia*, that the Court lacks venue, and that the Court does not have personal jurisdiction over it. As demonstrated below, Habanos deliberately chose to "avail itself" of the forum by using U.S. companies to further its trafficking of Plaintiffs' Property through U.S. internet services. That conduct is in violation of U.S. law. It is sufficient to subject Habanos to jurisdiction. The Court should deny the Motion.

## LEGAL ARGUMENT

### I.  VENUE IN THE SOUTHERN DISTRICT OF FLORIDA IS PROPER

Defendant Habanos argues that 28 U.S.C. § 1391(f), service on a foreign state, requires that venue be in the jurisdiction where the events or omissions occurred, or a judicial district in which the defendant is licensed to do business, or the United States District of Court for the District of Colombia. Of note is that Habanos maintains that it is not an agency/instrumentality/organ of the Cuban government. Notwithstanding, venue is proper in the Southern District of Florida as the trafficking, as defined by the HBA, occurred in Florida.

HBA claims are relatively novel and raise issues under federal law that do not have direct analogues under state or other federal statutes. Claims under the HBA are significantly different than cases involving trademark infringement over the internet (and for the latter, Florida cases have required the use of an interactive website to establish jurisdiction). A claim under the HBA is in the nature of an intentional tort, akin to conversion, and as such, should be treated as an intentional tort for the purposes of analyzing personal jurisdiction. See *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (concluding that "trademark claims allege 'tortious acts' for purposes of Florida's long-arm statute.").

In cases involving intentional torts, a defendant is deemed to have purposefully availed itself

3

of the forum if the defendant committed an intentional tort, aimed at the forum², that caused an injury within the forum. *Aviation One of Florida, Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 Fed. Appx. 870, 879–80 (11th Cir. 2018) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009). "[In some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)

Recent cases are clear that a defendant's physical presence in the forum is not necessary for an exercise of personal jurisdiction. See *Louis Vuitton*, 736 F.3d at 1353 - 54 (discussing the Florida long-arm statute). The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019), after discussing recent cases, found personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. *See id.* at *5. Jurisdiction was appropriate because the activities had a sufficient contact to the forum, thus venue is also appropriate.

The HBA defines "trafficking" to include essentially all commercial use of confiscated property. See 22 U.S.C. § 6023(13)(A)(i)-(iii). Furthermore, a party traffics in confiscated property when the party "causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii) through another person." Here the specific conduct at issue is the promotion and advertisement of Habanos' products via U.S. internet services operated by U.S. corporations (co-defendants Young

---

² In the *Calder* action, the Supreme Court found that an intentional tort was "aimed" at the forum when the defendant knew that the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984)

4

& Rubicam and BCW) who maintained offices in Miami, Florida[3]. This is not a case comparable to those cited by Habanos involving websites or advertisements that can generally be accessed from anywhere. Habanos' trafficking through U.S. internet services operated by U.S. corporations is directly prohibited by law, including the Cuban Asset Control Regulations ("CACR")[4]. Habanos' use of U.S. internet services to further its trafficking in violation of the HBA, constitutes an entry into and trafficking with the Southern District of Florida. Although it did so virtually, Habanos deliberately entered the country to make use of its internet services via United States social media portals, and thus, by extension deliberately entered Florida in order to further its unlawful conduct. "[I]n some cases, as with an intentional tort, the defendant might well fall within the State's authority by reason of his attempt to obstruct its laws . . . it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011)[5]. Habanos' conduct provides more than sufficient basis for establishing Florida as the proper venue.

---

[3] As alleged in the SAC, Habanos' products consist of Cuban tobacco, and the product and sale of which is managed by Tabacuba who wrongfully traffics the RRHSC Property by using it in its operations. Furthermore, as alleged in the SAC, Habanos uses the RRHSC Property for the manufacture, storage, and/or shipping of its cigars. SAC ¶¶10, 11, 12, 16, 18.

[4] That the advertisements and promotions violate CACR further demonstrates that Habanos should be subject to Federal jurisdiction.

[5] Although the Court in *J. McIntyre* found jurisdiction to be lacking, the Court was concerned with the State's authority and due process under the Fourteenth Amendment of the United States Constitution. In the instant action, the Courts due process concerns are analyzed under the Fifth Amendment as the claims at issue are federal claims being litigated in a federal court. ("For jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of any individual State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011)

A.     IF VENUE IS LACKING, TRANSFER IS THE PROPER RELIEF

Pursuant to 28 U.S.C. § 1603, when a defendant properly challenges a court's venue, when it is in the interest of justice, the district court should transfer the case to a district where venue is proper. 28 U.S.C. § 1406. *Enright v. Principal Life Ins. Co.*, 20-21969-CIV, 2020 WL 5505420, at *3 (S.D. Fla. Aug. 17, 2020), *report and recommendation adopted*, 20-21969-CIV, 2020 WL 5500780 (S.D. Fla. Sept. 11, 2020) (transfer is preferred to prejudicing Plaintiff with a dismissal). A claimant under the HBA may only bring a claim for trafficking that occurred no more than two years prior to the commencement of the action. 22 U.S.C. §6084. Dismissal of the action would materially prejudice the Plaintiffs as they would be barred from asserting claims for trafficking that occurred more than two years prior to the date of commencing a new action[6], and it is in the interest of justice that if venue is lacking the action be transferred to a court with proper venue. Justice requires that if venue is inappropriate, the Court transfer the action to a court of proper venue, either in the District of Columbia 28 U.S.C. §1391(f)(4) or elsewhere (and, if necessary, sever the action against the other defendants) . *Viva Voyage, LLC v. Rovia, LLC*, 20-CV-80838, 2020 WL 9071425, at *3 (S.D. Fla. Oct. 19, 2020) (upon transfer to a forum of suitable venue, motion to dismiss is denied as moot with leave to re-file).

