**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:20-cv-23287(DPG)(AMO)

LUIS MANUEL RODRIGUEZ, et al.,

                                        Plaintiffs,

                v.

IMPERIAL BRANDS PLC, et al.,

                                        Defendants.

**PLAINTIFFS' OBJECTIONS TO THE SUPPLEMENTAL REPORT AND
RECOMMENDATION ON DEFENDANTS IMPERIAL BRANDS PLC AND
WPP PLC'S  MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-23287-CIV-GAYLES/OTAZO-REYES**

LUIS MANUEL RODRIGUEZ, *et al.*,

      Plaintiffs,

v.

IMPERIAL BRANDS PLC, *et al*.,

      Defendants.

_____/

## SUPPLEMENTAL REPORT AND RECOMMENDATION

THIS CAUSE came before the undersigned upon the Court's Order on Report and Recommendation [D.E. 307], which the undersigned had issued on November 2, 2022, with respect to the following submissions:

> ➢ Defendant Corporación Habanos, S.A.'s ("Habanos") Motion to Dismiss the Second Amended Complaint (hereafter, "Habanos' Motion to Dismiss") [D.E. 225];

> ➢ Defendant Imperial Brands plc's ("Imperial") Motion to Dismiss the Second Amended Complaint (hereafter, "Imperial's Motion to Dismiss") [D.E. 226];

> ➢ Defendants WPP plc ("WPP"), Young & Rubicam LLC ("Y&R"), and BCW LLC ("BCW") (WPP, Y&R, and BCW, together, "WPP Defendants")'s Motion to Dismiss the Second Amended Complaint (hereafter, "WPP Defendants' Motion to Dismiss") [D.E. 229]; and

> ➢ Imperial, Habanos, and WPP Defendants' Motion to Dismiss the Second Amended Complaint (hereafter, "Joint Motion to Dismiss") [D.E. 227].

<u>See</u> Report and Recommendation [D.E. 286]. Therein, the undersigned recommended that Habanos' Motion to Dismiss be granted for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3); that this action be dismissed without prejudice to Plaintiffs Luis Manuel

Rodriguez, Maria Teresa Rodriguez, Alfredo Ramon Forns, Ramon Alberto Rodriguez, Raul Lorenzo Rodriguez, Christina Conroy, and Francisco Ramon Rodriguez (together, "Plaintiffs") refiling their action in a proper venue; and that Imperial's Motion to Dismiss, WPP Defendants' Motion to Dismiss, and the Joint Motion to Dismiss be denied without prejudice as moot. Id.

On March 31, 2023, the Court affirmed and adopted in part the Report and Recommendation and granted Habanos' Motion to Dismiss. See Order on Report and Recommendation [D.E. 307 at 5]. However, the Court remanded the case to the undersigned "for further proceedings and a report and recommendation as to whether Defendant Imperial and the WPP Defendants waived the defense of improper venue"; and to "address other issues if warranted." Id. at 5–6. Based on this directive, the undersigned permitted Imperial and the WPP Defendants (together, "Defendants") to brief the issue of whether they had waived the defense of improper venue, as well as proffer any arguments for dismissal that they wished to assert. See Order [D.E. 316].

On May 19, 2023, in compliance with the undersigned's instructions: the WPP Defendants filed a Post-Remand Brief in Support of their Motion to Dismiss (hereafter, "WPP Defendants' Post-Remand Brief") [D.E. 318]; Imperial filed a Supplemental Brief in Support of its Motion to Dismiss (hereafter, "Imperial's Post-Remand Brief") [D.E. 319]; and Defendants filed a Supplemental Brief in Further Support of the Joint Motion to Dismiss (hereafter, "Joint Post-Remand Brief") [D.E. 320] (collectively, "Defendants' Post-Remand Briefs"), arguing as follows:

➢ Defendants did not waive the defense of improper venue and the undersigned's Report and Recommendation correctly recommended dismissal of the entire action without prejudice to refiling in a proper venue;

➢ The WPP Defendants' alleged jurisdictional contacts cannot be imputed to Imperial and, in any event, the Second Amended Complaint fails to sufficiently allege that this Court has personal jurisdiction over the WPP Defendants and Imperial under the Florida long-arm statute and Federal Rule of Civil Procedure 4(k)(2) (hereafter,

"Rule 4(k)(2)"), thereby requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) (hereafter, "Rule 12(b)(2)"); and

> The Second Amended Complaint fails to state a claim under Title III of the Helms-Burton Act, 22 U.S.C. §§ 6081–6085 (hereafter, "Title III"), thereby requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereafter, "Rule 12(b)(6)").

<u>See</u> Defendants' Post-Remand Briefs [D.E. 318–20].[1]

On July 22, 2023, Plaintiffs filed their Responses to Defendants' Post-Remand Briefs (hereafter, "Post-Remand Response Briefs") [D.E. 328–30]. On August 11, 2023, Imperial filed its Supplemental Reply Brief (hereafter, "Imperial's Reply Brief") [D.E. 333]; Defendants filed their Supplemental Reply Brief (hereafter, "Joint Reply Brief") [D.E. 334]; and the WPP Defendants filed their Reply in Support of their Post-Remand Brief (hereafter, "WPP Defendants' Reply Brief") [D.E. 335] (together, "Post-Remand Reply Briefs"). On September 28, 2023, the undersigned held a Post-Remand Hearing [D.E. 340]. On October 18, 2023, Plaintiffs filed a Notice of Supplemental Authority [D.E. 342]; and on October 23, 2023, Defendants responded to Plaintiffs' Notice of Supplemental Authority [D.E. 343–44].

As more fully discussed below, the undersigned concludes that Defendants <u>did</u> waive the defense of improper venue. Moreover, upon consideration of the Post-Remand Briefs, Post-Remand Response Briefs, and Post-Remand Reply Briefs, as well as the parties' arguments at the Post-Remand Hearing, the undersigned: vacates her prior recommendations that this action be dismissed without prejudice to Plaintiffs refiling their action in a proper venue and that Imperial's Motion to Dismiss, WPP Defendants' Motion to Dismiss, and the Joint Motion to Dismiss be denied without prejudice as moot; and respectfully recommends that Imperial's Motion to Dismiss

---

[1] The undersigned continues to hold in abeyance and does not discuss herein the argument challenging the constitutionality of Title III set forth in Imperial's Motion to Dismiss. <u>See</u> Imperial's Motion to Dismiss [D.E. 226]; Supplemental Statement of Interest [D.E. 271]; Paperless Order [D.E. 272].

be GRANTED IN PART for lack of personal jurisdiction, WPP Defendants' Motion to Dismiss

be GRANTED IN PART for lack of personal jurisdiction, and the Joint Motion to Dismiss be

GRANTED IN PART for failure to state a claim.