II.     **THE COURT HAS SUBJECT MATTER JURISDICTION AND PERSONAL JURISDICTION OVER THE DEFENDANT.**

The HBA explicitly provides that "[t]he term 'Cuban Government' includes any agency or instrumentality of the Government of Cuba" and that "the term 'agency or instrumentality of the Government of Cuba' means an agency or instrumentality . . . as defined in section 1603(b) of Title

---

[6] Since the action was first commenced, Imperial has divested itself of its interest in Habanos, and it is unknown if Y&R or BCW have continued to traffic in the last two years.

28 . . ." 22 U.S.C. 6023 (5)(A),(B). Thus, under the HBA, by extension under and reference to the Foreign Sovereign Immunities Act:

> An "agency or instrumentality of a foreign state" means any entity-- (1) **which is a separate legal person, corporate or otherwise**, and (2) which is **an organ of a foreign state** or political subdivision thereof, **or a majority of whose shares _or other ownership interest is owned by a foreign state_** or political subdivision thereof, and (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any **third country**.

28 U.S.C. §1603(b) (*emphasis added*)[7]

Contrary to Habanos' allegation, FSIA is not the source of subject matter jurisdiction – the Helms Burton Act, pursuant to which this action has been instituted, is the source of subject matter jurisdiction. 28 U.S.C. §1331, 22 U.S.C. §6081 et seq. "It is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997)

While Habanos argues that the SAC is defective as it alleges that Cuba owns only 50% of Habanos directly or through other entities[8], and thus is not a direct majority shareholder, the argument ignores that Habanos is a joint venture _controlled by Cuba_ (SAC ¶7), and the Government of Cuba has a majority interest by virtue of its fifty percent ownership and control over Habanos rendering Habanos an "agency or instrumentality" of Cuba. Furthermore, as alleged in the SAC, Habanos is an "organ" of the Cuban government. SAC ¶9. "The capstone of organ designation is 'whether the entity engages in a public activity on behalf of a foreign government.'" *Cap. Trans Int'l, LLC v. Int'l Petroleum Inv. Co.*, No. 8:10-CV-529-T-30TGW, 2013 WL 557236, at *6 (M.D. Fla.

---

[7] Under the HBA, the term 'agency or instrumentality of a foreign state' has the same meaning as that provided in 28 U.S.C. §1603(b). *See* 22 U.S.C. § 6023(1)

[8] Once again, Habanos does not deny these allegation.

Feb. 14, 2013), vacated in part, No. 8:10-CV-529-T-30TGW, 2013 WL 12344236 (M.D. Fla. Feb. 25, 2013)[9] (citing *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003)). Habanos has represented that "Habanos, S.A. was founded in 1994 to exclusively undertake the commercialization of all Habanos brands all over the world" and "[i]ts corporate purpose is to market all Cuban tobacco products . . .. and throughout the rest of the world . . ."[10] --- the very same tobacco that is purchased and sold by the Cuban Government's through its monopoly, Tabacuba. (SAC ¶¶12, 17, 18 at the RRHSC Property). Habanos "is engaged, inter alia, in the trade, marketing, and advertising of Cuban cigars and related products, including cigar accessories, throughout the world, including in Cuba, and the export of Cuban cigars and related products throughout the world . . . . made in Cuba from 100% Cuban-grown tobacco". *Corporacion Habanos, S.A. v. Kreteck Int'l, Inc.*, Opposition No. 91237938 (TTAB 2017), D.E. No. 1.[11] Habanos has also previously admitted to promoting and advertising its products, cigars are made in Cuba from 100% Cuban grown tobacco, in United States. *Corporacion Habanos, S.A. v. Xikar, Inc*., Opp. No. 91186534 (TTAB 2008), D.E. No. 1[12]. Habanos does not, and indeed cannot, deny these allegations. Moreover, as alleged in the SAC, "Habanos has engaged and continues to engage 'in a commercial activity using or otherwise benefitting from' the RRHSC Property", (SAC ¶41), "this action is based

___

[9] Habanos also relies on *Cap. Trans. Int'l, LLC* for the premises that Habanos is a "purely commercial venture" and surmises that such a company cannot be "an organ". However the Court in *Capital Trans. Int'l LLC* was clear that the issue is whether the entity serves a national purpose. "The key inquiry is whether the entity serves primarily a private interest, such as profit maximizing, or a public interest, such as industry protection or economic stabilization" *Capital Trans Intern., LLC v. Int'l Petroleum Inv. Co.*, 8:10-CV-529-T-30TGW, 2013 WL 557236, at *9 (M.D. Fla. Feb. 14, 2013), vacated in part, 8:10-CV-529-T-30TGW, 2013 WL 12344236 (M.D. Fla. Feb. 25, 2013)

[10] http://www.habanos.com/en/empresa/

[11] https://ttabvue.uspto.gov/ttabvue/v?pno=91237938&pty=OPP&eno=1 .