## SUMMARY OF DEFENDANTS' ARGUMENTS ON REMAND

As noted above, Defendants initially argue that they did not waive the defense of improper

venue and that the Report and Recommendation correctly recommended dismissal of the entire

action without prejudice to refiling in a proper venue. The undersigned finds this contention to be

erroneous. Defendants further argue that the Second Amended Complaint should be dismissed for

lack of personal jurisdiction and failure to state a Title III claim. The undersigned finds merit in

some of these arguments.

## WAIVER OF DEFENSE OF IMPROPER VENUE

In its Motion to Dismiss the Second Amended Complaint, Habanos argued that venue as

to Habanos was improper in this district under 28 U.S.C. § 1391(f). See Habanos' Motion to

Dismiss [D.E. 225 at 14]. Habanos explained that 28 U.S.C. § 1391(f) governed venue as to

Habanos because Plaintiffs had alleged that Habanos was an "agency or instrumentality of the

Cuban government" under the Foreign Sovereign Immunities Act ("FSIA") and that 28 U.S.C. §

1391(f) "controls venue in every case where a foreign state is named as a defendant." Id. (internal

quotation marks and citations omitted). Habanos further argued that Plaintiffs had failed to allege

that "a substantial part of the events or omissions giving rise to the claim occurred" in this district

as required by 28 U.S.C. § 1391(f)(1) (hereafter, "Section 1391(f)(1)"). Id. at 14–18.

Alternatively, Habanos argued that, if it was not deemed an agency or instrumentality of Cuba and

the FSIA did not apply, venue was likewise improper under the similar standard set forth in 28

U.S.C. § 1391(b)(2) (hereafter, "Section 1391(b)(2)"), pursuant to which Plaintiffs had alleged

that venue in this district was proper as to all the defendants. Id.

In the prior Report and Recommendation, the undersigned found that "the allegations in the Second Amended Complaint 'reveal[] that no events giving rise to the claim[] occurred in this District and, as a consequence, venue does not properly lie' here under Section 1391(f)(1) or Section 1391(b)(2)." See Report and Recommendation [D.E. 286 at 9] (alterations in original) (citations omitted). The undersigned also found that:

> Although the other [d]efendants did not move to dismiss for improper venue, Habanos' venue argument is dispositive as to all [the defendants] . . . . See, e.g., Habanos' Motion to Dismiss [D.E. 225 at 15–18] (discussing impropriety of venue in the Southern District of Florida as to all [d]efendants). The parties also had an opportunity at the [hearing on the Motions to Dismiss, see Paperless Minute Entry [D.E. 273,] to present their arguments about venue in this district and their respective positions on transferring or dismissing the case. See, e.g., Corrected Hearing Tr. [D.E. 285 at 10:25–17:21, 49:7–50:16, 92:5–93:8, 110:11–19, 144:4–146:20]. Thus, the Court may also consider dismissal of this case *sua sponte* for lack of venue as to the non-moving [d]efendants. See Algodonera De Las Cabezas, S.A. v. Am. Suisse Cap., Inc., 432 F.3d 1343, 1345 (11th Cir. 2005) ("[W]hile a district court may dismiss a suit *sua sponte* for lack of venue, it may not do so 'without first giving the parties an opportunity to present their views on the issue.'") (quoting Lipofsky v. N.Y. State Workers Comp. Bd., 861 F.2d 1257, 1259 (11th Cir. 1988)).

Id. at 6 n.3. Ultimately, the undersigned declined to recommend a transfer of the action to "another district where venue in that district is not affirmatively established in the [Second Amended] Complaint." Id. at 10 (alteration in original) (internal quotation marks and citation omitted). Therefore, the undersigned recommended that the entire action be dismissed without prejudice to Plaintiffs refiling the case in a proper venue. Id. at 11.

In its Order on Report and Recommendation [D.E. 307], the Court adopted the undersigned's finding that venue was improper as to Habanos and granted Habanos' Motion to Dismiss [D.E. 225]. See Order on Report and Recommendation [D.E. 307 at 5]. However, the Court noted that the Report and Recommendation "[did] not specifically address whether Imperial

and the WPP Defendants waived the improper venue issue by failing to raise it in their initial

motions to dismiss." Id. The Court further noted that, although it "may consider dismissal of this

case *sua sponte* for lack of venue as to [Imperial and] the WPP Defendants as long as the parties

are given an opportunity to present their views on the issue . . . the Eleventh Circuit Court of

Appeals [has] held that a district court may dismiss a suit *sua sponte* for lack of venue only 'in the

absence of a waiver.'" Id. (citing Algodonera, 432 F.3d at 1345; Lipofsky, 861 F.2d at 1259). As

a result, the Court remanded the matter to the undersigned for "an opportunity to consider whether

Imperial and the WPP Defendants have waived the improper venue issue." Id.

In their Joint Post-Remand Brief, Defendants contend that the Report and

Recommendation correctly recommended dismissal of the entire action for improper venue

because "the Court did not raise venue sua sponte, the parties presented their views on the issue,

and the venue defense was not waived." See Joint Post-Remand Brief [D.E. 320 at 8–9]. At the

Post-Remand Hearing, Imperial argued that "the [C]ourt did not raise venue *sua sponte*[,] Habanos

did[,] [a]nd the parties had the opportunity to advocate their positions", stating:

> [Defendants] opposed transfer and advocated for dismissal. . . . Of course, the
> [P]laintiffs too had the opportunity to argue what disposition should flow from
> success on Habanos' unique [FSIA] venue argument. They asked, of course, that
> the case remain in Florida, but their request was that if that didn't work, then the
> entire case be transferred somewhere else. So a unitary disposition is what the
> [P]laintiffs requested. . . . What the Eleventh Circuit [has] said is [that] . . . you have
> to allow the parties time to advocate. Perhaps the defendant wants to accept venue
> in an improper venue; perhaps the plaintiff wants to argue about why venue was
> improper. That was all permitted here. So we are not even within the scope and
> coverage of this waiver rule that [Plaintiffs] are invoking.