[12] https://ttabvue.uspto.gov/ttabvue/v?pno=91186534&pty=OPP&eno=1

upon a commercial activity carried on in the United States by Habanos through its agents, and acts performed in the United States in connection with Habanos' commercial activity, or upon acts performed outside the United States in connection with a commercial activity of the Cuban government that causes a direct effect in the United States" (SAC ¶42). As other Courts have found, Habanos, S.A. is the marketing arm of Cubatabaco[13]. *Empresa Cubana Del Tabaco v. Culbro Corp.*, 213 F. Supp. 2d 247, 263 (S.D.N.Y. 2002). As known in the cigar industry, "Habanos S.A. is the Cuban organization that oversees the country's state-run cigar industry."[14] Habanos exists to market the Cuban Government's tobacco products. There is no doubt that under the HBA, Habanos is an organ of the Cuban government used to market Cuba's tobacco products.[15]

What Habanos conveniently overlooks in its argument is that Cuba, under its communist government, nationalized its tobacco industry.[16] The growing, harvest, manufacture, promotion and

---

[13]Cubatabaco, a.k.a. Empresa Cubana del Tabaco is the Cuban Government's tobacco company. https://www.bloomberg.com/news/features/2015-02-27/the-cuban-cigar-king-sets-his-sights-on-america

[14] https://www.cigaraficionado.com/company/habanos-s-a

[15] Defendant claims that the social media effect cannot be the direct effect of the use of the factory portion of the RRHSC Property, and points to the Declarations of Lisset Fernandez Garcia (ECF No. 225-1), Martha Riquelme Armenteros (ECF 89-5), Juan Luis Arias (ECF 117-1), Mirel Garia Dias (ECF No. 89-3) and Rafael Agramonte Hevia (ECF No. 89-4), in support of their argument that Habanos could not have used the factory portion in recent history. As mentioned *infra*, these declarations are, in fact, Habanos attempt to introduce factual evidence for its motion to dismiss for failure to state a claim and should not be considered. Notwithstanding, even if everything in Habanos' declarations were true, the products ultimately trafficked by Habanos could have been created in the factory when it was in use. Furthermore, each of the declarations fail to affirmatively preclude that the factory portion of the RRHSC Property was not in use, even if just for storage, packing and shipping. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) ("conclusory assertions of ultimate fact are insufficient to shift to the Plaintiffs the burden of producing evidence"). See ECF No. 101, 5-6.

[16] On the 15th day of September, 1960, the revolutionary government of the Republic of Cuba promulgated resolution number 20260 of its Ministry of Labor, by which it 'intervened' the Cuban

9

sale of Cuban tobacco products are government activities spread out amongst the wide body of Cuba's various entities. Habanos is but one organ that handles the promotion and sale of Cuban tobacco.

### A.  THE COMMERCIAL EXCEPTION TO FSIA APPLIES

Habanos claims that it is not subject to the commercial activity exception, however Habanos misunderstands the nature of the HBA and the *Sequeira* case, upon which it relies. *Sequeira v. Rep. of Nicaragua*, 815 F. App'x 345 (11th Cir. 2020). In *Sequeira*, the Court found that "'public acts,' such as takings, are not considered commercial activities". *Sequeira,* 815 Fed. App'x. at 350 (11th Cir. 2020), cert. denied, 141 S. Ct. 898 (2020). But participation in transactions akin to those of a private party are commercial activities. *Id*. "Public acts . . . require sovereign power and thus cannot be performed by a private party. . . . public acts must make use of the state's sovereign authority." *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1325 (11th Cir. 2003)).

Plaintiffs' claims under the HBA are not claims for the wrongful taking of the RRHSC Property, but rather claims for trafficking the property as the Defendants have been unjustly enriched by their actions. Habanos has benefitted from Tabacuba's use of the RRHSC Property as it ultimately provided Habanos with tobacco products to market and promote (said tobacco having been managed, purchased and sold (if not assembled, packed and shipped) from the RRHSC Property). Habanos engaged in trafficking by marketing/promoting the Cuban tobacco goods. U.S.C.§ 6023(13)(A) These sales/marketing/promotion are not "public acts" but rather transactions similar to those in which an individual engages (retaining publicity firms, internet/social media marketing, press

---

tobacco industry. *Tabacalera Severiano Jorge, S. A. v. Standard Cigar Co.*, 392 F.2d 706, 709 (5th Cir. 1968)

releases).