See Post-Remand Hearing Tr. [D.E. 341 at 11:14–12:15].[2] Defendants also argue that they "could

---

[2] With regard to the unitary disposition argument, Imperial further contends that, although Plaintiffs had
alluded to a possible severance of Habanos should the Court find that venue as to Habanos was improper
in this district, see Response to Habanos' Motion to Dismiss [D.E. 263 at 6], Plaintiffs' Amended
Objections to Report and Recommendation [D.E. 294 at 4], Plaintiffs never formally moved the Court for

not have asserted the Habanos-specific FSIA venue defense" and, as such, could not "have waived a defense that was never theirs to assert."  See Joint Post-Remand Brief [D.E. 320 at 11]; Joint Reply Brief [D.E. 334 at 6]; see also Post-Remand Hearing Tr. [D.E. 341 at 14:14–18] ("Imperial and [the WPP Defendants] did not have [an FSIA] venue defense to make; therefore, they had no such defense; therefore, they cannot possibly have waived it because they couldn't have made it in the first place.").

Plaintiffs countered at the Post-Remand Hearing that discussing the matter of venue *sua sponte* at a hearing does not provide sufficient notice to the parties.  See Post-Remand Hearing Tr. [D.E. 341 at 20:14–22] (referencing McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1312 (11th Cir. 2021)) ("Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions.") (quoting Day v. McDonough, 547 U.S. 198, 210 (2006)).  More importantly, Plaintiffs correctly argue that "[f]ailure to raise the issue of improper venue in an initial motion to dismiss waives such defense."  See Post-Remand Response Brief [D.E. 330 at 1] (citing Aero Techs., LLC v. Lockton Cos. Intern. Ltd., 406 F. App'x 440, 441 (11th Cir. 2010)) ("Federal Rule of Civil Procedure 12(h)(1) states that some Rule 12 defenses are waived by failing to raise them in the initial Rule 12 motion, including improper venue[.]").  Plaintiffs note that Defendants did not raise the defense of improper venue in their respective Motions to Dismiss the Second Amended Complaint or in their earlier motions to dismiss the Complaint [D.E. 1] and First Amended Complaint [D.E. 82].  See Post-Remand Response Brief [D.E. 330 at 1] (referencing the prior Motions to Dismiss [D.E. 71–72, 74, 88, 91, 94]).  Indeed, Defendants limited their initial dismissal arguments to, in relevant part, lack of

---

a severance pursuant to Federal Rule of Civil Procedure 21.  See Joint Post-Remand Brief [D.E. 320 at 10]. However, the undersigned need not consider the issue of severance at this juncture, given that the Court has already dismissed Habanos for improper venue, see Order on Report and Recommendation [D.E. 307 at 5], and the undersigned is recommending dismissal of Defendants.

personal jurisdiction, lack of standing, and failure to state a claim. <u>See</u> Motions to Dismiss the Complaint [D.E. 71–72, 74].[3] Thus, Plaintiffs posit that "only Habanos was dismissed for lack of venue, and the remaining defendants do not get dismissed for lack of venue because they did not plead it" and, therefore, waived the defense. <u>See</u> Post-Remand Hearing Tr. [D.E. 341 at 24:24–25:2].

Given that Defendants did not assert the defense that venue in this district was improper in their initial, much less any of their Motions to Dismiss, the undersigned concludes that Defendants <u>did</u> waive the defense of improper venue. <u>See</u> <u>Aero Techs.</u>, 406 F. App'x at 441 ("Our circuit has never recognized extraordinary circumstances as grounds for overlooking a defendant's waiver of venue and we decline to do so here."). In light of that waiver, dismissal of the action with respect to Defendants was improper. <u>See</u> Order on Report and Recommendation [D.E. 307 at 5]. Therefore, the undersigned vacates her prior recommendations that this action be dismissed without prejudice to Plaintiffs refiling their action in a proper venue; and that Imperial's Motion to Dismiss, WPP Defendants' Motion to Dismiss, and the Joint Motion to Dismiss be denied without prejudice as moot.

In accordance with the Court's directive to "address other issues if warranted", <u>id.</u> at 6, the undersigned proceeds to consider Defendants' arguments regarding lack of personal jurisdiction and failure to state a claim.

## **PERSONAL JURISDICTION**

The WPP Defendants argue that this Court cannot exercise personal jurisdiction over them under Florida's long-arm statute or Rule 4(k)(2). <u>See</u> WPP Defendants' Post-Remand Brief [D.E. 318 at 7–13]. Moreover, Imperial argues that "Plaintiffs have pleaded no basis to impute [] the

---

[3] In contrast, Habanos raised its improper venue defense in its initial motion to dismiss the First Amended Complaint [D.E. 89] as well as in its Motion to Dismiss the Second Amended Complaint [D.E. 225].

WPP Defendants' alleged jurisdictional contacts to Imperial."  <u>See</u> Imperial's Post-Remand Brief [D.E. 319 at 7–8].  Imperial further argues that, even if the WPP Defendants' alleged jurisdictional contacts are imputed to Imperial, they are likewise insufficient under the Florida long-arm statute and Rule 4(k)(2); and that it would be constitutionally unreasonable to exercise personal jurisdiction over Imperial.  <u>Id.</u> at 9–14.

At the Post-Remand Hearing, Plaintiffs abandoned their theory of specific personal jurisdiction under the Florida long-arm statute as to all Defendants.  <u>See</u> Post-Remand Hearing Tr. [D.E. 341 at 6:11–14, 156:4–6].  Plaintiffs also abandoned their argument that Y&R and BCW are subject to personal jurisdiction under Rule 4(k)(2).  <u>Id.</u> at 158:3–5.  Therefore, the undersigned limits the current jurisdictional analysis to whether the Second Amended Complaint sufficiently alleges personal jurisdiction over WPP and Imperial pursuant to Rule 4(k)(2).

### 1. *Applicable law*

For a claim arising under federal law, a party may seek to establish personal jurisdiction pursuant to Rule 4(k)(2) if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws."  <u>See</u> Fed. R. Civ. P. 4(k)(2)(A)–(B).  "[W]hen, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment."  <u>S.E.C. v. Marin</u>, 982 F.3d 1341, 1349 (11th Cir. 2020) (internal quotation marks omitted) (quoting <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 942 (11th Cir. 1997)).  "[T]he personal-jurisdiction analysis under the Fifth Amendment is the same as that under the Fourteenth", except the applicable forum is the United States.  <u>Herederos De Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.</u>, 43 F.4th 1303, 1308 (11th Cir. 2022) (evaluating personal jurisdiction under Rule 4(k)(2) in Helms-Burton Act case).  As

such, "[t]he exercise of personal jurisdiction comports with due process when (1) the nonresident

defendant has purposefully established minimum contacts with the [United States] and (2) the

exercise of jurisdiction will not offend traditional notions of fair play and substantial justice."

Marin, 982 F.3d at 1349 (internal quotation marks omitted) (quoting U.S. S.E.C. v. Carrillo, 115

F.3d 1540, 1542 (11th Cir. 1997)).