Further, Habanos' trafficking constitutes an action carried on in the United States. As alleged in the SAC, Habanos, through its agents, set up "portals" to market Habanos products on <u>U.S. based social media platforms</u>, and on internet domains controlled by Y&R and/or BCW (U.S. companies) (SAC ¶¶22, 23, 41, 42). Defendant argues that the activity happened outside of the United States, however, even if activity occurred outside the United States, there was a direct effect in the United States. Habanos' through its agents, deliberately availed itself of U.S. based social media platforms and domains controlled by U.S. Companies, and such trafficking ultimately harmed the Plaintiffs. There was an unbroken chain of actions and activities, starting from the use of the RRHSC Property by Tabacuba and Habanos for the acquisition of the raw product and continuing on to the elaboration, packaging, warehousing, distribution and culminating in the promotion and advertisement of the tobacco goods by Habanos using United States companies and social media platforms. The "direct effect"a is the trafficking conducted by Habanos through the use of the RRHSC Property, and Habanos' use of United States companies and social media portals to market and promote the trafficked goods. *See infra*.

## III. HABANOS FAILS TO REFUTE THAT IT IS AN AGENCY AND/OR INSTRUMENTALITY OF THE CUBAN GOVERNMENT

Habanos, in its motion, states that it is not an "agency or instrumentality" of the Cuban government (Motion at 7), yet it failed to submit any sworn statements from authorities with actual knowledge on the matter. Rather than offering the testimony of its officers, directors and/or employees[17], Habanos offers a opinion on Cuban law in the form of Professor Marta Milagro Moreno

---

[17] In fact, Habanos did file the Declaration of Lisset Fernandez Garcia, the legal director of Habanos, but she does not testify to any aspect of Habanos' relationship (or lack of such relationship)

Cruz's declaration.

As a preliminary matter, Professor Cruz's declaration is suspect. Although Plaintiff's maintain that Cuban law is not relevant in this matter, Fed, R, Civ. Pro. 44.1 required Habanos to provide advance notice of its reliance on foreign law. Furthermore, Rule 702[18] of the Federal Rules of Evidence requires the trial judge to ensure that any and all scientific, technical or other specialized knowledge is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). Professor Cruz has not been qualified by this Court as an expert. Professor Cruz, as the Dean of a nationalized university, and presumably a resident of Cuba, has a vested interest in opining in favor of the Cuban government lest her position at the university or her freedom be jeopardized.[19]

Additionally, Habanos has failed to make any showing that Cuban law should apply as to the determination of Habanos' status as a government agency and/or instrumentality[20]. *See In re Vivendi*

---

[18] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702

[19] As such, a *Daubert* hearing regarding Professor Cruz and her testimony should be held by the Court Similarly, Habanos has previously offered the declaration of Professor Ivonne Perez Gutierrez [ECF No. 89-7], such expert testimony (as any other expert testimony such as the Declaration of Rafael Agramonte Hevia [ECF No. 89-4], or Mirel Garcia Dias [ECF No-3] ) that was or may be offered by Habanos, should be subject to a *Daubert* review by this Court.

[20] Defendant has not demonstrated that Cuban law applied to the analysis of Habanos' status as an agency and/or instrumentality of the Cuban government, and it may not do so in its reply. *Santana v. Starwood Hotels & Resorts Worldwide, Inc*., 18-23613-CIV, 2020 WL 9549511 (S.D. Fla. Jan. 17, 2020) (a movant cannot raise a new argument or evidence in a reply brief as it deprives the opposing side of the opportunity to respond). *Santana v. Starwood Hotels & Resorts Worldwide, Inc.*, 18-23613-CIV, 2019 WL 12275952, at *5 (S.D. Fla. Nov. 20, 2019), report and

with the Cuban government.

*Universal, S.A. Sec. Litig.*, 618 F. Supp. 2d 335, 340 (S.D.N.Y. 2009) ("The court may examine a wide array of materials to determine foreign law . . . but it is under no obligation to do so if the party whose burden it is fails to produce sufficient evidence that foreign law applies.")[21].

When a defendant's affidavit conflicts with the allegations in the complaint, the court must construe all reasonable inferences in favor of the plaintiff. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Even if the Court were to consider Professor Cruz' Declaration, as demonstrated herein, it does not refute either the fact that Habanos is an agency and/or instrumentality of the Cuban Government, and it does not refute proper service over Habanos.[22] More important, Habanos does not proffer any facts that would be relevant under United States law as to whether or not Habanos is Government agent/instrumentality.

## IV. HABANOS' DECLARATIONS ARE INADMISSABLE FOR PURPOSES OF A MOTION TO DISMISS

Habanos has submitted two declarations in the instant motion, relies on seven declarations submitted in its prior motion to dismiss [ECF No. 89-1 - 88-7], and relies on two additional

---

recommendation adopted *sub nom. Santana v. Starwood Hotels & Resports Worldwide, Inc.*, 18-23613-CIV, 2020 WL 9549511 (S.D. Fla. Jan. 17, 2020)

[21] If the Court determines that Cuban law is relevant, it is important to note that "When a foreign government . . . offers an account in the context of litigation, there may be cause for caution in evaluating the foreign government's submission" *Animal Sci. Products, Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1873 (2018).