To establish sufficient minimum contacts with the United States, the defendant's contacts

must satisfy three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given
> rise to it. Second, the contacts must involve some act by which the defendant
> purposefully avails itself of the privilege of conducting activities within the forum
> . . . , thus invoking the benefits and protections of its laws. Third, the defendant's
> contacts with the forum must be such that [the defendant] should reasonably
> anticipate being haled into court there.

See Carrillo, 115 F.3d at 1542 (citing Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1546

(11th Cir. 1993)).  Moreover, where the defendant is alleged to have committed an intentional tort

specifically aimed at a plaintiff who was injured in the forum, due process may also be satisfied

under the "effects test" established by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789–

90 (1984), which provides that jurisdiction over a defendant is proper when the "effects" of its out-

of-state conduct—in this case, the intentional tort of trafficking—are felt in the forum.  See, e.g.,

Garcia v. Gravity Interactive, Inc., No. 10-62162-Civ, 2012 WL 13005342, at *6–*7 (S.D. Fla.

Jan. 17, 2012) (applying Calder "effects" test to assess Rule 4(k)(2) jurisdiction).

### 2.   *Rule 4(k)(2) personal jurisdiction over Defendants*

As to the initial requirement for triggering the application of Rule 4(k)(2), WPP argues that

the "[Second Amended Complaint] itself defeats Rule 4(k)(2) jurisdiction by pleading that 'WPP

. . . maintains a principal place of business in *New York*.'"  See WPP Defendants' Post-Remand

Brief [D.E. 318 at 13] (emphasis in original) (quoting Sec. Am. Compl. [D.E. 208 ¶ 36]).  However,

notwithstanding Plaintiffs' allegation in the Second Amended Complaint, WPP contends that it is not subject to general jurisdiction in New York. See Post-Remand Hearing Tr. [D.E. 341 at 167:11–12] ("So WPP, we are not conceding general jurisdiction in New York."). Indeed, WPP has consistently taken issue with Plaintiffs' allegation that it maintains a principal place of business in New York. See WPP Defendants' Motion to Dismiss [D.E. 229 at 20 n.8] ("[The] WPP Defendants do not agree with this assertion[.]"); see also Joint Motion to Dismiss [D.E. 227 at 13] ("WPP [is] a company incorporated in the Bailiwick of Jersey and with its principal place of business in London[.]"). Moreover, the parties concede that WPP and Imperial are not subject to general jurisdiction in Florida. See WPP Defendants' Reply in Support of Motion to Dismiss [D.E. 266 at 6] ("WPP Defendants established that the exercise of general . . . jurisdiction in Florida is improper over each of the WPP Defendants—all of which are headquartered and incorporated outside of Florida. Plaintiffs fail to respond substantively to much of WPP Defendants' personal jurisdiction argument."); Imperial's Post-Remand Brief [D.E. 319 at 5] ("Plaintiffs rightly have never argued that Imperial, a foreign-incorporated, foreign-headquartered corporation, is subject to general personal jurisdiction in this forum."). Therefore, given that the parties do not identify a state where WPP and Imperial are amenable to general jurisdiction, the first requirement for application of Rule 4(k)(2) to Defendants is satisfied. See Fed. R. Civ. P. 4(k)(2)(A) (requiring that "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction").[4]

---

[4] At the Post-Remand Hearing, Plaintiffs indicated that if "WPP [were to] pivot[] and argue[] . . . that [] jurisdiction for WPP is appropriate in New York and the court accepts that argument . . . then [Plaintiffs'] position would be that [they] would want the matter [as to the WPP Defendants] transferred to New York." See Post-Remand Hearing Tr. [D.E. 341 at 159:6–16]. Plaintiffs limited this proposition to the WPP Defendants. Id. at 159:17–20 ("The Court: So then you don't know what is going to happen to Imperial, but you're not asking that Imperial be transferred. Counsel: Not at this point."). However, WPP did not pivot its argument along the lines described by Plaintiffs' counsel. Id. at 160:3–4. In any event, a transfer of the action as to the WPP Defendants would be difficult to justify in light of the Court's prior finding that venue in the case is improper in New York. See Report and Recommendation [D.E. 286 at 10] ("Plaintiffs'

As to the second element of the Rule 4(k)(2) analysis, Defendants argue that Plaintiffs fail to establish that Defendants have "minimum contacts" with the United States to satisfy specific personal jurisdiction under Rule 4(k)(2). See WPP Defendants' Post-Remand Brief [D.E. 318 at 12]; Imperial's Post-Remand Brief [D.E. 319 at 9]; see also Fed. R. Civ. P. 4(k)(2)(B) (requiring that "jurisdiction is consistent with the United States Constitution and laws").[5] As set forth in the prior Report and Recommendation,

> Plaintiffs allege that [the] [d]efendants have trafficked in Plaintiffs' property, which was confiscated by the Cuban government in 1961, and are therefore liable to them under [Title III]. See Sec. Am. Compl. [D.E. 208 ¶¶ 3, 19]. Plaintiffs' property consists of a building known as the Partagás factory and a modern mixed-use building adjacent and connected to the Partagás factory (collectively, "the Property"). Id. ¶¶ 1–2. Specifically, Plaintiffs allege that Imperial, through Habanos, other joint-venture entities, and Non-party Tabacuba, has used and continues to use the Property without compensation to or authorization from Plaintiffs. Id. ¶¶ 17–18. These alleged uses include the production and shipment of millions of hand-rolled cigars manufactured and/or processed at the Property and their marketing through online portals on the U.S.-based social media platforms Twitter, YouTube, and Instagram. Id. ¶¶ 17–18, 22–23. . . .

See Report and Recommendation [D.E. 286 at 2–3]. To that end, Plaintiffs claim that "WPP through the WPP Group that it controls, including BCW and Y&R[,] used US Services, including Internet, email, and other networking and telecom services, the YR.com, BM.com, and Ogilvy.com Internet domains, and U.S. social media portals for the [] marketing, advertising, and promotion of Cuban tobacco products and the Habanos brand name." See Post-Remand Response Brief [D.E. 328 at 6] (citing Sec. Am. Compl. [D.E. 208 ¶¶ 54–56, 61]). Plaintiffs contend that this conduct relates or gives rise to their Title III claim because "[WPP's] trafficking [] was

---

Second Amended Complaint is devoid of allegations affirmatively establishing that venue would be proper in New York.").