[22] Professor Cruz specifies that she has "been advised by counsel for Corporación Habanos, S.A. . . . that Plaintiffs in this litigation allege that Habanos, S.A. is a Cuban joint venture corporation owned fifty percent (50%) by a foreign party and fifty percent (50%) by a Cuban entity. . . . " and that she has been "requested by counsel for Habanos, S.A. to provide an expert declaration on the status under Cuban law of sociedades anónimas that are joint ventures owned fifty percent (50%) by a foreign party and fifty percent (50%) by a Cuban entity." Cruz Decl. ¶¶2, 4. Professor Cruz's declaration does not foreclose that Habanos is a government agent/instrumentality/organ. Declarant only opines that under Cuban law a "joint venture" cannot be a government agency

declarations submitted by co-defendants Y&R and BCW in a prior motion to dismiss (Motion at 4 n. 5). On a motion to dismiss for failure to state a claim (Fed. R. Civ. Pro. 12(b)(6)) the Court is limited to the four corners of the complaint, including attachments, and documents central to plaintiffs' claim that are referred to in the complaint. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). However, Habanos has conflated its arguments claiming that it seeks dismissal under Fed, R, Civ, P. 12(b)(1), (2), (3) and (5) as well.

> Defendant cannot assert such jurisdictional attacks under Rule 12(b)(1) because Defendant's challenges "implicate the merits" of Plaintiff's FLSA claims. Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003).
> It is well settled in the Eleventh Circuit that when a defendant's jurisdictional challenges are inextricably intertwined with the merits of a plaintiff's claim, the court must "find that jurisdiction exists and deal with the objection[s] as [ ] direct attack[s] on the merits of the plaintiff's case" rather than as a purely jurisdictional attack under Rule 12(b)(1). *Id*. (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997)). The defendant is then "forced to proceed under Rule 12(b)(6) ... or Rule 56 ... both of which place great restrictions on the district court's discretion[.]" Id. This safeguard works to ensure that "potentially meritorious but factually contested claims are not prematurely dismissed." Douglas v. United States, 814 F.3d 1268, 1281 (11th Cir. 2016).

*Romero v. Fox*, 18-CV-21218, 2020 WL 8235916, at *2 (S.D. Fla. Jan. 29, 2020) (Gayles, J). "The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). As discovery has not been had as of yet, it would premature to have a motion for summary judgment under Rule 56. Therefore, the extraneous evidence proffered by Habanos cannot be used in support of its motion to dismiss for failure to state a claim. Facts that are inapplicable to the issue of subject matter jurisdiction, personal jurisdiction, venue, and service of process should not be considered.

## V.    THE COURT HAS PERSONAL JURISDICTION OVER HABANOS

14

Once again Habanos overstate the import of use of the factory portion of the RRHSC Property, and attempt to prove that the factory was not in use at the time the social media accounts were created. Plaintiffs submit that Defendant's reliance on the Declaration of Susan Bailey and the other declarations regarding the use of the factory (all of which are referred to in a section called "facial challenge) are actual an attempts to introduce extraneous evidence to their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and thus should be discarded. Further, that Ms. Bailey relies on a "Joined" date that appears on a given webpage, which is hearsay, not dispositive, and may not reflect all social medial portals that were used by the defendant.

Notwithstanding and contrary to Habanos' claim, the "temporal sequence" between the factory use and the social media portals is irrelevant to Plaintiff's jurisdictional claim . Defendant's submissions do not preclude that the cigars manufactured in the factory (at any date) were not promoted by Habanos to Habanos' benefit, or that portions of the factory were used for storage and shipping. An internet search easily uncovered a market for "vintage" cigars over ten years old, and in some cases over 20 years old, being offered for sale.[23] Furthermore, the factory portion of the RRHSC Property is only one part of the property. It is remains uncontested that the tobacco comprising the products marketed by Habanos was/is managed/trafficked from the RRHSC Property and that Habanos benefits by marketing the products made from that tobacco.

## VI.   HABANOS HAS PURPOSELY AVAILED ITSELF OF THE FORUM BY CONDUCTING ACTIVITIES IN THE UNITED STATED AND FLORIDA

The U.S. Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Judicial*

---

[23]

https://egmcigars.com/collections/vintage-cigars/products/vintage-romeo-y-julieta-exhibicion-no
-4-cigar-asb-ene-06
https://www.cigarsofhabanos.com/cigars-vintage

*Dist. Court*, 141 S. Ct. 1017 (2021), discussed the Constitutional standards at length. Discussing "specific jurisdiction" the Court explained:

> The contacts needed for this kind of jurisdiction often go by the name "purposeful availment." The defendant, we have said, must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." The contacts must be the defendant's own choice and not "random, isolated, or fortuitous. They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there. Yet even then—because the defendant is not "at home"—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims, we have often stated, "must arise out of or relate to the defendant's contacts" with the forum. Or put just a bit differently, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' "

141 S. Ct. at 1024-25 (emphasis added, citations omitted). In the instant case, Habanos' conduct is particularly apt for the exercise of personal jurisdiction, by its "own choice" and not through any "random, isolated, or fortuitous" act. Habanos plainly and "deliberately 'reached out beyond' its home." Habanos illegally used U.S. internet services to further its trafficking of the Property in violation of the HBA, although it did so virtually, it deliberately entered the country in order to further its unlawful conduct (including violations of CARC).

Addressing the need for fairness, the Court made clear that:

> When (but only when) a company "exercises the privilege of conducting activities within a state"—thus "enjoy[ing] the benefits and protection of [its] laws"—the State may hold the company to account for related misconduct. Later decisions have added that our doctrine similarly provides defendants with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." A defendant can thus "structure [its] primary conduct" to lessen or avoid exposure to a given State's courts.