[5] In a footnote, WPP argues that this Court also lacks general personal jurisdiction over Defendants under Rule 4(k)(2). See WPP Defendants' Post-Remand Brief [D.E. 318 at 12 n.2]. However, Plaintiffs appear to have abandoned this theory of personal jurisdiction. See generally Post-Remand Response Brief [D.E. 328]. Accordingly, the undersigned limits the Rule 4(k)(2) analysis to assessing whether Plaintiffs have sufficiently alleged specific personal jurisdiction over Defendants under Rule 4(k)(2).

complete when WPP's US Services were used to transmit advertising and promotional materials .

. . by routing all such communications [through servers in] the United States." Id. at 16.[6] Plaintiffs

further argue that WPP purposefully availed itself of conducting activities within the United States

by directing its alleged promotional conduct into the United States; and thereby caused harm to

Plaintiffs in the United States. Id. at 16–17. As for Imperial, Plaintiffs assert that "[j]urisdiction

over Imperial is based on the trafficking of Plaintiffs' confiscated Property completed in the United

States by [WPP]." See Post-Remand Response Brief [D.E. 329 at 1]. Thus, personal jurisdiction

over Imperial hinges entirely on personal jurisdiction over WPP. See Post-Remand Hearing Tr.

[D.E. 341 at 212:9–12] ("The Court: So you are piggybacking on WPP for your personal

jurisdiction allegation as to Imperial; is that accurate? Counsel: Yes."). In turn, personal

jurisdiction over WPP entirely hinges on the websites that advertise Habanos' products. Id. at

193:11–13 ("Here, [WPP's] trafficking was based upon the conduct, the activity through the

internet, through U.S. servers, through U.S. domain names, through U.S. social media

companies.").

At the Post-Remand Hearing, WPP emphasized that "[t]he websites at issue were generally

accessible, not just accessible in the U.S. or targeted at the U.S." and that "[t]he websites did not

allow for purchase of the product . . . anywhere [] in the United States [because] [i]t is illegal to

do so", thereby "demonstrat[ing] the absence of . . . targeting at the U.S." Id. at 166:7–167:2.[7]

---

[6] As to this criterion for minimum contacts, WPP asserts that its Spanish subsidiaries created the web content at issue in this case, thereby eliminating any connection between Plaintiffs' cause of action and WPP's contacts. See WPP Defendants' Post-Remand Brief [D.E. 318 at 8]. WPP further argues that the alleged conduct of its Spanish subsidiaries cannot be imputed to WPP under an alter ego theory. Id. at 13. At the Post-Remand Hearing, Plaintiffs clarified that "[they] are not concerned about the Spanish entity. [They] are concerned about the conduct of WPP." See Post-Remand Hearing Tr. [D.E. 341 at 199:11–13]. Therefore, the undersigned limits her analysis to WPP's activities.

[7] WPP explains that "it is illegal to buy Cuban tobacco products in (or commercially ship them to) Florida or anywhere in the U.S." See WPP Defendants' Post-Remand Brief [D.E. 318 at 10] (citing U.S. Office of

The Eleventh Circuit has found that "the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." Fraser v. Smith, 594 F.3d 842, 847 (11th Cir. 2010) (internal quotation marks and citations omitted); see also Frida Kahlo Corp. v. Pinedo, No. 18-21826-Civ, 2021 WL 4147876, at *5 (S.D. Fla. Sept. 13, 2021) ("Courts across jurisdictions have held that activity on the Internet, by itself, is not a sufficient minimum contact to establish 'purposeful availment' under the Due Process Clause."); Michael Grecco Prods., Inc. v. Imageselect B.V., No. 21-21999-CIV, 2022 WL 18779105, at *6 (S.D. Fla. Sept. 27, 2022) ("Plaintiff completely neglects to address [the] holding [in Frida Kahlo] that the existence of a website, on its own, is insufficient to show that a nonresident 'purposefully availed' itself to the forum[.]").

Plaintiffs' arguments are further weakened by their failure to allege that WPP undertook additional steps to "show that [the alleged] online activity [was] 'aimed' at" the United States for purposes of satisfying the Calder "effects" test. See Frida Kahlo, 2021 WL 4147876, at *5. As in Frida Kahlo, the social media platforms on which Habanos' products are alleged to be advertised, see Sec. Am. Compl. [D.E. 208 ¶¶ 22 n.11], do not reference the United States; and Plaintiffs do not allege that the advertised products have ever been sold in the United States. See Frida Kahlo, 2021 WL 4147876, at *5; cf. Del Valle v. Trivago GMBH, 56 F.4th 1265, 1276–77 (11th Cir. 2022) (holding that both minimum contacts and "effects" test were satisfied by the defendants' promotion of their websites via banner ads, follow-up emails directed at Florida residents, and efforts to maximize performance on search engine results pages; and that the defendants financially benefited from Florida residents' bookings and web traffic).

---

Foreign Assets Control, Cuba Sanctions FAQ (questions 731 and 769), https://ofac.treasury.gov/faqs/topic/1541).

Given that the Second Amended Complaint fails to sufficiently allege minimum contacts as well as that the "effects" of WPP's conduct were felt in the United States, Plaintiffs have failed to establish that this Court has personal jurisdiction over WPP under Rule 4(k)(2).  See Frida Kahlo, 2021 WL 4147876, at *5.  Moreover, such failure extends to Imperial, given Plaintiffs' imputation theory.  Accordingly, the undersigned recommends that Imperial's Motion to Dismiss and the WPP Defendants' Motion to Dismiss be granted for lack of personal jurisdiction.

## **FAILURE TO STATE A CLAIM**

Defendants also argue that the Second Amended Complaint fails to state a claim because "(i) the claim is barred by the statute of repose; (ii) the claim arises entirely from the alleged conduct of Cuban companies, which does not constitute trafficking; (iii) the [Second Amended Complaint] does not plead that Defendants acted knowingly and intentionally; and (iv) Plaintiffs fail to plead the ownership element of a Title III claim."  See Joint Post-Remand Brief [D.E. 320 at 12].  The undersigned addresses each of these arguments below.

### *1.      The Helms-Burton Act and the failure to state a claim standard*

Title III of the Helms-Burton Act provides, in relevant part, as follows:

[A]ny person that, after the end of the 3-month period beginning on the effective date of this subchapter, traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property for money damages [as set forth in subsections (i)–(ii).]

. . .

In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996.

22 U.S.C. § 6082(a)(1)(A), (4)(B).  Under Title III, "a person 'traffics' in confiscated property if that person knowingly and intentionally—(i) . . . uses . . . [the] confiscated property, (ii) engages in a commercial activity using or otherwise benefiting from [the] confiscated property, or (iii)

15

causes*, directs, participates in, or profits from, trafficking . . . by another person, or otherwise engages in trafficking . . . through another person, without the authorization of any United States national who holds a claim to the property." Id. § 6023(13)(A).