Id. at 1026 (emphasis added, citations omitted). Again, this applies with full force to Habanos, which had full knowledge that use of U.S. persons to conduct its trafficking could "subject [it] to the jurisdiction of a foreign sovereign."

The *Ford* Court held that jurisdiction was proper in Montana because one plaintiff was injured there. Even though the allegedly defective car at issue was neither designed, manufactured nor sold by Ford in Montana. Like Habanos, *Ford* argued that:

> **None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.** As just noted, our most common formulation of **the rule demands that the suit "arise out of or relate to the defendant's contacts with the forum**." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, **we have never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct**.

Id. at 1027 (emphasis added, citations omitted).

This discussion applies directly to Habanos' conduct. Plaintiffs argue that jurisdiction in this forum is appropriate because of Habanos' deliberate conduct in reaching out to and contracting with U.S. companies and avail themselves of U.S. internet services to in order to further "trafficking" of Plaintiffs' Property. There is no surprise, no unfairness, nor any Constitutional or other reason that the Court can apply in order to save Habanos from its illegal and deliberate conduct.

Nor is there any reason why jurisdiction in this District is inappropriate. As discussed in Plaintiffs' Opposition to the Joint Motion, Congress expressly found that the Cuban Government had forcibly confiscated property from thousands of U.S. Nationals, and thousands more who fled Cuba as refugees and became U.S. Nationals, which includes six of the seven Plaintiffs. It is also no surprise that the Plaintiffs would be found in South Florida, as the Court can take judicial notice of the many hundreds of thousands of local residents who fled here directly from Cuba or whose ancestors did so. As the *Ford* Court held, the place of the plaintiff's injury can indeed be the Constitutionally appropriate forum. In this regard as well, it is significant that Plaintiffs were/are directly damaged under the HBA when Habanos trafficked in the Property. The place of injury is plainly an appropriate forum.

## VII.   LONG ARM JURISDICTION EXISTS

As discussed *infra*, Plaintiffs' HBA claims are in the nature of an intentional tort, and treated as such for analyzing jurisdiction. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013). Jurisdiction is proper under the Florida's long arm statute and Fed. R. Civ. Pro. 4(k) where as here the claim arises under federal law and the defendant is not otherwise subject to jurisdiction in any individual state.

### A.   JURISDICTION UNDER FLORIDA'S LONG ARM STAUTE

This Court has personal jurisdiction over each Defendant pursuant to the Florida "long-arm" statute, Section 48.193(1)(a), Florida Statutes, because each Defendant committed a tortious act within this state.

> [A] defendant's physical presence is not necessary to commit a tortious act in Florida. Rather, committing a tortious act in Florida ... can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. . . . .

> However, the cause of action must arise from the communications. Further, [u]nder Florida law, a nonresident defendant commits a tortious act within Florida when he commits an act outside the state that caused injury within Florida.

*JCS Indus. LLC v. DesignStein LLC*, 619CV544ORL37EJK, 2019 WL 5391192, at *2 (M.D. Fla. Oct. 22, 2019) (internal quotation marks and citations omitted). The court in *Macrotrend Capital Group Inc. v. Edwards*, 18-cv-61327, 2019 WL 2106421 (S.D. Fla. Mar. 4, 2019) after discussing recent cases found, personal jurisdiction appropriate over a defendant who committed a tort while in Michigan because the injury was suffered by a corporate plaintiff in Florida. See id. at *5. Habanos has trafficked in the RRHSC Property, an intentional tort, that caused injury to the Plaintiffs within Florida. Jurisdiction is proper under Florida's Long Arm statute.

## B.    JURISDICTION UNDER THE NATIONAL LONG ARM STATUTE

In the event that the Court finds that it lacks jurisdiction under Florida's long arm statute, jurisdiction under Fed. R. Civ. P. 4(k)(2), the "National Long-Arm Statue" is appropriate. For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4. However, defendant bears the burden to show that Fed. R. Civ. P. 4(k)(2) is inapplicable. "If the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). "[T]he burden is on the Defendant to identify another forum state in which the suit could proceed." *Saint-Gobain Tech. Fabrics Am., Inc. v. Checkmate Geosynthetics, Inc.*, 609CV557ORL35KRS, 2010 WL 11507686, at *5 (M.D. Fla. Feb. 5, 2010).

Habanos has not identified any jurisdiction that it is willing to admit that it is unequivocally subject to its jurisdiction. Only that it "may allow" jurisdiction in New York, such a statement does not meet defendants burden and thus Rule 4(k)(2) is applicable.

Further as discussed at length infra, due process requirements have been met:

> [T]he constitutional litmus test for personal jurisdiction is whether the defendant "purposefully established 'minimum contacts' in the forum' " *Burger King*, 471 U.S. at 473–74, 105 S.Ct. 2174 (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154). Jurisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a "substantial connection" with the forum state. Id. at 475, 105 S.Ct. 2174. The Court has made clear, however, that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." Id. (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum.