"To survive a motion to dismiss brought pursuant to [Rule 12(b)(6)], a claim must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, meaning that it must contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Alexander v. Medley, No. 21-cv-24386, 2022 WL 1102856, at *2 (S.D. Fla. Apr. 12, 2022) (quotation marks omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the [p]laintiff"; however, "a Court need not take allegations as true if they are merely 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" VSI Sales, LLC v. DiSimone, No. 20-61119-CIV, 2021 WL 8972144, at *2 (S.D. Fla. Apr. 13, 2021) (citations omitted).

### 2.    Time bar

Defendants first assert the affirmative defense that Plaintiffs' claim is time-barred under the two-year repose period that bars Title III claims brought "more than 2 years after the trafficking giving rise to the action has ceased to occur." See Joint Post-Remand Brief [D.E. 320 at 12] (internal quotation marks omitted) (quoting 22 U.S.C. § 6084). The Eleventh Circuit "commands that Rule 12(b)(6) dismissal on time limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." Havana Docks Corp. v. Carnival Corp., No. 19-cv-21724, 2020 WL 5517590, at *12 (S.D. Fla. Sept. 14, 2020) (quotation marks and citation omitted).

Because Plaintiffs brought his action in 2020, the two-year Title III repose period extends only to 2018. In their pleading, Plaintiffs set forth the following purported timeline of Defendants' trafficking:

> The unauthorized use of the [] Property by Imperial and Habanos also extended to [Non-party] Tabacuba's management of the day-to-day business of all or some Cuban tobacco products from offices it maintained in the [] Property at all times **from 2007 until at least October 29, 2020**. Both Habanos and Imperial, through its financial interests in Habanos and the other Cuban Joint Ventures, benefitted from Tabacuba's continuous use of the [] Property during the entire time that Imperial owned interests in the Cuban Joint Ventures. Imperial also benefitted from use of the [] Property for marketing of Habanos' products.

> . . . Upon information and belief, Tabacuba and Habanos have continuously used the [] [P]roperty without authorization from the [Plaintiffs] **since at least 2010**, and likely for many years before that, until the present.

> . . . Imperial and Habanos' trafficking also includes use of the [] Property for marketing and publicity of Habanos' products.

> Habanos itself documented its possession, control of, management, and use of the [] Property. In a **February 2010** publicity piece entitled: "Cigar Factory Readings and Readers," Habanos referred to the factory (the [] Property) "Standing on famous 23rd Street in Havana's bustling Vedado neighborhood right between the 14th and 16th streets," as the "humongous and modern H. Upmann cigar factory." The continuous use of the [] Property includes the use of a portion of the [] Property by Imperial's joint venture partner, Tabacuba, for its executive offices for the management of the Cuban tobacco business, and the use of the loading dock and space for warehousing and shipping Habanos' products. Tabacuba's name appears prominently on the building.

See Sec. Am. Compl. [D.E. 208 ¶¶ 18, 78–80] (emphasis added). Plaintiffs also reference several photographs that purportedly illustrate Habanos' use of the Property: "Composite Exhibit 6 containing pictures published by the Habanos website of 'visit the factories' tours promoted by Habanos at the [] Property" and "Exhibit 7 [which] is a picture of the loading dock at the [] Property in operation." Id. ¶ 79 n.39. However, Plaintiffs have stipulated to the fact that the photographs in Composite Exhibit 6 were taken in 2009; and that the photograph in Exhibit 7 was taken no later than January 2013. See Post-Remand Hearing Tr. [D.E. 341 at 61:25–62:2, 64:13–15]. Thus,

Defendants argue that Habanos' alleged use of the Property in 2009, 2010, and 2013 is conduct that significantly predates the two-year repose period under the Helms-Burton Act; and that Plaintiffs cannot impute Non-party Tabacuba's alleged use of the Property through 2020 to WPP or Imperial.  <u>See</u> Joint Post-Remand Brief [D.E. 320 at 13–14].

Plaintiffs counter that Tabacuba's status as a non-party is irrelevant because "according to the definition of the Helms-Burton Act[,] [t]he remaining defendants are trafficking if they are profiting or participating in trafficking by another person", even if that other "person" is a non-party.  <u>See</u> Post-Remand Hearing Tr. [D.E. 341 at 94:18–21].  However, even if the undersigned accepts as true Plaintiffs' allegations about Tabacuba, the connection between Tabacuba's alleged use of the Property and Defendants is far too attenuated.  In fact, the Second Amended Complaint is devoid of allegations affirmatively connecting WPP or Imperial to Tabacuba's use of the Property during the relevant actionable period.  Rather, Plaintiffs allege in conclusory fashion that Imperial has simply "benefitted from" Tabacuba's conduct; and entirely omit WPP from any allegation involving Tabacuba's use of the Property.  <u>See</u>, <u>e.g.</u>, Sec. Am. Compl. [D.E. 208 ¶¶ 18, 80]; <u>see also</u> <u>VSI Sales</u>, 2021 WL 8972144, at *2 ("[A] Court need not take allegations as true if they are merely threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (quotation marks omitted).

Given that Plaintiffs do not allege that Habanos' trafficking occurred past 2013 or how WPP and Imperial are implicated by Non-party Tabacuba's alleged use of the Property in 2020, it is apparent from the face of the Second Amended Complaint that Plaintiffs' claim against Defendants is time-barred.  Accordingly, the undersigned recommends that Defendants' Joint Motion to Dismiss be granted on this ground.