*Licciardello v. Lovelady*, 544 F.3d 1280, 1285 (11th Cir. 2008). Furthermore, personal jurisdiction under Rule 4(k)(2) is not governed under the Fourteenth Amendment, but under the Fifth Amendment, which considers contacts with the entire United States. *Douglass v. Nippon Yusen Kabushiki Kiasha*, 996 F.3d 289, 293-294 (5th Cir. 2021).

Habanos has purposely availed itself of the United States and thus has submitted to the jurisdiction of United States District Courts[24]. Habanos has repeatedly used the laws and courts of the United States to protect its trademarks for its tobacco products (which includes those products which were trafficked through the RRHSC Property), at the expense of United States citizens who wish to use such marks. Habanos has used United States companies and social media portals to traffic goods contrary inviolation of the HBA. Habanos admited to advertising its trafficked goods

---

[24] "Rule 4(k)(2) permits a court to aggregate a foreign defendant's nationwide." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)

"world wide" and in at least one instance admitted that "worldwide" included the United States. Habanos has sufficient contacts with the United States to sustain National Long-Arm Jurisidiction.

## VIII.  TITLE III OF THE HBA COMPORTS WITH DUE PROCESS

Habanos argues that the Title III of the HBA is unconstitutional due to due process concerns, and in support thereof cites two cases, neither of which support Habanos' position. First, Habanos cites to *Gerling Glob. Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1236 (11th Cir. 2001). However, the Court in Gerling scrutinized a ***State*** statute (*to wit*, Florida's Holocaust Victims Insurance Act) reviewed its constitutionality under the Fourteenth Amendment. In the instant case, at issues is the HBA, a federal statute, and the matter is is pending before the Federal District Court of the United States, a soverign separate from the states and thus subject to a review under the Fifth Amendement and not the Fourteenth. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("[f]or jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of any individual State.").

Habanos also cites to U.S. v. *Baston*[25]. In *Baston* the Court found that 18 U.S.C. §1596, a statute that grants the extra-territorial jurisdiction over sex trafficking even when such trafficking did not occur within the United States to be constitutional and did not violate the due process clause. Specifically, the Court noted that Congress was authorized to enact extraterritorial laws under the Foreign Commerce Clause (and other provisions including the Offences Clause) and that "this Court has repeatedly upheld its power to make laws applicable to persons or activities beyond our territorial boundaries where United States interests are affected." *United States v. Baston*, 818 F.3d 651, 667 (11th Cir. 2016) quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813–14, 113 S.Ct. 2891,

---

[25] 818 F.3d 651 (11th Cir. 2016).

125 L.Ed.2d 612 (1993) (Scalia, J., dissenting).[26]

In fact, Congress may confer extraterritorial jurisdiction in violation of international law if it so chooses. *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813–14, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting). It is also clear that Congress intended the HBA to have extraterritorial reach as the act directs that alien traffickers are to be denied entry into the Untied States. 22 USC §6091(a). Instead, "due process requires only that an exercise of extraterritorial jurisdiction not be arbitrary or fundamentally unfair, a question of **domestic** law." *United States v. Baston*, 818 F.3d 651, 669 (11th Cir. 2016) (*emphasis added*). Due process is satisfied when there is some minimal contact between the state (or in this case, the country) and the regulated subject. Id.

At issue here is Habanos' trafficking by promoting and marketing (in the United States) and benefitting from the tobacco products that consist of the same tobacco that was managed from the RRHSC Property. That Habanos, the "regulated party", is not a U.S. national and has not US office is of no issue. Habanos has availaed itself of the laws and services of the Unites States and Due Process is satisfied.[27]

_____

[26] "[T]he Foreign Commerce Clause provides Congress a broad power . . . [t]he Supreme Court has described . . . as . . . 'plenary,' . . . and 'broad,'" . . . . United States v. Baston, 818 F.3d 651, 667–68 (11th Cir. 2016) (citing to *Bd. of Trustees of Univ. of Ill. v. United States*, 289 U.S. 48, 56, 53 S.Ct. 509, 77 L.Ed. 1025 (1933), and *United States v. Forty–Three Gallons of Whiskey*, 93 U.S. 188, 194, 23 L.Ed. 846 (1876)).

[27] Not only has Habanos "reached out" to use United States companies to assist in trafficking the RRHSC Property, but Habanos has consistently availaed itself of the protection of Untied States laws, asserting trademarks over its tabacco productions and preventing others from using such names. As per Habanos' own admissions, Habanos is the owner of more than a dozen United States registered trademarks, including but not limited to HABANOS UNICOS DESDE 1492, U.S. Reg. No. 2,177,837, SPECIALIST HABANOS, U.S. Reg. No. 4244340. Habanos admits to using the two aforementioned trademarks "throughout the world exclusively for cigars that are of 100% Cuban origin . . ." Corporacion Habanos, S.A. v. Havana Cigar Lounge, LLC, Opp. No. 91236503 (TTAB