### 3.    *"Trafficking"*

Next, Defendants argue that "Habanos['] and Tabacuba's conduct does not qualify as trafficking", hence, "neither does Imperial's or WPP's alleged participation in or profiting from that conduct."  <u>See</u> Joint Post-Remand Brief [D.E. 320 at 15].  Defendants rely on 22 U.S.C. § 6023(13)(B)(iv), which provides that "trafficking" does *not* include "transactions and uses of property by a person who is both a citizen of Cuba and a resident of Cuba, and who is not an official of the Cuban Government or the ruling political party in Cuba."  Defendants then seize on the Helms-Burton Act's definition of a "person" as "any person or entity, including any agency or instrumentality of a foreign state", <u>see id.</u> § 6023(11), to argue that Habanos and Tabacuba, as agencies or instrumentalities of a foreign state, namely, Cuba, are exempt from the definition of "trafficking."  <u>See</u> Joint Post-Remand Brief [D.E. 320 at 15].  However, Congress did not include agencies or instrumentalities *of Cuba* in the definition of "agency or instrumentality of a foreign state" for purposes of the Helms-Burton Act, <u>see id.</u> § 6023(1), and per the canon of statutory construction, this Court may not add words to a statute.  <u>See De Fernandez v. CMA CGM S.A.</u>, 21-CV-22778, 2023 WL 4014730, at *14 (S.D. Fla. Apr. 30, 2023), <u>report and recommendation adopted</u>, 2023 WL 4633553 (S.D. Fla. Jul. 20, 2023) (citing <u>Friends of Everglades v. S. Fla. Water Mgmt. Dist.</u>, 570 F.3d 1210, 1224 (11th Cir. 2009)).  Therefore, under a plain reading of the statute, Habanos and Tabacuba, as agencies or instrumentalities of Cuba, cannot be said to fall within the category of "persons" that are exempt from the definition of "trafficking" under the Helms-Burton Act.  Moreover, as noted by Plaintiffs at the Post-Remand Hearing, exempting agencies or instrumentalities of Cuba would "eviscerate the actual intent of the [Helms-Burton] Act."  <u>See</u> Post-Remand Hearing Tr. [D.E. 341 at 110:2–14]; <u>see also</u> Post-Remand Response Brief [D.E. 330 at 6] (citing <u>Havana Club Holding, S.A. v. Galleon S.A.</u>, 203 F.3d 116, 125 (2d Cir. 2000))

("Congress intended to create a chilling effect that will deny the current Cuban regime venture capital [and] discourage third-country nationals from seeking to profit from illegally confiscated property[.]") (quotation marks and citations omitted).  Accordingly, the undersigned recommends that Defendants' Joint Motion to Dismiss not be granted on the basis that Habanos and Tabacuba are exempted from the definition of "trafficking."

WPP also individually argues that Plaintiffs have failed to allege that it "trafficked" in the Property because WPP "did not profit from or do anything with the [Property]."  See WPP Defendants' Post-Remand Brief [D.E. 318 at 13].  As noted above, to state a Title III claim, a plaintiff must allege that "a person 'traffics' in confiscated property [by] knowingly and intentionally—(i) . . . us[ing] . . . [the] confiscated property, (ii) engag[ing] in a commercial activity using or otherwise benefiting from [the] confiscated property, or (iii) caus[ing], direct[ing], participat[ing] in, or profit[ing] from, trafficking . . . by another person[.]"  22 U.S.C. § 6023(13)(A).  With respect to WPP, Plaintiffs allege, in relevant part, that WPP, "by assisting Imperial, Habanos, and Tabacuba in marketing and publicizing the Habanos[] products manufactured, stored at or shipped from the [] Property, including through extensive use of US Services, [] causes, directs, participates in, or profits from, or otherwise engages in, trafficking in the [] Property by Imperial, Habanos, and Cuba".  See Sec. Am. Compl. [D.E. 208 ¶ 96].  Based on these allegations, the undersigned finds that the Second Amended Complaint plausibly alleges trafficking by WPP.  See de Fernandez v. Crowley Holdings, Inc., 593 F. Supp. 3d 1162, 1171 (S.D. Fla. Mar. 23, 2022) ("[T]he Court finds that Plaintiffs have sufficiently alleged a violation of the Act.").  Therefore, the undersigned recommends that the WPP Defendants' Motion to Dismiss not be granted on the basis that Plaintiffs have failed to allege that WPP "trafficked" in the Property.

### 4. *"Knowingly and intentionally"*

Defendants further argue that Plaintiffs fail to plausibly allege that either WPP or Imperial "knowingly and intentionally trafficked in the confiscated [P]roperty without the authorization of a U.S. national who holds a claim to the [P]roperty." See Joint Post-Remand Brief [D.E. 320 at 16] (citing 22 U.S.C. § 6023(13)). In response, Plaintiffs contend that they have pled "that information about the confiscated Property was available to Defendants in corporate . . . records" and that they placed Defendants on notice of the same via their March 31, 2020, pre-suit demand letter, including the following July 5, 1961, announcement in Cuba's Official Gazette:

> First: The Nationalization, by means of forced expropriation, is decreed, and consequently the Cuban State, in complete authority, is awarded all the interest in assets and business entities located in the national territory and the rights and actions arising from the exploitation of the same, whatever the interest, title or mode of their ownership, of the following natural persons or judicial entities:
>
> . . . .

96. Ramón Rodriguez e Hijos, S. en C.

See Post-Remand Response Brief [D.E. 330 at 9–10] (citing Sec. Am. Compl. [D.E. 208 at Ex. 5A]). Plaintiffs further posit that "[t]here is no requirement in the statute that the trafficker knowingly acts 'without the authorization of any United States national who holds a claim to the property.'" Id. at 11.

Notwithstanding the reference to "Ramón Rodriguez e Hijos, S. en C." in Cuba's Official Gazette, Plaintiffs fail to allege that Defendants knew or had reason to know that "Ramón Rodriguez e Hijos, S. en C." was related in any way to the Property. Indeed, Defendants noted at the Post-Remand Hearing that the Gazette "doesn't make any reference to the [P]roperty at this location", that it "just refers to the limited partnership that allegedly owned the [P]roperty", and that the reference could not have put "anyone on notice that the [P]roperty itself was confiscated." See Post-Remand Hearing Tr. [D.E. 341 at 76:14–19]. Without more, the Second Amended

Complaint fails to establish that Defendants acted "knowingly and intentionally" with respect to the Property at issue in Plaintiffs' Title III claim.

Further, in addition to requiring that the alleged wrongdoer knowingly and intentionally "traffics" in confiscated property, a plain reading of the Helms-Burton Act clearly requires that the alleged wrongdoer also knowingly and intentionally act "without the authorization of any United States national who holds a claim to the property." 22 U.S.C. § 6023(13); see also Ruan v. United States, 142 S. Ct. 2370, 2377 (2022) ("We have accordingly held that a word such as 'knowingly' modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'"). As such, Plaintiffs' disavowal of their duty at the pleading stage to plausibly allege that Defendants knowingly and intentionally acted without their authorization is ineffective. Hence, the undersigned recommends that Defendants' Joint Motion to Dismiss be granted on these grounds.

### 5. *Claim ownership*

Finally, Defendants argue that the Second Amended Complaint fails to allege that Plaintiffs own the claim to the Property and that the Property was confiscated from a U.S. national. See Joint Post-Remand Brief [D.E. 320 at 19–21] (citing 22 U.S.C. §§ 6082(a)(1)(A), (4)(B)). As noted above, the Helms-Burton Act requires that "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." See 22 U.S.C. § 6082(a)(4)(B).