## IX.    SERVICE VIA DHL WAS SUFFICIENT

Habanos claims that service via DHL does not constitute mail under Fed. R. Civ. Pro. 4(f)(2)(C)(ii)[28]. Service in the instant actions was duly performed in accordance with 28 U.S.C. §1608(b)(3)(B)[29] ([ECF No. 66]) as required by the HBA (22 U.S.C. §6082(c)(2)), in which the clerk of this court dispatched the summons and complaint with D.H.L.. This Court, as others, have accepted service through D.H.L. suffices as "mail". *Hurtado v. Balerno Int'l Ltd.*, 17-62200-CIV, 2018 WL 4053122, at *2 (S.D. Fla. Aug. 24, 2018) (" in accord with 28 U.S.C. § 1608(b)(3)(B) and Federal Rule of Civil Procedure 4, the Clerk of Court filed a Notice of International Service certifying that a copy of Plaintiff's summons and complaint had been mailed to Defendant . . . Defendant was served by D.H.L., return receipt requested, pursuant to Rule 4(f)(2)(C)(ii)."), *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) ("FedEx or UPS service appropriately safeguards notice requirements in construing the Federal Rules of Civil

---

2017), D.E. 1 (https://ttabvue.uspto.gov/ttabvue/v?pno=91236503&pty=OPP&eno=1).

[28] Neither of the cases cited by Defendant to support the definition of "mail" use it in the context of the FSIA.

[29] Service can be made by "delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served . . ."
As pointed out by Defendant, 28 U.S.C. §1608(b)(3) has many similarities to the language used in Rule 4. However the two provisions are not identical, for example, Rule 4(f)(2) only allows service by mail "unless prohibited by the foreign country's law" while FSIA (b)(3)(B) allows service by mail notwithstanding the laws of the country where service occurs.
As evident by it reference to the same, Rule 4(f) was drafted to comply with the Hauge Convention on the Service Abroad of Judicial and Extra Judicial Documents. Although Cuba is not a party to the said convention, it is worth noting that the 2003 Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions found that use of a private courier was the equivalent of the postal channel.
https://assets.hcch.net/docs/0edbc4f7-675b-4b7b-8e1c-2c1998655a3e.pdf .

Procedure")

However, in the unlikely even that the Court finds process was insufficient or that service should have been performed pursuant to Rule 4(f), Courts have found that "invalidity of the one attempt at service does not automatically require dismissal of the complaint." *Grammenos v. Lemos*, 457 F.2d 1067, 1071 (2d Cir. 1972). Therefore, Defendant's request to dismiss the SAC should be denied.

## X.   DISMISSAL WITH PREJUDICE IS IMPROPER

Habanos has requested that the SAC be dismissed *with prejudice*, but failed to state any reason or cite to any case as to why there should be any prejudice. Furthermore, "[t]he dismissal of a case without prejudice is tantamount to a dismissal with prejudice if it has the effect of precluding a plaintiff from re-filing his claim due to the running of the limitation period." *Rickerson v. Sec'y, Florida Dep't of Corr.*, 21-12110-F, 2021 WL 6098415, at *1 (11th Cir. Nov. 2, 2021)

It is well settled that an adjudication not on the merits does not serve to bar a claimant from brining the action again. *Abram v. Fulton Cty. Gov't*, 482 F. App'x 421, 425 (11th Cir. 2012). Dismissal for lack of jurisdiction, or subject matter jurisdiction or standing are not a judgment on the merits and are entered without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Dismissal for improper venue is without prejudice. Fed R. Civ. P. 41(b). Dismissal for improper service of process is jurisdictional in nature, not on the merits and should not be dismissed with prejudice. *Jackson v. Warden, FCC Coleman-USP*, 259 Fed. App'x. 181, 183 (11th Cir. 2007), *Abram v. Fulton Cty. Gov't*, 482 F. App'x 421, 425 (11th Cir. 2012). It is only a dismissal pursuant to Rule 12(b)(6), failure to state a claim, that can be dismissed with prejudice if it is a determination on the merits. addresses the merits , and then in only in certain

24

circumstance. Beach Blitz Co. v. City of Miami Beach, Florida, 13 F.4th 1289, 1300 (11th Cir. 2021) (dismissal pursuant to Fed. R. Civ. P. 12(b)(6) may be "without prejudice" and is inconclusive if it is or isn't claim preclusive). Were the Court to determine that jurisdiction is lacking, or venue is improper, and that such defect requires dismissal (as opposed to transfer or leave to amend), then the dismissal must be without prejudice. *McQueary v. Child Support Enf't*, 812 F. App'x 911, 914 (11th Cir. 2020) ("If a court lacks subject matter jurisdiction, it also lacks the power to dismiss the complaint with prejudice as an adjudication on the merits").

## <u>CONCLUSION</u>

For all the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendant Habanos' Motion to Dismiss in its entirety, and/or for such other and further relief as the Court may deem just and appropriate.

RODRIGUEZ TRAMONT & NUÑEZ P.A.            BERENTHAL & ASSOCIATES, P.A.

By: ___/s/ Paulino A. Núñez Jr.___            By:: ___/s/ David W. Berenthal___
    Paulino A. Núñez Jr.                  David W. Berenthal
    Florida Bar No. 814806                Florida Bar No. 159220
    Primary email: pan@rtgn-law.com       E-mail: dwb@berenthalaw.com
    255 Alhambra Circle                   255 Alhambra Circle
    Suite 1150                            Suite 1150
    Coral Gables, FL 33134                Coral Gables, FL 33134
    Telephone: (305) 350-2300             Telephone: (212) 302-9494