Plaintiffs allege that they are the "heirs and successors of Ramon Rodriguez Gutiérrez [('Gutiérrez')]. . . and the owners of a 90% interest in Ramón Rodriguez e Hijos Sociedad en Comandita ('RRHSC')." See Sec. Am. Compl. [D.E. 208 ¶ 1]. Plaintiffs further allege that

"[b]efore 1961, RRHSC owned and operated the [Property] in Havana" and that "[u]ntil the time that RRHSC and the [Property] were confiscated . . . [Gutiérrez] owned and controlled RRHSC." Id. ¶¶ 1, 28. Plaintiffs detail their descendance from Gutiérrez and their inheritance of their respective interests. Id. ¶¶ 24–33. However, Defendants contend that Plaintiffs' allegations just confirm "that Gutiérrez did not own the claim to the RRHSC Property—RRHSC did—and that Plaintiffs, as Gutiérrez's descendants, do not own the claim." See Joint Post-Remand Brief [D.E. 320 at 19]. Moreover, Defendants argue that Plaintiff Alfredo Ramon Forns ("Forns") is entirely barred from recovering under the Helms-Burton Act; and that Plaintiffs Raul Lorenzo Rodriguez ("Lorenzo Rodriguez"), Francisco Ramon Rodriguez ("Ramon Rodriguez"), and Christina Conroy ("Conroy") are partially barred from recovering under the Helms-Burton Act. Id. at 20 (noting that Forns is alleged to have inherited his claim in 2013; and that Lorenzo Rodriguez, Ramon Rodriguez, and Conroy inherited a portion of their claims in 2019 upon the death of Esther Beltran Rodriguez) (citing Sec. Am. Compl. [D.E. 208 ¶¶ 31, 33]).

Plaintiffs concede that Forns' claim is subject to dismissal. See Post-Remand Response Brief [D.E. 330 at 13]; see also Garcia-Bengochea v. Carnival Corp., 57 F.4th 916, 931 (11th Cir. 2023) (holding that the plaintiff's claims failed because he inherited his interest in the confiscated property after March 12, 1996). However, the remaining Plaintiffs argue that their claims are viable. Plaintiffs rely on De Fernandez v. CMA CGM S.A., 21-CV-22778, 2023 WL 4014730 (S.D. Fla. Apr. 30, 2023), report and recommendation adopted, 2023 WL 4633553 (S.D. Fla. Jul. 20, 2023), where the Court considered the defendants' argument that the plaintiffs' claims "must be dismissed because the [Helms-Burton] Act does not permit claims based on the indirect interests of shareholders." Id. at *13. In De Fernandez, the plaintiffs had alleged that they "owned, in equal parts, the Cuban corporations Maritima Mariel SA, Compañía Azucarera Mariel S.A., and several

other companies" and that "those companies owned the 70-Year Concession . . . that gave Maritima

Mariel priority rights in the Bay of Mariel, as well as the extensive land holdings to the southeast,

south, and west of the Bay of Mariel comprising the [c]onfiscated [p]roperty at issue." <u>Id.</u>  In

concluding that the plaintiffs' indirect ownership of the companies amounted to "ownership" of a

claim under the Helms-Burton Act, the Court reasoned that "[t]he plain language of the [Helms-

Burton] Act makes clear that plaintiffs who own *a claim* to confiscated property—not just

plaintiffs who own or own a direct interest in the confiscated property—are entitled to relief". <u>Id.</u>

at *14.  Thus, the Court found that the plaintiffs' "allegation of ownership of claims to the

[c]onfiscated [p]roperty by virtue of their ownership of shares of entities that owned the properties

is sufficient to state a claim under Title III of the [Helms-Burton] Act." <u>Id.</u> (recommending that

the motion to dismiss be denied "to the extent it [was] based on the argument that the Helms-

Burton Act does not permit claims based on the interests of shareholders").  Here, Plaintiffs

specifically allege that they are "the heirs and successors of [Gutiérrez]"; that they are "the owners

of a 90% interest in [RRHSC]"; and that "RRHSC owned and operated" the Property.  <u>See</u> Sec.

Am. Compl. [D.E. 208 ¶ 1].  Based on the holding in <u>De Fernandez</u>, the undersigned concludes

that Plaintiffs have plausibly alleged that they "own" their Title III claim by virtue of their

inheritance of Gutiérrez's 90% ownership interest in RRHSC.

Moreover, to the extent that Defendants argue that dismissal is required because the Second

Amended Complaint does not allege that the Cuban Government confiscated the Property from a

U.S. national, "the plain language of the [Helms-Burton] Act makes it clear that claimants and

property owners need not be United States nationals at the time of confiscation to bring a claim."

<u>De Fernandez v. Crowley Holdings, Inc.</u>, No. 21-cv-20443, 2023 WL 2646346, at *2 (S.D. Fla.

Mar. 27, 2023).  "Rather, the plain language clearly provides a remedy for claimants whose

property was confiscated by the Cuban government after the revolution and who—at the time the remedy is sought—are United States nationals." Id.  As a result, this argument for dismissal is also unavailing.

Hence, the undersigned recommends that Defendants' Joint Motion to Dismiss be granted only as to Forns on the basis that he does not "own" a Title III claim.

## SUPPLEMENTAL RECOMMENDATION

In accordance with the foregoing considerations, the undersigned hereby withdraws her prior recommendations that this action be dismissed without prejudice to Plaintiffs refiling their action in a proper venue and that Imperial's Motion to Dismiss, WPP Defendants' Motion to Dismiss, and the Joint Motion to Dismiss be denied without prejudice as moot; and RESPECTFULLY RECOMMENDS that:

> ➤ Imperial's Motion to Dismiss [D.E. 226] be GRANTED IN PART for lack of personal jurisdiction;

> ➤ WPP Defendants' Motion to Dismiss [D.E. 229] be GRANTED IN PART for lack of personal jurisdiction; and

> ➤ The Joint Motion to Dismiss [D.E. 227] be GRANTED IN PART for failure to state a claim on the grounds that the Second Amended Complaint is time-barred, fails to allege that Defendants acted "knowingly and intentionally", and fails to allege that Forns "owned" a Title III claim.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark

Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance

with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions."  See 11th Cir. R. 3-1 (I.O.P.

- 3).

      RESPECTFULLY SUBMITTED in Chambers in Miami, Florida, on this 28th day of

November, 2023.

                        _____

                        ALICIA M. OTAZO-REYES

                        UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Darrin P. Gayles
        Counsel of Record